# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUEPOSITION, INC.,         )
                                             )

      Plaintiff and Counterclaim       )
      Defendant,                       )
                                             )

v.                                      )     CA No. 05-00747-SLR
                                             )

ANDREW CORPORATION,        )
                                             )

      Defendant and Counterclaim      )
      Plaintiff.                      )
                                           )

## ANDREW CORPORATION'S OPENING BRIEF IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION OF NONINFRINGEMENT OF U.S. PATENT NO. 5,327,144

### YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 2, 2007

# TABLE OF CONTENTS

I.    INTRODUCTION.................................................................................................1

II.   NATURE AND STAGE OF THE PROCEEDING ......................................2

III.  SUMMARY OF ARGUMENT...................................................................2

IV.   STATEMENT OF UNDISPUTED FACTS.................................................3
      A.   The '144 Patent....................................................................................3
      B.   During Prosecution of the '144 Patent, TruePosition Tried -- But
           Failed -- To Obtain Broad Claims Directed to "Control Channels"
           Generally................................................................................................4
      C.   The Patent Office Rejected TruePosition's Broad Claims And
           Forced TruePosition To Narrow Its Claims From "Control
           Channels" To "Reverse Control Channels"..........................................5
      D.   A "Reverse Control Channel" Has a Specific Meaning in the Art...........6
      E.   Andrew's Accused Geometrix® Products...............................................9

V.    ARGUMENT.....................................................................................................10
      A.   The Legal Standards for Summary Judgment........................................10
      B.   The Legal Standards for Determination of Infringement .....................12
      C.   Andrew's Accused Products Literally Lack the "Reverse Control
           Channel" Required by Each Asserted Claim of the '144 Patent ..........13
           1.    An SDCCH Is Not Literally a "Reverse Control Channel"
                 Because It Is A Two-Way Channel, Not a "Reverse"
                 Channel ...............................................................................13
           2.    An SDCCH Is Not Literally a "Reverse Control Channel"
                 Because It Communicates User Data (e.g., Text Messages) ....14
           3.    An SDCCH Is Not Literally a "Reverse Control Channel"
                 Because It Is a "Dedicated" Channel, Not a "Shared"
                 Channel ...............................................................................15
      D.   TruePosition Is Estopped From Arguing An SDCCH Is Equivalent
           to a "Reverse Control Channel"............................................................16

VI.   CONCLUSION .................................................................................................18

# TABLE OF AUTHORITIES

**Federal Cases**

*ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*,
    346 F.3d 1075 (Fed. Cir. 2003)........................................................................ 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................................ 11

*Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984)........................................................................ 10

*Biagro Western Sales, Inc. v. Grow More, Inc.*,
    423 F.3d 1296 (Fed. Cir. 2005)................................................................. 16, 17

*Centricut, LLC v. Esab Group, Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004)...................................................................... 11

*DeMarini Sports, Inc. v. Worth, Inc.*,
    239 F.3d 1314 (Fed. Cir. 2001)...................................................................... 12

*Desper Prods. Inc. v. QSound Labs, Inc.*,
    157 F.3d 1325 (Fed. Cir. 1998)...................................................................... 11

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    535 U.S. 722 (2002)......................................................................... 12, 16, 18

*Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.*,
    356 F.3d 1348 (Fed. Cir. 2004)...................................................................... 16

*IP Innovation, L.L.C. v. Ecollege.com*,
    156 Fed. App'x 317 (Fed. Cir. 2005).............................................................. 17

*LP Matthews LLC v. Bath & Body Works, Inc.*,
    458 F. Supp. 2d 189 (D. Del. 2006)............................................................... 11

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005)...................................................................... 18

*Novartis Corp. v. Ben Venue Labs*,
    271 F.3d 1043 (Fed. Cir. 2001)...................................................................... 11

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001)...................................................................... 14

*Terlep v. Brinkmann Corp.*,
    418 F.3d 1379 (Fed. Cir. 2005)............................................................ 12, 16, 17

**Federal Statutes**

Fed. R. Civ. P. 56(c) ......................................................................................................... 11

## I.    INTRODUCTION

TruePosition accuses Andrew of infringing claims 1, 2, 22, 31 and 32 of U.S. Patent No. 5,327,144. Andrew moves for summary judgment of noninfringement of each asserted claim.

Each asserted claim requires a limitation — a "reverse control channel" — that is not present in, or used with, Andrew's accused products under any claim construction available. TruePosition added the "reverse control channel" limitation to each asserted claim during prosecution to get around claim rejections, and therefore no equivalence is available to TruePosition under *Festo*. Because TruePosition cannot meet its burden of proof on the "reverse control channel" limitation required by each asserted claim, Andrew should be granted judgment as a matter of law of noninfringement.

In bringing this motion, Andrew relies extensively on the deposition testimony of TruePosition's witnesses, including its Chief Technical Officer, Rob Anderson. Mr. Anderson is TruePosition's highest-ranking technical employee and also served as a Rule 30(b)(6) designee for TruePosition. Mr. Anderson gave deposition testimony that completely eviscerates TruePosition's litigation position on why Andrew's accused products use a "reverse control channel." TruePosition has nothing to fall back on, and therefore cannot establish an essential element of its case. Judgment as a matter of law should be entered in Andrew's favor on TruePosition's infringement claims.

## II.     NATURE AND STAGE OF THE PROCEEDING

TruePosition filed its Complaint on October 25, 2005, accusing Andrew of infringing the '144 patent. D.I. 1. Andrew filed its Answer, Affirmative Defenses and Counterclaims on December 15, 2005. D.I. 13. Andrew has counterclaimed for noninfringement and invalidity, and unfair competition, fraud and estoppel. Amended complaints and thus, amended answers and counterclaims, were filed. Fact discovery closed November 17, 2006. D.I. 94. Expert discovery closed January 24, 2007. *Id.*

## III.     SUMMARY OF ARGUMENT

1.     Each asserted claim requires a "reverse control channel." A "reverse control channel" has a specific meaning in the art. It is a **one-way** channel from a mobile phone to a base station. It **only** communicates **signaling** information. It is **simultaneously allocated** to **multiple** mobile phones in a cellular network.

2.     TruePosition originally tried to obtain broad patent claims directed to control channels generally. The original claims TruePosition presented to the Patent Office all called for "control channels" generally, not a "reverse control channel."

3.     The Patent Office rejected each of TruePosition's broad claims directed to "control channels" generally, for reasons relating to patentability. TruePosition then narrowed each of its asserted claims to require a "reverse control channel." TruePosition's claim amendments bar it from asserting equivalence with respect to the "reverse control channel" limitation.

4.     Andrew's accused products do not use, or work in conjunction with, "reverse control channels." TruePosition argues an "SDCCH" channel, which Andrew's accused products sometimes utilize, satisfies the "reverse control channel" limitation. The undisputed facts confirm that an SDCCH is not a "reverse control channel" literally.

2

And TruePosition is estopped as a matter of law from asserting an SDCCH is equivalent to a "reverse control channel."

5.      Because each asserted claim requires a "reverse control channel," and because TruePosition cannot meet its burden of proof with respect to the "reverse control channel" limitation, Andrew cannot infringe any asserted claim as a matter of law either literally or under the doctrine of equivalents.    Thus, summary judgment of non-infringement should be granted in Andrew's favor.

## IV.    STATEMENT OF UNDISPUTED FACTS

The following facts are undisputed:

### A.    THE '144 PATENT

1.      The '144 patent is titled "Cellular Telephone Location System." It issued July 5, 1994, based on a May 7, 1993 filing date. '144 Patent (A17).

2.      The '144 patent relates generally to a system for locating mobile phones in a cellular network, using a specific cellular network channel called a "reverse control channel" and algorithms specified in the patent to determine the mobile phone's location. *Id.*

3.      The location technology claimed in the patent is based on time difference of arrival, commonly referred to as "TDOA." According to TruePosition's expert witnesses in this case, TDOA has been known since at least as early as the 1970s. Agee Dep. 48:2-5, Jan. 24, 2007 (A34); Gottesman Dep. 26:10-23, January 11, 2007 (A49). Andrew's *Markman* briefs, filed concurrently herewith, include an overview of TDOA technology and a summary of the '144 patent.

4.      TruePosition accuses Andrew of infringing claims 1, 2, 22, 31 and 32 of the '144 patent.   Claims 1, 22 and 31 are independent claims; claims 2 and 32 are dependent claims.   The full text of each claim can be found at A26-29.

5.   Each asserted claim requires a "prescribed set" of "reverse control channels." A "reverse control channel" is a specific type of control channel.

**B.      DURING PROSECUTION OF THE '144 PATENT, TRUEPOSITION TRIED — BUT FAILED — TO OBTAIN BROAD CLAIMS DIRECTED TO "CONTROL CHANNELS" GENERALLY**

6.   As TruePosition's Chief Technical Officer Rob Anderson testified at his deposition, a control channel is a channel that communicates *only* signaling information:

> **Q:**      Do control channels communicate anything other than signaling information?
>
> **A:**      No.

Anderson Dep. 42:5-7, Sep. 21, 2006 (A80).

7.      When TruePosition first applied for the '144 patent, it sought broad claims directed to any type of "control channels":

- TruePosition's original claim 1 claimed "multiple mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of **control channels**" and "receiving cellular telephone signals transmitted over a **control channel** by [the] cellular telephones."

- TruePosition's original claim 22 claimed "at least three cell sites equipped to receive signals sent by multiple mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of **control channels**."

- TruePosition's original claim 31 claimed "mobile cellular telephones periodically transmitting signals over one of a prescribed set of **control channels** . . ."

May 7, 1993 Patent Application at 35, 43-45 (A 271-274).

8.  TruePosition's original claims were broad enough to cover two-way control channels — i.e., control channels that communicate from a base station to a mobile phone and from a mobile phone to a base station — as well as one-way control channels, i.e., control channels that communicate only from a base station to a mobile phone or only from a mobile phone to a base station.

### C.  THE PATENT OFFICE REJECTED TRUEPOSITION'S BROAD CLAIMS AND FORCED TRUEPOSITION TO NARROW ITS CLAIMS FROM "CONTROL CHANNELS" TO "REVERSE CONTROL CHANNELS"

9.  On September 24, 1993, the U.S. Patent and Trademark Office (the "PTO") issued an Office Action rejecting original claims 1, 22 and 31 (in addition to other claims), in light of the prior art of record and for other reasons related to patentability. 09/24/93 Office Action at 2-4 (A146-148).

10.  In response to the rejection, on October 4, 1993, TruePosition amended original claims 1, 22 and 31 to claim "reverse control channels" instead of the broad "control channels" originally claimed. TruePosition did not make any other amendments to claims 1, 22 or 31. 10/04/93 Office Action Response at 1-3 (A149-152).

11.  The PTO then allowed claims 1, 22 and 31, as narrowed by TruePosition to require the "reverse control channel" limitation. 10/29/93 Notice of Allowance (A153). The PTO also allowed the other then-pending claims.

12.  As a result of TruePosition's claim amendments, each asserted claim requires a "reverse control channel." Specifically:

- claim 1 requires "multiple mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of **reverse control channels**" and "receiving cellular telephone signals transmitted over a **reverse control channel** by [the] cellular telephones."

- claim 2 depends from claim 1, and thus has the same requirement
- claim 22 requires "at least three cell sites equipped to receive signals sent by multiple mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of **reverse control channels**."
- claim 31 requires "mobile cellular telephones periodically transmitting signals over one of a prescribed set of **reverse control channels**...."
- Claim 32 depends from claim 31, and thus has the same requirement.

13.    The PTO would not have allowed the asserted claims if TruePosition had not narrowed them to require "reverse control channels" instead of the broad "control channels" originally claimed.  10/29/93 Notice of Allowance (A153).

14.    An accused product cannot infringe any asserted claim of the '144 patent unless the accused product uses signals transmitted over a "prescribed set" of "reverse control channels" to determine a mobile phone's location.

**D.    A "REVERSE CONTROL CHANNEL" HAS A SPECIFIC MEANING IN THE ART**

15.    A "reverse control channel" is a channel that carries only signaling information from a mobile terminal to a base station in the format specified in ANSI 553.

For purposes of this motion, three characteristics of a "reverse control channel" are germane to, and dispositive of, TruePosition's infringement claims.

16.    First, a "*reverse* control channel" is a one-way channel that communicates information only from a cellular phone to a base station.

17.    A "reverse control channel" is not a two-way channel.  It cannot communicate information from a base station to a cellular phone.  D.I. 130, Joint Claim Construction Statement at 2; Goodman Dep. 20:11-14, 21:15-23, Jan. 15, 2007 (A66, 67);

6

Gottesman Dep. 99:4-9, 100:24-101:2 (A55, A56-57); Knight Dep. 94:14-19, Oct. 6, 2006 (A76); Agee Dep. 71:12-72:6 (A37-38); *see also* '144 Patent col.2 ll.15-23 (A17).

19.     Second, the broad control channel and narrow "reverse control channel" share a common trait:  they only carry signaling information, not voice or traffic information such as user data. Goodman Dec. ¶ 11(i), Feb. 2, 2007 (A279). TruePosition's Chief Technical Officer Rob Anderson confirmed at his deposition that a control channel communicates *only* signaling information:

> **Q:**     Do control channels communicate anything other than signaling information?
>
> **A:**     No.

Anderson Dep. 42: 5-7, Sep. 21, 2006 (A80).

20.     As Mr. Anderson also confirmed, channels that communicate both signaling information *and* voice or traffic information such as user data or text messaging are not control channels (or reverse control channels) but instead are a different kind of channel called "traffic"/"voice" channels.  Anderson Dep. 166:25-167:13, Sep. 21, 2006 (A92-93).

21.     In discussing the '144 patent in an expert report submitted in a prior litigation between TruePosition and Andrew's predecessor, Stuart C. Schwartz, professor of electrical engineering at Princeton University and then a TruePosition expert witness, advocated on behalf of TruePosition that a channel carrying user information and control information is a voice/traffic channel:

> The control channel allows messages to be communicated between the MS [mobile station] and BS [base station] for the proper operation of the wireless communication system, i.e., to exchange system control information. . . .*The voice channel, on the other hand, contains both user*

> *information (voice and other user data) and certain system control*
> *information.*

TruePosition's July 28, 2003 Report of Stuart Schwartz (hereinafter "Schwartz Report")

at 20-21, ¶ 57 (A113-114) (emphasis added). In contrast, he limited control channels

(and hence "reverse control channels") to channels that exchange only "system control

information." *Id.*

22.     In sum, if a channel communicates anything other than signaling

information, it is not a control channel and is not a "reverse control channel."

23.     A channel that communicates signaling information and voice and other

user data is a voice/traffic channel, according to the definitions of TruePosition's Chief

Technical Officer and its prior expert witness Professor Schwartz.

24.     Locating cellular phones using a voice/traffic channel does not infringe

any asserted claim of the '144 patent. Anderson Dep. 165:16-19, Sep. 21, 2006 (A91);

Sheehan Dep. 61:18-22, Oct. 19, 2006 (A138); 11/06/06 Plaintiff's Seventh

Supplemental Responses to Defendants First Interrogatories at 9-10 (Response To

Interrogatory No. 5) (A141-142).

25.     Third, a "reverse control channel" is a "shared" channel; it has a many-to-

one property in that many mobile phones are simultaneously allocated to and use the

same reverse control channel to communicate with one base station.     Goodman Dec.

¶ 11(h) (A279).  In contrast, an SDCCH is a dedicated channel — only one mobile phone

at a time can use the SDCCH to communicate with the base station.  *Id.* at ¶ 11(m)

(A279).

26.     Channel names are a shorthand and cannot be assumed to completely reflect each property of a channel. *Id.* at ¶ 11(a) (A278).

**E.     ANDREW'S ACCUSED GEOMETRIX® PRODUCTS**

27.     Andrew markets and sells geolocation products under the Geometrix® brand name. Beck Dep. 18:16-19, Sep. 22, 2006 (A156).  The Geometrix® products accused of infringement are used abroad for security and law enforcement purposes.

28.     Andrew's accused products use a technique called "MT-LR," which means mobile-terminated location request.  MT-LR involves a request through a cellular network to locate a mobile phone.  Anderson Dep. 163:19-164:10, Sep. 21, 2006 (A89-90).

29.     The type of MT-LR that TruePosition accuses of infringement is called "idle-mode MT-LR."  Idle-mode MT-LR is used when a mobile phone is turned on but not in use (i.e., idle).

30.     In the GSM cellular networks where Andrew's accused products operate, idle-mode MT-LR uses a channel called an SDCCH (standalone dedicated control channel).  Kennedy Dep. 117:2-13, Oct. 16, 2006 (A161); Kennedy 1Dep. 35:11-36:7, Oct. 17, 2006 v.1 (A165-166).

31.     An SDCCH is a two-way channel.  It can communicate information from a base station to a mobile phone and from a mobile phone to a base station.  An SDCCH is not a reverse channel. Nilesh Agarwal, Leena Chandran-Wadia, and Varsha Apte, *Capacity Analysis of the GSM Short Message Service* at 2 (A169); *W-CDMA Mobile Communications System* (Keiji Tachikawa ed., John C. Wiley & Sons, 2002) at 93, 127-

9

128 A177, 178-179); Asha Mehrotra, *GSM System Engineering* (1997) at 73-75, 77, 101 (A184-186, 187, 188); Gunnar Heine, *GSM Networks: Protocols, Terminology, and Implementation* (1999) at 336 (A192); Raymond Steele, Chin-Chun Lee, Peter Gould, *GSM, cdmaOne and 3G Systems* (2001) at 106 (A196); Jörg Eberspächer, Hans-Jörg Vögel, Christian Bettstetter, *GSM Switching, Services and Protocols* (2nd ed. 2001) at 59-60 (A201-202); *ETSI TS 144 018 V6.19.0 (2006-09) Technical Specification: Digital cellular telecommunications system (Phase 2+); Mobile radio interface layer 3 specification; Radio Resource Control (RRC) protocol (3GPP TS 44.018 version 6.19.0 Release 6)* (European Telecommunications Standards Institute 2006) at 18 (A206); *see also* Goodman Dec. ¶ 11(h) (A279).[1]

32.    An SDCCH communicates more than signaling information.    It also communicates traffic information such as text messages.    Anderson Dep. 111:22-113:8, Sep. 21, 2006 (A83-85); Anderson Dep. 55:8-18, 56:9-22, Oct. 5, 2006 (A212, 213); Gottesman Dep. 91:10-11 (A52).

## V.    ARGUMENT

### A.    THE LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is "as appropriate in a patent case as in any other." *Barmag Barmer Maschinenfebrik AG v. Murata Mach. Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984). Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1]    The relevant excerpt from each book cited here is included in the Joint Appendix.  Andrew will make the entirety of each book available at the Court's request.

judgment as a matter of law." Fed. R. Civ. P. 56(c); *Desper Prods. Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998). It is the moving party's burden to prove no genuine issue of material fact exists. *E.g., LP Matthews LLC v. Bath & Body Works, Inc.*, 458 F. Supp. 2d 189, 193 (D. Del. 2006). A fact is "material" only if it will affect the outcome of a lawsuit under the applicable law, and a dispute over a material fact is "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"If the moving party has demonstrated an absence of material fact, the nonmoving party then must come forward with specific facts showing that there is a genuine issue for trial." *LP Matthews LLC.*, 458 F. Supp. 2d at 193 (internal quotations and citations omitted) Although the court views the underlying facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, "[t]he mere existence of some evidence in support of the nonmoving party . . .will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue." *Id.*

As patentee, TruePosition has the burden of proving infringement by a preponderance of the evidence. *Centricut, LLC v. Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). "Since the ultimate burden of proving infringement rests with the patentee, an accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Labs*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### B.    THE LEGAL STANDARDS FOR DETERMINATION OF INFRINGEMENT

A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1381 (Fed. Cir. 2005) (internal quotations and citations omitted). "For a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Id.* (internal quotations and citations omitted).

"Literal infringement requires that every element of the invention as claimed is present in the accused device." *ACCO Brands, Inc. v. Micro Sec. Devices, Inc.*, 346 F.3d 1075, 1080 (Fed. Cir. 2003). There can be no literal infringement if any claim limitation is not literally present in the accused device, exactly as written in the claim. *E.g., DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) ("Literal infringement of a claim occurs when every limitation recited in the claim appears in the accused device, i.e., when the 'properly construed claim reads on the accused device exactly.'") (internal citations omitted).

When there is no literal infringement, the doctrine of equivalents may come into play under limited circumstances. But the doctrine of equivalents has an important limitation that controls here. By narrowing its asserted claims during prosecution from the broad "control channels" to the narrower "*reverse* control channels," TruePosition has disavowed any coverage for control channels that are not literally reverse control channels. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736-37 (2002).

12

### C. ANDREW'S ACCUSED PRODUCTS LITERALLY LACK THE "REVERSE CONTROL CHANNEL" REQUIRED BY EACH ASSERTED CLAIM OF THE '144 PATENT

Each asserted claim of the '144 patent requires a "reverse control channel" to communicate signals from the mobile phones to the base station. *See* '144 Patent Claims 1, 2, 22, 31, 32 (A26-29). Each claim identifies the "reverse control channel" as a specific element. TruePosition argues the SDCCH channels in a GSM system satisfy the "reverse control channel limitation." 11/06/06 Plaintiff's Seventh Supplemental Responses to Defendants First Interrogatories (Response To Interrogatory No. 6), *e.g.,* at 12, 13, 20, 24 (A142, A142.1-142.4). As explained below, an SDCCH is not literally a "reverse control channel" as required by the '144 patent, for at least three independent reasons.

First, an SDCCH is not a "reverse" channel (i.e., it is not a one-way channel from a mobile phone to a base station). Rather, it is a two-way channel.

Second, because an SDCCH communicates both signaling information and user information (i.e., text messages), it cannot be a "reverse control channel."

Third, an SDCCH is a dedicated channel. Unlike a "reverse control channel," an SDCCH is not simultaneously allocated to and used by multiple mobile phones.

With these undisputed facts confirming noninfringement, summary judgment should be granted in Andrew's favor.

### 1. An SDCCH Is Not Literally a "Reverse Control Channel" Because It Is A Two-Way Channel, Not a "Reverse" Channel

It is undisputed that a "reverse" channel communicates information only from a mobile station to a base station. D.I. 130, Joint Claim Construction Statement. Unlike a one-way "reverse" channel, an SDCCH is a two-way channel that communicates

information from a base station to a mobile station and from a mobile station to a base station. Goodman Dec. ¶ 11(k) (A279). Because an SDCCH is not a "reverse" channel, and because each asserted claim requires a "*reverse* control channel," there can be no literal infringement of any claim as a matter of law. *E.g., Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) ("To find literal infringement, each limitation of the claim must be present in the accused device. Any deviation from the claim precludes such a finding.").

**2.    An SDCCH Is Not Literally a "Reverse Control Channel" Because It Communicates User Data (e.g., Text Messages)**

It is undisputed that an SDCCH carries user data such as text messages. Anderson Dep. 55:8-57:1, Oct. 5. 2006 (A212). TruePosition's Chief Technical Officer Rob Anderson testified that user data is carried over "traffic channels":

> **Q:** So if I understand you correctly, user data is carried over a traffic channel in a GSM system; is that right?
>
> **A:** Yes, in general.

Anderson Dep. 54:15-18, Oct. 5, 2006 (A211). It is undisputed that traffic channels do not infringe any asserted claim. Anderson Dep. 167:9-13, Sep. 21, 2006 (A93). Because an SDCCH carries user data, it is a traffic channel and therefore is noninfringing.

Mr. Anderson's testimony regarding "control channels" provides further support. He testified that "control channels" communicate *only* signaling information:

> **Q:** Do control channels communicate anything other than signaling information?
>
> **A:** No.

Anderson Dep. 42:5-7, Sep. 21, 2006 (A80). And he reconfirmed that a channel that carries both signaling information and traffic information is a "traffic channel" not a "control channel":

> **Q:** Are you aware of any channels in the GSM system that would carry both signaling and traffic information?
>
> **A:** Yes; a traffic channel would carry both signaling and traffic information.
>
> **Q:** Any other channels, other than the traffic channel?
>
> **A:** Not that I am aware of.

*Id.* at 166:25-167:8 (A92-93). It is undisputed that the SDCCH carries both signaling and traffic information and, therefore, under Mr. Anderson's definition, it is a traffic channel.

Given the testimony of its own witnesses, including its Chief Technology Officer, TruePosition has no basis to contend an SDCCH literally satisfies the "reverse control channel" limitation.

### 3. An SDCCH Is Not Literally a "Reverse Control Channel" Because It Is a "Dedicated" Channel, Not a "Shared" Channel

It is undisputed that a "reverse control channel" is a "shared" channel; it has a many-to-one property in that many mobile phones are allocated to and use the same reverse control channel to communicate with the base station. Goodman Dec. ¶ 11(h) (A279). It is also undisputed that an SDCCH is a dedicated channel — only one mobile station at a time can use the SDCCH to communicate with the base station. *Id.* at ¶ 11(m) (A279).

For all of the above reasons, the undisputed facts demonstrate that an SDCCH is not literally a "reverse control channel."

**D.    TRUEPOSITION IS ESTOPPED FROM ARGUING AN SDCCH IS EQUIVALENT TO A "REVERSE CONTROL CHANNEL"**

As shown above, an SDCCH is not literally a "reverse control channel." In addition, due to claim amendments it made during prosecution, TruePosition is precluded from arguing the *two-way* SDCCH channel is equivalent to the one-way *"reverse control channel"* channel.

Under *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733 (2002), TruePosition is barred from arguing an SDCCH is equivalent to the "reverse control channel" limitation required by each asserted claim. During prosecution of the '144 patent, to get around the PTO's claim rejections, TruePosition narrowed the asserted claims from "control channels" to "reverse control channels". *See, e.g.*, Undisputed Facts 9-12 (A145-152). Once the claims were narrowed, the PTO allowed them. 10/29/93 Notice of Allowance (A153).

"Under *Festo*, a narrowing amendment made to satisfy a requirement of the Patent Act may give rise to an estoppel. Such a narrowing amendment creates a presumption that the patentee surrendered the territory between the original claims and the amended claims." *Terlep*, 418 F.3d at 1385. Here, TruePosition's narrowing of the claims from "control channels" to "reverse control channels" creates a presumption that it surrendered anything that is not literally a "reverse control channel." *See Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1306 (Fed. Cir. 2005) (affirming summary judgment finding that plaintiff surrendered equivalents through narrowing amendment); *Glaxo Wellcome, Inc. v. Impax Laboratories, Inc.*, 356 F.3d 1348, 1356 (Fed. Cir. 2004) (affirming grant of summary judgment because amendment prevented equivalent infringement of both amended and unamended claims); *see also IP Innovation, L.L.C. v.*

16

*Ecollege.com,* 156 Fed. App'x 317, 324 (Fed. Cir. 2005) (affirming grant of summary judgment, finding equivalency infringement claim barred by prosecution amendment).

It is TruePosition's burden to rebut this presumption of surrender. *Biagro Western Sales*, 423 F.3d at 1305 ("The Supreme Court has made clear that the patentee bears the burden of rebutting the presumption of surrender.") To rebut the presumption, TruePosition must demonstrate that an SDCCH (the alleged equivalent) was unforeseeable at the time it amended its claims, that an SDCCH is tangential to the purpose of the amendment, or that there was some other reason suggesting that TruePosition could not reasonably be expected to have described an SDCCH. *Terlep,* 418 F.3d at 1385. TruePosition must rely on the public record (i.e., the '144 patent and its prosecution history) to rebut the presumption of surrender. *Id.* The determination of whether the presumption has been rebutted is a question of law. *Id.* TruePosition cannot meet its heavy burden.

An SDCCH was not unforeseeable when TruePosition amended its claims in October 1993. SDCCH channels were known then. 0/30/06 TruePosition's Response to Andrew's Requests For Admission at Response 7 (A216). They were part of the GSM standard then. *Id.* at Response 8 (A216).

Nor is an SDCCH tangential to the purpose of TruePosition's claim amendments. "The primary consideration in determining when an amendment bears only a tangential relation to the equivalent in question is 'whether the reason for the amendment is peripheral, or not directly relevant, to the alleged equivalent.'" *Terlep*, 418 F.3d at 1385 (citations omitted). Here, to get around the PTO's rejections, TruePosition amended its claims from the broad "control channels" — which would have covered a two-way

"control channel" — to the narrower "reverse" (i.e., one-way only) "control channel." Because an SDCCH is a two-way channel, it is not tangential to the purpose of TruePosition's claim amendments.    *E.g., id.* (affirming summary judgment of noninfringement, and holding that alleged equivalent "ribbed holder that diffuses" was not tangential to claim amendment adding "clear plastic tubular holder" limitation); *see also Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("it frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid the prior art.  In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.").

TruePosition cannot overcome the *Festo* presumption of surrender.  It cannot claim an SDCCH is equivalent to a "reverse control channel."

## VI.    CONCLUSION

TruePosition cannot meet its burden of proof for any asserted claim.  For the reasons set forth above, Andrew respectfully requests entry of judgment as a matter of law that it does not infringe the asserted claims of the '144 patent.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600

*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


Dated: February 2, 2007

## **CERTIFICATE OF SERVICE**

I, Andrew A. Lundgren, Esquire, hereby certify that on February 2, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on February 2, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY ELECTRONIC MAIL ON FEBRUARY 2, 2007**
> **AND FEDERAL EXPRESS ON FEBRUARY 5, 2007**
>
> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> David L. Marcus, Esq. [dmarcus@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> One Liberty Place, 46th Floor
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> alundgren@ycst.com
> *Attorneys for Defendant Andrew Corporation*