# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUEPOSITION, INC.,

       **Plaintiff and**
       **Counterclaim-Defendant,**

    **v.**

ANDREW CORPORATION,

       **Defendant and**
       **Counterclaim Plaintiff.**

**Civil Action No. 05-00747-SLR**

---

## ANDREW CORPORATION'S BRIEF IN OPPOSITION TO TRUEPOSITION'S MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ANDREW CANNOT PROVE ITS CLAIMS OF INVALIDITY

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 16, 2007

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDING.............................................2

III.    SUMMARY OF ARGUMENT ............................................................................2

IV.     COUNTERSTATEMENT OF FACTS ................................................................4

        A.    THE '144 PATENT. ...................................................................................4

        B.    DURING PROSECUTION OF THE '144 PATENT, TRUEPOSITION
              DISCLAIMED FROM THE SCOPE OF ITS CLAIMS THE METHODOLOGY
              IT NOW ACCUSES OF INFRINGEMENT. ....................................................5

        C.    THE PRIOR ART KONO REFERENCE.......................................................6

        D.    IF TRUEPOSITION TRIES TO READ THE ASSERTED CLAIMS ON
              ANDREW'S ACCUSED PRODUCTS, THE CLAIMS ARE INVALID IN
              LIGHT OF KONO.......................................................................................8

        E.    TRUEPOSITION'S INVALIDITY EXPERT WITNESS HAS SUBMITTED
              THREE DIFFERENT REBUTTAL INVALIDITY REPORTS AND HAS FLIP-
              FLOPPED HIS OPINION ON KONO. ...........................................................9

V.      ARGUMENT .......................................................................................................10

        A.    ANDREW ALREADY PROVED THAT CLAIM 22 IS INVALID. ..................11

        B.    TRUEPOSITION DOES NOT — AND CANNOT — RAISE ANY
              SUBSTANTIVE DISPUTE WITH ANDREW'S INVALIDITY PROOFS
              REGARDING CLAIM 31. ..........................................................................13

        C.    TRUEPOSITION'S OBJECTION TO ANDREW'S KONO TRANSLATION IS
              BASELESS, AND NOW MOOTED. ............................................................17

        D.    TRUEPOSITION'S OTHER COMPLAINTS ARE EQUALLY GROUNDLESS. ....18

              1.    Dr. Goodman's Analysis Was Proper.........................................18

              2.    Dr. Goodman's Analysis of the Means-Plus-Function
                    Limitations Was Proper. ...........................................................19

VI.     CONCLUSION....................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Amazon.com, Inc. v. Barnesandnobles.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001).......................................................................... 19, 22

*Ampex Corp. v. Eastman Kodak Co.*,
    461 F. Supp. 2d 232 (D. Del. 2006).................................................................... 24

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
    412 F.3d 1291 (Fed. Cir. 2005)............................................................................ 12

*DeMarini Sports, Inc. v. Worth, Inc.*
    239 F.3d 1314 (Fed. Cir. 2001)............................................................................ 20

*Glaverbel Societe Anonyme v. Northlake Mktg & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir. 1995)............................................................................. 17

*K-2 Corp. v. Salomon S.A.*,
    191 F.3d 1356 (Fed. Cir. 1999)............................................................................ 20

*Laborers' Int'l Union v. Foster Wheeler Corp.*,
    26 F.3d 375 (3d Cir. 1994)................................................................................... 16

*Marquip, Inc. v. Fosber Am., Inc.*,
    198 F.3d 1363 (Fed. Cir. 1999)............................................................................ 20

*McKesson Info. Solutions LLC v. TriZetto Group, Inc.*,
    426 F. Supp. 2d 197 (D. Del. 2006).................................................................... 24

*Oxford Gene Tech., Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004).................................................................... 24

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
    998 F.2d 1224 (3d Cir. 1993)............................................................................... 17

*Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.*,
    2002 WL 531555 (D. Del. March 26, 2006)........................................................ 16

*Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*,
    904 F.2d 677 (Fed. Cir. 1990)............................................................................. 20

**Statutes**

35 U.S.C. § 102(b) .................................................................................................. 5

35 U.S.C. § 112........................................................................................................ 10

**Table of Authorities (cont.)**

**Rules**

Local Rule 7.1.3 (c)(2)............................................................................................... 14

## I.    INTRODUCTION

TruePosition has moved for summary judgment on Andrew's invalidity claims on the theory that Andrew cannot prove its invalidity case.    It is remarkable that TruePosition would even bring this motion.  In attempting to distinguish the asserted '144 patent claims from the prior art Kono reference on which Andrew relies, TruePosition's invalidity expert witness has submitted three different rebuttal reports, expressing three different opinions, all attempting to get around Kono while trying to preserve some semblance of an infringement case.

TruePosition cannot assert its claims against Andrew without those claims also reading on the prior art Kono reference, rendering the claims invalid.    On the infringement side of the case, TruePosition has taken a very expansive view of its patent claims.   Indeed, its infringement expert witness (who is not the same individual as its invalidity expert) has stretched the scope of the asserted patent claims past equivalence, arguing in at least one instance that the accused subject matter does not even have to be equivalent to fall within the scope of the claim.  With a view that broad, there is no way TruePosition can sustain the validity of its asserted claims.   At a minimum, there are issues of fact as to whether TruePosition's claims remain valid if construed as broadly as TruePosition would like them to be for its infringement case.

Andrew argues all five asserted claims (1, 2, 22, 31, and 32) are invalid. Although TruePosition seeks to have Andrew's entire invalidity case dismissed, it does not even address the substance of Andrew's invalidity claims for asserted claim 31. TruePosition's silence speaks volumes about the strength of its position.  Andrew has analyzed the invalidity of claim 31 below, proving the claim is invalid in light of Kono.

Finally, as Andrew demonstrated in its pending summary judgment motion, asserted claim 22 is invalid as a matter of law for indefiniteness. *See* D.I. 146. Claim 22 is a big focus of TruePosition's instant motion, but its arguments are all academic in light of Andrew's pending motion for invalidity.

For all of these reasons, and the reasons explained below, TruePosition's motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

TruePosition filed its Complaint on October 25, 2005, accusing Andrew of infringing the '144 patent. D.I. 1. Andrew filed its Answer, Affirmative Defenses and Counterclaims on December 15, 2005. D.I. 13. Andrew has counterclaimed for noninfringement and invalidity, and unfair competition, fraud and estoppel. Amended complaints and thus, amended answers and counterclaims, were filed. Fact discovery closed November 17, 2006. D.I. 94. Expert discovery closed January 24, 2007. *Id.* The parties currently are briefing summary judgment and claim construction issues.

## III.    SUMMARY OF ARGUMENT

1.      TruePosition has no basis to move for summary judgment on Andrew's invalidity claims. TruePosition accuses Andrew of infringing five claims (claims 1, 2, 22, 31 and 32). Andrew has already proven that asserted claim 22 is invalid for indefiniteness. (*See* D.I. 146) TruePosition raises no substantive challenge to Andrew's invalidity proofs regarding asserted claim 31, and Andrew demonstrates below that claim 31 is invalid in light of the prior art Kono reference. The remaining asserted claims are likewise invalid in light of the prior art Kono reference, if they are interpreted broadly enough to cover Andrew's accused products.

2

2.      TruePosition also seeks summary judgment based on an evidentiary objection. It objects that Andrew's invalidity expert, Dr. Goodman, used an uncertified translation of the Kono reference in his expert report. TruePosition's evidentiary objection is baseless and contrary to the law, but in any event Andrew has mooted the objection by providing a certified translation of Kono that is identical to the uncertified translation Dr. Goodman used in his report.

3.      TruePosition's remaining complaints, which concern Dr. Goodman's analysis, are equally groundless. First, the bulk of TruePosition's complaint regarding Dr. Goodman is only academic because it relates to claim 22, which Andrew already proved is invalid for indefiniteness. Second, TruePosition is also wrong on the merits. Dr. Goodman's analysis was proper: (a) his invalidity analysis uses the same claim scope TruePosition argues for its infringement case; and (b) his identification of function and structure for the means-plus-function claims matches the analysis TruePosition's expert used on the infringement side of the case. It is well settled that claims must be interpreted the same way for infringement and invalidity purposes, which is exactly what Dr. Goodman did.

4.      At a minimum, there are numerous fact issues presented by TruePosition's motion (including for example issues relating to the proper scope of equivalence of means-plus-function limitations), which makes summary judgment in TruePosition's favor inappropriate. TruePosition's motion should be denied.

3

## IV.    COUNTERSTATEMENT OF FACTS

### A.    THE '144 PATENT.

The '144 patent is titled "Cellular Telephone Location System." It issued July 5, 1994, based on a May 7, 1993 filing date. '144 Patent (A1).[1] It relates generally to a system for locating mobile phones in a cellular network. *Id.* TruePosition accuses Andrew of infringing claims 1, 2, 22, 31 and 32 of the '144 patent. Claims 1, 22 and 31 are independent claims; claims 2 and 32 are dependent claims.

The asserted claims require a cellular phone to be located using transmissions sent over a specific channel called a "reverse control channel." *E.g.,* '144 Patent at Claim 1 (A20) ("A cellular telephone location system for determining the locations of multiple mobile cellular telephones each initiating periodic signal transmission over one of a prescribed set of reverse control channels"); Claim 22 (A28) ("mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of reverse control channels"); Claim 31 (A28) ("one or more cellular telephones each initiating periodic signal transmissions over one of a prescribed set of reverse control channels").

A "reverse control channel" is a "shared" channel. Goodman Dec. ¶ 11(l), Feb. 2, 2007 (A279). It has a many-to-one property in that it is simultaneously allocated to multiple mobile phones in a cellular network. *Id.* The '144 patent specification further explains that the patented technology operates by using transmissions that already occur

---

[1] Citations to "A__" are to D.I. 150, Andrew's Appendix of Exhibits to 1) Opening Brief in Support of Motion for Summary Judgment of Invalidity of Claim 22 of the '144 Patent for Indefiniteness, 2) Opening Brief in Support of Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,327,144, and 3) Andrew Corporation's Construction of Certain Claim Limitations of U.S. Patent No. 5,327,144.

periodically in the cellular network. '144 Patent col.4 ll.41-42 (A18) ("In contrast, control channel transmissions already occur periodically in cellular systems.")

### B. DURING PROSECUTION OF THE '144 PATENT, TRUEPOSITION DISCLAIMED FROM THE SCOPE OF ITS CLAIMS THE METHODOLOGY IT NOW ACCUSES OF INFRINGEMENT.

During prosecution of the '144 patent, the applicants emphasized to the PTO — and the public — that the alleged invention claimed in the '144 patent determines the location of mobile cellular telephones by monitoring periodic reverse control transmissions initiated by the mobile cellular phones. *See generally,* May 7, 1993 Information Disclosure Statement Supporting Petition to Make Special (A219-229). Indeed, the applicants emphasized their alleged invention locates a mobile cellular phone by monitoring the control channel transmissions the cellular phone already periodically transmits during normal operation:

> These patents lack any disclosure or suggestion of a system or method for locating mobile cellular telephones by monitoring control channel signals and processing such signals to obtain location information. As discussed in applicants' specification, there are numerous advantages provided by monitoring control channels to track the locations of cellular telephones.... *[C]ontrol channel transmissions already occur periodically in cellular systems....*

*Id.* at 9-10 (A227-228) (emphasis added). TruePosition adopts that same interpretation of the '144 patent to support its summary judgment motion. *See* D.I. 135 at 5 ("It [TruePosition's system] determines the cell phone's position from signals that the phone sends to the cellular network as part of the phone's normal operation.").

In contrast to the system claimed in the '144 patent, the Andrew Geometrix® system being deployed in Saudi Arabia — and accused by TruePosition of infringement — does not locate phones using signals sent by the phone to the cellular network as part of the phone's normal operation. Instead, the accused Andrew Saudi Arabia system uses

5

a methodology called "MT-LR," which means mobile-terminated location request. Beck Dep. 181:14-21, Sep. 22, 2006 (B109). MT-LR does not involve the use of "signals that the phone sends to the cellular network as part of the phone's normal operation." Instead, it involves a request through a cellular network to locate a mobile phone. Anderson Dep. 163:19-164:10, Sep. 21, 2006 (A89-90). The type of MT-LR that TruePosition accuses of infringement is called "idle-mode MT-LR." Idle-mode MT-LR is used when a mobile phone is turned on but not in use (i.e., idle).

### C.    THE PRIOR ART KONO REFERENCE.

Japanese Laid-Open Patent Application Publication No. H3-239091, named inventor Mitsunori Kono ("Kono"), was filed February 16, 1990 and published October 24, 1991 — over a year before the May 7, 1993 filing date of the application for the '144 patent. *See* B2. Kono is prior art to the '144 patent under 35 U.S.C. § 102(b) (a patent is invalid if "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States.").

Kono states, "[t]his invention . . . has as its object to make it possible to measure the distance between a base station and a moving body, and also to produce a moving body radio communication apparatus that can locate the position of a moving body." Kono at 3 (B4). Kono teaches, "[t]he moving body radio communication apparatus of this invention is provided with a plurality of base stations that possess a shared channel reception means that receives position locating signals from a moving body using shared channels that are allotted jointly, a switching station that receives data in the form of these position locating signals, and a position locating means that is connected to the

switching station, inputs the above-mentioned data, and locates the position of a moving body." *Id.*

In addition, Kono teaches that: "[f]urthermore, when some of the shared channel receivers of the base stations receive the position locating signal from the mobile equipment, the absolute time or the relative time when the position locating signal arrives is determined by correlation detecting the unique word contained therein, and reports to the switching station via the control devices data such as the difference in arrival time of position locating signals with respect to the various base stations. The base station forwards these data to the position location calculating device, and the position of the mobile equipment is calculated." *Id.* at 4 (B5) (reference numerals omitted).

Kono also teaches: "position location stations [that] are provided to increase the accuracy of locating the position of the mobile equipment, and when the mobile equipment transmits a position locating signal using a shared channel, the arrival time is measured, and the data is reported to the switching station. The switching station transmits the data from the base stations and the data from the position locating stations to the position locating calculating device, causing the position of the mobile equipment to be calculated." *Id.* at 6 (B7) (reference numerals omitted).

Kono expressly teaches the "MT-LR" methodology TruePosition accuses of infringement, called "command-response" in Kono:

> At this point, *if there is a request to locate the position of a specific mobile equipment 5* at the junction point 21 connecting to the public telecommunications network, then the *exchange station 1 issues a command* to the base stations 3a – 3n to call and locate the position of the mobile equipment 5. When this is received, the control device 11a – 11n radiates a call signal in the space from the antenna 4a – 4n via the control channel transceivers 12a – 12n and the

7

> antenna-sharing devices 15a – 15n to call the mobile
> equipment 5. ***The mobile equipment 5 stands by to receive
> the signal with strongest electrical field from among the
> radiated position locating call signals radiated by the base
> station 3a, using the control channel, and when this
> position locating call signal is received, it immediately
> transmits a response signal, switching to a shared
> channel and emitting a position locating signal*** which is a
> burst digital signal.

Kono at 4 (B5) (emphasis added).

> **D.    IF TRUEPOSITION TRIES TO READ THE ASSERTED CLAIMS ON
> ANDREW'S ACCUSED PRODUCTS, THE CLAIMS ARE INVALID IN LIGHT
> OF KONO.**

Andrew has retained Dr. David J. Goodman as an expert witness for invalidity

and infringement issues in this case. As Dr. Goodman explains in his Declaration, he is a

Professor of Electrical and Computer Engineering at Polytechnic University in Brooklyn,

New York. Goodman Dec. at ¶ 2, Feb. 15, 2007 (B111). From February 2006 through

February 2007, Dr. Goodman was on temporary assignment as a Program Director at the

National Science Foundation. *Id.* He previously worked for Bell Laboratories, and has

extensive experience in performing and managing research in telecommunications and

digital signal processing. *Id.* at ¶¶ 4-5 (B111-112). He has studied and been involved

with GSM cellular networks for approximately 20 years. *Id.* at ¶¶ 2-9 (B111-113). He

has published numerous articles, and has also published textbooks on which

TruePosition's prior expert witnesses have relied in rendering their opinions.

TruePosition's July 28, 2003 Report of Stuart Schwartz at 21, ¶ 58 (A114).

Dr. Goodman has submitted an expert report and provided deposition testimony

explaining the claims of the '144 patent would read on the prior art Kono reference, and

therefore be invalid, if interpreted broadly enough to cover Andrew's accused Saudi

Arabia products. Expert Report of Dr. David Goodman on the Invalidity of U.S. Patent

No. 5,327,144 (B15-47) (hereinafter "Goodman Invalidity Report"); Goodman Dep. 87:14-88:15 (B55-56), 164:19-25 (B61), 124:25-125:12 (B57-58), 159:25-160:8 (B59-60), Jan. 15, 2007.   Because Dr. Goodman is Andrew's expert witness for both infringement and invalidity issues, he would know if TruePosition's infringement contentions are broad enough to render the asserted claims invalid.  As a practical matter, TruePosition's infringement contentions are so broad they amount to claiming equivalence and beyond, which at a minimum creates an issue of fact as to whether TruePosition can sustain the validity of the asserted claims if it pushes forward with its infringement case against Andrew.

>        **E.    TRUEPOSITION'S INVALIDITY EXPERT WITNESS HAS SUBMITTED THREE DIFFERENT REBUTTAL INVALIDITY REPORTS AND HAS FLIP-FLOPPED HIS OPINION ON KONO.**

On December 22, 2006, TruePosition's invalidity expert witness, Dr. Brian Agee, submitted a rebuttal invalidity report addressing Dr. Goodman's opinions regarding Kono.  In that report, Dr. Agee distinguished the "command-response" mode taught by Kono from the '144 patent:

> Kono fails to disclose or teach any locating means for automatically determining the locations of cellular telephones.  Instead, it teaches a "command-respond" approach in which position location only occurs after a command (position location call) is sent from either the exchange office (based on unexplained criteria) or the base transceiver station.

December 22, 2006 Expert Report Of Brian G. Agee, Ph.D., P.E. Response To Dr. David Goodman's Report On The Validity Of U.S. Patent No. 5,327,144 at 16 (B65) (hereinafter "December 22 Agee Report").

Dr. Agee further opined that:

> Kono fails to teach mobile initiation of signals used for position location. Instead, position location signals are always transmitted in response to a call from the base station transceiver.

*Id.* at 8 (B64).

Dr. Agee's above-position on Kono destroys TruePosition's infringement case with respect to Andrew's accused Saudi Arabia products, because those products only locate a cellular phone when specifically tasked to do so by the cellular network (*See, for example,* Beck Dep. 178:25-179:9 (B109.1-109.2)) — precisely what Dr. Agee distinguished in his December 22 report from the scope of the '144 patent claims.

A few weeks after Dr. Agee submitted his December 22 report, TruePosition's litigation counsel called Dr. Agee and convinced him to change his report to remove the damaging language. Agee Dep. 15:23-16:13 (B68), 149:10-15 (B77); 154:2-22 (B78), January 24, 2007. Dr. Agee complied. He submitted a substitute rebuttal report on January 2, 2007, removing his original language that conflicts with TruePosition's infringement position.

Dr. Agee then submitted another version of his rebuttal report at his January 24, 2007 deposition, further changing his "opinion" on Kono's applicability to the '144 patent. Agee Dep. 29:18-30:7 (B71-72); 35:3-5 (B75). Dr. Agee has therefore submitted three rebuttal expert reports in this matter, all directed to Kono's applicability to the '144 patent, and all expressing different opinions. That alone creates issues of fact.

## V.    ARGUMENT

TruePosition asserts claims 1, 2, 22, 31 and 32 against Andrew. Each asserted claim is invalid:

- Claim 22 is invalid as a matter of law, because the '144 patent specification does not disclose adequate structure for the "database means" limitation required by claim 22. Andrew has moved for summary judgment that claim 22 is invalid. D.I. 145 and 146.

- If any asserted claim is interpreted broadly enough to cover Andrew's accused products, the claim is invalid in light of the prior art Kono reference. This question inherently presents disputed factual issues, because it turns on TruePosition's equivalency analyses and its application of means-plus-function limitations to Andrew's accused products, which are hotly-contested fact issues.

Despite the invalidity problems TruePosition has with its case, and despite its invalidity expert's changing positions on the applicability of Kono to the asserted '144 patent claims, TruePosition nonetheless moves for "partial summary judgment that Andrew cannot prove its claims of invalidity." D.I. 135. In bringing its motion, TruePosition must have reviewed the wrong record, because the record in this case in no way supports TruePosition's motion but instead confirms Andrew will prevail on its invalidity claims.

## A.    ANDREW ALREADY PROVED THAT CLAIM 22 IS INVALID.

Andrew demonstrated in its pending summary judgment motion (D.I. 146) that claim 22 is invalid for indefiniteness. The grounds for that motion are summarized below. [2]

Claim 22 requires a "database means" limitation that reads:

---

[2] Although Andrew demonstrates that claim 22 is invalid in light of Kono, all Andrew must show to defeat TruePosition's motion for summary judgment is a dispute of material fact. Andrew's proof of invalidity far exceeds this burden.

> **database means** for storing location data identifying the cellular
> telephones and their respective locations, and for providing access to said
> database to subscribers at remote locations.

TruePosition admits the "database means" is a means-plus-function limitation,
and argues for a means-plus-function construction of "database means." D.I. 142 at 31.

Under the patent laws, for claim 22 to be valid, the '144 patent specification must
disclose adequate structure for performing the function of the "database means," which is
"storing location data identifying the cellular telephones." This is an issue of law.
Failure to disclose adequate structure corresponding to the recited function in accordance
with 35 U.S.C. § 112, paragraph 1, results in the claim being of indefinite scope, and thus
invalid, under 35 U.S.C. § 112, paragraph 2. *Default Proof Credit Card Sys. v. Home
Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (affirming grant of summary
judgment based on indefiniteness) ("one must set forth in the specification an adequate
disclosure showing what is meant by that language. If an applicant fails to set forth an
adequate disclosure, the applicant has in effect failed to particularly point out and
distinctly claim the invention as required by the second paragraph of section 112.")
(citations omitted). The '144 patent specification does not disclose adequate structure for
"storing location data identifying the cellular telephones." Claim 22 therefore is invalid
for indefiniteness.

TruePosition has no basis to argue Andrew cannot prove the invalidity of claim
22; Andrew has already done it. TruePosition's motion as to claim 22 should be denied.

12

**B.    TRUEPOSITION DOES NOT — AND CANNOT — RAISE ANY SUBSTANTIVE DISPUTE WITH ANDREW'S INVALIDITY PROOFS REGARDING CLAIM 31.**

Nowhere in its 26-page brief does TruePosition make a substantive argument that Kono does not anticipate claim 31. TruePosition's silence is not surprising. It has no way to sustain the validity of claim 31 in light of Kono.[3]

Claim 31 reads as follows:

> A method for determining the location(s) of one or more mobile cellular telephones periodically transmitting signals over one of a prescribed set of reverse control channels, comprising the steps of:
>
> (a) receiving said control channels at at least three geographically-separated cell sites;
>
> (b) processing said signals at each cell site to produce frames of data, each frame comprising a prescribed number of data bits and time stamp bits, said time stamp bits representing the time at which said frames were produced at each cell site;
>
> (c) processing said frames of data to identify individual cellular telephone signals and the differences in times of arrival of said telephone signals among said cell sites; and
>
> (d) determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals.

In his invalidity expert report, Dr. Goodman explained in detail how Kono anticipates claim 31, particularly if TruePosition tries to read claim 31 on Andrew's accused products. Goodman Invalidity Report at 13-14, 15, 18-19 (B27-28, B29, B32-33). Dr. Goodman conducted a thorough, limitation-by-limitation analysis that tracks the infringement analysis provided by TruePosition's infringement expert witness, Oded Gottesman. Each limitation of claim 31 is set forth below, along with Dr. Gottesman's

---

[3] Although Andrew demonstrates that claim 31 is invalid in light of Kono, all Andrew must show to defeat TruePosition's motion for summary judgment is a dispute of material fact. Andrew's proof of invalidity far exceeds this burden.

and Dr. Goodman's analyses, which confirms that TruePosition cannot read claim 31 on

Andrew's accused products without also reading the claim on the prior art Kono

reference.

• **First limitation:**    A method for determining the location(s) of one or more mobile cellular telephones periodically transmitting signals over one of a prescribed set of *reverse control channels*:

A "reverse control channel" is a shared channel.  Goodman Dec. ¶ 11(l), Feb. 2,

2007 (A279).  As Dr. Goodman explained in his invalidity expert report, Kono teaches a

system for locating mobile phones using shared channels.  Goodman Invalidity Report at

18  (B32) (in Kono, "FIG. 1 shows a configuration of a moving body position locating

apparatus"; "a moving body transmits position locating signals using shared channels.").

Thus, TruePosition cannot read this limitation on Andrew's accused products without

also reading it on Kono.  At a minimum, there is an issue of fact.

• **Second limitation:**    receiving said control channels at at least three geographically-separated cell sites:

Dr. Gottesman's "analysis" as to why Andrew's accused products allegedly

satisfy this limitation is the *non-sequitur* that "Andrew must have receive[d] such signals

because TDOA requires receipt of a signal at a minimum of three cell sites."  Expert

Report Of Oded Gottesman, Ph.D at 41 (B85) (hereinafter "Gottesman Report").  Dr.

Goodman provides an analysis based on the teachings of Kono, explaining that in Kono,

"[16]a-[16]n are [shared] channel transceivers that transmit and receive signals for the

control channels allotted for each of the base stations 3a-3n."[4]  TruePosition cannot read

---

[4] The portion of Dr. Goodman's report quoted above contained a typographical error that Dr. Goodman corrected at his deposition.  Goodman Dep. 69:10-70:4, Jan. 15, 2007 (B49).

this limitation on Andrew's accused products without also reading it on Kono. At a minimum, there is an issue of fact.

•    **Third Limitation:**    processing said signals at each cell site to produce frames of data, each frame comprising a prescribed number of data bits and time stamp bits, said time stamp bits representing the time at which said frames were produced at each cell site:

Dr. Gottesman argues this limitation is satisfied by a C programming language data structure in Andrew's accused products. Gottesman Report at 41-42 (B85-86). Dr. Goodman's analysis of Kono matches. Goodman Invalidity Report at 18 (B32) ("Kono teaches software and processors in hardware unit 55 that determine and format time of arrival information . . . "the time measurement circuit 53 measures the absolute time of the above-mentioned trigger" . . .). TruePosition cannot read this limitation on Andrew's accused products without also reading it on Kono. At a minimum, there is an issue of fact.

•    **Fourth Limitation:**    processing said frames of data to identify individual cellular telephone signals and the differences in times of arrival of said telephone signals among said cell sites:

Dr. Gottesman's infringement analysis for this limitation consists of a paragraph on page 42 of his report that essentially just parrots back the claim language. Gottesman Report at 42 (B86). His report is silent as to how Andrew's accused products allegedly "identify individual cellular telephone signals" as required by the claim, and he continued to punt that issue when pressed at his deposition. Gottesman Dep. 251:2-22, Jan. 11, 2007 (B98). Given the breadth with which TruePosition reads this limitation, Dr. Goodman's analysis that Kono "reports to the switching station 1 via the control devices 11a-11n data such as the difference in arrival time of position locating signals with

15

respect to the various base stations 3a-3n" Goodman Invalidity Report at 19 (B33), demonstrates this limitation is taught by Kono. At a minimum, there is an issue of fact.

- **Fifth Limitation:** determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals:

For this limitation, Dr. Gottesman's infringement analysis is that "Andrew determined, on the basis of the differences in times of arrival, the locations of the cellular telephone responsible for the standalone dedicated control channel signals." Gottesman Report at 42 (B86). Dr. Goodman explained in his expert report that Kono "reports to the switching station 1 via the control devices 11a-11n data such as the difference in arrival time of position locating signals with respect to the various base stations 3a-3n. The base station 1 forwards these data to the position location calculating device 2, and the position of the mobile equipment 5 is calculated." Goodman Invalidity Report at 19 (B33). Here again, TruePosition cannot read this limitation on Andrew's accused products without also reading it on Kono. At a minimum, there is an issue of fact.

In sum, TruePosition's motion should be denied. With good reason, TruePosition raises no substantive challenge to Andrew' claim that Kono anticipates claim 31. And TruePosition cannot raise any such argument in its reply brief. Local Rule 7.1.3 (c)(2); *Laborers' Int'l Union v. Foster Wheeler Corp.*, 26 F.3d 375, 398 (3d Cir. 1994); *Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.*, 2002 WL 531555, *3 (D. Del. March 26, 2006). TruePosition's only available argument regarding claim 31 is its objection to Andrew's translation of Kono, which is groundless and mooted.

**C.   TRUEPOSITION'S OBJECTION TO ANDREW'S KONO TRANSLATION IS BASELESS, AND NOW MOOTED.**

TruePosition makes a technical — and incorrect — argument that Andrew cannot prove invalidity of any asserted claim because Dr. Goodman used an uncertified translation of Kono for his expert report.[5]  D.I. 135 at 20-23.  Andrew has procured a certified, authenticated, sworn translation of Kono identical to the uncertified version Dr. Goodman used in his expert report.  Andrew has produced that certified translation to TruePosition and has included it in this filing.  *See* B1-14.  That should end, and moot, TruePosition's objection.

Even without Andrew's certified translation of Kono, TruePosition's objection is unfounded.  Andrew's Kono translation is part of the deposition record in this case.  *See* Goodman Dep. 73:17-74:9, Jan. 15, 2007 (B52-53) (introducing the translation into evidence as PX466).  It therefore may be considered on summary judgment.  *See Glaverbel Societe Anonyme v. Northlake Mktg & Supply, Inc.*, 45 F.3d 1550, 1561 (Fed. Cir. 1995) (because unauthenticated document was made part of deposition record, trial court erred by not considering the unauthenticated document in summary judgment proceeding).  Also, because Andrew's uncertified translation of Kono is capable of being admissible at trial if authenticated (as it is now), TruePosition's objection has no merit on summary judgment.  *Cf. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1234 n.9 (3d Cir. 1993) ("[I]n this circuit [hearsay statements] can be

---

[5] Before bringing its motion, TruePosition never raised any evidentiary objection to Andrew's translation of Kono.  Had TruePosition raised such an objection, Andrew would have worked with TruePosition to cure it.  Any objection could not have been substantive because, as Dr. Goodman attests in his declaration (Goodman Dec. ¶ 12, Feb. 15, 2007 (B114)), Andrew's uncertified translation of Kono does not differ substantively from the certified translation procured by TruePosition and touted in its opening brief.  D.I. 135 at 7.  And any differences, and whether they are material, would be an issue of fact.

considered on a motion for summary judgment [if they are] capable of being admissible at trial.").

For these reasons, TruePosition's evidentiary objection to Andrew's Kono translation is without merit.

### D.    TRUEPOSITION'S OTHER COMPLAINTS ARE EQUALLY GROUNDLESS.

TruePosition raises two final complaints.   First, TruePosition argues Dr. Goodman did not conduct a proper analysis.  D.I. 135 at 13-16.  Second, TruePosition argues Dr. Goodman did not base his opinions on a proper construction of the means-plus-function limitations in claims 1 and 22.    D.I. 135 at 16-20.    Neither of TruePosition's arguments has merit.

### 1.    Dr. Goodman's Analysis Was Proper.

In addition to being Andrew's invalidity expert witness, Dr. Goodman is also Andrew's expert witness on infringement matters.   Dr. Goodman prepared a rebuttal report thoroughly analyzing TruePosition's infringement allegations.   He therefore is perfectly positioned to determine whether TruePosition's reading of the asserted claims on Andrew's accused products also reads the claims on the Kono reference.  *See, e.g.,* Goodman Dep. 88:6-10, Jan. 15, 2007 (B56) ("I have done the infringement analysis as well as the invalidity analysis, so I'm aware of how TruePosition interprets this . . .").[6]

---

[6] TruePosition incorrectly states Dr. Goodman based his invalidity opinion on a second-hand understanding of the accused product.  Dr. Goodman is a renowned expert in this field, and he conducted an appropriate analysis.  *See, e.g.,* Goodman Dep. 360:15-362:8, Jan. 16, 2007 (B103-105) (discussing learning about accused products from Andrew employees); *id.* 362:19-363:5 (discussing review of software release notes); *id.* at 363:10-17 (B106) (discussing background in cellular communications); *id.* at 363:25-364:6 (B106-107) (discussing review of certain source code).  In any event, TruePosition's complaints about Dr. Goodman's analysis present issues of fact inappropriate for resolution on summary judgment.

Dr. Goodman's opinion is that if TruePosition reads the asserted claims on Andrew's accused products, the claims are invalid in light of Kono. Goodman Invalidity Report at, for example, 9-10, 14-15 (B23-24, B28-29); Goodman Dep. 87:14-88:15 (B55-56), 164:19-25 (B61), 124:25-125:12 (B57-58), 159:25-160:8 (B59-60), Jan. 15, 2007. Dr. Goodman's approach is in full accord with the law. *E.g., Amazon.com, Inc. v. Barnesandnobles.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both infringement and validity analyses. A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another way to find infringement.") (citations omitted). Dr. Goodman has not adopted a renegade claim interpretation, and TruePosition has no basis to criticize his approach.[7]

### 2.    Dr. Goodman's Analysis of the Means-Plus-Function Limitations Was Proper.

TruePosition argues it should receive summary judgment because, with respect to the means-plus-function limitations required by the asserted claims, Dr. Goodman did not directly compare the structure disclosed in the patent specification with the structure disclosed in Kono. D.I. 135 at 16-20; 23-25.

TruePosition mischaracterizes Dr. Goodman's opinions and its own infringement contentions. For the means-plus-function limitations at issue, TruePosition does not (and cannot) argue that the structure disclosed in the '144 patent specification is *identical* to

---

[7] With respect to the claim construction TruePosition mocks on page 15 of its opening brief, TruePosition misses Dr. Goodman's point. Dr. Goodman disagrees with that construction and testified it is the construction TruePosition would require in order to find infringement. Goodman Dep. 173:14-17, Jan. 15, 2007 (B62). If the construction is absurd, it is only because TruePosition cannot prove infringement under a proper claim construction. Moreover, the construction is academic, because it relates to claim 22, which is invalid for indefiniteness as explained in Andrew's pending summary judgment motion. *See* D.I. 146.

any structure in Andrew's accused products.  Gottesman Report at, for example, 36-37, 49-50 (B81-82, B88-89).

Rather, TruePosition argues an *equivalency* analysis for each means-plus-function limitation.  *Id.*  If TruePosition's "equivalency" application of an asserted claim is broad enough to cover Kono, the claim is invalid.  *See DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1332 (Fed. Cir. 2001) ("[T]here can be no infringement under the doctrine of equivalents if the asserted scope of equivalency would encompass the prior art.") (citing *Marquip, Inc. v. Fosber Am., Inc.*, 198 F.3d 1363, 1367 (Fed. Cir. 1999) (*"Based on the fundamental principle that no one deserves an exclusive right to technology already in the public domain, this court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art."); *see also generally id.* at 1367-68 (discussing relationship between prior art and doctrine of equivalents; entering summary judgment of non-infringement where the patentee did not "show any genuine disputes of material fact to satisfy its burden 'to prove that the range of equivalents which it seeks would not ensnare the prior art.'"); *see also K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356, 1366-67 (Fed. Cir. 1999) ("[The] doctrine of equivalents is limited. It cannot allow a patent claim to encompass subject matter that could not have been patented; nor can it be used to ignore the actual language of the patent. Thus, we have held that the doctrine of equivalents cannot allow a patent to encompass subject matter existing in the prior art.") (citing *Wilson Sporting Goods Co. v. David Geoffrey & Assoc.*, 904 F.2d 677, 684 (Fed. Cir. 1990) ("[A] patentee should not be able to obtain, under the doctrine of equivalents, coverage which he could not lawfully have obtained from the PTO by literal claims.")).

For each of the means-plus-function limitations at issue, TruePosition's infringement application undertaken by its expert Dr. Gottesman is broad enough to cover the Kono structure identified by Dr. Goodman, or at a minimum, there is an issue of fact. Specifically:[8]

**"Means for processing...to generate a table...."** Dr. Gottesman takes a broad, vague view of this limitation for infringement purposes. He says it covers:

> the computer processor in the GCS, and the algorithms running on the computer processor, including the code in the PreFixMix function

Gottesman Report at 36 (B81). The Andrew software code cited by Dr. Gottesman is voluminous. When printed, one version of code totals approximately 73,000 pages. *See* Carlson Dep. 22:11-15, Oct. 16, 2006 (B117) (software version 2005.2.2 produced as AND000001-72979); *see also* Gottesman Dep. 82:2-14, Jan. 11, 2007 (B96) (printed source code is 21 boxes). Notwithstanding the amount of software code at issue, Dr. Gottesman's report does not identify any specific Andrew algorithms to support his opinion, though TruePosition argues that is an essential part of the analysis. D.I. 135 at 23-24.

Dr. Goodman specifically identifies the corresponding structure, and operation thereof, in Kono by explaining: "the base station *1* forwards these data to the position calculation device *2*, and the position of the mobile equipment is calculated...reports to switching station *1* via the control devices *11a-11n* data such as the difference in arrival time of position locating signals with respect to the various base stations *3a-3n*." Goodman Invalidity Report at 16 (B30). Because Dr. Gottesman's application of this

---

[8] The "database means" limitation is not included here because there is not adequate structure disclosed in the '144 patent specification.

21

limitation for infringement purposes is broad enough to cover the Kono structure identified by Dr. Goodman, there at a minimum is an issue of fact as to the question of invalidity.

**"Means for determining...."** In his report, Dr. Gottesman takes a broad, vague view of this limitation for infringement purposes. He says it covers:

> the programmed computer processor in the GCS is the same or equivalent structure as this claim element

Gottesman Report at 36 (B81).

When asked at his deposition how Andrew's accused algorithm (identified by Dr. Gottesman as "maximum likelihood estimate") and the algorithm in the patent ("least squares estimation") are equivalent, he disavowed having any opinion that the two are equivalent:

> **Q:    Could you also, please, Dr. Gottesman, demonstrate for me mathematically or otherwise how, in your opinion, maximum likelihood estimate is equivalent to least squares estimation.**
>
> A:    *I did not say that it is equivalent*; I said that it is aimed to achieve under -- it -- on the general sense, it is not the same thing. Under certain conditions, it is aimed to achieve the same thing. ... So, in a sense, what I am doing here is actually aimed to maximize the likelihood. Maximum likelihood is a term in probability. You cannot -- and you can define "probability" in different ways.

Gottesman Dep. 325:22-326:15, Jan. 12, 2007 (B100-101) (emphasis added).

Dr. Gottesman's infringement analysis of this claim limitation admittedly stretches broader than equivalents. TruePosition, therefore, cannot be heard to complain that Dr. Goodman's invalidity analysis is improper, and TruePosition cannot argue that it can restrict the invalidity analysis to a scope narrower than Dr. Gottesman's infringement analysis. *See, e.g., Amazon.com*, 239 F.3d at 1351 ("A patent may not, like a nose of

wax, be twisted one way to avoid anticipation and another way to find infringement."). Dr. Goodman specifically identifies the corresponding structure, and operation thereof, in Kono by explaining: "[i]n the Kono application the switching station 'receives data in the form of the position location signals' [and] forwards the data received from the base stations to the position locating device (2). The position locating device uses the data to calculate the position of the cellular telephone." Goodman Invalidity Report at 14 (B28). Given the breadth of Dr. Gottesman's application of this limitation for infringement purposes, there at a minimum is an issue of fact as to the question of invalidity.

**"Locating Means...."** Dr. Gottesman identifies the structure for the "locating means" limitation of Claim 22 as simply:

> the computer processor in the GCS, and the algorithms
> running on the computer processor, including the code in
> the PreFixMix and FixMix function

Gottesman Report at 63 (B93). His report does not identify any specific Andrew algorithms to support his opinion, though TruePosition argues that is an essential part of the analysis. D.I. 135 at 23-24.

Dr. Goodman specifically identifies the structure, and operation thereof, in Kono by explaining: "The elements of the Kono application that perform this function are the shared channel receivers in the base stations, the ultra-high precision clocks, the time measurement circuit, the switching station and the position locating device." Goodman Invalidity Report at 14 (B28). Dr. Goodman also states: "Kono teaches software and processors in control unit *55* that determine and format time of arrival information. 'The standard clock *54* is an ultra-high-precision clock, and the time measurement circuit *53* measures the absolute time of the above-mentioned trigger, and reports it to the switching station *1* from the control circuit *55* via the control device *11*....'"). *Id*. at 17 (B31).

23

Because Dr. Gottesman's application of this limitation for infringement purposes is broad enough to cover the Kono structure identified by Dr. Goodman, there at a minimum is an issue of fact as to the question of invalidity.[9]

## VI. CONCLUSION

For the reasons set forth above, Andrew respectfully requests that the Court deny TruePosition's Motion for Partial Summary Judgment That Andrew Cannot Prove Invalidity.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600

*Attorneys for Defendant Andrew Corporation*

---

[9] TruePosition's cited cases do not support its arguments regarding Dr. Goodman. If anything, the cases confirm that TruePosition's expert Dr. Gottesman conducted a faulty analysis. *See McKesson Info. Solutions LLC v. TriZetto Group, Inc.*, 426 F. Supp. 197, 202-203 (D. Del. 2006) (criticizing expert whose analysis was merely "that the accused products infringe the claim because they perform the same function as set out in the claim and 'the structure of the computer system disclosed …is included in, or is equivalent to, the structure of each product'"; criticizing other expert who: (a) admitted there was no limitation-by-limitation comparison in her report; (b) identified no structure in the accused product except software generally and (c) created her own five-part algorithm that did "not contain the functionality of all the limitations in the claims", "only incorporated the functionality of the claims, as opposed to any structure", and "none of the claims perform[ed] the entire algorithm" created by the expert); *Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 437 (D. Del. 2004) (expert "did not perform an element-by-element comparison of each claim to each prior art of each claim to each prior art reference"); *see also Ampex Corp. v. Eastman Kodak Co.*, 461 F. Supp. 2d 232, 234 (D. Del. 2006) (rejecting the application of *Oxford Gene* to motions for summary judgment) ("Ampex [the summary judgment movant] bases part of its argument on what appears to be a misunderstanding. It cites [*Oxford Gene*] as the basis for the proposition that "the proponent of obviousness is required to present an element-by-element comparison of the asserted claims to each prior art reference.") (internal citation omitted).

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


Dated: February 16, 2007

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 16, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on February 16, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

### BY ELECTRONIC MAIL AND FEDERAL EXPRESS

> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> David L. Marcus, Esq. [dmarcus@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> One Liberty Place, 46th Floor
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> alundgren@ycst.com
> *Attorneys for Defendant Andrew Corporation*