# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TruePosition, Inc.,                    )
                                       )
    **Plaintiff/**                      )
    **Counterclaim-Defendant,**         )
                                       )    **Civil Action No. 05-747-SLR**
    **v.**                             )
                                       )
Andrew Corporation,                    )
                                       )
    **Defendant/**                      )
    **Counterclaim-Plaintiff.**         )
_____)

## TRUEPOSITION'S BRIEF IN OPPOSITION TO ANDREW'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIM 22 OF THE '144 PATENT FOR INDEFINITENESS

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq.
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (212) 558-3588

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (*pro hac vice*)
Dale M. Heist, Esq. (*pro hac vice*)
David L. Marcus, Esq. (*pro hac vice*)
Kathleen A. Milsark, Esq. (*pro hac vice*)
Daniel J. Goettle, Esq. (*pro hac vice*)
Cira Center, 12th Floor
2929 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

# TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS...................................................... 1

II.    SUMMARY OF ARGUMENT ................................................................................ 2

III.   STATEMENT OF FACTS ..................................................................................... 4

       A.    The 144 Patent and Claim 22 ................................................................. 4

       B.    Andrew's Failure to Reveal Its "Database Means" Indefiniteness
             Defense.................................................................................................. 5

IV.    ARGUMENT ..................................................................................................... 11

       A.    The Court Should Strike Andrew's Surprise Indefiniteness Defense
             And Motion ......................................................................................... 11

             1.    Andrew's Failure to Disclose Its Indefinite Defense
                   Requires Automatic Exclusion Under Rule 37(c)(1) ............... 12

             2.    Andrew's Willful Disobedience of This Court's Scheduling
                   and Discovery Orders Should Result In Denial of Its
                   Surprise Motion................................................................... 16

             3.    Andrew Should Pay the Fees and Costs Incurred by
                   TruePosition in Responding to This Motion ............................. 18

       B.    Claim 22 of the 144 Patent Is Definite ................................................. 18

             1.    Andrew Must Prove Indefiniteness by Clear and
                   Convincing *Evidence* ............................................................. 19

             2.    Andrew's Attorney Argument Is Not Clear and Convincing
                   *Evidence* of Indefiniteness ..................................................... 22

             3.    One Having Ordinary Skill in the Art Would Recognize
                   "Database 20" as Being Adequate Structure Corresponding
                   to the "Database Means" for "Storing Location Data
                   Identifying the Cellular Telephones and Their Respective
                   Locations" in Claim 22 ........................................................... 23

                   a)    The Level of Ordinary Skill in the Art............................ 25

                   b)    One Having Ordinary Skill in the Art Would
                         Recognize "Database 20" as the Structure
                         Corresponding to the "Database Means" For
                         "Storing Location Data Identifying The Cellular

Telephones And Their Respective Locations" In
Claim 22 ................................................................................ 26

c)    The 144 Patent's Recitation and Discussion of
"Database 20" as the Structure for "Storing
Location Data Identifying The Cellular Telephones
And Their Respective Locations" Is Sufficient to
Make Claim 22 Definite .............................................................. 28

4.    Andrew Cannot Provide the Missing Evidence for the First
Time in Its Reply Brief ....................................................................... 32

5.    *Default Proof Credit Card Sys.,Inc. v. Home Depot U.S.A.,*
*Inc.* and the District Court Cases Andrew Has Cited Are
Inapposite ........................................................................................... 33

V.    CONCLUSION ............................................................................................. 35

## TABLE OF AUTHORITIES

### FEDERAL CASES

*AMEX, LLC v. Mopex, Inc.,*
    215 F.R.D. 87 (S.D.N.Y. 2002) ............................................................. 13, 15

*AstraZeneca AB v. Mutual Pharma. Co., Inc.,*
    278 F. Supp. 2d 491 (E.D. Pa. 2003) ...................................................... 15

*Atmel v. Information Storage Devices, Inc.,*
    198 F.3d 1374 (Fed. Cir. 1999).......................................... 20, 21, 23, 24, 34

*Budde v. Harley-Davidson,*
    250 F.3d 1369 (Fed. Cir. 2001)................................................ 20, 21, 23

*Chase Manhattan Mortgage Corp. v. Advanta Corp.,*
    2004 U.S. Dist. LEXIS 7377 (D. Del. Apr. 22, 1994) ...................... 14

*Creo Products v. Presstik, Inc.,*
    305 F.3d 1337 (Fed. Cir. 2002)............................................. 20, 21, 23, 24, 34

*DE Technologies, Inc. v. Dell, Inc.,*
    428 F. Supp. 2d 512 (W.D. Va. 2006) .................................................... 35

*Default Proof Credit Card System, Inc. v. Home Depot U.S.A., Inc.,*
    412 F.3d 1291 (Fed. Cir. 2005)........................................... 33, 34, 35

*Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
    469 F.3d 1005 (Fed. Cir. 2006).............................................. 24

*Eaton Corp. v. Parker-Hannifin Corp.,*
    2003 U.S. Dist. LEXIS 401 (D. Del. Jan. 10, 2003) ..................... 15, 24

*Enviro Corp. v. Clesta Cleanroom, Inc.,*
    209 F.3d 1360 (Fed. Cir. 2000)............................................. 15

*Exxon Research & Engineering Co. v. United States,*
    265 F.3d 1371 (Fed. Cir. 2001) ............................................ 20, 21

*Finch v. Hercules, Inc.,*
    1995 U.S. Dist. LEXIS 19805 (D. Del. Dec. 22, 1995) ................... 11

*Finisar Corp. v. The DirectTV Group, Inc.,*
    416 F. Supp. 2d 512 (E.D. Tex. 2006) ................................... 35

*Georgia-Pacific Corp. v. U.S. Gypsum Co.,*
　　1996 U.S. Dist. LEXIS 22616 (D. Del. Dec. 27, 1996), *rev'd on other*
　　*grounds,* 195 F.3d 1322 (Fed. Cir. 1999)..................................................... 13

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.,*
　　401 F.3d 1367 (Fed. Cir. 2005).......................................................... 20

*Lighting World, Inc. v. Birchwood Lighting, Inc.,*
　　382 F.3d 1354 (Fed. Cir. 2004).......................................................... 24

*Mas-Hamilton Group v. LaGard, Inc.,*
　　156 F.3d 1206 (Fed. Cir. 1998).......................................................... 24

*McKesson Information Solutions LLC v. The Trizetto Group, Inc.,*
　　2006 U.S. Dist. LEXIS 16097 (D. Del. Apr. 5, 2006)........................ 24

*McKesson Information v. The Trizetto Group, Inc.,*
　　2005 U.S. Dist. LEXIS 20434 (D. Del. 2005) ................................... 35

*Medical Instrumentation & Diag. Corp. v. Elektra AB,*
　　344 F.3d 1205 (Fed. Cir. 2003)..................................................... 24, 35

*Praxair, Inc. v. ATMI, Inc.,*
　　231 F.R.D. 457 (D. Del. 2004)........................................................... 17

*Praxair, Inc. v. ATMI, Inc.,*
　　445 F. Supp. 2d 460 (D. Del. 2006) ........................... 11, 12, 13, 14, 15

*Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.,*
　　2002 U.S. Dist. LEXIS 5180 (D. Del. Mar. 26, 2002)...................... 32

*Stambler v. RSA Security,*
　　212 F.R.D. 470 (D. Del. 2003)..................................................... 14, 15

*In re Student Finance Corp.,*
　　2004 U.S. Dist. LEXIS 4952 (D. Del. Mar. 23, 2004)...................... 32

*Thorn EMI N. America v. Intel Corp.,*
　　936 F. Supp. 1186 (D. Del. 1996) .................................................... 15

*Tracinda Corp. v. Daimlerchrysler AG,*
　　2005 U.S. Dist. LEXIS 6741 (D. Del. Apr. 20, 2005) ...................... 18

*W.L. Gore & Associates, Inc. v. Garlock, Inc.,*
　　721 F.2d 1540 (Fed. Cir. 1983)......................................................... 20

## FEDERAL STATUTES

35 U.S.C. § 102 ................................................................................................................... 6

35 U.S.C. § 103 ................................................................................................................... 6

35 U.S.C. § 112 ................................................................................................. 6, 12, 15, 23

Fed. R. Civ. P. 16 ......................................................................................................... 17, 18

Fed. R. Civ. P. 37 ..................................................................................................... 2, 12, 17

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action involving TruePosition's 144 patent (U.S. Patent No. 5,327,144) (B1-B31). The 144 patent relates to locating cellular telephones using time difference of arrival (TDOA) on transmissions over reverse control channels.

TruePosition filed its original Complaint against Andrew Corporation ("Andrew") on October 25, 2005 (D.I. 1). Various pleadings followed, culminating in the filing of TruePosition's Second Amended Complaint for Patent Infringement (D.I. 45) and Andrew's Answer and Counterclaim to Second Amended Complaint (D.I. 48). The pleadings closed on July 5, 2006 (D.I. 53). Fact discovery ended on November 17, 2006.

On November 22, 2006, the parties exchanged claim terms believed to be in dispute, together with their proposals for construction (B32-B34). On January 19, 2006, the parties filed a Joint Claim Construction Statement (D.I. 130). Expert discovery closed on January 24, 2007, and one week later TruePosition filed a motion for summary judgment that Andrew cannot prove its invalidity claims, which at that time were limited to anticipation by a Japanese patent application (D.I. 134).

On February 2, 2007, the parties filed opening claim construction briefs (D.I. 142, 149). TruePosition filed a motion for summary judgment on Andrew's standards-related counterclaims and affirmative defenses (D.I. 137). Andrew filed a motion for summary judgment of non-infringement (D.I. 147), and a surprise motion for summary judgment that claim 22 of the 144 patent is invalid for failure to provide structure corresponding to the "database means" recited in the claim (D.I. 145).

It is Andrew's surprise motion for summary judgment on claim 22 – based on a contention that Andrew has never before revealed -- that is the subject of this brief.

## II.    SUMMARY OF ARGUMENT

The Court should strike Andrew's surprise motion under Fed. R. Civ. P. 37(c)(1). Andrew's motion is based entirely upon a theory that Andrew never once raised during discovery, despite an explicit interrogatory calling for Andrew's invalidity contentions. Nor did Andrew once suggest during the exchange of claim construction positions that the "database means" limitation lacked corresponding structure.

Fidelity to the Federal Rules and the constraints of scheduling orders is critical to the Court's case management responsibilities and to the fair administration of justice. And this Court has warned litigants that it will not tolerate "trial by ambush" in civil litigation. But Andrew has engaged in trial by ambush nonetheless. To reveal an indefiniteness defense for the first time in a summary judgment motion, two-and-a-half months after the close of fact discovery and nearly three months after having been ordered by the Court to provide its invalidity contentions, is unfair to TruePosition and violates both the Federal Rules and this Court's orders. Andrew's knowing violations of the Court's Scheduling and September 25, 2006 discovery orders provide independent bases for striking Andrew's motion and awarding TruePosition fees under Rules 16(f) and 37(b)(2) as well.

Andrew's duplicity is not harmless. Had TruePosition known of Andrew's newly-adopted contentions, it could have chosen to rebut the presumption that the "database means" in claim 22 is a § 112 ¶ 6 limitation, it could have addressed Andrew's contention in its opening brief on claim construction, it could have had its expert address the theory in his report, and TruePosition could have addressed the allegation in a summary judgment motion of its own. Now, TruePosition and the Court will be deprived of full, fair and orderly briefing.

Because Andrew's motion should be stricken, the Court need not reach the merits at all. Even if it were to do so, however, Andrew failed to meet its burden of showing that there is no genuine issue of material fact with respect to its new "database means" contention. Andrew has the burden of proof on invalidity. It therefore needed to show, by clear and convincing evidence, that the 144 patent specification lacks disclosure of structure sufficient to be understood by one skilled in the art as being adequate to perform the functions recited in claim 22. But Andrew's motion is nothing but attorney argument. Andrew has pointed to no evidence whatsoever, and therefore has failed to *prove* anything at all.

TruePosition, on the other hand, will show, using expert testimony and evidence, that  i) one having ordinary skill in the art would readily and easily recognize that the 144 patent specification clearly links and associates "database 20" with the function of "storing location data identifying the cellular telephones and their respective locations" recited in claim 22; ii) databases were well know to those having ordinary skill in the art at the time the application for the 144 patent was filed; and iii) one having ordinary skill in the art would easily and readily understand the bounds of the "database means for storing location data identifying the cellular telephones and their respective locations" element in claim 22 in view of the 144 patent's specification and prosecution history.

Andrew failed to make out a prima facie case of indefiniteness by offering no evidence whatsoever in support of its motion, and TruePosition's expert testimony and evidence of definiteness will be unrebutted. Andrew's motion must therefore be denied.

### III.    STATEMENT OF FACTS

#### A.    The 144 Patent and Claim 22

In the early 1990's, TruePosition's founder and two other inventors conceived and developed a system that allowed cell phones to be located using "Time Difference of Arrival" (TDOA) on transmissions by phones over cellular systems' reverse control channels (B23 (col. 13, ll. 54-56) (col. 14, ll. 15-21)).

The inventors also contemplated saving cell phone locations in a database and making them available to subscribers at remote locations (B19 (col. 5, ll. 31-35)). Databases were well known structures at the time the application for the 144 patent was filed, and at least four of the prior art references listed on the cover of the 144 patent teach their use for a variety of purposes (Declaration of Dr. Brian Agee at ¶ 28-33)(B41-45; B69-B121).

Claim 22 of the 144 patent covers the database embodiment of the invention:

A ground-based cellular telephone system serving a plurality of subscribers possessing mobile cellular telephones, comprising:

(a) at least three cell sites equipped to receive signals sent by multiple mobile cellular telephones each initiating periodic signal transmissions over one of a prescribed set of reverse control channels;

(b) locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions; and

(c) **database means for storing location data identifying the cellular telephones and their respective locations**, and for providing access to said database to subscribers at remote locations.

(B28 (col. 23, l. 56 – col. 24, l. 2))(emphasis added).  Fig. 2 of the 144 patent illustrates the database embodiment pictorially:

4



**Fig. 2**

(B3).

    **B.**    **Andrew's Failure to Reveal Its "Database Means"**
              **Indefiniteness Defense**

      TruePosition initiated this litigation on October 25, 2005 (D.I. 1). Andrew, in its

December 15, 2005 Answer, included a boilerplate defense asserting, without

explanation, all possible bases for invalidity of the 144 patent:

> The 144 Patent and each of its claims are invalid and/or unenforceable
> under one or more sections of Title 35 of the United States Code,
> including §§ 101, 102, 103, and/or 112.

(D.I. 13, First Affirmative Defense and Counterclaim I (Declaratory Judgment) at ¶9).[1]

---

[1]      On April 6, 2006 and June 6, 2006, the Court granted TruePosition leave to file First
and Second Amended Complaints (D.I. 28 and 45). Andrew reiterated the same invalidity
allegations in response to each of TruePosition's Amended Complaints (D.I. 38 and 48).

On February 6, 2006, TruePosition served an interrogatory seeking the basis for

Andrew's invalidity allegations. The interrogatory required Andrew to:

> State the factual basis for the allegations in the First Affirmative Defense
> and paragraph 9 in the Counterclaims section of Andrew's Answer **that
> the "144 Patent and each of its claims are invalid** and/or unenforceable
> **under** one or more sections of Title 35 of the United States Code,
> including §§ 101, 102, 103, and/or **112," including the identity of each
> section of Title 35 of the United States Code under which the 144
> Patent and each of its claims are allegedly invalid** and/or unenforceable,
> [and] **which claims of the 144 Patent are allegedly invalid** and/or
> unenforceable under each section of Title 35 identified. ...

(TruePosition's Interrogatory to Andrew Corporation No. 7)(B122-B129)(emphasis

added).

On April 7, 2006, Andrew provided a two-sentence response to TruePosition's

invalidity interrogatory. Andrew summarily alleged anticipation and obviousness in view

of prior art to be produced at some unspecified time and a non-enabling patent

specification. But Andrew said *nothing* about claim 22 allegedly being indefinite:

> Andrew states that: (i) each claim of the 144 Patent is invalid either as
> anticipated under 35 U.S.C. § 102 or as obvious under 35 U.S.C. § 103 in
> light of prior art that will be included in the documents Andrew produces
> in response to TruePosition's document requests; and (ii) each claim of the
> 144 Patent is invalid under 35 U.S.C. § 112 due to lack of enabling
> disclosure.

(Andrew Corporation's Response to TruePosition Interrogatory No. 7)(B130-B135).

On June 23, 2006, Andrew "supplemented" its response to TruePosition's

invalidity interrogatory. Substantively nothing changed. Andrew still summarily alleged

anticipation, obviousness and lack of an enabling patent specification. And Andrew still

said *nothing* about any claim in the 144 patent being invalid for indefiniteness:

> (i) each claim of the '144 Patent is invalid either as anticipated under 35
> U.S.C. § 102 or as obvious under 35 U.S.C. § 103 in light of prior art
> included in the documents Andrew produces in response to TruePosition's

document requests; and (ii) each claim of the 144 Patent is invalid under 35 U.S.C. § 112 due to lack of enabling disclosure.

(Andrew Corporation's Supplemental Response to TruePosition Interrogatory No. 7)(B136-B140).

On September 25, 2006, the Court held an in-person discovery conference (B141-B148). Andrew's invalidity contentions remained two sentences long, while TruePosition's infringement contentions comprised more than 17 pages (B149-B172). But Andrew complained about TruePosition's contentions nonetheless (B143-B144 at 12:25-13:22), and Andrew expressed concern that it would "suffer prejudice" if more detail was not provided (B146 at 21:17-19). TruePosition noted the imbalance in the parties' disclosures and requested that Andrew be ordered to reveal the bases for its invalidity allegations (B147 at 25:11-26:20).

When the Court expressed confusion over what exactly Andrew was seeking, Andrew stated that it wanted time to supplement its non-infringement and invalidity contentions based on the additional information it thought TruePosition should be providing:

> MR. DESMARAIS: I think the real concern here, your Honor, at least from my point of view, is our contentions might depend on their contentions. If they give us their infringement contentions on the last day of [fact] discovery, we can't update our infringement contentions until after the last -- you know, we have noninfringement contentions. We have validity contentions. And if we get theirs on the last day, ours can't be tailored to how they're interpreting their own claims.

(B147 at 26:21-27:16).

Rejecting Andrew's request for an early exchange of claim construction contentions, the Court gave the parties deadlines for supplementing their invalidity and

infringement contentions **so that everyone would have everything in hand before**

**claim construction contentions were due:**

> With respect to the contention interrogatories, I'm going to give
> the plaintiff until October 18 to supplement their infringement contentions.
> If they choose to on the physical components, I am certainly – I am just
> not going to get into whether it's sufficient now. If they choose to do it,
> they can. If they don't, they don't, but certainly the software limitations
> need to be supplemented based on access to the source code.
>
> **That means that defendant needs to supplement its**
> infringement and validity, noninfringement and **validity contentions on**
> **or before October 25, so that everyone has everything in hand before**
> **the claim construction is due on November 1.**

(B148 at 29:8-20)(emphasis added).[2]

On October 25, 2006, TruePosition supplemented its infringement contentions,[3]

providing forty-three pages of narrative and charts comparing Andrew's product to the

asserted claims of the 144 patent, including citations to the source code Andrew had

---

[2]    On October 13, 2006, Andrew sought and TruePosition stipulated to an extension of
the discovery deadlines. Fact discovery would close on November 17, 2006, claim terms
would be exchanged on November 22, 2006, and expert discovery would close on January
24, 2007 (D.I. 94). The parties also agreed to extend the deadlines for complying with the
Court's September 25, 2006 discovery order as well. TruePosition would have until October
25, 2006 to supplemental its infringement contentions with citations to Andrew's source
code; Andrew would have until November 8, 2006 to supplement its non-infringement and
invalidity contentions (B173).

[3]    Prior to initiating this litigation, TruePosition provided a comparison of certain claims
in the 144 patent, including claim 22, to Andrew's product and activities based on
information available to TruePosition at the time (D.I. 1 at Ex. D (B174-B177)). In February
2006, before discovery even started, TruePosition updated that comparison with additional
information at Andrew's prior trial counsel's request (B178-B188). On May 1, 2006,
TruePosition responded to Andrew's interrogatory on infringement with seven pages of
narrative description and charts comparing the asserted claims of the 144 patent to Andrew's
product and activities (B189-B205). On August 1, 2006, TruePosition supplemented its
response to Andrew's interrogatory on infringement to provide even more detailed
contentions based on documents produced by Andrew in discovery (B206-B207). And on
September 20, 2006, TruePosition supplemented its infringement contentions yet again, this
time providing more than seventeen pages of narrative and charts comparing the asserted
claims of the 144 patent to Andrew's product and activities (B218-B263).

finally reluctantly provided (B218-B263). The contentions set forth in this supplement were the same contentions made in TruePosition's expert report on infringement.[4]

On November 8, 2006, Andrew provided its supplemental invalidity contentions, substantially *narrowing* its allegations (B330-B346). Instead of contending that all asserted claims were invalid as anticipated, obvious or lacking an enabling disclosure, Andrew alleged *only* that the asserted claims were *anticipated* by a Japanese patent application (the "Kono reference") (B337-B343). Andrew still said nothing whatever about claim 22 being invalid as indefinite (*id.*).[5]

Nor did Andrew reveal its indefiniteness theory in its claim construction contentions. On November 22, 2006, Andrew provided a preliminary claim construction of the term "database means" in claim 22. For the function, Andrew proposed "storing location data identifying the cellular telephones and their respective locations, and for providing access to the database to subscribers at remote locations." And for the *structure*, Andrew itself proposed "a database or local disk storage device containing the telephone number corresponding to each cellular telephone and a terminal coupled to the database via (1) modem and telephone line, or (2) radio communication providing access

---

[4]     On December 19, 2006, two weeks after TruePosition served its opening expert report on infringement, and more than five months after the June 30, 2006 extended document production deadline, Andrew produced database schema for the accused product having "xcoord," "ycoord" and "targetid" fields. (B382-B413). It relates directly to limitations in the claims that Andrew has long-contended were absent from its system (B336). On the same day, Andrew finally allowed TruePosition to inspect the infringing product as well, more than ten months after TruePosition served the discovery requests that obliged Andrew to provide it (B328-B329).

[5]     Andrew provided its supplemental non-infringement contentions on November 8, 2006 as well. The only change Andrew made was the addition of a complaint that TruePosition had not provided the claim construction the Court previously ruled was not yet required (B336): "Andrew notes that TruePosition still has not identified the alleged

to the database to the user" as the structure  (B32)(emphasis added).  Andrew said *nothing* about being "unable to find" structure corresponding to the function of "storing location data identifying the cellular telephones and their respective locations" (*id.*), as it asserted for the first time in its opening brief on claim construction filed concurrently with its indefiniteness motion (D.I. 149 at p. 38).  Andrew's proposed construction of "database means" remained unchanged in the Joint Claim Construction Statement as well (D.I. 130).

Finally, Andrew's expert, Dr. Goodman, opined only that the asserted claims of the 144 patent were anticipated by the Kono reference, as was discussed in TruePosition's Motion for Summary Judgment addressed to that issue.  (B347-B379).  His report said nothing about there allegedly being no structure in the 144 patent specification corresponding to the "database means" in claim 22, and he said nothing about claim 22 being indefinite (*id.*).

On February 2, 2007, nearly a year to the day after TruePosition served its interrogatory seeking Andrew's invalidity contentions, and more than twelve weeks after the extended Court-imposed deadline for Andrew to provide its invalidity contentions, Andrew revealed its claim 22 indefiniteness defense in a motion for summary judgment (D.I. 145).  Andrew's delay was not an accident or oversight, but a deliberate tactic to ambush TruePosition.  In its opening brief on claim construction filed the same day, Andrew, significantly, admitted that it had believed claim 22 was indefinite since before the exchange of initial claim construction contentions:

> (a) TruePosition points to certain passages in the specification as
>     disclosing a structure for the database means, but its structure does not

corresponding structure in the '144 Patent for any of the means-plus-function limitations in the asserted claims").

correspond to the portion of the function requiring "storing location data identifying the cellular telephones and their respective locations."

(b) **Andrew, unable to find a structure in the specification corresponding to "storing location data identifying the cellular telephones and their respective locations," proposed a general construction** that includes incorporation of its construction for "identifying."

(D.I. 149 at p.37-38)(emphasis added). Thus, Andrew had provided its preliminary "general construction" without revealing its true position until filing a summary judgment motion. Andrew's tactics should not be countenanced.

## IV.   ARGUMENT

### A.    The Court Should Strike Andrew's Surprise Indefiniteness Defense And Motion

Fidelity to the Federal Rules and the constraints of Scheduling Orders is critical to this Court's case management responsibilities and to the fair administration of justice. *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 469 (D. Del. 2006); *Finch v. Hercules, Inc.*, 1995 U.S. Dist. LEXIS 19805, *28 (D. Del. Dec. 22, 1995). This Court has warned litigants that it will not tolerate "trial by ambush" in civil litigation. *Praxair*, 445 F. Supp. 2d at 468-69, 473 ("It is known that this court requires the discovery process to be a meaningful one, so that there are no surprises at trial. ATMI withheld critical information during discovery; it should not be rewarded for such conduct at trial").

To reveal an invalidity theory for the first time in a summary judgment motion, nearly three months after having been ordered to provide invalidity contentions, long after the close of fact discovery, after the close of expert discovery, and after submission of a joint claim construction statement, is classic "trial by ambush." Rules 37(c)(1), 37(b)(2), and 16(f) all mandate that Andrew's motion be precluded. *See, e.g., Finch*,

1995 U.S. Dist. LEXIS 19805, at *30-31 (striking expert opinions and invalidity defenses

not disclosed during discovery because prejudicial to plaintiff and the Court).   Moreover,

TruePosition should be awarded the fees and costs associated with responding to

Andrew's motion.

### 1.    Andrew's Failure to Disclose Its Indefinite Defense Requires Automatic Exclusion Under Rule 37(c)(1)

Andrew's undisclosed indefiniteness defense should be precluded under Fed. R.

Civ. P. 37(c)(1).  The sanction is automatic, absent proof by Andrew that its failure to

reveal the defense in response to TruePosition's interrogatory was substantially justified

and harmless.  *See id.; Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d at 469 (citing *Meyers*

*v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).  The

Rule explicitly states:

> A party that without substantial justification fails to disclose information
> required by Rule 26(a) or 26(e)(1), or to amend a prior response to
> discovery as required by Rule 26(e)(2), **is not**, unless such failure is
> harmless, **permitted to use as evidence at trial [] or on a motion** any []
> information not so disclosed.

Fed. R. Civ. P. 37(c)(1)(emphasis added).  Andrew's failure to disclose its defense was

neither justified nor harmless.

TruePosition's interrogatory seeking the basis for Andrew's invalidity contentions

referred specifically to the allegations in Andrew's Answer regarding 35 U.S.C. § 112:

> State the factual basis for the allegations in the First Affirmative Defense
> and paragraph 9 in the Counterclaims section of Andrew's Answer that the
> '144 Patent and each of its claims are invalid [] under one or more sections
> of Title 35 of the United States Code, including §§ 101, 102, 103, **and/or**
> **112**,' including [] which claims of the 144 Patent are allegedly invalid"

(B127)(emphasis added).  But Andrew's original response was limited to anticipation, obviousness and a non-enabling disclosure, and nothing more.  Andrew said *nothing* about § 112 indefiniteness. (B130-B135).

Nor did Andrew supplement or amend its response to include such a contention.  Rule 26(e)(1) requires that a party who responds to an interrogatory has a duty to supplement its response if the party learns that the information disclosed is, in some material respect, incomplete or incorrect and has not otherwise been made known to its opponent during the discovery process or in writing.  Rule 26(e)(2) also requires a party to amend a prior response to an interrogatory if the party learns that its prior response is incomplete or incorrect in some material respect and the additional or correcting information has not otherwise been made known to its opponent in the discovery process or in writing.  But Andrew never mentioned indefiniteness in any of its interrogatory responses (B130, B136, B330).  And Andrew never provided notice in writing during the discovery process either.  There is simply no question that Andrew failed to satisfy its duty to seasonably disclose its indefiniteness contentions.  *See Praxair*, 445 F. Supp. 2d at 468-70; *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 1996 U.S. Dist. LEXIS 22616, *33-35 (D. Del. Dec. 27, 1996), *rev'd on other grounds*, 195 F.3d 1322 (Fed. Cir. 1999)(precluding defendant from advancing invalidity defenses because of failure to comply with deadlines for discovery); *AMEX, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002)(precluding issues raised after close of discovery because called for by interrogatory and proponent would be prejudiced).  Instead, Andrew waited until filing its summary judgment motion to spring an entirely new defense on both TruePosition and this Court with no advance warning whatsoever.

Andrew has no justification, substantial or otherwise, for concealing its indefiniteness contentions. It cannot now suggest that it is somehow excused because the parties' exchange of claim construction positions came after the exchange of infringement and validity contentions. The Court expressly contemplated that schedule (D.I. 21-23). Instead, Andrew directly violated this Court's unambiguous order that Andrew provide its invalidity contentions months ago, before the exchange of claim construction positions: **"defendant needs to supplement its [] validity contentions on or before October 25, so that everyone has everything in hand before the claim construction is due on November 1"** (B148, at 29:16-20)(emphasis added).

Moreover, Andrew cannot justify its untimely unveiling of an indefiniteness defense by claiming it only just learned of the defense and could not have provided earlier notice to TruePosition and the Court. In its claim construction briefing, Andrew admits that it contemplated indefiniteness at least as early as November, 2006: "Andrew, unable to find a structure corresponding to 'storing location data identifying the cellular telephones and their respective locations,' proposed a general construction that includes incorporation of its construction for 'identifying.'" (D.I. 149, at p. 37-38). But, instead of revealing its indefiniteness defense at that time, Andrew waited for months until this Court's deadlines had passed. Andrew can therefore offer no justification for revealing its new invalidity contention for the first time in a summary judgment motion. *See Praxair*, 445 F. Supp. 2d at 469-71; *Stambler v. RSA Security*, 212 F.R.D. 470, 472 (D. Del. 2003)(precluding defendant from offering testimony by witnesses disclosed after close of fact discovery and refusing to re-open discovery as a means of curing the prejudice to plaintiff); *Chase Manhattan Mortgage Corp. v. Advanta Corp.*, 2004 U.S. Dist. LEXIS

14

7377, *3-4 (D. Del. Apr. 22, 1994)(precluding defendant from relying on untimely expert opinions); *see also Thorn EMI N. Am. v. Intel Corp.*, 936 F. Supp. 1186, 1191 (D. Del. 1996)("The court will prevent a party from raising a claim or defense at trial that was not adequately described in a response to a contention interrogatory").

Finally, Andrew's failure to seasonably disclose its indefiniteness defense was anything but harmless. TruePosition and the Court have been prejudiced in a multitude of ways. *See Praxair*, 445 F. Supp. 2d at 469-71; *Stambler*, 212 F.R.D. at 472; *AstraZeneca AB v. Mut. Pharma. Co., Inc.*, 278 F. Supp. 2d 491, 503 (E.D. Pa. 2003)(precluding new invalidity defense because giving plaintiff only fourteen days to respond was "hardly a sufficient or fair amount of time in which to address a brand new issue in a case with a complex litigation history"); *AMEX, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93-96 (S.D.N.Y. 2002).

- Had TruePosition known of Andrew's contentions, it could have chosen to rebut the presumption that "database means" is a § 112 ¶ 6 limitation. *See, e.g., Eaton Corp. v. Parker-Hannifin Corp.*, 2003 U.S. Dist. LEXIS 401, *1 n.1 (D. Del. Jan. 10, 2003)(explaining that using the term "means" and reciting a function creates a presumption that the limitation is subject to 35 U.S.C. § 112 ¶ 6, but that the presumption may be rebutted if the claim itself recites sufficient structure). The recitation of "database" in claim 22 *is* sufficient to rebut the presumption that § 112 ¶6 applies. *See id.* (holding that "annular locking means" was not a means-plus-function limitation because the "'annular' itself imparts structure, i.e., a ring-shaped object," rebutting the presumption that § 112 ¶6 applied)(citing *Enviro Corp. v. Clesta Cleanroom, Inc.*, 209 F.3d 1360, 1364 (Fed. Cir. 2000)). To do that now would require TruePosition to adjust its claim construction positions on the fly to incorporate a response to Andrew's contentions and would throw the Court's established procedure for claim construction and summary judgment into disarray.

15

- Had TruePosition known of Andrew's contentions, it could have factored them into its infringement analysis.
- Had TruePosition known of Andrew's contentions, it could have explored the issue in discovery, inquiring of Andrew's technical employees what those working in the field would have known about databases at the time.
- Had TruePosition known of Andrew's contentions, it could have had its expert address them in his report. Now, TruePosition's expert had to perform an analysis in less than two weeks' time.
- Had TruePosition known of Andrew's contentions, it could have asked Andrew's experts about the contentions and what those having ordinary skill in the art would have known about databases at the time.
- Had TruePosition known of Andrew's contentions, it could have addressed them in its opening claim construction arguments. Now, TruePosition and the Court will be deprived of full and orderly briefing.
- Had TruePosition known of Andrew's contentions, it could have addressed them in its earlier motion for summary judgment that Andrew cannot prove its invalidity defenses (D.I. 134).

In short, Andrew's failure to seasonably disclose its indefiniteness defense was highly prejudicial to TruePosition. Rule 37 therefore requires that Andrew's defense be stricken and its motion denied.

**2.    Andrew's Willful Disobedience of This Court's Scheduling and Discovery Orders Should Result In Denial of Its Surprise Motion**

Federal Rules 16(f) and 37(b)(2) provide an independent basis for precluding Andrew's surprise defense. Those Rules allow the Court to sanction parties and attorneys

for disobeying scheduling and discovery orders.[6]  In this case, Andrew disobeyed both

the Scheduling Order and the Court's September 25, 2006 discovery order.

On March 14, 2006, the Court entered a Scheduling Order jointly proposed by the

parties (D.I. 21-23).  It set October 25, 2006 for the completion of fact discovery and

January 12, 2007 for the completion of expert discovery (D.I. 23).  As the close of fact

discovery approached, TruePosition asked the Court to require Andrew to provide more

than its two-sentence "explanation" of its invalidity defenses.  (B380-B381).  On

September 25, 2006, the Court ordered Andrew to: **"supplement its [] validity**

**contentions on or before October 25, so that everyone has everything in hand before**

**the claim construction is due on November 1"** (B148, 29:16-20)(emphasis added).  But

Andrew never revealed the contention that now forms the basis for this motion.  Its

failure was a violation of both the Scheduling Order and the Court's September 25, 2006

discovery order.

And, for reasons already explained, the violations appear willful.  Andrew

deliberately concealed its position regarding indefiniteness.  Its deliberate violations of

this Court's Scheduling and discovery orders therefore provide an independent basis for

striking Andrew's previously undisclosed defense.  *See Praxair, Inc. v. ATMI, Inc.*, 231

---

[6]     Rule 16(f) provides: "If a party or party's attorney fails to obey a scheduling or
pretrial order, ... the judge, upon motion or the judge's own initiative, may make such orders
with regard thereto as are just, and among others any of the orders provided in Rule
37(b)(2)(B), (C), (D)." Fed. R. Civ. P. 16(f).  Rule 37(b)(2) provides: "If a party ... fails to
obey an order to provide or permit discovery, including an order made under subdivision (a)
of this rule or Rule 35, or if a party fails to obey an order entered under Rule 26(f), the court
in which the action is pending may make such orders in regard to the failure as are just, and
among others the following: ... (C) An order striking out pleadings or parts thereof." Fed. R.
Civ. P. 37(b)(2).

F.R.D. 457, 464 & n.9 (D. Del. 2004) (striking defenses raised in expert report filed after closure of discovery in case).

### 3.    Andrew Should Pay the Fees and Costs Incurred by TruePosition in Responding to This Motion

Finally, Andrew should bear the costs of its "trial by ambush" tactics, not TruePosition. Rule 16(f) states that: "In lieu of or *in addition to* any other sanction, the judge *shall* require the party or the attorney representing the party or both to pay the reasonable expenses incurred because of any noncompliance with this rule, including attorney's fees, unless the judge finds that the noncompliance was substantially justified or that other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f). As shown above, Andrew's surprise motion and defense are not justified. And awarding expenses in view of Andrew's conduct in this case would be anything but "unjust." *See, e.g., Tracinda Corp. v. Daimlerchrysler AG*, 2005 U.S. Dist. LEXIS 6741, *8-13 (D. Del. Apr. 20, 2005) (awarding fees to plaintiff for costs incurred as a result of defendant's failure to comply with discovery order).

### B.    Claim 22 of the 144 Patent Is Definite

Turning to the so-called "merits" of Andrew's motion, which TruePosition should not have to address and the Court need not reach, Andrew appears to be arguing that there is no structure in the 144 patent specification corresponding to the "database means" in claim 22. But like so many other positions taken by Andrew in this case, it is unclear.[7] Is

---

[7]    *See, e.g.,* TruePosition's Opening Brief on Claim Construction (D.I. 142 at p. 33: "Andrew's proposed construction is unclear") *and* TruePosition's Brief in Support of Motion for Summary Judgment on Andrew's Counterclaims (II-VI) and Affirmative Defenses (III-V) (D.I. 138 at p.12 "Andrew's counterclaims fail, for any number of reasons, both factual and legal. There is simply no evidence in the record to support any of them"); *see also* TruePosition's Brief in Opposition to Andrew's Motion for Summary Judgment of Noninfringement being filed today.

Andrew contending that there is no structure corresponding the "database means," that there is inadequate recitation of structure corresponding to the "database means," or both?[8] It does not really matter because Andrew is wrong on both scores. And even though Andrew has the burden of proving invalidity by clear and convincing evidence, Andrew has failed prove *anything* by offering nothing but attorney argument and pointing to no *evidence* at all.

### 1.    Andrew Must Prove Indefiniteness by Clear and Convincing *Evidence*

Andrew admits that a court shall grant summary judgment only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law (D.I. 146 at p.3-4). Andrew also admits that as the moving party it bears the burden of proving that no genuine issue of material fact exists, that facts are "material" if they effect the outcome of the case, and that issues are "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the *nonmoving* party (*id.* at p.4). Finally, Andrew admits that TruePosition must come forward with specific facts showing that there is a genuine issue for trial *only if* Andrew demonstrated that there is an absence of material fact, and that the underlying facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to TruePosition (*id.*).

In the context of a motion for summary judgment of indefiniteness, this means that **Andrew was required to show, using clear and convincing evidence, that one having ordinary skill the art would be incapable of understanding the bounds of**

---

[8]    *Compare* D.I. 145 at p.1 *with* D.I. 145 at p.8.

**claim 22 when read in view of the 144 patent's specification**. *See Howmedica*

*Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1371 (Fed. Cir.

2005)(reversing judgment that asserted claims were indefinite because the "definiteness

of a patent claim depends on whether one skilled in the art would understand the bounds

of the claim when read in light of the specification"); *Exxon Research & Eng'g Co. v.*

*United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001)(same); *W.L. Gore & Assocs., Inc. v.*

*Garlock, Inc.*, 721 F.2d 1540, 1556-57 (Fed. Cir. 1983)(same). This is because claim 22

is indefinite *only* if it is "insolubly ambiguous, and no narrowing construction can

properly be adopted," even if the "task may be formidable and the conclusion may be one

over which reasonable persons will disagree." *See Exxon*, 265 F.3d at 1375-76 (Fed. Cir.

2001).

Moreover, the mere fact that claim 22 is expressed in means-plus-function format

creates no new or different rule. Claim 22 is presumed valid. Challenging its validity

based on an absence of corresponding structure requires clear and convincing proof by

Andrew that the 144 patent specification lacks disclosure of structure **sufficient to be**

**understood by one skilled in the art** as being adequate to perform the recited function.

*See Budde v. Harley-Davidson*, 250 F.3d 1369, 1376-77 (Fed. Cir. 2001)(reversing

summary judgment that means-plus-function claim indefinite for failure to disclose

corresponding structure)(emphasis added); *Atmel v. Info. Storage Devices, Inc.*, 198 F.3d

1374, 1378 (Fed. Cir. 1999)(reversing summary judgment that means-plus-function claim

indefinite for failure to disclose adequate corresponding structure); *Creo Prods. v.*

*Presstik, Inc.*, 305 F.3d 1337, 1348 (Fed. Cir. 2002)(holding that defendant failed to rebut

presumption of validity because it made no showing that one having ordinary skill in the

art would not have known what structures corresponded to means-plus-function limitations at issue).

Finally, although it is true that indefiniteness is ultimately a question of law, Andrew cannot sustain its burden where it offers no *evidence* in support of its motion at all, despite the implications to the contrary in its brief (*see* D.I. 146 at p.7). The Federal Circuit has repeatedly held that the failure to provide clear and convincing *evidence* of insufficient corresponding structure precludes a summary judgment of indefiniteness. *Atmel*, 198 F.3d at 1378, 1382 (reversing summary judgment of indefiniteness for means-plus-function claim in view of unrebutted expert testimony that structure recited in specification was sufficient to one having ordinary skill in the art); *Creo Prods.*, 305 F.3d at 1347-48 (affirming denial of summary judgment because patentee offered unrebutted evidence in the form of expert testimony and earlier-filed patent applications that corresponding structures in specifications of patents at issue were well known to those skilled in the art); *see also Exxon Research*, 265 F.3d at 1376, 1380, 1383-84 (reversing summary judgment of indefiniteness in view of expert testimony regarding what one having ordinary skill in the art would know while rejecting "argument that the issue of indefiniteness turns on an underlying factual dispute **that should not have been resolved as a matter of law**"); *Budde*, 250 F.3d at 1376-77, 1381 (reversing summary judgment that means-plus-function claim invalid for lack of sufficient corresponding structure in part because of "district court's failure to apply the correct 'clear and convincing' standard to [defendant]'s evidentiary submission").

Here, Andrew points to *no* facts or evidence at all. It offers nothing but unreasoned, unsupported assertions. And Andrew does not even address what one having ordinary skill in the art would know.

> 2. **Andrew's Attorney Argument Is Not Clear and Convincing *Evidence* of Indefiniteness**

The sum total of Andrew's "evidence" of alleged indefiniteness is six unsupported sentences of attorney argument in a ten-page brief. Andrew argues that:

- "The '144 patent specification does not disclose adequate structure for 'storing location data identifying the cellular telephones.' Therefore, Claim 22 is invalid for indefiniteness" (D.I. 145 at p.1);

- "TruePosition argues that the structure of the 'database means' is:

    The combination of the 'database 20' and the 'first terminal 22 coupled via a modem … and the telephone line to the database 20' disclosed in Col. 9, ll. 25-27, Fig. 2 Blocks 20, 22, or equivalents of such a combination;

    Or

    The combination of the 'database 20' and the 'second terminal 24 in radio communication with the database 20' disclosed in Col. 9, ll. 27-29, Fig. 2, Blocks 20, 24, or equivalents of such a combination;

    Or

    The combination of the 'database 20' and the 'third handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communication with the database' disclosed in Column 9, ll. 29-31, Fig. 2, Blocks 20, 26, or equivalents of such a combination. …

    At best, TruePosition's citations to the specification only show disclosure of structure corresponding to 'providing access to said database to subscribers at remote locations.' TruePosition does not – because it cannot – cite to a

disclosure in the specification that corresponds to 'storing location data identifying the cellular telephones and their respective locations.'" (id. at p.7-8)(citation omitted); and

- The recitation of a 'database' as the alleged structure for a 'database means' for 'storing location data identifying the cellular telephones and their respective location' is insufficient" (id. at p. 8).

As best TruePosition can understand it, that's all there is to Andrew's argument. But baldly asserting that TruePosition's citations to corresponding structure are incorrect, and that the structure referred to is not "adequate" and "insufficient," is anything but clear and convincing *evidence* of indefiniteness. It is not *evidence* at all. Andrew's unsupported attorney argument fails to establish even a prima facie case of indefiniteness. Andrew's motion for summary judgment should be denied for this reason alone.

> 3.    **One Having Ordinary Skill in the Art Would Recognize "Database 20" as Being Adequate Structure Corresponding to the "Database Means" for "Storing Location Data Identifying the Cellular Telephones and Their Respective Locations" in Claim 22**

A claim limitation expressed in means-plus-function language is construed to cover the corresponding structure, material, or acts described in the patent's specification and equivalents thereof. 35 U.S.C. § 112 ¶ 6; *Budde*, 250 F.3d at 1376. Whether the specification adequately sets forth corresponding structure necessitates consideration of its disclosure from the viewpoint of one skilled in the art. *Creo Prods.*, 305 F.3d at 1347; *Budde*, 250 F.3d at 1376; *Atmel*, 198 F.3d at 1378. The specification must be read as a whole in determining what, if any, structure is disclosed for performing a specified function. *Budde*, 250 F.3d at 1379-80. And the Federal Circuit is "generous in finding something to be corresponding structure when the specification contain[s] a generic

reference to structure that would be known to those in the art and that structure was clearly associated with performance of the claimed function." *Medical Instrumentation & Diag. Corp. v. Elektra AB*, 344 F.3d 1205, 1213-14 (Fed. Cir. 2003); *McKesson Info. Solutions LLC v. The Trizetto Group, Inc.*, 2006 U.S. Dist. LEXIS 16097, *2 n.4 (D. Del. Apr. 5, 2006)(finding adequate corresponding structure while construing "means for operating on a predetermined database").

While testimony may not be used as a substitute for the *total absence* of recited structure, the knowledge of one skilled in the art *can* be called upon to flesh out a *particular structural reference* in the specification for the purpose of satisfying the definiteness requirement. *Creo Prods.*, 305 F.3d at 1347; *Atmel*, 198 F.3d at 1382. Dictionaries may also be used as evidence of what persons having ordinary skill in the art would understand a term in the specification to mean when considering whether there is an adequate recitation of corresponding structure. *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1212 (Fed. Cir. 1998); *see also Depuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023 (Fed. Cir. 2006)("dictionary definitions and experts on both sides confirm that 'compression member' is an expression that was understood by persons of ordinary skill in the art to describe a kind of structure"); *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1361 (Fed. Cir. 2004)("Dictionary definitions in this case disclose that the term 'connector' has a reasonably well-understood meaning as a name for structure, even though the structure is defined in terms of the function it performs"); *Eaton Corp.*, 2003 U.S. Dist. LEXIS 401 at *1 n.1.

Here, the specification of the 144 patent clearly discloses and links "database 20" and "database software" to the function of "storing location data identifying the cellular

telephones and their respective locations" recited in claim 22. And as is more fully set forth below, TruePosition's expert, Dr. Brian Agee, explains in his accompanying declaration that the 144 patent's recitation of this structure is entirely sufficient to render claim 22 definite.

### a)    The Level of Ordinary Skill in the Art

TruePosition's validity expert, Dr. Brian Agee, in the accompanying declaration, states that in his expert opinion, "a person having ordinary skill in the art at the time the application for the 144 patent was filed (i.e., May 7, 1993) would have had either (1) a Bachelors Degree in Electrical Engineering, Applied Mathematics, Computer Science, and/or Physics, and 5 years of experience at a company specializing in development of systems, equipment, or technology for military or commercial telecommunications, signal collection and analysis, or other wireless signal processing, or (2) a Masters Degree in the same subjects and 2 years of experience in the same industries" (Declaration of Dr. Brian Agee at ¶ 25)(B39).[9]

---

[9]    Dr. Agee earned Master of Science and Doctor or Philosophy degrees in Electrical Engineering from the University of California at Davis (Declaration of Dr. Brian Agee at ¶ 9 and Exhibit A)(B37 and B48). He is currently President of B3 Advanced Communication Systems (B3), which performs engineering research and development activities for commercial and U.S. government applications and clients (*id.* at ¶ 2)(B35). In his capacity as President of B3, Dr. Agee has developed, analyzed, and tested multiple algorithms for geolocation of signal emitters using observable features of those signals, including their time-of-arrival (TOA) or time-difference-of-arrival (TDOA) at networks of collection platforms, and developed analysis and visualization tools to predict the ability to detect, copy, and geolocate emitters using varieties of collection networks, platforms, and signal features (*id.*). Dr. Agee is also currently an Adjunct Research (Full) Professor at the Virginia Polytechnic Institute (*id.* at ¶ 3)(B35). He has been actively involved in the development of signal collection, geolocation methods and geolocation algorithms based on TDOA and cross-correlation techniques since 1979, and he gained close familiarity with the attributes of cellular telephony networks in use in the mid-1990s, including elements of the AMPS, IS-54, IS-95A, and GSM air interfaces, and the overall cellular networking concepts and infrastructures through those activities (*id.* at ¶ 4-10)(B36-37). Dr. Agee first encountered and gained familiarity with TruePosition's 144 patent while working on a geolocation project

Andrew was required to demonstrate that no genuine issues of material fact existed, but Andrew offered no evidence on the level of ordinary skill in the art. Andrew failed to address this critical inquiry at all.

        **b)**     **One Having Ordinary Skill in the Art Would Recognize "Database 20" as the Structure Corresponding to the "Database Means" For "Storing Location Data Identifying The Cellular Telephones And Their Respective Locations" In Claim 22**

Dr. Agee declares that in his expert opinion: "one having ordinary skill in the art would readily and easily recognize that the 144 patent specification clearly links and associates 'database 20' with the function of 'storing location data identifying the cellular telephones and their respective locations' recited in claim 22" (*id.* at ¶ 26)(B39). Dr. Agee bases that opinion on his review of the 144 patent and its prosecution history in view of the principals of law relating to definiteness (*id.* at ¶ 13-16, 18-24, 27)(B37-B38; B38-B39; B40-B41). He cites a number of specific examples of disclosures in the 144 patent upon which his opinion is based:

      a) The Abstract on the first page of the 144 patent: "A cellular telephone location system for automatically recording the location of one or more mobile cellular telephones comprises three or more cell site systems 12. The cell site systems are coupled [] to a central site 16. The central site 16 is further coupled to a *database 20*, which may be remotely located from the central site and made available to subscribers" (emphasis added);

      b) The Figure on the first page of the 144 patent with a cellular telephone location system element depicted and labeled "*DATABASE*" and "*20*" (emphasis added);

      c) Fig. 2 of the 144 patent with a cellular telephone location system element depicted and labeled "*DATABASE*" and "*20*" (emphasis added);

---

from 1996 to 1998 (*id.* at ¶7)(B36). He has been awarded nine U.S. Patents in the field of radio communications since 1988 (*id.* at ¶ 12 and Exhibit B)(B37 and B50).

d) Fig. 7 of the 144 patent at the step in the simplified flowchart of a preferred operating sequence of the central site system stating: "*STORE LOCATION, PHONE NO. DATA IN DATABASE*" (emphasis added);

e) Col. 5, l. 31-43 of the 144 patent stating:

"In addition, this preferred embodiment comprises *a database for storing location data identifying the cellular telephones and their respective locations, and means for providing access to the database to subscribers at remote locations*. The system also comprises means for providing location data to a specific cellular telephone user upon request by using, for example, CPDP without setting up a voice call ('CPDP' represents Cellular Packet Data Protocol, which involves sending data over voice channels when the voice channels would not otherwise be in use). The latter feature is especially useful in connection with laptop or handheld computers having cellular modems and mapping software" (emphasis added to note that *the particular language in the 144 specification emphasized above is virtually identical to the language at issue in claim 22*);

f) Col. 8, l. 24-45 of the 144 patent stating:

"Preferred embodiments of the present invention comprise a network of receivers located at multiple cell sites in a cellular system. These receivers listen to the mobile control channel commands/responses normally occurring in the cellular system and estimate the physical location of each cellular telephone operating within the system. *Based upon the known identity of each telephone, obtained from listening to the control channel, and the estimated physical location of the telephone, the system provides a continuous, real time data stream to a database. The database may be collocated with the cellular switch or may be in some other convenient location*. The *data stream provided to the database comprises* a set of numbers, the first number being the telephone number of the telephone, the second number being the estimated latitude, longitude, and altitude of the transmitter, and the third number being the time stamp measurement. The *database software that processes the data stream* may be maintained by the operator of the location system rather than the operator of the cellular telephone system, if the two are not the same" (emphasis added);

g) Col. 8, l. 63 – Col. 9, l. 36 of the 144 patent stating:

"Referring now to *FIG. 2, a cellular telephone location system in accordance with the present invention*. ... The central site 16 may include a disk storage device 18. The central site 16 is further coupled to *a database 20, which  may be remotely located from the central site and made available to subscribers*. For example, FIG. 2 depicts a first terminal 22 coupled via a modem (not shown) and telephone line to *the database 20*; a second terminal 24 in radio communication with *the database 20*; and a third, handheld terminal 26, which is carried by a user who also has

a cellular telephone 10b, in radio communication with *the database*. The user with the cellular telephone 10b and handheld terminal 26 may *determine his own location by accessing the database*" (emphasis added); and

      h) Col. 14, l. 2-6 of the 144 patent stating:
          "Thereafter, *the location and telephone number data for each telephone is written to the database 20* or stored locally via the local disk storage device 18 (FIG. 2). Finally, *the data may be provided to a user*, dispatcher, or billing system" (emphasis added).

(*id.* at ¶27)(emphasis original).

      Andrew offered no evidence addressing whether one having ordinary skill in the art would recognize that the 144 patent specification clearly links and associates "database 20" with the function of "storing location data identifying the cellular telephones and their respective locations" in claim 22. Indeed, Andrew failed to address this critical inquiry at all.

      c)    **The 144 Patent's Recitation and Discussion of "Database 20" as the Structure for "Storing Location Data Identifying The Cellular Telephones And Their Respective Locations" Is Sufficient to Make Claim 22 Definite**

      Dr. Agee declares that: "Because databases, such as the one recited and discussed in the specification of the 144 patent, were well know to those having ordinary skill in the art at the time the application for the 144 patent was filed (i.e., May 7, 1993), in my expert opinion the 144 patent's recitation and discussion of "database 20" as the structure "for storing location data identifying the cellular telephones and their respective locations" is entirely sufficient to make claim 22 definite" (*id.* at ¶ 28)(B41-B42). Dr. Agee also declares that: "One having ordinary skill in the art would easily and readily understand the bounds of the 'database means for storing location data identifying the

cellular telephones and their respective locations' element in claim 22 in view of the 144

patent's specification and prosecution history" (*id.*).

Dr. Agee bases this opinion on several sources of information. The first is his

own personal knowledge of databases that existed in May 1993. He declares that he is

aware of at least three database software programs that were available and known to

persons working in the field at the time the application for the 144 patent was filed:

dBase, Microsoft Works and Microsoft FoxPro (*id.* at ¶29)(B42). Dr. Agee also declares

that "while at Radix Technologies, members of my algorithm group used Microsoft

FoxPro to manage databases for a military signal collection, analysis and geolocation

project executed in 1992-1995" (*id.*).

A second source of information upon which Dr. Agee bases his opinion is the

sworn testimony of an inventor of the 144 patent, John Webber, which Dr. Agee found to

be consistent with his own knowledge and understanding that databases capable of

storing information about cellular telephones existed and were known to those having

ordinary skill in the art in May 1993 (*id.* at ¶30)(B42-B43). Dr. Agee notes the following

two passages from Dr. Webber's deposition testimony as supporting his opinion:

> Q. I believe, if I understand you correctly, you also mentioned that Mr.
> Stilp [a co-inventor] brought to the table information and knowledge
> regarding registration of data. If I understand you correctly, what did you
> mean by registration of data?
>
> A. By registration I mean – as an example. ... That [cell telephone] tower
> then registers that telephone as being within range of that tower, and that
> information is transmitted to the entire cell telephone system throughout
> the country, so that a telephone from Los Angeles, when turned on in
> Virginia, will get identified and within a very short time registered as
> being close to this particular cell telephone tower in Virginia and being a
> legitimate number, so that if someone calls that number, which ordinarily
> would go to the Los Angeles area code, **the system database maintained**
> **nationally** identifies, Oh, this guy's in Virginia, so I'm going to call him
> from that tower right there.

*****

Q. The next step [in Fig. 7 of the 144 patent, see B9] is **'Store Location, Phone Number Data in Database.'**

A. Yes.

Q. That seems relatively self-explanatory, but what, if anything – what, if any, mathematical calculations are taking place in this step that haven't discussed?

A. **I'm not aware of any mathematics that's needed. At this point it becomes bookkeeping.**

(*id.*)(B42-B43 and B54-B55)(emphasis original).

A third source of information upon which Dr. Agee bases his opinion that the 144 patent's recitation and discussion of "database 20" is sufficient disclosure to one having ordinary skill in the art is dictionary definitions of "database" from 1993 (*id.* at ¶ 31)(B43-B44). Dr. Agee points to definitions of "database" in three dictionaries existing at the time:

a) "data base *See* data bank"
   "data bank [COMPUT SCI] A complete collection of information such as contained in automated files, a library, or a set of computer disks. Also known as a data base"
   (McGraw-Hill Dictionary of Scientific and Technical Terms, Third Edition, 1984) (Attached as Exhibit D);

b) "database [] *n* (ca. 1962): a usu. large collection of data organized esp. for rapid search and retrieval (as by a computer).
       "data bank *n* (1966): DATABASE"
   (Merriam-Webster's Collegiate Dictionary, Tenth Edition, 1993) (Attached as Exhibit E); and

c) "database [] *n*. 1 a large collection of data in a computer, organized so that it can be expanded, updated, and retrieved rapidly for various uses 2 any large or extensive collect of information Also data base or data bank" (Webster's New World Dictionary of American English, Third College Edition, 1988) (Attached as Exhibit F).

(*id.*)(B43-B44 and B58-B60; B62-B64; B66-B68).

A fourth source of information upon which Dr. Agee bases his opinion is the teachings of several prior art patents listed on the face of the 144 patent and considered by the USPTO during prosecution of the 144 patent (*id.* at ¶ 33)(B44-B45). Dr. Agee explains that each of these patents discloses and describes use of databases for multiple purposes, including storage of information relating to the location of cellular radios (*id.*). He describes their specific teachings and makes specific comments, which are set forth below:

- US 4,475,010 (Huensch, et., al., High Density Cellular Mobile Radio Communications, filed May 5, 1983), which discloses and describes cell site and switching office databases in Figures 4 and 7, respectively, and corresponding sections of the specification.

- US 4,876,738 (Selby, Mobile Radio Transmission Station, filed September 16, 1987), which discloses and teaches use of "location records" contained within a "Data Store (Figure 9, Column 8 ll. 37-57) employed by users of the cellular telephone system to track mobile radios between multiple service areas.

- US 5,054,110 (Comroe, et. al., Multi-Site Dispatching System Cell Registration, filed December 29, 1989), which discloses and describes databases at vehicles and master resource controllers (Figures 1, 2, 3), and teaches means for using these databases to register and track location (cells) of vehicles connected by a trunked communication system.

- US 5,153,902 (Buhl, et. al., Multi-Exchange Paging System for Locating a Mobile Telephone in a Wide Area Telephone Network, filed April 27, 1990), which discloses and describes a PC Memory (Figure 2, Col. 6 line 50 through Col. 7, line 23) containing lists of subscribers, and locations of those subscribers. On Col. 7, ll. 24-30, it is additionally taught that this "PC Memory" is equivalent to a "Home Location Registry," which Andrew asserted is equivalent to a database in its original invalidity report (pg. 14, line 27 through pg. 15, line 5).

(*id.*; *see also* B69-B88; B89-105; B106-110; B111-B121).

The final source of information upon which Dr. Agee bases his opinion is a passage in the 144 patent specification indicating that the inventors intended to rely on

the knowledge of one having ordinary skill in the art regarding various elements in their

system, including "database 20":

> Referring now to FIG. 2, a cellular telephone location system in
> accordance with the present invention comprises. ... **It should be noted
> that this figure, as well as other figures, is simplified** in that some
> elements and interconnections have been omitted. **However, the instant
> specification and attached drawings are sufficient to enable one
> skilled in the art to make and use the invention disclosed herein.** ...
> The central site 16 is further coupled to a **database 20**, which may be
> remotely located from the central site and made available to subscribers.

(*id.* at ¶32)(citing Col. 8, l. 63-Col. 9, l.25).

Andrew offers no evidence on whether the 144 patent's recitation and discussion

of "database 20" was sufficient disclosure of corresponding structure to one having

ordinary skill. It does nothing but assert, without support, that the disclosure is

"inadequate" and "insufficient," without reference to the knowledge of one having skill in

the art. It has no evidence at all to contradict Dr. Agee's expert opinions and the

materials upon his opinions are based. Accordingly, material factual issues preclude the

entry of summary judgment in Andrew's favor.

### 4.    Andrew Cannot Provide the Missing Evidence for the First Time in Its Reply Brief

Andrew cannot attempt to patch up the holes in its motion by proffering evidence

for the first time in its reply brief. It was Andrew's burden to come forward with

evidence sufficient to show that there is no genuine issue of material fact. A litigant is

not permitted to save its "real" arguments for its reply brief. *See* Local Rule 7.1.2 (c)(2);

*In re Student Finance Corp.*, 2004 U.S. Dist. LEXIS 4952, *9 n.4 (D. Del. Mar. 23,

2004)(refusing to consider arguments first raised in reply brief in violation of Local Rule

7.1.3); *Rockwell Techs., LLC v. Spectra-Physics Lasers, Inc.*, 2002 U.S. Dist. LEXIS

5180, *7-8 (D. Del. Mar. 26, 2002)(holding "tactic of reserving new arguments for [a]

reply brief amounts to impermissible 'sandbagging'").

### 5. *Default Proof Credit Card Sys.,Inc. v. Home Depot U.S.A., Inc.* **and the District Court Cases Andrew Has Cited Are Inapposite**

Most of Andrew's brief is a recitation of various legal principles that does nothing

to apply them to the case at hand. Andrew's sole attempt at argument is in its citation to

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.* 412 F.3d 1291 (Fed. Cir.

2005) and two recent cases from the Eastern District of Texas and the Western District of

Virginia. But each of them is inapposite.

Regarding *Default Proof Credit*, Andrew implies that the Federal Circuit held a

"means-for-dispensing" claim invalid because the recitation of a "dispenser" in the

specification was insufficient (D.I. 146 at p.8). But Andrew's characterization of the

holding in *Default Proof Credit* is disingenuous, because the patentee never argued that

the "dispenser" was corresponding structure, and the Federal Circuit made no findings

regarding the "dispenser" whatsoever. *See Default Proof Credit Card Sys, Inc. v. Home

Depot U.S.A., Inc.*, 412 F.3d 1291, 1299-1303 (Fed. Cir. 2006). The patentee argued only

that a "Point-of-Sale (POS) terminal" was corresponding structure, and the Federal

Circuit found the argument at odds with the structure of the claim at issue and the

language in the specification. *Id.*

The patent in *Default Proof Credit* consisted of two figures and three columns of

text. *Id.* at 1293. Figure 1 of the patent showed a POS terminal. *Id.* at 1293-94. The

specification described the POS terminal as including "basically a keypad with numbers,

letters, names, signs, graphics, with a sliding open side" as well as "necessary input and

output hardware such as card charges and card debits 58, computer assembly 60 and

associated storage assembly 50." *Id.* at 1294. Figure 1 also showed a "dispenser (40)" that distributed a debit card. *Id.* And the specification taught that the "dispenser will [sic] the merchant or the entity or the place selling the card." *Id.* Claim 1 recited a system for dispensing and validating prepaid debit and credit cards comprising (in pertinent part) "A) a point-of-sale assembly" and "B) means for dispensing at least one debit card for each transaction." *Id.* at 1293. The district court found the claim invalid. *Id.* at 1296-97.

On appeal to the Federal Circuit, Default Credit did not argue that the term "dispenser" constituted corresponding structure. *Id.* at 1299. "Instead, Default Proof assert[ed] that 'certain specific parts' of the POS terminal correspond to the distributing function." *Id.* The Federal Circuit found the argument unpersuasive for two reasons. The structure and language of claim 1 indicated that the POS terminal and means for dispensing needed to be separate components. *Id.* at 1299-1300. And the specification failed to describe any parts of the POS terminal capable of dispensing debit cards. *Id.* at 1300-03. The Federal Circuit made no findings and did not consider whether the "dispenser" would have been an adequate recitation of structure. *Id.* at 1299-1303.[10]

Here, there is no way to argue that the 144 patent lacks *any* recitation of structure. The 144 patent depicts "database 20" on its front cover, and TruePosition has shown that

---

[10]     It is true that the Federal Circuit has rejected the argument that structure does not have to be disclosed in the specification if a person of skill in the art could build or create the missing structure (*see* D.I. 146 at p.9 citing *Default Proof Credit* and district court cases). But that rule of law has no applicability here. The 144 patent expressly discloses "database 20" and "database software" for the purpose of storing location data identifying cellular telephones and their respective locations as recited in claim 22 (*see supra*). And "database 20" even appears on the front cover of the patent (B1). It is therefore entirely proper to flesh out those structural references with the knowledge of one having ordinary skill in the art. *Creo Prods.*, 305 F.3d at 1347; *Atmel*, 198 F.3d at 1382.

the 144 patent specification clearly links "database 20" to the function at issue (*see supra*). Thus, *Default Proof Credit* provides no support for Andrew's argument. And the district court cases upon which Andrew relies are no different.[11] Andrew's motion should be denied.

## V.    CONCLUSION

The 144 patent specification recites sufficient structure corresponding to the "database means" limitation in claim 22. The claim is therefore definite. But the Court need not reach that issue, for Andrew's surprise defense and motion should be stricken at the outset. Andrew's trial by ambush and willful disregard for this Court's orders should not be rewarded. In addition, TruePosition should be awarded its fees and costs for responding to this motion.

---

[11]     In *DE Technologies, Inc. v. Dell, Inc.*, 428 F. Supp. 2d 512 (W.D. Va. 2006), the court acknowledged that it is proper to use the knowledge of one having skill in the art to flesh out particular structural references in a patent, but found there was "no corresponding structure disclosed by the patent." *Id.* at 517, 520 n.4 (citing *Medical Instrumentation and Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1214 (Fed. Cir. 2003) and *McKesson Info. v. The Trizetto Group, Inc.*, 2005 U.S. Dist. LEXIS 20434 (D. Del. 2005)). Likewise, in *Finisar Corp. v. The DirectTV Group, Inc.*, 416 F. Supp. 2d 512 (E.D. Tex. 2006), the court found a total absence of structure for performing the claimed function. *Id.* at 518-19 ("*no structure is disclosed* for performing the recited function")(emphasis added).

Respectfully submitted,

DATED: February 20, 2007    By:    ___*/s/James D. Heisman*___
CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq.
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (212) 558-3588

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (*pro hac vice*)
Dale M. Heist, Esq. (*pro hac vice*)
David L. Marcus, Esq. (*pro hac vice*)
Kathleen A. Milsark, Esq. (*pro hac vice*)
Daniel J. Goettle, Esq. (*pro hac vice*)
Cira Center, 12th Floor
2929 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 20th day of February, 2007, I caused a true and correct copy of the foregoing **TRUEPOSITION'S BRIEF IN OPPOSITION TO ANDREW'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF CLAIM 22 OF THE '144 PATENT FOR INDEFINITENESS** to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

*/s/ James D. Heisman*                .
James D. Heisman (# 2746)