# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TruePosition, Inc., ) | |
| ) | |
| **Plaintiff/** ) | |
| **Counterclaim-Defendant,** ) | |
| ) | **Civil Action No. 05-747-SLR** |
| **v.** ) | |
| ) | |
| Andrew Corporation, ) | |
| ) | |
| **Defendant/** ) | |
| **Counterclaim-Plaintiff.** ) | |
| _____) | |

## TRUEPOSITION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ANDREW CANNOT PROVE ITS CLAIMS OF INVALIDITY

CONNOLLY BOVE LODGE & HUTZ LLP
Francis DiGiovanni (# 3189)
James D. Heisman (# 2746)
1007 N. Orange Street, P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (212) 558-3588

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (*pro hac vice*)
David L. Marcus, Esq. (*pro hac vice*)
Kathleen A. Milsark, Esq. (*pro hac vice*)
Daniel J. Goettle, Esq. (*pro hac vice*)
Cira Center, 12th Floor
2929 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Date: February 26, 2007

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

I.    INTRODUCTION ...................................................................... 1

II.   ARGUMENT.............................................................................. 1

    A.    Andrew Failed to Present Any Evidence That Dr. Goodman Relied Upon a Claim Construction That Would Render His Opinion Useful to the Trier Of Fact ................................................... 1

    B.    Andrew Failed to Present Any Evidence That Dr. Goodman Performed the Element-to-Element Comparison Necessary to Support His "Conditional" Invalidity Opinion ................................. 2

        1.    Counsel's Element-to-Element Analysis is No Substitute for Expert Testimony ............................................... 4

        2.    Andrew Presented No Evidence That Dr. Goodman Did a Structure-To-Structure Comparison for The Means Plus Function Claims ...................................................... 7

    C.    Andrew Cannot Rely Upon Previously Undisclosed Evidence to Prove That A "Printed Publication" Discloses Each Element of the Patent Claims ............................................................... 9

        1.    Andrew Cannot Use an Undisclosed Witness to Prove That The Translation That Its Expert Relied Upon is an Accurate Translation of Kono ............................................ 9

        2.    Andrew Cannot Rely Upon a New Expert Opinion that the Patent is Invalid Using TruePositon's  Certified Translation ........................................................ 12

    D.    Andrew Cannot Rely Upon an Indefiniteness Defense That it Concealed During Fact and Expert Discovery.................................... 13

    E.    TruePosition Satisfied Its Burden on Summary Judgment With Respect to Claim 31 ........................................................ 14

F.    Andrew's Gross Distortions of the Record Cannot Go Unchallenged .......................................................................15

III.    CONCLUSION ...........................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Centricut, LLC v. ESAB Group, Inc.*,
    390 F.3d 1361 (Fed. Cir. 2004) ...........................................................6, 9

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
    45 F.3d 1550 (Fed. Cir.  1995) ..........................................................6, 11

*McKesson Information Solutions LLC v. The Trizetto Group, Inc.*,
    426 F. Supp. 2d 197 (D. Del. 2006) .......................................................7

*Oxford Gene Technology Ltd. V. Mergen Ltd.*,
    345 F. Supp. 2d 431 (D. Del. 2004) .......................................................6

## FEDERAL STATUTES AND RULES

35 U.S.C. § 102 ......................................................................................1, 11

Fed. R. Civ. P. 26(a)(2) ...................................................................4, 6, 9, 13

Fed. R. Civ. P. 37(c)(1) ...................................................................10, 12, 13

Fed. R. Civ. P. 56 ..........................................................................................12

## I.    INTRODUCTION

Andrew's brief in opposition to TruePosition's Motion for Partial Summary Judgment that Andrew Cannot Prove Its Claims of Invalidity (D.I. 154) is peculiar, for it is focused almost entirely on what appear to be arguments regarding TruePosition's infringement proof.  While confusing at best, Andrew's brief does not appear to address – presumably because it cannot – the issues that TruePosition raised in its opening brief.  Andrew's expert did not set forth a legally sufficient claim construction as to any claim of the patent.  He did not use such a legally sufficient claim construction in comparing the claims of the 144 patent to the teachings of the Kono reference.  Andrew did not prove that a "printed publication" under 35 U.S.C. § 102 discloses each element of the patent claims. Andrew cannot do so now with evidence that it obtained after TruePosition filed its motion.  TruePosition's motion should be granted.

## II.    ARGUMENT

### A.    Andrew Failed to Present Any Evidence That Dr. Goodman Relied Upon a Claim Construction That Would Render His Opinion Useful to the Trier Of Fact

In its opposition, Andrew failed to present any evidence, or even to allege, that Dr. Goodman applied either TruePosition's proposed construction of the claims, or Andrew's proposed construction, or any similar construction, to render

his invalidity opinion.  Dr. Goodman's invalidity opinion is of no use to the trier of fact.

Rather than refer to any claim construction that either party is currently advancing before this Court, Andrew invites the Court to discern a construction that might be useful to the trier of fact from Goodman's conditional invalidity opinion.  According to Andrew, "[i]n his invalidity expert report, Dr. Goodman explained in detail how Kono anticipates" the patent *if* "TruePosition tries to read" the patent "on Andrew's accused products," namely Geometrix (D.I. 154 at 13). But in fact Dr. Goodman's report does not explain his "conditional" invalidity opinion sufficiently to allow anyone to discern the claim construction that he used to render that opinion.  His report does not explain how Geometrix operates and barely mentions Geometrix.  There remains no evidence that he used any construction of the claims that could render his opinion useful to the trier of fact in this case.

**B.    Andrew Failed to Present Any Evidence That Dr. Goodman Performed the Element-to-Element Comparison Necessary to Support His "Conditional" Invalidity Opinion**

In its opposition, Andrew fails to present evidence that Dr. Goodman performed the necessary element-to-element comparison required to render his "conditional" invalidity opinion.  To the contrary, Andrew's counsel now provides

a new "conditional" invalidity analysis that only highlights what Dr. Goodman *did not* do.

Andrew claims that "[i]n his invalidity expert report, Dr. Goodman explained in detail how Kono anticipates" the patent if "TruePosition tries to read" the patent on Geometrix (D.I. 154 at 13). But Dr. Goodman could not have properly rendered his "conditional" invalidity opinion without analyzing the operation of Geometrix in relation to Kono. Dr. Goodman did not do so. His report does not describe how Geometrix operates and, in fact, barely mentions that product.

Andrew wrongly claims that Dr. Goodman relied upon Dr. Gottesman's description of Geometrix in his infringement expert report to render Dr. Goodman's "conditional" invalidity opinion. According to Andrew, "Dr. Goodman conducted a thorough, limitation-by-limitation analysis that tracks the infringement analysis provided by TruePosition's infringement expert witness, Oded Gottesman" concerning Geometrix (D.I. 154 at 13). But Dr. Goodman could not possibly have based his invalidity opinion upon Dr. Gottesman's infringement analysis. Dr. Gottesman's report was not available at the time of Dr. Goodman's report. The reports were served simultaneously (D.I. 23 & D.I. 94). Moreover, Dr. Goodman's invalidity report does not mention Dr. Gottesman's infringement

report.  Expert reports must include "a complete statement of all opinions to be expressed and the basis and reasons therefore."  Fed. R. Civ. P. 26(a)(2).

Andrew also suggests that, even though the Goodman report contains little or no mention whatever of Geometrix, in fact Dr. Goodman was knowledgeable about Andrew's product at the time that he rendered his invalidity opinion.  But Andrew acknowledges that Goodman learned about Geometrix in connection with his *subsequent* analysis of infringement (D.I. 154 at 18).  The deposition pages that Andrew cites to support its argument that Dr. Goodman was knowledgeable about Geometrix (*id.* at 18 fn. 6) all appear in the second volume of the deposition, which related to Goodman's infringement opinions, and all relate to activities conducted *after* Goodman's validity opinion had already been submitted.  Dr. Goodman already admitted that the sole basis for his understanding of the operation of Geometrix *that formed the basis for his invalidity opinion* was a single conversation with an Andrew employee, plus conversations with counsel (A104-105).

### 1.    Counsel's Element-to-Element Analysis is No Substitute for Expert Testimony

Recognizing that its expert did not do the necessary limitation-to-limitation comparison to render his conditional invalidity opinion, Andrew offers an invalidity analysis that its counsel prepared and that no expert ever considered

(D.I. 154 at 13-16 & 19-24). But Andrew's new comparison is legally insufficient and too late.[1]

Counsel's odd invalidity analysis is neither clear, nor convincing, evidence of invalidity as a matter of law. To perform its analysis for claim 31, for example, counsel first mischaracterizes what *Dr. Gottesman* identified in his infringement report as the element in Geometrix that corresponds to a step in claim 31 (D.I. 154 at 13-16). Next, counsel compares its distorted version of the claim element that Dr. Gottesman identified in Geometrix to an element in Kono that *Dr. Goodman* identified in his invalidity report (*id.*) Counsel then concludes that if the claims are read broadly enough to encompass the Geometrix element that *Dr. Gottesman* identified, they must be broad enough to encompass the Kono element that *Dr. Goodman* identified (*id.*). This extremely confusing and distorted analysis does not measure up to the "*clear* and convincing" evidence standard as a matter of law.

---

[1] It is not entirely clear what Andrew intends by the sections of its brief that attack Dr. Gottesman, TruePosition's infringement expert. If the attacks on Dr. Gottesman are intended to bolster Andrew's supposed non-infringement defenses, that discussion is irrelevant to this motion. TruePosition has not specifically addressed many of Andrew's gross distortions of Dr. Gottesman's expert report because what Dr. Gottesman did or did not say is irrelevant to this motion. Infringement is the subject of another motion pending before this Court. Notably, in that motion, Andrew raises only one non-infringement defense that has no merit and that is based upon a new and legally erroneous construction of the patent claims.

Even if it did, however, counsel's analysis would be too late, for such an analysis was required to be set forth in Andrew's expert reports. Fed. R. Civ. P. 26(a)(2). That analysis cannot be cobbled together later by lawyers in an attempt to avoid summary judgment. *See, e.g., Centricut, LLC v. ESAB Group, Inc.*, 390 F.3d 1361 (Fed. Cir. 2004) ("Where the field or art is complex, we have repeatedly approved the use of expert testimony to establish infringement… We have also noted that 'typically' expert testimony will be necessary in cases involving complex technology.").

*Oxford Gene Technology Ltd. V. Mergen Ltd.*, 345 F. Supp. 2d 431, 435-37 (D. Del. 2004), although it arose on a *Daubert* motion, is directly on point. In that case, the expert failed to construe the claims and failed to perform an element-to-element comparison of the construed claims to the prior art references in attempting to show anticipation. Instead, he did something very similar to what Dr. Goodman did: he provided what the court characterized as a "negative or alternative construction" based on his understanding of the plaintiff's infringement contentions. *Id*. at 436. The defendant's counsel, like Andrew's counsel, proffered a claim analysis "prepared after the fact" by counsel. *Id* at 437. Judge Jordan observed that "that belated attempt to patch the holes in [the expert's] report is inadequate in itself to satisfy Rule 26(a)(2)(B)." *Id.; see also Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1562 (Fed. Cir.

1995) ("There must be sufficient substance, other than attorney argument, to show that the issue requires trial.").

And so it is here. Dr. Goodman never made the required analysis. Belated attorney argument is not a substitute for evidence.

TruePosition is entitled to summary judgment that each of the asserted claims 1, 2, 22, 31 and 32 is valid because Dr. Goodman did not use a proper claim construction and did not perform a limitation-to-limitation analysis that could support his "conditional" invalidity opinion.

> **2.    Andrew Presented No Evidence That Dr. Goodman Did a Structure-To-Structure Comparison for The Means Plus Function Claims**

In its opposition, Andrew has failed to present any evidence, or even to allege, that Dr. Goodman identified any structure in the patent specification that corresponds to the means plus function claim elements of the claims. It follows that Dr. Goodman could not possibly have compared such structure to anything in Kono. *McKesson Information Solutions LLC v. The Trizetto Group, Inc.,* 426 F. Supp 2d 197, 200 (D. Del. 2006) ("Because Dr. Musen does not identify the structure in the patent, he necessarily can not, and does not, compare that disclosed structure to the structure in the accused products"). Andrew seems to acknowledge that its expert did not "directly compare" structure to structure (D.I. 154 at 18-24).

Nevertheless, once again, Andrew tries to patch the holes in its experts report by providing "conditional" invalidity analysis that its counsel prepared and that its expert never considered.  Again, counsel's strange invalidity analysis is neither clear nor convincing evidence of invalidity as a matter of law.  In counsel's analysis of Claims 1, 2, and 22, counsel first mischaracterizes the *structure* that Dr. Gottesman identified in Geometrix in his infringement report as satisfying the structural elements of the means plus function patent claims (D.I. 154 at 21-23). Next counsel compares this distorted version of the structure that Dr. Gottesman identified to an element in Kono that Dr. Goodman identified as satisfying a *functional* element of the claims in Kono (D.I. 154 at 21-23).  Andrew's counsel then concludes that *if* the corresponding structure of the patent claim is present in Geometrix, *then* it must also be present in Kono (*id.*).

Once again, this thoroughly confusing analysis does not measure up to the "*clear and convincing*" evidence standard as a matter of law.  As an example of just one problem with counsel's analysis, counsel improperly compares an element that Dr. Gottesman supposedly identified as satisfying the *structural* components of the claims with an element in Kono that Dr. Goodman identified as satisfying a *functional* element in the claims.  Dr. Goodman performed no structural analysis of the claims or of Kono (A109).

Even if counsel's invalidity charts reflected the proper analysis, they would be too late, for such an analysis was required to be set forth in Andrew's expert reports (Fed. R. Civ. P. 26(a)(2)), not thrown together later by lawyers in an attempt to avoid summary judgment.  *See, e.g., Centricut, LLC v. ESAB Group, Inc.*, 390 F.3d 1361 (Fed. Cir. 2004) ("Where the field or art is complex, we have repeatedly approved the use of expert testimony to establish infringement…  We have also noted that 'typically' expert testimony will be necessary in cases involving complex technology.") (citations omitted).

TruePosition is entitled to summary judgment that each of asserted claims 1, 2, 22 is valid for the additional reason that Dr. Goodman did not make a structure-to-structure comparison for the means plus function claim elements.

### C.    Andrew Cannot Rely Upon Previously Undisclosed Evidence to Prove That A "Printed Publication" Discloses Each Element of the Patent Claims

#### 1.    Andrew Cannot Use an Undisclosed Witness to Prove That The Translation That Its Expert Relied Upon is an Accurate Translation of Kono

Andrew attempts to prove that the "draft translation" that its expert relied upon is an accurate copy of the Kono prior art by relying upon a newly procured certification from a translator, "John Bucacek" (D.I. 154 at 17; B1-B14).  But Andrew is precluded from relying upon Mr. Bucacek's certification because it did not identify him as a potential witness in its Rule 26(a)(1) disclosures (C19-C24)

or in any discovery response during fact or expert discovery.  "A party that without substantial justification fails to disclose information required by Rule 26(a)…is not…permitted to use…any witness…not so disclosed."  Fed. R. Civ. P. 37(c)(1).

Andrew claims that now that it has produced Mr. Bucacek's certification TruePosition's objection is moot (D.I. 154 at 17, fn. 5).  But TruePosition's objection is not moot.  If Andrew wanted to rely on a translation of a Japanese document, it was required to provide TruePosition with sufficient information to permit TruePosition to test the accuracy of the translation during discovery.  Because Andrew never even identified the translator during discovery, there was no way for TruePosition to investigate the purported translation.

Andrew states that TruePosition never raised an objection to its uncertified translation and that, had TruePosition done so, Andrew "would have worked with TruePosition to cure" TruePosition's objection (D.I. 154 at 17, fn. 5).  That statement is false.  Andrew asked TruePosition to admit that its translation was a true and correct English translation, and TruePosition refused to do so, expressly stating that TruePosition "does not agree that [the translation] is an accurate English translation of [Kono]" (C2-C3).  Moreover, TruePosition obtained and produced a certified translation of its own and listed its own translator in its initial disclosures, thus affording Andrew the opportunity to inquire into the details of TruePosition's translation.  Plainly, the issue was joined.  Andrew, for reasons of

its own, chose not to provide the required evidentiary basis for the prior art it proffers.

Andrew has not proven that its draft translation of Kono is an accurate translation of Kono and, therefore, has not proven, as it must, that the document that its expert relied upon is a "printed publication" under 35 U.S.C. § 102.

Andrew also argues that because its uncertified translation was marked as a deposition exhibit, it is "in the record" and therefore may be considered an authentic and accurate translation on summary judgment (D.I. 154 at 17). That argument is specious because the translation was marked in connection with the deposition of a witness, Dr. Goodman, who could not authenticate it. Having been marked at a deposition does not automatically render a document admissible evidence. The case Andrew cites for the proposition that an unauthenticated document marked as a deposition exhibit should have been considered on a summary judgment motion holds no such thing. In *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1551 (Fed. Cir. 1995), the unauthenticated document that the Federal Circuit held should have been considered had been produced by the opposing party, was a test of the alleged infringer's product, and had been the subject of deposition testimony by a person with knowledge of the test. In the same case, other unauthenticated documents, including uncertified translations, were held to have been properly excluded. *Id.*

Here, the purported translation was marked at Dr. Goodman's deposition. Dr. Goodman was not the translator and is plainly not qualified to testify to the translation's accuracy, for he admitted he knows no Japanese (A100).

It is black letter law that summary judgment motions must be based on such facts "as would be admissible in evidence." Fed. R. Civ. P. 56. As TruePosition demonstrated in its opening brief (D.I. 134 at 20-23), Andrew's purported translation of the Kono reference is inadmissible.

### 2. Andrew Cannot Rely Upon a New Expert Opinion that the Patent is Invalid Using TruePositon's Certified Translation

Andrew also offers a new declaration from Dr. Goodman in which he opines that the patent is invalid based upon TruePosition's certified translation of Kono and that there are no substantive differences between that translation and Andrew's draft translation (D.I. 154 at 17, fn. 5; B110-B114). But Andrew is precluded from relying upon that opinion because Dr. Goodman never offered it in his expert report or at his deposition. "A party that without substantial justification fails to disclose information required by Rule 26(a)…is not…permitted to use…any witness…not so disclosed." Fed. R. Civ. P. 37(c)(1). Dr. Goodman's report makes no mention of TruePositon's certified translation. He did not rely upon it in rendering his invalidity opinion. He did not mention it at his deposition. Andrew cannot now offer an invalidity opinion that is based upon that translation.

Expert reports must include "a complete statement of all opinions to be expressed and the basis and reasons therefore." Fed. R. Civ. P. 26(a)(2). TruePosition did not have the opportunity to examine Dr. Goodman concerning his claim that the patent is invalid in view of TruePosition's translation.

The only expert that did consider and compare both parties' respective translations in his expert report is Dr. Brian Agee, who opined that there *were* significant differences between the translations (C6-C8). Andrew cannot create a fact issue by contradicting Dr. Agee's opinion with Dr. Goodman's new opinion because Andrew is not permitted to use Dr. Goodman's new opinion as evidence. Fed. R Civ. P. 37(c)(1).

TruePosition is entitled to summary judgment that each of the asserted claims 1, 2, 22, 31 and 32 is valid for the additional reason that Andrew has failed to prove that the document that its expert relied upon can be equated with prior art using evidence that existed at the time that TruePosition's motion was filed.

### D.   Andrew Cannot Rely Upon an Indefiniteness Defense That it Concealed During Fact and Expert Discovery

Andrew claims that TruePosition's motion should be denied because "Andrew demonstrated in its pending summary judgment motion" that "claim 22 is invalid for indefiniteness" (D.I. 154 at 11). But in TruePosition's opposition to that motion, TruePosition has amply demonstrated that Andrew's indefiniteness defense is not only without merit (D.I. 156 at 18-35), but also too late (D.I. 156 at

11-18). Andrew is precluded from raising its indefiniteness defense because it failed to mention that defense until it filed its summary judgment motion. "A party that without substantial justification fails to…amend a prior response to discovery…is not…permitted to use as evidence…any…information not so disclosed." Fed. R. Civ. 37(c)(1). Andrew cannot prove invalidity by sandbagging TruePosition with baseless allegations of indefiniteness. TruePosition is entitled to summary judgment that claim 22 of the patent is valid for the reasons set forth in TruePosition's opening brief.

### E.    TruePosition Satisfied Its Burden on Summary Judgment With Respect to Claim 31

In a remarkable sleight of hand, Andrew appears to suggest that TruePosition's motion does not relate to all of the asserted claims because TruePosition did not specifically mention claim 31. That argument is wishful thinking. As was clear from TruePosition's motion, Andrew's invalidity opinion fails to set forth a proper construction of *any* claim and fails to compare *all* of the limitations of *any* properly construed claim to the Kono application. Thus its invalidity arguments fail as to *all* asserted claims. While it is true that TruePosition expressly referred in its motion to the construction of claim 22 that Goodman provided only when pressed in his deposition for the construction he used in rendering his opinion, it did so only because that was the *only* evidence of *any* Goodman construction. And TruePosition expressly referred to the means-

- 14 -

plus-function claims 1, 2, and 22 in connection with its *additional* argument that Goodman did not identify any structure corresponding to the means limitations in those claims. TruePosition nowhere implied that its motion was limited to those claims. It clearly is not.

### F.    Andrew's Gross Distortions of the Record Cannot Go Unchallenged[2]

Like most of its brief, Andrew's mischaracterizations of the record are mostly irrelevant to TruePosition's motion. Nevertheless, one particular distortion, Andrew's gratuitous attempt to smear Dr. Brian Agee, cannot go unchallenged.

Andrew spends two pages of its fact section (D.I. 154 at 9-10) trying to discredit TruePosition's validity expert, Dr. Brian Agee, even though Dr. Agee's opinion is entirely irrelevant to this motion. Andrew boldly asserts that Dr. Agee submitted "three different rebuttal invalidity reports" and that he "flip-flopped his opinion on Kono (D.I. 154 at 9). But Andrew grossly mischaracterizes what Dr. Agee did and entirely ignores Dr. Agee's clear testimony on the subject.

Dr. Agee submitted his validity report on December 22, 2006. That report contained certain language that Dr. Agee deleted in a corrected report dated January 24, 2007. He did not add anything to his January 24, 2007 report. Andrew claims that language was deleted because "TruePosition's litigation counsel called

---

[2] In this reply, TruePosition addresses only some of Andrew's many gross distortions of the record. TruePosition does not address many of Andrew's "facts" since they are completely irrelevant to this motion.

him and convinced him to change his report to remove the damaging language"
(D.I. 154 at 10).  That statement is patently untrue.  What Dr. Agee testified to – in
deposition pages that come between the pages Andrew cites and which Andrew
chose not to submit to the Court – was that counsel called him shortly after the
initial report had been submitted and said, "Brian, I'm reading through your report,
and you made an error, I think.  Why don't you go take a look at this and tell me if
you agree" (C16).  Counsel did not suggest where in the report the error appeared
(C15-C16).  Dr. Agee testified that he realized his error as soon as he read the
report, and immediately forwarded a corrected copy to counsel (C16).

     Dr. Agee further testified that his opinion *did not change* between the initial
report and the corrected report.  Rather, he said, the erroneous language had
appeared in an early draft of his report.  He had abandoned that position well
before his initial report was submitted, after he had been able to review the file
wrapper and study the 144 patent in more detail.  He testified unambiguously that
the language that slipped through was an error, which he corrected in his January
report, and *not* a change in opinion.  (C14-C16, C17-C18).

     The night before his deposition, on his own initiative, Dr. Agee prepared a
4-page supplement to his report.  He testified that his underlying opinion remained
unchanged, and that the supplement was additional analysis to address the concept
of equivalence.  The supplement did not, as Andrew misleadingly states, constitute

another version of his report or change his opinion in any way (C10, C12-C13, C18).

It is not apparent why Andrew would go to such lengths to attempt to smear Dr. Agee with such verifiably misleading statements. Like so much of Andrew's briefing, the entire discussion is off the point. TruePosition has not offered any evidence that is contained in Dr. Agee's supplement. Andrew appears to have adopted the tactic of obfuscating the real issues by misdirection when it has no evidence with which to respond. [3]

## III.  CONCLUSION

Andrew still has not come forward with evidence sufficient to invalidate TruePosition's 144 patent. It has still has not properly construed the claims it seeks to invalidate. It has failed to perform the element-to-element comparison that is necessary to prove its conditional invalidity opinion. Nor has it yet provided sufficient competent evidence to show, by clear and convincing evidence, that each and every element of the properly construed claims is present in a single prior art publication. Its purported "certified" translation of the prior art reference upon which its expert relies is untimely and remains untested.

---

[3]     Andrew attempts to use the "fact" that Dr. Agee submitted what Andrew falsely asserts are three reports with three different opinions to create a fact issue where none exists (D.I. 154 at 10). But as TruePosition has shown, Andrew lacks evidence to make out its case of invalidity. Dr. Agee's opinions would become relevant only if Andrew had come forward with sufficient evidence to create an issue to present to the jury. It has not done so.

TruePosition is entitled to an Order entering judgment in its favor and

against Andrew on Andrew's First Affirmative Defense and its Counterclaim I to

the extent they allege invalidity.


Respectfully submitted,


Date: February 26, 2007          By:    */s/ Francis DiGiovanni*
                                 CONNOLLY BOVE LODGE & HUTZ LLP
                                 Francis DiGiovanni (# 3189)
                                 James D. Heisman (# 2746)
                                 1007 N. Orange Street
                                 P.O. Box 2207
                                 Wilmington, DE 19899
                                 Telephone: (302) 658-9141
                                 Facsimile: (212) 558-3588

                                 WOODCOCK WASHBURN LLP
                                 Paul B. Milcetic, Esq. (*pro hac vice*)
                                 David L. Marcus, Esq. (*pro hac vice*)
                                 Kathleen A. Milsark, Esq. (*pro hac vice*)
                                 Daniel J. Goettle, Esq. (*pro hac vice*)
                                 Cira Center, 12th Floor
                                 2929 Arch Street
                                 Philadelphia, PA 19103
                                 Telephone: (215) 568-3100
                                 Facsimile: (215) 568-3439

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on this 26th day of February, 2007, I caused a true and correct copy of the foregoing **TRUEPOSITION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT ANDREW CANNOT PROVE ITS CLAIMS OF INVALIDITY** to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

_____ */s/ Francis DiGiovanni* _____.
Francis DiGiovanni (# 3189)