# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TruePosition, Inc.,                      )
                                         )
       **Plaintiff/**                     )
       **Counterclaim-Defendant,**        )
                                         )          **Civil Action No. 05-747-SLR**
       **v.**                            )
                                         )
**Andrew Corporation,**                  )
                                         )
       **Defendant/**                     )
       **Counterclaim-Plaintiff.**        )
_____ )

## TRUEPOSITION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ANDREW'S COUNTERCLAIMS II-VI AND AFFIRMATIVE DEFENSES III-V

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (212) 558-3588

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (*pro hac vice*)
Dale M. Heist, Esq. (*pro hac vice*)
David L. Marcus, Esq. (*pro hac vice*)
Kathleen A. Milsark, Esq. (*pro hac vice*)
Daniel J. Goettle, Esq. (*pro hac vice*)
Cira Center, 12th Floor
2929 Arch Street
Philadelphia, PA 19103
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

**Table of Contents**

I. INTRODUCTION ................................................................................................1

II. ARGUMENT ....................................................................................................2

    A. Andrew's State Law Claims Are Preempted by Federal Patent Law .....................2

    B. Andrew Still Has Not Provided Any Evidence Showing that
       TruePosition Had a Duty to Declare the 144 Patent as "Essential"......................4

    C. The Evidence Is Uncontradicted that Andrew Did *Not* Implement
       the "U-TDOA Standards" Upon Which *All* of Its Standards-Based
       Counterclaims and Defenses Are Based ................................................................9

    D. Andrew Failed to Provide Any Specific Facts Showing that
       TruePosition Intended to Mislead Andrew .........................................................12

    E. Andrew Failed to Provide Any Facts Showing That It Reasonably
       Relied on Anything TruePosition Did or Did Not Do .........................................16

    F. It Is Undisputed that There Never Could Have Been a Disclosure
       in California............................................................................................................17

    G. Andrew Failed to Provide Any Evidence of Damages .........................................18

III. CONCLUSION ...............................................................................................19

## Table of Authorities

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 249 (1986)..................................................................................1, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)..........................................................................................1, 2

*Czarnik v. Illumina, Inc.*,
437 F. Supp. 2d 252 (D. Del. 2006).....................................................................18

*Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.*,
45 F.3d 1550 (Fed. Cir. 1995)..............................................................................20

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.*,
362 F.3d 1367 (Fed. Cir. 2004) .............................................................................3

*Hunter Douglas, Inc. v. Harmonic Design, Inc.*,
153 F.3d 1318 (Fed. Cir. 1998) .............................................................................3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)..............................................................................................18

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................................................................................1, 2, 11

*Microstrategy Inc. v. Business Objects Americas*,
410 F. Supp. 2d 348 (D. Del. 2006).....................................................................13

*Omnipoint Comm. Enters., L.P. v. Newtown Township*,
219 F.3d 240 (3d Cir. 2000)...................................................................................2

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)..................................................................................................3

*Rambus, Inc. v. Infineon Techs. AG*,
318 F.3d 1081 (Fed. Cir. 2003) .............................................................................5

*RiMMax Wheels LLC v. RC Components, Inc.*,
2007 U.S. Dist. LEXIS 11690 (D. Del. Feb. 21, 2007) ....................................1, 2, 11

*TypeRight Keyboard Corp. v. Microsoft Corp.*,
374 F.3d 1151 (Fed. Cir. 2004) ...........................................................................13

*Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999) .........................3

**STATE CASES**

*Acierno v. Goldstein*, 2005 Del. Ch. LEXIS 176 (Del. Ch. Nov. 16, 2005).....................19

*Gaffin v. Teledyne, Inc.*, 611 A.2d 467 (Del. 1992) .........................................................19

*Henne v. Balick*, 146 A.2d 394 (Del. 1950)....................................................................19

**FEDERAL STATUTES**

Fed. R. Civ. P. 56(e) .........................................................................................................1

## I.    INTRODUCTION

Andrew's opposing brief is nothing but an attempt to obfuscate the real issues by creating a smokescreen of mischaracterizations and non-probative, *im*material facts.[1] TruePosition demonstrated in its opening brief Andrew's complete failure of proof (or uncontradicted evidence showing that there is nothing for the jury to decide) on essential elements of Andrew's claims. And TruePosition demonstrated that Andrew's state law claims are preempted by federal law. But Andrew has failed to come forward with specific facts showing that there are genuine issues for trial on any of its standards-based counterclaims and affirmative defenses, and Andrew has failed to demonstrate that its state claims are not preempted.

Once TruePosition showed that there are no genuine issues as to any material facts and that TruePosition was entitled to judgment as a matter of law on Andrew's claims and defenses, *Andrew* bore the burden of coming "forward with 'specific facts showing that there is a genuine issue for trial.'" *RiMMax Wheels LLC v. RC Components, Inc.*, 2007 U.S. Dist. LEXIS 11690, *11 (D. Del. Feb. 21, 2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) and Fed. R. Civ. P. 56(e)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Pointing out the mere existence of *some* evidence supporting Andrew's claims and defenses is insufficient. *See RiMMax Wheels* at *11 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Andrew cannot avoid summary judgment by pointing to evidence that is "merely colorable" or "not significantly probative." *See Anderson*, 477 U.S. at 249-50.

---

[1]    TruePosition does not respond to those of Andrew's "facts" that are not pertinent to this motion. That does not imply that TruePosition agrees that Andrew's "facts" and characterizations are true.

Nor can Andrew avoid summary judgment by showing "some metaphysical doubt as to the material facts" or by pointing to no evidence at all. *See Matsushita*, 475 U.S. at 586-587. Where the record taken as a whole can not lead a rational jury to find in Andrew's favor, there is no genuine issue for trial. *See id.* at 587.

Andrew bears the burden of proving its claims and affirmative defenses at trial. Therefore, because Andrew has failed to make a sufficient showing on any of the essential elements of its claims and defenses, the Court *must* grant summary judgment. *See RiMMax Wheels*, 2007 U.S. Dist. LEXIS at *11-12 (citing *Celotex*, 477 U.S. at 322 & *Omnipoint Comm. Enters., L.P. v. Newtown Township*, 219 F.3d 240, 242 (3d Cir. 2000)). TruePosition is entitled to judgment on **all** of Andrew's standards-based counterclaims and defenses as a matter of law.

## II.    ARGUMENT

### A.    Andrew's State Law Claims Are Preempted by Federal Patent Law

TruePosition demonstrated in its opening brief that Andrew has not provided any evidence (and has not even alleged) that TruePosition's enforcement of the 144 patent against Andrew, its decision not to declare the 144 patent as "essential" to ETSI, or its belief that the 144 patent is not "essential" within the meaning of the ETSI IPR policy are either objectively or subjectively baseless (D.I. 138 at 14-15). Andrew has come forward with no evidence to the contrary (D.I. 160 at p. 15-17). In fact, Andrew did not even *argue* that these points are not true (*id.*).

Andrew acknowledges that its state law counterclaims all seek to render the 144 patent unenforceable (D.I. 160 at 15). Nevertheless, Andrew seeks to differentiate its state law claims from those in the preemption cases by arguing that its claims are based

on standards-related conduct that occurred before infringement began, while the caselaw

is limited, in Andrew's view, to preemption of state law claims based on pre-suit warning

letters or other communications relating to the patent (*id.* at 15-16).[2]

But the case law is not so limited. The cases irrefutably hold that state law cannot

be used to override the federal statutory right to assert one's patent against an infringer,

which Andrew admits that its state law claims seek to do. The fact that the cases tend to

arise in the context of pre-suit communications regarding patents does not imply that the

broad general principles stated in the cases are limited to that factual scenario. *See, e.g.,*

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1374 (Fed. Cir.

2004); *Zenith Electronics Corp. v. Exzec, Inc.,* 182 F.3d 1340, 1355 (Fed. Cir. 1999);

*Hunter Douglas, Inc. v. Harmonic Design, Inc.,* 153 F.3d 1318, 1335-37 (Fed. Cir. 1998).

The only exception to this general preemption principle is when the enforcement

activity is conducted in bad faith, and bad faith is defined with reference to both

objective and subjective baselessness. *Globetrotter Software,* 362 F.3d at 1377; *see*

*Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49,

57, 60 (1993). Since Andrew has failed to even plead, let alone to come forward with

---

[2]     In the damages section of its brief, Andrew contradicts its own assertion that its state law
claims are not based on TruePosition's assertion of the 144 patent. In its attempt to rescue its
unsubstantiated and unquantified damages claim, Andrew points to various categories of alleged
injury *that are all litigation-related* (D.I. 160 at 38: "The award of the STC contract was
delayed"; "staff have had to undertake letter-writing campaigns and trips to STC to respond to
TruePosition's actions"; "Andrew must routinely engage in discussions with other potential
customers related to TruePosition's actions"; "Attorney's fees and costs related to the instant
litigation"; and "Andrew may be forced to pay a substantial damages award to TruePosition").

any evidence, that TruePosition's conduct in 3GPP/ETSI or in bringing this case was objectively or subjectively baseless, its claims are preempted. [3]

**B.    Andrew Still Has Not Provided Any Evidence Showing that TruePosition Had a Duty to Declare the 144 Patent as "Essential"**

Andrew offers nothing but smoke and mirrors in its attempt to rebut TruePosition's showing that there is **no record evidence** that would enable a jury reasonably to conclude that TruePosition had a duty to disclose the 144 patent in connection with 3GPP standards activity.  Andrew asserts that there are "myriad" issues of fact regarding whether TruePosition had a duty to disclose the 144 patent, contending that such fact issues include: (a) what the ETSI policy requires; (b) whether there is a reasonable expectation that a license is needed to implement the standard; (c) whether the '144 patent was essential; and (d) whether Andrew can show that it is not possible on technical grounds to provide location services in a GSM network without infringing the '144 patent" (D.I. 160 at 18 (internal citations omitted)).  But TruePosition's motion already demonstrated that Andrew has failed to offer **any record evidence** on these points, and Andrew has not offered any in its opposing brief, either.  Instead, Andrew asserts that it need not show that the '144 patent was essential within the meaning of ETSI's IPR policy in order to survive summary judgment (*id.* at 18 n.9).  But it *did* need to come forward with *specific facts* showing that there is a genuine issue for trial. Andrew has failed to provide *any probative evidence* that would allow a jury reasonably

---

[3]    Baldly asserting that "Andrew does consider this case to be frivolous, and reserves the right to seek its attorneys' fees at the conclusion of this litigation," (D.I. 160 at 15 n.5), is not coming forward with evidence to create a fact issue with respect to objective or subjective baselessness.  It is insufficient at this stage of the proceedings to withstand summary judgment.

to find that TruePosition had a duty to declare the 144 patent as "essential," which is a necessary element of *all* Andrew's claims and defenses.

Andrew's first alleged "disputed fact" is "what the ETSI policy requires" (D.I. 160 at 18). But there is no *factual* dispute over what the ETSI policy requires. That policy was quoted in TruePosition's opening brief (D.I. 138 at 10, 17), and Andrew does not dispute what it says. If there is an issue about what that policy requires – and TruePosition does not believe there is – it is one of contract interpretation for the Court, not a factual matter. Further, as TruePosition previously noted, to the extent ETSI's IPR policy may not clearly define what must be disclosed (or when, how or to whom), it does not provide a basis for finding the disclosure duty required to support a fraud verdict. *See Rambus, Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1102 (Fed. Cir. 2003); D.I. 138 at 17.

Andrew's second alleged "disputed fact" is "whether there is a reasonable expectation that a license is needed to implement the standard" (D.I. 160 at 18). But Andrew still has not identified what 3GPP or ETSI technical specifications or reports comprise the "standard(s)" upon which its claims are based (*see* D.I. 138 at 18 n.11), and points to **no record evidence** to the effect that there would be a reasonable expectation by anyone in the industry that a license under the 144 patent would be necessary to practice the "U-TDOA standards" (whatever they may turn out to be). (The unreasonableness of Andrew's own alleged expectations was discussed at length in TruePosition's opening brief, D.I. 138, at 22-26).

Andrew's third and fourth alleged "disputed facts" are "whether the '144 patent was essential" and "whether Andrew can show that it is not possible on technical grounds to provide location services in a GSM network without infringing the '144 patent" (D.I.

5

160 at 18).  Again, however, Andrew points to **no record evidence** of any comparison of the claims of the 144 patent to the still unidentified "standards," or to any analysis or testimony by anyone showing that it is not technically possible to implement any 3GPP or ETSI standards without infringing the 144 patent.  TruePosition's evidence on these matters is therefore unrebutted (*see* D.I. 138 at 18-20).

Instead of providing evidence to support the "facts" it asserts are disputed, Andrew changes the subject and levels unfounded assertions based on *other*, non-probative and irrelevant "facts" and testimony.  First, apparently in an attempt to show that the 144 patent is essential, Andrew claims that TruePosition has made "sweeping" representations as to the scope of its patent.  The only "evidence" it cites is a single email from a TruePosition salesman (who in the email described himself as "lay" with respect to technical issues) to TruePosition's local partner in Saudi Arabia in connection with TruePosition's attempt to ascertain whether Andrew had offered an infringing system to STC (D.I. 160 at 18-19; B159).  But this email from a non-technical sales person (who was never deposed by Andrew) says nothing about whether it is possible on technical grounds to comply with any standard without infringing the 144 patent, which is the undisputed test for determining whether the 144 patent is "essential."  At most, it provides a non-technical understanding of what a particular salesman thought might infringe the 144 patent.  This email is not probative of any duty to declare the 144 patent as essential.  And Andrew has cited nothing else to support its "sweeping representations as to scope" argument.

Second, Andrew argues that technical feasibility for purposes of determining whether IPR is essential must take into account "normal technical practice and the <u>state</u>

of the art generally available at the time of the standardization" (D.I. 160 at 20)

(emphasis in original) and suggests that the other technical alternatives were only a

theoretical possibility, not true alternatives, at the time of standardization. But Andrew

provides no evidence analyzing "the state of the art generally available at the time of

standardization." The only evidence that Andrew points to for its suggestion actually

shows that it **is** technically possible to locate an idle mode phone using a traffic channel

in a GSM system. All one needs to do is have the radio access network (RAN) vendor

implement it (D.I. 160 at 20). As TruePosition demonstrated in its opening brief, and

Andrew has not refuted, the UTDOA option in the location services standard provides

that one may locate "either on the SDCCH or TCH" (D.I. 138 at 19). Thus the 144 patent

is not essential for idle mode location. Moreover, Andrew fails to address any of the

other alternatives to U-TDOA systems discussed in TruePosition's brief (D.I. 138 at 18-

19).[4]

Third, Andrew contends that TruePosition's contention that lost profits are

appropriate in this case because there are no noninfringing substitutes is inconsistent with

TruePosition's argument that the 144 patent is not "essential" (D.I. 160 at 20). But the

two issues have nothing whatever to do with each other. TruePosition contends that it is

entitled to lost profits in part because there are no "**commercially available**"

noninfringing substitutes -- **not** that there are "no noninfringing substitutes" or "no

---

[4]     Andrew characterizes TruePosition's argument that the 144 patent is not essential because the 3GPP location services standard includes several other positioning methods as "absurd" (D.I. 160 at 14), but Andrew has provided no evidence or analysis of the ETSI policy to the contrary. Andrew does not deny that the 3GPP locations services standard includes several positioning methods other than UTDOA, and does not deny that a GSM operator can choose which one to use when implementing the standard. A plain reading of ETSI's IPR policy makes clear that if it is possible to comply with a standard without infringing a patent, that patent is **not** "essential IPR" (*see* D.I. 138 at 17-18).

acceptable noninfringing substitutes" as Andrew characterizes the position. In the testimony Andrew quotes, TruePosition's damages expert clearly differentiated between commercial availability for damage purposes and technical feasibility (D.I. 160 at 12-13). The fact that TruePosition's expert was not aware of any **commercially available** location systems that place cell phones on a traffic channel instead of a control channel for idle mode locations proves nothing about whether it is or is not technically possible to do so, or whether it is or is not technically possible to implement unidentified 3GPP or ETSI "standards" without infringing the 144 patent.

Finally, Andrew makes a completely unsupported assertion that goes beyond anything it alleged in its pleadings or its interrogatory answers. Andrew states that "the facts" show that TruePosition "also had a duty to disclose to Andrew" because "TruePosition and Andrew cooperated and worked closely together for years to get UTDOA standardized in the GSM specifications" (D.I. 160 at 21). But Andrew never pleaded a duty to disclose anything on the basis of cooperation at 3GPP. Andrew's pleadings all relate only to an alleged duty to declare the 144 patent as essential based on ETSI's IPR policy (D.I. 48 at ¶ 25-28; A195-A204). And even if Andrew had alleged its newly invented duty, Andrew still has not specified what the source of that duty is or how it allegedly compelled any disclosures by TruePosition to Andrew. The law certainly imposes no such duty.

TruePosition established in its opening brief that the 144 patent is not essential within the meaning of ETSI's IPR policy and that there was therefore no duty to declare it as essential IPR. Andrew has made a number of off-the-point arguments, but it has provided no evidence whatever sufficient to create a material factual issue. TruePosition

is entitled to summary judgment on each of Andrew's fraud-based counterclaims because Andrew cannot show that TruePosition had any duty to disclose the 144 patent in connection with any standards-related activity.

>    **C.    The Evidence Is Uncontradicted that Andrew Did *Not* Implement the "U-TDOA Standards" Upon Which *All* of Its Standards-Based Counterclaims and Defenses Are Based**

Andrew's standards-based claims and defenses are all premised on the notion that Andrew relied on the fact that TruePosition had not declared its patent as "essential" to the 3GPP/ETSI standards in bidding on, going forward with and implementing a 3GPP/ETSI-compliant system at STC (Andrew's Answer and Counterclaim to Second Amended Complaint (D.I. 48 at ¶ 23, 28-30). *See* TruePosition's opening brief (D.I. 138) at 12. But TruePosition provided undisputed evidence showing that the system Andrew offered and installed at STC did **not** implement 3GPP standards (D.I. 138 at 23). Instead, Andrew implemented an "Lbis" architecture, and the Lbis technical specifications were developed **outside** of 3GPP and do **not** comprise 3GPP "standards" (*id.*).

Andrew nowhere denies that it implemented an "Lbis" system or that the Lbis technical specifications are not 3GPP standards. Instead, Andrew misleadingly argues that the "system" it sold to STC is not "outside the ETSI specifications" (D.I. 160 at 26). To support that statement Andrew cites a single sentence of deposition testimony from an Andrew engineer, taken out of context, that "Geometrix is compliant with the GSM standard" (*id.* & B290).[5] That single sentence is insufficient to create an issue for trial.

---

[5]    Citations to "A_" are to Appendix A to TruePosition's Brief in Support of Its Motion For Summary Judgment on Andrew's Counterclaims II-IV and Affirmative Defenses III-V (D.I. 138);

For example, the sentence does not state what the engineer meant by "Geometrix," and it is undisputed that there are many configurations of the "Geometrix" product that do not include UTDOA location capabilities at all (C5-C6 (17:13-20:4); C46, C47 & C52 ("Geometrix can provide A-GPS, Matrix, CID, E-CID, and U-TDOA wireless location technologies, **individually or in combination**" (emphasis added)). The sentence does not mention STC, so it does not equate the "Geometrix" the engineer was referring to with the infringing system Andrew developed, offered and sold to STC -- the system at issue here and upon which all of Andrew's claims and defenses are based. Furthermore, the engineer could not identify the "GSM standard" he referred to as any particular standard issued by 3GPP (B291 (30:9-10)). He also had no idea whether it was necessary to add the infringing functionality at issue here (SDCCH location) to "Geometrix," whatever that may be, in order to comply with any 3GPP standard (B291 (30:17-19: "Q: Did you have to add SDCCH location to Geometrix to comply with any 3GPP standard? A: I don't know."). And most significantly, the testimony does **not** refute TruePosition's uncontradicted evidence showing that Andrew developed, offered and implemented an Lbis architecture at STC, or that the Lbis interface specifications were developed outside of 3GPP and do not comprise 3GPP "standards." Indeed, the testimony Andrew has cited says nothing about Lbis architecture or specifications at all.

Andrew apparently recognizes that the sentence it cites is insufficient to overcome TruePosition's evidence, for it goes on to opine that "[e]ven assuming for the sake of argument that certain aspects of Andrew's overall system architecture go beyond what is prescribed by the ETSI or 3GPP specifications, the way Andrew locates idle phones

---

Citations to "B_" are to the Appendix of Exhibits to Andrew's Brief in Opposition (D.I. 160); and citations to "C_" are to TruePosition's Appendix in Support of Its Reply Brief.

using UTDOA is *in accordance* with the 3GPP specifications" (D.I. 160 at 26 (emphasis added)).  But Andrew cites absolutely **no** evidence whatever to support its statement, and it is unclear what the statement even means (*id.*).

Citing one sentence of non-probative testimony and providing yet another unsupported assertion is simply insufficient.  Andrew has not come forward with **any** facts to rebut TruePosition's evidence showing that the Lbis system Andrew offered and installed at STC was based on specifications developed **outside** of 3GPP and do **not** comprise 3GPP "standards."  It still does not point to any 3GPP specification or "standard" that it purportedly is "in accordance with" or relate those specifications to matters taught in the 144 patent.  Accordingly, there is no evidence that would enable a jury reasonably to find that Andrew provided a system to STC that implemented any standard jointly proposed by TruePosition and Andrew or adopted by 3GPP.  And there is no evidence that would enable a jury reasonably to find that Andrew justifiably relied on TruePosition's non-declaration of the 144 patent as essential IPR in bidding to supply products implementing any such standards**.**  The testimony that Andrew has cited is "not significantly probative" and fails to show that "there is a genuine issue for trial."  *See Anderson,* 477 U.S. at 249-50;  *Matsushita,* 475 U.S. at 586-87; *RiMMax* , 2007 U.S. Dist. LEXIS 11690 at *11-12, *15, **19-20 (granting summary judgment because no record evidence supported allegations).

Because all of Andrew's counterclaims assume that Andrew implemented some 3GPP standard and that TruePosition was required to declare the 144 patent as essential in connection with adoption of such a standard, the undisputed fact that Andrew *did not implement the standard* in its infringing system dooms its claims.  TruePosition is

entitled to summary judgment as a matter of law on **all** of Andrew's standards-based

counterclaims and defenses.[6]

### D.    Andrew Failed to Provide Any Specific Facts Showing that TruePosition Intended to Mislead Andrew

Andrew contends that TruePosition intended to mislead it, but again, Andrew

attempts to rebut TruePosition's evidentiary showing with nothing but

mischaracterizations of non-probative facts (D.I. 160 at 22-23).  Even if one accepts

Andrew's characterizations as true, they do not lead to the conclusion that the 144 patent

was not declared essential in an attempt to mislead Andrew.  Even if one were to assume,

as Andrew contends, that i) TruePosition knew it would assert the 144 patent against "a

particular implementation" of the standard it was advocating; ii) TruePosition considered

seeking Andrew's cooperation before the standards bodies so as to eliminate a concern

that UTDOA was proprietary to TruePosition; and iii) a low-level non-technical

TruePosition employee who performed no analysis thought the 144 patent should be

declared (D.I. 160 at 22-23), those assumptions are not probative of the conclusion that

TruePosition intended to mislead Andrew in not declaring the 144 patent to ETSI.  They

do not bear on the only real issue, which is whether TruePosition believed the 144 patent

was essential under ETSI's IPR policy but decided not to declare it to ETSI in an attempt

to mislead Andrew.

Moreover, Andrew's assertions are not true.  First, the evidence is uncontradicted

that the only two TruePosition employees with sufficient knowledge or authority to

---

[6]     Moreover, Andrew is precluded from arguing that its system was not an Lbis system or that the Lbis technical specifications upon which its system is based were developed outside of 3GPP and do not comprise 3GPP "standards" because Andrew chose not to answer or object to TruePosition's interrogatory 25, which sought Andrew's contentions on that precise issue (C59).

determine whether any patent should or should not be declared to a standards body both firmly believed, based on analysis, that the 144 patent is not essential (D.I. 138 at 20). That testimony is corroborated by the ETSI IPR Policy and the 3GPP/ETSI technical specifications (D.I. 138 at 19).  Andrew cannot avoid summary judgment by simply contending that TruePosition's witnesses are not to be believed.  *See Microstrategy Inc. v. Business Objects Americas*, 410 F. Supp. 2d 348, 363 (D. Del. 2006) (citing *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1158 (Fed. Cir. 2004)).  Andrew needed to offer "specific facts that call into question the credibility of [TruePosition]'s witnesses." *See id.*  Andrew offered no facts at all – just innuendo (D.I. 160 at 22).

Second, TruePosition's Rule 30(b)(6) witness, its Chief Technical Officer, Rob Anderson, did **not** testify that TruePosition "knew it would assert the '144 patent against a particular implementation of the standard it was advocating" (*id.*).  Mr. Anderson testified only that it was TruePosition's belief that the 144 patent covered the control channel "**alternative**" for locating mobile phones at the time of a pre-standardization feasibility study.  He did **not** testify that TruePosition believed the 144 patent covered **all** implementations of the UTDOA portion of the standard; indeed, he testified that performing the TCH (traffic channel) alternative would **not** infringe the 144 patent, which is one of the reasons why TruePosition did not believe the 144 patent was essential.  Further, in the pages immediately preceding the snippet Andrew cites, Mr. Anderson explained several reasons for not believing the patent was essential (C10 (96:2-97:8), C11 (99:19-100:7)).

---

Andrew responded to the other interrogatories in the set, but ignored interrogatory 25 (C61-C69). It is too late for Andrew to develop any such contentions now.

Third, there is no evidence that TruePosition ever sought Andrew's cooperation to assist in the efforts to standardize UTDOA at 3GPP.  Andrew admits that it never entered into any contractual arrangement to do so (D.I. 160 at 8-9), and Andrew does not even allege that TruePosition ever suggested contractually binding Andrew to assist in such efforts.  All it cites is an internal email suggesting the possibility, a possibility that was never acted upon.  The **real** reason why Andrew decided to participate in the efforts to standardize UTDOA at 3GPP – the only reason Andrew gave in its interrogatory answers -- is that that its customer AT&T Wireless asked it to do so (C71-C72).  Moreover, a portion of the same Robinson email chain that Andrew cites on page 23 of its brief, but that Andrew does not quote, actually shows that it was **Andrew** that approached TruePosition in an "unsolicited" bid to join in TruePosition's efforts to standardize UTDOA at 3GPP, not the other way around (B117-18).  The same email also shows that Robinson recommended that TruePosition cooperate with Andrew **only** to the extent required by its membership in ETSI/3GPP (B117-18).

Fourth, Mr. Donaghy, the author of the email to TruePosition's counsel quoted at the top of page 23 of Andrew's brief, testified that he had no knowledge of what TruePosition wanted or did not want with respect to Andrew (C18 (18:9-16); C19-C20 (25:24-26:16)).  He further testified that he had no personal knowledge of any perception that UTDOA was a proprietary technology (C19 (22:11-20)), and that he could not recall any conversations with a single person at TruePosition about whether there was a perception that UTDOA was a proprietary technology (C19 (22:21-24:23)).  And it is uncontradicted that Andrew is fully free to practice UTDOA on the voice channel (D.I.

14

138 at 7 & 19).  It is only control channel implementations that TruePosition contends are covered by the 144 patent.

Finally, Andrew grossly mischaracterizes what TruePosition said about Rhys Robinson's testimony in its opening brief (*see* D.I. 160 at 23).  TruePosition did **not** "admit" that Mr. Robinson gave testimony indicating an intent to mislead.  To the contrary, TruePosition stated that "**Andrew has suggested** as evidence of TruePosition's intent to mislead that Rhys Robinson, a former TruePosition employee [], believed that the 144 patent should be declared and repeatedly so advised management" (D.I. 138 at 22 n.15).  TruePosition then cited Mr. Robinson's own testimony stating that he did not have the technical expertise to assess whether a patent should be declared essential, that he had performed no analysis of whether the 144 patent was essential, and that none of his emails stated or suggested that 144 patent was essential or should be declared to ETSI (*id.*).  Andrew's citation of Mr. Robinson's testimony that he "personally" believed the 144 should be declared is therefore of no assistance to Andrew whatever (B285).

But none of this matters.  The issue for the Court's determination is whether there is any evidence sufficient to create a genuine issue of material fact on the question whether TruePosition's decision not to declare the 144 patent as essential IPR to ETSI was intended to deceive Andrew.  Because the only TruePosition employees with adequate technical knowledge and authority to make that decision firmly believe the 144 patent is not essential within the meaning of the ETSI policy, and their statements are uncontradicted, there can be no finding of intent to mislead.

**E.     Andrew Failed to Provide Any Facts Showing That It
Reasonably Relied on Anything TruePosition Did or Did Not Do**

Andrew does not seriously contest that the settlement agreement in the prior

litigation between the parties negates any claim that it reasonably relied on

TruePosition's non-disclosure of the 144 patent to ETSI.  Instead, it claims that the prior

settlement was a "set-up."  But, of course, there is no evidence of any such "set-up," and

the integration clause of the settlement agreement precludes the argument in any event.[7]

If either party was duped in the settlement negotiations, it was TruePosition.

Andrew admits that all of the conduct upon which its standards-based claims are based

occurred prior to the settlement agreement (D.I. 160 at 25).  The settlement agreement's

integration clause thus erases any claims based on such conduct.  Further, both the term

sheet (A210-A218)[8] and the settlement agreement (A37-A70) plainly reflect

TruePosition's understanding that the 144 patent covered "control or access channel"

location but not "voice or traffic channel" location.  The only patents that Andrew was

not being licensed under were two "control channel" patents, one of them the 144 patent.

There would have been no need to negotiate the incredibly detailed covenants not to sue

quoted in TruePosition's opening brief (D.I. 138 at 6-7, 24-25) if both parties had not

shared the understanding that Andrew was not free to perform locations on the control

---

[7]     Andrew has never alleged that the settlement agreement was fraudulently induced.
Indeed, if it had done so, its counsel would be disqualified because it was a Kirkland & Ellis
partner, James Amend, who brokered the settlement.  Andrew states that TruePosition never
formally objected to Kirkland's representation, but in fact it did do so (D.I. 37 & C75-C76).
After Kirkland represented that it would institute a wall between the litigation counsel and Mr.
Amend and asserted that the settlement agreement would not be central to this case, TruePosition
withdrew its objection, but reserved the right to reassert it should circumstances change.  If
Andrew is now suggesting that the settlement was somehow improper, that changed circumstance
would require disqualification of Kirkland (*see* D.I. 138 at 6 n.4).

channel under the 144 patent. At the very least, TruePosition's understanding was clear: it was not giving up any rights for control channel location systems. If Andrew really had some contrary understanding, it concealed it from TruePosition.[9]

The settlement agreement is fatal to Andrew's "reasonable reliance" argument. TruePosition is entitled to summary judgment on all of Andrew's fraud-based claims.[10]

### F.     It Is Undisputed that There Never Could Have Been a Disclosure in California

Andrew admits that 3GPP meetings took place "all over the globe," but then asserts that California's unfair competition statute should apply because TruePosition attended three 3GPP meetings in California (D.I. 160 at 28-29). Andrew spends a lot of pages on this issue, but never comes forward with any evidence to dispute the simple fact on which TruePosition's motion is based: it is undisputed that even if there were a duty to disclose the 144 patent as essential, *that would never have occurred at any 3GPP meeting,* in California or anywhere else (D.I. 138 at 32-33). That is because IP matters are not discussed at 3GPP meetings, and the procedure for declaring essential IP is to submit forms to ETSI in Sophia-Antipolis, France (*id.* at 32-33 and 20 n.13). Moreover,

---

[8]       Andrew's argument (D.I. 160 at 25 fn. 12) that the term sheet is inadmissible under F.R.E. 408 is incorrect. TruePosition does not offer it to show liability or amount of damage, but for "another purpose" as permitted in the rule.

[9]       Andrew claims it relied on evidence of what it characterizes as the patent's "limited scope" (D.I. 160 at 24). But it has produced no evidence that it ever analyzed the 144 patent in terms of any 3GPP standards, and it admits in its interrogatory answers that it received no advice regarding the 144 patent (A194). Further, although Andrew claims it relied on TruePosition's failure to disclose the 144 patent to the standards body (D.I. 160 at 24), it could not identify a single person who had a copy of or had even read the ETSI IPR policy prior to the lawsuit (C24 (11:19-20), C29-C30 (35:3-40:2), C31-C32 (80:19-82:17), C40-C41 (99:2-104:7), C42 (104:18-107:4))  Nor could it identify a single person who had checked to see if any TruePosition IP had been declared as essential before the lawsuit was filed (C25-C26 (25:8-28:8) & C34 (120:10-121:17)).

Andrew lacks standing in any event, for it has not pointed to a single piece of evidence showing that it lost money or property as a result of anything TruePosition did or did not do in California (*see* D.I. 138 at 32).[11]

There is no basis for a claim under California's unfair competition law.  There is no connection to California.  TruePosition is entitled to summary judgment on that counterclaim.

### G.    Andrew Failed to Provide Any Evidence of Damages

Andrew still has come forward with no evidence of *damages*, pointing instead to its allegations of *injury* (D.I. 160 at 38-39).  Andrew's unsubstantiated allegations of harm are insufficient to defeat TruePosition's motion for summary judgment.  Andrew was required to point out **specific, quantified evidence** of damages if it wanted to withstand summary judgment.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such "mere allegations," but *must* set forth by affidavit or other evidence *specific facts*) (emphasis added and quotations omitted).  Andrew did not do so.

Andrew claims that it is not required to quantify any actual damages because the "fact of damages is distinct from the issue of actual damages" (D.I. 160 at 39).  But Andrew is wrong.  Under Delaware law, Andrew must prove actual damages in order to

---

[10]    Andrew's estoppel and implied license claims all rely on the same proof of a duty to disclose, intent to mislead, and reliance as does the fraud claim and fail for the same reasons.

[11]    Andrew's suggestion that California law should apply to its fraud claim is ludicrous. Neither company is incorporated in California.  Neither has a place of business in California.  The only acts alleged to have occurred in California are nondisclosures of something that would not have been disclosed at meetings in California in any event.

prevail on its fraud counterclaim. *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 260 (D. Del. 2006) (citing *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992)). Delaware courts are unwilling to award damages based on mere speculation; there must be **specific, quantified evidence** of damages. *Acierno v. Goldstein*, 2005 Del. Ch. LEXIS 176, *31-*32 (Del. Ch. Nov. 16, 2005) ("Because there is no evidence in the record that would allow the Court to determine the value of the trees, the Court has no reliable basis upon which to award damages"); *see also Henne v. Balick*, 146 A.2d 394, 396 (Del. 1950) (mere proof of injury insufficient by itself to permit damages award without specific evidence of damage amount). Here, despite more than ample time and opportunity to do so, Andrew has provided nothing more than bare allegations of harm and produced no evidence or quantified estimate of damages whatsoever. Andrew has placed no evidence whatever in the record regarding any actual damages it supposedly suffered. Accordingly, because Andrew has failed to make **any** evidentiary showing of specific, quantified damages, TruePosition is entitled to partial summary judgment that Andrew is entitled to no damages on any of its counterclaims.[12]

## III.    CONCLUSION

Andrew never meets TruePosition's arguments head-on, presumably because it can't. Its brief is an attempt to obscure what the real issues are, using attorney argument but not evidence. Such argument is insufficient to withstand summary judgment. As the Federal Circuit said in a case Andrew itself cited in one of its briefs in opposition to another TruePosition motion (D.I. 154 at 17), "[t]here must be sufficient substance, other

than attorney argument, to show that the issue requires trial." *Glaverbel Societe Anonyme v. Northlake Marketing & Supply, Inc.,* 45 F.3d 1550, 1562 (Fed. Cir. 1995).

Andrew has failed to demonstrate that its state law claims are not preempted by federal law, and Andrew has failed to set forth specific facts showing that there is a genuine issue for trial on any essential element of any of its standards-based counterclaims and affirmative defenses. A finding in TruePosition's favor on any one of the essential elements of Andrew's fraud claim dooms all of its standards-based claims and defenses. TruePosition is therefore entitled to summary judgment on all of them as a matter of law.

Respectfully submitted,

DATED: February 27, 2007     By:     _____*/s/ James D. Heisman*_____
                                      CONNOLLY BOVE LODGE & HUTZ LLP
                                      James D. Heisman, Esq. (#2746)
                                      1007 N. Orange Street
                                      P.O. Box 2207
                                      Wilmington, DE 19899
                                      Telephone: (302) 658-9141
                                      Facsimile: (212) 558-3588

                                      WOODCOCK WASHBURN LLP
                                      Paul B. Milcetic, Esq. (*pro hac vice*)
                                      Dale M. Heist, Esq. (*pro hac vice*)
                                      David L. Marcus, Esq. (*pro hac vice*)
                                      Kathleen A. Milsark, Esq. (*pro hac vice*)
                                      Daniel J. Goettle, Esq. (*pro hac vice*)
                                      Cira Center, 12th Floor
                                      2929 Arch Street
                                      Philadelphia, PA 19103
                                      Telephone: (215) 568-3100

---

[12]     The cases cited by Andrew are readily distinguishable and provide no basis for denying summary judgment with respect to damages. None of them address the necessity to advance actual evidence of fraud damages with specificity in order to resist summary judgment.

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 27th day of February, 2007, I caused a true and correct copy of the foregoing **TRUEPOSITION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT ON ANDREW'S COUNTERCLAIMS II-VI AND AFFIRMATIVE DEFENSES III-V** to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

*/s/ James D. Heisman*
James D. Heisman, Esq. (#2746)

21