IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUEPOSITION, INC.,<br><br>    Plaintiff and<br>    Counterclaim-Defendant,<br><br>v.<br><br>ANDREW CORPORATION,<br><br>    Defendant and Counterclaim<br>    Plaintiff. | Civil Action No. 05-00747-SLR |

**ANDREW CORPORATION'S REPLY BRIEF IN SUPPORT
OF ITS SUMMARY JUDGMENT MOTION
OF NONINFRINGEMENT OF U.S. PATENT NO. 5,327,144**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 27, 2007

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................................1

II.  ARGUMENT..........................................................................................................................2

     A.   TRUEPOSITION ADMITS AN SDCCH CARRIES INFORMATION IN
          TWO DIRECTIONS; THUS, AN SDCCH CANNOT LITERALLY BE A
          "REVERSE CONTROL CHANNEL" AS A MATTER OF LAW..........................................2

          1.   Testimony of TruePosition's Own Experts Confirms a
               Channel Such As an SDCCH that Transmits in the Forward
               Direction Cannot Be a "Reverse Control Channel."...................................4

          2.   TruePosition Cannot Use the Word "Comprising" to
               Broaden the "Reverse Control Channel" Limitation. ..................................4

     B.   TRUEPOSITION IS ESTOPPED AS A MATTER OF LAW FROM ARGUING
          AN SDCCH IS EQUIVALENT TO A "REVERSE CONTROL CHANNEL."........................5

                a.   *TruePosition Has Not Rebutted The Presumption
                     That the Amendment Was Made For Reasons of
                     Patentability.*................................................................................6

     C.   SUMMARY JUDGMENT SHOULD ALSO BE GRANTED FOR TWO
          OTHER INDEPENDENT REASONS....................................................................9

          1.   An SDCCH Is Not a "Control Channel.".....................................................9

          2.   An SDCCH Is a "Dedicated" Channel, While a Reverse
               Control Channel Is Allocated to Many Users. ..........................................11

     D.   TRUEPOSITION'S COMPLAINTS ABOUT ANDREW'S CLAIM
          CONSTRUCTION ARE BASELESS....................................................................12

III. CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Dippin' Dots v. Mosey*,
    —— F.3d ——, 2007 WL 430195 (Fed. Cir. Feb. 9, 2007) .................................. 5

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002) ............................................................................. 6, 7, 8

*Medtronic Navigation, Inc. v. BrainLab Medizinische Computersysteme GmbH*,
    No. 06-1289, 2007 WL 387585 (Fed. Cir. Feb. 05, 2007) ...................... 8

*Norian Corp. v. Stryker Corp.*,
    432 F.3d 1356 (Fed. Cir. 2005) ............................................................ 7

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
    998 F.2d 1224 (3d Cir. 1993) ............................................................... 10

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
    170 F.3d 1373 (Fed. Cir. 1999) ............................................................ 7

*Pioneer Magnetics, Inc. v. Micro Linear Corp.*,
    330 F.3d 1352 (Fed. Cir. 2003) ............................................................ 6

*TechSearch, L.L.C. v. Intel Corp.*,
    286 F.3d 1360 (Fed. Cir. 2002) ............................................................ 2

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ............................................................................... 7

I.  **INTRODUCTION**

Andrew's non-infringement summary judgment motion is based on a single claim limitation — the "reverse control channel" — that is required by each claim of the '144 patent. Andrew demonstrated in its opening brief that the accused SDCCH channel is not literally a "reverse control channel," and that TruePosition is estopped as a matter of law from arguing an SDCCH is equivalent to the claimed "reverse control channel."

TruePosition's brief in response does not — and cannot — change the undisputed facts. Those undisputed facts confirm that summary judgment of non-infringement should be granted in Andrew's favor. It is undisputed that TruePosition originally sought broad claims directed to "control channels," which would have encompassed two-way control channels, forward control channels, reverse control channels or any other type of control channel. It also is undisputed that TruePosition had to narrow each of its claims from the broad "control channels" to the narrow "reverse control channels" in order to get around the prior art. There is a thus a presumption that TruePosition disclaimed from the scope of its claims all control channels except "reverse control channels." TruePosition has not rebutted that presumption.

Thus, the question now is whether TruePosition can show an SDCCH is a "reverse control channel." TruePosition cannot meet its burden of proof as a matter of law, because an SDCCH is not literally a "reverse control channel." Indeed, according to TruePosition, an SDCCH can function as a forward control channel, which TruePosition agrees is distinct from a "reverse control channel."

Nor can TruePosition resort to the doctrine of equivalents to salvage its case. The prosecution history of the '144 patent does not give TruePosition room to argue an SDCCH is the equivalent of the "reverse control channel" limitation (even if an SDCCH

were deemed a control channel), because TruePosition amended its claims to specify they require a "reverse control channel," not a forward control channel, and not any other type of control channel. Therefore, regardless of any argument made in TruePosition's opposition brief, Andrew's Motion for Summary Judgment of Noninfringement should be granted.

## II.    ARGUMENT

In order to avoid summary judgment of non-infringement, TruePosition was required to do more than make conclusory allegations; it was required to come forward with actual evidence that shows a genuine issue of material fact exists. *TechSearch, L.L.C. v. Intel Corp.*, 286 F.3d 1360, 1372 (Fed. Cir. 2002) ("[I]nfringement must be shown literally or equivalently for each limitation; general assertions of facts, general denials, and conclusory statements are insufficient to shoulder the non-movant's burden."). TruePosition has not satisfied its burden. As explained in Andrew's opening brief and below, there is no genuine issue of material fact regarding the absence of the "reverse control channel" limitation in Andrew's accused products. The SDCCH used by Andrew is not a "reverse control channel," either literally or equivalently.

### A.    TRUEPOSITION ADMITS AN SDCCH CARRIES INFORMATION IN TWO DIRECTIONS; THUS, AN SDCCH CANNOT LITERALLY BE A "REVERSE CONTROL CHANNEL" AS A MATTER OF LAW.

TruePosition admits an SDCCH carries information in both the "forward" and "reverse" directions:

> ... it is true that Standalone Dedicated Control Channels can carry information in both the forward and reverse directions ...

D.I. 162, TruePosition's Brief in Opposition to Andrew's Motion for Summary Judgment of Noninfringement at 10 (hereinafter "TPI MSJ Opp.").

2

In contrast to a forward control channel, a "<u>reverse</u> control channel" carries information from a mobile station to a base station. This too is an undisputed fact. *See, e.g., id.* at 8 ("Channels that transmit information from a cellular telephone to a cell site are called 'reverse' channels."); *see also id.* at 27 ("that a 'reverse control channel' carries information from a cellular telephone to a cell site" is an "unremarkable proposition"); Gottesman Dep. 125:24-25, Jan. 11, 2007 ("By "reverse," it means from the mobile, to the base station; that what it means.").

TruePosition expressly differentiates between forward control channels and "reverse control channels" in its opposition brief:

> Channels that transmit information from a cell site to a cellular telephone are called "forward" channels. Channels that transmit information from a cellular telephone to a cell site are called "reverse" channels.

TPI MSJ Opp. at 7-8.

Likewise, the '144 patent also distinguishes forward control channels from "reverse control channels":

> The control channel from a cell site to a mobile unit is called the "forward" control channel and the control channel from the cellular telephone to the cell site is called the "reverse" control channel. Signals are continuously broadcast over a forward control channel by each cell site. In contrast, signals are discontinuously (periodically) broadcast by the cellular telephones over a reverse control channel.

'144 Pat., Col.2, ll.15-23 (A17).

Given the distinctions that TruePosition — and the '144 patent itself — draw between forward channels and "reverse control channels," a channel such as an SDCCH that carries information in the forward direction cannot <u>literally</u> be a "<u>reverse</u> control channel."

3

1.  **Testimony of TruePosition's Own Experts Confirms a Channel Such As an SDCCH that Transmits in the Forward Direction Cannot Be a "Reverse Control Channel."**

When asked at his deposition whether a "reverse control channel" can transmit information from a base station to a mobile station, TruePosition's infringement expert, Dr. Oded Gottesman, admitted that "reverse" in "reverse control channel" means it transmits from the mobile to the base station:

> Q:   Can a reverse control channel transmit information from a base station to a mobile station?
>
> A:   … By "reverse," it means from the mobile, to the base station; that what it means.

Gottesman Dep. 125:16-25, Jan. 11, 2007 (C31).

TruePosition's invalidity expert, Dr. Brian Agee, agreed.  Dr. Agee testified that "[r]everse control channel equals a control channel from a cellular telephone to a cell site under TPI's claim constructions." Agee Dep. 71:23-25, Jan. 24, 2007 (A37).  Dr. Agee also differentiated between a "reverse control channel" and a control channel generally:

> Q:   What does it mean?  What does "reverse control channel" mean in the context of an AMP system?
>
> A:   It's a channel that is allocated by the network to carry control information that imparts information — *I'm sorry. I was about to say what a control channel is in — in general.* It's [a reverse control channel is] a reverse link channel from the cellular phone, to the base station, that imparts information that the base station uses — that the base station uses to learn what kind of state the cell phone is in, what kind of message is being sent, whether it's responding to some sort of request from — from the base station, and so on.

Agee Dep. 72:12-24 (A38) (emphasis added).

2.  **TruePosition Cannot Use the Word "Comprising" to Broaden the "Reverse Control Channel" Limitation.**

4

As a last-ditch effort, TruePosition argues the word "comprising" in its claims gives it freedom to stretch the "reverse control channel" limitation beyond its bounds. *See* TPI MSJ Opp. at 20. Not only is TruePosition precluded from making this argument (*see* Section B below), the argument is baseless in any event. The word "comprising" does not modify "reverse control channel" in the claims. The word "comprising" refers to the overall steps in the asserted method claims and overall components in the system claims. *See, e.g.,* Claim 1.

Moreover, "'[c]omprising' is not a weasel word with which to abrogate claim limitations." *Dippin' Dots v. Mosey,* —— F.3d ——, 2007 WL 430195, at *4 (Fed. Cir. Feb. 9, 2007) (citations omitted). Indeed, "[t]he presumption raised by the term 'comprising' does not reach into each of the [] steps to render every word and phrase therein open-ended — especially where, as here, the patentee has narrowly defined the claim term it now seeks to have broadened." *Id.* Thus, TruePosition's "comprising" argument should be given no weight and does not create an issue of fact.

***

For all these reasons alone, an SDCCH cannot <u>literally</u> be a "reverse control channel."

### B. TRUEPOSITION IS ESTOPPED AS A MATTER OF LAW FROM ARGUING AN SDCCH IS EQUIVALENT TO A "REVERSE CONTROL CHANNEL."

As explained in Andrew's opening brief, TruePosition initially tried to claim broad "control channels." May 7, 1993 Patent Application at 35, 43-45 (A271-274). The "control channels" TruePosition originally tried to claim would have encompassed forward, reverse, and/or bidirectional channels, but the PTO rejected each of those claims in light of the prior art of record, e.g.:

5

> Song teaches that it is *well-known in cellular telephone networks*, which are combined with locating and tracking a cellular telephone, *to initiate the location system using the signals transmitted on the control channels*. Thus, it would have been obvious to one having skill in the art at the time the invention was made to modify Sagey by using a control channel signal to make a determination of the location rather than overlaying the voice channel with a spread spectrum signal....

9/24/93 Office Action at 2 (A146) (emphasis added).

As a result, in order to get its claims allowed, TruePosition limited the claims to a "reverse control channel" rather than just "control channels." 10/04/93 Office Action Response at 1-3 (A149-152). *See also* Andrew MSJ Br. at 5-6. Subsequently, the Examiner conducted an interview and noted that the discussion concerned "forward as opposed to reverse channel control [sic]." 10/4/93 Examiner Interview Summary Record (C33). The "reverse control channel" claims were allowed on October 29, 1993. 10/29/93 Notice of Allowance (A153). Under *Festo*, TruePosition's claim amendments mean the scope of the "reverse control channel" limitation cannot as a matter of law encompass a channel that carries information in any direction other than solely "reverse." *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).

   a.   ***TruePosition Has Not Rebutted The Presumption That the Amendment Was Made For Reasons of Patentability.***

Because the "control channel" to "reverse control channel" amendments were made to overcome prior art, the burden is now on TruePosition to show that the amendment was not made for reasons of patentability. *See Pioneer Magnetics, Inc. v. Micro Linear Corp.*, 330 F.3d 1352, 1356 (Fed. Cir. 2003) (citing *Warner-Jenkinson Co.*

*v. Hilton Davis Chem. Co.*, 520 U.S. 17, 33 (1997)). TruePosition barely addresses the issue, and has not met its burden.[1]

TruePosition conclusorily argues that the claim amendments were tangential, and go to "transmissions" as opposed to the channel itself. TPI MSJ Opp. at 35.[2] TruePosition's argument ignores the actual claim language. The claims recite and require "reverse control <u>channels</u>," not just reverse transmissions on a control channel. TruePosition's argument also ignores the basis of the PTO's rejection of its claims, and the patent examiner's interview notes. *See* 9/24/93 Office Action at 2 (A146) (emphasis added); 10/4/93 Examiner Interview Summary Record (C33). Indeed, it is undisputed that the PTO's rejections were directed to the <u>type</u> of channels claimed, not the transmissions carried in those channels. Given the clear statements made in the prosecution history, a reasonable competitor would conclude TruePosition's disavowals and distinctions go to channels themselves. *See Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1377 (Fed. Cir. 1999) ("To determine what subject matter has been relinquished, an objective test is applied, inquiring whether a competitor would reasonably believe that the applicant had surrendered the relevant subject matter;" finding "'clear and unmistakable surrender'") (quotation omitted). And TruePosition cannot be heard to complain it narrowed its claims more than it had to. *See Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1361-62 (Fed. Cir. 2005) ("it frequently happens that patentees

---

[1] Notably, TruePosition does not even cite *Festo* in its brief.

[2] TruePosition does not attempt to show that an SDCCH was "unforeseeable at the time of the application." *See Festo Corp.*, 535 U.S. at 740 (amendment might not be surrendering where alleged equivalent was "unforeseeable"). Nor could TruePosition make such a claim. *See, e.g.,* TruePosition's Response to Andrew's Requests For Admission at Responses 7 and 8 (A216) (admitting that SDCCHs were known at the time the '144 patent application was filed).

surrender more through amendment than may have been absolutely necessary to avoid the prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.").

Because TruePosition failed to rebut the presumption, under *Festo*, TruePosition surrendered *all* "control channels" except a "reverse control channel," and TruePosition is estopped from asserting infringement against any channel that is not literally a "reverse control channel." *See Festo Corp.*, 535 U.S. at 737 ("A patentee who narrows a claim as a condition for obtaining a patent disavows his claim to the broader subject matter, whether the amendment was made to avoid the prior art or to comply with § 112."); *see also Medtronic Navigation, Inc. v. BrainLab Medizinische Computersysteme GmbH*, No. 06-1289, 2007 WL 387585, at *4 (Fed. Cir. Feb. 05, 2007) ("Based on the prosecution history, we agree with the district court's reasoning and conclude that Bucholz clearly narrowed the scope of his invention in exchange for the allowance of his claims, thus surrendering subject matter that encompasses what Medtronic now claims to be equivalent. We therefore agree with the district court that Medtronic was precluded from arguing that the passive optical tracking system used in BrainLab's products is an equivalent of the claimed reference means.").[3]

---

[3] TruePosition also argues that its infringement expert should get another bite at the equivalents apple, due to purported changes in Andrew's proffered claim constructions. *See* TPI MSJ Opp. at 34-35 ("Dr. Gottesman should be given the opportunity to further consider infringement under the doctrine of equivalents.") There is absolutely no basis for this argument — as shown below in Section D, Andrew's constructions have remained constant. Moreover, equivalence is not available to TruePosition here as a matter of law. TruePosition's attempt to save its case through a second bite at the apple has no merit.

### C. SUMMARY JUDGMENT SHOULD ALSO BE GRANTED FOR TWO OTHER INDEPENDENT REASONS.

The legal principles and undisputed facts set out above demonstrate that TruePosition cannot prove an SDCCH is a "reverse control channel." However, there are additional reasons why an SDCCH does not satisfy the "reverse control channel" limitation as a matter of law.

#### 1. An SDCCH Is Not a "Control Channel."

First, TruePosition has not shown that an SDCCH is even literally a "control channel." TruePosition admits an SDCCH can carry text messages. *See, e.g.*, Anderson Dep. 111:22-113:8, Sep. 21, 2006 (A83-85); Anderson Dep. 55:8-18, 56:9-22, Oct. 24, 2006 (A212, 213); Gottesman Dep. 91:10-11 (A52). TruePosition's witnesses have conceded text messages are traffic information, and that control channels do not carry traffic information. Anderson Dep. 111:22-25, Sep. 21, 2006 (A83) ("Q: Is SMS considered traffic information? A: The actual content of the message is — would be considered traffic."); Anderson Dep. 42:5-7, Sep. 21, 2006 (A80).

The deposition testimony of TruePosition's expert witness is in accord. For example, Dr. Agee expressly testified that a reverse control channel does not transmit user data:

> Defining "user" as a person or entity that's using the network, then, no, it [a reverse control channel] does not transmit data that's used — that can be used by one — that's intended to be used by the users of the system.

Agee Dep. 79:19-23 (A45).

TruePosition's prior expert witness, Stuart Schwartz, agreed and stated a channel that carries both user information and control information (which an SDCCH does) is a voice channel, not a control channel:

9

> The control channel allows messages to be communicated between the MS [mobile station] and BS [base station] for the proper operation of the wireless communication system, i.e., to exchange system control information. . . . *The voice channel, on the other hand, contains both user information (voice and other user data) and certain system control information.*

TruePosition's July 28, 2003 Report of Stuart Schwartz at 20-21, ¶ 57 (A113-114) (emphasis added). TruePosition tries to avoid Professor Schwartz's damaging testimony by asserting it is hearsay. *See* TPI MSJ Opp. at 23, n. 4. This argument rings hollow in light of TruePosition's offering of its current expert's report for the truth of the matter asserted therein. *See* D.I. 168, TruePosition's Appendix in Support of Its Opposition to Andrew's Motion for Summary Judgment of Non-Infringement at B562-B674 (Expert Report of Oded Gottesman, Ph.D). Moreover, "in this circuit [hearsay statements] can be considered on a motion for summary judgment [if they are] capable of being admissible at trial." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 n.9 (3d Cir. 1993). Dr. Schwartz's statement is capable of being admissible at trial; he is listed on Andrew's witness list as a potential fact witness.

Finally, TruePosition argues that because an SDCCH sometimes transmits control information, it is necessarily a "control channel." That argument, however, is belied by the sworn testimony of TruePosition's own witnesses. For example, as explained in Andrew's opening brief, TruePosition's Chief Technology Officer testified that a control channel is a channel that communicates *only* signaling information:

> Q:   Do control channels communicate anything other than signaling information?
>
> A:   No.

Anderson Dep. 42:5-7, Sep. 21, 2006 (A80); *see also* Andrew MSJ at 7.

10

TruePosition attempts to explain away this testimony by claiming that Mr. Anderson was testifying about the channels TruePosition's product uses. *See* TPI MSJ Opp. at 29. Even assuming for the sake of argument that is true, it supports Andrew's position because TruePosition claims that it practices the patented invention. *See, e.g.*, TruePosition 30(b)(6) Dep. 10:14-12:13, Nov. 15, 2006 (C25-27); Expert Report of Carla S. Mulhern at 13, ¶ 24 (C35). Therefore, even if Mr. Anderson's testimony did relate to TruePosition's product, he would still be testifying about the same "reverse control channels" claimed in the patent.

### 2. An SDCCH Is a "Dedicated" Channel, While a Reverse Control Channel Is Allocated to Many Users.

As explained in Andrew's opening brief, a "reverse control channel" has a many-to-one property in that many mobile phones are allocated to and use the same reverse control channel to communicate with the base station. Goodman Dec. ¶ 11(h), Feb. 2, 2007 (A279). TruePosition's expert, Dr. Brian Agee, agrees:

> Q:   At any given time is a reverse control channel allocated to more than one cell phone user?
>
> MR. MARCUS: Objection. Vague as to context.
>
> A:   And the answer is, I believe so.

Agee Dep. 73:25-74:4 (A39-40). It is also undisputed that an SDCCH is a dedicated channel — only one mobile station uses the SDCCH to communicate with the base station. Goodman Dec. ¶ 11(m) (A279).

TruePosition does not address these undisputed facts in its opposition in any way, but rather chooses to quibble about alleged differences between the construction Andrew's expert gave at his deposition and Andrew's construction as set out in the Joint Claim Construction Statement ("JCCS"). *See* TPI MSJ Opp. at 30. First, as explained

below, TruePosition's arguments concerning Andrew's claim construction are without merit. Second, because TruePosition does not dispute the facts concerning the differences between "dedicated" and "shared" channels, it tacitly admits that the distinction weighs in Andrew's favor.

\*\*\*

Therefore, there are additional, independent reasons showing that summary judgment in Andrew's favor is appropriate.

### D. TRUEPOSITION'S COMPLAINTS ABOUT ANDREW'S CLAIM CONSTRUCTION ARE BASELESS.

Andrew's claim constructions have not been a "moving target," as TruePosition contends. TPI MSJ Opp. at 3. Andrew properly refined its wording, and removed constructions from contention after carefully considering TruePosition's position, which reduced the burden on the Court.[4]

There has been no "shift in position" on Andrew's part. Because "reverse control channel" is a term of art, Andrew simply asks for it to be construed as a unitary phrase, rather than two separate phrases (i.e. "reverse" and "control channel"). When the term is construed as two separate phrases, it is possible to impermissibly "mix and match" the phrases, which leads to improper broadening of the claim.

Furthermore, contrary to TruePosition's assertions, Andrew is not seeking summary judgment based upon a construction of claims that differs from its construction in the JCCS.[5] See TPI MSJ Opp. at 5-6. TruePosition quibbles that ANSI 553 is not

---

[4] Indeed, Andrew informed TruePosition on January 15, 2007 that it would be submitting revised constructions. Goodman Dep. 65:17-66:14, Jan. 15, 2007 (C39-40).

[5] Andrew's proposed construction for a "reverse control channel" is: "a channel that carries only signaling information from a mobile terminal to a base station in the format specified in ANSI 553. See D.I. 130, JCCS at 2.

discussed in Andrew's motion, but the details of ANSI 553 are not necessary to decide the motion; indeed, the Court can analyze the prosecution history and resulting estoppel without consulting ANSI 553. TruePosition's argument is a red herring, and is analogous to an argument that summary judgment cannot be granted in Andrew's favor because it did not move on every limitation of the asserted claims.

In sum, TruePosition's long-winded diatribe about alleged shifts in position is baseless and irrelevant to deciding Andrew's motion.

### III.    CONCLUSION

Therefore, because: (a) an SDCCH carries information in two directions and thus cannot literally be a "reverse control channel" as a matter of law; (b) TruePosition is estopped as a matter of law from arguing an SDCCH is equivalent a "reverse control channel"; and (c) there are other independent reasons supporting summary judgment in Andrew's favor, Andrew's Motion for Summary Judgment of Noninfringement should be granted.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 27, 2007

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 27, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on February 27, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY ELECTRONIC MAIL ON FEBRUARY 27, 2007**
> **AND FEDERAL EXPRESS ON FEBRUARY 28, 2007**
>
> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> David L. Marcus, Esq. [dmarcus@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> One Liberty Place, 46th Floor
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> */s/ Andrew A. Lundgren*
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> alundgren@ycst.com
> *Attorneys for Defendant Andrew Corporation*