IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRUEPOSITION, INC.,

        Plaintiff and
        Counterclaim-Defendant,

   v.

ANDREW CORPORATION,

        Defendant and
        Counterclaim Plaintiff.

Civil Action No. 05-00747-SLR

REDACTED – PUBLIC VERSION

---

**ANDREW CORPORATION'S BRIEF IN OPPOSITION
TO TRUEPOSITION'S MOTION FOR SUMMARY JUDGMENT ON
ANDREW'S COUNTERCLAIMS II-VI AND AFFIRMATIVE DEFENSES III-V**

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 20, 2007

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   NATURE AND STAGE OF THE PROCEEDING ........................................... 2

III.  SUMMARY OF ARGUMENT ........................................................................... 2

IV.   COUNTERSTATEMENT OF FACTS ............................................................... 3

      A.   THE '144 PATENT. .................................................................................... 3

      B.   TRUEPOSITION SUCCESSFULLY LOBBIED THE STANDARDS BODIES TO
           STANDARDIZE THE TECHNOLOGY IT NOW ACCUSES OF INFRINGEMENT. ...................... 4

           1.   TruePosition's Initial Efforts. ................................................................ 4

           2.   TruePosition Wanted Andrew's Involvement and Stepped Up
                Its Efforts to Standardize UTDOA. ...................................................... 6

      C.   TRUEPOSITION USED THE PARTIES' PRIOR SETTLEMENT AGREEMENT
           AS A SET-UP. ............................................................................................... 8

      D.   UNDER TRUEPOSITION'S THEORY OF THIS CASE, THE '144 PATENT IS
           ESSENTIAL IPR. ....................................................................................... 10

           1.   TruePosition's Pre-Litigation Stance Was That There Is No
                Way To Perform Idle-Mode UTDOA Without Infringing the
                '144 Patent. ........................................................................................ 11

           2.   TruePosition's Litigation Position Confirms the '144 Patent Is
                Essential If Read To Cover Andrew's Accused Products. .......................... 11

           3.   TruePosition's Other "Non-Essentiality" Excuse Fails Too. .................... 13

      E.   IF ANDREW HAD KNOWN THE TRUTH, IT NEVER WOULD HAVE
           ADVOCATED UTDOA STANDARDIZATION WITH TRUEPOSITION. ............................ 14

V.    ARGUMENT ...................................................................................................... 15

      A.   ANDREW'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES ARE NOT
           PREEMPTED. ............................................................................................. 15

      B.   TRUEPOSITION COMMITTED FRAUD. ..................................................... 17

           1.   The Legal Standards for Fraud. .......................................................... 17

           2.   There Are Myriad Issues of Fact Regarding Whether
                TruePosition Had A Duty to Disclose the '144 Patent. .......................... 18

                a.   TruePosition Has Made Sweeping Representations As
                     To The Scope Of The '144 Patent Claims. ...................................... 18

i

|   |   | b. | Given TruePosition's Interpretation of the '144 Patent, the ETSI IPR Policy Required TruePosition to Declare the Patent. .................................................................... 19 |
|   |   | c. | TruePosition's Litigation Position Eviscerates Its Non-Essentiality Arguments. ......................................................... 20 |
|   |   | d. | TruePosition Should Have Disclosed The Truth To Andrew. ........................................................................................ 21 |
|   | 3. | | TruePosition Had an Intent to Mislead. ....................................... 22 |
|   | 4. | | Andrew Justifiably Relied. ............................................................ 24 |
| C. | EQUITABLE ESTOPPEL. .......................................................................................... 26 |
| D. | TRUEPOSITION ALSO ENGAGED IN UNFAIR COMPETITION................................. 28 |
|   | 1. | | TruePosition's Arguments Regarding Application of California Law Are Unfounded. ..................................................... 28 |
|   | 2. | | TruePosition's Motion for Summary Judgment on Andrew's Unfair Competition Claim Fails On the Merits. ......................... 29 |
|   |   | a. | The Elements of Unfair Competition. ........................................... 29 |
|   |   | b. | TruePosition's Conduct Would Deceive the Relevant Public, Including Andrew. ........................................................... 30 |
|   |   | c. | TruePosition's Conduct Also Rises to the Level of Offending the Spirit of the Antitrust Laws. ................................. 33 |
| E. | IMPLIED LICENSE. ................................................................................................... 35 |
| F. | PROMISSORY ESTOPPEL. ........................................................................................ 36 |
| G. | DAMAGES. ............................................................................................................... 38 |
| VI. | CONCLUSION.......................................................................................................... 40 |

## TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,*
    960 F.2d 1020 (Fed. Cir. 1992) .......................................................... 27

*Abito v. United Airline,*
    2000 WL 550043 (N.D. Cal. May 1, 2000)...................................... 18

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
    973 P.2d 527 (Cal. 1999) ..............................................................30, 33

*Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg,*
    2004 WL 42611 (Del. Super. Ct. Jan. 8, 2004) .................................... 36

*Fini v. Remington Arms Co.,*
    1998 WL 299358 (D. Del. May 27, 1998)......................................27, 36

*Giammanco v. Giammanco,*
    625 N.E.2d 990 (Ill. App. Ct. 1993)...................................................... 39

*Globetrotter Software, Inc. v. Elan Computer Group, Inc.,*
    362 F.3d 1367 (Fed. Cir. 2004) ............................................................ 17

*Great Lakes Chem. Corp. v. Pharmacia Corp.,*
    788 A.2d 544 (Del. Ch. 2001) .............................................................. 26

*Gregory v. Albertson's, Inc.,*
    128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002) ........................................ 28

*Hartford Fire Ins. Co. v. Pettinaro Constr. Co.,*
    820 F. Supp. 154 (D. Del. 1993)............................................................ 22

*Haynes Int'l Inc. v. Jessop Steel Co.,*
    8 F.3d 1573 (Fed. Cir. 1993) ................................................................ 16

*Herman & MacLean v. Huddleston,*
    459 U.S. 375 (1983) .............................................................................. 22

*Honeywell Int'l Inc. v. ABB Inc.,*
    71 Fed. App'x 50 (Fed. Cir. 2003).......................................................... 17

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,*
    398 F. Supp. 2d 305 (D. Del. 2005) ...................................................... 27

*Kurinij v. Hanna & Morton,*
    64 Cal. Rptr. 2d 324 (Cal. Ct. App. 1997)............................................ 39

*Lazar v. Superior Ct.,*
    909 P.2d 981 (Cal. 1996) ............................................................................... 17

*Lord v. Souder,*
    748 A.2d 393 (Del. 2000) ..........................................................................37, 38

*Mann v. Oppenheimer & Co.,*
    517 A.2d 1056 (Del. 1986) ............................................................................ 22

*Micron Tech., Inc. v. Rambus Inc.,*
    189 F. Supp. 2d 201 (D. Del. 2002) .............................................................. 17

*Nappe v. Anschelewitz, Barr, Ansell & Bonello,*
    477 A.2d 1224 (N.J. 1984) ............................................................................ 39

*Optical Techs., Inc. v. Excelladerm Corp.,*
    2002 WL 1091424 (Cal. Ct. App. 2002) ....................................................... 39

*Perdue v. Crocker Nat'l Bank,*
    702 P.2d 503 (Cal. 1985) .............................................................................. 31

*Rambus Inc. v. Infineon Techs. AG,*
    318 F.3d 1081 (Fed. Cir. 2003) ................................................................19, 21

*Rambus, Inc. v. Infineon Technologies AG,*
    326 F. Supp. 2d 721 (E.D. Va. 2004) ............................................ 27, 29, 30, 32

*Ramone v. Lang,*
    2006 WL 905347 (Del. Ch. Apr. 3, 2006) .................................................... 38

*Sands v. Forrest,*
    434 A.2d 122 (Pa. Super. Ct. 1981) .............................................................. 39

*Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.,*
    459 F.3d 1311 (Fed. Cir. 2006) ..................................................................... 16

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.,*
    85 Cal. Rptr. 2d 301 (Cal. Ct. App. 1999) ...............................................30, 31

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993) ...................................................................................... 34

*Symbol Techs., Inc. v. Proxim Inc.,*
    2004 WL 1770290 (D. Del. July 28, 2004) .................................................. 27

*Tenneco Automotive Operating Co. v. Visteon Corp.,*
    375 F. Supp. 2d 375 (D. Del. 2005) .............................................................. 35

*Travelers Indem. Co. v. Lake,*
    594 A.2d 38 (Del. 1991) ......................................................................17, 28, 29

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,*
    103 F.3d 1571 (Fed. Cir. 1997) ......................................................... 35

*Wit Capital Group, Inc. v. Benning,*
    897 A.2d 172 (Del. 2006) .................................................................. 39

*Zenith Elecs. Corp. v. Exzec, Inc.,*
    182 F.3d 1340 (Fed. Cir. 1999) ....................................................... 17

**Statutes**

15 U.S.C. §2 ............................................................................................. 34

35 U.S.C. 285 ........................................................................................... 15

Bus. & Prof. Code, § 17200 .................................................................... 29

**Rules**

Fed. R. Evid. 408 ..................................................................................... 24

## I.    INTRODUCTION

TruePosition has moved for summary judgment on the five most factually intensive claims in this case — Andrew's claims of fraud, equitable estoppel, unfair competition, implied license, and promissory estoppel.  To resolve the matters presented by TruePosition's motion, the factfinder must decide issues such as "intent," "duty to disclose," "reasonableness," "essentiality," and "reliance," all in the context of an analysis that TruePosition describes in its opening brief as "technical in nature."  D.I. 138 at 18. The fact-based inquiry required by TruePosition's instant motion is further exposed by its suggestion that the Court consider the self-serving "belief" of its executives as a basis to grant summary judgment. *Id.* at 20.

TruePosition tries to sidestep the evidence of record that shows it cannot read the '144 patent on Andrew's accused products without also being liable for fraud and a host of other standards-based violations.  For example:

- TruePosition submitted technical proposals to the relevant standards bodies advocating for the adoption of UTDOA as a standardized technology. TruePosition admits it had an obligation to disclose patents essential to practicing any technical proposal it submitted.

- The technical proposals TruePosition submitted included the methodology it now accuses of infringing the '144 patent.

- 

-

- Andrew, not knowing the truth, signed on as TruePosition's partner, and helped advocate the standardization of UTDOA.

Simply put, TruePosition has no basis to seek judgment in its favor on Andrew's standards claims. As explained below, the record in this case is more than sufficient to support Andrew's claims. At a minimum, there are issues of fact. TruePosition's motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDING

TruePosition filed its Complaint on October 25, 2005, accusing Andrew of infringing the '144 patent. D.I. 1. Andrew filed its Answer, Affirmative Defenses and Counterclaims on December 15, 2005. D.I. 13. Andrew has counterclaimed for noninfringement and invalidity, and unfair competition, fraud and estoppel. Amended complaints and thus, amended answers and counterclaims, were filed. Fact discovery closed November 17, 2006. D.I. 94. Expert discovery closed January 24, 2007. *Id*. The parties currently are briefing summary judgment and claim construction issues.

## III.    SUMMARY OF ARGUMENT

1.    TruePosition has no basis to move for summary judgment on Andrew's standards-based claims. Each of Andrew's claims is factually intensive, and the evidence of record supports Andrew's side for each claim. At a minimum, there are myriad fact issues, making summary judgment inappropriate.

2.    Andrew's standard-related counterclaims are not preempted.

3.    There is evidence of fraud — TruePosition had a duty to disclose the '144 patent;

TruePosition intended to mislead Andrew; Andrew justifiably relied; Andrew suffered damage.

2

4.      There is evidence of equitable estoppel — TruePosition had knowledge of the true facts and misled Andrew; Andrew relied; Andrew will be harmed if TruePosition's claim is permitted.

5.      There is evidence of unfair competition — TruePosition's conduct was likely to deceive the relevant public; it also offends the spirit of the law of attempted monopolization and harms competition.

6.      There is evidence of implied license under at least the "conduct or acquiescence" test.

7.      There is evidence of promissory estoppel due to evidence of a promise, TruePosition's intent, and Andrew's reasonable reliance and injury.

8.      Andrew has shown damage.

## IV.    COUNTERSTATEMENT OF FACTS

To understand the bases of Andrew's standards counterclaims, it is first necessary to explain the background of how the parties arrived at where they are today.  Thus, Andrew sets forth below a summary of the '144 patent, an explanation of why TruePosition's infringement allegations (if accepted as true) would render the '144 patent essential to standardized GSM technology, and a summary of TruePosition's efforts to standardize the technology while simultaneously concealing its true intentions to enforce the '144 patent against the very technology it was advocating as a standard.

### A.    THE '144 PATENT.

The application leading to the '144 patent was filed May 7, 1993.  '144 Patent (A1)[1].  The '144 patent issued July 5, 1994.  *Id.*  In general, the '144 patent relates to locating

---

[1] Citations to "A__" are to D.I. 150, Andrew's Appendix of Exhibits to 1) Opening Brief in Support of Motion for Summary Judgment of Invalidity of Claim 22 of the '144 Patent for Indefiniteness, 2) Opening Brief in Support of Motion for Summary Judgment of

cellular telephones in a cellular network. The location technology disclosed in the patent is called TDOA, or time difference of arrival.

The named inventors deposed in this case confirmed their understanding that they

Knight Dep. 90:13, Oct. 6, 2006 (A72)

*See also* Webber Dep. 23:9-18, Oct. 4, 2006 (A244). The AMPS analog cellular network configuration is not used by or with Andrew's accused products. *See* McDaniel Dep. 93:3-6, Sep. 29, 2006 (STC is a GSM network) (B259). Despite the patent's teachings of locating mobile phones only in an AMPS analog cellular network configuration, TruePosition is construing the patent to cover mobile phone location in digital GSM networks, and all of its infringement contentions in this case are directed only to GSM digital cellular networks.

###### B. TRUEPOSITION SUCCESSFULLY LOBBIED THE STANDARDS BODIES TO STANDARDIZE THE TECHNOLOGY IT NOW ACCUSES OF INFRINGEMENT.

####### 1. TruePosition's Initial Efforts.

Two standards-associated bodies are relevant to this case — 3GPP and ETSI. They had to be convinced to make UTDOA a standard and include it in the GSM specifications.

UTDOA previously had been part of the GSM specifications, but it was removed. *See* TruePosition 30(b)(6) Dep. 61:10-18, Oct. 24, 2006 (B21). TruePosition wanted to get

---

Noninfringement of U.S. Patent No. 5,327,144, and 3) Andrew Corporation's Construction of Certain Claim Limitations of U.S. Patent No. 5,327,144.

*Id.* at 61:10-18; 22:25-24:6; 25:3-9 (B21; B3-5; B6).[2]

TruePosition assigned two full-time employees — Bob Gross and Rhys Robinson — to the task, and sent Messrs. Gross and Robinson to no less than 24 meetings across the globe to advocate for U-TDOA standardization. *See, e.g.,* Excerpt from Aug. 27-31, 2001 3GPP TSG GERAN Meeting #6 (B39-55); Excerpt from Nov. 26-30, 2001 3GPP TSG GERAN Meeting #7 (B75-89).

In January 2002, TruePosition formally became an ETSI member. *See* Associate Membership Agreement (B92). ETSI members such as TruePosition who submit technical proposals to 3GPP are bound by the ETSI intellectual property rights disclosure policy. TruePosition has been bound by ETSI's IPR Policy since it joined ETSI in January 2002.

TruePosition 30(b)(6) Dep. 42:7-20, Oct. 24, 2006 (B16).

In April 2002, TruePosition submitted a feasibility study "to demonstrate the feasibility of the U-TDOA in GSM." *Id.* at 102:22-25 (B23); U-TDOA in GSM and GPRS Feasibility Study (Source: TruePosition) (hereinafter "Feasibility Study") (B94-111). Among the information contained in the study was the basic location methodology TruePosition now claims the '144 patent covers. *Id.* at 6-4 (B110). The feasibility study expressly discussed location of mobile phones using the SDCCH channel — precisely what TruePosition now claims infringes the '144 patent. *Id.* at 3-2 (B103). TruePosition promised in the feasibility

---

**2**

study that it would license on "reasonable terms and conditions that are demonstrably free of any unfair discrimination" any patents that cover information contained in the feasibility study. *Id.* at § 3.3.5 at 3-5 (B106).

> 2.    **TruePosition Wanted Andrew's Involvement and Stepped Up Its Efforts to Standardize UTDOA.**

The discussion reached TruePosition's highest-ranking legal officer, its General Counsel and Senior Vice President, Fred Beckley:

Email from Kevin Donaghy to Frederic Beckley, TruePosition's General Counsel, with carbon copy to Joe Sheehan, TruePosition's President (Nov. 8, 2002) (B115).

Mr. Donaghy unequivocally explained that having Andrew (then Grayson) involved

*Id.* (emphasis added).

Mr. Beckley — TruePosition's Senior Vice President and General Counsel — was on board with the plan:

Email from Frederic Beckley, TruePosition's General Counsel, to Kevin Donaghy (Nov. 8, 2002) (emphasis added) (B116). TruePosition's president, Joe Sheehan was also involved in the internal strategy. *See id.*

Mr. Donaghy testified at his deposition that he sent his November 2002 email in

K. Donaghy Dep. 15:10-13, Nov. 17, 2006 (B263). Mr. Donaghy also testified he based his belief that there was a

*Id.* at p. 25:24-26:7 (B266-267). Mr. Donaghy testified that he could recall

*Id.* at 35:21-36:9 (B270-271).[3]

Rhys Robinson — TruePosition's standards representative — also independently echoed to TruePosition's president Joe Sheehan

---

[3] In an attempt to mitigate the blow dealt to TruePosition's case by the above email exchange, TruePosition's Rule 30(b)(6) witness, Mr. Robert Anderson, testified that he did not

TruePosition 30(b)(6) Dep. 125:23-25, Oct. 24, 2006 (B35). He could provide no explanation for why TruePosition

*Id.* at 27:7-9, 117:3-6 (B8; B29). Mr. Anderson did not "recall" ever

*Id.* at 118:10-120:18 (B30-32). All of this creates factual disputes, even among TruePosition's own witnesses.

Email from Rhys Robinson to Patrick Leihy and Joe Sheehan, TruePosition's President (Jan. 9, 2003) (bold and italics added; capitalization in original) (B117).  Mr. Robinson explained

*Id.*

TruePosition got its wish; Andrew joined ETSI and worked together with TruePosition to get UTDOA standardized.   TruePosition's former standards-body representative confirmed that Andrew (Grayson) and TruePosition worked together to get UTDOA standardized:

Gross Dep. 77:20-78:6, Oct. 12, 2006 (B122-123).

      **C.**    **TRUEPOSITION USED THE PARTIES' PRIOR SETTLEMENT AGREEMENT AS A SET-UP.**

As explained above, TruePosition's internal discussions focused on trying to commit Andrew contractually to advocate the standardization of UTDOA.  Although TruePosition

and Andrew never entered into such a contractual arrangement, TruePosition never told Andrew the reasons it desired Andrew's participation in standardization, and when the parties' Settlement Agreement was executed in early 2004, TruePosition and Andrew had already been working together for some time to get UTDOA standardized. *See, e.g.,* Andrew Third 30(b)(6) Dep. 15:18-20, Nov. 9, 2006 ("The activities that were jointly undertaken by Andrew and TruePosition related to standards preceded the settlement agreement.") (B134). Thus, the '144 patent was not included in the patents licensed to Andrew under the Settlement Agreement because Andrew did not believe it needed a license; Andrew never imagined TruePosition would assert the '144 patent against a GSM implementation given the '144 patent's teachings of only an analog AMPS system, the ETSI IPR disclosure obligations, and TruePosition's silence as to any potentially essential IPR it held.

But all along, TruePosition was interpreting the '144 patent to cover idle-mode locations in a GSM network using an SDCCH — exactly what it accuses of infringement in this case. Indeed, TruePosition's 30(b)(6) witness admitted that

*E.g.*, TruePosition 30(b)(6) Dep. 107:16-108:3, Oct. 24, 2006 (B25-26).

Yet, TruePosition did not inform Andrew that it would sue Andrew if Andrew provided a location system implementing the jointly-proposed U-TDOA standards. Indeed,

*Id*. at 44:9-17 (B18).

**D.    UNDER TRUEPOSITION'S THEORY OF THIS CASE, THE '144 PATENT IS ESSENTIAL IPR.**

The ETSI IPR Policy requires anyone who submits a technical proposal for a standard to declare its ownership of any intellectual property that might be "essential" if the proposal is adopted as a standard.  *See* ETSI IPR Policy Annex A at 15, ¶ 4.1 (B151). Intellectual property is considered essential if it is not possible on technical grounds to implement the standard without infringing that intellectual property.  The ETSI IPR Policy states whether an alternative is available must take into account "normal technical practice and the state of the art generally available at the time of the standardization":

> Essential as applied to IPR means that it is not possible on technical (but not commercial) grounds, taking into account *normal technical practice and the state of the art generally available at the time of the standardization* to make, sell, lease, otherwise dispose of, repair or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR.

*Id*. at 18, ¶ 6 (emphasis added) (B154).  Under TruePosition's theory of this case, it is not possible to perform UTDOA without infringing the '144 patent.  TruePosition's litigation position undermines its instant motion, because if TruePosition's allegations in this case are accepted as true, the '144 patent is essential IPR.

10

1.   **TruePosition's Pre-Litigation Stance Was That There Is No Way To Perform Idle-Mode UTDOA Without Infringing the '144 Patent.**

Shortly before suing Andrew,

Email from Paul Czarnecki, Vice President, International Sales, to Khalid Al Amayreh, TruePosition's agent, with a carbon copy to Mike McGoldrick and Rob Anderson, TruePosition's Chief Technology Officer (Oct. 5, 2005) (B159).

TruePosition also specifically asserted that the SDCCH channel must be used for <u>all</u> idle-mode locations. Andrew sometimes uses the SDCCH, and TruePosition's stance was

*Id.* (emphasis added).

2.   **TruePosition's Litigation Position Confirms the '144 Patent Is Essential If Read To Cover Andrew's Accused Products.**

TruePosition's litigation position is that it is entitled to lost profits because there is no acceptable non-infringing substitute to the UTDOA technology claimed in the '144 patent; TruePosition's entire damages claim hinges on that theory. *See* Mulhern Report at 38, ¶ 76

ı (B161); *see also*

Mulhern Dep. 33:25-34:3

11

Although TruePosition tries to excuse its fraud by arguing non-standardized location techniques are available through direct assignment of a traffic channel by the GSM cellular networks (TPI MSJ Br. at 19), its Chief Technology Officer Rob Anderson gutted that theory at his deposition, and he confirmed the RAN vendors[4] would need to implement that capability before it would work:

TruePosition 30(b)(6) Dep. 184:10-21, Nov. 14, 2006 (B166).

TruePosition's expert Ms. Mulhern reiterated that she is not aware

---

[4] "RAN vendors" are the radio access network vendors, such as Ericsson, Nokia, Siemens, and Nortel. *See* Sheehan Dep. 70:6-9, Oct. 19, 2006 (B170).

Mulhern Dep. 33:25-34:9 (B59-60).

She further conceded that existing cellular networks would have to be changed to accommodate TruePosition's non-essentiality theory:

Mulhern Dep. 34:10-25 (emphasis added) (B60); *see also id.* at 61:17-23 ("in fully analyzing

(B66). At a minimum, there is an issue of fact as to whether TruePosition's stance that there are no non-infringing substitutes to the '144 patent can be squared with its claim that the '144 patent is not essential if construed to cover Andrew's accused products.

      **3.**      **TruePosition's Other "Non-Essentiality" Excuse Fails Too.**

TruePosition also argues that the '144 patent is not essential because "the relevant 'standard' includes several positioning methods, none of which are [sic] mandatory in GSM

cellular systems." D.I. 138, TruePosition's Memorandum in Support of its Motion for Summary Judgment on Andrew's Counterclaims II-VI and Affirmative Defenses III-V at 18 (hereinafter "TPI MSJ Br."). TruePosition's argument is absurd because it would mean a location-technology patent could never be essential to any standard unless the patent claims every location technology available for use with the standard.

Moreover, TruePosition's litigation position in this case is that other location technologies are not acceptable noninfringing substitutes for UTDOA. *See* Mulhern Report at 38, ¶ 76 (B161); *see also* Mulhern Dep. 33:25-34:3 (B59-60); *id.* at 190:20-21 ("my review

(B73).

TruePosition cannot have it both ways: if it wants to argue no noninfringing alternatives for damages purposes, it cannot turn around and argue out of the other side of its mouth when it needs to defend its conduct during the standards-setting process.

### E.  IF ANDREW HAD KNOWN THE TRUTH, IT NEVER WOULD HAVE ADVOCATED UTDOA STANDARDIZATION WITH TRUEPOSITION.

TruePosition knew from the beginning that it was

See TruePosition 30(b)(6) Dep. 107:16-108:3, Oct. 24, 2006 (B25-26). As Andrew's Rule 30(b)(6) designee confirmed, if Andrew had known the truth, it never would have gone along with TruePosition's plan to standardize UTDOA:

> In my role as the head of business development, it's my responsibility to make sure that business opportunities and product development and standards work are coordinated such that Andrew prospers, so, yes, I did rely on it, and if I believed there was blocking intellectual property, I would have taken a strong position to not participate with TruePosition with respect to those proposals.

Andrew Second 30(b)(6) Dep. 111:18-112:2, Nov. 9, 2006 (B250-251); *see also* Kennedy Dep. 47:5-11, Oct. 17, 2006 ("I understood as I've explained earlier that

14

because of the standards group involvement, that we would not — we would not be — no complaint would be brought against us related to products that we built but were in compliance with the standards unless intellectual property — essential intellectual property was identified.") (B178).

Simply put, TruePosition duped Andrew. The background is complicated, but one thing is clear — there are myriad disputed facts here.

## V.   ARGUMENT

TruePosition advances seven arguments in its motion. Each is baseless and each is addressed below.

### A.    ANDREW'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES ARE NOT PREEMPTED.

TruePosition argues that because Andrew is seeking a declaration that the '144 patent is unenforceable against Andrew, "Andrew must allege (and prove) that TruePosition's actions in enforcing its patent are both objectively and subjectively baseless" in order to prevail on its standards counterclaims. TPI MSJ Br. at 13, 14. TruePosition is wrong.

*First*, TruePosition's argument is misguided. Andrew's standards counterclaims are based on TruePosition's tortious standards-related conduct as set forth above, including fraudulently and unfairly failing to declare the '144 patent to ETSI, which is essential under TruePosition's interpretation of the patent,

TruePosition seemingly conflates Andrew's standards-based counterclaims with a counterclaim of tortious interference based on frivolous pre-suit communications.[5]  *See*

---

[5]  Andrew does consider this case to be frivolous, and reserves the right to seek its attorneys' fees at the conclusion of this litigation under 35 U.S.C. 285 and other available fee-shifting

*Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993) ("A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known, was baseless."), *reh'g granted on other grounds*, 15 F.3d 1076 (1994).

Here, Andrew has not asserted claims against TruePosition for the pre-suit communications it sent to STC attempting to persuade it to contract with TruePosition over Andrew, despite the fact that the communications were damaging to Andrew. *See generally* Email from Frederic Beckley to STC (Nov. 18, 2005) (B180); *see also id.* at Attachment, Letter from Frederic Beckley to Khalid Al Amayreh (STC) (Oct. 24, 2005)

(B181). Rather, Andrew's claims are based on TruePosition's deceit throughout the UTDOA standardization process, which preceded TruePosition's communications to STC.

*Second*, in no way do TruePosition's cited cases stand for the proposition that state-law claims based on tortious conduct before standards bodies are preempted by federal patent law. Rather, TruePosition's cases stand only for the proposition that state-law counterclaims cannot be based on pre-suit good faith warning letters and/or statements.[6] *See Serio-US Indus., Inc. v. Plastic Recovery Techs. Corp.*, 459 F.3d 1311, 1320 (Fed. Cir. 2006) ("federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation")

---

statutes; however, the frivolous nature of TruePosition's case is not the basis of Andrew's standards counterclaims.

[6]  Notably, state-law counterclaims are not preempted for warning letters and statements to competitors when bad faith is shown. *See Serio-US Indus.*, 459 F.3d at 1320; *Zenith Elecs. Corp*, 182 F.3d at 1355.

(citing *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999)); *see also generally id.* at 1320-21; *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1377 (Fed. Cir. 2004) (citing *Zenith Elecs. Corp.*); *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999) (state-law tortious interference claim preempted by patent law absent showing of bad faith). Not surprisingly, none of TruePosition's cited cases deals with standards counterclaims.

Thus, because it mischaracterizes Andrew's counterclaims and defenses, and also misstates the law, TruePosition's preemption argument fails.[7]

**B.    TRUEPOSITION COMMITTED FRAUD.**

**1.    The Legal Standards for Fraud.**

As shown below at page 29, California is the state with the "most significant relationship" to TruePosition's tortious actions. Therefore, application of California fraud law is appropriate. *See Travelers Indem. Co. v. Lake,* 594 A.2d 38, 46-47 (Del. 1991) (Delaware applies most significant relationship test for both contract and tort cases). However, the elements of fraud are virtually identical in Delaware and California, so Andrew prevails under either state's law. *See Lazar v. Superior Ct.*, 909 P.2d 981, 985, 12 Cal. 4th 631, 638-639 (Cal. 1996) (holding that plaintiff stated cause of action for fraudulent inducement).    The elements of fraud are: (i) misrepresentation (false representation, concealment, or nondisclosure); (ii) knowledge of falsity (or 'scienter'); (iii) intent to defraud, i.e., to induce reliance; (iv) justifiable reliance; and (v) resulting damage. *See id.* In

---

[7]    Although TruePosition argues that fraud is a preempted state-law claim, it relies heavily in other sections of its brief on *Rambus Inc. v. Infineon Technologies* (*see* TPI MSJ Br. at 16, 17,19), which concerned a state-law fraud claim brought in conjunction with a patent claim. *See generally Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081 (Fed. Cir. 2003). *See also Micron Tech., Inc. v. Rambus Inc.*, 189 F. Supp. 2d 201, 202 (D. Del. 2002) (patent and fraud case); *Honeywell Int'l Inc. v. ABB Inc.*, 71 Fed. App'x 50 (Fed. Cir. 2003) (patent infringement case with defenses of fraud, laches and equitable estoppel).

its brief, TruePosition lumps the first two elements under a "duty to disclose" test. TPI MSJ Br. at 16-20.

>           **2.    There Are Myriad Issues of Fact Regarding Whether TruePosition Had A Duty to Disclose the '144 Patent.**

TruePosition raises only fact-intensive issues[8] to argue it had no duty to disclose the '144 patent. The disputed facts raised by TruePosition include: (a) what the ETSI policy requires (TPI MSJ Br. at 17); (b) whether there is a reasonable expectation that a license is needed to implement the standard (*Id.*); (c) whether the '144 patent was essential (*Id.*); and (d) whether Andrew can show that it is not possible on technical grounds to provide location services in a GSM network without infringing the '144 patent (*Id.* at 17-18).[9] Thus, by TruePosition's own tacit admission, there are many issues of fact precluding summary judgment on Andrew's fraud counterclaim. A few of these facts are discussed below.

>           ***a.    TruePosition Has Made Sweeping Representations As To The Scope Of The '144 Patent Claims.***

TruePosition's claim of non-essentiality rings hollow in light of its assertions as to the scope of the '144 patents claims — TruePosition has plainly stated that use of the SDCCH is required for all idle-mode locations, e.g.:

---

[8]   This makes sense. *See, e.g., Abito v. United Airline*, 2000 WL 550043, *7 (N.D. Cal. May 1, 2000) ("The Counterclaim also involves the necessarily fact intensive claim of fraud.").

[9]   TruePosition states that "to sustain its burden, Andrew must show that the '144 patent was "essential" within the meaning of ETSI's IPR policy. TPI MSJ Br. at 17. That is of course not the case; Andrew's burden at this stage is simply to show there is an issue of material fact.

Email from Paul Czarnecki, Vice President, International Sales, to Khalid Al Amayreh,

TruePosition's agent, with a carbon copy to Mike McGoldrick and Rob Anderson,

TruePosition's Chief Technology Officer (Oct. 5, 2005) (emphasis added) (B159).

     Indeed, outside of its briefs to this Court, TruePosition does not allow for locating an

*Id.* (emphasis added).

        **b.**     *Given TruePosition's Interpretation of the '144 Patent, the ETSI IPR Policy Required TruePosition to Declare the Patent.*

     TruePosition argues the duty to disclose can only arise out of the specific policy of

the standards-making organization, and that there must be a reasonable expectation by a

competitor that a license is needed to implement the standard. *See* TPI MSJ Br. at 16-17

(citing *Rambus*, 318 F.3d at 1098-1104). Here, the ETSI IPR Policy spells out that anyone

who submits a technical proposal for a standard must declare its ownership of any intellectual

property that might be "essential" if the proposal is adopted as a standard. ETSI IPR Policy

Annex A at 15, ¶ 4.1 (B151). The ETSI IPR Policy explains that:

> Essential as applied to IPR means that it is not possible on technical (but not commercial) grounds, *taking into account normal technical practice and the state of the art generally available at the time of the standardization* to make, sell, lease, otherwise dispose of, repair or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR.

*Id.* at 18, ¶ 6 (emphasis added) (B154).

Thus, the ETSI IPR policy specifies when a patent should be disclosed. Based on TruePosition's position in this litigation (*see, e.g.*, page 10 above), the ETSI IPR policy created a duty for TruePosition to disclose the '144 patent. Further, the ETSI IPR policy specifies that technical feasibility must take into account "normal technical practice and the state of the art generally available at the time of the standardization." That provision and the deposition testimony of TruePosition's 30b6 designee gut TruePosition's argument that the *theoretical possibility* of locating an idle phone on the traffic channel shows that the '144 patent is not essential:

TruePosition 30(b)(6) Dep. 184:10-21, Nov. 14, 2006 (B166).[10]

### c.    *TruePosition's Litigation Position Eviscerates Its Non-Essentiality Arguments.*

Moreover, TruePosition's litigation position completely undermines its argument that the '144 patent is not essential — e.g., TruePosition argues that lost profits are appropriate in this case because there are no noninfringing substitutes.

---

[10] TruePosition's argument that "activities of the 'RAN' group, which dealt exclusively with UMTS systems, are not relevant to this case" makes no sense except to further highlight the fact that it is apparently impossible for "GERAN" vendors — the arguably relevant vendors — to implement the necessary changes. *See* TPI MSJ Br. at 9. At the very least, this presents yet another question of fact. *See also id.* at 20 (highlighting additional issues of material fact by attempting to cure Bob Gross' damaging statement that

When TruePosition wears its standards hat, it says that the '144 patent is not essential because idle cellular phones can be located on the traffic channel. TPI MSJ Br. at 19. But when TruePosition wears its damages hat, it says

> See Mulhern Dep. 32:14-34:25 (B58-60);

*see also id. at* 61:17-23 (B66).

Likewise, when TruePosition wears its standards hat, it says that the '144 patent is not essential because other location technologies are called out in the specification. *See* TPI MSJ Br. at 18. But when TruePosition wears its damages hat,

> See e.g., Mulhern Report at 38, ¶ 76 (B161);

Mulhern Dep. 33:25-34:3 (B59-60); *id.* at 190:20-21 (B73). At a minimum, TruePosition's various hats and the inconsistent arguments it makes when it switches hats, creates issues of fact inappropriate for resolution on summary judgment.

### d.    *TruePosition Should Have Disclosed The Truth To Andrew.*

In addition, the facts show TruePosition also had a duty to disclose to Andrew — as shown above,

> See Gross Dep. 77:20-78:6 (B122-

123). *See also e.g.,* Email from Rhys Robinson of TruePosition to Grant, Guarino, Jensen, Magnusson, Gross and Shaw (June 16, 2003) (B183); Email from R. Robinson of TruePosition to Oskar Magnusson of Andrew (June 18, 2003) (B192). Yet at no time did TruePosition inform Andrew                                          or that Andrew would be sued for practicing the standard it jointly advocated with TruePosition.[11]

---

[11] On this point, the instant case is distinguishable from the *Rambus* case. *See Rambus* at 1096, n. 7 ("the parties argued the existence of a duty based on only Rambus's act of joining JEDEC with awareness of the EIA/JEDEC policy").

21

Thus, for all these reasons, TruePosition had a duty to disclose the '144 patent.  At the very least, there are many issues of fact precluding summary judgment in TruePosition's favor.

### 3.    TruePosition Had an Intent to Mislead.

There is no dispute that TruePosition knew it was interpreting

*See* TPI MSJ Br. at 11.  Indeed, its 30(b)(6) witness admitted that at the time TruePosition was advocating standards adoption to 3GPP,

E.g., TruePosition 30(b)(6) Dep. 107:16-108:3, Oct. 24, 2006 (B25-26).

TruePosition argues that "the evidence is unambiguous and uncontradicted" on intent because "the only two employees with sufficient knowledge or authority to decide whether any patent should or should not be declared to a standards body [] both firmly believe, and have always believed, that the '144 patent is not essential." TPI MSJ Br. at 20.

First, the subjective belief of TruePosition's employees is a fact issue inappropriate for summary judgment.  Second, self-serving testimony does not carry the day.  *See Hartford Fire Ins. Co. v. Pettinaro Constr. Co.*, 820 F. Supp. 154, 161 (D. Del. 1993) (finding it "inappropriate to grant summary judgment" on the basis of "self-serving deposition testimony").  This is particularly true where, as here, TruePosition is the custodian of its true intentions.  *See Mann v. Oppenheimer & Co.*, 517 A.2d 1056, 1060-1061 (Del. 1986) (reversing grant of summary judgment on fraud claim and remanding for factual inquiry where "the prospectus and offering circular, the only expressions of defendant's intent to redeem, are the very declarations which plaintiffs claim were fraudulent" ).  Thus, circumstantial evidence can constitute proof of scienter in a fraud case.  *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n. 30 (1983).

22

Moreover, to the extent the evidence is unambiguous, it does not show a lack of deceitful intent on TruePosition's part.   Rather, it shows that TruePosition intended to defraud Andrew (then Grayson)

Indeed, the evidence shows that the scheme went all the way up to TruePosition's highest-ranking legal officer:

Email from Kevin Donaghy to Frederic Beckley, TruePosition's Senior Vice President and General Counsel (Nov. 8, 2002) (B115); Responsive Email from Frederic Beckley to Kevin Donaghy (Nov. 8, 2002) (B116).

The view that Andrew was instrumental in achieving TruePosition's goals was also shared by Rhys Robinson, TruePosition's then-standards representative:

Email from Rhys Robinson to Patrick Leihy and Joe Sheehan, TruePosition's President (Jan. 9, 2003 ) (bold and italics added; capitalization in original) (B117).

Notably, TruePosition admits that Rhys Robinson gave deposition testimony

See TPI MSJ Br. at 22, n. 15.  See Robinson Dep. 40:7-42:12 (B285-287).

23

4.     **Andrew Justifiably Relied.**

TruePosition essentially concedes it has no evidence that Andrew did not rely on TruePosition's actions and omissions.  TruePosition argues that Andrew was aware of the patent at the time (TPI MSJ Br. at 22), but that argument misses the point.  Andrew is not arguing that it had no idea of the existence of the '144 patent — rather, Andrew relied on: (a) the evidence it had regarding the '144 patent's limited scope (i.e., the '144 patent claims and specification); (b) TruePosition's failure to disclose the '144 patent to the standards bodies as essential; (c) TruePosition's failure to inform Andrew — its standardization partner — of its interpretation of the '144 patent; and (d) TruePosition's failure to inform Andrew — its standardization partner — of its intent to sue.  Andrew was justified in trusting that its standardization partner would be forthcoming and would not hide the ball.

TruePosition then asserts that "[n]or can Andrew claim that 3GPP's adoption of any standard forced Andrew to propose a U-TDOA based location system to STC." TPI MSJ Br. at 23.  But again TruePosition misses the point. Although the standard did not force Andrew to act, Andrew took the actions it did under the assumption that there were no legal encumbrances to doing so. *See* Kennedy Dep. 18:10-12, Oct. 17, 2006 ("my assumption was that there wasn't any [essential IP] related to those change requests") (B174); *id.* at 18:23-19:2 ("I did rely on it, and if I believe there was blocking intellectual property, I would have taken a strong position to not participate with TruePosition with respect to those proposals.") (B174-175); *id.* at 47:5-11 ("I understood as I've explained earlier that because of the standards group involvement, that we would not — we would not be — no complaint would be brought against us related to products that we built but were in compliance with the standards unless intellectual property — essential intellectual property was identified.") (B178).

TruePosition also argues that the parties' previous Settlement Agreement undercuts Andrew's claims.[12]   To the contrary, as Andrew's Rule 30(b)(6) designee testified, the Settlement Agreement — which was executed after TruePosition and Andrew began working together to standardize UTDOA — reflects Andrew's understanding regarding TruePosition's inability to bring suit against Andrew related to standardized technology:

> And we made decisions in the settlement agreement about what rights we would have and what the implications were of having licenses and what we expected TruePosition's future ability to bring suit against us to be based on the work that we did in the standards groups. And so there's a settlement agreement that's based on an understanding that there is no essential IPR related being able to practice.

Andrew Third 30(b)(6) Dep. 15:24-16:8, Nov. 9, 2006 (B134-135); *see also id.* at 15:18-20 ("The activities that were jointly undertaken by Andrew and TruePosition related to standards preceded the settlement agreement.") (B134).  TruePosition's argument based on the parties' prior Settlement Agreement is misplaced for another reason.  TruePosition argues "no harm, no foul," because the Settlement Agreement provides a covenant not to sue only for products using "the voice or traffic channel (but not the control or access channel)".  TPI MSJ Br. at 25.

---

[12] TruePosition's arguments regarding the parties' prior term sheet are irrelevant and improper under Fed. R. Evid. 408.  First, the "term sheet" was superseded by the formal settlement agreement and has no legal weight.  Second, the term sheet was part of the mediation process, and the Mediation Agreement specifically precludes TruePosition from introducing into evidence matters addressed at the mediation.  Third, if TruePosition really believed that "Kirkland & Ellis's representation of Andrew in this litigation is inappropriate and improper" (*see* TPI MSJ Br. at 6, n.4), it would have formally objected when Kirkland took over Andrew's representation ten months ago.

In sum, the prior Settlement Agreement does not save the day for TruePosition.[13]

Finally, TruePosition argues that Andrew's system sold to STC is outside the ETSI specifications. TPI MSJ Br. at 23. As an initial matter, this is not true. *See* Carlson Dep. 29:15-16, Oct. 2, 2006 (B290). Furthermore, TruePosition again misses the point. Even assuming for the sake of argument that certain aspects of Andrew's overall system architecture go beyond what is prescribed by the ETSI or 3GPP specifications, the way Andrew locates idle phones using UTDOA is in accordance with the 3GPP specifications, which is the real issue here.

For all of these reasons, Andrew can prove fraud, and there are many issues of material fact precluding summary judgment in TruePosition's favor.

### C.    EQUITABLE ESTOPPEL.

TruePosition and Andrew agree on the elements of equitable estoppel:

> "(1) The actor [here, TruePosition], who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence.
>
> (2) The other [here, Andrew] relies on that communication.
>
> (3) And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."

---

[13] TruePosition relies on *Great Lakes Chem. Corp. v. Pharmacia Corp.*, 788 A.2d 544 (Del. Ch. 2001) to argue that the Settlement Agreement's integration clause precludes reliance by Andrew. *Great Lakes* is easily distinguishable; Great Lakes claimed that it was fraudulently induced to enter into a purchase agreement to acquire an entity, in that it agreed to pay more for the acquired entity than it was worth. *Id.* at 550-551. The Court found that Great Lakes' claim for fraudulent inducement of the contract could not stand because of three separate disclaimers and disavowals of warranty contained in the agreement itself. Here, Andrew has not claimed fraudulent inducement, and bases its fraud claims on independent fraudulent conduct by TruePosition.

*Rambus, Inc. v. Infineon Technologies AG*, 326 F. Supp. 2d 721, 733 (E.D. Va. 2004) (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)).

The application of equitable estoppel "involve[] factual questions for a jury, *e.g.*, intent to induce reliance, the reasonableness of reliance." *Fini v. Remington Arms Co.*, 1998 WL 299358, *10 (D. Del. May 27, 1998) (footnotes and citations omitted).This weighs against a finding of summary judgment.

In addition, for all of the reasons explained in previous sections, Andrew can prove the elements of equitable estoppel. Notably, TruePosition admits whether "the infringer [] had 'a relationship or communication' with the patentee 'which lulls the infringer into a sense of security in going ahead with' the infringing activity" is highly relevant to an equitable estoppel inquiry. TPI MSJ Br. at 27-28 (citing *Aukerman* and *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 317 (D. Del. 2005)). While Andrew of course contests that it is an "infringer," for the reasons outlined above, it was indeed "lulled into a sense of security." In addition, TruePosition's cited cases do not support its argument because, *inter alia*, here it was TruePosition's affirmative acts — and not just its silence — that created Andrew's reliance. *Cf. Honeywell Int'l, Inc.*, 398 F. Supp. 2d at 317 (no standards-body IPR policy at issue; no cooperative relationship between plaintiff and defendant; no counterclaims based on formal standardization activities; noninfringement jury verdict begat conclusion that patent not required to practice technology at issue)[14]; *Symbol Techs., Inc. v. Proxim Inc.*, 2004 WL 1770290, *8 (D. Del. July 28, 2004) (defendant's claim failed because plaintiff was "silent" and did not affirmatively mislead defendant as to patent existence); Thus, for the reasons already discussed, Andrew can prove equitable estoppel,

---

[14] Indeed, Honeywell supports Andrew's position that if the '144 patent is properly interpreted and is not read to cover Andrew's products, it is not essential under the ETSI policy.

and there are at least issues of material fact precluding summary judgment in TruePosition's favor.

**D.     TRUEPOSITION ALSO ENGAGED IN UNFAIR COMPETITION.**

TruePosition's Motion for Summary Judgment as applied to Andrew's unfair competition counterclaim is largely a dispute about the applicable law. *See* TPI MSJ Br. at 32-33. But application of California law is proper, and Andrew can prove unfair competition. At the very least, there are many issues of material fact precluding summary judgment in TruePosition's favor. *See Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 397 (Cal. Ct. App. 2002) ("claims of unfair competition commonly present fact-intensive issues....What constitutes 'unfair competition'...under any given set of circumstances is a question of fact...The determination of unfair competition often involves a weighing process that requires a full examination of the relevant facts....") (internal quotations and citations omitted).

**1.     TruePosition's Arguments Regarding Application of California Law Are Unfounded.**

When deciding choice of law issues, Delaware applies the "most significant relationship test" to both contract and tort cases. *See Travelers Indem.*, 594 A.2d at 47. Here, TruePosition argues that California law is inapplicable because only a "small proportion of [3GPP] meetings" were held in California (TPI MSJ Br. at 33), and this case allegedly "is not the kind of action the California unfair competition law is meant to redress." *Id*. TruePosition then concludes that "TruePosition is entitled to summary judgment on Andrew's Counterclaim III." *Id*.

TruePosition's argument is baseless. Under TruePosition's logic, *no* law is applicable to its conduct. Evidence of many 3GPP meetings were produced in this case, and those meetings take place all over the globe. *See, e.g.,* Excerpt from Aug. 27-31 2001 3GPP

28

GERAN Meeting #6 (B39-55); Excerpt from November 18-22 2002 3GPP GERAN meeting #12 (B252-254).

No 3GPP meetings took place in Delaware. Application of California law is appropriate because of all of the places in the United States where 3GPP meetings occurred, the most occurred in California. TruePosition attended at least three California meetings, of the four California meetings, which were important to the standardization process. *See, e.g.,* Excerpt from August 26-30, 2002 3GPP TSG GERAN meeting #11 (B255-256); Excerpt from May 19-23, 2003 3GPP TSG GERAN meeting #14 (B112-114); Excerpt from September 7-9, 2004 3GPP TSG RAN meeting #25 (B281-282).

Therefore, because California is the state with the "most significant relationship" to TruePosition's tortious actions, application of California unfair competition law is appropriate. *See Travelers Indem.*, 594 A.2d at 47 (Delaware applies most significant relationship test for both contract and tort cases).

### 2.    TruePosition's Motion for Summary Judgment on Andrew's Unfair Competition Claim Fails On the Merits.

TruePosition's motion for summary judgment on Andrew's unfair competition counterclaim fails on the merits because Andrew has enough evidence to prove unfair competition; at the very least, there are many issues of material fact. And although there are multiple ways to articulate the test for unfair competition under California law, TruePosition is liable under any of them.

#### a.    *The Elements of Unfair Competition.*

In contrast to TruePosition's assertions, the scope of Andrew's unfair competition claim "is quite broad" and covers "anything that can properly be called a business practice." *Rambus*, 326 F. Supp. 2d at 727 (applying California unfair competition statute). The Supreme Court of California has explained:

29

> [T]he unfair competition law's scope is broad....**it defines unfair competition to include any unlawful, unfair or fraudulent business act or practice.  Its coverage is sweeping, embracing** anything that can properly be called a business practice and that at the same time is forbidden by law.  It governs anti-competitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition.
>
> ***
>
> The statutory language referring to any unlawful, unfair or fraudulent practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law.  Because Bus. & Prof. Code, § 17200, is written in the disjunctive, it establishes ***three varieties of unfair competition-acts or practices that are unlawful, or unfair, or fraudulent.***

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-540 (quotations and citations omitted) (Cal. 1999).[15]  Thus, a party can allege several varieties of unfair competition, including "fraudulent", which requires the relevant public be deceived, and "unfair", which 'means conduct <u>violates the policy or spirit of one of an antitrust law, or otherwise</u> significantly threatens or harms competition.  *See id.*

**b.**     ***TruePosition's Conduct Would Deceive the Relevant Public, Including Andrew.***

Andrew can prove unfair competition of the "fraudulent" variety because the relevant public would be deceived by TruePosition's conduct.  "Where the alleged violation of Section 17200 is based on the allegation that a business act or practice is fraudulent, the focal issue is whether the alleged act or practice was likely to cause members of the consuming public to be deceived."  *Rambus*, 326 F. Supp. 2d at 727-728 (applying California unfair competition statute) (citing *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 317 (Cal. Ct. App. 1999)).  Here, the relevant public is made up of location

---

**15**  TruePosition cites *Cel-Tech* in its brief, but incorrectly implies the case advocated a narrow approach to unfair competition.  *See* TPI MSJ Br. at 32.

30

technology manufacturers, including Andrew, and other entities involved in standardization. *See id.* ("Here, the consuming public is made up of DRAM manufacturers and competitors, the potential consumers for Rambus' alleged intellectual property rights, if any, in the technologies at issue.") (citing *Perdue v. Crocker Nat'l Bank*, 702 P.2d 503, 514 (Cal. 1985)).

For the reasons set forth below, the relevant public would "likely be deceived" into thinking that TruePosition would not assert the '144 patent against standardized UTDOA technology. Indeed, Andrew *was* deceived.

**Standardization Efforts; Joint Cooperation With Andrew.** As discussed in detail in the Counterstatement of Fact at pages 6-8, TruePosition worked hard to get UTDOA standardized.

standardization. *See, e.g.,* Excerpt from Aug. 27-31, 2001 3GPP TSG GERAN Meeting #6 (B39-55); Excerpt from November 26-30, 2001 3GPP TSG GERAN Meeting #7 (B75-89).

Moreover, Andrew and TruePosition worked together to get UTDOA standardized. *See* Gross Dep. 77:20-78:6 (B122-123). *See also e.g.,* Email from Rhys Robinson of TruePosition to Grant, Guarino, Jensen, Magnusson, Gross and Shaw (June 16, 2003)

(B183); Email from Rhys Robinson to Oskar Magnusson of Andrew (June 18, 2003)

(B192). But despite the joint standardization efforts, TruePosition never told

31

**TruePosition's Awareness of ETSI IPR Policy.**  TruePosition was also aware that

TruePosition 30(b)(6) Dep. 33:11-13; 42:7-20, Oct. 24, 2006 (B13; B16).  Furthermore, intellectual property is considered essential if it is not possible on technical grounds to implement the standard without infringing that intellectual property, and this inquiry takes "into account *normal technical practice and the state of the art generally available at the time* of the standardization to make, sell, lease, otherwise dispose of, repair or operate EQUIPMENT or METHODS which comply with a STANDARD without infringing that IPR." *See* ETSI IPR Policy at 18, ¶ 6 (emphasis added) (B154).

**TruePosition Did Not Declare the '144 Patent or Inform Andrew of Its Interpretation of the '144 Patent.**  TruePosition did not declare the '144 patent to 3GPP or ETSI. *See* TPI MSJ Br. at 11.

**Andrew Was Likely To Be — And Was In Fact — Deceived.**  For all these reasons, Andrew, and other members of the relevant community, were likely to be deceived into thinking that TruePosition did not consider the '144 patent to read on standardized UTDOA technology.  It was reasonable for Andrew to assume TruePosition would be forthcoming, and TruePosition's hiding of the ball under these circumstances constitutes unfair competition. *See Rambus*, 326 F. Supp. 2d at 728 (holding it is reasonable for a manufacturer to assume in a standards-related setting that another manufacturer would disclose any intellectual property rights allegedly covering the item under discussion). Indeed, Andrew *was* deceived. *See e.g.*, Kennedy Dep. 18:23-19:3, Oct. 17, 2006 ("if I believed there was blocking intellectual property, I would have taken a strong position to not

32

participate with TruePosition with respect to those proposals") (B174-175); *see also id.* at 47:5-11 (B178).

Therefore, Andrew can prove that TruePosition is liable for "fraudulent" unfair competition under California law. At the very least, there are many issues of material fact precluding summary judgment in TruePosition's favor.

> ### c.     *TruePosition's Conduct Also Rises to the Level of Offending the Spirit of the Antitrust Laws.*

Andrew can also prove unfair competition under TruePosition's cited test. TruePosition cites *Cel-Tech* for the test for a claim by a competitor premised on an act that is "unfair":

> When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or practice invokes section 17200 , the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition.

*Cel-Tech Commc'ns*, 973 P.2d at 544. As discussed below, TruePosition's actions violate at least the spirit of attempted monopolization, and threaten or harm competition.

**TruePosition and Andrew Are The Only Two UTDOA Vendors.** It is TruePosition's stance that it and Andrew are

> *See e.g.*, Mulhern Report at

38, ¶ 76 ·

(B161). Thus, if only TruePosition is allowed to practice idle-mode UTDOA location, TruePosition will have a monopoly on the market.

**TruePosition Interprets the '144 Patent As Covering Andrew's UTDOA Technology.** TruePosition clearly interprets the '144 patent as covering the standardized

UTDOA technology practiced by Andrew. *See* D.I. 1, Complaint; Expert Report of Oded Gottesman, Ph.D at 1-2 (B277-278).

**TruePosition Has Always Interpreted the '144 Patent As Covering the Now-Standardized UTDOA Technology.** Moreover, TruePosition has always interpreted the

TruePosition 30(b)(6) Dep. 107:16-108:3, Oct. 24, 2006 (B25-26).

**TruePosition Did Not Disclose the '144 Patent, Its Interpretation of It, Or Its Intent to Sue.** TruePosition did not disclose the '144 patent,

UTDOA. *See, e.g., Id.* at 44:9-17; *see also* TPI MSJ Br. at p. 11.

**TruePosition Needed Andrew to Eliminate the Perception that UTDOA was a Proprietary Technology.** The evidence shows that TruePosition wanted Andrew's (then-Grayson's) assistance

as explained on pages 6-8 above.

**TruePosition's Conduct Was Unfair and Violates At Least the Spirit of the Antitrust Laws.** For all these reasons, TruePosition's conduct was fundamentally unfair and violates at least the spirit of the laws against attempted monopolization. *See* 15 U.S.C. §2 (making it an offense to "monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States ..."); *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993) (15 U.S.C. § 2 is violated if the plaintiff proves "(1) that the defendant has engaged in

predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly.").

As shown above, TruePosition engaged in predatory and anticompetitive conduct so that it could exclude Andrew from the market. Thus, Andrew can prove unfair competition even under TruePosition's test. No matter which test is used, TruePosition's conduct was unfair. At the very least, there are many issues of material fact precluding summary judgment in TruePosition's favor.

### E.    IMPLIED LICENSE.

As TruePosition concedes, "the Federal Circuit has recognized implied licenses through [] equitable estoppel." TPI MSJ Br. at 30 (citing *Tenneco Automotive Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375 (D. Del. 2005)). Thus, for all of the same reasons that Andrew can prove equitable estoppel, it can also prove an implied license. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1582 (Fed. Cir. 1997).

For example, Andrew can meet TruePosition's test for implied license by conduct or acquiescence. *See* TPI MSJ Br. at 31. Indeed, Andrew has already shown that: (a) it had a relationship with TruePosition (partnership in standardization); (b) within the relationship, and (c) TruePosition's

TruePosition 30(b)(6) Dep. 22:25-24:6; 29:20-30:14, Oct. 24, 2006 (B3-5; B10-11). And for the same reasons outlined above at pages 25-26, TruePosition's arguments concerning the parties' prior Settlement Agreement should be ignored. Thus, there are at

least issues of fact precluding summary judgment in TruePosition's favor as to an implied license.

### F.     PROMISSORY ESTOPPEL.

TruePosition argues that there is "no 'definite and certain' promise by TruePosition, and there is no evidence of any such promise." TPI MSJ Br. at 29.

First, TruePosition's promissory estoppel argument is wholly inapposite because the existence of a promise is a question of fact:

> Distinguishing a promise from a non-promise must be done through a reasonable interpretation of the parties' expressions in light of the surrounding circumstances. Determining this depends in part of such factors as what the Defendant said, in what manner he said it and how many times such assurances were made. ***Whether a promise was made is a question of fact to be determined by the jury***.

*Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg*, 2004 WL 42611, *3 (Del. Super. Ct. Jan. 8, 2004) (finding it was a "classic promissory estoppel" case, and finding reasonable reliance was supported) (internal citations omitted) (emphasis added). The District of Delaware has also given clear guidance:

> Thus, there is a genuine issue of material fact not only as to whether Millner made the alleged representation, but whether the representation rises to the level of a 'real promise.' The other criteria of an action for equitable and promissory estoppel...***also involve factual questions for a jury, e.g., intent to induce reliance, the reasonableness of reliance***. Accordingly, the court concludes that summary judgment is inappropriate at this juncture.

*Fini*, 1998 WL 299358, at *10 (footnotes and citations omitted) (denying cross-motions for summary judgment).[16]

---

[16] TruePosition also argues that "Andrew cannot show that TruePosition intended any promise to induce action by Andrew" and "cannot show reasonable reliance." TPI MSJ Br. at 30. For all of the reasons explain in previous sections, there is at least an issue of fact as to those elements as well.

The factual nature of the inquiry is underscored by TruePosition's arguments — it says the feasibility study "is not a promise of anything," points out that the language was not in a subsequent draft of the document, and says that "because the 144 patent is not "essential IPR" for purposes of performing the UTDOA locations proposed in the draft for reasons already discussed, it does not 'cover information' contained in the feasibility study." TPI MSJ Br. at 29, n. 20.

Second, TruePosition is wrong — there is evidence of a specific promise, and it creates at least an issue of material fact. Indeed, the feasibility study that TruePosition submitted in April 2002 "to demonstrate the feasibility of the U-TDOA in GSM" specifically stated:

> TruePosition Incorporated may hold one or more patents or copyrights that cover information contained in this document. A license will be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.

Feasibility Study at 3-5 (B106).

Notably, TruePosition's did not say that a license <u>may</u> be made available <u>if</u> a TruePosition patent is found to be essential — TruePosition said a license <u>would</u> be made available for patents that "<u>cover information</u> contained in this document." *Id.*

And the feasibility study expressly discussed location of mobile phones using the SDCCH channel — precisely what TruePosition now claims infringes the '144 patent. Feasibility Study at 3-2 (B103). Therefore, TruePosition made a promise in writing to license the '144 patent. And because TruePosition said that a license would be made available under terms and conditions "free of any unfair discrimination", the promise does not exclude Andrew.

This statement is in writing and is not "amorphous." *See Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000) (reversing dismissal of a promissory estoppel employment claim,

finding that the promises were not "too 'amorphous'" to support a claim). Even an oral promise can be sufficient. *See id.* Lastly, TruePosition's entire course of action gives rise to the promise. *See Ramone v. Lang,* 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006) (footnotes and citations omitted) (the "sum" of representations can constitute a promise).

In addition, for the reasons outlined above, Andrew has shown evidence of TruePosition's intent to induce reliance, Andrew's reasonable reliance, and injury. Therefore, TruePosition's motion for summary judgment on Andrew's promissory estoppel claim should be denied.

### G. DAMAGES.

TruePosition argues that "Andrew has no evidence whatsoever" of any damage. TPI MSJ Br. at 33-35. To support its argument, TruePosition incorrectly claims that Andrew never supplemented its interrogatory answer regarding damages. TPI MSJ Br. at 34. However, Andrew's supplemental interrogatory answer referenced Andrew's 30(b)(6) testimony, which details numerous examples of damage suffered by Andrew such as:

- The award of the STC contract was delayed;

- Business development and executive management staff have had to undertake letter-writing campaigns and trips to STC to respond to TruePosition's actions;

- Andrew must routinely engage in discussions with other potential customers related to TruePosition's actions;

- Attorneys' fees and costs related to the instant litigation, undertaken only as a result of TruePosition's fraud;

- Under TruePosition's theory, Andrew may be forced to pay a substantial damages award to TruePosition, if TruePosition prevails on its infringement claims. Indeed, TruePosition has claimed damages totaling almost $40 million.

Andrew's Suppl. Resp. Rog 14 (B273) (Notice of service at D.I. 114); Andrew Third 30(b)(6) Dep. 8:22-13:24, November 9, 2006 (B127-132). Each of these is an instance of damage incurred by Andrew as a result of TruePosition's actions.

Moreover, TruePosition's argument confuses the type of damages Andrew is required to prove as part of its fraud claim. Andrew's fraud claim requires Andrew to demonstrate only damage resulting from its reliance on TruePosition's false misrepresentation.[17] Andrew does not have to quantify any actual damages to sustain its fraud claim. "The fact of damages is distinct from the issue of actual damages. Fact of damages pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relates to the appropriate measure of individual relief." *Wit Capital Group, Inc. v. Benning*, 897 A.2d 172, 179 n. 22 (Del. 2006). There can be no doubt that Andrew has sufficiently alleged damage. There are issues of fact as to the amount of Andrew's damages.

Andrew has put forward more than sufficient evidence of its damage and injury. TruePosition, therefore, is not entitled to partial summary judgment that Andrew is not entitled to a damages award on any of its counterclaims.

---

[17] Indeed, even if Andrew could not ultimately prove a computation of actual damages, it could still be awarded nominal damages, which are sufficient to satisfy the damages element of Andrew's claims. *See Kurinij v. Hanna & Morton*, 64 Cal. Rptr. 2d 324, 332 (Cal. Ct. App. 1997) (upholding an award of $1 on fraud claim in response to defendant's argument that "without actual damages, there is no fraud." The Court explained that the $1 verdict demonstrated that "the jury found damages attributable to the fraud."). *See also, Optical Techs., Inc. v. Excelladerm Corp.*, 2002 WL 1091424, *2 (Cal. Ct. App. 2002) (upholding a nominal damages award for a fraud claim); *Giammanco v. Giammanco*, 625 N.E.2d 990, 997 (Ill. App. Ct. 1993) (If a party proves the right to damages but fails to provide basis for computing them, nominal damages can be recovered); *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1229-1230 (N.J. 1984) (upholding jury verdict of nominal damages on fraud claim and holding that "compensatory damages are not an essential element of an intentional tort committed willfully and without justification when there is some loss, detriment or injury, and that nominal damages may be awarded in such cases in the absence of compensatory damages."); *Sands v. Forrest*, 434 A.2d 122, 124 (Pa. Super. Ct. 1981) ("If plaintiffs were entitled to a verdict on the cause of action alleged, but were unable to prove damages, they were nevertheless entitled to a verdict for nominal damages.").

## VI.    CONCLUSION

For the reasons set forth above, Andrew respectfully requests denial of TruePosition's Motion for Summary Judgment On Andrew's Counterclaims II-VI and Affirmative Defenses III-V.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600

*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 20, 2007

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 27, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on February 27, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

> **BY ELECTRONIC MAIL ON FEBRUARY 27, 2007**
> **AND FEDERAL EXPRESS ON FEBRUARY 28, 2007**
>
> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> David L. Marcus, Esq. [dmarcus@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> One Liberty Place, 46th Floor
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Andrew A. Lundgren*
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> alundgren@ycst.com
> *Attorneys for Defendant Andrew Corporation*