**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TRUEPOSITION, INC.,<br><br>Plaintiff and Counterclaim-Defendant,<br><br>v.<br><br>ANDREW CORPORATION,<br><br>Defendant and Counterclaim Plaintiff. | Civil Action No. 05-00747-SLR |

# ANDREW CORPORATION'S ANSWERING CLAIM CONSTRUCTION BRIEF


YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:
John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000


Dated: February 28, 2007

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. REVERSE CONTROL CHANNEL(S) (CLAIMS 1, 22, 31). ..... 2

1. TruePosition Is Estopped From Arguing the "Reverse Control Channel" Limitation Encompasses Channels That Transmit In the "Forward" Direction. ..... 3

2. The "Reverse Control Channel" Limitation Cannot Encompass Channels That Transmit More Than Signaling Information. ..... 5

B. PRESCRIBED SET (CLAIMS 1, 22, 31). ..... 6

C. SUBSCRIBERS (CLAIMS 22, 32). ..... 7

D. MEANS FOR PROCESSING SAID FRAMES OF DATA FROM SAID CELL SITE SYSTEMS TO GENERATE A TABLE IDENTIFYING INDIVIDUAL CELLULAR TELEPHONE SIGNALS AND THE DIFFERENCES IN TIMES OF ARRIVAL OF SAID CELLULAR TELEPHONE SIGNALS AMONG SAID CELL SITE SYSTEMS (CLAIM 1). ..... 9

E. MEANS FOR DETERMINING, ON THE BASIS OF SAID TIMES OF ARRIVAL DIFFERENCES, THE LOCATIONS OF THE CELLULAR TELEPHONES RESPONSIBLE FOR SAID CELLULAR TELEPHONE SIGNALS (CLAIM 1). ..... 10

F. LOCATING MEANS FOR AUTOMATICALLY DETERMINING THE LOCATIONS OF SAID CELLULAR TELEPHONES BY RECEIVING AND PROCESSING SIGNALS EMITTED DURING SAID PERIODIC REVERSE CONTROL CHANNEL TRANSMISSIONS (CLAIM 22). ..... 11

G. DATABASE MEANS FOR STORING LOCATION DATA IDENTIFYING THE CELLULAR TELEPHONES AND THEIR RESPECTIVE LOCATIONS, AND FOR PROVIDING ACCESS TO SAID DATABASE TO SUBSCRIBERS AT REMOTE LOCATIONS (CLAIM 22). ..... 11

H. TIME STAMP BITS REPRESENTING THE TIME AT WHICH SAID CELLULAR TELEPHONE SIGNALS WERE RECEIVED (CLAIM 1) / TIME STAMP BITS REPRESENTING THE TIME AT WHICH SAID FRAMES WERE PRODUCED AT EACH CELL SITE (CLAIM 31). ..... 12

I. TABLE IDENTIFYING INDIVIDUAL CELLULAR TELEPHONE SIGNALS (CLAIM 1) / DATA IDENTIFYING THE CELLULAR TELEPHONES (CLAIMS 22, 32). ..... 13

J. PROCESSING SAID FRAMES OF DATA TO IDENTIFY INDIVIDUAL CELLULAR TELEPHONE SIGNALS (CLAIM 31). ..... 13

III. TRUEPOSITION'S COMPLAINTS ABOUT ANDREW'S ALLEGEDLY SHIFTING CONSTRUCTIONS ARE BASELESS. ....14

IV. CONCLUSION....14

# TABLE OF AUTHORITIES

## Cases

*Aquatex Indus., Inc. v. Techniche Solutions*,
419 F.3d 1374 (Fed. Cir. 2005)........ 7

*Default Proof Credit Card Sys. v. Home Depot U.S.A.*,
412 F.3d 1291 (Fed. Cir. 2005)........ 12

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
535 U.S. 722 (2002)........ 4

*Markman v. Westview*,
52 F.3d 967 (Fed. Cir. 1995)........ 7, 8

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)........ 6, 8, 13, 14

*Rexnord Corp. v. Laitram Corp.*,
274 F.3d 1336 (Fed. Cir. 2001)........ 9

*U.S. Surgical Corp. v. Ethicon, Inc.*,
103 F.3d 1554 (Fed. Cir. 1997)........ 1

*WMS Gaming, Inc. v. Int'l Game Tech.*,
184 F.3d 1339 (Fed. Cir. 1999)........ 10

## I. INTRODUCTION

TruePosition's proffered claim constructions provide no precision and, consequently, impart no meaning to the claims. Many of TruePosition's constructions are vague and circular, often just repeating the language of the claims themselves. TruePosition's approach flies in the face of the purpose of claim construction, which is to clarify the scope of the claims. *See, e.g., U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims....").

TruePosition's argument that Andrew's extrinsic evidence conflicts with the intrinsic record is wrong. (*See* D.I. 142, TruePosition's Opening Claim Construction Brief at 2 (hereinafter "TPI Markman")). Andrew has not used extrinsic evidence to contradict the intrinsic record. Rather, any extrinsic evidence offered by Andrew corroborates the teachings in the '144 patent specification. Indeed, it is TruePosition who wishes to broaden the claims beyond the disclosures in the intrinsic record. For example, TruePosition has argued the "*reverse* control channel" limitation can encompass a channel that carries information in the "forward" direction (*see* D.I. 162, TruePosition's Brief in Opposition To Andrew's Motion for Summary Judgment of Non-Infringement at 19-20), even though the prosecution history precludes TruePosition from advancing that construction. Similarly, if TruePosition's proffered construction of "subscriber" is adopted, the term would end up having two different meanings in the same claim. TruePosition's approach is improper.

For the reasons set forth in Andrew's opening brief and below, Andrew's proposed constructions should be adopted.

## II. ARGUMENT

Both parties' opening *Markman* briefs presented their respective proffered constructions and the reasons for their disagreement with the other party's proposed constructions. Andrew will not repeat that discussion here. Rather, Andrew briefly summarizes below the reasons why its proffered constructions are correct and supported by the intrinsic record.

### A. REVERSE CONTROL CHANNEL(S) (CLAIMS 1, 22, 31).[1]

The parties have debated the meaning of the "reverse control channel" limitation both in their *Markman* briefs and in connection with Andrew's pending motion for summary judgment of non-infringement. *See* D.I. 148, Andrew Corporation's Opening Brief In Support of Its Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,327,144 (hereinafter "Andrew MSJ Br."). Through that briefing, it has become clear that TruePosition is trying to impermissibly broaden "reverse control channel" to cover channels that can transmit in the "forward" direction. However, due to amendments made and positions taken by TruePosition during prosecution of the '144 patent, TruePosition is estopped from arguing the "reverse control channel" limitation

1 As explained in Andrew's opening brief, the terms "reverse" and "control channel" should not be construed separately from the term "reverse control channel" because "reverse control channel" is a term of art. *See* D.I. 149, Andrew Corporation's Opening Brief in Support of Its Construction of Certain Claim Limitations of U.S. Patent No. 5,327,144 at 17-19 (hereinafter "Andrew Markman"). Because "reverse control channel" is a term of art, Andrew simply asks for it to be construed as a unitary phrase, rather than two separate phrases (i.e. "reverse" and "control channel"). When the term is construed as two separate phrases, it is possible to impermissibly "mix and match" the phrases, which leads to improper broadening of the claim. If this Court does choose to construe the terms separately, the definitions set out at pages 18-19 of Andrew's opening Markman brief should be adopted because they give some boundaries to the claim.

encompasses channels that can transmit in the "forward" direction. As also explained below, TruePosition has no support for its argument that the "reverse control channel" limitation can cover channels that communicate information other than signaling information.

### 1. TruePosition Is Estopped From Arguing the "Reverse Control Channel" Limitation Encompasses Channels That Transmit In the "Forward" Direction.

As explained in Andrew's non-infringement summary judgment briefs, TruePosition initially tried to claim broad "control channels." May 7, 1993 Patent Application at 35, 43-45 (A271-274).[2] The "control channels" TruePosition originally tried to claim would have encompassed forward control channels, reverse control channels, and/or bidirectional control channels, but the PTO rejected each of those claims in light of the prior art of record, e.g.:

> Song teaches that it is ***well-known in cellular telephone networks***, which are combined with locating and tracking a cellular telephone, ***to initiate the location system using the signals transmitted on the control channels***. Thus, it would have been obvious to one having skill in the art at the time the invention was made to modify Sagey by using a control channel signal to make a determination of the location rather than overlaying the voice channel with a spread spectrum signal....

9/24/93 Office Action at 2 (A146) (emphasis added).

---

2 Citations to "A__" are to D.I. 150, Andrew's Appendix of Exhibits to 1) Opening Brief in Support of Motion for Summary Judgment of Invalidity of Claim 22 of the '144 Patent for Indefiniteness, 2) Opening Brief in Support of Motion for Summary Judgment of Noninfringement of U.S. Patent No. 5,327,144, and 3) Andrew Corporation's Construction of Certain Claim Limitations of U.S. Patent No. 5,327,144. Citations to "C__" refer to D.I. 185, Appendix of Exhibits to Andrew Corporation's Reply in Support of Its Motion for Summary Judgment of Invalidity of Claim 22 of the '144 Patent for Indefiniteness, and Andrew Corporation's Reply Brief in Support of Its Summary Judgment Motion of Noninfringement of U.S. Patent No. 5,327,144.

As a result, in order to get its claims allowed, TruePosition limited the claims to a "reverse control channel" rather than just "control channels." 10/04/93 Office Action Response at 1-3 (A149-152). *See also* Andrew MSJ Br. at 5-6. Subsequently, the Examiner conducted an interview and noted that the discussion concerned "forward as opposed to reverse channel control [sic]." 10/4/93 Examiner Interview Summary Record (C33). The "reverse control channel" claims were allowed on October 29, 1993. 10/29/93 Notice of Allowance (A153). TruePosition's claim amendments mean the scope of the "reverse control channel" limitation cannot as a matter of law encompass a channel that carries information in any direction other than solely "reverse." *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722 (2002).

Even without TruePosition's prosecution history statements, the proper interpretation of "reverse control channel" still would not cover channels that can transmit in the "forward" direction. In contrast to a forward control channel, a "reverse control channel" carries information from a mobile station to a base station. Both TruePosition and the '144 patent differentiate between forward control channels and "reverse control channels":

> Channels that transmit information from a cell site to a cellular telephone are called "forward" channels. Channels that transmit information from a cellular telephone to a cell site are called "reverse" channels.

D.I. 162, TruePosition's Brief in Response to Andrew's Motion for Summary Judgment of Non-Infringement at 7-8 (hereinafter "TPI MSJ Opp.").

> The control channel from a cell site to a mobile unit is called the "forward" control channel and the control channel from the cellular telephone to the cell site is called the "reverse" control channel. Signals are continuously broadcast over a forward control channel by each cell site. In contrast, signals are discontinuously (periodically)

> broadcast by the cellular telephones over a reverse control channel.

'144 Patent col.2, ll.15-23 (A17). TruePosition's expert witness in this case, Dr. Oded Gottesman, agrees. *See, e.g.,* Gottesman Dep. 125:24-25, Jan. 11, 2007 ("By 'reverse,' it means from the mobile, to the base station; that what it means.") (C31).

Therefore, the construction reached by the Court — like Andrew's proposed construction, the '144 patent, and the prosecution history — should specify that a "reverse control channel" can transmit only in the reverse direction.

**2. The "Reverse Control Channel" Limitation Cannot Encompass Channels That Transmit More Than Signaling Information.**

A fundamental flaw of TruePosition's proffered construction for "reverse control channel" is that it only partially addresses the directional property of "reverse control channels" and does not address the content property of "reverse control channels" in any way. But TruePosition's witnesses have been clear on the content property of control channels, including "reverse control channels": they only communicate signaling information. For example, TruePosition's Chief Technology Officer testified:

> Q. Do control channels communicate anything other than signaling information?
>
> A. No.

Anderson Dep. 42:5-7, Sep. 21, 2006 (A80).

TruePosition's former expert witness agreed, and confirmed a channel that communicates anything other than signaling information is a "voice channel," not a control channel:

- "In 1995 and 1996, a person of ordinary skill in the art would have been aware that a wireless cellular communication system had two types of channels – a control channel and a voice channel. ... The

> voice channel [] contains both user information (voice and other user data) ***and*** certain system control information."

TruePosition's July 28, 2003 Report of Stuart Schwartz at 20-21, ¶ 57 (A113-114) (emphasis added).

> - "Although called the "voice channel," a person of ordinary skill in the art in 1995-1996 would have been aware that the voice channel has both voice data and control type information...."

*Id.* at 22, ¶ 61 (A115).

This evidence is properly considered because it does not conflict with the intrinsic evidence, and it informs the Court as to how a person of ordinary skill in the art would construe the term. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (extrinsic evidence can be useful "to ensure that the court's understanding of the technical aspects of the patent is consistent with that of a person of ordinary skill in the art"). Therefore, the construction reached by the Court — like Andrew's proposed construction and the positions taken by TruePosition's own witnesses — should specify that a "reverse control channel" can transmit *only* signaling information.

### B. PRESCRIBED SET (CLAIMS 1, 22, 31).[3]

Both parties agree the word "prescribed" indicates something dictated. *See* TPI Markman at 8; Andrew Markman at 19-20. However, TruePosition's argument that the claimed "prescribed set" can be any set of channels dictated by any cellular telephone system protocol (TPI Markman at 8-9), ignores the intrinsic evidence of record. As explained in Andrew's opening brief, the intrinsic evidence is clear that the claimed "prescribed set" refers to the "prescribed set of reverse control channels." *See* Andrew

---

3 All arguments concerning Claim 22 are academic, as shown in Andrew's Motion for Summary Judgment of Invalidity of Claim 22 for Indefiniteness (D.I. 146).

Markman at 5-6; 20-21. As Andrew further explained, the term "reverse control channel" is a term of art that corresponds to the specific (and only) cellular system described in the '144 patent. *See id.* at 16-17. To be consistent with the teachings of the specification, "prescribed set" should be construed to refer to that specific cellular system. That is why Andrew proposes that "prescribed set" be construed to mean "the set of frequency bands that are assigned to convey information in the format specified in ANSI 553." *See Markman v. Westview*, 52 F.3d 967, 986 (Fed. Cir. 1995) (in construing claims, the courts focus on "what one of ordinary skill in the art at the time of the invention would have understood the term to mean"); *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed. Cir. 2005) (holding that "fiberfill batting material" is made of synthetic or polyester fibers because, based on the teachings of the specification, one of ordinary skill in the industry would understand "fiberfill batting material" to have that composition).

### C. SUBSCRIBERS (CLAIMS 22[4], 32).

TruePosition's construction of the term "subscribers" — "individuals who agree to receive and pay for a service" — is so broad that it renders the claim nonsensical. TruePosition's argument that "the Patent specification shows that 'subscribers' can be people who pay for computer terminal access to a database of cellular telephone locations, rather than the people who pay for cell phone service" has no support in the '144 patent specification. TPI Markman at 27.[5]

---

4 *See* Footnote 3.

5 TruePosition's argument that Andrew's construction of "subscribers" has no support in the '144 patent specification is wrong. *See* Andrew Markman at 24-25; '144 Patent col.3 ll.42-49 (A18); '144 Patent col.4 ll.47-50 (A18); '144 Patent col.19 ll.9-10 (A26); '144 Patent col.19 ll.11-14 (A26).

TruePosition cites Column 9, lines 23-31 and Figure 2 of the '144 patent specification to support its construction. Those portions of the patent merely reflect the patent claim requirement that the subscriber *have access to the claimed database means*. *See* Claim 22. Moreover, if anything, they support Andrew's construction. Figure 2 shows the person having access to the database holding a cellular telephone 10b. *See* '144 Patent Fig. 2; *see also* col.9 ll.25-31 ("FIG. 2 depicts … handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communication with the database.") (A21).

TruePosition also tries to support its construction by arguing that "'subscribers,' ***standing alone***, is not inherently limited to cell phone users who receive and pay for cell phone service." TPI Markman at 26 (emphasis added). But claim terms are not to be construed "standing alone." *See Phillips*, 415 F.3d at 1315 (the claims "do not stand alone," and "'must be read in view of the specification, of which they are part.'") (quoting *Markman*, 52 F.3d at 979). And TruePosition does not — because it cannot — offer any support for its conclusory statement that "[t]he meaning of the term 'subscribers' must encompass people who do not possess mobile cellular phones, and, therefore, must encompass people who are not 'users of the mobile cellular telephones who receive and pay for cellular telephone service.'" TPI Markman at 26.

TruePosition's argument that Andrew's construction would render the phrase "possessing mobile cellular telephone service" "superfluous" is absurd. *See* TPI Markman at 27. If anything, the phrase shows that Andrew's construction of the term comports with the claim as a whole — indeed, if TruePosition's construction is adopted,

the term "subscriber" will have two different meanings within Claim 22. *See* Claim 22[6] ("A ground-based cellular telephone system serving a plurality of *subscribers* possessing mobile cellular telephones, comprising... (c) database means for storing location data identifying the cellular telephones and their respective locations, and for providing access to said database to *subscribers* at remote locations....). Under the tenets of claim construction, a subscriber cannot be a person "possessing a mobile cellular telephone" ***and*** a person who "agrees to pay for and receive [any] service" within the same claim. *See, e.g.*, *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("[A] claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent.").

For all these reasons, Andrew's construction of "subscriber" should be adopted.

### D. MEANS FOR PROCESSING SAID FRAMES OF DATA FROM SAID CELL SITE SYSTEMS TO GENERATE A TABLE IDENTIFYING INDIVIDUAL CELLULAR TELEPHONE SIGNALS AND THE DIFFERENCES IN TIMES OF ARRIVAL OF SAID CELLULAR TELEPHONE SIGNALS AMONG SAID CELL SITE SYSTEMS (CLAIM 1).

The parties disagreement for the "means for processing" limitation centers on structure. "In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm." *WMS Gaming, Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1349 (Fed. Cir. 1999). Andrew's proposed construction tracks the algorithm disclosed in the '144 patent for performing the function dictated by the "means for processing" limitation, namely, the cross-correlation algorithm disclosed in the patent.

---

6 *See* Footnote 3.

Although TruePosition tries to selectively pick and choose certain portions of the structure disclosed in the specification, even the portions of the specification cited by TruePosition confirm the structure for the "means for processing" limitation requires an algorithm performing a cross-correlation method of processing data. *See* '144 Patent Figure 7, Block 2 ("Cross-Correlate Data") (included in both parties' constructions) (A9); col.12 ll.48-54 ("Referring now to FIG. 6A, the predetection cross-correlation method employed in preferred embodiments") (included in Andrew's construction) (A22); Figure 8A ("Obtain correlations") (included in TruePosition's construction (A11).

### E. Means for Determining, on the Basis of Said Times of Arrival Differences, the Locations of the Cellular Telephones Responsible for Said Cellular Telephone Signals (Claim 1).

The parties disagreement for the "means for determining" limitation again centers on structure. Here again, Andrew's proposed construction tracks the algorithm disclosed in the '144 patent for performing the function dictated by the "means for determining" limitation, namely, the least squares estimation algorithm disclosed in the patent. TruePosition tries to selectively pick and choose certain portions of the structure disclosed in the specification, and weasel out of tying itself to the disclosed least-squares estimate equation. But even the portions of the specification cited by TruePosition make clear the only possible the structure for the "means for determining" limitation requires an algorithm performing a least squares estimation. *See* '144 Patent col.16 ll.39-41 (A24) (giving the equation for the required least-squares equation) (included in Andrew's construction); col.18 ll.32 (A25) (discussing least-squares step) (included in both parties' constructions); Figure 8D, Block 1 (least-squares step) (included in both parties' constructions) (A14).

**F. LOCATING MEANS FOR AUTOMATICALLY DETERMINING THE LOCATIONS OF SAID CELLULAR TELEPHONES BY RECEIVING AND PROCESSING SIGNALS EMITTED DURING SAID PERIODIC REVERSE CONTROL CHANNEL TRANSMISSIONS (CLAIM 22).**

Like the other "means" terms, the parties' disagreement again concerns structure. And here again, Andrew's proposed construction tracks the algorithm disclosed in the '144 patent for performing the function dictated by the "means for locating" limitation, namely, the least squares estimation algorithm disclosed in the patent. Although TruePosition tries to selectively pick and choose certain portions of the structure disclosed in the specification, and weasel out of tying itself to the disclosed least-squares estimate equation. But even the portions of the specification cited by TruePosition make clear the only possible structure for the "means for determining" limitation requires an algorithm performing a least squares estimation. *See* '144 Patent col.16 ll.39-41 (A24) (giving the equation for the required least-squares equation) (included in Andrew's construction); col.18 ll.32 (A25) (discussing least-squares step) (included in both parties' constructions); Figure 8D, Block 1 (least-squares step) (included in both parties' constructions) (A14).

**G. DATABASE MEANS FOR STORING LOCATION DATA IDENTIFYING THE CELLULAR TELEPHONES AND THEIR RESPECTIVE LOCATIONS, AND FOR PROVIDING ACCESS TO SAID DATABASE TO SUBSCRIBERS AT REMOTE LOCATIONS (CLAIM 22).**

TruePosition alleges that Andrew's construction is "unclear" because "Andrew purports to identify corresponding structure but does not cite to the patent specification." TPI Markman at 33. As explained in Andrew's Motion for Summary Judgment that Claim 22 is Invalid for Indefiniteness (D.I. 146), Andrew is unable to find any structure in the specification corresponding to the function of "database means" (storing location

data identifying the cellular telephones and their respective locations, and for providing access to the database to subscribers at remote locations). Therefore, Claim 22 is invalid.

TruePosition's proposed construction further confirms there is no structure disclosed in the '144 patent for "storing location data identifying the cellular telephones and their respective locations." Indeed a "database" as the structure for a "database means" for "storing location data identifying the cellular telephones and their respective location," is insufficient to save the validity of the claim. *See Default Proof Credit Card Sys. v. Home Depot U.S.A.*, 412 F.3d 1291, 1299-1303 (Fed. Cir. 2005) (holding "means for dispensing" claim invalid where no structure disclosed except "dispenser").

### H. TIME STAMP BITS REPRESENTING THE TIME AT WHICH SAID CELLULAR TELEPHONE SIGNALS WERE RECEIVED (CLAIM 1) / TIME STAMP BITS REPRESENTING THE TIME AT WHICH SAID FRAMES WERE PRODUCED AT EACH CELL SITE (CLAIM 31).

TruePosition advocates for constructions so broad that the "time stamp bit" limitations would be rendered meaningless:

- binary units of computer information that indicate a time and that symbolize, typify or describe when said cellular telephone signals were received (TPI Markman at 17); and
- binary units of computer information that indicate a time and that symbolize, typify or describe when said frames were produced at each cell site (*Id.*)

TruePosition argues that its construction comports with the dictionary definition of "representing." S*ee id.* at 17, 36 (citing dictionary at A267). However, TruePosition's citation makes Andrew's point. TruePosition picks three of the ***eleven*** definitions supplied by its dictionary. *See* D.I. 144, Appendix A to TruePosition's Opening Claim Construction Opening Brief Part 2 at A267 (definition of "represent"). This is not "useful to assist in understanding the commonly understood meaning " of the term. TPI

Markman at 17 (citing *Phillips*, 415 F.3d at 1322). Neither is a dictionary citation encompassing ***eleven*** different definitions.

Andrew's construction is the one that interprets "time stamp bits" in accordance with the plain and ordinary meaning — i.e., calendar date and time. Andrew's construction should be adopted.

### I. TABLE IDENTIFYING INDIVIDUAL CELLULAR TELEPHONE SIGNALS (CLAIM 1) / DATA IDENTIFYING THE CELLULAR TELEPHONES (CLAIMS 22, 32).

For the reasons explained in Andrew's opening brief, TruePosition's constructions for the limitations of "table identifying individual cellular telephone signals" and "data identifying the cellular telephones" are hopelessly circular and impart no clarification whatsoever to the word "identifying." *See* Andrew Markman at 25-29. In addition, the specification supports Andrew's construction. *See id.* Andrew's proposed construction should be adopted.

### J. PROCESSING SAID FRAMES OF DATA TO IDENTIFY INDIVIDUAL CELLULAR TELEPHONE SIGNALS (CLAIM 31).

For the term "processing said frames of data to identify individual cellular telephone signals," TruePosition's construction is again circular, basically repeating the claim language. It imparts absolutely no meaning to the term. In addition, TruePosition's argument that Andrew's construction is inconsistent with the plain meaning of the term is nonsensical — there is no plain meaning associated with "processing said frames of data to identify individual cellular telephone signals." Furthermore, the term "must be read in view of the specification, of which [it is] a part." *See Phillips*, 415 F.3d at 1315. That is exactly what Andrew's proposed construction does. *See* Andrew Markman at 29-30.

## III. TRUEPOSITION'S COMPLAINTS ABOUT ANDREW'S ALLEGEDLY SHIFTING CONSTRUCTIONS ARE BASELESS.

Finally, as expressed in Andrew's Reply Brief in Support of its Summary Judgment Motion of Noninfringement (D.I. 183), Andrew does not understand the mudslinging regarding allegedly shifting constructions. Andrew properly refined its wording, and has removed constructions from contention after carefully considering TruePosition's position, which reduced the burden on the Court. Indeed, Andrew informed TruePosition on January 15, 2007 that it would be submitting revised constructions. Goodman Dep. 65:17-66:14, Jan. 15, 2007 (C39-40). TruePosition raised no objection. *See id.* TruePosition's mudslinging is baseless and irrelevant to the legal issue of claim construction. If anything, TruePosition's claims that its constructions have been wholly immutable shows that TruePosition decided its constructions in a vacuum and gave no consideration to the merits of the constructions proffered by Andrew after the parties exchanged preliminary claim constructions on November 22, 2006.

## IV. CONCLUSION

For all the reasons given in Andrew's Opening Claim Construction Brief and in this Responsive Brief, Andrew respectfully requests that the Court adopt its proposed constructions.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew A. Lundgren*
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: February 28, 2007

**CERTIFICATE OF SERVICE**

I, Andrew A. Lundgren, Esquire, hereby certify that on February 28, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

James D. Heisman, Esquire
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
Email: jheisman@cblh.com

I further certify that on February 28, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL ON FEBRUARY 28, 2007**
**AND FEDERAL EXPRESS ON MARCH 1, 2007**

Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
David L. Marcus, Esq. [dmarcus@woodcock.com]
Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew A. Lundgren*
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant Andrew Corporation*