# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **TruePosition, Inc.,** | ) | |
| | ) | |
| **Plaintiff/** | ) | |
| **Counterclaim-Defendant,** | ) | |
| | ) | **Civil Action No. 05-747-SLR** |
| **v.** | ) | |
| | ) | |
| **Andrew Corporation,** | ) | |
| | ) | |
| **Defendant/** | ) | |
| **Counterclaim-Plaintiff.** | ) | |
| _____ | ) | |

## MEMORANDUM IN SUPPORT OF TRUEPOSITION'S MOTION TO EXCLUDE THE INVALIDITY TESTIMONY OF DR. DAVID GOODMAN PURSUANT TO FEDERAL RULE OF EVIDENCE 702

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist, Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Cira Centre, 12th Floor, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

# TABLE OF CONTENTS

I.   NATURE AND STAGE OF THE PROCEEDINGS ................................... 1

II.   SUMMARY OF ARGUMENT ................................................. 2

III.   STATEMENT OF FACTS ...................................................... 3

    A.   Background ............................................................ 3

    B.   Facts Relating to This Motion ........................................... 4

IV.   ARGUMENT ................................................................. 6

    A.   Governing Legal Standards ............................................ 6

        1.   Admission of Expert Testimony ................................. 6

        2.   Anticipation ................................................... 9

    B.   Dr. Goodman's Analysis Is Fundamentally Flawed, Rendering His Testimony Unreliable ............................................... 11

        1.   Dr. Goodman's Failure to Set Forth Clear Constructions of Each Limitation of the Asserted Claims Renders His Opinion Unreliable ............................................ 12

        2.   Dr. Goodman's Failure to Perform an Element by Element Analysis of Each Claim with the Kono Reference Renders His Opinion Unreliable ........................... 16

    C.   Dr. Goodman's Testimony Will Not Assist the Jury ........................ 19

V.   CONCLUSION ............................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abbott Laboratories v. Baxter Pharm. Products*,
  471 F.3d 1363 (Fed. Cir. 2006) ................................................................9

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
  239 F.3d 1343 (Fed. Cir. 2001) .................................... 2, 9, 11, 15, 16, 17

*Apple Computer, Inc. v. Articulate System, Inc.*,
  234 F.3d 14 (Fed. Cir. 2000) ...........................................................10, 15

*In re Bond*,
  910 F.2d 831 (Fed. Cir. 1990) ................................................................9

*Calhoun v. Yamaha Motor Corp.*,
  350 F.3d 316 (3d Cir. 2003) ...................................................................7

*Citizens Financial Group, Inc. v. The Citizens National Bank of
  Evans City*,
  2003 U.S. Dist. LEXIS 25977 (W.D. Pa. Apr. 23, 2003) ..................9, 19

*Club Car, Inc. v. Club Car (Quebec) Import, Inc.*,
  362 F.3d 775 (11th Cir. 2004) ................................................8, 15, 17, 18

*DSU Medical Corp. v. JMS Co.*,
  296 F. Supp. 2d 1140 (N.D. Cal. 2003) ............................................8, 18

*Dataquill Ltd. v. Handspring Inc.*,
  2003 U.S. Dist. LEXIS 2981 (N.D. Ill. Feb. 28, 2003) ..........................16

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................2, 3, 6, 19

*Elcock v. Kmart Corp.*,
  233 F.3d 734 (3d Cir. 2000) ...................................................................6

*Harris Corp. v. Ericsson Inc.*,
  417 F.3d 1241 (Fed. Cir. 2005) .......................................................10, 13

*Izumi Products Co. v. Koninklijke Philips Electronics N.V.*,
  315 F. Supp. 2d 589 (D. Del. 2004) ........................................... 6, 7, 8, 19

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................. 6

*MLMC, Ltd. v. Airtouch Communications, Inc.*,
  2001 U.S. Dist. LEXIS 26078 (D. Del. Nov. 9, 2001) .............................. 8

*McKesson Information Solutions LLC v. Trizetto Group, Inc.*,
  426 F. Supp. 2d 197 (D. Del. 2006) ....................................................... 13

*In re Mott*,
  557 F.2d 266 (C.C.P.A. 1977) ........................................................... 11, 18

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004) ........................... 2, 3, 15, 16, 18, 19

*In re Paoli Railroad Yard PCB Litigation*,
  35 F.3d 717 (3d Cir. 1994) ............................................................ 7, 8, 19

*RCA Corp. v. Applied Digital Data Systems, Inc.*,
  730 F.2d 1440 (Fed. Cir. 1984) ..................................................... 11, 15, 17

*Schering Corp. v. Geneva Pharms., Inc.*,
  339 F.3d 1373 (Fed. Cir. 2003) ............................................................... 9

*SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*,
  859 F.2d 878 (Fed. Cir. 1988) ................................................................. 9

*United States v. Faines*,
  2007 U.S. App. LEXIS 3284 (3d Cir. 2007) ........................................... 7

*Waldorf v. Shuta*,
  142 F.3d 601 (3d Cir. 1998) ................................................................... 7

*WMS Gaming Inc. v. International Game Tech.*,
  184 F.3d 1339 (Fed. Cir. 1999) ............................................................. 10

## FEDERAL STATUTES, RULES AND REGULATIONS

35 U.S.C. § 102(b) ........................................................................9

35 U.S.C. §112, ¶6 ...........................................................5, 10, 15

35 U.S.C. § 282 ............................................................................9

Federal Rule of Evidence 701 ............................................*passim*

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement action.  TruePosition, Inc. ("TruePosition")

asserts that Andrew Corporation ("Andrew") infringes certain claims of U.S.

Patent 5,327,144 (the "144 patent") (A1-A31) by offering, using and supplying

from the United States Andrew's "Geometrix Wireless Location System."

TruePosition filed this suit on October 25, 2005 (D.I. 1).  The pleadings

closed on July 5, 2006 (D.I. 53).  A hearing on claim construction and summary

judgment motions was held on April 10, 2007.  The Pretrial Conference is

scheduled for August 23, 2007, with trial to begin on September 4, 2007 (D.I. 23

at ¶¶ 10-11).

Of relevance to this motion, Andrew alleged in both its first affirmative

defense and in its declaratory judgment counterclaim (Counterclaim I) that the

"144 patent and each of its claims are invalid . . . under one or more sections of

Title 35 of the United States Code, including §§ 101, 102, 103 and/or 112" (D.I. 48

at 9 & 11, ¶ 9).  On December 1, 2006 Andrew served an "Expert Report of Dr.

David Goodman on the Invalidity of U.S. Patent No. 5,327,144," purporting to

show that the 144 patent is anticipated in view of a single prior art reference (A32-

A64).

Pursuant to section 2(c)(3) of the Court's Scheduling Order (D.I. 23),

TruePosition now moves to exclude Dr. Goodman's proposed "expert" testimony

relating to invalidity because it fails to satisfy Federal Rule of Evidence 702.[1]  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).  Dr. Goodman's invalidity analysis is fundamentally flawed, and therefore both unreliable and unhelpful to the jury.  *See Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004).

## II.    SUMMARY OF ARGUMENT

Dr. Goodman's proposed testimony on anticipation should be excluded because it fails to meet the requirements of Federal Rule of Evidence 702:  it is neither reliable nor useful to the trier of fact.  See *Daubert*, 509 U.S. at 589-91. The anticipation analysis is a two-step process, requiring both (1) a construction of the patent claims; and (2) a comparison of each and every element of the properly construed claims to the prior art.  *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001).  Dr. Goodman's report fails to adequately perform either step (A32-A50).  His report does not set forth either (1) the claim constructions used in the analysis; or (2) an element by element comparison of the prior art to the properly construed claims.

Dr. Goodman's invalidity opinion is purportedly based on a hypothetical claim construction -- the 144 patent *would be* invalidated by the prior art if, and

---

[1]      TruePosition filed a Motion for Partial Summary Judgment that Andrew Cannot Prove Its Claims of Invalidity on January 31, 2007 (D.I. 134-35) based on related arguments.  In the event the Court grants that earlier motion, this motion will become moot; it requires decision only if

only if, the claims are construed to encompass Geometrix, Andrew's accused product (A36-A37). Yet, Dr. Goodman's expert report contains no definition of this hypothetical "encompassing Geometrix" claim construction, no description of Geometrix, and no comparison of the prior art to Geometrix. Further, Dr. Goodman completely ignores the rules for construction and analysis of means-plus-function elements. Dr. Goodman's report does not attempt to identify the structure in the 144 patent specification that corresponds to functional language of the means-plus-function elements and does not attempt to compare such structure to the prior art.

Dr. Goodman's omission of the two critical steps in the anticipation analysis renders his opinion unreliable, irrelevant, and unhelpful to the trier of fact. Therefore, Dr. Goodman's invalidity "analysis" and opinion should be excluded. *See Daubert*, 509 U.S. at 589-91; *Oxford Gene*, 345 F. Supp. 2d at 436-37.

## III. STATEMENT OF FACTS

### A. Background

In the early 1990's, TruePosition's founder and two other inventors conceived and developed a system that allowed the position of a cell phone user to be located from the transmissions normally emitted by the user's cell phone. The 144 patent describes using a "Time Difference of Arrival" (TDOA) technique to

---

the Court should find that some fact issue precludes summary judgment that Andrew cannot show invalidity.

calculate a cell phone's location (A23 (col. 14, ll.15-21)).  In a TDOA system,

receivers are installed at a minimum of three "cell sites," such as the cellular

towers within a cellular network (A19 (col. 5, ll. 5-7)).  The receivers receive and

process a signal that the cell phone transmits at each of the three cell sites and

calculate the time that the signal arrived at the cell site (A24 (col. 15, ll. 32-35)).

The receivers then send this time of arrival information to a central site computer

which calculates the difference in time of arrival at pairs of the cell sites (A24 (col.

15, ll. 35-38)).  The central site computer can then estimate the phone's location

based on the differences in the signal's arrival time at the different cell sites (A24

(col. 15, ll. 51-53)).

Cellular telephone networks use two types of "channels" to communicate

information, "control channels" and "voice channels" (A17 (col. 1, l. 68 – col. 2,

l. 8)).  "Control channels" typically carry control information for establishing a

voice communication link between the phone and the cell network.  In contrast,

"voice channels" transmit the voice signals that a user generates during a call.  The

invention of TruePosition's 144 patent uses TDOA to locate cell phones using the

"control channel" signal transmissions that cell phones emit during normal

operation.

### B.    Facts Relating to This Motion

In July 1994, the United States Patent and Trademark Office issued the 144

patent (A1).  TruePosition asserts only claims 1, 2, 22, 31, and 32 in this action.

Claims 1 and 22 are independent apparatus claims that include elements written in

"means plus function" format that are subject to 35 U.S.C. § 112, ¶ 6 (A26 & A28

(col. 20, ll. 4-34; col. 23, l. 56 – col. 24, l. 2)).  Claim 31 is an independent method

claim (A28 (col. 24, ll. 51-68)).[2]

The parties exchanged opening expert reports on December 1, 2006 pursuant

to the Court's Scheduling Order (D.I. 94 at ¶ 3).  Andrew served a report authored

by Dr. David Goodman (A32-A64), in which Dr. Goodman opines that the asserted

claims of the 144 patent "are invalid because they are anticipated by" a published

Japanese patent application which he refers to as the "Kono" reference (A33).  Dr.

Goodman does not offer the typical unqualified opinion that the 144 patent is

invalid in light of Kono.  Instead, as he explained more fully at his deposition, his

opinion is a hypothetical one -- that the 144 patent *would be* invalidated by Kono

*if, and only if,* the claims are construed in a manner that encompasses Geometrix

(A66 (81:5-15); A67-A68 (85:10-87:21); A71-A72 (117:14-118:3); A73 (123:10-

20); and A79 (185:2-19)).

This motion seeks to preclude Dr. Goodman from testifying that the 144

patent was anticipated by the Kono reference as set forth in his report.

---

[2]     The remaining asserted claims – claims 2 and 32 – depend from independent claims 1
and 31, respectively.

## IV.    ARGUMENT

### A.    Governing Legal Standards

#### 1.    Admission of Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony.

It provides that:

> [i]f scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or
> to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion
> or otherwise … .

F.R.E. 702.

Rule 702 requires judges to ensure that expert testimony is relevant, reliable,

and will assist the trier of fact to understand the evidence or to determine a fact at

issue. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999); *Daubert*, 509

U.S. at 589-91; *Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F.

Supp. 2d 589, 600 (D. Del. 2004).

The Third Circuit has described Rule 702 as "embodying 'three distinct

substantive restrictions on the admission of expert testimony: qualifications,

reliability, and fit.'" *Izumi Products*, 315 F. Supp. 2d at 600 (quoting *Elcock v.

Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). The Court acts as the gatekeeper,

charged with preventing testimony that does not meet these requirements from

reaching the jury. *See id.* at 601 (citing *Daubert*, 509 U.S. at 597). The proponent

of the purported expert testimony bears the burden of showing, by a preponderance of the evidence, that these requirements are satisfied. *See id.*

In order to be qualified, an expert witness must have "'specialized knowledge' regarding the area of testimony [and] 'at a minimum, … must possess skill or knowledge greater than the average layman.'" *Id.* at 600 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). An expert "'may be generally qualified but may lack qualifications to testify outside his area of expertise.'" *United States v. Faines*, 2007 U.S. App. LEXIS 3284, *7 (3d Cir. 2007) (quoting *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003)) (affirming exclusion of expert testimony regarding an actual fingerprint comparison because the expert was qualified only with respect to fingerprint methodology and accuracy of fingerprint analysis).

In order to be reliable, an expert's opinion must be based upon "good grounds" rather than merely "subjective belief" or "unsupported speculation." *Izumi Products*, 315 F. Supp. 2d at 600 (internal citations omitted). The Third Circuit generally considers a number of factors in determining whether an expert's opinion is reliable. *Id.* at 600-01 (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)).[3] Among these factors are whether

---

[3]      The Third Circuit's reliability factors are: whether a method consists of a testable hypothesis; whether the method has been subjected to peer review; the known or potential rate of error; the existence and maintenance of standards controlling the technique's operation; whether the method is generally accepted; the relationship of the technique to methods which have been

the expert's method is generally accepted and the relationship of the expert's

technique to methods which have been established to be reliable. *Id.* The

reliability factors are not exclusive, and each need not be applied. Instead, the

Court has "'considerable leeway in deciding in a particular case how to go about

determining whether particular expert testimony is reliable.'" *Id.* at 601 (quoting

*Kumho Tire*, 526 U.S. at 152). "Reliable methodology requires that the legal

grounds used by an expert . . . be legally acceptable." *DSU Medical Corp. v. JMS

Co.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (excluding testimony based on

unprecedented legal theory); *see Club Car, Inc. v. Club Car (Quebec) Import, Inc.,*

362 F.3d 775, 780 (11th Cir. 2004) (excluding testimony based on incorrect legal

standard).

    Finally, in order for the testimony to fit the issues in the case, "the expert's

testimony must be relevant for the purposes of the case and must assist the trier of

fact." *Izumi Products*, 315 F. Supp. 2d at 601 (citing F.R.E. 702). "Expert

testimony must be tied to the facts of the particular case; otherwise, such testimony

'cannot be said to assist the trier of fact.'" *MLMC, Ltd. v. Airtouch

Communications, Inc.*, 2001 U.S. Dist. LEXIS 26078, *3 (D. Del. Nov. 9, 2001)

(concluding that proffered expert opinion regarding a reasonable royalty was not

---

established to be reliable; the qualifications of the expert witness testifying based on the methodology; and the non-judicial uses to which the method has been put. *Izumi Products*, 315 F. Supp. 2d at 600-01 (citing *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)).

supported by the facts of the case or by industry custom).  Again, as with the

reliability aspect of the inquiry, analysis that uses an improper legal standard does

not assist (and may mislead) the jury, and must be excluded.  *Citizens Financial*

*Group, Inc. v. The Citizens National Bank of Evans City*, 2003 U.S. Dist. LEXIS

25977 at *41-46 (W.D. Pa. Apr. 23, 2003) (excluding testimony based on legally

incorrect standards).

### 2.    Anticipation

The claims of the patent are presumed valid.  35 U.S.C. § 282; *see, e.g.*,

*SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 885 (Fed. Cir.

1988).  Accordingly, Andrew has the burden of proving invalidity by clear and

convincing evidence.  *See Abbott Labs. v. Baxter Pharm. Prods.*, 471 F.3d 1363,

1367 (Fed. Cir. 2006).  To prove anticipation of an asserted claim, Andrew must

show, by clear and convincing evidence, that the 144 patent claims were

"described in a printed publication" that was published more than one year before

the filing date of the patent, 35 U.S.C. § 102(b), and that a single such reference

contains every element of the claims.  *See, e.g., Schering Corp. v. Geneva*

*Pharms., Inc.,* 339 F.3d 1373, 1377 (Fed. Cir. 2003); *In re Bond,* 910 F.2d 831,

832 (Fed. Cir. 1990).

The first step in an anticipation analysis is to determine the meaning and

scope of the pertinent claims.  *See Amazon.com, Inc.*, 239 F.3d at 1351.  Each

claim must be viewed as a whole, and it is improper to ignore any element of the claim. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25 (Fed. Cir. 2000) ("The undeniably broad statement recited in claim 2 … simply cannot read the qualifier 'help' out of the definition of 'help access window.' Rather, the claim must be viewed as a whole.").

Claim elements written in means-plus-function format, such as several at issue here, are construed to cover the structure disclosed in the patent that corresponds to the recited function, and equivalents of such structure. *See* 35 U.S.C. §112, ¶6 (an "element in a claim for a combination may be expressed as a means or step for performing a specified function [and] shall be construed to cover the corresponding structure . . . described in the specification and equivalents thereof."). The corresponding structure of a means-plus-function element that is implemented by a computer is not just any computer processor, but rather a computer processor that is programmed to perform the corresponding algorithm disclosed in the patent specification. *See WMS Gaming Inc. v. International Game Tech.*, 184 F.3d 1339, 1349 (Fed. Cir. 1999) ("In a means-plus-function claim in which the disclosed structure is a computer, or microprocessor, programmed to carry out an algorithm, the disclosed structure is not the general purpose computer, but rather the special purpose computer programmed to perform the disclosed algorithm."); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005)

("A computer-implemented means-plus-function term" is construed to cover "the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.").

After determining the meaning and scope of the claims, each claim element must be compared to the reference to determine whether the reference anticipates the claim. *See Amazon.com*, 239 F.3d at 1351. For means-plus-function claim elements, this comparison requires that the structure in the patent specification corresponding to the functional language be compared to the same or equivalent structure in the prior art. *RCA Corp. v. Applied Digital Data Systems, Inc.*, 730 F.2d 1440, 1444 (Fed. Cir. 1984) ("'absent structure [in a prior art reference] which is capable of performing the functional limitation of the "means," [the prior art reference] does not meet the claim'") (quoting *In re Mott,* 557 F.2d 266, 269 (C.C.P.A. 1977)).

## B.    Dr. Goodman's Analysis Is Fundamentally Flawed, Rendering His Testimony Unreliable

In reaching his opinion that the 144 patent was anticipated by the Kono reference, Dr. Goodman does not follow either of the steps necessary to a proper anticipation analysis: 1) he does not properly construe the claims; and 2) he does not perform a proper element by element comparison of the prior art to the claims as properly construed. Therefore, his proposed "expert" testimony with respect to

invalidity is unreliable and of no value to the trier of fact, and exclusion is

warranted under Federal Rule of Evidence 702.

### 1. Dr. Goodman's Failure to Set Forth Clear Constructions of Each Limitation of the Asserted Claims Renders His Opinion Unreliable

Although Dr. Goodman's report contains a general description of a handful

of the claim terms, it does not set forth a clear construction of each claim term at

issue (A39-A42).  Dr. Goodman acknowledges that the parties have exchanged

"preliminary claim interpretations," (A36), but nowhere does he even describe, let

alone adopt, any of those constructions.  Instead, Dr. Goodman sweepingly opines

that "regardless of which constructions are adopted it is my opinion that the Kono

application will anticipate the 144 patent if its claims are read broadly enough to

cover Andrew's Geometrix products" (A36-A37).

Thus Dr. Goodman's opinion necessarily requires a description of the claim

construction that in his opinion would "encompass Geometrix."  But his report

contains no description of his hypothetical "encompassing Geometrix" claim

construction;  nor does it contain a description of Geometrix from which one could

infer such a construction.  In fact, at the time he rendered his invalidity opinion,

Dr. Goodman's understanding of Geometrix was based solely upon a single phone

conversation with a single Andrew employee and discussions with counsel; he had

reviewed no technical documentation related to Geometrix whatsoever (A69-A70

(102:2-104:4; 105:18-108:6)).  It is simply impossible to ascertain from his report

what constructions Dr. Goodman used in reaching his conclusion that the 144

patent is anticipated.

The inadequacy of Dr. Goodman's performance of the claim construction

step in the anticipation analysis is further exemplified by his complete failure to

provide constructions for the means-plus-function elements of claims 1, 2 and 22.

To properly determine the meaning of a claim element expressed in means-plus-

function format, the law requires the identification of corresponding structure in

the patent specification that performs the recited function.  *McKesson Information*

*Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 201-02 (D. Del. 2006)

(granting summary judgment where infringement expert made no attempt to

identify corresponding structure in patent specification).  However, Dr. Goodman's

report makes no reference to this legal standard and identifies no structure in the

patent specification corresponding to the means-plus-function elements of any

claim (A32-A50).  Moreover, for means-plus-function elements that recite a

function performed by a computer, Andrew was required to identify a

corresponding algorithm in the patent.  *See Harris Corp.,* 417 F.3d at 1253 ("A

computer-implemented means-plus-function term" is construed to cover "the

corresponding structure disclosed in the specification and equivalents thereof, and

the corresponding structure is the algorithm.").[4]  Dr. Goodman never attempted to

identify such an algorithm either.

    When asked at his deposition to set forth the claim construction he had used

to reach his invalidity opinion, Dr. Goodman offered partial constructions of the

claims that did not reflect the constructions advanced by either party (A76-A77

(173:10-177:15) & A80-A81 (PX 471-PX 472)).  As was explained in

TruePosition's Memorandum in Support of Its Motion for Partial Summary

Judgment that Andrew Cannot Prove Its Claims of Invalidity (D.I. 134-35),

however, those partial constructions were wholly inadequate.  For example, Dr.

Goodman totally failed to construe a number of the claim limitations, including the

key "reverse control channel" limitation that is so hotly contested.

    Dr. Goodman also confirmed his fatal failure to properly construe the

means-plus-function elements:

> Q:    When you were doing your validity analysis for
> Kono, did you also understand that means plus function
> claim elements encompass corresponding structure and
> equivalent structure?
>
>                 * * * * *
>
> A:    I didn't use that legal rule in my validity analysis.
> I understood what it meant in terms of infringement, but I
> didn't use it in my validity analysis.

---

[4]    Both parties have proposed that the structure corresponding to the function of certain
means-plus-function claim elements in Claims 1, 2 and 22 is an algorithm described in the patent
specification (D.I. 130 at 3-6).

(A74 (128:6-129:15)).

But the law clearly requires that an anticipation analysis include a determination of the meaning and scope of each disputed element of the asserted claims, including identification of structure corresponding to the recited function of means-plus-function claims.  35 U.S.C. § 112, ¶6; *Amazon.com, Inc.,* 239 F.3d at 1351; *Apple Computer, Inc.,* 234 F.3d at 25; *RCA Corp.,* 730 F.2d at 1444.  Such a construction is necessary to define what it is that was allegedly anticipated.  Dr. Goodman's failure to provide proper claim constructions renders his testimony unreliable and unhelpful.  *See Club Car, Inc.*, 362 F.3d at 780 (upholding exclusion based on finding that failure to follow proper legal analysis resulted in an opinion based on "flawed methodology").

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431 (D. Del. 2004) is directly on point.  In *Oxford Gene*, as here, the expert offered an "alternative" claim construction:

> It is my understanding that [Plaintiff] is attempting to interpret the asserted claims . . . in such a way to cover [the accused product.  If successful] . . . then it is my opinion that the asserted claims . . . would be invalid as anticipated and/or obvious in view of the following prior art.

345 F. Supp. 2d at 435-36.  Judge Jordan rejected this "negative or alternative construction" approach and found that the expert "did not provide a clear construction of each disputed claim element."  *Id.* at 436.  This failure to set forth

the claim constructions upon which an invalidity opinion is based renders an expert's testimony unreliable and "less than helpful to the trier of fact." *See id.*; *Dataquill Ltd. v. Handspring Inc.*, 2003 U.S. Dist. LEXIS 2981 at *11 (N.D. Ill. Feb. 28, 2003) (excluding expert testimony based in part on expert's failure to clearly set forth what claim constructions were used in infringement analysis).

Likewise, Dr. Goodman failed to "provide a clear construction of each disputed claim element" and therefore did not properly perform the first step of the anticipation analysis. He not only failed to provide his hypothetical "encompassing Geometrix" claim construction or any other clear construction of each element of the asserted claims, but he also chose to ignore the legal standard for construing the means-plus-function elements of the claims. Because his opinion is unsupported by a proper claim construction, it is unreliable within the meaning of F.R.E. 702. Dr. Goodman's invalidity opinion should be excluded for this failure alone.

> ### 2.      Dr. Goodman's Failure to Perform an Element by Element Analysis of Each Claim with the Kono Reference Renders His Opinion Unreliable

Dr. Goodman's report also fails to properly execute the second step in a validity analysis – an element by element comparison of each claim to the Kono reference. *See Amazon.com*, 239 F.3d at 1351. As an initial matter, the element by element comparison cannot be performed with respect to any claim at issue

without a proper claim construction. *See id.* Thus, Dr. Goodman's purported comparison testimony is inadequate and unreliable from the outset because his failure to construe the claims necessarily means that he could not have performed a proper element-by-element comparison of each claim to the prior art. *See Club Car, Inc.*, 362 F.3d at 780.

Furthermore, Dr. Goodman's opinion is that *if* Geometrix is found to infringe, apparently based upon his undisclosed hypothetical "encompassing Geometrix" claim construction, *then* Kono anticipates the 144 patent. In order to render that opinion, Dr. Goodman necessarily would have had to compare not just the 144 patent to Kono, but Geometrix to Kono as well. But he did no such comparison. His report barely even mentions Geometrix, and he admitted that at the time he submitted his invalidity opinion, his understanding of Geometrix was based entirely on a single conversation with a single Andrew employee, plus conversations with counsel (A32-A50; A69-A70 (102:2-104:4; 105:18-108:6)).

Dr. Goodman's opinion also fails to properly analyze the means-plus-function elements of claims 1, 2 and 22. Having failed to identify in his claim construction any structure in the specification that performs any function recited in the claims, Dr. Goodman certainly could not compare any such structure in the 144 patent specification to any structure in the prior art Kono reference, as is required by the case law. *See RCA Corp.*, 730 F.2d at 1444 ("'absent structure [in a prior

- 17 -

art reference] which is capable of performing the functional limitation of the

"means," [the prior art reference] does not meet the claim'") (quoting *In re Mott*,

557 F.2d 266, 269 (C.C.P.A. 1977)).

And he does not attempt to do so. Nor does he make any attempt to compare

any algorithm in the specification with any algorithm in Kono. His report does not

even mention any algorithm in the patent specification (A32-A50).[5] Dr.

Goodman's failure to follow the proper legal analysis renders his opinion

inadmissible. *See Club Car, Inc.*, 362 F.3d at 780 (excluding testimony based on

improper legal standard); *DSU Medical Corp.*, 296 F. Supp. 2d at 1148 ("Reliable

methodology requires that the legal grounds used by an expert . . . be legally

acceptable.").

On this point *Oxford Gene* is again instructive. The expert in *Oxford Gene*

"clearly did not undertake in the report the second step . . . because he did not

perform an element-by-element comparison of each claim to each prior art

reference." 345 F. Supp. 2d at 437. The Court held the expert's "blanket

conclusions of invalidity" "wholly and irretrievably inadequate" as to anticipation.

*Id*. at 436-37. Dr. Goodman's flawed analysis likewise renders his anticipation

opinion "wholly and irretrievably inadequate." His opinion is not based upon

---

[5]     Kono plainly discloses no algorithm. It contains no flow charts or source code, and the words "software" and "algorithm" are not mentioned (A75 (130:12-131:6)). At his deposition, Dr. Goodman confirmed that he had not properly addressed means-plus-function elements in his validity analysis. (A74 (128:6-129:15)).

"good grounds," *Izumi Products,* 315 F. Supp. 2d at 600 (quoting *In re Paoli RR Yard PCB Litigation,* 35 F.3d 717, 742 (3d Cir. 1994)), is unreliable, and should be excluded.

### C.    Dr. Goodman's Testimony Will Not Assist the Jury

Expert testimony must not only be reliable, but must also be relevant and helpful to assist the trier of fact in resolving an issue in the case. *See Daubert*, 509 U.S. at 591. For reasons already explained, Dr. Goodman's analysis does not employ the correct legal standards. It fails to set forth proper claim constructions and fails to perform the proper element by element invalidity comparison required to show anticipation. Thus, for the same reasons that it is unreliable, Dr. Goodman's proposed testimony does not "fit" the issues in the case. Permitting the jury to hear such an improper analysis can only confuse, rather than assist, the jury. *See Oxford Gene*, 345 F. Supp. 2d at 436 ("failure to disclose a clear construction of each disputed claim element makes his report less than helpful to the trier of fact"); *Citizens Financial Group, Inc.*, 2003 U.S. Dist. LEXIS 25977 at *45 ("The use and application of this improper [legal] standard would not only be unhelpful to the jury but may mislead the jury, and therefore, should be excluded."). Dr. Goodman's invalidity "analysis" should therefore be excluded for this reason as well.

## V.    CONCLUSION

Dr. Goodman's report fails to comply with the legal requirements necessary to prove anticipation.  Therefore, for the reasons set forth above, his proposed testimony regarding anticipation should be excluded.


Respectfully submitted,



DATED: May 17, 2007          By:    ___/s/ James D. Heisman_____
                                    CONNOLLY BOVE LODGE & HUTZ LLP
                                    James D. Heisman, Esq. (#2746)
                                    1007 N. Orange Street
                                    P.O. Box 2207
                                    Wilmington, DE 19899
                                    Telephone: (302) 658-9141
                                    Facsimile: (302) 658-5614

                                    WOODCOCK WASHBURN LLP
                                    Paul B. Milcetic, Esq. (pro hac vice)
                                    Dale M. Heist., Esq. (pro hac vice)
                                    Kathleen A. Milsark, Esq. (pro hac vice)
                                    Daniel J. Goettle, Esq. (pro hac vice)
                                    Amanda M. Kessel, Esq. (pro hac vice)
                                    Cira Centre, 12th Floor
                                    2929 Arch Street
                                    Philadelphia, PA 19104
                                    Telephone: (215) 568-3100
                                    Facsimile: (215) 568-3439

## <u>CERTIFICATE OF SERVICE</u>

I, James D. Heisman, hereby certify that on this 17th day of May 2007, I caused a true and correct copy of the foregoing **Memorandum in Support of TruePosition's Motion to Exclude the Invalidity Testimony of Dr. David Goodman Pursuant to Federal Rule of Evidence 702** to be served upon the following individuals via CM/ECF and in the manner indicated below:

*Via e-mail and hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail only*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail only*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com


_____*/s/ James D. Heisman*_____
James D. Heisman (# 2746)