# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TruePosition, Inc., ) | |
| ) | |
|     Plaintiff/ ) | |
|     Counterclaim-Defendant, ) | |
| ) | Civil Action No. 05-747-SLR |
| v. ) | |
| ) | |
| Andrew Corporation, ) | |
| ) | |
|     Defendant/ ) | |
|     Counterclaim-Plaintiff. ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF TRUEPOSITION'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DEWAYNE E. PERRY PURSUANT TO FEDERAL RULE OF EVIDENCE 702

CONNOLLY BOVE
LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist, Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Cira Centre, 12th Floor, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDINGS ..................................... 1

II. SUMMARY OF ARGUMENT ........................................................................ 2

III. STATEMENT OF FACTS ................................................................................ 2

    A. Background ........................................................................................... 2

    B. Facts Relating to This Motion ............................................................... 4

IV. ARGUMENT ..................................................................................................... 4

    A. Law for Admitting Expert Testimony ................................................... 4

    B. Dr. Perry's Testimony Is Unreliable ...................................................... 8

    C. Dr. Perry's Testimony Does Not Fit This Case .................................. 12

V. CONCLUSION ............................................................................................... 15

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*,
   970 F.2d 834 (Fed. Cir. 1992) .................................................................10

*Calhoun v. Yamaha Motor Corp.*,
   350 F.3d 316 (3d Cir. 2003) ......................................................................6

*Citizens Financial Group, Inc. v. The Citizens National Bank of
   Evans City*,
   2003 U.S. Dist. LEXIS 25977 (W.D. Pa. Apr. 23, 2003) ....................7, 14

*Club Car, Inc. v. Club Car (Quebec) Import, Inc.*,
   362 F.3d 775 (11th Cir. 2004) .............................................................7, 12

*DSU Medical Corp. v. JMS Co.*,
   296 F. Supp. 2d 1140 (N.D. Cal. 2003) ...............................................7, 12

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ..........................................................................1, 4, 5

*Elcock v. Kmart Corp.*,
   233 F.3d 734 (3d Cir. 2000) .................................................................5, 8

*Honeywell International Inc. v. Universal Avionics System Corp.*,
   347 F. Supp. 2d 124 (D. Del. 2004) ........................................................14

*Izumi Products Co. v. Koninklijke Philips Electronics N.V.*,
   315 F. Supp. 2d 589 (D. Del. 2004) ...........................................5, 6, 7, 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ..............................................................................5, 7

*In re Paoli Railroad Yard PCB Litigation*,
   25 F.3d 717 (3d Cir. 1994) ........................................................................6

*MLMC, Ltd. v. Airtouch Communications, Inc.*,
   2001 U.S. Dist. LEXIS 26078 (D. Del. Nov. 9, 2001) ..............................7

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).........................8

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................10

*Poly-America, L.P v. GSE Lining Technology, Inc.*,
   383 F.3d 1303, 1311 (Fed. Cir. 2004) ...................................................14

*Rite-Hite Corp. v. Kelley Co., Inc.,*
   56 F.3d 1538 (Fed. Cir. 1995)..........................................................13, 14

*SRI International v. Matsushita Electric Corp. of America*,
   775 F.2d 1107 (Fed. Cir. 1985) ..............................................................10

*United States v. Faines*,
   2007 U.S. App. LEXIS 3284 (3d Cir. 2007)............................................6

*Waldorf v. Shuta*,
   142 F.3d 601 (3d Cir. 1998) ....................................................................5

**FEDERAL STATUTES, REGULATIONS, AND RULES**

Federal Rule of Evidence Rule 702......................................................1, 4, 5

I.  **NATURE AND STAGE OF THE PROCEEDINGS**

This is a patent infringement action. TruePosition, Inc. ("TruePosition") asserts that Andrew Corporation ("Andrew") infringes certain claims of U.S. Patent 5,327,144 (the "144 patent") (A1-A31) by offering, using and supplying from the United States Andrew's "Geometrix Wireless Location System."

TruePosition filed this suit on October 25, 2005 (D.I. 1). The pleadings closed on July 5, 2006 (D.I. 53). A hearing on claim construction and summary judgment motions was held on April 10, 2007. The Pretrial Conference is scheduled for August 23, 2007, with trial to begin on September 4, 2007 (D.I. 23 at ¶¶ 10-11).

Of relevance to this motion, on December 22, 2006, Andrew served a "Rebuttal Expert Report of Dr. Dewayne E. Perry," supposedly to rebut a statement in TruePosition's damage expert report that TruePosition is practicing the 144 patent (A32-A61).

Pursuant to section 2(c)(3) of the Court's Scheduling Order (D.I. 23), TruePosition now moves to exclude Dr. Perry's proposed "expert" testimony because it fails to satisfy Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). That testimony is not only unreliable but also irrelevant to the parties' claims and defenses.

## II. SUMMARY OF ARGUMENT

The Court should preclude Dr. Perry's testimony both because it is unreliable and because it does not fit any issue in the case. Dr. Perry's testimony is unreliable because his analysis is contrary to well-established law. Although he concludes that TruePosition does not practice the 144 patent, Dr. Perry never construes the claims of the patent, has not seen either party's claim constructions, and does not compare TruePosition's product to any claim of the patent. Moreover, the analysis that Dr. Perry did perform – a comparison of TruePosition's product to a portion of one embodiment described in the *patent specification*, rather than in the *patent claims* -- has been specifically rejected by the Federal Circuit. Because the analysis that Dr. Perry purports to perform has no basis in law, his testimony is unreliable and should be precluded.

In addition, Dr. Perry's testimony does not fit any issue in the case. Whether TruePosition is practicing the 144 patent is irrelevant to any issue. Recovery of lost profits by a patentee is not limited to situations in which the patentee is selling a patented device. Thus, Dr. Perry's testimony does not fit any issue in the case and should be precluded on this additional basis.

## III. STATEMENT OF FACTS

### A. Background

In the early 1990's, TruePosition's founder and two other inventors

conceived and developed a system that allowed the position of a cell phone user to be located from the transmissions normally emitted by the user's cell phone. The 144 patent describes using a "Time Difference of Arrival" (TDOA) technique to calculate a cell phone's location (A23 (col. 14, ll. 15-21)). In a TDOA system, receivers are installed at a minimum of three "cell sites," such as the cellular towers within a cellular network (A19 (col. 5, ll. 5-7)). The receivers receive and process a signal that the cell phone transmits at each of the three cell sites and calculate the time that the signal arrived at the cell site (A24 (col. 15, ll. 32-35)). The receivers then send this time of arrival information to a central site computer which calculates the difference in time of arrival at pairs of the cell sites (A24 (col. 15, ll. 35-38)). The central site computer can then estimate the phone's location based on the differences in the signal's arrival time at the different cell sites (A24 (col. 15, ll. 51-53)).

Cellular telephone networks use two types of "channels" to communicate information, "control channels" and "voice channels" (A17 (col. 1, l. 68 – Col. 2, l. 8)). "Control channels" typically carry control information for establishing a voice communication link between the phone and the cell network. In contrast, "voice channels" transmit the voice signals that a user generates during a call. The invention of TruePosition's 144 patent uses TDOA to locate cell phones using the "control channel" signal transmissions that cell phones emit during normal

operation.

### B. Facts Relating to This Motion

On December 1, 2006, TruePosition served the report of its damage expert, Ms. Carla Mulhern (A88–A181). On December 22, 2006, in addition to a report by its damage expert, Wayne A. Hoeberlein, Andrew served its "Rebuttal Expert Report of Dr. Dewayne E. Perry" (A32-A61). Dr. Perry claims that his report was submitted "in response to the opinion expressed in Carla Mulhern's report that TruePosition is practicing the '144 patent" (A33 at ¶ 1). The report states that, based on his review of certain TruePosition computer source code, Dr. Perry concludes "that TruePosition's commercial products do not practice the algorithms claimed in the '144 patent" (*id.*).

This motion seeks to preclude Dr. Perry from testifying in accordance with his report because the proposed testimony is unreliable, irrelevant, and contrary to law, and thus should be excluded under F.R.E. 702 and *Daubert*.

## IV. ARGUMENT

### A. Law for Admitting Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides that:

> [i]f scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or
> to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion

>or otherwise. . . .

F.R.E. 702.

Rule 702 requires judges to ensure that expert testimony is relevant, reliable and will assist the trier of fact to understand the evidence or to determine a fact at issue. *See Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999); *Daubert,* 509 U.S. at 589-91; *Izumi Products Co. v. Koninklijke Philips Electronics N.V.*, 315 F. Supp. 2d 589, 600 (D. Del. 2004).

The Third Circuit has described Rule 702 as "embodying 'three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Izumi Products*, 315 F. Supp. 2d at 600 (quoting *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000)). The Court acts as the gatekeeper, charged with preventing testimony that does not meet these requirements from reaching the jury. *See id*. at 601 (citing *Daubert*, 509 U.S. at 597). The proponent of the purported expert testimony bears the burden of showing, by a preponderance of the evidence, that these requirements are satisfied. *See id*.

In order to be qualified, an expert witness must have "'specialized knowledge' regarding the area of testimony [and] 'at a minimum, … must possess skill or knowledge greater than the average layman.'" *Id*. at 600 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). An expert "'may be generally qualified but may lack qualifications to testify outside his area of expertise.'"

*United States v. Faines*, 2007 U.S. App. LEXIS 3284, *7 (3d Cir. 2007) (quoting *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003)) (affirming exclusion of expert testimony regarding an actual fingerprint comparison because the expert was qualified only with respect to fingerprint methodology and accuracy of fingerprint analysis).

In order to be reliable, an expert's opinion must be based upon "good grounds" rather than merely "subjective belief" or "unsupported speculation." *Izumi Products*, 315 F. Supp. 2d at 600 (internal citations omitted). The Third Circuit generally considers a number of factors in determining whether an expert's opinion is reliable. *Id.* at 600-01 (quoting *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)).[1] Among these factors are whether the expert's method is generally accepted and the relationship of the expert's technique to methods which have been established to be reliable. *Id.* The reliability factors are not exclusive, and each need not be applied. Instead, the Court has "'considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable.'" *Id.* at 601 (quoting

---

[1] The Third Circuit's reliability factors are: whether a method consists of a testable hypothesis; whether the method has been subjected to peer review; the known or potential rate of error; the existence and maintenance of standards controlling the technique's operation; whether the method is generally accepted; the relationship of the technique to methods which have been established to be reliable; the qualifications of the expert witness testifying based on the methodology; and the non-judicial uses to which the method has been put. *Izumi Products*, 315 F. Supp. 2d at 600-01 (citing *In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 742 n.8 (3d Cir. 1994)).

- 6 -

*Kumho Tire*, 526 U.S. at 152). "Reliable methodology requires that the legal grounds used by an expert . . . be legally acceptable." *DSU Medical Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1148 (N.D. Cal. 2003) (excluding testimony based on unprecedented legal theory); *see Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 362 F.3d 775, 780 (11th Cir. 2004) (excluding testimony based on incorrect legal standard).

Finally, in order for the testimony to fit the issues in the case, "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." *Izumi Products*, 315 F. Supp. 2d. at 601 (citing F.R.E. 702). "Expert testimony must be tied to the facts of the particular case; otherwise, such testimony 'cannot be said to assist the trier of fact.'" *MLMC, Ltd. v. Airtouch Communications, Inc.*, 2001 U.S. Dist. LEXIS 26078, *3 (D. Del. Nov. 9, 2001) (concluding that proffered expert opinion regarding a reasonable royalty was not supported by the facts of the case or by industry custom). Again, as with the reliability aspect of the inquiry, analysis that uses an improper legal standard does not assist (and may mislead) the jury, and must be excluded. *Citizens Financial Group, Inc. v. The Citizens National Bank of Evans City*, 2003 U.S. Dist. LEXIS 25977 at *41-46 (W.D. Pa. Apr. 23, 2003) (excluding testimony based on legally incorrect standards).

### B. Dr. Perry's Testimony Is Unreliable

To establish that Dr. Perry's testimony is admissible under F.R.E. 702, Andrew must demonstrate, by a preponderance of the evidence, that his analysis is reliable. *See Elcock*, 233 F.3d at 741. But Dr. Perry's testimony is plainly unreliable. His methodology ignores well-settled law and has been rejected by the Federal Circuit.

Dr. Perry was retained "to determine whether TruePosition's commercial products practice" the 144 patent (A33 at ¶ 1), and he concluded that they do not. Dr. Perry never explains what he means, however, by the phrase "practicing the '144 patent." He clearly did not use the analysis that would be used to determine infringement.

It is beyond dispute that an infringement analysis requires two steps: 1) determining the legally operative meaning of the claims, and 2) determining whether the properly construed claims encompass the accused structure or process, or, in this case, any TruePosition product. *See, e.g., Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). Dr. Perry entirely ignores this well-established framework.

With respect to the first step, claim construction, Dr. Perry does not construe a single claim of the 144 patent. His report does not even mention any claim of the 144 patent or either party's construction of any claim (A33-A35 at ¶¶ 3-5). Dr.

Perry similarly fails to perform the second step of an infringement analysis -- he makes no effort to determine whether any claim of the 144 patent reads on any TruePosition product (A33-A35 at ¶¶ 3-5). Indeed, he does not even pretend to compare any claim of the 144 patent – whether properly construed or not – to any TruePosition product (A76-A77 (57:18-24; 58:1-5)).

What he did do instead of performing an analysis that would resemble a proper infringement analysis was to compare TruePosition's computer code to *a portion of a single embodiment described in the specification* of the 144 patent (A33-A35 at ¶¶ 3-5 & A77 (58:6-9)). In forming his opinion that TruePosition does not "practice the 144 patent," Dr. Perry refers to certain figures of the 144 patent specification and then purports to compare these figures to TruePosition's computer code (A33-A35 at ¶¶ 3-5).[2]

Dr. Perry was candid about his failure to consider the patent's claims. He freely acknowledged that he did not perform an infringement analysis (A76 (57:18-24)). As he testified, while he "thinks" he may have read the 144 patent's claims, he "didn't pay attention to" them (A71 (35:4-11 & 37:10-12)) because "it was not [his] job to pay attention to the claims…." After all, he "was not tasked to pay attention to the claims" (A71 & A75 (35:9-11; 50:15-16)). And he has never even

---

[2]    The figures that Dr. Perry relies upon are those that both parties have identified in connection with the construction of the means-plus-function claims at issue. As the Court is aware from the claim construction proceedings, however, the parties dispute the extent to which

seen the parties' proposed claim constructions (A84 (89:2-7)).  Thus Dr. Perry has no idea what any claim of the 144 patent recites, let alone what the parties contend that any of those claims means.  And he admits that he did not make any determination whether any of the figures in the specification that he looked at were encompassed within any claim of the patent.

It is black-letter law that the patent claims define the invention.  *See*, *e.g.*, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).  It follows that the only relevant determination of whether TruePosition "practices the 144 patent" must use an analysis analogous to the analysis that would be used to determine infringement.  The Court of Appeals for the Federal Circuit "has repeatedly emphasized that infringement analysis compares the accused product with the patent claims, not [with] an embodiment of the claims." *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*, 970 F.2d 834, 846 (Fed. Cir. 1992).  Thus, "[i]nfringement…is determined by comparing an accused product not with a preferred embodiment described in the specification…but with the properly and previously construed claims in suit." *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (*en banc*).  Dr. Perry's conclusion that TruePosition does not perform certain algorithms found in the specification is meaningless without *some* knowledge of the patent claims.

---

the figures constitute the structure that performs the function recited in the claims.  Dr. Perry, however, was unaware of either party's construction.

Not only did Dr. Perry fail to follow the correct method for determining whether TruePosition practices the 144 patent, but he lacks any understanding at all of the relationship between a patent specification and a patent claim. For example, he explained that the "algorithms in the patent are there, obviously, because they're claimed. Otherwise, they wouldn't be in the patent…" (A74 (46:21-23)). Likewise, he assumed, in performing his analysis, that any algorithm in the 144 patent was also claimed in the 144 patent (A77 (59:10-13)). Further, he did not know whether there could be some algorithms in a patent that are not claimed (A74 (48:22-49:2)). His conclusion that TruePosition is not practicing the patent necessarily assumes that *every* claim requires performance of the algorithms he examined, but, since he had not read the claims, he could not know whether that was true. He certainly can not know, without reviewing the claims, whether TruePosition might be practicing some claims that do not implicate the algorithms he "analyzed."

Dr. Perry admittedly did not perform an infringement analysis. He does nothing to explain what it is he believes he *is* analyzing. His opinion that TruePosition is not practicing certain algorithms found in a particular embodiment of the specification says nothing about whether TruePosition is practicing any claim of the 144 patent. Dr. Perry's testimony should be precluded because it lacks any analytical basis, is contrary to established legal principles, and is

therefore not reliable. *See DSU Medical Corp.,* 296 F. Supp. 2d at 1140 ("Reliable methodology requires that the legal grounds used by an expert . . . be legally acceptable"); *Club Car, Inc.,* 362 F.3d at 780 (excluding testimony based on incorrect legal standard).

### C. Dr. Perry's Testimony Does Not Fit This Case

Dr. Perry's testimony should be excluded for a second, independent reason: Andrew cannot show that Dr. Perry's testimony fits any issue in this case. *See Izumi Products*, 315 F. Supp. 2d at 601 (expert testimony did not fit the issues in the case because the jury may have been confused by the expert's opinion). For Dr. Perry's testimony to fit an issue in this case, the testimony must be relevant for the purposes of the case and must assist the trier of fact. *See id*. But well-settled Federal Circuit jurisprudence requires the conclusion that Dr. Perry's testimony is not relevant to any issue in the case.

Dr. Perry asserts that his report was prepared "in response to the opinion expressed in Carla Mulhern's report that TruePosition is practicing the '144 patent" (A33 at ¶ 1). As an initial matter, Ms. Mulhern – TruePosition's damage expert – did not express an opinion that TruePosition is practicing the 144 patent. In two places in her lengthy report she simply mentioned that TruePosition's products practice the patent, assuming that fact based upon deposition testimony by TruePosition witnesses. The first such citation appears in the background

- 12 -

section, where Ms. Mulhern is simply describing the technology at issue (A100 at ¶ 24); the second comes in her analysis of factors indicating demand for the patented product (A119-A120 at ¶¶ 63-64).  Neither passage is central to the damage analysis.

Dr. Perry does not explain why his opinion is relevant to the case -- indeed, he has no opinion regarding whether his testimony is actually relevant (A68 (23:4-11)).   He is entirely unfamiliar with how patent damages are calculated (A67-A68 (20:24-21:4; 21:19-22:7)).  He does not even know whether TruePosition must practice the patent in order to be entitled to any damages (A68 (22:15-21)). Significantly, Andrew's damage expert, Mr. Hoeberlein, never read Dr. Perry's report and did not take it into consideration in his damage analysis (A183 (27:15-21)).  And Mr. Hoeberlein does not dispute Ms. Mulhern's conclusion that the demand aspect of the damage analysis – the only non-background area in her report that says anything about TruePosition practicing the patent – is satisfied (A184 (50:15-51:10)).

In any event, the law is clear that whether TruePosition is practicing the 144 patent is not relevant to the determination of damages.  In *Rite-Hite Corp. v. Kelley Co., Inc.,* 56 F.3d 1538, 1546-49 (Fed. Cir. 1995), the Federal Circuit squarely rejected the argument that lost profits must be based on lost sales of the patented product.  Instead, the damage inquiry focuses on whether, in the absence of

infringement by Andrew, TruePosition would have made the sales at issue, regardless of whether those sales are of a product that practices the patent. And the evidence is undisputed that there were only two bidders for the U-TDOA portion of the contracts at issue (A125-A126 at ¶¶ 76-78).[3]

Thus, even if Dr. Perry's testimony were reliable – and it is not -- it still would be irrelevant to any issue in this case. Even if Dr. Perry's testimony were to be credited, TruePosition would still be entitled to prove its lost profits, regardless of whether the underlying lost sales involve products that practice the 144 patent. *Rite-Hite*, 56 F.3d at 1546-49; *see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 347 F. Supp. 2d 124, 125 (D. Del. 2004) (denying defendant's motion *in limine* to exclude lost profits as a measure of damages and noting that "'[t]he recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device.'" (quoting *Poly-America, L.P v. GSE Lining Technology, Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004)).

Dr. Perry's proposed testimony is irrelevant. His analysis uses an improper legal standard that is likely to confuse and mislead the jury. It therefore does not "fit" any issue in the case, *see Citizens Financial Group,* 2003 U.S. Dist. LEXIS 25977 at *41-46, and should be precluded.

---

[3]    Ironically, Andrew's argument appears to contradict the standards-based arguments it has made elsewhere. If TruePosition is able to compete for the U-TDOA sales at issue without practicing the 144 patent, as Dr. Perry would appear to suggest, then the 144 patent cannot be "essential" within the meaning of the standards-making policy.

- 14 -

## V. CONCLUSION

Dr. Perry's proposed testimony adds nothing to the case. It is not based on reliable methodology and it is not relevant to any issue in the case. Accordingly, Dr. Perry's proposed testimony should be excluded.

Respectfully submitted,

DATED: May 17, 2007     By:     __/s/ James D. Heisman_____
CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist., Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 17th day of May 2007, I caused a true and correct copy of the foregoing **Memorandum in Support of Motion to Exclude the Testimony of Dr. Dewayne E. Perry Pursuant to Federal Rule of Evidence 702** to be served upon the following individuals via CM/ECF and in the manner indicated below:

*Via e-mail and hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail only*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail only*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

                        */s/ James D. Heisman*
                        James D. Heisman (# 2746)