IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUEPOSITION, INC., <br><br> Plaintiff and <br> Counterclaim-Defendant, <br><br> v. <br><br> ANDREW CORPORATION, <br><br> Defendant and <br> Counterclaim Plaintiff. | Civil Action No. 05-00747-SLR |

ANDREW CORPORATION'S OPENING BRIEF
IN SUPPORT OF ITS *DAUBERT* MOTION FOR A RULING
LIMITING THE TESTIMONY OF DR. ODED GOTTESMAN

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600

OF COUNSEL:  *Attorneys for Defendant Andrew Corporation*

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: May 17, 2007

**TABLE OF CONTENTS**

I. NATURE AND STAGE OF THE PROCEEDINGS ........................................................... 1

II. SUMMARY OF ARGUMENT. ........................................................................................ 1

III. STATEMENT OF FACTS. ............................................................................................... 2

IV. ARGUMENT. .................................................................................................................... 5

    A. APPLICABLE LEGAL STANDARD. ................................................................... 5

    B. DR. GOTTESMAN'S OPINION ON THE "MEANS FOR DETERMINING" AND "LOCATING MEANS" LIMITATIONS IS CONFUSING, UNRELIABLE, AND MISLEADING. .................................................................. 8

        1. Dr. Gottesman Admits The Two Equations Are Not Equivalent and That His Opinion Is Based On "Intuition." ....................... 9

        2. Dr. Gottesman's Opinions Are Based On a Non-Existent Infringement Theory. ......................................................................... 10

        3. Dr. Gottesman Also Impermissibly Bases His Opinion on the Inventors' Alleged State of Mind. ........................................................ 11

    C. THE INADEQUACIES OF DR. GOTTESMAN'S OPINION CANNOT BE ADEQUATELY ADDRESSED VIA CROSS-EXAMINATION. ........................ 12

V. CONCLUSION. ............................................................................................................... 14

**TABLE OF AUTHORITIES**

**Cases**

*Advanced Medical Optics, Inc. v. Alcon, Inc.*
    2005 WL 782809, C.A. No. 03-1095-KAJ (D. Del. Apr. 7, 2005) ........................ 6

*Allen v. International Business Machines Corp.*,
    1997 WL 34501372, C.A. No. 94-264-JJF (D. Del. Dec. 18, 1997) ................. 7, 8

*Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*,
    249 F.3d 1341 (Fed. Cir. 2001) ........................................................................ 6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .................................................................................5, 6, 7

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000) ............................................................................ 6

*Hebert v. Lisle Corp.*,
    99 F.3d 1109 (Fed. Cir. 1996) .....................................................................7, 11

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir. 1999) ............................................................................ 7

*In re Paoli R.R. Yard PCB Litigation*,
    35 F.3d 717 (3d Cir. 1994) .............................................................................. 8

*Izume Prods. Co. v. Koninklijke Philips Elec. N.V.*,
    315 F. Supp.2d 589 (D. Del. 2004) ............................................................... 6, 7

*Micro Chem., Inc. v. Lextron, Inc.*,
    317 F.3d 1387 (Fed. Cir. 2003) ........................................................................ 6

*N. Am. Philips Corp. v. Aetna Cas. & Sur. Co.*,
    1995 WL 628447, C.A. No. 88C-JA-155 (Del. Super. Ct. Apr. 22, 1995).......... 13

*Pharmastem Therapeutics, Inc. v. Viacell Inc.*
    2004 WL 2127192, C.A. No. 02-148-GMS (D. Del. Sept. 15, 2004) ................... 7

*Pioneer Hi-Bred Int'l., Inc. v. Ottawa Plant Food, Inc.*,
    219 F.R.D. 135 (N.D. Iowa 2003) ................................................................7, 11

*U.S. v. Mitchell*,
    365 F.3d 215 (3d Cir. 2004) .......................................................................12, 13

*United States v. Ford*,
    481 F.3d 215 (3d Cir. 2007) ........................................................................8, 13

**Rules**

Fed. R. Evid 702 ............................................................................................................ 6, 8

Fed. R. Evid. 403 ............................................................................................................. 8

I.      **NATURE AND STAGE OF THE PROCEEDINGS.**

TruePosition filed its Complaint on October 25, 2005, accusing Andrew of infringing the '144 patent. D.I. 1. Andrew filed its Answer, Affirmative Defenses and Counterclaims on December 15, 2005. D.I. 13. Andrew has counterclaimed for noninfringement and invalidity, and unfair competition, fraud and estoppel. Amended complaints and thus, amended answers and counterclaims, were filed. Fact discovery closed November 17, 2006. D.I. 94. Expert discovery closed January 24, 2007. Id. Summary judgment and Markman briefing commenced on February 2, 2007; a hearing on claim construction and summary judgment motions was held on April 10, 2007. Trial is set to begin September 4, 2007.

II.     **SUMMARY OF ARGUMENT.**

1.  Dr. Gottesman's opinion on the Claim 1 "means for determining" limitation and the Claim 22 "locating means" limitation is confusing, unreliable, and misleading -- and is thus inadmissible under *Daubert* -- for the following reasons:

    a.  he admits the equation required by the patent for both limitations is not equivalent to the equation used by Andrew, and that his opinion is based on intuition;

    b.  his opinion is based on a non-existent infringement theory; and

    c.  he impermissibly bases his opinion on the inventors' alleged state of mind.

2.  The inadequacies of Dr. Gottesman's opinion cannot be adequately addressed via cross-examination.

### III. STATEMENT OF FACTS.

Claim 1 of the '144 patent requires:

> means for determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals.

'144 Patent, Col. 20 ll. 31-34 (A26).[1]

Claim 22 of the '144 patent requires a similar limitation:

> locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions.

'144 Patent, Col. 23 ll. 63-66 (A28).

The patent requires that both the "means for determining location" and the "locating means" use a "least squares difference" / "weighted least squares" equation or equivalents thereof. *See* Andrew Op. Markman Br. (D.I. 149) at 33-36. This point is not disputed by TruePosition. *See* '144 Patent, col.18 ll.32 (A25) (discussing least-squares step) (included in both parties' constructions for "means for determining" and "locating means"); Figure 8D, Block 1 (least-squares step) (included in both parties' constructions for "means for determining" and "locating means") (A14); Andrew Resp. Markman Br. (D.I. 189) at 10-11; Ex. A, April 10, 2007 Hearing Tr. at 57:14-21; 59:24-60:5.

TruePosition's infringement expert in this case is Dr. Oded Gottesman. Dr. Gottesman admits that he cannot find these limitations literally in Andrew's accused products. *See* Ex. B, Gottesman Report at 37, 63. This is because Andrew's accused

---

[1] The "A" appendix cited herein refers to Andrew's Combined Appendix for its Opening Markman Brief, and its Opening Briefs in support of its Motions for Summary Judgment on the issues of Noninfringement and Indefiniteness.

products implement a "maximum likelihood estimate" equation, not a "weighted least squares" equation, as Dr. Gottesman conceded in his report. *See id.*

Incredibly, when asked at his deposition about the two equations at issue (*i.e.,* the equation used by Andrew and the equation required by the patent), Dr. Gottesman testified that they are *not* equivalent, and that they are only aimed to achieve the same thing under certain conditions:

> Q:   Could you also, please, Dr. Gottesman, demonstrate for me mathematically or otherwise how, in your opinion, maximum likelihood estimate is equivalent to least squares estimation.
>
> A:   *I did not say that it is equivalent;* I said that it is aimed to achieve under -- it -- on the general sense, it is not the same thing. *Under certain conditions, it is aimed to achieve the same thing*.

Ex. C, Gottesman January 12, 2007 Dep. at 325:22-326:5.[2]

After subsequently attempting to describe the alleged conditions under which the two equations can be "aimed to achieve the same thing," Dr. Gottesman then testified that such conditions could *not* be implemented in source code, and are certainly *not* present in Andrew's accused source code:

> Under certain condition, under certain conditions, they -- they -- minimizing least squares error, distortion, or measure is equivalent to maximizing a probability, maximizing the likelihood, under certain condition….Now, this is an academic and theoretical discussion that I explained to you why scientists view maximum likelihood as associated with minimizing the distortion measure. But that's only an academic discussion. *This is not something you can implement in a code, in a source code. It's not max -- there is no limitation, there is no such algorithm of*

---

[2]   Each reference herein to the Gottesman deposition can also be viewed on the DVD filed contemporaneously with Andrew's motion.

3

> *maximum likelihood that include all this equation in the source code.*

*Id*. at 338:6-339:7.

Dr. Gottesman repeatedly explained that the weighted least squares equation required by the patent was only "related" to Andrew's product, *e.g.*:

> But that's not what makes the product and the patent related. What makes it *related* is both minimize that weighted distortion measure.

*Id*. at 329:12-14.

***

> The patent is about minimizing that distortion and using algorithm to minimize it. And that's why it is, under certain assumption, *related* to maximum likelihood.

*Id*. at 340:12-15.

To support his opinion regarding the alleged "association or relation" at issue, Dr. Gottesman first opined about the inventors' state of mind:

> In the patent you have that distortion, and also in the product there is this distortion. *The inventors were aware of the association or the relation between minimizing such distortion and maximum likelihood*. And they said the observation is the most likely location -- you can see through the deposition many times, *that what I believe they meant, that it is closely related.*

*Id*. at 339:7-14.

He then opined that because the inventors used the phrase "most likely" in their depositions, the equation required by the patent is somehow "aimed or equivalent to maximum likelihood":

> And if you look at the inventor -- inventors -- and I believe I clearly remember Webber, but maybe also Curtis -- *they clearly use the term "most likely," that the location is the most likely location*. *So, in their mind, they understood that* minimizing that weighted distortion measure is, under certain condition that are typically taken, such as those I

4

> mentioned, *it is aimed or equivalent to maximum likelihood.* But, what they implemented is this.

> *Id.* at 328:18-329:3.

Dr. Gottesman also conceded that "maximum likelihood" is not found in Andrew's accused products, and admitted that he added it to his report as an "intuition:"

> The only place in this context that maximum likelihood is mentioned is in one of Andrew's document, that this is how they chose to characterize their product. *And I only added that to my report as an intuition. It is not why the product is related to the patent.* I only added that as a comment to supplement, to give the reader additional intuition.

> *Id*. at 339:23-340:5.

He then immediately expressed disdain about making incorrect assumptions in his infringement analysis:

> *So if you tried to show that, because I used that, there could be, under different assumption, some situation where it is not exactly this, so what?* So somebody made this assumption, and this what he had in mind.

> *Id*. at 340:6-10.

***

Yet despite all of this, TruePosition still plans to have Dr. Gottesman testify that Andrew's maximum likelihood estimate method is equivalent to the patent's required weighted least squares equation, and thus, Andrew's accused products meet the "means for determining" and "locating means" limitations. Dr. Gottesman has no reliable basis to present this opinion, and should be precluded from doing so under *Daubert*.

## IV.   ARGUMENT.

### A.   APPLICABLE LEGAL STANDARD.

The Supreme Court "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993). The trial judge must perform a gatekeeping function for "all cases of proffered expert testimony" and decide if "it is properly grounded, well-reasoned, and not speculative before it can be admitted." FRE 702 Advisory Committee Notes, 2000 Amendments. The Third Circuit[3] reads Rule 702 to have "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). This requirement is not relaxed for infringement experts; it is the court's obligation "to assure that evidence [is] reliable and relevant to the issue of infringement." *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001).

**Qualification Restriction.** The qualification restriction requires that an expert have "specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field." *Advanced Medical Optics, Inc. v. Alcon, Inc.* 2005 WL 782809, C.A. No. 03-1095-KAJ, at *2 (D. Del. Apr. 7, 2005). An expert can be precluded from testifying "outside his area of expertise." *Id.* at *9 (limiting scope of testimony).

**Reliability Restriction.** Expert testimony also must be supported by "appropriate validation - i.e., 'good grounds,' based on what is known." *Izume Prods. Co. v. Koninklijke Philips Elec. N.V.,* 315 F. Supp.2d 589, 600 (D. Del. 2004) (excluding expert testimony), *quoting Daubert*, 509 U.S. at 589. Indeed, even when an expert is otherwise credentialed, a plaintiff cannot "couch its presentation of [] evidence in the form of an

---

[3] *See Micro Chem., Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1391 (Fed. Cir. 2003) ("the law of the regional circuit" applies when deciding "whether to admit expert testimony" in patent cases).

6

expert opinion" unless the opinion is based upon methods or procedures of science in general -- including analyzing allegedly infringing products. *Pharmastem Therapeutics, Inc. v. Viacell Inc.* 2004 WL 2127192, C.A. No. 02-148-GMS, at *10-11 (D. Del. Sept. 15, 2004) (ordering new trial; excluding infringement expert testimony where expert used "a legally improper methodology that was unreliable as a matter of law under *Daubert*").

And "incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Hebert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996). The Federal Circuit has specifically "encourage[d] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science but markedly incorrect law." *Id.* (internal citation to *Daubert* omitted). *See also Pioneer Hi-Bred Int'l., Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 140 (N.D. Iowa 2003) (finding expert's reasoning "either is invalid or cannot properly be applied to the facts in issue" because his "opinion is based on an erroneous legal premise").

Furthermore, the court must "examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used." *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 153 (3d Cir. 1999) (affirming decision to exclude testimony regarding cause of illness).

**Fit Restriction.** Finally, the 'fit requirement' ensures that expert testimony is relevant. "[E]xpert testimony must fit the issues in the case…be relevant for the purposes of the case and assist the trier of fact." *Izume Prods.*, 315 F. Supp.2d at 601 (excluding expert testimony because the jury "potentially may be confused" by the proffered testimony's lack of fit), *quoting Daubert*, 509 U.S. at 589. Whether testimony fits the inquiry at hand "requires more than bare relevance -- a *prima facie* showing that the

7

technique is reliable is insufficient." *Allen v. Int'l. Bus. Mach. Corp*., 1997 WL 34501372, C.A. No. 94-264-JJF, at *6 (D. Del. Dec. 18, 1997) (excluding testimony based on fit requirement), *quoting In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 743 (3d Cir. 1994).

Indeed, "scientific expert testimony carries special dangers to the fact-finding process because it can be both powerful and quite misleading because of the difficulty in evaluating it;" judges should exclude evidence unless "convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *United States v. Ford*, 481 F.3d 215, 220 (3d Cir. 2007) (citation omitted). And even if "evidence meets the parameters of Fed. R. Evid. 702, it still must satisfy Fed. R. Evid. 403, which mandates that a district court consider whether the admission of proffered testimony might confuse or overwhelm the jury." *Allen*, 1997 WL 34501372 at *6.

### B.   DR. GOTTESMAN'S OPINION ON THE "MEANS FOR DETERMINING" AND "LOCATING MEANS" LIMITATIONS IS CONFUSING, UNRELIABLE, AND MISLEADING.

As discussed above, to be admissible, expert testimony must be reliable and helpful to the trier of fact. Here, Dr. Gottesman plans to tell the jury that the "means for determining" and "locating means" limitations are met by Andrew's accused products equivalently -- despite the fact that Andrew's products use an equation that Dr. Gottesman admits is ***not equivalent*** to the required equation, but is only perhaps "aimed to achieve the same thing," whatever that means. Dr. Gottesman has no reliable or relevant basis to present this opinion, and he should be precluded from doing so under *Daubert*.

### 1. Dr. Gottesman Admits The Two Equations Are Not Equivalent and That His Opinion Is Based On "Intuition."

Dr. Gottesman's equivalence opinion on the "means for determining" and "locating means" limitations is fundamentally unreliable, irrelevant and confusing because he admits that the two equations at issue are *not* equivalent:

> Q:   Could you also, please, Dr. Gottesman, demonstrate for me mathematically or otherwise how, in your opinion, maximum likelihood estimate is equivalent to least squares estimation.
>
> A:   ***I did not say that it is equivalent;*** I said that it is aimed to achieve under -- it -- on the general sense, it is not the same thing. ***Under certain conditions, it is aimed to achieve the same thing***.

Ex. C, Gottesman January 12, 2007 Dep. at 325:22-326:5.

Thus, because his opinion of record is that the two equations are *not* equivalent, testimony that Andrew infringes because they *are* equivalent would be unreliable, misleading and confusing. This is underscored by the fact that Dr. Gottesman admitted that the alleged conditions under which the equations could be equivalent are not -- and cannot be -- implemented in Andrew's source code:

> Under certain condition, under certain conditions, they -- they -- minimizing least squares error, distortion, or measure is equivalent to maximizing a probability, maximizing the likelihood, under certain condition….Now, this is an academic and theoretical discussion that I explained to you why scientists view maximum likelihood as associated with minimizing the distortion measure. But that's only an academic discussion. ***This is not something you can implement in a code, in a source code. It's not max -- there is no limitation, there is no such algorithm of maximum likelihood that include all this equation in the source code.***

*Id*. at 338:6-339:7.

9

Further confirming that his opinion has no basis being presented to a jury, Dr. Gottesman testified at his deposition that he only included information in his report on maximum likelihood estimation as an "intuition:"

> The only place in this context that maximum likelihood is mentioned is in one of Andrew's document, that this is how they chose to characterize their product. ***And I only added that to my report as an intuition.*** It is not why the product is related to the patent. I only added that as a comment to supplement, to give the reader additional intuition.

*Id*. at 339:23-340:5.

In addition, Dr. Gottesman dismissed the importance of making faulty assumptions in his infringement analysis:

> So if you tried to show that, because I used that, there could be, under different assumption, some situation where it is not exactly this, so what? So somebody made this assumption, and this what he had in mind.

*Id*. at 340:6-10.

***

Thus, because Dr. Gottesman's opinion of record is that: (a) the two equations are *not* equivalent; (b) the conditions that make the two equations allegedly "aimed to achieve the same thing" cannot be implemented in source code (and are not implemented in Andrew's source code); and (c) he added maximum likelihood to his report as an intuition, Dr. Gottesman's opinion is unreliable, confusing and misleading.

### 2. Dr. Gottesman's Opinions Are Based On a Non-Existent Infringement Theory.

As discussed above, Dr. Gottesman does *not* opine the two equations at issue are equivalent. Rather, he says weighted least squares is "aimed to achieve the same thing" as maximum likelihood estimation. And in his deposition, Dr. Gottesman repeatedly stated that the patent and product are only "related" and/or "associated":

10

> But that's not what makes the product and the patent *related*. What makes it *related* is both minimize that weighted distortion measure.
>
> *Id*. at 329:12-14.
>
> ∗∗∗
>
> The patent is about minimizing that distortion and using algorithm to minimize it. And that's why it is, under certain assumption, *related* to maximum likelihood.
>
> *Id.* at 340:12-15; s*ee also id*. at 339:7-14; *id.* at 328:18-329:3.

∗∗∗

But equivalence is not established if two processes are merely "aimed to achieve the same thing." Nor is equivalence shown if two processes are "related." If Dr. Gottesman is allowed to tell the jury that Andrew infringes because it uses a method allegedly "aimed at achieving the same thing" as -- or "related" to -- the required equation, Dr. Gottesman will be tacitly and impermissibly instructing the jury on incorrect law. *See Hebert*, 99 F.3d at 1117 ("incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories"; "encourag[ing] exercise of the trial court's gatekeeper authority when parties proffer, through purported experts, not only unproven science, but markedly incorrect law."); *see also Pioneer Hi-Bred Int'l., Inc.*, 219 F.R.D. at 140 (finding expert's reasoning "either is invalid or cannot properly be applied to the facts in issue" because his "opinion is based on an erroneous legal premise").

### 3. Dr. Gottesman Also Impermissibly Bases His Opinion on the Inventors' Alleged State of Mind.

Dr. Gottesman also bases his opinion on speculation regarding the inventors' state of mind:

11

> In the patent you have that distortion, and also in the product there is this distortion. ***The inventors were aware of the association or the relation between minimizing such distortion and maximum likelihood***. And they said the observation is the most likely location -- you can see through the deposition many times, ***that what I believe they meant, that it is closely related.***

Ex. C, Gottesman January 12, 2007 Dep. at 339:7-14.

He goes so far as to opine he knows the inventors' state of mind because the inventors used the phrase "most likely" in their depositions:

> And if you look at the inventor -- inventors -- and I believe I clearly remember Webber, but maybe also Curtis -- ***they clearly use the term "most likely," that the location is the most likely location***. ***So, in their mind,*** they understood that minimizing that weighted distortion measure is, under certain condition that are typically taken, such as those I mentioned, ***it is aimed or equivalent to maximum likelihood.*** But, what they implemented is this.

*Id*. at 328:18-329:3.

∗∗∗

An opinion based on speculation as to the inventors' alleged state of mind is wholly unreliable and inadmissible. Dr. Gottesman's opinion should be excluded on this basis alone.

    **C.**     **THE INADEQUACIES OF DR. GOTTESMAN'S OPINION CANNOT BE ADEQUATELY ADDRESSED VIA CROSS-EXAMINATION.**

The Third Circuit has explained that the *Daubert* factors are meant to ensure that meaningful and effective cross-examination can take place. *See U.S. v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) ("Indeed, as our discussion of the various Daubert factors suggests, many of them are guarantees that cross-examination and adversary testing will be possible."). And the Third Circuit has also stated that "***[a]s long as an expert's scientific testimony rests upon 'good grounds***, based on what is known,' it should be

tested by the adversary process -- competing expert testimony and active cross-examination. *Id.* (citations omitted) (emphasis added).

Here, Dr. Gottesman's opinion regarding the "means for determining" and "locating means" limitations does not "rest upon good grounds," and the flaws cannot be cured by cross-examination. It would be impossible -- and fundamentally unfair and materially prejudicial to Andrew -- to require Andrew, in response to Dr. Gottesman's opinion, to elicit counter-testimony explaining that "aimed to achieve the same thing under certain conditions" is not the legal test for equivalence or that whether the patent and the product are "related" is entirely irrelevant. *See N. Am. Philips Corp. v. Aetna Cas. & Sur. Co.*, 1995 WL 628447, C.A. No. 88C-JA-155, at *3 (Del. Super. Ct. Apr. 22, 1995) (allowing testimony on legal duties or standards "is not repaired by cross-examination"); FRE 702 Advisory Committee Notes, 2000 Amendments (differentiating between the situation where an expert's "theory can be challenged in some objective sense" and "where it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability"). Furthermore, because Dr. Gottesman's testimony may be given undue weight due to the fact that he is proffered as an expert, there is a heightened risk to Andrew of unfair prejudice caused by his unreliable, misleading, and confusing opinion on the "means for determining" and "locating means" limitations. *See e.g., United States v. Ford*, 481 F.3d 215, 220 (3d Cir. 2007) ("scientific expert testimony carries special dangers to the fact-finding process because 'it can be both powerful and quite misleading because of the difficulty in evaluating it'") (citation omitted).

13

V.   **CONCLUSION.**

For all of these reasons, Andrew respectfully requests that the Court exclude Dr. Gottesman's opinion that Andrew's accused products meet the "means for determining" limitation of Claim 1 or the "locating means" limitation of Claim 22.

        Respectfully submitted,

        YOUNG CONAWAY STARGATT & TAYLOR, LLP


        /s/ *Andrew A. Lundgren*
        Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
        Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
        The Brandywine Building
        1000 West Street, 17th Floor
        Wilmington, Delaware 19899-0391
        302-571-6600
        *Attorneys for Defendant/Counterclaim Plaintiff*
        *Andrew Corporation*

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: May 17, 2007

# CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on May 17, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on May 17, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL ON MAY 17, 2007 AND FEDERAL EXPRESS ON MAY 18, 2007**

Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
David L. Marcus, Esq. [dmarcus@woodcock.com]
Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
Woodcock Washburn LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant Andrew Corporation*