# EXHIBIT A

1

1        IN THE UNITED STATES DISTRICT COURT

2        IN AND FOR THE DISTRICT OF DELAWARE

3                    - - -

4   TRUEPOSITION, INC.,              :        CIVIL ACTION
                                     :
5              Plaintiff            :
                                     :
6          vs.                      :
                                     :
7   ANDREW CORPORATION,             :
                                     :
8          Defendant               :        NO. 05-747 (SLR)

9                    - - -

10                        Wilmington, Delaware
                          Tuesday, April 10, 2007
11                        8:30 o'clock, a.m.

12                   - - -

13  BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

14                   - - -

15  APPEARANCES:

16          CONNOLLY, BOVE, LODGE & HUTZ LLP
            BY:  JAMES D. HEISMAN, ESQ.
17
                      -and-
18
            WOODCOCK WASHBURN LLP
19          BY:  PAUL B. MILCETIC, ESQ.,
                 KATHLEEN MILSARK, ESQ. and
20               DANIEL J. GOETTLE, ESQ.
                 (Philadelphia, Pennsylvania)
21

22                 Counsel for Plaintiff

23                        Valerie J. Gunning,
                          Official Court Reporter
24

25

1    In Slide 86, you see it.  This is the first two blocks

2    after the first four I showed you earlier.  We're already

3    calculated T-DOA data, that it's calculated and you

4    calculate it lat/lon for each signal.

5              And then the rest of our construction, the same

6    principles.

7              If you go to the patent, you will see portions

8    of Figure 8C and 8D disclose more of those blocks in more

9    detail.  Why did we delete frequency arrival?  Because it

10   related frequency velocity, not location.  The velocity

11   in this case is cell phone location.  Why do we include

12   equivalents?  Because that's from the statute.

13             THE COURT:  All right.

14             MR. MILCETIC:  I could go through their

15   structure and why it's not correct.

16             THE COURT:  Well, their structure is several

17   columns of material; right?

18             MR. MILCETIC:  It's -- I would say that you

19   could follow what I just said and apply it and you would

20   get the idea of what our position is.

21             THE COURT:  All right.  Mr. Parks, why don't

22   you respond.

23             MR. PARKS:  Your Honor, I was just trying to

24   simplify this.

25             What's important for the means for processing

1  limitation is that it specify that it requires cross-
2  correlation function and I believe from the charts that
3  TruePosition has just shown that they would agree that the
4  means for processing requires cross-correlation function.
5  That is what is key about that limitation and it's the
6  easy way to simplify the construction for it.

7            And, yes, the plus equivalents.

8            In terms of the means for determining, what
9  is important here, again, what is key to the construction
10 is that the construction specify that the means for
11 determining require a least squares estimate equation and
12 that is set forth in Column 16 of the patent, under the
13 title location calculation.

14           And in the middle of that page, it sets forth
15 the equation for the least squares estimate.  And, again,
16 that's what is key for the means for determining
17 limitation that the construction specified that it
18 requires the least squares estimate equation as specified
19 in the '144 patent itself.

20           I'm, frankly, not sure this requires any more
21 detail than that.

22           MR. MILCETIC:  Your Honor, if I might just
23 respond to that briefly, I think there's no dispute about
24 what he's saying.  I just went through an analysis of how
25 you construe means for processing.  If you don't mind, I

 1  will go up here.

 2           There's a block that says cross-correlate data.

 3  If what he's saying is, please cross-correlate data, that's

 4  what it says:  Cross-correlate data.

 5           THE COURT:  All right.  Any other claim

 6  limitations that we should discuss before we take a short

 7  break and go into the motion?

 8           MR. PARKS:  Your Honor, if we could briefly

 9  go over the limitations that speak of the time stamp

10  bits...

11           THE COURT:  All right.

12           MR. MILCETIC:  All right.  Now, there is

13  one means-plus-function claim that we didn't specifically

14  address, which is in Claim 22.

15           We can do that first?

16           THE COURT:  That's fine.

17           MR. MILCETIC:  It might be worth it, just to go

18  through it.

19           It's this automatically determining the

20  locations of said cellular telephones.  It's in Claim 22,

21  the middle element.  Essentially, three elements in Claim

22  22.

23           Automatically determining the locations of

24  said cellular telephones by receiving and processing

25  signals emitted during said periodic reverse control

1    channel transmissions.

2            Now, that one, essentially our function --

3    first of all, this is one where we differ on the function.

4    If you look at Andrew's function here, I'm not sure where

5    it's coming from.  None of this is up for construction

6    and essentially, there's a basic principle that says you

7    follow the recited function when you identify a function

8    and they didn't do that.

9            So that's the first thing I think you should

10   do.

11           And there is a case on Slide 892.  112,

12   Paragraph 6.  It does not permit the limitation of a

13   means-plus-function claim by adopting a function different

14   from that explicitly recited in the claim.

15           If they wanted to construe those terms, they

16   could have designated terms to construe for you.  They

17   want to change that language.

18           Next, the structure.  We are pointing to the

19   first six blocks in Figure 7 this time because if you

20   look at the structure of Claim 22, Claim 21 has two parts,

21   two pieces of software recited:  A means for generating

22   T-DOA and then a means for determining the location based

23   on T-DOA.

24           Well, this claim, 22, has both of those

25   wrapped up into one.  It's just got one piece of software

1    that says locating means for determining.  And so we

2    thought it was logical to essentially point to a

3    combination of the two structures that we pointed to for

4    Claim 1 and that we went into the first four blocks of

5    Figure 7 plus two blocks of Figure 7.

6            And then the other principles, again, that I

7    had mentioned earlier.

8            So if you look at Figure 7 on Slide 94, now we

9    have the first six blocks of Figure 7.  Those six blocks

10   end in a -- a block that says calculate the lat/lon for

11   each signal.  That's the lat/lon for the telephone.

12   That's what the patent is all about, determining location

13   of the cell phone and the recited function is locating

14   means for automatically determining locations of the

15   cellular telephone.

16           So that's it.  That's what does that.

17           And we disagree with Andrew's construction for

18   exact same reasons.  In other words, since -- you think of

19   it this way.  Since the means-plus-function for Claim 1,

20   there are two parts, and since for Claim 22, I am

21   addressing now, it's those two combined, the arguments we

22   make are similar.  We then say that Figure 8, which is in

23   greater detail, which disclose that greater, should also

24   be incorporated if you want to be legally correct.

25           And we disagree with including frequency

1   difference of arrival, all that stuff.  Just the same

2   principles again.  And it's in our brief.

3               THE COURT:  Do you want to go on to the time

4   difference?

5               MR. MILCETIC:  Sure.  Time difference.

6               Well, I will tell your Honor in terms of

7   simplifying it, I will tell you how I would simplify this.

8   There are six terms that, as far as I can tell, well, for

9   five of the six at least, Andrew has provided no evidence

10  whatsoever that -- in other words, they provide a

11  different set of words that you should incorporate into

12  the claim and they provide essentially no evidence

13  whatsoever for why it also that you should do that.

14              And there's a line of cases that I think that

15  deal with these six terms, one of which he just raised.

16  And they've been decided since Phillips, actually.

17  They're recent.  And that is the Wilson Sporting Goods,

18  for example, a recent case.  And what the Federal Circuit

19  said, that where nothing -- this is, I think, the

20  controlling principle.  This is going to simplify this for

21  you when you look at the briefs.

22              Where nothing in the specification, for like

23  five terms that we just listed -- where nothing in the

24  spec indicates that the inventor intended to impart a novel

25  meaning and the record contains no evidence that the term

# EXHIBIT B

Oded Gottesman Report:

**0**.  EXPERT REPORT OF ODED GOTTESMAN, Ph.D.

# EXPERT REPORT OF ODED GOTTESMAN, Ph.D.

My name is Oded Gottesman, and I was asked to write this report by TruePosition, Inc. ("TruePosition"). I was specifically asked to consider whether Andrew Corporation ("Andrew") has infringed U.S. Patent 5,327,144 (the '144 Patent). I understand that TruePosition has sued Andrew for infringement of U.S. Patent 5,327,144 (the '144 Patent). I have been retained by TruePosition because of my expertise in the areas of telecommunications, computer programming, signal processing, speech coding, and transmission over networks, including radio communications in cellular networks.

This report considers the '144 Patent, and my opinion that Andrew infringes the 144 Patent because the 144 Patent claims encompass configurations of Andrew's Mobile Location System product known as the "Geometrix® Wireless Location System."

# I.  Summary of My Opinions

Based upon my 19 years of experience in the signal processing and telecommunications industry, I believe that Andrew has infringed Claims 1, 2, 22 , 31, and 32 (the "Asserted Claims") of the '144 Patent by using and offering to sell certain configurations of its Geometrix® Wireless Location System, and by supplying from the United States the components of the Geometrix® Wireless Location System.

More specifically, in December 2004, Andrew infringed Claims 1 and 2 of the 144 Patent by offering for sale within the United States a configuration of the Geometrix® Wireless Location System to Saudi Telecom Company ("STC"), a cellular telephone network operator in Saudi Arabia.

In about August/September 2005, Andrew also infringed Claim 31 of the 144 Patent by using within the United States a configuration of the Geometrix® Wireless Location System at a demonstration at its Ashburn, Virginia, facility.

Between October, 2005 and February, 2006, Andrew again infringed Claims 1 and 2 of the 144 Patent by offering for sale configurations of the Geometrix® Wireless Location System to STC.

After October, 2005, Andrew also repeatedly infringed Claims 1, 2, 22, 31 and 32 of the 144 Patent by supplying from the United States to Saudi Arabia components of a system comprising a combination of Andrew's Geometrix® Wireless Location System and STC's cellular telephone system, and by supplying components of a method performed during the operation of that combination system.

After October, 2005, Andrew also repeatedly infringed Claims 1, 2, 22, 31 and 32 of the 144 Patent by supplying from the United States to Saudi Arabia components of a system comprising a combination of Andrew's Geometrix® Wireless Location System, STC's cellular telephone system and a Location Based Services database owned or operated by STC, and by supplying components of a method performed during operation of that combination system.

Oded Gottesman Report

**III**. The Bases and Reasons for My Infringement Opinions

that determines, on the basis of the differences in times of arrival, the locations of the cellular telephone responsible for the standalone dedicated control channel signals.[91]

The algorithm in the patent that performs this function is described connection with portions Figures 7, and portions 8C-8D which are nicely summarized in the fifth and sixth blocks of Figure 7. The same or equivalent functionality in the GCS has already been described in this report. Specifically, after the TDOA table data is filtered, the FixMix function uses that data to determine the location of the cellular phones. *FixMix()* performs an iterative computational process which is the same or equivalent to weighted-least-squares (WLS) iteration in the '144 Patent.[92] Such a technique (Weighted Least Squares) is aimed at achieving the Maximum Likelihood (ML) estimate which maximizes the probability that a particular estimate is the correct position.[93] As is well known, large numbers of Weighted Least Squares measurements used in the iterative computational process increases the accuracy of the position estimation and both FixMix() and the Weighted least squares technique use this iterative computation technique. Therefore, the programmed computer processor in the GCS is the same or equivalent structure as this claim element. For same reason it performs the identical function.

In conclusion, it is my opinion that all the elements of claim 1 are literally included in the Geometrix system offered to STC.

## E.2.2    CLAIM 2 OF THE '144 PATENT

### E.2.2.1    *Claim 2 Recitation*

A cellular telephone location system as recited in claim 1, wherein said timing signal receiver comprises a global positioning system (GPS) receiver.

---

[91] See AND0021416 – AND0021426, "FixMix()"; PX-218, at 13 of 55 noting that the GCS "calculates location estimates based on measurements made by LMU's"; AND_EF134186, noting that "by calculating the difference in arrival time at pairs of cell sites, it is possible to calculate hyperbolas on which the transmitting device is located"; 10/14/06 Deposition Transcript of Alan Li [37] at p. 70, l. 13 – p. 73, l. 15.

[92] *See* Ilan Ziskind and Mati Wax, "Maximum likelihood localization of multiple sources by alternating projection," IEEE Trans. ASSP, Vol. 36, No. 10, pp.1553 – 1560, October 1988; Mati Wax and Ilan Ziskind, "On unique localization of multiple sources by passive sensor arrays," IEEE Trans. ASSP, Vol. 37 No. 7, pp. 996-1000, July 1989; Bin Yang, "Projection approximation subspace tracking," IEEE Trans SP, Vol. 43 No. 1, pp. 95-107, January 1995; Michaela C. Vanderveen, et. al., "Joint Angle and Delay Estimation (JADE) for Multipath Signals Arriving at an Antenna Array," IEEE COMMUNICATIONS LETTERS, VOL. 1, NO. 1, pp.12 - 14, JANUARY 1997; Nilesh Agarwal Leena Chandran-Wadia Varsha Apte, "CAPACITY ANALYSIS OF THE GSM SHORT MESSAGE SERVICE," Indian Institute of Technology Bombay, www.cse.iitb.ac.in/~varsha/allpapers/wireless/ncc03cam.pdf , 2003; John D. Bard and Fredric M. Ham,"Time Difference of Arrival Dilution of Precision and Applications," IEEE TRANSACTIONS ON SIGNAL PROCESSING, VOL. 47, NO. 2, p.521-3, FEBRUARY 1999; K. C. Ho, and Wenwei Xu, "An Accurate Algebraic Solution for Moving Source Location Using TDOA and FDOA Measurements", IEEE TRANSACTIONS ON SIGNAL PROCESSING, VOL. 52, NO. 9, SEPTEMBER 2004.

[93] *See* AND_EF134186 .

Oded Gottesman Report

**III**. The Bases and Reasons for My Infringement Opinions

The third clause of Claim 22 is: **"(b) locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions; and"**

This element is satisfied by the computer processor in the GCS, and the algorithms running on the computer processor, including the code in the PreFixMix and FixMix function, that determines the locations of the cellular phones by receiving and processing the DF_RESULTS_MSG frames received from the installed LMU's/WLS's.[160]

The algorithm in the patent that performs this function is described connection with portions of Figures 7, and portions 8A-8D which are nicely summarized in the portion of Figure 7 through latitude/longitude calculation. The same or equivalent functionality in the GCS has already been described in this report. Specifically, The GCS receives DF_RESULTS_MSG with TOA data (recv.c), unpacks the frames, compares frames with other frames to determine whether signals belong to the same cell phone, and generates a TDOA table in the *PreFixMix* function. After the TDOA table data is filtered, the FixMix function uses that data to determine the location of the cellular phones. *FixMix()* performs an iterative computational process which is the same or equivalent to weighted-least-squares (WLS) iteration in the '144 Patent.[161] Such a technique (Weighted Least Squares) is aimed at achieving the Maximum Likelihood (ML) estimate which maximizes the probability that a particular estimate is the correct position.[162] As is well known, large numbers of Weighted Least Squares measurements used in the iterative computational process increases the accuracy of the position estimation and both FixMix() and the Weighted least squares technique use this iterative computation technique. Therefore, the programmed computer processor in the GCS is the same or equivalent structure as this claim element. For same reason it performs the identical function.

---

[160] See, e.g., AND0019024 – AND0019038, AND0020896 – AND0021962, AND0022177 – AND0023010; PX-63 at 13 of 55 noting that the GCS "calculates location estimates based on measurements made by LMU's."

[161] *See* Ilan Ziskind and Mati Wax, "Maximum likelihood localization of multiple sources by alternating projection," IEEE Trans. ASSP, Vol. 36, No. 10, pp.1553 – 1560, October 1988; Mati Wax and Ilan Ziskind, "On unique localization of multiple sources by passive sensor arrays," IEEE Trans. ASSP, Vol. 37 No. 7, pp. 996-1000, July 1989; Bin Yang, "Projection approximation subspace tracking," IEEE Trans SP, Vol. 43 No. 1, pp. 95-107, January 1995; Michaela C. Vanderveen, et. al., "Joint Angle and Delay Estimation (JADE) for Multipath Signals Arriving at an Antenna Array," IEEE COMMUNICATIONS LETTERS, VOL. 1, NO. 1, pp.12 - 14, JANUARY 1997; Nilesh Agarwal Leena Chandran-Wadia Varsha Apte, "CAPACITY ANALYSIS OF THE GSM SHORT MESSAGE SERVICE," Indian Institute of Technology Bombay, www.cse.iitb.ac.in/~varsha/allpapers/wireless/ncc03cam.pdf , 2003; John D. Bard and Fredric M. Ham, "Time Difference of Arrival Dilution of Precision and Applications," IEEE TRANSACTIONS ON SIGNAL PROCESSING, VOL. 47, NO. 2, p.521-3, FEBRUARY 1999; K. C. Ho, and Wenwei Xu, "An Accurate Algebraic Solution for Moving Source Location Using TDOA and FDOA Measurements", IEEE TRANSACTIONS ON SIGNAL PROCESSING, VOL. 52, NO. 9, SEPTEMBER 2004.

[162] *See* AND_EF134186 .

# EXHIBIT C

Oded Gottesman, Ph.D.  January 12, 2007 - Vol. II

Page 285

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

-  -  -

TRUEPOSITION, INC.,            )
   Plaintiff/Counterclaim      )
   Defendant,                  )
                               )
        vs.                    ) C.A. No. 05-00747-SLR
                               )
ANDREW CORPORATION,            )
   Defendant/                  )
   Counterclaim Plaintiff.)
_____)


        VIDEOTAPED DEPOSITION OF ODED GOTTESMAN, Ph.D.

                    VOLUME II

            Philadelphia, Pennsylvania

            Friday, January 12, 2007

                9:12 a.m.




Job No.: 25500261

Pages: 285 - 451

Reported By:  Debra A. Whitehead




Legalink Chicago Merrill Legal Solutions
   Tel: (312)  263-3524    Fax: (312)  263-3544

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

Page 324

1    together, and saying least squares difference

2    equation, and so on, it is under -- it is very clear

3    to skill in the art to understand what they meant.

4           And they meant this is the equation that

5    define our distortion measure, and this is the -- or

6    "difference," sometime people call it -- and this is

7    our objective to minimize.

8           And we would -- we are looking for the

9    point where this achieve its least value.  And that

10   point, for us, would be where the location of the

11   phone is, the minimum of the function.

12          So if you try to make me take one -- one

13   word out of context and to say, but in other place it

14   means something else, no.  Altogether, that what it

15   means.

16          Q    What is maximum likelihood estimate?

17          A    Maximum likelihood estimator is an

18   estimator that -- it's a term from probability that is

19   an estimator that is aimed to maximize the likelihood

20   probability.

21          So if you define, this is my likelihood

22   probability, then in certain environment, in certain

23   condition, in certain assumptions, in certain

24   probabilities, I get the details of a problem that,

25   when I solve it or maximize the probability, I would

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

Page 325

1   achieve the objective of maximum likelihood.

2           Q    Dr. Gottesman, can you please draw for me

3   on the piece of paper I will hand you the equation for

4   maximum likelihood estimate.

5           A    Sure.

6                Okay.   This is what it is.

7                MR. PARKS:   Would you please mark this as

8   the next exhibit.

9                (Document marked for identification as

10  Gottesman Exhibit 17.)

11  BY MR. PARKS:

12          Q    We have marked as Gottesman Exhibit 17 the

13  equation that you have just drawn.

14               Is it your testimony that the equation that

15  you have drawn on Gottesman Exhibit 17 is in fact the

16  equation for maximum likelihood estimate?

17          A    Uh-huh.

18          Q    Could you please also write on Gottesman

19  Exhibit 17 what each of the variables in the equation

20  mean?

21          A    (Witness complies with request.)

22          Q    Could you also, please, Dr. Gottesman,

23  demonstrate for me mathematically or otherwise how, in

24  your opinion, maximum likelihood estimate is

25  equivalent to least squares estimation.

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.    January 12, 2007 - Vol. II

Page 326

1       A    I did not say that it is equivalent; I said
2   that it is aimed to achieve under -- it -- on the
3   general sense, it is not the same thing.  Under
4   certain conditions, it is aimed to achieve the same
5   thing.
6            And the conditions are that the observation
7   noise, for example, of Gaussian distribution, and they
8   are independent, and they are -- and they have zero
9   mean, and there -- certain -- certain assumption that
10  you have to make in order to say.  So, in a sense,
11  what I am doing here is actually aimed to maximize the
12  likelihood.
13           Maximum likelihood is a term in
14  probability.  You cannot -- and you can define
15  "probability" in different ways.
16           When it comes to computer, you need to have
17  an algorithm that you implement and is visible to
18  implement on computer, so you need to define certain
19  distortion.  Because a program on the computer, an
20  algorithm that is implemented, can do certain
21  calculations, can minimize certain distortions.  So
22  you have first to define a visible distortion measure.
23           So what the inventor have done here, they
24  defined a visible distortion measure.  Under certain
25  conditions, minimizing that distortion measure is

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.    January 12, 2007 - Vol. II

Page 327

1    equivalent to maximizing likelihood, in probability.

2        Q    What are those conditions?

3        A    For example, that the observation have

4    Gaussian, G-A-U-S-S-I-A-N, distribution, I believe so,

5    distribution, zero mean, M-E-A-N, and independent.

6    And there is also some assumption related to the

7    occurrence of an observation or occurrence of

8    location.

9        So, for simplicity, maximum likely --

10    minimizing this distortion, minimizing this

11    distortion -- and that's what's done in a software and

12    that what is done in the patent.

13        So let me -- let me, maybe, clarify it.

14    Maximum likelihood is not mentioned in the patent.

15    Maximum likelihood, I am not sure if mentioned in the

16    product, but it's not what the source code -- the

17    source code does not use -- it does not implement

18    exactly an algorithm, you know, that, for example,

19    measure infinite number of probability value that

20    asymptotically, you know, reach certain value,

21    something like that.

22        We perform one measurement, and then we

23    need to calculate the location.  That what it is, that

24    what the system has to do.  We are not talking about

25    any theoretical situation, you know, that, under

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

Page 328

1    different condition, maximum likelihood may mean

2    something else.

3                So in the patent there is a weighted

4    minimum distortion that the inventor suggested to

5    minimize.  In the product there is the same thing, the

6    same weighted distortion minimize.

7                Where maximum likelihood came from, it only

8    came from a document that -- that Andrew wrote and

9    characterized what their product does.  But the source

10   code minimizes a weighted distortion measure, that's

11   where it is.

12               Now, in fact, the inventors -- and I read

13   their deposition -- they -- they -- I believe, it

14   appeared to me, that they were aware of the fact that,

15   under certain condition that are commonly taken, such

16   as, Gaussian, zero mean and so on, in fact this is the

17   most likely location.

18               And if you look at the inventor --

19   inventors -- and I believe I clearly remember Webber,

20   but maybe also Curtis -- they clearly use the term

21   "most likely," that the location is the most likely

22   location.

23               So, in their mind, they understood that

24   minimizing that weighted distortion measure is, under

25   certain condition that are typically taken, such as

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.  January 12, 2007 - Vol. II

Page 329

1    those I mentioned, it is aimed or equivalent to

2    maximum likelihood.

3            But, what they implemented is this.  And

4    that's what's in the patent.  And the probability

5    aspect of that is not really relevant to the equation

6    and what's in the product.  These are both minimizing

7    the same distortion.

8            The fact that, in addition to this

9    distortion, under certain condition, it also has

10   aspect related to probability and maximum likelihood,

11   that's a different story.

12           But that's not what makes the product and

13   the patent related.  What makes it related is both

14   minimize that weighted distortion measure.

15       Q    In situations where the observation does

16   not have Gaussian distribution and there's not a zero

17   mean and no independence, as you referred to --

18       A    It's a different assumption.  Okay.

19       Q    -- under those conditions, you would agree,

20   wouldn't you, that maximum likelihood estimate is not

21   equivalent to least squares estimation; right?

22       A    No, I would not agree.  I have to see the

23   numbers, I have to see everything in front of me, and

24   then I can consider it.  I don't want to speculate on

25   that.

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

Page 330

1        I just told you what's in the product and
2    what's in the patent.  And what I told you, that, in
3    addition to that, people sometime -- or often makes
4    the assumption of Gaussian and others.  And, under
5    this condition, they characterizes what they do as
6    equivalent to maximum likelihood.
7        But it could be that, in certain product,
8    the probability is in fact not exactly Gaussian, but
9    very close to Gaussian.
10        And, you know, it may be even different --
11    different Gaussian on different times because the
12    temperature of the system had changed.
13        So people that implement an algorithm,
14    they're looking for something they can implement.  So
15    when people put that distortion measure, that's a
16    distortion measure that, number one, is visible and
17    easy to calculate, and there are solution for it.  And
18    I can show you, for example, how that distortion
19    measure is related to the probability that we assume.
20        So if we assume, for example, maximum
21    likelihood, that has -- and we assume Gaussian and so
22    on, I can show you exactly how this distortion is
23    related to that Gaussian equation.
24        Q   Can you show me, please, on --
25        A   Yes.

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.  January 12, 2007 - Vol. II

Page 337

1    to minimizing the exponent because of the minus sign

2    in the exponent.

3              If you take something in -- in its

4    exponent, and you looking for the minimum, then you

5    have to look what it -- at the exponent.  If the

6    exponent has a minus sign, then you need to minimize

7    that in order to maximize the whole thing.

8         Q    So --

9         A    Maximizing the probability is equivalent to

10   minimizing what in the exponent of that probability.

11        Q    And the exponent of the probability you are

12   referring to is the inverse of the covariant variable;

13   is that right?

14        A    The whole thing that is in exponent.

15        Q    Can you --

16        A    It includes the inverse of the covariance

17   matrix, yes.

18        Q    Could you please state for the record each

19   of the variables that you are including within the

20   exponent?

21        A    In the exponent?

22        Q    Yes.

23        A    There are -- the exponent includes minus

24   half the vector N transpose, times the inverse of the

25   covariance matrix, times the vector N.

Legalink Chicago Merrill Legal Solutions
Tel: (312)  263-3524    Fax: (312)  263-3544

Oded Gottesman, Ph.D.  January 12, 2007 - Vol. II

1    Q    Does the equation and words and everything
2   else that you have set forth on Gottesman Exhibit 18
3   set forth the entirety of your opinion as to how least
4   squares estimation is equivalent to maximum likelihood
5   estimate?
6    A    Under certain condition, under certain
7   conditions, they -- they -- minimizing least squares
8   error, distortion, or measure is equivalent to
9   maximizing a probability, maximizing the likelihood,
10  under certain condition.
11       This conditions are usually taken by
12  researchers and scientists because it's a very useful
13  tool.  There are a lot of useful mathematical tools
14  that people are aware of and people typically use and
15  utilize.
16       And whether the actual variables have
17  exactly Gaussian distribution or only approximately
18  Gaussian distribution, that's a different issue.
19       That's an issue of the scientist and the
20  researcher in deciding whether his assumption is -- is
21  good enough for his application.  If it's good enough,
22  then you can do that.
23       Now, this is an academic and theoretical
24  discussion that I explained to you why scientists view
25  maximum likelihood as associated with minimizing the

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.  January 12, 2007 - Vol. II

Page 339

1    distortion measure.  But that's only an academic

2    discussion.

3            This is not something you can implement in

4    a code, in a source code.  It's not max -- there is no

5    limitation, there is no such algorithm of maximum

6    likelihood that include all this equation in the

7    source code.  In the patent you have that distortion,

8    and also in the product there is this distortion.

9            The inventors were aware of the association

10   or the relation between minimizing such distortion and

11   maximum likelihood.  And they said the observation is

12   the most likely location -- you can see through the

13   deposition many times, that what I believe they meant,

14   that it is closely related.

15           And typically scientists are aware of that.

16   This is very basic thing that you learn in even

17   undergrad.

18           And -- and --

19           MR. MILCETIC:  Hold it.  Can we --

20       A   (Continued.)  And --

21           MR. PARKS:  No.

22       A   -- the only place that -- so this is not

23   what the patent and what the product.  The only place

24   in this context that maximum likelihood is mentioned

25   is in one of Andrew's document, that this is how they

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

Page 340

1    chose to characterize their product.

2            And I only added that to my report as an

3    intuition.  It is not why the product is related to

4    the patent.  I only added that as a comment to

5    supplement, to give the reader additional intuition.

6            So if you tried to show that, because I

7    used that, there could be, under different assumption,

8    some situation where it is not exactly this, so what?

9    So somebody made this assumption, and this what he had

10   in mind.

11           But this is not what the patent and the

12   product is about.  The patent is about minimizing that

13   distortion and using algorithm to minimize it.  And

14   that's why it is, under certain assumption, related to

15   maximum likelihood.

16       Q    And in your prior answer, when you are

17   referring to product and source code, you are

18   referring to the Geometrix products and the Geometrix

19   source code; correct?

20       A    Yes, that is correct.

21       Q    Could you please write for me --

22       A    And when I refer to the patent, I am

23   referring to the '144.

24       Q    Thank you.

25           Could you please write for me on Gottesman

15335646-34da-47ca-916b-e2cde1192533

Oded Gottesman, Ph.D.   January 12, 2007 - Vol. II

1    Exhibit 18 the conditions under which you opine that

2    minimizing least squares is equivalent to maximizing

3    the likelihood estimation.

4          A    Now, one -- one condition is that -- is

5    Gaussian --

6              MR. MILCETIC:  I am just going to say, we

7    should make the record clear.  Right?  Do you want to

8    do it on a separate piece of paper?

9              MR. PARKS:  No; he can put it on that piece

10   of paper.  That's fine.

11             MR. MILCETIC:  Okay.

12   BY MR. PARKS:

13         Q    You can -- in fact, Dr. Gottesman, to make

14   it clearer, if you could put a heading over it that

15   says, conditions under which --

16             MR. MILCETIC:  Good idea.

17         A    Maybe put different note.

18         Q    In other words, what Mr. Milcetic is saying

19   is, if you could label what you are writing on the

20   exhibit, so it is clear what it is that you are

21   writing.

22             MR. PARKS:  Would this be a good time to

23   take a break, while you are doing that?  We have been

24   going for a while.

25             I know you haven't had a chance to, you

15335646-34da-47ca-916b-e2cde1192533