CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER

**4.     Quantification of Lost Profits**

88.     In a lost profits analysis, the patent holder must demonstrate that there is a "reasonable

probability that 'but for' the infringing activity, the patentee would have made the

infringer's sales."[155] My review of the evidence and my analysis of *Panduit* Factors 1, 2

and 3 above indicates that TruePosition lost sales to STC and Q-Tel based on competition

with Andrew's allegedly infringing Geometrix system.

**a.     STC**

89.     To estimate TruePosition's lost profits associated with its lost sales to STC, I rely upon a

proposal submitted by TruePosition to STC in December 2004.[156] This proposal was for

a kingdom-wide rollout of a U-TDOA system for

REDACTED

90.     As mentioned previously, the contract awarded by STC to Andrew appears to

contemplate

REDACTED

Therefore, I have estimated

TruePosition's lost profits assuming that, absent Andrew's infringement, the

TruePosition rollout would occur in phases over a five-year period. As shown in Exhibit

7, my calculations assume TruePosition installation of

REDACTED

in

---

[155]   Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001).
[156]   STCRFP_FinalPricing_12.07.04.xls. *See also*, Exhibit 6. The unit prices contained in this proposal for the TruePosition provided components — *i.e.*, SMLC hardware and software, LMU hardware and software and OMC hardware and software as well as associated maintenance and spare parts — are identical to those in the May 2005 proposal. STC_PricingUpdate_05.02.05_TP.xls.
[157]   STCRFP_FinalPricing_12.07.04.xls, sheet 2.6.1.3.

**A130**

CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER

2007,                                    **REDACTED**

91.    Projected revenues include revenues from the sale of hardware, and software, and services as well as revenues from spare parts and ongoing annual operation and maintenance. Based on conversations with TruePosition personnel, I understand that TruePosition recommended the purchase of spare parts along with the original purchase of hardware and software, so I have modeled the spare parts cash flows in the same ratio to hardware, software, and services as given in the total bid. As well, it is my understanding that the purchase of annual operation and maintenance would be contractually required by TruePosition. According to conversations with TruePosition personnel, operation and maintenance revenues are anticipated to occur over a minimum of five years beginning with the year of installation of the hardware and software. [158]

92.    My analysis of TruePosition's incremental costs associated with the sale of its Finder system to STC includes manufacturing costs and operating expenses. These include the reported manufacturing costs and other costs of goods contained in TruePosition's proposal worksheets[159] and my estimates of incremental operating expenses.[160]

---

[158]

**REDACTED**

[159]    STCRFP_FinalPricing_12.07.04.xls and STC_PricingUpdate_05.02.05_TP.xls.
[160]    *See* Exhibits 17-18.

**A131**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

93.    Based on conversations with TruePosition, it is my understanding that the costs contained in the December 2004 and May 2005 proposal worksheets include all material, labor and overhead costs associated with the production of the hardware and software. In addition, it is my understanding that these costs include shipping expenses. According to conversations with TruePosition personnel, customs duties and taxes, including Zakah taxes,                    Finally, installation and design fees

**REDACTED**

94.    In addition to these costs, I have deducted from TruePosition's "but-for" revenues incremental operating expenses likely to be associated with the sale to STC. In estimating the magnitude of these costs, I have employed a statistical technique called a regression approach. This approach uses simple linear regression analysis to analyze the historical relationship between changes in costs and changes in sales. My analysis indicates that historically,                    **REDACTED**

                    As shown in Exhibit 17, my analysis indicates that for each additional dollar in revenue, TruePosition's Operations expenses

REDACTED

---

[161]  *See, for example,* Deposition of Joseph Sheehan, 11/17/06, [ROUGH, p. 31].
[162]  "Operations" includes "Operations Support" and "Supply Chain;" *see* Exhibit 18. Other categories of departmental operating expenses are: Sales and Marketing, Product Development/R&D, General and Administrative, and International. According to Michael Hoppman, Supply Chain expenses are appropriately included in "Subtotal Operations." *See* Deposition of Michael Hoppman, 11/15/06, [ROUGH, pp. 20-23].

**A132**

CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER

REDACTED Alternatively, these results show that TruePosition's incremental operating expense rate is     percent of sales.[163]

95.    The reasonableness of the results of my statistical analysis are confirmed by an account-based approach to the determination of incremental expenses. TruePosition's Operating Expenses in 2005 include the following categories of expense: (1) Sales and Marketing, (2) Product Development (3) Operations, (4) General and Administrative, and (5) International. According to Michael Hoppman, TruePosition's Chief Financial Officer, Sales and Marketing expenses include expenses for all the cost centers that work on the Sales and Marketing activities of the business.[164] Product Development includes salaries and corresponding benefits, consulting fees, and other expenses related to the development of hardware and software products, which is analogous to "research and development expenses" at other firms.[165] Operations is divided into two major categories, one being supply chain, which is responsible for the procurement of goods and services, and the other being support services to the customer, which would include the technical assistance center.[166] General and Administrative expenses include salaries for the finance, IT, MIS, legal and human resources departments, facilities costs, rent, telephone and other general expenses, and any salaries for other high level executives, such as the

---

[163]    Exhibit 17.
[164]    Deposition of Michael Hoppman, 11/15/06, [ROUGH, p. 17]. The costs of the International Sales Group are in "International." All marketing costs would be under Sales and Marketing, as the Marketing activities for the company are not into between Domestic and International. *See* Deposition of Michael Hoppman, 11/15/06, [ROUGH, p. 19].
[165]    Deposition of Michael Hoppman, 11/15/06, [ROUGH, pp. 25-27]. *See also,* Deposition of Michael Hoppman, 5/22/03, pp 134-5.
[166]    Deposition of Michael Hoppman, 11/15/06, [ROUGH, pp. 20, 23-24].

46

**A133**

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

President, that aren't recorded in specific departments.[167] International expenses include international sales expenses, and potentially some minor facilities and legal costs.[168]

96.     Based on conversations with TruePosition personnel, I understand that

REDACTED

97.     Exhibits 7, 8, and 9 show the results of my lost profits calculations with respect to TruePosition's lost sales of its Finder system to STC. Scenario 1 calculates the net present value to TruePosition of its lost sales opportunity to STC over the kingdom-wide

---

[167]   Deposition of Michael Hoppman, 11/15/06, [ROUGH, pp. 27-28, 55].
[168]   These expenses have been included with sales and marketing expenses beginning in 2006. Deposition of Michael Hoppman, 11/15/06, [ROUGH, pp. 28-29].
[169]   Conversations with TruePosition personnel, 11/20/06.
[170]   Conversations with TruePosition personnel, 11/20/06.
[171]   Deposition of Michael Hoppman, 11/15/06, [ROUGH, p. 19].

47

A134

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

roll out of    8 sites as contemplated in its December 2004 bid.[172]  As shown in these

three exhibits, lost profits under Scenario 1 total        **REDACTED**

98.  Alternatively expressed, TruePosition's lost profits from the STC bid represent an

average of approximately      per site.[173]  Based on conversations with TruePosition

personnel, I understand that it is possible that the STC deal had the potential to involve

more than the      sites contemplated in the December 2004 bid.  Should additional

evidence become available to support this point, additional lost profits to TruePosition

can be estimated by applying this figure to the number of additional sites.

99.  Scenario 2 calculates TruePosition's lost profits associated with the loss of business

associated with Phase I and Phase II.  As shown in Exhibits 10, 11, and 12, lost profits

under Scenario 2 total      million –       **REDACTED**

b.  **Q-Tel**

100.  To estimate lost profits due to TruePosition's lost Q-Tel sales, I rely upon two

TruePosition proposals, dated April 13, 2006 and May 12, 2006, which contemplate

---

[172]  Future revenues and profits have been discounted using a rate of 12 percent, which is consistent with the discount rate used by Andrew in its valuation of TruePosition in 2005 in connection with the acquisition discussions between the two parties.  *See* "Copy of Andrew GAAP Statements Final.mcho.ANSinput.resived.xls, at "Summary Cash Flow" sheet.  This is also consistent with the discount rate of 11 percent used by TruePosition in its internal valuations of sales opportunities.  (Conversations with TruePosition personnel)

[173]  **REDACTED**

48

**A135**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

installation of the Finder system at .            **REDACTED**

: The primary difference between the two proposals is that the

May 12, 2006 proposal :                                relative to

the April 13, 2006 proposal. These proposals include TruePosition's estimated revenues

and costs associated with the manufacture and sale of its Finder system to Q-Tel.[175] In

addition to these costs, I also included an estimate of incremental operating expenses as

described above.

101.    As shown in Exhibits 13 to 16, the net present value of TruePosition's lost profits

associated with the lost Q-Tel bid total

**REDACTED**

c.    **Other**

102.    In addition to the accused sales to STC and Q-Tel, the evidence shows that both Andrew

and TruePosition expected there to be significant follow-on sales in the Middle East as a

---

[174]  "Reply to Request for Proposal, Location-Based Services (LBS) Platform, Executive Summary, December 2004"; Proposal for Deployment of the Finder System for Safety and Security Applications, Prepared for Qatar Telecom (Q-Tel), April 13, 2006 and QatarPricing_05.12.06.xls.

[175]  As with the STC proposal (i.e., Proposal #275 – QAT0604MW-1), TruePosition's Q-Tel proposal included the use of Nour Communications to handle installation, testing, front-line support and maintenance. *See* TruePosition's Proposal for Deployment of the Finder™ System for Safety and Security Applications, Prepared for Qatar Telecom (Q-Tel), April 13, 2006, Proposal Number #275-QAT0604MW-1, p. 16.

[176]  Optional components include drive test tool hardware and software. *See* TruePosition's Proposal for Deployment of the Finder™ System for Safety and Security Applications, Prepared for Qatar Telecom (Q-Tel), April 13, 2005, Proposal Number #275-QAT0604MW-1, p. A-2, QatarPricing_04.13.06.xls, sheet "Price Quote", and QatarPricing_05.12.06.xls, sheet "Price-Cost."

49

**A136**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

result of the STC contract award. For example, Andrew believed that

<center>REDACTED</center> Furthermore,

in the International section of its February 2006 Geolocation Business Review, Andrew

noted its intention to <center>REDACTED</center>

As mentioned previously, TruePosition was

informed by Nour that other operators would follow the "lead of STC."[179] Yet, it is

evident that TruePosition held this belief independent of Nour; when asked in his

deposition why the STC deal was important to TruePosition, Joseph Sheehan,

TruePosition's President and COO, answered:

> One, it was a significant sized deal. There was a significant amount of potential profit, money, revenue associated with it. On top of it, it was – strategically, it was the first real opportunity or potentially the first purchase outside of the U.S. of our products and U-TDOA technology in general. Also they were viewed as a leader amongst the operators … that would potentially be interested in our technology and products as it related to security-type applications and commercial location-based services. … They have a significant amount of influence in that part of the world. They tend to be leaders, early adopters of new services, new technologies, things of that nature.[180]

103.    In the event that Andrew's alleged infringement has precluded TruePosition from being

awarded the STC contract, it seems likely that this will result in a lower probability of

---

[177]    PX-241. Joseph Kennedy, Jr., stated: "… [if]U-TDOA could be deployed in Saudi Arabia and it produced the success for the security apparatus in the country, then other countries that cared about security and enhanced security issues would be inclined to consider it for purchase." See Deposition of Joseph Kennedy, Jr., 11/9/06, Vol. 2, pp. 53-54.
[178]    AND_EF0092594, pp. 9-10.
[179]    DX-9 (TPI-E0002790).
[180]    Deposition of Joseph Sheehan, 10/19/06, pp. 106-107.

<center>50</center>

<center>A137</center>

CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER

TruePosition being awarded such follow-on work. I have not attempted to quantify the magnitude of this harm. Should additional information relevant to this point become available, I will update my opinions accordingly. In any event, it suggests that the estimates presented here may understate the true magnitude of the financial injury to TruePosition.

104. As confirmation of this point, I note that Andrew's own valuation analysis of TruePosition demonstrates

**REDACTED**

## V.     PREJUDGMENT INTEREST

105. Courts allow injured parties to receive prejudgment interest on damages awards in order to compensate successful plaintiffs for the time value of their losses. The appropriate interest rate is one that fairly compensates the plaintiff for the time value of its money while properly accounting for risk in a financial sense. Should the Court determine that

---

[181] TPI0042415.
[182] TPI0042416.

**A138**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

prejudgment interest is due to TruePosition after a judgment is entered in this case, the appropriate interest rate to use is the after-tax short-term Treasury Bill rate.

106.    This relatively low, mostly riskless rate is the appropriate prejudgment interest rate because it conforms to the fundamental tenet of finance that investors who bear less risk should earn lower profits, or returns.  Conversely, higher returns accrue to investors that bear higher risks.  I have summarized these rates from January 2005 through December 2006 in Exhibit 19.

## VI.    CONCLUSIONS

107.    In the event that Andrew is found liable for infringement of the '144 patent, my analysis of the *Panduit* factors as set forth above indicates that TruePosition is entitled to lost profits damages resulting from Andrew's infringing sales of Geometrix systems to STC and Q-Tel.  As discussed in detail above, the net present value of TruePosition's lost profits associated with Andrew's sales to STC are estimated to range from

### REDACTED

---

[183]    Exhibit 1.
[184]    *Ibid.*

CONFIDENTIAL — SUBJECT TO PROTECTIVE ORDER

108.    As the allegedly infringing activities are ongoing, the magnitude of Andrew's actual and/or expected infringing sales at the time of trial may be different from those contemplated in the analysis set forth here.  Therefore, I reserve the right to update my calculations to reflect additional information as appropriate.

Carla S. Mulhern
December 1, 2006

53

A140

# Appendix A

**CARLA S. MULHERN**
**Managing Principal**

Phone: (202) 530 3988
Fax: (202) 530 0436
cmulhern@analysisgroup.com

1899 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006

Carla Mulhern, a Managing Principal at Analysis Group, specializes in the application of microeconomic principles to issues arising in complex business litigation. She has served as an expert witness on damages issues in commercial litigation matters including intellectual property and breach of contract cases. Her intellectual property damages experience spans cases involving allegations of patent, copyright and trademark infringement as well as misappropriation of trade secrets. In addition, she has worked with leading academic experts on commercial litigation matters including intellectual property, antitrust and breach of contract.

Ms. Mulhern's project experience spans a variety of industries including pharmaceuticals, medical devices, automotive, entertainment, consumer products, computer hardware and software, semiconductors and telecommunications. She has assisted clients in all aspects of litigation projects including development and review of pretrial discovery, development of economic and financial models to analyze damages, critique of analyses propounded by opposing experts, and preparation of testimony.

In non-litigation matters, Ms. Mulhern has assisted clients in valuing intellectual property and other business assets in the contexts of strategic alliances involving licensing and joint ventures. In addition, she has consulted on matters involving the application of economic principles to issues arising in the pharmaceutical and health care fields.

Ms. Mulhern previously held consulting and research positions at Putnam, Hayes & Bartlett and National Economic Research Associates (NERA). She holds a M.Sc. in Economics from the London School of Economics and Political Science, and a B.S. in Mathematics from Bucknell University.

## EDUCATION

| | |
|---|---|
| 1988 | M.Sc. in Economics, London School of Economics and Political Science, London, England |
| 1987 | Diploma with Merit in Economics, London School of Economics and Political Science, London, England |
| 1986 | B.S. in Mathematics, Bucknell University, Lewisburg, PA |

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 1997 - present | Analysis Group, Inc., Washington, DC |
| 1994 - 1997 | Putnam, Hayes & Bartlett, Inc., Washington, DC |
| 1989 - 1994 | National Economic Research Associates, Inc., Washington, DC |

**A142**

**EXPERT REPORTS/TESTIMONY**

* **In the Matter of Certain NOR and NAND flash memory devices and products containing same, Investigation No. 337-TA-560**
  *U.S. International Trade Commission, Washington, D.C.*
  Patent infringement: expert report (2006) and deposition testimony (2006) regarding plaintiff's claims of domestic industry, scope of exclusion order and appropriate amount of bond to be set for products covered by exclusion order during Presidential review period in Section 337 case involving NAND and NOR flash memory products.

* **Intex Recreation Corp. v. Team Worldwide Corp.**
  *U.S. District Court, Washington, D.C.*
  Patent infringement: expert report (2006) and deposition testimony (2006) in a patent infringement case involving inflatable air mattresses. Provided testimony on lost profits and reasonable royalty damages.

* **In the Matter of Certain Flash Memory Devices and Components Thereof, and Products Containing Such Devices and Components, Investigation No. 337-TA-552**
  *U.S. International Trade Commission, Washington, D.C.*
  Patent infringement: expert report (2006) and deposition testimony (2006) regarding certain secondary considerations, as well as plaintiff's claims of domestic industry, scope of exclusion order and appropriate amount of bond to be set during Presidential Review period in Section 337 case involving NAND flash memory products.

* **In the Matter of Certain Baseband Processor Chips and Chipsets, Transmitter and Receiver (Radio) Chips, Power Control Chips and Products Containing Same, Including Cellular Telephone Handsets, Investigation No. 337-TA-543**
  *U.S. International Trade Commission, Washington, D.C.*
  Patent infringement: expert reports (2005 and 2006), deposition testimony (2006) and trial testimony (2006) regarding scope of exclusion order associated with baseband and radio chips used in cellular telephones and other handheld devices in Section 337 case.

* **In the Matter of Certain NAND Flash Memory Circuits and Products Containing the Same, Investigation No. 337-TA-526**
  *U.S. International Trade Commission, Washington, D.C.*
  Patent infringement: rebuttal expert report and deposition testimony (2005) regarding plaintiff's claims of domestic industry, scope of exclusion order and appropriate amount of bond to be set for products covered by exclusion order during Presidential review period in Section 337 case involving NAND flash memory products.

* **PDI, Inc. v. Cellegy Pharmaceuticals, Inc.**
  *U.S. District Court, Northern District of California, San Francisco*
  Commercial damages: expert report and deposition testimony (2005) regarding analysis of damages arising from claims of fraud and breach of contract in case involving pharmaceutical product.

**A143**

- **Minuteman Trucks, Inc. v. HN80 Corporation and Sterling Truck Corp.**
  *Superior Court of Massachusetts, Suffolk County*
  Commercial damages: rebuttal expert report and trial testimony (2004) regarding issues related to calculation of damages associated with alleged violation of Massachusetts statue regarding dealer pricing in case involving heavy trucks.

- **Miltope Corporation and IV Phoenix Group Inc, v. DRS Technologies et al.**
  *U.S. District Court, Eastern District of New York*
  Misappropriation of trade secrets: expert report and deposition testimony (2003) on reasonable royalty damages in case involving rugged personal computers.

- **John W. Evans, et al., v. General Motors Corp.**
  *Superior Court of Connecticut, Judicial District of Waterbury at Waterbury*
  Misappropriation of trade secrets: expert report, deposition testimony (2002) and trial testimony (2003) on reasonable royalty damages in a case involving automotive engine technology.

- **SRAM Corporation v. AD-II Engineering, Inc.**
  *U.S. District Court, Northern District of Illinois*
  Patent infringement: expert report and deposition testimony (2002) on reasonable royalty damages due patent holder and lost profits due alleged infringer arising from allegedly false accusations involving patents related to bicycle twist-shifters.

- **Qwest Communications International et al. v. WorldQuest Networks, Inc.**
  *U.S. District Court, Eastern District of Virginia*
  Trademark infringement and unfair competition: expert report on damages in a case involving sales of prepaid calling cards.

- **The Quigley Corporation v. GumTech International, et al.**
  *U.S. District Court, Eastern District of Pennsylvania*
  Patent infringement: expert report and deposition testimony (2001) on damages in case involving patent related to the use of zinc gluconate to reduce the duration of the common cold.

- **Cytyc Corporation v. Autocyte, Inc.**
  *U.S. District Court, District of Delaware*
  Patent infringement: expert report and deposition testimony (2000) on damages in a case involving liquid based cervical cancer screening tests.

- **Hearthstone, Inc. v. Ronald M. Hawes, et al.**
  *U.S. District Court, Eastern District of Virginia*
  Copyright and trademark infringement, breach of contract and unfair competition: expert report on damages involving architectural plans for log homes.

## SELECTED CONSULTING ASSIGNMENTS

**Commercial Damages/Intellectual Property Damages**

- **Medinol Ltd. v. Boston Scientific Corp.**
  *U.S. District Court, Southern District of New York*
  Breach of contract damages: analyze damages resulting from allegations of breach of contract and
  misappropriation of trade secrets in case involving coronary stents.

- **Burst.Com v. Microsoft Corp.**
  *U.S. District Court, District of Maryland*
  Patent and trade secrets damages: analysis of reasonable royalty damages in case involving software
  used for streaming media. Respond to plaintiff's claim of lost profits damages and unjust enrichment
  arising from the misappropriation of trade secrets.

- **Medtronic AVE v. Advanced Cardiovascular Systems and Guidant Corp.**
  *U.S. District Court, District of Delaware*
  Patent and trade secrets damages: analysis of lost profits and reasonable royalty damages in case
  involving coronary stents. Respond to plaintiff's claim of damages arising from misappropriation of
  trade secrets.

- **Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer Inc. et al.**
  *U.S. District Court, Southern District of New York*
  Patent damages: reasonable royalty covering patent directed to semi-synthetic process for
  manufacturing Taxol (anti-cancer drug).

- **Titan Sports, Inc., etc. v. Turner Broadcasting Systems, Inc. et al.**
  *U.S. District Court, District of Connecticut*
  Copyright and trademark damages: unjust enrichment due to misappropriation of intellectual property
  involving two popular wrestling characters.

- **Arthur A. Collins, Inc. v. Northern Telecom Limited, and Northern Telecom Inc.**
  *U.S. District Court, Eastern District of Virginia*
  Patent damages: reasonable royalty and prejudgment interest for patents directed to
  telecommunications switching equipment.

- **Stairmaster Sports/Medical Products, a Limited Partnership v. Groupe Procycle, Inc. et al.**
  *U.S. District Court, District of Delaware*
  Patent damages: lost profits, reasonable royalty and prejudgment interest involving patent directed to
  stair-climbing fitness equipment.

- **BTG v. Magellan Corp./BTG v. Trimble Navigation**
  *U.S. District Court, Eastern District of Pennsylvania*
  Patent damages/intervening rights: reasonable royalty, prejudgment interest, value of inventory on
  hand, preparation and investments made and business commenced (as of patent reissue) involving a
  patent directed to secret or secure communications technology employed in global positioning system
  products.

**A145**

*Carla S. Mulhern page 5 of 7*

- **Joint Medical Products Corp. v. DePuy Orthopaedics, Inc. et al.**
  *U.S. District Court, District of Connecticut*
  Patent damages: lost profits and reasonable royalty for patents directed to orthopedic implants.

- **Cordis Corp. v. SciMed Life Systems, Inc.**
  *U.S. District Court, District of Minnesota*
  Patent damages: lost profits, reasonable royalty and prejudgment interest for patent directed to balloon catheters used in Percutaneous Transluminal Coronary Angioplasty (PTCA).

- **Nexstar Pharmaceuticals, Inc. v. The Liposome Company**
  *U.S. District Court, District of Delaware*
  Patent damages/intervening rights: Valuation of inventory on hand, preparations and investments made and business commenced (as of patent reissuance) involving patents directed to lipid formulations of an anti-fungal pharmaceutical.

- **Autonation, Inc. v. Acme Commercial Corp., et al. (CarMax)**
  *U.S. District Court, Southern District of Florida*
  Trademark infringement/unfair competition: reasonable royalty associated with trademark infringement and unfair competition in the auto superstore business.

- **General Motors (GM) v. Lopez**
  *U.S. District Court, Eastern District of Michigan*
  Trade secrets: analysis of GM damages and VW unjust enrichment due to alleged theft of trade secrets by former GM employee.

Antitrust Litigation

- **Burst.Com, Inc. v. Microsoft Corp.**
  *U.S. District Court, District of Maryland*
  Examination and evaluation of plaintiff's business strategy and likely implications with respect to plaintiff's claims of actual damages due to alleged antitrust violations.

- **In Re Microsoft Corp. Antitrust Litigation – All Purchaser Actions**
  *U.S District Court, District of Maryland*
  Analysis of economics of computer software industry and resulting implications for market structure and firm profitability.

- **Microsoft I-V Cases**
  *Superior Court of The State of California, for The City and County of San Francisco*
  Analysis of economics of computer software industry and resulting implications for market structure and firm profitability.

- **Vitamin Antitrust Litigation**
  *U.S. District Court, District of Columbia*
  Preliminary analysis of factors affecting supply and demand for Vitamin C.

**A146**

- **Industrial Silicon Antitrust Litigation**
  *U.S. District Court, Western District of Pennsylvania*
  Analysis of issues related to likelihood of successful cartelization in production of industrial ferrosilicon, magnesium ferrosilicon, and silicon metal.

- **Independent Service Provider v. IBM**
  *Texas State Court, Corpus Christi*
  Analysis of issues related to liability and damages including definition of relevant market, assessment of market concentration and evaluation of antitrust damages.

## OTHER CONSULTING ASSIGNMENTS

- **Corporate Committee of The American College of Nuclear Physicians**
  Analyses of the clinical and economic value of nuclear medicine in cardiology and oncology.

- **Lincoln General Hospital**
  Business valuation of two health care providers for use in determining relative shares of the parties in a joint venture.

- **Pharmaceutical Partners For Better Health Care**
  Comprehensive study of the Canadian health care system with particular emphasis on the effects of potential reforms on the pharmaceutical industry.

## PUBLICATIONS

"Use of the 25 Per Cent Rule in Valuing IP," (with R. Goldscheider and J. Jarosz), *les Nouvelles*, Volume XXXVII No. 4, December 2002, pp. 123-133.

"Clinical and Economic Value of Cardiovascular Nuclear Medicine," monograph published by *Meniscus Health Care Communications*, (with K. Neels), 1996.

"The Health Care System in Canada," (with R. Rozek), Chapter 4, *Financing Health Care*, edited by U. Hoffmeyer and T. McCarthy, Kluwer Academic Publishers, 1994.

"Discounted Cash Flow Analysis in Patent Infringement Litigation," (with R. Rozek), *Licensing Economics Review*, Volume 1, August 1991, pp. 7-10

## SPEECHES/PRESENTATIONS

"Reasonable Royalty Determination in the Presence of Standards and University Licensing," Law Seminars International, Calculating and Providing Patent Damages Workshop, October 2006.

"Providing Effective Royalty Testimony," Licensing Executives Society / Association of University Technology Managers Spring Meeting (Workshop 4-H), May 2006 (with John Jarosz and Lisa Pirozzolo).

"Meeting the Standards for Price Erosion and Convoyed Sales," Law Seminars International, Calculating and Providing Patent Damages Workshop, February 2006.

"Intellectual Property Damages From An Economist's Perspective," DC Bar Association, Trade Secret Section, November 2005 (with John Jarosz an Abram Hoffman).

"Factors affecting Royalties" Licensing Executive Society Annual Meeting (Workshop 2-M), October 2005 (with Robert Vigil).

"Trade Secrets Damages:  What Can A Successful Claimant Expect to Recover?," Trade Secrets Committee of the Intellectual Property Law Section of the D.C. Bar, February 2005.

"Economics of Price Erosion and Lost Convoyed Sales," Law Seminars International, Calculating and Proving Patent damages Workshop, March 2004.

"An Economist's Perspective on Reach-Through Royalties," Law Seminars International, Calculating and Proving Patent Damages:  Recent Developments and New Tools for Success, June 2003.

"Trade Secrets Damages and Recent Developments," Trade Secrets Committee of the Intellectual Property Law Section of the D.C. Bar, May 2002.

"Industry Royalty Rates and Profitability:  An Empirical Test of the 25% Rule," Licensing Executives Society Annual Meeting (Workshop 3-L), October 2001 (with John Jarosz and Robert Vigil).

"Estimating the Economic Value of Trade Secrets," U.S. Sentencing Commission (USSC) Symposium on Federal Sentencing Policy for Economic Crimes and New Technology Offenses, October 13, 2000.

"Estimating Economic Recovery in Trade Secrets Cases," Trade Secrets Committee of the Intellectual Property Law Section of the D.C. Bar, September 1999.

"Industry Royalty Rates and Profitability:  An Empirical Test of the 25% Rule," Licensing Executives Society Annual Meeting, (Workshop 3-11), October 1998 (with John Jarosz).

"Royalty Rates and Awards in Patent Infringement Cases:  1916-1996," Licensing Executives Society Annual Meeting, November 1997 (with John Jarosz).

## PROFESSIONAL AFFILIATIONS

American Economic Association (AEA)

Licensing Executives Society (LES)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Documents:

| Bates Numbers |
| --- |
| AND0073702 |
| AND0073758 |
| AND0073784 |
| AND0075771 - AND0075808 |
| AND0075820 - AND0075833 |
| AND0075981 |
| AND0075992 - AND0075993 |
| AND0075994 - AND0075995 |
| AND0076009 |
| AND0076010 |
| AND0076018 |
| AND0076019 |
| AND0076020 |
| AND0076028 |
| AND0076030 |
| AND0079658 - AND0079660 |
| AND0079661 - AND0079663 |
| AND0079664 |
| AND0079668 - AND0079672 |
| AND0079756 - AND0079753 |
| AND0079766 - AND0079767 |
| AND0080258 - AND0080259 |

| Document IDs |
| --- |
| AND_EF0000104 |
| AND_EF0000105 |
| AND_EF0000108 |
| AND_EF0000109 |
| AND_EF0000116 |
| AND_EF0000129 |
| AND_EF0000169 |
| AND_EF0000178 |
| AND_EF0000197 |
| AND_EF0000215 |
| AND_EF0000224 |
| AND_EF0000225 |
| AND_EF0000241 |
| AND_EF0000256 |
| AND_EF0000259 |
| AND_EF0000260 |
| AND_EF0000262 |
| AND_EF0000265 |
| AND_EF0000276 |
| AND_EF0000279 |
| AND_EF0000281 |
| AND_EF0000282 |
| AND_EF0000283 |
| AND_EF0000284 |
| AND_EF0000285 |
| AND_EF0000301 |
| AND_EF0000302 |
| AND_EF0000306 |
| AND_EF0000307 |
| AND_EF0000308 |
| AND_EF0000309 |
| AND_EF0000313 |

| Document IDs |
| --- |
| AND_EF0017687 |
| AND_EF0017688 |
| AND_EF0017692 |
| AND_EF0017754 |
| AND_EF0017756 |
| AND_EF0017757 |
| AND_EF0017789 |
| AND_EF0017856 |
| AND_EF0017924 |
| AND_EF0018009 |
| AND_EF0018011 |
| AND_EF0018012 |
| AND_EF0018028 |
| AND_EF0018029 |
| AND_EF0018034 |
| AND_EF0018035 |
| AND_EF0018036 |
| AND_EF0018037 |
| AND_EF0018038 |
| AND_EF0018050 |
| AND_EF0018074 |
| AND_EF0018079 |
| AND_EF0018166 |
| AND_EF0018341 |
| AND_EF0018355 |
| AND_EF0018456 |
| AND_EF0018457 |
| AND_EF0018550 |
| AND_EF0018558 |
| AND_EF0018559 |
| AND_EF0018560 |
| AND_EF0018561 |
| AND_EF0018567 |
| AND_EF0018572 |
| AND_EF0018573 |
| AND_EF0018574 |
| AND_EF0018577 |
| AND_EF0018578 |
| AND_EF0018579 |
| AND_EF0018581 |
| AND_EF0018583 |
| AND_EF0018584 |
| AND_EF0018585 |
| AND_EF0018586 |
| AND_EF0018587 |
| AND_EF0018588 |
| AND_EF0018589 |
| AND_EF0018590 |
| AND_EF0018591 |
| AND_EF0018592 |
| AND_EF0018593 |
| AND_EF0018594 |
| AND_EF0018595 |
| AND_EF0018596 |
| AND_EF0018597 |
| AND_EF0018598 |
| AND_EF0018599 |

TruePosition Documents:

| Bates Numbers |
| --- |
| TPI0042415 - TPH0042422 |

| Document IDs |
| --- |
| TPI-E0000306 |
| TPI-E0000309 |
| TPI-E0000310 |
| TPI-E0000311 |
| TPI-E0000312 |
| TPI-E0000313 |
| TPI-E0000314 |
| TPI-E0000315 |
| TPI-E0000316 |
| TPI-E0000317 |
| TPI-E0000320 |
| TPI-E0000347 |
| TPI-E0000348 |
| TPI-E0000350 |
| TPI-E0000351 |
| TPI-E0000352 |
| TPI-E0000353 |
| TPI-E0000354 |
| TPI-E0000355 |
| TPI-E0000356 |
| TPI-E0000357 |
| TPI-E0000358 |
| TPI-E0000359 |
| TPI-E0000360 |
| TPI-E0000361 |
| TPI-E0000362 |
| TPI-E0000363 |
| TPI-E0000364 |
| TPI-E0000365 |
| TPI-E0000366 |
| TPI-E0000368 |
| TPI-E0000369 |
| TPI-E0000370 |
| TPI-E0000371 |
| TPI-E0000372 |
| TPI-E0000373 |
| TPI-E0000374 |
| TPI-E0000375 |
| TPI-E0000376 |
| TPI-E0000377 |
| TPI-E0000381 |
| TPI-E0000382 |
| TPI-E0000383 |
| TPI-E0000384 |
| TPI-E0000385 |
| TPI-E0000386 |
| TPI-E0000387 |
| TPI-E0000388 |
| TPI-E0000390 |
| TPI-E0000391 |
| TPI-E0000392 |
| TPI-E0000393 |
| TPI-E0000394 |

**A149**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Documents:                                            TruePosition Documents:

| Document IDs | Document IDs | Document IDs |
|---|---|---|
| AND_EF0000316 | AND_EF0018600 | TPI-E0000395 |
| AND_EF0000317 | AND_EF0018601 | TPI-E0000403 |
| AND_EF0000326 | AND_EF0019053 | TPI-E0000404 |
| AND_EF0000336 | AND_EF0019083 | TPI-E0000405 |
| AND_EF0000338 | AND_EF0035253 | TPI-E0000406 |
| AND_EF0000353 | AND_EF0065945 | TPI-E0000407 |
| AND_EF0000354 | AND_EF0071534 | TPI-E0000408 |
| AND_EF0000356 | AND_EF0072291 | TPI-E0000409 |
| AND_EF0000357 | AND_EF0077057 | TPI-E0000410 |
| AND_EF0000362 | AND_EF0084793 | TPI-E0000411 |
| AND_EF0000366 | AND_EF0084857 | TPI-E0000413 |
| AND_EF0000562 | AND_EF0084861 | TPI-E0000414 |
| AND_EF0000578 | AND_EF0084865 | TPI-E0000415 |
| AND_EF0000579 | AND_EF0084973 | TPI-E0000416 |
| AND_EF0000581 | AND_EF0084982 | TPI-E0000417 |
| AND_EF0000582 | AND_EF0084992 | TPI-E0000418 |
| AND_EF0000583 | AND_EF0084996 | TPI-E0000419 |
| AND_EF0000584 | AND_EF0085048 | TPI-E0000420 |
| AND_EF0000585 | AND_EF0085126 | TPI-E0000421 |
| AND_EF0000585 | AND_EF0085127 | TPI-E0000422 |
| AND_EF0000602 | AND_EF0085130 | TPI-E0000423 |
| AND_EF0000603 | AND_EF0085132 | TPI-E0000424 |
| AND_EF0000605 | AND_EF0085137 | TPI-E0000425 |
| AND_EF0000608 | AND_EF0085138 | TPI-E0000426 |
| AND_EF0000609 | AND_EF0085140 | TPI-E0000427 |
| AND_EF0000610 | AND_EF0085141 | TPI-E0000428 |
| AND_EF0000611 | AND_EF0085143 | TPI-E0000429 |
| AND_EF0000624 | AND_EF0085144 | TPI-E0000430 |
| AND_EF0000625 | AND_EF0085145 | TPI-E0000431 |
| AND_EF0000626 | AND_EF0085146 | TPI-E0000436 |
| AND_EF0000627 | AND_EF0085147 | TPI-E0000437 |
| AND_EF0000628 | AND_EF0085148 | TPI-E0000438 |
| AND_EF0000629 | AND_EF0085150 | TPI-E0000439 |
| AND_EF0000630 | AND_EF0085151 | TPI-E0000440 |
| AND_EF0000631 | AND_EF0085152 | TPI-E0000442 |
| AND_EF0000632 | AND_EF0085153 | TPI-E0000443 |
| AND_EF0000633 | AND_EF0085154 | TPI-E0000444 |
| AND_EF0000634 | AND_EF0085155 | TPI-E0000445 |
| AND_EF0000635 | AND_EF0085156 | TPI-E0000446 |
| AND_EF0000636 | AND_EF0085157 | TPI-E0000454 |
| AND_EF0000637 | AND_EF0085158 | TPI-E0000470 |
| AND_EF0000640 | AND_EF0085159 | TPI-E0000472 |
| AND_EF0000652 | AND_EF0085160 | TPI-E0000522 |
| AND_EF0000657 | AND_EF0085161 | TPI-E0000523 |
| AND_EF0000679 | AND_EF0085162 | TPI-E0000529 |
| AND_EF0000904 | AND_EF0085163 | TPI-E0000533 |
| AND_EF0001706 | AND_EF0085165 | TPI-E0000534 |
| AND_EF0001765 | AND_EF0085166 | TPI-E0000538 |
| AND_EF0001943 | AND_EF0085192 | TPI-E0000539 |
| AND_EF0002152 | AND_EF0085196 | TPI-E0000542 |
| AND_EF0002533 | AND_EF0085197 | TPI-E0000543 |
| AND_EF0002534 | AND_EF0085272 | TPI-E0000544 |
| AND_EF0002724 | AND_EF0085273 | TPI-E0000549 |
| AND_EF0003204 | AND_EF0085314 | TPI-E0000552 |
| AND_EF0003534 | AND_EF0085351 | TPI-E0000557 |
| AND_EF0003535 | AND_EF0085378 | TPI-E0000560 |
| AND_EF0003541 | AND_EF0085384 | TPI-E0000579 |

**A150**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

## DOCUMENTS REVIEWED AND/OR RELIED UPON

| Andrew Documents: | | TruePosition Documents: |
|---|---|---|
| Document IDs | Document IDs | Document IDs |
| AND_EF0003668 | AND_EF0085387 | TPI-E0000586 |
| AND_EF0003682 | AND_EF0085394 | TPI-E0000587 |
| AND_EF0003951 | AND_EF0085395 | TPI-E0000588 |
| AND_EF0004914 | AND_EF0085396 | TPI-E0000594 |
| AND_EF0005362 | AND_EF0085397 | TPI-E0000606 |
| AND_EF0012597 | AND_EF0085398 | TPI-E0000607 |
| AND_EF0012635 | AND_EF0085408 | TPI-E0000610 |
| AND_EF0012677 | AND_EF0085423 | TPI-E0000613 |
| AND_EF0012679 | AND_EF0085560 | TPI-E0000617 |
| AND_EF0012686 | AND_EF0085574 | TPI-E0000625 |
| AND_EF0013075 | AND_EF0085596 | TPI-E0001129 |
| AND_EF0013076 | AND_EF0085616 | TPI-E0001420 |
| AND_EF0013121 | AND_EF0085649 | TPI-E0001886 |
| AND_EF0013154 | AND_EF0085651 | TPI-E0001887 |
| AND_EF0013155 | AND_EF0085652 | TPI-E0001888 |
| AND_EF0013203 | AND_EF0085663 | TPI-E0001889 |
| AND_EF0013273 | AND_EF0085716 | TPI-E0001890 |
| AND_EF0013293 | AND_EF0085793 | TPI-E0001891 |
| AND_EF0013294 | AND_EF0085794 | TPI-E0001893 |
| AND_EF0013295 | AND_EF0085810 | TPI-E0001894 |
| AND_EF0013297 | AND_EF0085815 | TPI-E0001898 |
| AND_EF0013305 | AND_EF0085817 | TPI-E0001899 |
| AND_EF0013328 | AND_EF0085818 | TPI-E0001900 |
| AND_EF0013329 | AND_EF0085831 | TPI-E0001901 |
| AND_EF0013331 | AND_EF0085847 | TPI-E0001902 |
| AND_EF0013332 | AND_EF0085850 | TPI-E0001903 |
| AND_EF0013345 | AND_EF0085877 | TPI-E0001904 |
| AND_EF0013414 | AND_EF0085878 | TPI-E0001905 |
| AND_EF0013489 | AND_EF0085984 | TPI-E0001999 |
| AND_EF0013498 | AND_EF0086046 | TPI-E0002000 |
| AND_EF0013515 | AND_EF0086203 | TPI-E0002001 |
| AND_EF0013516 | AND_EF0086204 | TPI-E0002002 |
| AND_EF0013517 | AND_EF0086206 | TPI-E0002004 |
| AND_EF0013519 | AND_EF0086367 | TPI-E0002007 |
| AND_EF0013520 | AND_EF0086389 | TPI-E0002008 |
| AND_EF0013521 | AND_EF0086445 | TPI-E0002011 |
| AND_EF0013522 | AND_EF0086446 | TPI-E0002022 |
| AND_EF0013589 | AND_EF0086485 | TPI-E0002044 |
| AND_EF0013611 | AND_EF0086565 | TPI-E0002051 |
| AND_EF0013615 | AND_EF0086574 | TPI-E0002054 |
| AND_EF0013616 | AND_EF0086587 | TPI-E0002057 |
| AND_EF0013634 | AND_EF0086599 | TPI-E0002065 |
| AND_EF0013650 | AND_EF0086627 | TPI-E0002066 |
| AND_EF0013651 | AND_EF0086638 | TPI-E0002072 |
| AND_EF0013668 | AND_EF0086659 | TPI-E0002082 |
| AND_EF0013669 | AND_EF0086682 | TPI-E0002085 |
| AND_EF0013670 | AND_EF0086683 | TPI-E0002086 |
| AND_EF0013735 | AND_EF0086685 | TPI-E0002108 |
| AND_EF0013736 | AND_EF0086782 | TPI-E0002117 |
| AND_EF0013767 | AND_EF0086800 | TPI-E0002118 |
| AND_EF0013768 | AND_EF0086801 | TPI-E0002120 |
| AND_EF0013769 | AND_EF0086819 | TPI-E0002137 |
| AND_EF0013773 | AND_EF0086937 | TPI-E0002155 |
| AND_EF0013593 | AND_EF0086939 | TPI-E0002156 |
| AND_EF0014017 | AND_EF0086940 | TPI-E0002159 |
| AND_EF0014026 | AND_EF0087071 | TPI-E0002161 |
| AND_EF0014053 | AND_EF0087136 | TPI-E0002168 |
| AND_EF0014056 | AND_EF0091946 | TPI-E0002175 |

**A151**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Documents:                                              TruePosition Documents:

| Document IDs | Document IDs | Document IDs |
|---|---|---|
| AND_EF0014057 | AND_EF0091990 | TPI-E0002176 |
| AND_EF0014058 | AND_EF0091991 | TPI-E0002181 |
| AND_EF0014061 | AND_EF0092091 | TPI-E0002186 |
| AND_EF0014066 | AND_EF0092127 | TPI-E0002187 |
| AND_EF0014067 | AND_EF0092140 | TPI-E0002188 |
| AND_EF0014068 | AND_EF0092141 | TPI-E0002196 |
| AND_EF0014070 | AND_EF0092342 | TPI-E0002201 |
| AND_EF0014072 | AND_EF0092395 | TPI-E0002205 |
| AND_EF0014074 | AND_EF0092396 | TPI-E0002206 |
| AND_EF0014075 | AND_EF0092397 | TPI-E0002211 |
| AND_EF0014202 | AND_EF0092398 | TPI-E0002220 |
| AND_EF0014213 | AND_EF0092399 | TPI-E0002223 |
| AND_EF0014320 | AND_EF0092400 | TPI-E0002224 |
| AND_EF0014362 | AND_EF0092406 | TPI-E0002225 |
| AND_EF0014701 | AND_EF0092411 | TPI-E0002227 |
| AND_EF0014703 | AND_EF0092412 | TPI-E0002228 |
| AND_EF0014704 | AND_EF0092444 | TPI-E0002232 |
| AND_EF0014705 | AND_EF0092445 | TPI-E0002234 |
| AND_EF0014706 | AND_EF0092451 | TPI-E0002248 |
| AND_EF0014707 | AND_EF0092452 | TPI-E0002258 |
| AND_EF0014709 | AND_EF0092453 | TPI-E0002259 |
| AND_EF0014710 | AND_EF0092454 | TPI-E0002260 |
| AND_EF0014712 | AND_EF0092464 | TPI-E0002275 |
| AND_EF0015012 | AND_EF0092505 | TPI-E0002281 |
| AND_EF0015051 | AND_EF0092509 | TPI-E0002282 |
| AND_EF0015083 | AND_EF0092582 | TPI-E0002294 |
| AND_EF0015130 | AND_EF0092594 | TPI-E0002297 |
| AND_EF0015161 | AND_EF0092606 | TPI-E0002298 |
| AND_EF0015162 | AND_EF0092646 | TPI-E0002305 |
| AND_EF0015175 | AND_EF0092680 | TPI-E0002306 |
| AND_EF0015176 | AND_EF0092691 | TPI-E0002313 |
| AND_EF0015177 | AND_EF0092692 | TPI-E0002314 |
| AND_EF0015198 | AND_EF0092695 | TPI-E0002315 |
| AND_EF0015210 | AND_EF0092712 | TPI-E0002316 |
| AND_EF0015215 | AND_EF0092715 | TPI-E0002322 |
| AND_EF0015216 | AND_EF0092716 | TPI-E0002327 |
| AND_EF0015217 | AND_EF0092718 | TPI-E0002329 |
| AND_EF0015218 | AND_EF0092720 | TPI-E0002334 |
| AND_EF0015219 | AND_EF0092723 | TPI-E0002342 |
| AND_EF0015220 | AND_EF0092735 | TPI-E0002353 |
| AND_EF0015222 | AND_EF0092736 | TPI-E0002362 |
| AND_EF0015223 | AND_EF0092742 | TPI-E0002364 |
| AND_EF0015366 | AND_EF0092748 | TPI-E0002366 |
| AND_EF0015368 | AND_EF0092749 | TPI-E0002371 |
| AND_EF0015370 | AND_EF0092750 | TPI-E0002372 |
| AND_EF0015371 | AND_EF0092754 | TPI-E0002378 |
| AND_EF0015372 | AND_EF0092778 | TPI-E0002379 |
| AND_EF0015374 | AND_EF0092845 | TPI-E0002380 |
| AND_EF0015376 | AND_EF0092867 | TPI-E0002384 |
| AND_EF0015379 | AND_EF0092983 | TPI-E0002386 |
| AND_EF0015380 | AND_EF0093024 | TPI-E0002390 |
| AND_EF0015396 | AND_EF0093030 | TPI-E0002392 |
| AND_EF0015405 | AND_EF0093045 | TPI-E0002399 |
| AND_EF0015407 | AND_EF0093047 | TPI-E0002400 |
| AND_EF0015439 | AND_EF0093048 | TPI-E0002403 |
| AND_EF0015453 | AND_EF0093049 | TPI-E0002405 |
| AND_EF0015465 | AND_EF0093055 | TPI-E0002406 |
| AND_EF0015469 | AND_EF0093101 | TPI-E0002408 |

**A152**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

| Andrew Documents: | | TruePosition Documents: |
|---|---|---|
| Document IDs | Document IDs | Document IDs |
| AND_EF0015474 | AND_EF0093123 | TPI-E0002415 |
| AND_EF0015475 | AND_EF0093129 | TPI-E0002417 |
| AND_EF0015476 | AND_EF0093154 | TPI-E0002443 |
| AND_EF0015481 | AND_EF0093155 | TPI-E0002464 |
| AND_EF0015485 | AND_EF0093199 | TPI-E0002472 |
| AND_EF0015486 | AND_EF0093242 | TPI-E0002473 |
| AND_EF0015497 | AND_EF0093251 | TPI-E0002475 |
| AND_EF0015498 | AND_EF0093272 | TPI-E0002476 |
| AND_EF0015504 | AND_EF0093273 | TPI-E0002477 |
| AND_EF0015505 | AND_EF0093347 | TPI-E0002480 |
| AND_EF0015525 | AND_EF0093382 | TPI-E0002481 |
| AND_EF0015555 | AND_EF0093385 | TPI-E0002486 |
| AND_EF0015576 | AND_EF0093386 | TPI-E0002487 |
| AND_EF0015594 | AND_EF0104461 | TPI-E0002490 |
| AND_EF0015607 | AND_EF0104471 | TPI-E0002492 |
| AND_EF0015625 | AND_EF0104472 | TPI-E0002493 |
| AND_EF0015628 | AND_EF0104540 | TPI-E0002507 |
| AND_EF0015640 | AND_EF0104554 | TPI-E0002508 |
| AND_EF0015641 | AND_EF0104629 | TPI-E0002511 |
| AND_EF0015651 | AND_EF0104632 | TPI-E0002539 |
| AND_EF0015680 | AND_EF0104972 | TPI-E0002541 |
| AND_EF0015682 | AND_EF0104974 | TPI-E0002544 |
| AND_EF0015687 | AND_EF0105022 | TPI-E0002557 |
| AND_EF0015688 | AND_EF0105098 | TPI-E0002562 |
| AND_EF0015702 | AND_EF0105202 | TPI-E0002565 |
| AND_EF0015712 | AND_EF0105203 | TPI-E0002567 |
| AND_EF0015716 | AND_EF0105358 | TPI-E0002573 |
| AND_EF0015717 | AND_EF0105432 | TPI-E0002576 |
| AND_EF0015723 | AND_EF0105433 | TPI-E0002577 |
| AND_EF0015724 | AND_EF0105459 | TPI-E0002592 |
| AND_EF0015744 | AND_EF0105462 | TPI-E0002598 |
| AND_EF0015747 | AND_EF0105498 | TPI-E0002601 |
| AND_EF0015808 | AND_EF0105516 | TPI-E0002603 |
| AND_EF0015809 | AND_EF0105523 | TPI-E0002604 |
| AND_EF0015810 | AND_EF0105785 | TPI-E0002605 |
| AND_EF0015830 | AND_EF0106745 | TPI-E0002606 |
| AND_EF0015835 | AND_EF0106937 | TPI-E0002610 |
| AND_EF0015836 | AND_EF0106971 | TPI-E0002611 |
| AND_EF0015837 | AND_EF0109530 | TPI-E0002613 |
| AND_EF0015838 | AND_EF0109593 | TPI-E0002615 |
| AND_EF0015839 | AND_EF0109601 | TPI-E0002618 |
| AND_EF0015840 | AND_EF0109833 | TPI-E0002620 |
| AND_EF0015848 | AND_EF0119095 | TPI-E0002623 |
| AND_EF0015853 | AND_EF0121055 | TPI-E0002624 |
| AND_EF0015854 | AND_EF0121065 | TPI-E0002626 |
| AND_EF0015860 | AND_EF0121138 | TPI-E0002627 |
| AND_EF0015861 | AND_EF0121141 | TPI-E0002629 |
| AND_EF0015863 | AND_EF0121143 | TPI-E0002630 |
| AND_EF0015870 | AND_EF0121144 | TPI-E0002634 |
| AND_EF0015915 | AND_EF0121145 | TPI-E0002638 |
| AND_EF0015929 | AND_EF0121383 | TPI-E0002639 |
| AND_EF0015940 | AND_EF0121388 | TPI-E0002641 |
| AND_EF0015948 | AND_EF0121392 | TPI-E0002642 |
| AND_EF0015949 | AND_EF0121403 | TPI-E0002644 |
| AND_EF0015952 | AND_EF0121429 | TPI-E0002646 |
| AND_EF0015955 | AND_EF0121453 | TPI-E0002655 |
| AND_EF0015956 | AND_EF0121455 | TPI-E0002656 |
| AND_EF0015957 | AND_EF0121467 | TPI-E0002672 |

**A153**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

## DOCUMENTS REVIEWED AND/OR RELIED UPON

| Andrew Documents: | | TruePosition Documents: |
|---|---|---|
| Document IDs | Document IDs | Document IDs |
| AND_EF0015959 | AND_EF0121565 | TPI-E0002676 |
| AND_EF0015960 | AND_EF0121567 | TPI-E0002679 |
| AND_EF0015965 | AND_EF0121570 | TPI-E0002683 |
| AND_EF0015972 | AND_EF0121574 | TPI-E0002686 |
| AND_EF0015978 | AND_EF0121640 | TPI-E0002687 |
| AND_EF0015989 | AND_EF0121641 | TPI-E0002688 |
| AND_EF0015990 | AND_EF0121674 | TPI-E0002691 |
| AND_EF0016007 | AND_EF0124739 | TPI-E0002692 |
| AND_EF0016030 | AND_EF0126497 | TPI-E0002693 |
| AND_EF0016014 | AND_EF121717 | TPI-E0002695 |
| AND_EF0016017 | AND_EF121718 | TPI-E0002702 |
| AND_EF0016023 | AND_EF121719 | TPI-E0002705 |
| AND_EF0016045 | AND_EF121721 | TPI-E0002709 |
| AND_EF0016050 | AND_EF121725 | TPI-E0002710 |
| AND_EF0016057 | AND_EF121726 | TPI-E0002713 |
| AND_EF0016058 | AND_EF121727 | TPI-E0002719 |
| AND_EF0016076 | AND_EF121728 | TPI-E0002720 |
| AND_EF0016077 | AND_EF121739 | TPI-E0002735 |
| AND_EF0016078 | AND_EF121744 | TPI-E0002738 |
| AND_EF0016079 | AND_EF121745 | TPI-E0002739 |
| AND_EF0016080 | AND_EF121746 | TPI-E0002740 |
| AND_EF0016081 | AND_EF122166 | TPI-E0002743 |
| AND_EF0016082 | AND_EF122886 | TPI-E0002745 |
| AND_EF0016083 | AND_EF123763 | TPI-E0002747 |
| AND_EF0016098 | AND_EF124781 | TPI-E0002748 |
| AND_EF0016122 | AND_EF124841 | TPI-E0002749 |
| AND_EF0016141 | AND_EF125665 | TPI-E0002750 |
| AND_EF0016166 | AND_EF125984 | TPI-E0002751 |
| AND_EF0016169 | AND_EF126031 | TPI-E0002755 |
| AND_EF0016171 | AND_EF126635 | TPI-E0002756 |
| AND_EF0016180 | AND_EF126801 | TPI-E0002758 |
| AND_EF0016181 | AND_EF126805 | TPI-E0002769 |
| AND_EF0016184 | AND_EF126815 | TPI-E0002771 |
| AND_EF0016185 | AND_EF126831 | TPI-E0002772 |
| AND_EF0016186 | AND_EF127655 | TPI-E0002773 |
| AND_EF0016189 | AND_EF127807 | TPI-E0002774 |
| AND_EF0016190 | AND_EF130569 | TPI-E0002778 |
| AND_EF0016201 | AND_EF130947 | TPI-E0002779 |
| AND_EF0016213 | AND_EF131135 | TPI-E0002780 |
| AND_EF0016214 | AND_EF131463 | TPI-E0002781 |
| AND_EF0016216 | AND_EF131539 | TPI-E0002790 |
| AND_EF0016229 | AND_EF131575 | TPI-E0002791 |
| AND_EF0016230 | AND_EF133542 | TPI-E0002793 |
| AND_EF0016234 | AND_EF134489 | TPI-E0002795 |
| AND_EF0016264 | AND_EF135460 | TPI-E0002796 |
| AND_EF0016327 | AND_EF135470 | TPI-E0002798 |
| AND_EF0016389 | AND_EF135472 | TPI-E0002800 |
| AND_EF0016441 | AND_EF135473 | TPI-E0002803 |
| AND_EF0016444 | AND_EF135474 | TPI-E0002807 |
| AND_EF0016447 | AND_EF135475 | TPI-E0002809 |
| AND_EF0016484 | AND_EF135477 | TPI-E0002812 |
| AND_EF0016502 | AND_EF135478 | TPI-E0002814 |
| AND_EF0016530 | AND_EF135486 | TPI-E0002815 |
| AND_EF0016531 | AND_EF135494 | TPI-E0002816 |
| AND_EF0016535 | AND_EF135498 | TPI-E0000307 |
| AND_EF0016556 | AND_EF135516 | TPI-E0003898 |
| AND_EF0016557 | AND_EF135530 | TPI-E000615 |
| AND_EF0016558 | AND_EF135531 | TPI-E000616 |

*A154*

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

## DOCUMENTS REVIEWED AND/OR RELIED UPON

| Andrew Documents: | | TruePosition Documents: |
|---|---|---|
| Document IDs | Document IDs | Document IDs |
| AND_EF0016607 | AND_EF135534 | TPI-E0012289 |
| AND_EF0016608 | AND_EF135536 | TPI-E0012291 |
| AND_EF0016637 | AND_EF135537 | TPI-E0012295 |
| AND_EF0016645 | AND_EF135538 | TPI-E0012300 |
| AND_EF0016665 | AND_EF135546 | TPI-E0012301 |
| AND_EF0016685 | AND_EF135548 | TPI-E0012302 |
| AND_EF0016686 | AND_EF135552 | TPI-E0012303 |
| AND_EF0016687 | AND_EF135557 | TPI-E0012312 |
| AND_EF0016709 | AND_EF135562 | TPI-E0012317 |
| AND_EF0016710 | AND_EF135563 | TPI-E0012325 |
| AND_EF0016756 | AND_EF135564 | TPI-E0012328 |
| AND_EF0016815 | AND_EF135566 | TPI-E0012336 |
| AND_EF0016816 | AND_EF135567 | TPI-E0012337 |
| AND_EF0016819 | AND_EF135568 | TPI-E0012338 |
| AND_EF0016820 | AND_EF135569 | TPI-E0012339 |
| AND_EF0016868 | AND_EF135570 | TPI-E0012343 |
| AND_EF0016888 | AND_EF135571 | TPI-E0012268 |
| AND_EF0016919 | AND_EF135573 | TPI-E0012965 |
| AND_EF0016920 | AND_EF135579 | TPI-E0014631 |
| AND_EF0016944 | AND_EF135580 | TPI-E0014646 |
| AND_EF0016946 | AND_EF135581 | TPI-E0014648 |
| AND_EF0016947 | AND_EF135583 | TPI-E0014650 |
| AND_EF0016959 | AND_EF135584 | TPI-E0015146 |
| AND_EF0016960 | AND_EF135585 | TPI-E0015148 |
| AND_EF0016979 | AND_EF135594 | TPI-E0015149 |
| AND_EF0017136 | AND_EF135600 | TPI-E0015191 |
| AND_EF0017250 | AND_EF135603 | TPI-E0015194 |
| AND_EF0017252 | AND_EF135606 | TPI-E0015201 |
| AND_EF0017255 | AND_EF135607 | TPI-E0015226 |
| AND_EF0017256 | AND_EF135610 | TPI-E0015227 |
| AND_EF0017261 | AND_EF135612 | TPI-E0015371 |
| AND_EF0017305 | AND_EF135613 | TPI-E0015374 |
| AND_EF0017322 | AND_EF135614 | TPI-E0015408 |
| AND_EF0017346 | AND_EF135620 | TPI-E0015412 |
| AND_EF0017385 | AND_EF135621 | TPI-E0015413 |
| AND_EF0017386 | AND_EF135622 | TPI-E0015419 |
| AND_EF0017426 | AND_EF135623 | TPI-E0015420 |
| AND_EF0017427 | AND_EF135625 | TPI-E0015421 |
| AND_EF0017434 | AND_EF135626 | TPI-E0015422 |
| AND_EF0017446 | AND_EF135645 | TPI-E0015423 |
| AND_EF0017447 | AND_EF135648 | TPI-E0015424 |
| AND_EF0017467 | AND_EF135660 | TPI-E0015425 |
| AND_EF0017495 | AND_EF135661 | TPI-E0015426 |
| AND_EF0017503 | AND_EF135663 | TPI-E0015427 |
| AND_EF0017579 | AND_EF135664 | TPI-E0015428 |
| AND_EF0017601 | AND_EF135665 | TPI-E0015429 |
| AND_EF0017605 | AND_EF135666 | TPI-E0015430 |
| AND_EF0017606 | AND_EF135668 | TPI-E0016508 |
| AND_EF0017644 | AND_EF135671 | TPI-E0016509 |
| AND_EF0017652 | AND_EF135672 | TPI-E0016510 |
| AND_EF0017676 | | TPI-E0016511 |
| AND_EF0017686 | | TPI-E0016512 |
| | | TPI-E0016513 |
| | | TPI-E0016514 |
| | | TPI-E0016515 |
| | | TPI-E0016516 |
| | | TPI-E0016517 |
| | | TPI-E0016518 |

**A155**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Documents:

TruePosition Documents:

| Document IDs |
| --- |
| TPI-E0016548 |
| TPI-E0016549 |
| TPI-E0017104 |
| TPI-E0017105 |
| TPI-E0017106 |
| TPI-E0017107 |
| TPI-E0017108 |
| TPI-E0017109 |
| TPI-E0017110 |
| TPI-E0017111 |
| TPI-E0017112 |
| TPI-E0017113 |
| TPI-E0017114 |
| TPI-E0017115 |
| TPI-E0017116 |
| TPI-E0017117 |
| TPI-E0017118 |
| TPI-E0017119 |
| TPI-E0017120 |
| TPI-E0017121 |
| TPI-E0017122 |
| TPI-E0017123 |
| TPI-E0017124 |
| TPI-E0017125 |
| TPI-E0017126 |
| TPI-E0017127 |
| TPI-E0017128 |
| TPI-E0017129 |
| TPI-E0017130 |
| TPI-E0017131 |
| TPI-E0017132 |
| TPI-E0017133 |
| TPI-E0017134 |
| TPI-E0017135 |
| TPI-E0017136 |
| TPI-E0017137 |
| TPI-E0017138 |
| TPI-E0017139 |
| TPI-E0017140 |
| TPI-E0017141 |
| TPI-E0017142 |
| TPI-E0017143 |
| TPI-E0017144 |
| TPI-E0017145 |
| TPI-E0017146 |
| TPI-E0017147 |
| TPI-E0017148 |
| TPI-E0017149 |
| TPI-E0017150 |
| TPI-E0017151 |
| TPI-E0017152 |
| TPI-E0017153 |
| TPI-E0017154 |
| TPI-E0017155 |
| TPI-E0017156 |
| TPI-E0017157 |
| TPI-E0017158 |
| TPI-E0017159 |

**A156**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Documents:

TruePosition Documents:

| Document IDs |
|---|
| TPI-E0017160 |
| TPI-E0017161 |
| TPI-E0017162 |
| TPI-E0017163 |
| TPI-E0017164 |
| TPI-E0017165 |
| TPI-E0017166 |
| TPI-E0017167 |
| TPI-E0017168 |
| TPI-E0017169 |
| TPI-E0017170 |
| TPI-E0017173 |
| TPI-E0017174 |
| TPI-E0017175 |
| TPI-E0017176 |
| TPI-E0017178 |
| TPI-E0017179 |
| TPI-E0017180 |
| TPI-E0017181 |
| TPI-E0017182 |
| TPI-E0017183 |
| TPI-E0017184 |
| TPI-E0017185 |
| TPI-E0017186 |
| TPI-E0017187 |
| TPI-E0017188 |
| TPI-E0017616 |
| TPI-E0017617 |
| TPI-E0017618 |
| TPI-E0017619 |
| TPI-E0017620 |
| TPI-E0017621 |
| TPI-E0017654 |
| TPI-E0017655 |

**A157**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Andrew Bid Documents:

Andrew Corporation Bid Bond for Saudi Telecom Bid.
Andrew Corporation Bid Volume 1.3: General Statement of Compliance, December 11, 2004.
Andrew Corporation Bid Volume 2: Executive Summary for STC VAS Tender, December 11, 2004.
Andrew Corporation Bid Volume 3.1: Statement of Compliance to Part A, December 11, 2004.
Andrew Corporation Bid Volume 3.2: Statement of Compliance for Pre-Qualification Submission, December 11, 2004.
Andrew Corporation Bid Volume 6.1: Statement of Compliance to Part A.
Andrew Corporation Bid Volume 6.2: Statement of Compliance to Scope of Work and General and Technical Specifications.
Andrew Corporation Bid Volume 6: Special Conditions or Reservations for Parts B & C.
Andrew Corporation Bid Volume 7.2: Contract Units Level 1 (Without Prices).
Andrew Corporation Bid Volume 7.2: Spares Parts List.
Andrew Corporation Bid: "About Andrew Corporation."
Andrew Corporation Bid: Abis Monitoring Unit Specifications Sheet, 2003.
Andrew Corporation Bid: Andrew Middle East License for United Arab Emirates.
Andrew Corporation Bid: Audited Financial Information from the 2003 Andrew Corporation Annual Report.
Andrew Corporation Bid: Geolocation Control System Specifications Sheet, 2002.
Andrew Corporation Bid: Information About the Tenderer.
Andrew Corporation Bid: Secretary's Certificate of the Establishment of Andrew Middle East, July 20, 2004.
Andrew Corporation Bid: Spreadsheet of GSME7 VAS Level 1 Prices.
Andrew Corporation Bid: Statement of Compliance for LBS, December 11, 2004.
Andrew Corporation Bid: The Almischal Group Company Overview, February 9, 2002.
Andrew Corporation Bid: Wireless Location Sensor Specifications Sheet, 2002.
Andrew Corporation Flowchart of Andrew-Local Partner Business Model.
Andrew Corporation Offer for the GSM VAS Project: Commercial Tender Package 1.
Andrew Corporation Offer for the GSM VAS Project: Technical Tender Package 2,
Andrew Corporation Proposal Cost Estimate Spreadsheets.
Andrew Corporation Proposal Volume 7: Technical.
Andrew Corporation Proposal: STC Pricing for 6 Scenarios.
Andrew Corporation Response to Request for Information, June 2004.
Andrew Corporation Rough Estimates for the Project Costs.
EXI Saudi Arabia Ltd. Bid Application: Financial Statements, December 31, 2001.
EXI Saudi Arabia Ltd. Bid Application: Financial Statements, December 31, 2002.
EXI Saudi Arabia Ltd. Bid Application: Financial Statements, December 31, 2003.
EXI Saudi Arabia Ltd. Bid Application: Information About the Tenderer.
EXI Saudi Arabia Ltd. Bid Application: Introduction to Our Company.
EXI Saudi Arabia Ltd. Bid Application: Part A, Section S02.
EXI Saudi Arabia Ltd. Bid Application: Tables of Noviacom projects in Saudi Arabia.


TruePosition Bid Documents:

The Evolution and Comparison of TruePosition Location Capabilities, Prepared for Saudi Telecom (STC), September 15, 2005.
Proposal for Deployment of the Finder System for Safety and Security Applications, Prepared for Qatar Telecom (Q-Tel),
    Proposal Number #275-QAT0604MW-1, April 13, 2006.
Reply to Request for Proposal, Location-Based Services (LBS) Platform, Executive Summary, December 2004.


Andrew Correspondence:

Email from Eissa Mohammed to Terry Garner, Dave Cushman, and Joe Kennedy, "RE: Andrew Information," August 15, 2005.
Letter from Andrew Network Solutions to Saudi Telecom Company, "Letter of Offer for the GSM VAS Project," December 11, 2004.
Letter from Terry Garner to Dr. Ziyad Al-Otaibi, "Re: Andrew Lbis UTDOA Pricing Proposal," June 27, 2005.


TruePosition Correspondence:

Email from Paul Czarnecki, "STC News and ** Strong forecast for LMUs to be delivered in April**," January 9, 2005.
Email from Mike McGoldrick, "Status Report," July 6, 2005.
Letter from Paul Czarnecki to Dr. Zyed Al-Etaibi, July 21, 2005.

**A158**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

APPENDIX B

DOCUMENTS REVIEWED AND/OR RELIED UPON

Other Andrew Documents:

Press Release, Andrew Corp., "Andrew Corporation Reports Record Sales of $599 Million for Fourth Quarter Fiscal 2006 and Record Sales of $2.146 Billion for Fiscal 2006," October 26, 2006.

Other TruePosition Documents:

TruePosition Five-Year Business Plan, Prepared for Liberty Media Corporation, May 2005.
TruePosition, Inc. White Paper, "An Examination of U-TDOA and Other Wireless Location Technologies: Their Evolution and Their Impact on Today's Wireless Market," 2004.
TruePosition, Inc. White Paper, "U.S. Poised to Capitalize on Location Services," 2004.
TruePosition, Inc., "Wireless Location Solutions for Homeland Security," 2005.

Electronic Files:

File: 173-STC0505DM-1.pdf.
File: AND_EF0D00317_Andrew-UPL-UTDOA-GSM-VAS-FINAL-DEC20-2005.xls.
File: AND_EF0013076.xls.
File: AND_EF0085127.xls.
File: AND_EF0085130.xls.
File: Attachment-Saudi Telecom Co_Trial Cost Analysis - (1_21_04)1.xls.
File: Business Plan Slides_05.02.05.ppt (TPI-E0001902).
File: Copy of Andrew GAAP Statements Final.mcho.ANSinput.revised.xls.
File: Finder Business Plan.doc (TPI-E0012301).
File: QatarPricing_04.13.06.xls.
File: QatarPricing_05.12.06.xls.
File: STC_PricingUpdate_05.02.05_TP.xls.
File: STCRFP_FinalPricing_12.07.04.xls.
File: TruePosition_Synopsis_15Sep05.doc.

Legal Documents:

Andrew Corporation's Answer and Counterclaim to Second Amended Complaint, with exhibits, June 20, 2006.
Andrew Corporation's Responses to TruePosition's Second Set of Requests for Admission, July 31, 2006.
Andrew Corporation's Responses to TruePosition's First Set of Interrogatories, April 7, 2006.
Andrew Corporation's Responses to TruePosition's First Set of Requests for Admission. April 7, 2006.
Andrew Corporation's Responses to TruePosition's Second Set of Interrogatories, July 17, 2006.
Andrew Corporation's Supplemental Responses to TruePosition's First Set of Interrogatories, June 23, 2006.
Plaintiff's Responses to Defendant's First Interrogatories, May 1, 2006.
Plaintiff's Second Supplemental Responses to Defendant's First Interrogatories, August 1, 2006.
Plaintiff's Supplemental Responses to Defendant's First Interrogatories, May 22, 2006.
Plaintiff's Third Supplemental Responses to Defendant's First Interrogatories, August 9, 2006.
Settlement Agreement By TruePosition, Inc., KSI, Inc., Allen Telecom L.L.C., and Andrew Corporation, January 16, 2004.
TruePosition Pricing Update for Saudi Telecom Company, May 2, 2005.
TruePosition's Reply to Andrew Corporation's Answer and Counterclaim to Second Amended Complaint, July 5, 2006.
TruePosition's Second Amended Complaint for Patent Infringement, with exhibits, May 30, 2006.
U.S. Patent No. 5,327,144.

Depositions:

Deposition of Andrew Beck, September 22, 2006, with exhibits.
Deposition of David McHoul, November 16, 2006 [ROUGH].
Deposition of Douglass Hall, Jr., October 24, 2006, with exhibits.
Deposition of Gary Brown, November 7, 2006, with exhibits.
Deposition of James T. McDaniel, September 29, 2006, with exhibits.
Deposition of John C. Webber, October 4, 2006.
Deposition of John Carlson, October 16, 2006.
Deposition of Joseph P. Kennedy, Jr., October 16, 2006, with exhibits.
Deposition of Joseph P. Kennedy, Jr., Second Rule 30(b)(6), November 9, 2006, with exhibits.
Deposition of Joseph P. Kennedy, Jr., Third Rule 30(b)(6), November 9, 2006, with exhibits.
Deposition of Joseph P. Kennedy, Jr., Vol. 1, October 17, 2006, with exhibits.
Deposition of Joseph P. Kennedy, Jr., Vol. 2, October 17, 2006, with exhibits.
Deposition of Joseph Sheehan, November 17, 2006 [ROUGH].

A159

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## APPENDIX B

### DOCUMENTS REVIEWED AND/OR RELIED UPON

Deposition of Joseph Sheehan, October 19, 2006.
Deposition of Michael Hoppman, May 22, 2003.
Deposition of Michael Hoppman, November 15, 2006 [ROUGH].
Deposition of Michael Hoppman, October 3, 2006.
Deposition of Mohamed Eissa, October 31, 2006, with exhibits.
Deposition of Randy B. Wynn, October 10, 2006, with exhibits.
Deposition of Robert James Anderson, September 21, 2006, with exhibits.
Deposition of Terry N. Garner, September 27, 2006, with exhibits.
Deposition of Titshiang Alan Li, October 14, 2006.


Financial Documents:

Andrew Corp., 2005 Annual Report.
Andrew Corp., SEC Form 10-K (2005).
Andrew Corp., SEC Form 10-K (2004).
Andrew Corp., SEC Form 10-K (2003).
Andrew Corp., SEC Form 10-K (2002).
Andrew Corp., SEC Form 10-K (2001).
Andrew Corp., SEC Form 10-K (2000).
Andrew Corp., SEC Form 10-K (1999).
Andrew Corp., SEC Form 10-K (1998).
Liberty Media Holding Corp., SEC Form 10-K (2005).
Liberty Media Holding Corp., SEC Form S-4 (filed March 15, 2006).


Internet Documents:

http://www.andrew.com/pressroom/pressreleases/English/4683.aspx (accessed September 13, 2006).
http://www.andrew.com/pressroom/pressreleases/English/4977.aspx (accessed September 13, 2006).
http://www.andrew.com/about/time_zone.aspx (accessed September 13, 2006).
http://www.andrew.com/products/Geometrix/capabilities.aspx (accessed September 13, 2006).
http://www.andrew.com/products/Geometrix (accessed October 11, 2006).
http://www.andrew.com/products/geometrix/mpdl/advantages-disadvan.aspx (accessed November 30, 2006).
http://www.andrew.com/products/geometrix/loc-serv-apps/app_loc_tech_svcs.aspx (accessed November 30, 2006).


Analyst Reports:

Capgemini, "The Location-Based Services Renaissance:  A New Formula for Success," February 2005.
Frost & Sullivan, "A Competitive Analysis of Tier 1 U.S. Wireless Carriers Post Consolidation," 2005.
Frost & Sullivan, "Consumer Location-based Services: Enhancing Carrier ARPU Through LBS," November 2005.
Frost & Sullivan, "North American Location-based Service Markets," 2003.
Frost & Sullivan, "U.S. E9-1-1 Market Insight," 2003.
Frost & Sullivan, "U.S. Location-based Service (LBS) Markets: Defining the Enterprise Opportunity," 2005.


Court Opinions:

Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc., 246 F.3d 1336, 1353 (Fed. Cir. 2001).
Micro Chemical, Inc., v. Lextron, Inc. 318 F.3d 1119, 1124 (Fed. Cir. 2003).
State Industries, Inc. v. Mor-Flo Industries, Inc., 883 F.2d 1573, 1578 (Fed. Cir. 1989).


Other:

Federal Reserve Statistical Release Form H.15, Secondary Market, 3-month T-Bill Rate.

A160

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

# EXHIBIT 1

## SUMMARY OF DAMAGES

    Lost Profits on STC Proposal: Scenario 1 —
[1]   Hardware, Software and Services
[2].  Spare Parts for VAS Elements
[3]   Ongoing Operation and Maintenance
[4] Total

    Lost Profits on STC Proposal: Scenario 2 —
[5]   Hardware, Software and Services
[6]   Spare Parts for VAS Elements
[7]   Ongoing Operation and Maintenance
[8] Total

    Lost Profits on Q-Tel Proposal —
[9]   Hardware, Software and Professional Services
[10]  Optional Components
[11]  Spares
[12]  Ongoing Annual Support
[13] Total

REDACTED

Notes & Sources:
[1] From Exhibit 7.
[2] From Exhibit 8.
[3] From Exhibit 9.
[4] = [1] + [2] + [3].
[5] From Exhibit 10.
[6] From Exhibit 11.
[7] From Exhibit 12.
[8] = [5] + [6] + [7].
[9] From Exhibit 13.
[10] From Exhibit 14.
[11] From Exhibit 15.
[12] From Exhibit 16.
[13] = [9] + [10] + [11] + [12].

**A161**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 2

TRUEPOSITION, INC.
INCOME STATEMENT - GAAP BASIS
MILLIONS

REDACTED

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 3

## ANDREW CORPORATION
### INCOME STATEMENT - GAAP BASIS
#### $MILLIONS

| | FY 2003 | | FY 2004 | | FY 2005 | | FY 2006 | | Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| | $ | % | $ | % | $ | % | $ | % | $ | % |
| **Sales:** | | | | | | | | | | |
| Antenna and Cable Products | | | | | | | | | | |
| Base Station Subsystems | | | | | | | | | | |
| Network Solutions | | | | | | | | | | |
| Wireless Innovations | | | | | | | | | | |
| Satellite Communications | | | | | | | | | | |
| Total Sales | | | | | | | | | | |
| Cost of Products Sold | | | | | | | | | | |
| Gross Profit | | | | | | | | | | |
| **Operating Expenses:** | | | | | | | | | | |
| Research and Development | | | | | | | | | | |
| Sales and Administrative | | | | | | | | | | |
| Intangible Amortization | | | | | | | | | | |
| Merger Costs | | | | | | | | | | |
| Pension Termination Gain | | | | | | | | | | |
| Restructuring | | | | | | | | | | |
| Asset Impairment | | | | | | | | | | |
| Loss (Gain) on Sale of Assets | | | | | | | | | | |
| Total Operating Expenses | | | | | | | | | | |
| **Operating Income:** | | | | | | | | | | |
| Antenna and Cable Products | | | | | | | | | | |
| Base Station Subsystems | | | | | | | | | | |
| Network Solutions | | | | | | | | | | |
| Wireless Innovations | | | | | | | | | | |
| Satellite Communications | | | | | | | | | | |
| Unallocated Sales and Admin/Intra-In-Costs | | | | | | | | | | |
| Intangible Amortization | | | | | | | | | | |
| Gain (Loss) on Sale of Assets | | | | | | | | | | |
| Gain on Termination of Jilins Pension Plan | | | | | | | | | | |
| Total Operating Income | | | | | | | | | | |
| **Other Expense (Income), Net:** | | | | | | | | | | |
| Interest Expense | | | | | | | | | | |
| Interest Income | | | | | | | | | | |
| Other Expense (Income), Net | | | | | | | | | | |
| Total Other Expense (Income), Net | | | | | | | | | | |
| Pretax Income | | | | | | | | | | |
| Income Taxes | | | | | | | | | | |
| Net Income | | | | | | | | | | |

Notes & Sources:
[1] Restated figures for FY 2003 and FY 2004 figures are used.
[2] Restated FY 2005 figures available in millions; all other figures available in thousands. Consequently, Sales and Operating Income totals are stated with a higher degree of accuracy than those reported in thousands.
Andrew Corporation's fiscal year ends September 30.
2003 through 2005 from Andrew Corporation, SEC Form 10-K for the fiscal year ended September 30, 2005, at 53 and 54-55.
2006 from Andrew Corp., "Andrew Corporation Reports Record Sales of $559 Million for Fourth Quarter Fiscal 2006 and Record Sales of $2,146 Billion for Fiscal 2006,"
October 26, 2006.

A163

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 4

ANDREW CORPORATION
NETWORK SOLUTIONS GROUP PROFIT AND LOSS STATEMENT
THOUSANDS

REDACTED

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 5

ANDREW CORPORATION
GEO BUSINESS UNIT PROFIT AND LOSS STATEMENT
THOUSANDS

REDACTED

**A165**

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

EXHIBIT 6

TRUEPOSITION BID TO STC (DECEMBER 7, 2004)

REDACTED

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 6

TRUEPOSITION BID TO STC (DECEMBER 7, 2004)

REDACTED

Page 2 of 2

**A167**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT 7**

**SCENARIO 1**
**TRUEPOSITION LOST PROFIT ON HARDWARE, SOFTWARE AND SERVICES**
**STC KINGDOM-WIDE BID –           LaMUS**

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

**REDACTED**

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

Notes & Sources:
[1] Assumes total rollout of           sites; see Exhibit 6.                     See AND0080258 and Deposition
    of Randy B. Wynn, October 10, 2006, at 149-51 and PX-146. Remaining sites divided equally among the years 2008 through 2010.
[2] Total from Exhibit 6. Revenue allocated according to proportion of sites deployed in each year ([1]), assuming that revenue is received one year after sites are deployed.
[3] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year           (the ratio of TruePosition Hardware, Software
    and Services Costs to TruePosition Hardware, Software and Services Revenue from Exhibit 6).
[4] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year           from Exhibit 17).
[5] = [2] - [3] - [4].
[6] Discount factor as follows, assuming mid-year cash flows:
    2006 from Exhibit 19.
    2007 through 2011 calculated as $1/(1+r)^y$, where $y$ is the number of years between the date of the given cash flow and December 1, 2006, and $r = 12\%$ is the
    rate from Copy of Andrew GAAP Statements Final.ncho.ANSinput.revised.xls, sheet "Summary Cash Flow."
[7] = [5] * [6].

**A168**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 8

### SCENARIO 1
### TRUEPOSITION LOST PROFIT ON SPARE PARTS FOR VAS ELEMENTS
### STC KINGDOM-WIDE BID -- ___ LMUS

REDACTED

[1] Sites Deployed

[2] Spare Parts Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

Notes & Sources:
[1] Assumes total rollout of ___ sites; see Exhibit 6.  Assumes that ___ ___ ___ ___ ___ See AND0080258 and Deposition
    of Randy B. Wynn, October 10, 2006, at 149-51 and PX-146.  Remaining sites divided equally among the years 2008 through 2010.
[2] Total from Exhibit 6.  Revenue allocated according to proportion of sites deployed in each year ([1]), assuming that revenue is received one year after sites are deployed.
    Elements Costs to TruePosition Spare Parts for VAS Elements Revenue from Exhibit 6).                    (the ratio of TruePosition Spare Parts for VAS
[3] Assumes that costs are incurred in year of deployment.  Calculated as [2] for the following year ___ ___ ___ ___ (from Exhibit 17).
[4] Assumes that costs are incurred in year of deployment.  Calculated as [2] for the following year.
[5] = [2] - [3] - [4].
[6] Discount factor as follows, assuming mid-year cash flows:
    2006 from Exhibit 19.
    2007 through 2011 calculated as 1 / (1 + r)$^y$, where y is the number of years between the date of the given cash flow and December 1, 2006, and r = 12% is the
    rate from Copy of Andrew GAAP Statements Final.molto.ANSinput.revised.xls, sheet "Summary Cash Flow."
[7] = [5] * [6].

A169

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER.

**EXHIBIT 9**

**SCENARIO 1**
**TRUEPOSITION LOST PROFIT ON ONGOING OPERATION AND MAINTENANCE**
**STC KINGDOM-WIDE BID – LMUS**

[1] Sites Deployed

[2] Hardware, Software and Services Revenue
[3] Cumulative Hardware, Software and Services Here
(Five Years Rolling)

[4] Ongoing Operation and Maintenance Revenue

REDACTED

[5] Costs

[6] Incremental Operating Expenses (4,656)

[7] Operating Profit

[8] Discount Factor to 12/1/2006

[9] Net Present Value

Notes & Sources:
[1] Assumes total rollout of [...] sites; see Exhibit 6.    See AND000025X and Deposition of Randy B. Wynn, October 10, 2006, at 146-51 and 195-196.
Remaining sites divided equally among the years 2008 through 2010.
[2] From Exhibit 7.
[3] Calculated as the sum of [2] over the given year and four previous years.
[4] Calculated as [3] for the given year    [...] (the ratio of TruePosition Ongoing Operation and Maintenance Revenue to TruePosition Hardware, Software and Services Revenue from Exhibit 01.  Assumes that each installment of Hardware, Software
and Services Revenue is associated with five years of Ongoing Operation and Maintenance Revenue.    (the years of Ongoing Operation and Maintenance Revenue
[5] Assumes that costs are incurred in year of deployment.  Calculated as [4] for the following year    (from Exhibit 17).
[6] Assumes that costs are incurred in year of deployment.  Calculated as [4] for the following year    (from Exhibit 17).
[7] = [4] + [5] + [6].
[8] Discount factor as follows, assuming mid-year cash flows:
2006 from Exhibit 19.
2007 through 2015 calculated as 1 / (1 + r)^y, where y is the number of years between the date of the given cash flow and December 1, 2006, and r = 12% is the rate from Copy of Andrew GAAP Statements Final.ember.ANSInput.revised.xls,
sheet "Summary Cash Flows".
[9] = [7] * [8].

**A170**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 10

### SCENARIO 2
### TRUEPOSITION LOST PROFIT ON HARDWARE, SOFTWARE AND SERVICES
### PHASE I AND PHASE II –    LMUS

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

REDACTED

Notes & Sources:
[1] Assumes that:                                                      See AND0080258 and Deposition
    of Randy B. Wynn, October 10, 2006, at 149-51 and PX-146.
[2] From Exhibit 7. Assumes that revenue is only received on sites deployed in 2006 and 2007, and that revenue is
    received one year after sites are deployed.
[3] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year
    (the ratio of TruePosition Hardware, Software and Services Costs to TruePosition Hardware, Software and Services
    Revenue from Exhibit 6).
[4] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year
    (from Exhibit 17).
[5] = [2] - [3] - [4].
[6] Discount factor as follows, assuming mid-year cash flows:
    2006 from Exhibit 19.
    2007 through 2011 calculated as $1 / (1 + r)^y$ where $y$ is the number of years between the date of the given cash flow
    and December 1, 2006, and $r = 12\%$ is the rate from.
    Copy of Andrew GAAP Statements Final.mcho.ANSInput.revised.xls, sheet "Summary Cash Flow."
[7] = [5] * [6].

A171

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 11

SCENARIO 2
TRUEPOSITION LOST PROFIT ON SPARE PARTS FOR VAS ELEMENTS
PHASE I AND PHASE II - LMUS

[1] Sites Deployed

[2] Spare Parts Revenue

[3] Costs                                    REDACTED

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

Notes & Sources:
[1] Assumes that _____        See AND0080258 and Deposition
    of Randy B. Wynn, October 10, 2006, at 149-51 and PX-146.
[2] From Exhibit 8. Assumes that revenue is only received on sites deployed in 2006 and 2007, and that revenue is
    received one year after sites are deployed.
[3] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year
    (the ratio of TruePosition Spare Parts for VAS Elements Costs to TruePosition Spare Parts for VAS Elements
    Revenue from Exhibit 6).
[4] Assumes that costs are incurred in year of deployment. Calculated as [2] for the following year
    (from Exhibit 17).
[5] = [2] - [3] - [4].
[6] Discount factor as follows, assuming mid-year cash flows:
    2006 from Exhibit 19.
    2007 through 2011 calculated as 1 / (1 + r)^y, where y is the number of years between the date of the given cash flow
    and December 1, 2006, and r = 12% is the rate from
    Copy of Andrew GAAP Statements FinaLmcho.ANSinput.revised.xls, sheet "Summary Cash Flow."
[7] = [5] * [6].

A172

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 12

SCENARIO 2
TRUEPOSITION LOST PROFIT ON ONGOING OPERATION AND MAINTENANCE
PHASE I AND PHASE II –    LMUS

REDACTED

[1] Sites Deployed

[2] Hardware, Software and Services Revenue
[3] Cumulative Hardware, Software and Services Revenue
(Five Years Rolling)

[4] Ongoing Operation and Maintenance Revenue

[5] Costs

[6] Incremental Operating Expenses (4.6%)

[7] Operating Profit

[8] Discount Factor to 12/1/2006

[9] Net Present Value

Notes & Sources:
[1] Assumes that                                          .    See AND0680258 and Deposition of Randy B. Wyan, October 10, 2006, at 149-51 and PX-146.
[2] From Exhibit 10.
[3] Calculated as the sum of [2] over the given year and four previous years.
[4] Calculated as [3] for the given year·        (the ratio of TruePosition Ongoing Operation and Maintenance Revenue to TruePosition Hardware, Software and Services Revenue from Exhibit 6).
    Assumes that each installment of Hardware, Software and Services Revenue is associated with five years of Ongoing Operation and Maintenance Revenue.
[5] Assumes that costs are incurred in year of deployment. Calculated as [4] for the following year        (the ratio of TruePosition Operation and Maintenance Costs to TruePosition
    Operation and Maintenance Revenue from Exhibit 6).
[6] Assumes that costs are incurred in year of deployment.  Calculated as [4] for the following year        . (from Exhibit 17).
[7] = [4] - [5] - [6].
[8] Discount factor as follows, assuming mid-year cash flows:
    2005 from Exhibit 19.
    2007 through 2011 calculated as $1 / (1 + c)^y$, where y is the number of years between the date of the given cash flow and December 1, 2006, and $r = 12\%$ is the rate from
    Copy of Andrew GAAP Statements Final.xnobs.ANSInput.revised.xls, sheet "Summary Cash Flows."
[9] = [7] * [8].

A173

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT 13**

**TRUEPOSITION LOST PROFIT
HARDWARE, SOFTWARE AND PROFESSIONAL SERVICES
Q-TEL PROPOSAL –       LMUS**

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

REDACTED

Notes & Sources:

[1]-[2] From QatarPricing_05.12.06.xls, sheet "Price-Cost." Assumes that Revenue for Hardware, Software and Professional Services would be received in mid-period 2007, and that a discount of 15% is applied; see QatarPricing_05.12.06.xls, sheet "Summary2." Training excluded due to lack of estimates on units. Revenue associated with Redknee, Agilent, Nour and Profilium excluded; see QatarPricing_04.13.06.xls, sheet "Price Quote."

[3] From QatarPricing_05.12.06.xls, sheet "Price-Cost." Assumes that Costs are incurred in mid-period 2007. Costs associated with Redknee, Agilent, Nour and Profilium excluded; see also QatarPricing_04.13.06.xls, sheet "Price Quote."

[4] Calculated as [2]        (from Exhibit 17).

[5] = [2] - [3] - [4].

[6] Discount factor calculated as $1 / (1 + r)^y$, where y is the number of years between the date of the given cash flow and December 1, 2006, and r = 12% is the rate from Copy of Andrew GAAP Statements Final.mcho.ANSinput.revised.xls, sheet "Summary Cash Flow."

[7] = [5] * [6].

A174

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 14

### TRUEPOSITION LOST PROFIT
### OPTIONAL COMPONENTS
### Q-TEL PROPOSAL – LMUS

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

REDACTED

Notes & Sources:

[1]-[2] From QatarPricing_05.12.06.xls, sheet "Price-Cost." Assumes that Revenue
for Optional Components (drive test tool hardware and software) would be
received in mid-period 2007, and that a discount of 15% is applied; see
QatarPricing_05.12.06.xls, sheet "Summary2." Revenue associated with
Redknee, Agilent, Nour and Profilium excluded; see
QatarPricing_04.13.06.xls, sheet "Price Quote."

[3] From QatarPricing_05.12.06.xls, sheet "Price-Cost." Assumes that Costs
are incurred in mid-period 2007. Costs associated with Redknee, Agilent,
Nour and Profilium excluded; see also QatarPricing_04.13.06.xls, sheet
"Price Quote."

[4] Calculated as [2]          (from Exhibit 17).

[5] = [2] - [3] - [4].

[6] Discount factor calculated as $1 / (1 + r)^y$, where y is the number of years
between the date of the given cash flow and December 1, 2006, and r = 12%
is the rate from
Copy of Andrew GAAP Statements Final.mcho.ANSinput.revised.xls, sheet
"Summary Cash Flow."

[7] = [5] * [6].

**A175**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

**EXHIBIT 15**

**TRUEPOSITION LOST PROFIT
SPARES
Q-TEL PROPOSAL –      LMUS**

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

REDACTED

Notes & Sources:
[1]-[2] From QatarPricing_05.12.06.xls, sheet "Price-Cost"; assumes that Revenue
would be received in mid-period.  Revenue associated with Redknee,
Agilent, Nour and Profilium excluded; see QatarPricing_04.13.06.xls, sheet
"Price Quote."  A discount of 15% is applied; see QatarPricing_05.12.06.xls,
sheet "Summary2."
[3] From QatarPricing_05.12.06.xls, sheet "Price-Cost"; assumes that Costs are
incurred in mid-period 2007.  Costs associated with Redknee, Agilent, Nour
and Profilium excluded; see also QatarPricing_04.13.06.xls, sheet
"Price Quote."
[4] Calculated as [2]        (from Exhibit 17).
[5] = [2] - [3] - [4].
[6] Discount factor calculated as 1 / (1 + r)y, where y is the number of years
between the date of the given cash flow and December 1, 2006, and r = 12%
is the rate from
Copy of Andrew GAAP Statements Final.mcho.ANSinput.revised.xls, sheet
"Summary Cash Flow."
[7] = [6] * [5].

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 16

## TRUEPOSITION LOST PROFIT ON ONGOING ANNUAL SUPPORT
## Q-TEL PROPOSAL -- LMUS

REDACTED

[1] Sites Deployed

[2] Revenue

[3] Costs

[4] Incremental Operating Expenses (4.6%)

[5] Operating Profit

[6] Discount Factor to 12/1/2006

[7] Net Present Value

Notes & Sources:

[1]-[2] Ongoing Annual Support Revenue from QatarPricing_05.12.06.xls, sheet "Price-Cost." All Ongoing Annual Support was discounted in bid to
          see QatarPricing_05.12.06.xls, sheet "Summary2." Discounted Support calculated by multiplying          by the ratio of TruePosition
          Ongoing Annual Support to all Annual Support. Usage Licenses excluded due to lack of estimates on units. Revenue associated with Redknee, Agilent
          Nour and Profilium excluded; see also QatarPricing_04.13.06.xls, sheet "Price Quote."

[3] Ongoing Annual Support Costs from QatarPricing_05.12.06.xls, sheet "Price-Cost." Usage Licenses excluded due to lack of estimates on units. Costs
    associated with Redknee, Agilent, Nour and Profilium excluded; see also QatarPricing_04.13.06.xls, sheet "Price Quote."

[4] Calculated as [2].          (from Exhibit 17).

[5] = [2] - [3] - [4].

[6] Discount factor calculated as $1 / (1 + r)^y$, where y is the number of years between the date of the given cash flow and December 1, 2006, and $r = 12\%$
    is the rate from Copy of Andrew GAAP Statements Final.melto.ANSinput.revised.xls, sheet "Summary Cash Flow."

[7] = [5] * [6].

A177

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 17

### TRUEPOSITION EQUIPMENT BUSINESS – GAAP BASIS (QUARTERLY)
### REGRESSION ANALYSIS

| Independent Variable | Dependent Variable | Equation | Coefficient | t-statistic | Percent Variable |
|---|---|---|---|---|---|
| X | Y | $Y = \alpha + \beta X + \varepsilon$ | | | |
| Revenues | Subtotal Operations | Subtotal Operations $= \alpha + \beta \ast$ (Revenues) $+ \varepsilon$ | REDACTED | | |

Notes & Sources:
From Exhibit 18.

A178

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

EXHIBIT 18
TRANSPOSITION EQUIPMENT BUSINESS
QUARTERLY INCOME STATEMENT - GAAP BASIS
THOUSANDS

REDACTED

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

## EXHIBIT 19

## PREJUDGMENT INTEREST FACTORS

| Year | Month | Annualized 3-Month T-Bill Discount Rate | Quarterly 3-Month T-Bill Discount Yield | After-Tax Quarterly T-Bill Discount Yield | After-Tax T-Bill Cumulative Interest Factor To 12/01/2006 |
|------|-------|------|------|------|------|
|      |       | [A]  | [B]  | [C]  | [D]  |
| 2005 | January | 2.33% | 0.59% | 0.38% | 1.0496 |
|      | February | 2.54% | 0.63% | 0.41% | 1.0484 |
|      | March | 2.74% | 0.71% | 0.46% | 1.0462 |
|      | April | 2.78% | 0.71% | 0.46% | 1.0456 |
|      | May | 2.84% | 0.73% | 0.48% | 1.0441 |
|      | June | 2.97% | 0.76% | 0.50% | 1.0414 |
|      | July | 3.22% | 0.83% | 0.54% | 1.0408 |
|      | August | 3.44% | 0.89% | 0.58% | 1.0391 |
|      | September | 3.42% | 0.87% | 0.57% | 1.0363 |
|      | October | 3.71% | 0.96% | 0.62% | 1.0352 |
|      | November | 3.88% | 1.00% | 0.65% | 1.0332 |
|      | December | 3.89% | 0.98% | 0.64% | 1.0304 |
| 2006 | January | 4.24% | 1.07% | 0.70% | 1.0288 |
|      | February | 4.43% | 1.11% | 0.72% | 1.0265 |
|      | March | 4.51% | 1.17% | 0.76% | 1.0239 |
|      | April | 4.60% | 1.18% | 0.76% | 1.0217 |
|      | May | 4.72% | 1.22% | 0.79% | 1.0192 |
|      | June | 4.79% | 1.24% | 0.81% | 1.0162 |
|      | July | 4.95% | 1.28% | 0.83% | 1.0139 |
|      | August | 4.96% | 1.28% | 0.83% | 1.0111 |
|      | September | 4.81% | 1.23% | 0.80% | 1.0081 |
|      | October | 4.92% | 1.27% | 0.83% | 1.0056 |
|      | November* | 4.92% | 1.27% | 0.83% | 1.0028 |
|      | December* | 4.92% | 1.25% | 0.81% | 1.0001 |

Notes & Sources:

[A] Federal Reserve Statistical Release Form H.15, Secondary Market, 3-month T-Bill Rate.
   * Assumed to be equal to October 2006 monthly rate.

[B] Discount Rate converted to Yield.
   = (100 - (100 - (Days in Quarter / 360) * [A] * 100)) / (100 - (Days in Quarter / 360) * [A] * 100).

[C] = [B] * (1 - Federal Corporate Marginal Tax Rate) where Federal Corporate Marginal Tax Rate is 35

[D] December 2006 = $(1 + [C]) \wedge (1 / 90)$.
   November 2006 = $(1 + [C]) \wedge (31 / 92)$.
   October 2006 = $(1 + [C]) \wedge (62 / 92)$.
   Months before October 2006 = $( (1 + [C]_i) * [D]_{i+1})$.

**A180**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TruePosition, Inc., | ) | |
| | ) | |
| **Plaintiff/** | ) | |
| **Counterclaim-Defendant,** | ) | |
| | ) | Civil Action No. 05-747-SLR |
| v. | ) | |
| | ) | |
| Andrew Corporation, | ) | |
| | ) | |
| **Defendant/** | ) | |
| **Counterclaim-Plaintiff.** | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I, Daniel J. Goettle, hereby certify that on this 1st day of December, 2006, I served the foregoing TruePosition's Expert Report on Damages on counsel for defendant Andrew Corporation as follows:

*Via electronic mail, automatic delivery receipt requested*

Rachel Pernic-Waldron
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

/s/ Daniel Goettle
Daniel Goettle

**A181**

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

```
 1              UNITED STATES DISTRICT COURT

 2             FOR THE DISTRICT OF DELAWARE

 3   TRUEPOSITION, INC.,            )

 4                  Plaintiff,      )

 5      -vs-                        )  C.A. No.

 6   ANDREW CORPORATION,            )  04-0757-SLR

 7                  Defendant.      )

 8

 9       CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

10

11          The videotaped deposition of

12   WAYNE HOEBERLEIN, called by the Plaintiff for

13   examination, taken pursuant to the Federal Rules of

14   Civil Procedure of the United States District

15   Courts pertaining to the taking of depositions,

16   taken before CORINNE T. MARUT, C.S.R. No. 84-1968,

17   a Notary Public within and for the County of

18   DuPage, State of Illinois, and a Certified

19   Shorthand Reporter of said state, at the offices of

20   Kirkland & Ellis LLP, Suite 7500, 200 East Randolph

21   Drive, Chicago, Illinois, on the 18th day of

22   January, A.D. 2007, commencing at 9:15 a.m.

23

24   Job No.: 202342
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 26

1    at some publicly information -- publicly available
2    information about the parties. Is that listed here
3    or is that something separate?
4        A.    I would usually list the web sites that
5    I reviewed, in this case, it was TPI or Liberty
6    Mutual, depending on how you got into the TPI
7    information, and Andrew. I don't see that I have
8    that down here, however. So, that would be
9    something else I would need to put on this.
10       Q.    Are those web sites reflected on pages 4
11   and 5 of your report?
12       A.    I think they are, yes. Yes.
13       Q.    Nothing other than the ones that you've
14   listed in the body of your report?
15       A.    No, there would not be.
16       Q.    Okay. Other than the documents and the
17   depositions, did you receive any factual
18   information from counsel orally?
19       MS. KAPPLIN: Objection; overbroad.
20   BY THE WITNESS:
21       A.    I have had discussions with counsel
22   about issues relating to the report and have
23   obtained certain understandings of factual
24   situations as a result of those discussions.

Page 27

1    BY MS. MILSARK:
2        Q.    What understandings of factual
3    situations have you received from counsel?
4        MS. KAPPLIN: Objection; overbroad.
5    BY THE WITNESS:
6        A.    I think I probably need to go through
7    the report to be accurate of that.
8    BY MS. MILSARK:
9        Q.    Why don't we do it as we go through the
10   report. But if as we do that you realize that it's
11   not clear whether it's a factual understanding you
12   received from documents or from counsel, I'd like
13   to know if it came from counsel.
14       A.    Okay.
15       Q.    Did you talk to Mr. Perry?
16       A.    No.
17       Q.    Do you know who Mr. Perry is?
18       A.    No, I don't.
19       Q.    Did you -- then I take it you didn't
20   read his report if you don't know who he is?
21       A.    No, I have not.
22       Q.    Okay.
23       A.    Can I just -- thinking about that, let
24   me just back up. I have seen since the date of

Page 28

1    this report Mr. Goodman's report on infringement.
2        Q.    Okay.
3        A.    That would not be listed here because I
4    had not seen it at the time, but I will -- this
5    will be added to this if you wanted to be totally
6    complete.
7        Q.    Sure. So, since you haven't read the
8    Perry report, I assume you didn't take it into
9    consideration in any way in forming your opinions?
10       A.    That would be correct.
11       Q.    Okay. Do you have an expectation that
12   you will rely on any testimony elicited at trial to
13   support any of your opinions?
14       MS. KAPPLIN: Objection; vague and overbroad,
15   speculative.
16   BY THE WITNESS:
17       A.    I haven't specifically raised that issue
18   with counsel, but my expectation would be logically
19   that I would because many of the understandings
20   I've obtained are from counsel and that is based
21   upon what I would believe would be testimony or
22   other evidence produced at trial. I don't know
23   specifically what that would be, but I think
24   generally that would be the case.

Page 29

1    BY MS. MILSARK:
2        Q.    So, if in your report you relied on an
3    understanding received from counsel, you would
4    expect that understanding to be supported by
5    evidence at trial, is that what you're saying?
6        A.    In some fashion.
7        MS. KAPPLIN: Same objection.
8    BY MS. MILSARK:
9        Q.    What assumptions are you making with
10   respect to infringement?
11       MS. KAPPLIN: Objection; overbroad, calls for
12   a legal conclusion, assumes facts not in evidence.
13   BY THE WITNESS:
14       A.    For purposes of my report, I must assume
15   validity and infringement.
16   BY MS. MILSARK:
17       Q.    Right.
18       A.    As I think Ms. Mulhern does as well.
19       Q.    It's typical in doing a damage report,
20   right?
21       A.    It is typical, yes. Otherwise --
22       Q.    In fact, it's required by the law,
23   right?
24       A.    Otherwise, I would have no reason to

8 (Pages 26 to 29)

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 50

1    you testified about earlier?
2         MS. KAPPLIN: Objection; vague.
3    BY THE WITNESS:
4         A.    I'm not sure what you mean by
5    "consider." Maybe you could just help me with
6    that.
7    BY MS. MILSARK:
8         Q.    Did you analyze lost profits in this
9    case in light of all four of those factors that you
10   testified about earlier?
11        A.    Yes.
12        Q.    Which of those four factors do you
13   believe are not met?
14            Well, let's back up.
15            I think you said and you've listed here
16   on page 8 of your report, demand, absence of
17   acceptable non-infringing alternatives, capacity
18   and amount of profit. Those are the four factors
19   that you testified about earlier too, right?
20        A.    Correct.
21        Q.    Are any of these four factors in your
22   view satisfied in this case?
23        A.    I have not included any information in
24   my report regarding the first factor, demand, and

Page 51

1    the third factor, the manufacturing and marketing
2    capacity.
3            I have reviewed Ms. Mulhern's
4    information and views on that, and I don't have
5    anything to add to that. I -- I don't have an
6    argument with those factors.
7         Q.    So, you don't disagree with Ms. Mulhern
8    that the demand and the capacity factors are both
9    met?
10        A.    No, I don't.
11        Q.    So, the only dispute we have here is
12   with respect to non-infringing alternatives and
13   with respect to calculation, is that correct?
14        MS. KAPPLIN: Objection; overbroad, vague.
15   BY THE WITNESS:
16        A.    My opinions go towards those two factors
17   as well as the -- I'll call it the non-Panduit
18   factor of the standards body and what was presented
19   to them.
20   BY MS. MILSARK:
21        Q.    Do you disagree that this is a
22   two-supplier market?
23        MS. KAPPLIN: Objection; speculation.
24   BY THE WITNESS:

Page 52

1         A.    Market I could view very broadly. I'm
2    not sure what you -- I think I know what you mean
3    by market.
4            I would not disagree that only TPI and
5    Andrew provide, as I understand, the UTDOA type of
6    location.
7    BY MS. MILSARK:
8         Q.    And let's talk about that.
9            How typically in your practice do you go
10   about deciding what the appropriate market is for
11   evaluating lost profits?
12        MS. KAPPLIN: Objection; overbroad, calls for
13   a narrative.
14   BY THE WITNESS:
15        A.    It's a very case-specific inquiry as to
16   what is being sold, both in terms of the -- what
17   the patent is -- what the patent is and what it's
18   incorporated into and whether those are larger
19   products and then what -- how many other people
20   sell products in that -- that space and how those
21   products may differ as to capabilities or prices.
22            I mean, it really depends upon the facts
23   of a particular case.
24   BY MS. MILSARK:

Page 53

1         Q.    But as I understand your testimony, you
2    don't dispute Ms. Mulhern's conclusion that this is
3    a two-supplier market with respect to the UTDOA
4    product at STC, is that correct?
5         A.    Based upon what I've seen, I understand
6    those are the only two companies that provide that
7    we'll call that kind of slice of technology.
8            So, based on that, and, again, I'm not
9    an expert and I haven't done an independent market
10   analysis, but what I've seen in the case I would
11   think that's correct.
12        Q.    Okay. When you refer to that slice of
13   the technology, you've defined that as the UTDOA
14   product at STC. Do you have any understanding of
15   the -- strike that.
16            Do you know if there are other suppliers
17   who can locate -- who have products that locate
18   telephones on the control channel?
19        MS. KAPPLIN: Objection; overbroad, vague,
20   calls for legal conclusion.
21   BY THE WITNESS:
22        A.    I was okay with the question until you
23   put those last two words in. Based on that, I
24   can't tell you.

14 (Pages 50 to 53)

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 17th day of May 2007, I

caused a true and correct copy of the foregoing **Appendix A88-A1847 to Motion**

**to Exclude the Testimony of Dr. Dewayne E. Perry Pursuant to Federal Rule**

**of Evidence 702** to be served upon the following individuals via CM/ECF and in

the manner indicated below:

*Via e-mail and hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail only*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail only*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

*/s/ James D. Heisman*
James D. Heisman (# 2746)