## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRUEPOSITION, INC.,

           **Plaintiff and**
           **Counterclaim-Defendant,**

    **v.**

ANDREW CORPORATION,

           **Defendant and**
           **Counterclaim-Plaintiff.**

**Civil Action No. 05-00747-SLR**

**REDACTED -
PUBLIC VERSION**

## ANDREW CORPORATION'S BRIEF IN OPPOSITION TO TRUEPOSITION'S MOTION TO EXCLUDE THE TESTIMONY OF DR. DAVID GOODMAN PURSUANT TO FEDERAL RULE OF EVIDENCE 702

           YOUNG CONAWAY STARGATT & TAYLOR, LLP
           Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
           Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
           The Brandywine Building
           1000 West Street, 17th Floor
           P.O. Box 391
           Wilmington, Delaware 19899-0391
           302-571-6600
OF COUNSEL:        *Attorneys for Defendant Andrew Corporation*

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: June 4, 2007 – Redacted Version filed June 11, 2007

## TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS .......................................1

III.    SUMMARY OF ARGUMENT ........................................................................2

IV.     COUNTERSTATEMENT OF FACTS ..........................................................2

V.      ARGUMENT ....................................................................................................12

        A.      DR. GOODMAN'S OPINION IS RELIABLE. ......................................................12

                1.      Dr. Goodman's Claim Construction Methodology Was
                        Proper..................................................................................13

                        a.      TruePosition's Complaints About Dr. Goodman's
                                Alleged Failure to Compare Geometrix to Kono Are
                                Specious. ......................................................................15

                2.      Dr. Goodman Did a Thorough Limitation-By-Limitation
                        Analysis...............................................................................17

                3.      TruePosition Once Again Ignores Claim 31...........................21

        B.      DR. GOODMAN'S OPINION WILL BE HELPFUL TO THE JURY............................22

VI.     CONCLUSION ................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amazon.com, Inc. v. Barnesandnobles.com, Inc.,*
     239 F.3d 1343 (Fed. Cir. 2001)............................................................... 13

*Cardinal Chem. Co. v. Morton Intern., Inc.,*
     508 U.S. 83 (1993)................................................................................. 14

*Conroy v. Reebok Intern., Ltd.,*
     14 F.3d 1570 (Fed. Cir. 1994)............................................................... 14

*Gemstar-TV Guide Intern., Inc. v. International Trade Com'n,*
     383 F.3d 1352 (Fed. Cir. 2004).............................................................. 15

*Inline Connection Corp. v. AOL Time Warner Inc.,*
     470 F.Supp.2d 435 (D. Del. 2007)........................................................ 16

*Kannankeril v. Terminix Intern., Inc.,*
     128 F.3d 802 (3d Cir. 1997).................................................................. 16

*Marquip, Inc. v. Fosber America, Inc.,*
     198 F.3d 1363 (Fed. Cir. 1999).............................................................. 14

*McKesson Info. Solutions LLC v. TriZetto Group, Inc.,*
     426 F.Supp.2d 197 (D. Del. 2006)......................................................... 21

*Oxford Gene Tech., Ltd. v. Mergen Ltd.,*
     345 F. Supp. 2d 431 (D. Del. 2004)................................................. 13, 21

*Wilson Sporting Goods Co. v. David Geoffrey & Associates,*
     904 F.2d 677 (Fed. Cir. 1990)............................................................... 14

**Rules**

Fed. R. Evid. 30(b)(6) ......................................................................................... 15

Fed. R. Evid. 702 ................................................................................................. 23

## I.     INTRODUCTION

TruePosition's motion to exclude Dr. Goodman's invalidity opinion is simply a rehash of its "Motion for Summary Judgment That Andrew Cannot Prove Invalidity." But even aside from its repetitive nature, TruePosition's motion is baseless. Dr. Goodman's opinions are clear and well-reasoned, are based on a proper methodology, and include a limitation-by-limitation analysis comparing the asserted '144 patent claims with the prior art Kono reference. Any complaints TruePosition has regarding Dr. Goodman's opinions can be dealt with on cross-examination.

Notably, TruePosition does not — because it cannot — challenge Dr. Goodman's expertise or his qualifications. Indeed, Dr. Goodman has both a Masters and a Ph.D in Electrical Engineering, has worked in both industry and academia for approximately 40 years, has conducted research in many areas relevant to the technology at issue, has received numerous awards, is a named inventor on eight U.S. patents, and has written nine books — one of which was even relied on by TruePosition's former technical expert. TruePosition has no basis to exclude Dr. Goodman's invalidity testimony, and its motion should be denied.

## II.     NATURE AND STAGE OF THE PROCEEDINGS

TruePosition filed its Complaint on October 25, 2005, accusing Andrew of infringing the '144 patent. D.I. 1. Andrew filed its Answer, Affirmative Defenses and Counterclaims on December 15, 2005. D.I. 13. Andrew has counterclaimed for noninfringement and invalidity, unfair competition, fraud and estoppel. Amended complaints and thus, amended answers and counterclaims, were filed. Fact discovery closed November 17, 2006. D.I. 94. Expert discovery closed January 24, 2007. *Id.* Summary judgment and *Markman* briefing ended February 28, 2007; the Court held a

1

hearing on claim construction and summary judgment motions on April 10, 2007. Trial is set to begin September 4, 2007.

## III.    SUMMARY OF ARGUMENT

Dr. Goodman's opinion that the '144 patent is invalidated by Kono if the asserted claims are read broadly enough to cover Geometrix is admissible under Daubert because it is both reliable and will be helpful to the trier of fact.

Dr. Goodman's opinion is reliable.  First, Dr. Goodman utilized a proper claim construction because TruePosition is asserting infringement by equivalence, and the prior art restricts the scope of equivalency that the party alleging infringement under the doctrine of equivalents can assert. Furthermore, as discussed below at pp. 14-15, the Federal Circuit has explicitly approved of Dr. Goodman's methodology. Second, Dr. Goodman explicitly conducted a limitation-by-limitation analysis, and even included a claim chart in his report for each asserted claim.

Dr. Goodman's opinion will be helpful to the trier of fact for the same reasons; his methodology was proper, and he performed a limitation-by-limitation analysis. Furthermore, Dr. Goodman is eminently qualified to explain to the jury what Kono teaches, and whether those teachings read on the '144 patent if the '144 patent is interpreted to cover Andrew's accused product.

## IV.    COUNTERSTATEMENT OF FACTS

**Dr. Goodman's Education and Employment.**  Dr. Goodman received his masters in electrical engineering in 1962, and his Ph.D in electrical engineering in 1967. For the last forty years, Dr. Goodman has worked extensively in both industry and academia. As he explained in the Declaration filed in Support of Andrew's Motions for Summary Judgment and Opening Markman Brief (A276), he is a Professor of Electrical

2

and Computer Engineering at Polytechnic University in Brooklyn, New York, and in 2006, he was on temporary assignment as a Program Director at the National Science Foundation. (*Id.*) Dr. Goodman previously worked for Bell Laboratories, and has extensive experience in performing and managing research in telecommunications and digital signal processing. (*Id.*) He has studied and been involved with GSM cellular networks for approximately 20 years. (*Id.*)[1]

**Dr. Goodman's Exemplar Research.** Dr. Goodman has conducted research in many areas, including: (a) system architectures for wireless access to networks; (b) packet transmission and switching of voice and data to wireless information networks; (c) theory of frequency hopping code division multiple access for cellular radio; (d) combined source and channel coding for speech communications through noisy, fading channels; (e) oversampling principle of analog to digital conversion; (f) embedded source

---

[1] Further details of Dr. Goodman's experience are as follows. In 2006, he was on temporary assignment as the Program Director, Computer Networks and Systems Division, at the National Science Foundation. Ex. A, Expert Report of David Goodman on the Invalidity of U.S. Patent No. 5,237,144 ("Goodman Invalidity Report") and Curriculum Vitae at CV2. Before working at the NSF, Dr. Goodman was — and is now again — a Professor of Electrical and Computer Engineering at Polytechnic University in Brooklyn, New York. *Id.* at CV2. During his tenure at Polytechnic University, Dr. Goodman has also been the Head of Electrical and Computer Engineering and was also Director of the Wireless Internet Center for Advanced Technology. *Id.* Prior to joining Polytechnic University, Dr. Goodman was at Rutgers University (1988-1999), where he was the Chair of the Department of Electrical and Computer Engineering (1988-1991) and the Founder and Director of the Wireless Information Network Laboratory (1989-1999). *Id.* at CV3. Dr. Goodman has also previously been a Research Associate at Harvard (1995), and a visiting professor of electrical engineering at the Imperial College, London (1983-1988). *Id.* Dr. Goodman also previously worked for Bell Laboratories (1960-62; 1967-1988) and served as the Department Head, Communications Systems Research. *Id.*

Dr. Goodman is also a member of the National Academy of Engineering, a foreign member of the Royal Academy of Engineering, and a Fellow of both the Institute of Electrical and Electronic Engineers and the Institution of Electrical Engineers. Id. at CV4. Since 2004, Dr. Goodman has also been a Panelist for the National Research Council, and served as the Chair of the NRC's Committee on the Evolution of Untethered Communications from 1996-1998. *Id.* at 2.

coding; (g) signal processing for estimation of missing speech in packet voice networks; and (h) techniques for measuring quality of digital voiceband transmission systems. Ex. A, Goodman Invalidity Report and Curriculum Vitae, at CV4-10.

**Dr. Goodman's Exemplar Awards, Patents and Publications.** Dr. Goodman has received many awards, including the 2003 IEEE Avant Garde Award for Contributions to Speech Coding and Internet-Packet Cellular Networks, and several IEEE Paper of the Year Awards. *Id.* at CV4.

Dr. Goodman is a named inventor on eight U.S. patents, and has written and contributed to numerous articles — forty since 1988. *Id.* at CV4-9. Dr. Goodman has also authored nine books on communication systems, including a textbook titled "Wireless Personal Communication Systems," *which TruePosition's own prior expert witness relied upon in rendering his opinion.*[2]

**TruePosition's Assertions.** TruePosition accuses Andrew's Geometrix® products deployed in Saudi Arabia of infringing the '144 patent. TruePosition's accusations ignore the '144 patent prosecution history. During prosecution of the '144 patent, the applicants emphasized to the PTO — and the public — that the alleged invention claimed in the '144 patent determines the location of mobile cellular telephones by monitoring periodic reverse control transmissions initiated by the mobile cellular phones. *See generally* Ex. C, May 7, 1993 Information Disclosure Statement Supporting Petition to Make Special. Indeed, the applicants emphasized their alleged invention

---

[2]  *See* Ex. B, Expert Report on Validity of the '555, '013, '192, and '959 Patents by Professor Stuart C. Schwartz ("Schwartz Expert Report") at 21, para. 58. ("The distinction between control channels and voice channels is stated in Goodman's text…").

4

locates a mobile cellular phone by monitoring the control channel transmissions the cellular phone already periodically transmits during operation:

> These patents lack any disclosure or suggestion of a system or method for locating mobile cellular telephones by monitoring control channel signals and processing such signals to obtain location information. As discussed in applicants' specification, there are numerous advantages provided by *monitoring control channels to track the locations of cellular telephones*.... [C]ontrol channel transmissions already occur periodically in cellular systems....

*Id.* at 8-10 (emphasis added).

Andrew's accused products deployed in Saudi Arabia do not monitor control channels as required by the '144 patent claims. Likewise, they do not "track" the locations of cellular telephones; they only locate a cellular phone after receiving a specific request to do so. *See* Ex. I, Rebuttal Expert Report of Dr. David J. Goodman on Noninfringement ("Goodman Rebuttal Report") at 14. Nonetheless, TruePosition and its infringement expert, Oded Gottesman, assert that the '144 patent covers the "command-response" technology that Andrew's accused Saudi Arabia-deployed products practice. *See, e.g.,* Ex. D, Expert Report of Oded Gottesman at 21-25, 31-32.

**Kono's Teachings.** Japanese Laid-Open Patent Application Publication No. H3-239091, named inventor Mitsunori Kono ("Kono"), was filed February 16, 1990 and published October 24, 1991 — over a year before the May 7, 1993 filing date of the application for the '144 Patent. As explained in detail in Andrew's response to TruePosition's Motion for Summary Judgment that Andrew Cannot Prove Invalidity (*see* D.I. 154 at 6-8), Kono teaches a "radio communication apparatus that can locate the position of a moving body." (Ex. E, Kono Reference at 2). Kono also teaches, "[t]he moving body radio communication apparatus of this invention is provided with a

plurality of base stations that possess a shared channel reception means…a switching

station that receives data in the form of these position locating signals, and a position

locating means that…locates the position of a moving body." (*Id.* at 3)   Kono further

teaches that "correlation detecting" is used in the "position locating" (*Id.* at 5)

Kono also expressly teaches the command-response methodology TruePosition

accuses of infringement. *See, e.g.*, *Id.* at 4 (…"if there is a request to locate the position

of a specific mobile equipment 5…then the exchange station 1 issues a command…").

TruePosition's invalidity expert, Dr. Brian Agee, concedes that Kono teaches a

command-response system:

> "[Kono] teaches a "command-respond" approach in which position
> location only occurs after a command (position location call) is sent from
> either the exchange office (based on unexplained criteria) or the base
> transceiver station.

Ex. F, Agee December 22, 2006 Report at 16.

> Kono fails to teach mobile initiation of signals used for position location.
> Instead, position location signals are always transmitted in response to a
> call from the base station transceiver.

*Id.* at 8.

**Dr. Goodman's Opinion and Methodology.**   Dr. Goodman's opinion is that

Kono invalidates the asserted '144 patent claims if they are construed broadly enough to

cover Andrew's accused products. Ex A, Goodman Invalidity Report  and Curriculum

Vitae at 5-6; Ex G, January 15, 2007 Goodman Dep. at 87:14-88:15, 164:19-25, 124:25-

125:12, 159:25-160:8.  In his report, Dr. Goodman specifically explained:

> I also understand that the Court has not yet construed claim terms in this
> case, but that the parties have exchanged various preliminary claim
> interpretations. Regardless of which constructions are adopted it is my
> opinion that the Kono application will anticipate the '144 patent if its
> claims are read broadly enough to cover Andrew's Geometrix products.

Ex. A, Goodman Invalidity Report and Curriculum Vitae at 5-6.

Dr. Goodman's report also analyzed the teachings of the Kono reference and applied Kono's teachings to the '144 patent claims. *See id.* at 11-19. Dr. Goodman's report included claim charts that compared, on a limitation-by-limitation basis, each of the asserted patent claims with Kono. *See id.* at 15-19. For example, for claim 31, Dr. Goodman included the following chart in his report:

| Claim Language | Present In Kono? | Kono Disclosure |
|---|---|---|
| 31. A method for determining the location(s) of one or more cellular telephones | Yes | "FIG. 1 shows a configuration of a moving body position locating apparatus" Page 3 ¶ 6, ll. 12. |
| each initiating periodic signal transmissions over one of a prescribed set of reverse control channels, comprising the steps of: | Yes | "a moving body transmits position locating signals using shared channels" Page 3 ¶ 5, l. 1. |
| (a) receiving said reverse control channel signals at least three geographically separated cell sites; | Yes | "*12a – 12n* are control channel transceivers that transmit and receive signals for the control channels allotted for each of the base stations *3a – 3n.*" Page 2, ¶ 2, ll. 5-6. |
| (b) processing said signals at each cell site to produce frames of data, each frame comprising a prescribed number of data bits and time stamp bits, said time stamp bits representing the time at which said frames were produced at each cell site; | Yes | Kono teaches software and processors in hardware unit 55 that determine and format time of arrival information. Time stamp bits: "The standard clock *54* is an ultra-high precision clock, and the time measurement circuit *53* measures the absolute time of the above-mentioned trigger, and reports it to the switching station *1* from the control circuit *55* via the control device *11*. " Page 5, ¶ 3. ll. 13-15. Data bits: "It should be noted that the junction points *22a – 22n* are used for voice communication signals, and the junction points *23a – 23n* are used for data or control signals." Page 5, ¶ 1, ll.15-17. |
| (c) processing said frames of data to identify individual cellular telephone signals and | Yes | "reports to the switching station *1* via the control devices *11a – 11n* data such as the difference in arrival time of position |

| Claim Language | Present In Kono? | Kono Disclosure |
|---|---|---|
| the differences in times of arrival of said cellular telephone signals among said cell sites; and | | locating signals with respect to the various base stations *3a – 3n*." Page 4, ¶ 2, ll. 21-23. |
| determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals. | Yes | "The base station *1* forwards these data to the position location calculating device *2*, and the position of the mobile equipment *5* is calculated." Page 4, ¶ 2, ll. 23-25. |

*Id.* at 18-19.

**Dr. Goodman's Deposition.** At his deposition, Dr. Goodman further explained the sound bases for his opinion. *First*, Dr. Goodman explained why he believes Kono anticipates the asserted '144 patent claims if they are construed broadly enough to cover Andrew's accused products:

> …[A]s I've said before, Kono discloses a large universe of algorithms, and it is my opinion that those algorithms are included in the patent and also in Geometrix.
>
> \*\*\*
>
> So what I'm trying to say is that Kono discloses a lot of things. All of them are included in the '144 patent. If somebody thinks that Geometrix is — I don't think Geometrix is at all included in the '144 patent. But if somebody did say that Geometrix was included in the '144 patent, I would have to say the '144 patent is included in Kono. So it's a picture that keeps coming into my mind. I think in order to show that the '144 patent infringes Kono, it's not necessary that Kono just be limited to the things within the '144 patent. It could have a lot of other things too. So I don't think that's a double standard. I think it's — it seems logical to me, and completely fair.

Ex. G, January 15, 2007 Goodman Dep. at 130:13-16; 143:21-144:14.

Dr. Goodman even drew a diagram to help illustrate the logic:

8



Ex. H, PX 468, January 15, 2007 Goodman Deposition.

*Second*, Dr. Goodman backed up his general opinion that Kono anticipates the asserted claims with specific facts. For example:

Q:      How do you know that if the means for processing limitation is found in Geometrix, then it must also be found in Kono?

[Objection omitted]

A:      I know that because Kono discloses using data such as the difference in arrival time in order to calculate location, and the means for processing limitation also requires the same words for virtually differences in times of arrival. So that is the basis of — and then someone recognized that there are a lot of algorithms for using differences of times of arrival for determining location.

Ex. G, January 15, 2007 Goodman Dep. at 131:11-25.

Q:      Does Kono disclose a leas[t] square difference algorithm?

A:      I would say so, yes.

Q:      Where?

9

A:    Essentially Kono says on page 4, he should say the switching station forwards difference in arrival time of position locating signals to the position locating device and the position of the mobile equipment is calculated. So I think there are many techniques for performing this calculation at the time that the application for the '144 patent was filed, and that would include these square difference techniques.

*Id.* at 137:6-19.

Q:    It's a ground base cellular telephone system serving a plurality of subscribers possessing mobile cellular telephones [comprising].

A:    Yes, I see that.

Q:    That's present in Kono; is that right?

A:    Yes.

Q:    How do you know?

A:    In the prior art of the Kono patent on pages 2 and 3, he describes what I might call generic cellular telephone system, and the location technology is embedded in that.

Q:    How do you know that the cellular telephone system in Kono serves a plurality of subscribers?

A:    We're talking about — so the telephone system that's described as an example, it says BSTJ January 1979, and I think anyone of skill in the art would recognize that the reason for using cellular technology and dividing a service area into cells is in order to be able to provide telephone service to a large population.

*Id.* at 156:11-157:10.

*Third*, Dr. Goodman also correctly described the legal framework underlying his opinion:

Q:    What's your engineer's understanding of how the patent claims are interpreted?

10

A:      My understanding is that they are interpreted as
        they would have been understood by someone of
        skill in the art at the time that the patent application
        was filed. And that the person of skill in the art
        would gain this understanding by reading the
        claims, and referring to their meaning within the
        context, technical context of the patent, and that, in
        some cases, that would be insufficient to gain an
        understanding, and that there would be other
        considerations, particularly what the inventors said
        in the remainder of the patent, and also what the
        inventors told the patent office when they were
        trying to get the patent office to issue the patent.

Q:      Did you apply your understanding of how patent
        claims are construed in rendering your invalidity
        opinion?

A:      Yes.

                        ***

Q:      What is your understanding about means plus
        function claim elements are construed?

A:      My understanding is that in order to construe the
        claims, you have to read the claim itself and find
        out what function is being claimed, and then read
        the patent specification to find out the structure that
        performs that function.

                        ***

Q:      With respect to infringement, is it your
        understanding that means plus function elements are
        construed to cover the corresponding structure plus
        equivalents?

[Objection omitted]

A:      I understand that the claim may be drafted in means
        plus function format. I understand that for an
        accused product to literally meet a means plus
        function claim limitation, an element in the accused
        product must, one, perform the same function
        recited in the means plus function claim limitation,
        and, two, use the same structure disclosed in the
        patent specification or its equivalent structure to

                        11

perform the recited function. I understand that an accused structure may be equivalent to the disclosed structure in the patent specification if it performs the same function in the same way to achieve the same result.

*Id.* at 12:11-13:9; 127:8-16; 128:6-129:2.

\*\*\*

In sum, there is no basis to attack Dr. Goodman's opinions or his methodology.

## V.    ARGUMENT

TruePosition's rehash of its summary judgment motion argues that Dr. Goodman's opinion is both unreliable and will not be helpful to the jury. Neither argument has merit, and TruePosition's motion to exclude Dr. Goodman's testimony should be denied.

### A.    DR. GOODMAN'S OPINION IS RELIABLE.

TruePosition's instant motion recycles the arguments from its pending Motion for Summary Judgment That Andrew Cannot Prove Invalidity. TruePosition argues that Dr. Goodman's opinion is unreliable because he allegedly: (a) did not perform a proper claim construction; and (b) did not conduct a limitation-by-limitation analysis. Both of TruePosition's arguments regarding the reliability of Dr. Goodman's opinion fail because — as discussed in Andrew's response to TruePosition's "Motion for Summary Judgment That Andrew Cannot Prove Invalidity" — Dr. Goodman's claim construction analysis is in accord with black-letter law, and he did perform a limitation-by-limitation analysis. TruePosition's attempt to get a second bite at the apple should be denied.

1.    **Dr. Goodman's Claim Construction Methodology Was Proper.**

TruePosition argues Dr. Goodman "sweepingly opines" that Kono anticipates if Geometrix infringes, and that his "alternative or negative" construction is improper. Pl.'s Mem. to Exclude the Invalidity Test. of Dr. David Goodman ("TPI. Op. Br.") at 12, 15.

TruePosition's argument is based on a mischaracterization of Dr. Goodman's opinion and the *Oxford Gene* case it cites. As explained above, Dr. Goodman conducted a proper claim construction for his invalidity opinion. And TruePosition is simply wrong to argue Dr. Goodman used an "'alternative' claim construction that was previously found by Judge Jordan to be improper." *Id.*, citing *Oxford Gene*.

In *Oxford Gene*, the "alternative" construction at issue was a construction where the expert opined that <u>if certain features were not required by the patent claims, then the patent would be invalid</u>:

> If these features would not be included in the claimed invention of the '270 patent, then it is my opinion that the asserted claims of the '270 patent would be invalid as anticipated and/or obvious in view of the following prior art.

*Oxford Gene Tech., Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436 (D. Del. 2004) (quoting expert report).

In marked contrast, Dr. Goodman's approach simply conforms with the black-letter law that claims must be construed the same way for both an infringement and invalidity analysis. *See Amazon.com, Inc. v. Barnesandnobles.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Because the claims of a patent measure the invention at issue, the claims must be interpreted and given the same meaning for purposes of both infringement and validity analyses. A patent may not, like a nose of wax, be twisted one way to avoid anticipation and another way to find infringement.") (citations omitted).

13

Indeed, it is perfectly appropriate to analyze TruePosition's allegations of claim scope as evidenced by its infringement allegations against Andrew's accused products, and to compare TruePosition's infringement allegations to the prior art. This is particularly appropriate given the fact that TruePosition's infringement position relies heavily on allegations that Andrew's accused products possess equivalent (and not literal) structures for the '144 patent mean-plus-function limitations. *See, e.g.,* Ex. A, Gottesman Invalidity Report and Curriculum Vitae at 36, 37, 63, 64. Indeed, "the prior art restricts the scope of equivalency that the party alleging infringement under the doctrine of equivalents can assert." *Conroy v. Reebok Intern.*, Ltd., 14 F.3d 1570, 1576 (Fed. Cir. 1994). The Federal Circuit has further explained:

> "Whether prior art restricts the range of equivalents of what is literally claimed can be a difficult question to answer. To simplify analysis and bring the issue onto familiar turf, it may be helpful to conceptualize the limitation on the scope of equivalents by visualizing a ***hypothetical*** patent claim, sufficient in scope to ***literally*** cover the accused product. The pertinent question then becomes whether that hypothetical claim could have been allowed by the PTO over the prior art. If not, then it would be improper to permit the patentee to obtain that coverage in an infringement suit under the doctrine of equivalents.

*Wilson Sporting Goods Co. v. David Geoffrey & Associates*, 904 F.2d 677, 684 (Fed. Cir. 1990) (emphasis in original) (abrogated on other grounds by *Cardinal Chem. Co. v. Morton Intern., Inc.*, 508 U.S. 83 (1993). *See also Marquip, Inc. v. Fosber America, Inc.*, 198 F.3d 1363, 1367 (Fed. Cir. 1999) ("Based on the fundamental principle that no one deserves an exclusive right to technology already in the public domain, this court has consistently limited the doctrine of equivalents to prevent its application to ensnare prior art."); *see also generally id.* at 1367-68 (discussing relationship between prior art and doctrine of equivalents; entering summary judgment of non-infringement where the

patentee did not "show any genuine disputes of material fact to satisfy its burden 'to prove that the range of equivalents which it seeks would not ensnare the prior art.'").

But despite this clear law, TruePosition ignores the fact that it is advocating a broad range of equivalents to try to ensnare Andrew's accused products and refuses to acknowledge that the *purpose* of first construing the meaning of the claim before embarking on an infringement, invalidity or inventorship analysis is to "determine the *subject matter encompassed* thereby." *Gemstar-TV Guide Intern., Inc. v. International Trade Com'n*, 383 F.3d 1352, 1381-82 (Fed. Cir. 2004) (emphasis added).

Because TruePosition purports to find infringement of the means-plus-function claims due to allegedly equivalent structures in Andrew's accused system, and because the Federal Circuit has repeatedly stated that prior art restricts the scope of equivalents, Dr. Goodman's method of comparing TruePosition's infringement contentions against Kono is proper, reliable and admissible under Daubert.

### a.    *TruePosition's Complaints About Dr. Goodman's Alleged Failure to Compare Geometrix to Kono Are Specious.*

TruePosition also argues that Dr. Goodman's analysis is unreliable because he does not specifically compare Geometrix to Kono; TruePosition argues that Dr. Goodman knows nothing about Geometrix because at the time he drafted his invalidity report, his understanding of Geometrix's structure, function and operation came from discussions with Andrew's former Vice President and a Rule 30(b)(6) witness on technical issues, Joe Kennedy.[3] *See* TPI. Op. Br. at 12, 17.

---

[3]   Mr. Kennedy was Andrew's Rule 30(b)(6) witness on topics concerning, *inter alia*: (a) Andrew's sales of its accused products; (b) Andrew's offers for sale of its accused products; (c) Andrew's use of its accused products; (d) Andrew's manufacture of its accused products; (e) Andrew's testing and demonstration of its accused products; and (f) the period of time during which Andrew's accused products possessed the functionality to locate a mobile

As a threshold issue, TruePosition's argument has no merit because "*Daubert* does not set up a test of which opinion has the best foundation, but rather whether any particular opinion is based on valid reasoning and reliable methodology." *Kannankeril v. Terminix Intern., Inc.*, 128 F.3d 802, 806-807 (3d Cir. 1997) (finding expert testimony admissible even though the expert did not himself perform any diagnostic tests). Indeed, as this Court has explained, an expert's:

> data gathering process may include a review of relevant documents, research analysis, and interviews. The nature and extent of the data will vary with each engagement and may include the practitioner's computations and analysis and other information-supporting conclusions. Experts can base opinion testimony on either facts or assumptions. ***Experts may base assumptions on facts, presumptions from facts, or assumptions provided by the client, other experts, or counsel.*** The quantity, type, and content of documentation are determined by several factors, including the practitioner's professional judgment, the nature of the engagement and the directives of counsel.

*Inline Connection Corp. v. AOL Time Warner Inc.*, 470 F.Supp.2d 435, 443 (D. Del. 2007) (allowing damages opinion to be based on statements by employees) (emphasis added).

Moreover, TruePosition has not shown that Dr. Goodman's knowledge of Geometrix is flawed. Nor has TruePosition presented any facts to indicate Dr. Goodman's conversation with Mr. Kennedy was insufficient for Dr. Goodman to understand the workings of Geometrix. To the contrary, Dr. Goodman testified that Mr. Kennedy "explained step by step how the Geometrix system finds out where a mobile phone is." Ex. G, January 15, 2007 Goodman Dep. at 104:24-25. Dr. Goodman also testified that his conversation with Mr. Kennedy formed *part* of the bases for his

---

phone consistent with the Uplink Time Difference of Arrival positioning method as defined by applicable 3GPP specifications.

opinions, not the sole basis as TruePosition erroneously states in its brief. *See* TPI. Op. Br. at 12. Dr. Goodman explained that by the time of his deposition, he had considered a "pile of documents relating to the Geometrix system" and "just [didn't] remember when [he] received them relative to preparing [the invalidity] report. But [he thought] the information [he] used was what [he] heard Mr. Kennedy tell [him] about." Ex. G, January 15, 2007 Goodman Dep. at 107:22-108:6. At the absolute most, TruePosition's entire argument regarding Dr. Goodman's knowledge of Geometrix is a topic for cross-examination.

### 2.   Dr. Goodman Did a Thorough Limitation-By-Limitation Analysis.

As it did in its first motion concerning Dr. Goodman — and despite the presence of limitation-by-limitation claim charts in Dr. Goodman's invalidity report — TruePosition again argues that he did not perform a limitation-by-limitation analysis. *See* TPI. Op. Br. at 16-19. But TruePosition does not — because it cannot — base its argument on a lack of a claim chart or actual analysis. Rather, TruePosition closes its eyes to Dr. Goodman's report and opinions, and uses the same flawed claim-construction arguments discussed above. *Id.* at 16-17. ("element by element comparison cannot be performed with respect to any claim at issue without a proper claim construction"; "Having failed to identify in his claim construction any structure…Dr. Goodman certainly could not compare any such structure in the 144 specification to any such structure in the prior art Kono reference"; understanding of Geometrix based on conversation with employee).

As explained above, Dr. Goodman's claim construction methodology was perfectly proper on every level. Moreover, Dr. Goodman ***did*** do a limitation-by-

limitation analysis; he included a claim chart in his report that compares every element of each asserted claim to Kono, and identifies the corresponding Kono disclosure. *See* Goodman Report Table Excerpt *infra* at pp. 7-8; *see also* Ex. A, Goodman Invalidity Report and Curriculum Vitae at 15-19. This alone defeats TruePosition's argument.

In addition, at his deposition, Dr. Goodman further explained where he found each asserted element in Kono, *e.g.*:

> Q:     Referring to page 15 of your report, where in the Kono disclosure is a cellular telephone location system for determining the location of multiple mobile telephones disclosed?
>
> A:     Okay. And my answer is in the sentence in the right-hand column of row 1 that appears on page 3 of the translation, the working example of this invention is described below, and then it says Figure 1 shows a configuration of a moving body position location apparatus.

Ex. G, January 15, 2007 Goodman Dep. at 78:12-24.

> Q:     The phrase is "each initiating periodic signal transmission over one of a prescribed set of reverse control channels comprising." Do you see that?
>
> A:     Yes.
>
> Q:     Where in the Kono disclosure is that claim element disclosed?
>
> A:     It says on page 3, at the beginning of the section that's headed operation of the invention, it says, "in this invention, a moving body transmits position locating signals using shared terminals."

*Id.* at 79:8-20.

> Q:     What is it about the phrase shared channels in Kono that makes you believe that it is similar or that it corresponds to anything in Andrew's product?
>
> [Objection omitted]

18

A:    I think these channels are carrying information in two directions, as a way that the channels used in the Andrew's product.

Q:    Specifically stand-alone dedicated channels you mean?

A:    Yes.

Q:    In Andrew's product?

A:    Yes.

Q:    What makes you think that in Kono, the shared channels are being transmitted in two directions?

A:    Well, because Kono disclosing a transceiver at the cell site, or whatever he calls the cell site, and transceiver includes transmitter and receiver. Also, it seems that Kono technology allocates this shared channel to one cell phone at a time. Just as Andrew — just as a stand-alone dedicated control channel carries in any particular time interval information from between one cell phone and one base station.

*Id.* at 81:16-82:19.

TruePosition focuses its complaints on the "means terms" of Claims 1 and 22, but even this angle fails; these terms were included in Dr. Goodman's limitation-by-limitation chart, and Dr. Goodman also explained in his deposition where he found them in Kono:

Q:    How do you know that if the means for processing limitation is found in Geometrix, then it must also be found in Kono?

[Objection omitted]

A:    I know that because Kono discloses using data such as the difference in arrival time in order to calculate location, and the means for processing limitation also requires the same words for virtually differences in times of arrival. So that is the basis of — and then someone recognized that there are a lot

19

of algorithms for using differences of times of arrival for determining location.

*Id.* at 131:11-25.

Q:    Does Kono disclose a leas[t] square difference algorithm?

A:    I would say so, yes.

Q:    Where?

A:    Essentially Kono says on page 4, he should say the switching station forwards difference in arrival time of position locating signals to the position locating device and the position of the mobile equipment is calculated. So I think there are many techniques for performing this calculation at the time that the application for the '144 patent was filed, and that would include these square difference techniques.

*Id.* at 137:6-19.

Furthermore, as shown in detail above, Dr. Goodman also correctly described the legal framework underlying his opinion. *See infra* pp. 10-12.[4]   Thus, TruePosition's complaints about Dr. Goodman's limitation-by-limitation analysis are as specious as they

---

[4]    TruePosition argues that Dr. Goodman said that he did not apply the rule that means plus function claim elements encompass corresponding structure and equivalent structure in his invalidity analysis. *See* TPI. Op. Br. at 14-15 (citing January 15, 2007 Goodman Dep. at 128).   As explained above, Dr. Goodman used the same claim scope for his invalidity analysis that TruePosition's infringement expert used for his infringement analysis. Moreover, TruePosition fails to point out that on the same deposition page it cites, Dr. Goodman gave a cogent explanation regarding the interpretation of means plus function claims. *See* TPI. Op. Br. at 14-15; *compare with* January 15, 2007 Goodman Dep. at 128:13-129:2 ("I understand that for an accused product to literally meet a means plus function claim limitation, an element in the accused product must, one, perform the same function recited in the means plus function claim limitation, and, two, use the same structure disclosed in the patent specification or its equivalent structure to perform the recited function. *I understand that an accused structure may be equivalent to the disclosed structure in the patent specification if it performs the same function in the same way to achieve the same result.*") (emphasis added).

20

were in its Motion for Summary Judgment That Andrew Cannot Prove Invalidity. (*See* D.I. 134).[5]

### 3.     TruePosition Once Again Ignores Claim 31.

Tellingly, as it did in its first motion regarding Dr. Goodman, TruePosition focuses on the means-plus-function elements of Claims 1 and 22, and ignores Claim 31 which does not have any means-plus-function limitations. *See, e.g.,* TPI. Op. Br. at 3 ("Dr. Goodman completely ignores the rules for construction and analysis of *means-plus-function* elements...") (emphasis added); *id.* at 14 ("Dr. Goodman also confirmed his fatal failure to properly construe the *means-plus-function* elements") (emphasis added); *id.* at 15 ("the law clearly requires...identification of structure corresponding to the recited function of *means-plus-function* claims.") (emphasis added); *id.* at 16 ("chose to ignore the legal standard for construing the *means-plus-function* elements of the claims.") (emphasis added).

But although TruePosition again fails to address the merits of Dr. Goodman's analysis of Claim 31, it inexplicably asks this Court to exclude **all** of Dr. Goodman's testimony, including testimony regarding Claim 31.   Because TruePosition has not addressed the merits of Dr. Goodman's analysis of Claim 31 — and cannot do so on reply — this Court need go no further and can summarily deny TruePosition's motion as

---

[5]   In addition, as also explained in Andrew's Response to that Motion, *McKesson* and *Oxford Gene* are also distinguishable on the limitation-by-limitation point.  *See McKesson Info. Solutions LLC v. TriZetto Group, Inc.,* 426 F.Supp.2d 197, 202-203 (D. Del. 2006) (one expert created her own five-part algorithm, did not do a limitation by limitation comparison, and identified no structure except "software"; other expert also recited only "software" as the structure in his report and charts attached to report discussed only function); *Oxford Gene,* 345 F.Supp.2d at 437 (expert "did not identify which specific claim limitations of the '270 patent are or are not disclosed in the '726 application. He simply omitted that essential analytical step."; claim chart was prepared "after the fact by [defendant's] counsel").

to claim 31. And on the merits, claim 31 reads directly on Kono, as demonstrated by Dr. Goodman's claim chart reproduced above on pp. 7-8.

## B.    DR. GOODMAN'S OPINION WILL BE HELPFUL TO THE JURY.

TruePosition argues that Dr. Goodman's opinion is unreliable for the same reasons it allegedly does not fit the case. TruePosition proffers no additional arguments, and cannot do so on reply. TruePosition's arguments again fail because as shown above, Dr. Goodman's methodology was perfectly proper, and he did perform a limitation-by-limitation analysis.

Furthermore, Dr. Goodman is eminently qualified to explain to the jury what Kono teaches, and whether those teachings read on the '144 patent if the '144 patent is interpreted to cover Andrew's accused product. *See* Discussion of Qualifications above at pp. 2-4; *compare with* Ex. G, Goodman Dep. at 81:22-82:19 ("I think [the Kono] channels are carrying information in two directions, as a way that the channels used in the Andrew's product…because Kono disclos[es] a transceiver at the cell site, or whatever he calls the cell site, and transceiver includes transmitter and receiver. Also, it seems that Kono technology allocates this shared channel to one cell phone at a time. Just as Andrew — just as a stand-alone dedicated control channel carries in any particular time interval information from between one cell phone and one base station."); *id.* at 156:24-157:10 ("Q: How do you know that the cellular telephone system in Kono serves a plurality of subscribers? A: We're talking about — so the telephone system that's described as an example, it says BSTJ January 1979, and I think anyone of skill in the art would recognize that the reason for using cellular technology and dividing a service area into cells is in order to be able to provide telephone service to a large population."). Indeed, even TruePosition's own prior expert witness relied upon Dr. Goodman in rendering his

22

opinion.  *See* Ex. B, Report of Stuart Schwartz, Para. 58 ("The distinction between control channels and voice channels is stated in Goodman's text...").

## VI.     CONCLUSION

For all of these reasons, Andrew respectfully requests that the Court deny TruePosition's Motion To Exclude the Testimony of Dr. David Goodman Pursuant to Federal Rule of Evidence 702.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*Attorneys for Defendant/Counterclaim Plaintiff*
 *Andrew Corporation*

OF COUNSEL:

John M. Desmarais
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated:  June 4, 2007

23

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew A. Lundgren, Esquire, hereby certify that on June 11, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on June 11, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL AND FEDERAL EXPRESS**

> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> One Liberty Place, 46th Floor
> Philadelphia, PA 19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP

> /s/ *Andrew A. Lundgren*
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> alundgren@ycst.com
> *Attorneys for Defendant Andrew Corporation*