IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TRUEPOSITION, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-747-SLR |
| | ) |
| ANDREW CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 23rd day of August, 2007, having heard oral argument and having reviewed the papers submitted in connection with the parties' proposed claim construction;

IT IS ORDERED that the disputed claim language in United States Patent No. 5,327,144 ("the '144 patent"), as identified by the above referenced parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005), as follows:

**1. "Prescribed set of reverse control channels".** A predetermined range of frequencies that transmit control information in only one direction, from a cellular telephone to a cell site.

The invention disclosed in the '144 patent is limited to "the different use of the control signal" (D.I. 144 at A160), that is, using the reverse (as opposed to the forward)

signal. (D.I. 144 at A146-151) The reverse control signal is characterized by the kind of information it carries (e.g., "information for establishing a voice communication link between the cellular phone and the cell network," D.I. 168 at B567) and the direction in which such information is being carried (from the cellular telephone to the cell site). The patentee, however, added another distinguishing characteristic to the claimed invention, that is, that the signals be transmitted "over one of a prescribed set of reverse control **channels**." Because the patentee chose to describe the invention in terms of a "prescribed set" of reverse control "channels," not signals, the court must be meaning to the distinction between a "signal" and a "channel."

Plaintiff argues in this regard that a channel (without further explanation of what a "channel" is) can accommodate signals transmitted in both directions (forward and reverse); i.e., when the single control channel is transmitting one way, it is "called" a reverse control channel; when it is transmitting in the other way, it is "called" a forward control channel. (D.I. 199 at 26) Plaintiff analogizes this arrangement to a highway, with lanes dedicated to different directions. (D.I. 204 at 33) In the field of telecommunications, however, the court understands that the "lanes" of the "highway" are assigned "frequencies" (see D.I. 168 at B567-568; D.I. 150 at exs. X, Z) and that the phrase "range of frequencies" is an accurate and helpful description of what a "channel" is.[1] Having said that, clearly the northbound lanes of I-95 do not provide for southbound traffic, and the parties have not adequately addressed the question of

---

[1] The court declines to embrace plaintiff's implied suggestion that it is the signal that defines the channel at any given time; i.e., there are no "prescribed sets" of reverse control channels.

2

whether a single "lane" or frequency can, from a technical point of view, accommodate the flow of information in both the reverse and forward directions for this claim construction exercise to be any more precise.

2. **"Periodic" and "periodically."** Discontinuously. ('144 patent, col. 2, ll. 22-23)

3. **"Timing signal."** Signal that conveys timing information.

4. **"Time stamp bits representing the time at which said cellular telephone signals were received."** Binary units representing the time when cellular telephone signals were received at the cell site. ('144 patent, col. 5, ll. 15-18)

5. **"Means for processing said frames of data from said cell site systems to generate a table identifying individual cellular telephone signals and the differences in times of arrival of said cellular telephone signals among said cell site systems."** Pursuant to § 112, the function of the disclosed structure is to analyze the cellular telephone signals in order to generate a table that identifies the differences in times of arrival of said signals. The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-56 (ending with the acronym "TDOA"); Fig. 7 at the first four blocks and table; col. 17, ll. 26-68 (minus any reference to "frequency difference data" or "frequency difference results"); and Figs. 8A-8B (minus any reference to "frequency differences"); or equivalents of such a computer processor.

6. **"Means for determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone**

3

**signals."** Pursuant to § 112, the function of the disclosed structure is to determine, on the basis of time of arrival differences, the locations of the cellular telephones whose signals are received. The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, l. 58 (beginning with the word "This") through col. 13, l. 62 (ending with the letter "C"); Fig. 7 at the fifth and sixth blocks; col. 18, ll. 1-34 (ending with "0.0001," but minus any reference to "frequencies"); and Fig. 8C through top four elements of Fig. 8D (minus any reference to "frequencies"); or equivalents of such a computer processor.

7. **"Locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions."** Pursuant to § 112, the function of the disclosed structure is to determine, without a specific request to do so, the locations of cellular telephones by receiving and analyzing the signals that the cellular telephones broadcast periodically over the reverse control channel. The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-62 (ending with the letter "C"); Fig. 7 at the first six blocks and table; col. 17, l. 26 - col. 18, l. 34 (ending with "0.0001," but minus any reference to "frequency difference data," "frequency difference results," or "frequencies"); and Figs. 8A through the top four elements of Fig. 8D (minus any reference to "frequency differences" or "frequencies"); or equivalents of such a computer processor.

8. **"Database means for storing location data identifying the cellular telephones and their respective locations, and for providing means to said**

4

**database to subscribers at remote locations.**" Pursuant to § 112, the function of the disclosed structure is to store data that identifies each cellular telephone and its respective location, and for providing access to said data to subscribers at remote locations. The means of the proposed structure is the combination of the "database 20" and: (a) the "first terminal 22 coupled via a modem . . . and telephone line to the database 20" (col. 9, ll. 25-27; Fig. 2 at blocks 20, 22); or (b) the "second terminal 24 in radio communication with the database 20" (col. 9, ll. 27-29; Fig. 2 at blocks 20, 24); or (c) the "third, handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communication with the database" (col. 9, ll. 29-31; Fig. 2 at blocks 20, 26); or equivalents of any such combination.

_____
United States District Judge

5