# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TruePosition, Inc.,                    )
                                       )
    Plaintiff/                   )
    Counterclaim-Defendant,      )
                                       )    **Civil Action No. 05-747-SLR**
       v.                       )
                                       )
Andrew Corporation,                    )
                                       )
    Defendant/                   )
    Counterclaim-Plaintiff.      )
_____)

## JOINT PROPOSED FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

## FINAL INSTRUCTIONS

1.    Introduction (Agreed Upon Instruction) ........................................................... 1

2.    Jurors' Duties (Agreed Upon Instruction) ........................................................ 2

3.    Burden of Proof (TruePosition's Proposed Instruction) ................................. 3

3.    Burden of Proof (Andrew's Proposed Instruction) ........................................ 6

4.    Evidence Defined (Agreed Upon Instruction) ............................................... 8

5.    Consideration of Evidence (Agreed Upon Instruction) ................................. 9

6.    Direct and Circumstantial Evidence (Agreed Upon Instruction) ................. 10

7.    Credibility of Witnesses (Agreed Upon Instruction) .................................... 11

8.    Number of Witnesses (Agreed Upon Instruction) ....................................... 13

9.    Expert Witnesses (Agreed Upon Instruction) .............................................. 14

10.    Deposition Testimony (Agreed Upon Instruction) ..................................... 15

11.    The Parties and Their Contention (Agreed Upon Instruction) ................... 16

     11.1  The Parties (Agreed Upon Instruction) ............................................. 17

     11.2  The Parties' Contentions (TruePosition's Proposed Instruction) ...... 18

     11.2  The Parties' Contentions (Andrew's Proposed Instruction) ............. 20

12.    The Patent Laws (Agreed Upon Instruction) ............................................. 21

13.    The Claims of the Patents In Suit (Agreed Upon Instruction) ................... 22

     13.1  Construction of the Claims (TruePosition's Proposed Instruction) ... 23

     13.1  Construction of the Claims (Andrew's Proposed Instruction) .......... 24

     13.2  Independent and Dependent Claims (TruePosition's Proposed Instruction) ..... 25

     13.2  Independent and Dependent Claims (Andrew's Proposed Instruction) ............ 26

13.3    Means-Plus-Function    Claim    Limitations    (TruePosition's    Proposed Instruction) ................................................................................................27

13.3  Means-Plus-Function Claim Limitations (Andrew's Proposed Instruction)......29

13.4 "Comprising" Claims (Agreed Upon Instruction)..............................................30

13.5  Limitations of the Claims at Issue (Agreed Upon Instruction) .........................31

14.    Patent Infringement Generally (TruePosition's Proposed Instruction) .....................34

14.    Patent Infringement Generally (Andrew's Proposed Instruction)............................36

14.1 Direct Infringement (TruePosition's Proposed Instruction)..............................38

14.1 Direct Infringement (Andrew's Proposed Instruction) .....................................39

14.2 Infringement Through the Supply of Components From the United States to a Foreign Country (Under 35 U.S.C. § 271(f)) (TruePosition's Proposed Instruction) .........................................................40

14.2 Infringement Through the Supply of Components From the United States to a Foreign Country  (Under 35 U.S.C. § 271(f))  (Andrew's Proposed Instruction) ..............................................................................41

14.3  Inducing Infringement Under 35 U.S.C. § 271(f)(1) (TruePosition's Proposed Instruction) ...............................................................................42

14.3  Inducing Infringement Under 35 U.S.C. § 271(f)(1) (Andrew's Proposed Instruction) ...............................................................................43

14.4  Contributory Infringement Under 35 U.S.C. § 271(f)(2) (TruePosition's Proposed Instruction) ...............................................................................45

14.4  Contributory Infringement Under 35 U.S.C. § 271(f)(2) (Andrew's Proposed Instruction) ...............................................................................46

14.5  Infringement – Every Claim Limitation Must Be Present Either Literally or Under the Doctrine of Equivalents (TruePosition's Proposed Instruction) ..........................................................................................48

14.5  Infringement – Every Claim Limitation Must Be Present Either Literally or Under the Doctrine of Equivalents (Andrew's Proposed Instruction)........50

14.6  Infringement – Mean-Plus-Function Claim Limitations (TruePosition's Proposed Instruction) ...............................................................................52

14.6  Infringement – Mean-Plus-Function Claim Limitations (Andrew's Proposed Instruction) ................................................................ 55

14.7  Determination of Infringement(TruePosition's Proposed Instruction)............. 57

14.7  Determination of Infringement(Andrew's Proposed Instruction) ..................... 59

15.  Willful Infringement (TruePosition's Proposed Instruction)..................................... 61

15.  Willful Infringement (Andrew's Proposed Instruction) ............................................ 64

16.  Validity in General (Andrew's Proposed Instruction)................................................ 66

16.  Validity in General (TruePosition's Proposed Instruction) ....................................... 67

16.1  The Prior Art (Andrew's Proposed Instruction).................................................. 68

16.1  The Prior Art (TruePosition's Proposed Instruction) ........................................ 69

16.2  Anticipation/Lack of Novelty (Andrew's Proposed Instruction) ...................... 70

16.2  Anticipation/Lack of Novelty (TruePosition's Proposed Instruction).............. 72

17.  Fraud (Andrew's Proposed Instruction) ................................................................... 73

17.  Fraud (TruePosition's Proposed Instruction)............................................................ 74

17.1  Fraud – Duty to Declare (Andrew's Proposed Instruction) .............................. 75

17.1  Fraud – Duty to Declare (TruePosition's Proposed Instruction)....................... 76

17.2  Fraud – Five Elements (Andrew's Proposed Instructions) ............................... 78

17.2  Fraud – Five Elements (TruePosition's Proposed Instruction) ........................ 79

17.3  Fraud – Misrepresentation or Omission (Andrew's Proposed Instruction) ....... 80

17.3  Fraud – Misrepresentation or Omission (TruePosition's Proposed Instruction) ............................................................................... 81

17.4  Fraud – Misrepresentation or Omission  Made Knowingly Or With Reckless Disregard for the Truth (Andrew's Proposed Instruction) .............. 82

17.4  Fraud – Misrepresentation or Omission  Made Knowingly Or With Reckless Disregard for the Truth (TruePosition's Proposed Instruction)....... 83

iv

17.5  Fraud – Intent to Mislead (Andrew's Proposed Instruction)............................ 84

17.5  Fraud – Intent to Mislead (TruePosition's Proposed Instruction) ..................... 85

17.6  Fraud – Andrew's Reliance (Andrew's Proposed Instruction) ........................ 86

17.6  Fraud – Andrew's Reliance (TruePosition's Proposed Instruction) ................. 87

17.7  Fraud – Nondisclosure of Facts Already Known to Andrew Corporation (TruePosition's Proposed Instruction) ........................................................... 88

17.8  Fraud – Damages (Agreed Upon Instruction) ................................................... 89

17.9  Fraud – Damages (Andrew's Proposed Instruction)......................................... 90

17.9  Fraud – Damages (TruePosition's Proposed Instruction) ................................ 91

17.10 Fraud – Exemplary Damages (Andrew's Proposed Instruction)..................... 92

17.10 Fraud – Exemplary Damages (TruePosition's Proposed Instruction) ............ 93

17.11 Fraud – Exemplary Damages (Andrew's Proposed Instruction)..................... 94

17.11 Fraud – Exemplary Damages (TruePosition's Proposed Instruction) ............ 95

18.    Equitable Estoppel (Andrew's Proposed Instruction) .................................................... 97

18.    Equitable Estoppel (TruePosition's Proposed Instruction)........................................... 98

18.1  Equitable Estoppel – Misleading Acts (Andrew's Proposed Instruction) ......... 99

18.1  Equitable Estoppel – Misleading Acts (TruePosition's Proposed Instruction) ............................................................................................... 100

18.2  Equitable Estoppel – Reliance (Andrew's Proposed Instruction) ................... 101

18.2  Equitable Estoppel – Reliance (TruePosition's Proposed Instruction)............ 102

18.3  Equitable Estoppel – Material Harm (Andrew's Proposed Instruction) .......... 103

18.3  Equitable Estoppel – Material Harm (TruePosition's Proposed Instruction) ............................................................................................... 104

18.4  Equitable Estoppel – Ultimate Determination    (Andrew's Proposed Instruction) ................................................................................................... 105

18.4  Equitable Estoppel – Ultimate Determination   (TruePosition's Proposed Instruction) ......................................................................... 106

18.5  Equitable Estoppel – Abuse of Standards Setting Bodies (Andrew's Proposed Instruction) .................................................. 107

18.5  Equitable Estoppel – Abuse of Standards Setting Bodies (TruePosition's Proposed Instruction) .................................................. 108

18.6  Equitable Estoppel – Ultimate Determination    (Andrew's Proposed Instruction) ......................................................................... 111

18.6  Equitable Estoppel – Ultimate Determination   (TruePosition's Proposed Instruction) ......................................................................... 112

19.    Implied License (Andrew's Proposed Instruction) ................................................. 113

19.    Implied License (TruePosition's Proposed Instruction) ........................................... 115

20.    Promissory Esopptel (Andrew's Proposed Instruction) ........................................... 117

20.    Promissory Esopptel (TruePosition's Proposed Instruction) ................................... 118

20.1  Promissory Estoppel – The Promise (Andrew's Proposed Instruction) .......... 120

20.1  Promissory Estoppel – The Promise (TruePosition's Proposed Instruction) ......................................................................... 121

21.    Unclean Hands (Andrew's Proposed Instruction) ................................................... 122

21.    TruePosition's Alleged Unclean Hands (TruePosition's Proposed Instruction) ....... 123

22.    Andrew's Alleged Unclean Hands (TruePosition's Proposed Instruction) .............. 125

23.    Damages (TruePosition's Proposed Instruction) ..................................................... 126

23.    Damages (Andrew's Proposed Instruction) ............................................................. 127

23.1  Compensatory Damages In General (TruePosition's Proposed Instruction) ......................................................................... 129

23.1  Compensatory Damages In General (Andrew's Proposed Instruction) ........... 130

23.2  Damages—Burden of Proof (TruePosition's Proposed Instruction) .............. 131

23.2  Damages—Burden of Proof (Andrew's Proposed Instruction)........................ 132

23.3  Damages—Lost Profits (TruePosition's Proposed Instruction) ...................... 133

23.3  Damages—Lost Profits (Andrew's Proposed Instruction) ............................. 134

23.4  Damages—Lost Profits From Lost Sales – "But For" Test
      (TruePosition's Proposed Instruction) .......................................... 135

23.4  Damages—Lost Profits From Lost Sales – "But For" Test (Andrew's
      Proposed Instruction) ........................................................... 136

23.5  Damages—Lost Profits Factors (TruePosition's Proposed Instruction).......... 137

23.6  Lost Profits – Two-Supplier Market (TruePosition's Proposed
      Instruction) .................................................................... 138

23.7  Manufacturing and Marketing Capability   (TruePosition's Proposed
      Instruction) .................................................................... 139

23.8  Lost Profits – Demand (TruePosition's Proposed Instruction) ...................... 140

23.9  Lost Profits – Acceptable Non-Infringing Substitutes (TruePosition's
      Proposed Instruction) ........................................................... 141

23.9  Lost Profits – Acceptable Non-Infringing Substitutes (Andrew's
      Proposed Instruction) ........................................................... 143

23.10 Amount of Lost Profits (TruePosition's Proposed Instruction) .................... 144

23.10 Amount of Lost Profits (Andrew's Proposed Instruction)............................ 145

## DELIBERATION AND VERDICT

1.   Introduction (Agreed Upon Instruction)................................................... 146

2.   Unanimous Verdict (TruePosition's Proposed Instruction) ........................ 147

2.   Unanimous Verdict (Andrew's Proposed Instruction)............................... 150

3.   Duty to Deliberate (Agreed Upon Instruction) ........................................ 152

4.   Court Has No Opinion (Agreed Upon Instruction)................................... 154

**FINAL INSTRUCTIONS**

**1.     INTRODUCTION (AGREED UPON INSTRUCTION)**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## 2.    JURORS' DUTIES (AGREED UPON INSTRUCTION)

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 3.    BURDENS OF PROOF (TRUEPOSITION'S PROPOSED INSTRUCTION)

This is a civil case in which TruePosition is alleging that Andrew is infringing

TruePosition's patent, and in which Andrew is asserting that it does not infringe.

TruePosition has the burden of proving patent infringement by what is called a

preponderance of the evidence.  That means that TruePosition has to produce evidence

which, when considered in light of all of the facts, leads you to believe that what

TruePosition asserts is more likely true than not.  To put it differently, if you were to put

the evidence of TruePosition and Andrew on opposite sides of a scale, the evidence

supporting TruePosition's claims would have to make the scales tip somewhat on

TruePosition's side for your verdict to be for TruePosition.

TruePosition is also alleging that Andrew's infringement was willful.

TruePosition has the burden of proving willful infringement by clear and convincing

evidence.  Clear and convincing evidence is evidence that produces an abiding conviction

that the truth of a factual contention is highly probable.  Proof by clear and convincing

evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

If TruePosition fails to meet its burden for a particular claim, your verdict must be

for Andrew on that claim.

In this case, Andrew is contending that TruePosition committed fraud.  Andrew

has the burden of proving fraud by a preponderance of the evidence.  Andrew also

contends that TruePosition made certain promises to Andrew that now should prevent

TruePosition from asserting its 144 patent against Andrew.  Andrew has the burden of

proving this claim, promissory estoppel, by the clear and convincing evidence standard.

If Andrew fails to meet its burden for a particular claim, your verdict must be for

TruePosition on that claim.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and you should, therefore, put it out of your mind.

**TruePosition's Authority**

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

TruePosition objects to Andrew's proposed instruction because invalidity is not at issue in this case.  *See* D.I. 257 at 16-17.

TruePosition further objects to Andrew's proposed instruction because Andrew's equitable defenses – equitable estoppel, implied license, unclean hands, and the ultimate determination of promissory estoppel – are issues that should be decided by the Court and not the jury.  *See Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)); *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999) ("Whether an implied license exists is a question of law that we review *de novo*.").  *Compare Wang Labs., Inc. v. Mitsubishi Electrics America, Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) (sending issue to jury by agreement of parties); *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1034 (Del. 2003) ("The avoidance of injustice element [of promissory estoppel] is, however, a legal concept and not a question of fact to be submitted to the jury."); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310-11 (D. Del. 2005) ("The clean hands maxim gives broad

discretion to the court's equity power . . . The court is not bound by any formula, restraint, or limitation which restricts the free and just exercise of its equitable discretion.").  TruePosition does not consent to allow the jury to decide these issues.

TruePosition also notes that although Andrew has pled equitable estoppel, implied license and promissory estoppel both as affirmative defenses and as independent counterclaims, all three issues in the patent context are only defenses to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances. *See A.C. Aukerman*, 960 F.2d at 1027 (equitable estoppel); *Honeywell*, 398 F. Supp. 2d at 309 (equitable estoppel); *Augustine Medical*, 194 F.3d at 1374 ("[T]he argument of implied license is a *defense* to a patent infringement allegation. . . Augustine's application of that argument in this case would turn the law of implied license from a defense to an offense.  We are not willing to construe the law in such a manner today.").

Finally, TruePosition does not believe that Andrew's defenses of equitable estoppel, implied license, the ultimate determination of promissory estoppel and unclean hands should be decided by the jury.  However, should the Court decide to send these issues to the jury in an advisory capacity, TruePosition requests that the jury also be instructed concerning TruePosition's unclean hands defense to Andrew's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands in the following way:

TruePosition contends that Andrew has unclean hands and so should be prevented from asserting its equitable defenses of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands against TruePosition.  TruePosition has the burden of proving unclean hands by the clear and convincing evidence standard.

### 3.    BURDENS OF PROOF (ANDREW'S PROPOSED INSTRUCTION)

This is a civil case in which TruePosition is alleging that Andrew is infringing TruePosition's patent, and in which Andrew is asserting that it does not infringe. TruePosition has the burden of proving infringement by what is called a preponderance of the evidence. That means that TruePosition has to produce evidence which, when considered in the light of all the facts, leads you to believe that what TruePosition claims is more likely true than not. To put it differently, if you were to put the evidence of TruePosition and Andrew on opposite sides of a scale, the evidence supporting TruePosition's claims would have to make the scale tip to TruePosition's side for your verdict to be for TruePosition.

TruePosition is also alleging that Andrew's infringement was willful. TruePosition has the burden of proving willful infringement by clear and convincing evidence. Clear and convincing evidence is evidence that produces an abiding conviction that the truth of a factual contention is highly probable. Proof by clear and convincing evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

If TruePosition fails to meet its burden for a particular claim, your verdict must be for Andrew on that claim.

In this case, Andrew is contending that the 144 patent is invalid. Andrew has the burden of proving by clear and convincing evidence. Andrew is contending that TruePosition committed fraud. Andrew has the burden of proving fraud by a preponderance of the evidence. Andrew is contending that TruePosition is equitably estopped from asserting its 144 patent. Andrew must prove equitable estoppel by a preponderance of the evidence. Andrew is contending that it has an implied license under the 144 patent. Andrew must prove it has an implied license by a preponderance of

- 6 -

the evidence.  Andrew contends that TruePosition made certain promises to Andrew that now should prevent TruePosition from asserting its 144 patent against Andrew.  Andrew has the burden of proving this claim, promissory estoppel, by the clear and convincing evidence standard.  Andrew contends that TruePosition has unclean hands and so should be prevented from going forward with its claims against Andrew.  Andrew has the burden of proving this claim by the clear and convincing evidence standard.

If Andrew fails to meet its burden for a particular claim, your verdict must be for TruePosition on that claim.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and you should, therefore, put it out of your mind.


Authority

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

Andrew's Authority

Federal Circuit Bar Association Model Patent Jury Instructions - 1.1 Burdens of Proof.

### 4.     EVIDENCE DEFINED (AGREED UPON INSTRUCTION)

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, any facts that the parties agreed to by stipulation, and any facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked or I may have struck things from the record.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  I may have ordered you to disregard things that you saw or heard.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

5.    **CONSIDERATION OF EVIDENCE (AGREED UPON INSTRUCTION)**

You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 6.    DIRECT AND CIRCUMSTANTIAL EVIDENCE (AGREED UPON INSTRUCTION)

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

7.    **CREDIBILITY OF WITNESSES (AGREED UPON INSTRUCTION)**

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider

whether it was simply an innocent lapse of memory or an intentional falsehood, and that

may depend upon whether it concerns an important fact or an unimportant detail.

**8.    NUMBER OF WITNESSES (AGREED UPON INSTRUCTION)**

One more point about the witnesses.  Sometimes jurors wonder if the number of witnesses who testified makes any difference.  Do not make any decisions based only on the number of witnesses who testified.  What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  Concentrate on that, not the numbers.

### 9.    EXPERT WITNESSES (AGREED UPON INSTRUCTION)

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field is permitted to state his or her opinion on those technical or financial matters – that person is called an expert witness.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

**10.     DEPOSITION TESTIMONY (AGREED UPON INSTRUCTION)**

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape. This testimony is entitled to the same consideration you would give it had the witness personally appeared in court. Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 11.    THE PARTIES AND THEIR CONTENTIONS (AGREED UPON INSTRUCTION)

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

## 11.1   THE PARTIES (AGREED UPON INSTRUCTION)

The plaintiff in this case is TruePosition, Inc.  The defendant is Andrew Corporation.

I will refer to the plaintiff as "TruePosition."  I will refer to the defendant as "Andrew."

## 11.2    THE PARTIES' CONTENTIONS (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition contends that Andrew is directly infringing its 144 patent by making, using, selling, and offering for sale Geometrix. TruePosition also contends that Andrew is infringing its 144 patent by supplying components of Geometrix from the United States to a foreign country. TruePosition contends that it is entitled to damages caused by Andrew's alleged infringement. TruePosition also contends that Andrew's infringement of the 144 patent is knowing and willful.

Andrew contends that TruePosition committed fraud against Andrew. Andrew also contends that TruePosition is barred from asserting the 144 patent against Andrew due to promises TruePosition made.

First I will explain the asserted claims of the 144 patent and the meaning of certain claim terms in dispute.


**TruePosition's Authority**

TruePosition objects to Andrew's proposed instruction because invalidity is not at issue in this case. *See* D.I. 257 at 16-17.

TruePosition further objects to Andrew's proposed instruction because Andrew's equitable defenses – equitable estoppel, implied license, unclean hands, and the ultimate determination of promissory estoppel – are issues that should be decided by the Court and not the jury. *See Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)); *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d

1367, 1370 (Fed. Cir. 1999) ("Whether an implied license exists is a question of law that we review *de novo*.").  *Compare Wang Labs., Inc. v. Mitsubishi Electrics America, Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) (sending issue to jury by agreement of parties); *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1034 (Del. 2003) ("The avoidance of injustice element [of promissory estoppel] is, however, a legal concept and not a question of fact to be submitted to the jury."); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310-11 (D. Del. 2005) ("The clean hands maxim gives broad discretion to the court's equity power . . . The court is not bound by any formula, restraint, or limitation which restricts the free and just exercise of its equitable discretion.").  TruePosition does not consent to allow the jury to decide these issues.

Finally, TruePosition does not believe that Andrew's defenses of equitable estoppel, implied license, the ultimate determination of promissory estoppel and unclean hands should be decided by the jury.  However, should the Court decide to send these issues to the jury in an advisory capacity, TruePosition requests that the jury also be instructed concerning TruePosition's unclean hands defense to Andrew's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands in the following way:

TruePosition contends that Andrew has unclean hands and so should be prevented from asserting its equitable defenses of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands against TruePosition.  TruePosition has the burden of proving unclean hands by the clear and convincing evidence standard.

## 11.2    THE PARTIES' CONTENTIONS (ANDREW'S PROPOSED INSTRUCTION)

TruePosition contends that Andrew is directly infringing its 144 patent by making, using, selling, and offering for sale Geometrix.  TruePosition also contends that Andrew is infringing its 144 patent by supplying components of Geometrix from the United States to a foreign country.  TruePosition contends that it is entitled to damages caused by Andrew's alleged infringement.  TruePosition also contends that Andrew's infringement of the 144 patent is knowing and willful.

Andrew contends that the 144 patent is invalid.  Andrew contends that TruePosition committed fraud against Andrew.  Andrew contends that TruePosition is equitably estopped from asserting its claims against Andrew.  Andrew contends that TruePosition's conduct created an implied license for Andrew under the 144 patent.  Andrew contends that TruePosition is barred from asserting the 144 patent against Andrew due to promises TruePosition made.  Andrew also contends that TruePosition is barred from asserting the 144 patent against Andrew due to TruePosition's unclean hands.  First I will explain the asserted claims of the 144 patent and the meaning of certain claim terms in dispute.

## 12.     THE PATENT LAWS (AGREED UPON INSTRUCTION)

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

### 13.    THE CLAIMS OF THE PATENTS IN SUIT (AGREED UPON INSTRUCTION)

As you heard at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products or methods or for making or using a product.

Claims are usually divided into parts, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

### 13.1    CONSTRUCTION OF THE CLAIMS (TRUEPOSITION'S PROPOSED INSTRUCTION)

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

**TruePosition's Authority**

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

### 13.1    CONSTRUCTION OF THE CLAIMS (ANDREW'S PROPOSED INSTRUCTION)

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed and whether or not it is invalid and unenforceable.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

<u>Authority</u>

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at <u>http://www.ded.uscourts.gov/MPTmain.htm;</u> *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384-391 (1996); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-24 (Fed. Cir. 2005) (*en banc*); *AFG Indus., Inc. v. Cardinal IG Co., Inc.*, 239 F.3d 1239, 1244 (Fed. Cir. 2001); *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1304-06 (Fed. Cir. 1999); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988-90 (Fed. Cir. 1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-84 (Fed. Cir. 1996); *Markman v. Westview Instruments*, 52 F.3d 967, 977 (Fed. Cir. 1995) (*en banc*).

**13.2    INDEPENDENT AND DEPENDENT CLAIMS (TRUEPOSITION'S
PROPOSED INSTRUCTION)**

TruePosition is no longer asserting infringement of any dependent claim.

Therefore, TruePosition proposes no instruction regarding independent and dependent

claims.

## 13.2    INDEPENDENT AND DEPENDENT CLAIMS (ANDREW'S PROPOSED INSTRUCTION)

There are two different types of claims in a patent.  The first type is called an "independent" claim.  An independent claim does not refer to any other claim of the patent.  An independent claim is read alone to determine its scope.

The second type, a "dependent" claim, refers to at least one other claim in the patent and, thus, incorporates whatever that other claim says.  Accordingly, to determine what a dependent claim covers, you must read both the dependent claim and the claim or claims to which it refers.

For example, claim 1 of the 144 patent is an independent claim.  You know this because claim 1 does not refer to any other claims.  Accordingly, the words of this claim are read by themselves in order to determine what the claim covers.

On the other hand, claim 2 is a dependent claim.  If you look at claim 2, it refers to claim 1.  Therefore, to determine what claim 2 covers, you must consider both the words of claims 1 and 2 together.

Authority

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.; 35 U.S.C. § 112 ¶ 4.

### 13.3    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (TRUEPOSITION'S PROPOSED INSTRUCTION)

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's again take the table example, with a patent that describes a table in which the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop – that is, a way to do it – rather than reciting the glue itself.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.  The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations.  Rather, the claim limitation is the overall structure corresponding to the claimed function.  This is why structures with different numbers of parts may still be considered equivalent.

In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

### TruePosition's Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm;

35 U.S.C. § 112 ¶ 6; *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-32 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc  v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

### 13.3    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (ANDREW'S PROPOSED INSTRUCTION)

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's again take the table example, with a patent that describes a table in which the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop – that is, a way to do it – rather than reciting the glue itself.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.

In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 6; *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-32 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc  v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. , 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

**13.4    "COMPRISING" CLAIMS (AGREED UPON INSTRUCTION)**

The beginning, or preamble, portion of a claim often uses the word "comprising." In the patent context, "comprising" means "including" or "containing."  A product claim that uses the word "comprising" or "comprises" is not limited to products that have only the elements recited in the claim, but can also cover products that have more elements than what is included in the claims.  Likewise, a method claim that uses the term "comprising" or "comprises" can cover methods that include more steps than what is listed in the claim.

Let's take our example of the claim that covers a table.  If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

### 13.5    LIMITATIONS OF THE CLAIMS AT ISSUE (AGREED UPON INSTRUCTION)

To decide the question of infringement, you must first understand what the claims of the patent cover.  It is my duty under the law to define what the patent claims mean.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

**Prescribed set of reverse control channels**:  A predetermined range of frequencies that transmit control information in only one direction, from a cellular telephone to a cell site.

**Periodic** and **periodically**:  Discontinuously

**Timing signal**:  Signal that conveys timing information

**Time stamp bits representing the time at which said cellular telephone signals were received**:  Binary units representing the time when cellular telephone signals were received at the cell site.

**Means for processing said frames of data from said cell site systems to generate a table identifying cellular telephone signals and the differences in times of arrival of said cellular telephone signals among said cell site systems**:  The function of the disclosed structure is to analyze the cellular telephone signals in order to generate a table that identifies the differences in times of arrival of said signals.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-56 (ending with the acronym "TDOA"); Fig. 7 at the first four blocks and table; col. 17, ll. 26-68 (minus any reference to "frequency difference data" or

"frequency difference results"); and Figs. 8A-8B (minus any reference to "frequency differences"); or equivalents of such a computer processor.

**Means for determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals**:  The function of the disclosed structure is to determine, on the basis of time of arrival differences, the location of the cellular telephones whose signals are received.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, l. 58 (beginning with the word "This") through col. 13, l. 62 (ending with the letter "C"); Fig. 7 at the fifth and sixth blocks; col. 18, ll. 1-34 (ending with "0.0001," but minus any reference to "frequencies"); and Fig. 8C through top four elements of Fig. 8D (minus any reference to "frequencies"); or equivalents of such a computer processor.

**Locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions**:  The function of the disclosed structure is to determine, without a specific request to do so, the locations of cellular telephones by receiving and analyzing the signals that the cellular telephones broadcast periodically over the reverse control channel.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-62 (ending with the letter "C"); Fig. 7 at the first six blocks and table; col. 17, l. 26 – col. 18, l. 34 (ending with "0.0001," but minus any reference to "frequency difference data," "frequency difference results," or "frequencies"); and Figs 8A through the top four elements of Fig.

8D (minus any reference to "frequency difference" or "frequencies"); or equivalents of such a computer processor.

**Database means for storing location data identifying the cellular telephone and their respective location, and for providing means to said database to subscribers at remote locations**:  The function of the disclosed structure is to store data that identifies each cellular telephone and its respective location, and for providing access to said data to subscribers at remote locations.  The means of the proposed structure is the combination of the "database 20" and: (a) the "first terminal 22 coupled via a modem . . . and telephone line to the database 20" (col. 9, ll. 25-27; Fig. 2 at blocks 20, 22); or (b) the "second terminal 24 in radio communication with the database 20" (col. 9, ll. 27-29; Fig. 2 at blocks 20, 24); or (c) the "third, handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communications with the database" (col. 9, ll. 29-31; Fig. 2 at blocks 20, 26); or equivalents of any such combination.

<u>Authority</u>

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR; Memorandum Order, D.I. 257.

**INFRINGEMENT**

**14.     PATENT INFRINGEMENT – GENERALLY (TRUEPOSITION'S PROPOSED INSTRUCTION)**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells, offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."  In this case, TruePosition alleges that Andrew's Geometrix directly infringes claims 1, 22 and 31 of the 144 patent, directed to cellular telephone location systems and methods of determining the location of cellular telephones.

In addition to direct infringement, there are two types of indirect infringement that may occur when components of a system or method are supplied form the United States to a foreign country – inducing infringement and contributory infringement.  TruePosition also accuses Andrew of inducing or contributing to the infringement of claims 1, 22 and 31 of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

TruePosition must prove infringement and inducement or contributory infringement by a preponderance of the evidence.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to the accused systems and methods, and determine whether or not there is infringement.  You should not compare the accused systems and methods with any specific example in the patent or with TruePosition's product or method.  The only

- 34 -

correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

## TruePosition's Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. §§ 271-281; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

**14.1    PATENT INFRINGEMENT – GENERALLY (ANDREW'S PROPOSED INSTRUCTION)**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."

In addition to direct infringement, there are two types of indirect infringement that may occur when components of a system or method are supplied form the United States to a foreign country – inducing infringement and contributory infringement.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to the accused systems and methods, and determine whether or not there is infringement.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. §§ 271-281; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

- 36 -

<u>Authority</u>
Federal Circuit Bar Association Model Jury Instructions - 8.1 - Patent Infringement
Generally - Direct Infringement

### 14.1    DIRECT INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

As I have just explained, you must decide whether or not TruePosition has proved by a preponderance of the evidence that Andrew has made, used, sold, or offered for sale a product or method covered by any of the claims at issue in this case.  Whether or not Andrew knew it was infringing does not matter.  Andrew is a direct infringer of the 144 patent even if, in good faith, it believes that Geometrix does not infringe the 144 patent. Andrew's knowledge or intent to infringe is not relevant.

**TruePosition's Authority**

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR;  Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

**14.1    DIRECT INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)**

TruePosition alleges that Andrew's Geometrix system directly infringes claims 1, 22, and 31 of the 144 patent.  You must decide whether or not TruePosition has proved by the preponderance of the evidence that Andrew has sold or offered for sale a product or method covered by any of the claims at issue in this case.

Authority

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR;  Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

**14.3    INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES TO A FOREIGN COUNTRY (UNDER 35 U.S.C. §271(f)) (TRUEPOSITION'S PROPOSED INSTRUCTION)**

As I have told you, in addition to direct infringement, there are two types of indirect infringement that may occur when the components of a product or method are shipped outside of the United States -- inducing infringement and contributory infringement.  In this case, TruePosition contends that Andrew has induced or contributed to the infringement of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.  As I told you before, keep in mind that components are not limited to parts of a patented system, but may also be parts that perform steps in a patented method.

**TruePosition's Authority**

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

**14.2    INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM
THE UNITED STATES TO A FOREIGN COUNTRY
(UNDER 35 U.S.C. §271(f)) (ANDREW'S PROPOSED INSTRUCTION)**

As I have told you, in addition to direct infringement, there are two types of

indirect infringement that may occur when the components of a product or method are

shipped outside of the United States -- inducing infringement and contributory

infringement.  In this case, TruePosition contends that Andrew has induced or contributed

to the infringement of the 144 patent by supplying components of Geometrix from the

United States to Saudi Arabia.

Authority

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.3    INDUCING PATENT INFRINGEMENT UNDER 35 U.S.C. §271(f)(1) (TRUEPOSITION'S PROPOSED INSTRUCTION)

A person induces patent infringement if he or she urges, encourages or purposefully causes someone to infringe a patent. Inducing infringement cannot occur unintentionally.

In order to prove Andrew induced infringement of the 144 patent, TruePosition must prove five things by the preponderance of the evidence:

(1) Andrew knew about the 144 patent; and

(2) Andrew shipped components of Geometrix to Saudi Arabia; and

(3) The components of Geometrix that Andrew shipped to Saudi Arabia constitute all or a substantial portion of the claimed invention; and

(4) That Andrew knew or should have known that those components would be assembled into a product that would infringe; and

(5) That Andrew specifically intended for the infringement to occur.


If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew induced patent infringement. However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not induce patent infringement.


<u>Authority</u>

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.3    INDUCING PATENT INFRINGEMENT UNDER 35 U.S.C. §271(f)(1) (ANDREW'S PROPOSED INSTRUCTION)

A person induces patent infringement if he or she urges, encourages or purposefully causes someone to infringe a patent. Inducing infringement cannot occur unintentionally. In order to prove Andrew induced infringement of the 144 patent, TruePosition must prove five things by the preponderance of the evidence:

(1)    Andrew knew about the 144 patent; and

(2)    Andrew shipped components of Geometrix to Saudi Arabia; and

(3)    The components of Geometrix that Andrew shipped to Saudi Arabia constitute all or a substantial portion of the claimed invention; and

(4)    That Andrew knew or should have known that those components would be assembled into a product that would infringe; and

(5)    That Andrew specifically intended for the infringement to occur.

If you are persuaded that TruePosition has proven each of these five things then you should find that Andrew induced patent infringement. However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not induce patent infringement.

**Andrew's Authority**

*Asyst Techs., Inc. v. Empak, Inc.*, 2007 WL 622269, Case No. 98020451-JF (N.D. Cal. Jan. 29, 2007) (Joint Proposed Post-Trial Jury Instructions) citing 35 U.S.C. § 271(f)(1); *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304-1306 (Fed. Cir. 2006) (en banc in relevant part) (holding that the defendant did not believe its product infringed, and therefore lacked the requisite intent for inducement); *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990) (to prove liability for inducement, a patentee must prove that the defendant "possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement."); *Ferguson Beauregard/Logic Controls v. Mega Sys., LLC*, 350 F.3d 1327, 1342 (Fed. Cir. 2003); *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518

1972); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1258 (Fed. Cir. 2000) (offers to sell do not constitute acts of infringement under 271(f)).

### 14.4    CONTRIBUTORY INFRINGEMENT UNDER 35 U.S.C. §271(f)(2) (TRUPOSITION'S PROPOSED INSTRUCTION)

Contributory infringement can occur when a supplier provides a component for use in a patented system or method.  In order to establish that Andrew is liable for contributory infringement of a claim, TruePosition must show, by a preponderance of evidence, that:

(1)    Andrew supplied at least one component of at least one claim of the 144 Patent from the United States to a place outside of the United States; and

(2)    Andrew is aware that the substantial use of the component is in the system or method covered by the claim of the patent; and

(3)    Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.


**TruePosition's Authority**

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.4   CONTRIBUTORY INFRINGEMENT UNDER 35 U.S.C. §271(f)(2)
### (ANDREW'S PROPOSED INSTRUCTION)

Contributory infringement can occur when a supplier provides a component for use in a patented system or method where that component is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.  TruePosition asserts that Andrew's selling or supplying of Geometrix components to Saudi Arabia is a contributory infringement of the asserted claims.  In order to establish that Andrew has contributorily infringed the asserted claims, TruePosition must prove five things by the preponderance of the evidence:

(4)     Andrew knew of the 144 patent; and

(5)     Andrew supplied at least one component of at least one claim of the 144 Patent from the United States to a place outside of the United States; and

(6)     Andrew knew that the component was especially made for a use that would infringe the 144 patent; and

(7)     The component was not a staple or commodity article; and

(8)     Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.

If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew contributed to patent infringement.  However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not contribute to patent infringement.

Authority

*Asyst Techs., Inc. v. Empak, Inc.,* 2007 WL 622269,  Case No. 98020451-JF (N.D. Cal. Jan. 29, 2007) (Joint Proposed Post-Trial Jury Instructions) citing 35 U.S.C. § 271(f)(2); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (to satisfy the knowledge requirement, a patentee must prove "that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F. 3d 1246, 1250 n.2 (Fed. Cir. 2000) (offers to sell do not constitute acts of infringement under 271 (f)); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1448 (Fed. Cir. 1990) (the accused infringer must have knowledge of the patent); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

**14.5    INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS (TRUEPOSITION'S PROPOSED INSTRUCTION)**

In order to infringe a patent claim, a system or method must include every limitation of the claim. If Geometrix omits even a single limitation recited in a claim, then you must find that Andrew has not directly infringed that claim. If the combination consisting of Geometrix and Saudi Telecom's cellular network omits even a single limitation recited in a claim, then you must find that Andrew has not indirectly infringed that claim. You must consider each claim of each patent separately.

A claim limitation may be present in an accused system or method in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused system or method exactly as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

Proof of infringement under the doctrine of equivalents requires a showing that the differences between the claimed invention and the accused system or method are insubstantial. One way to determine this is to look at whether or not the accused system or method performs substantially the same function as the claim limitation in substantially the same way to obtain substantially the same result as the claimed limitation. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the structure or method of the accused system and the structure or method recited in the patent claim limitation are interchangeable. A person of ordinary skill is a person with average education and training in the field.

Equivalence is determined at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the

patent issued.  Thus, the inventor need not have foreseen, and the patent need not

describe, all potential equivalents to the invention covered by the claims.  Also, slight

changes in technique or improvements made possible by technology developed after the

patent application is filed may still be equivalent for doctrine of equivalents purposes.

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1309 (Fed. Cir. 2002); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Bayer AG v. Elan Pharm, Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*).

**14.5    INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS (ANDREW'S PROPOSED INSTRUCTION)**

In order to infringe a patent claim, a system or method must include every limitation of the claim.  If Geometrix omits even a single limitation recited in a claim, then you must find that Andrew has not directly infringed that claim.  If the combination consisting of Geometrix and Saudi Telecom's cellular network omits even a single limitation recited in a claim, then you must find that Andrew has not indirectly infringed that claim.  You must consider each claim of each patent separately.  As I have explained, a dependent claim includes all the limitations of the claim it references plus the additional limitations listed in the dependent claim itself.  Thus, if you find that an independent claim is not infringed, any claims dependent on it are also not infringed.  But if you find that an independent claim is infringed, you must still decide whether the dependent claim requirements are also met.

A claim limitation may be present in an accused system or method in one of two ways, either literally or under what is known as the doctrine of equivalents.  A claim limitation is literally present if it exists in the accused system or method exactly as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

Proof of infringement under the doctrine of equivalents requires a showing that the differences between the claimed invention and the accused system or method are insubstantial.  One way to determine this is to look at whether or not the accused system or method performs substantially the same function as the claim limitation in substantially the same way to obtain substantially the same result as the claimed limitation.  Another way is to consider whether or not people of ordinary skill in the field

of invention believe that the structure or method of the accused system and the structure or method recited in the patent claim limitation are interchangeable.  A person of ordinary skill is a person with average education and training in the field.

Equivalence is determined at the time of the activities accused of infringement, and not by what was known at the time the patent application was filed or when the patent issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950); *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1309 (Fed. Cir. 2002); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001); *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1302-03 (Fed. Cir. 2001); *Bayer AG v. Elan Pharm, Research Corp.*, 212 F.3d 1241, 1247-50 (Fed. Cir. 2000); *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d 931, 934 (Fed. Cir. 1987) (*en banc*).

**14.6    INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS
(TRUEPOSITION'S PROPOSED INSTRUCTION)**

As I told you, a means-plus-function claim limitation recites a means for performing a particular function rather than reciting a specific structure or device. A means-plus-function limitation may be present in an accused system literally or under the doctrine of equivalents.

To prove that an accused system includes a structure that is literally covered by a means-plus-function limitation, TruePosition must show, first, that Geometrix contains a structure that performs the identical function recited in the means-plus-function limitation. Second, TruePosition must show that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

TruePosition may also show that Geometrix infringes the means-plus-function limitations under the doctrine of equivalents. Under the doctrine of equivalents, TruePosition must show that Geometrix contains a structure that performs a function that is either identical or equivalent to the function recited in the claim limitation. TruePosition must also show that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

The individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function. This is why structures with different numbers of parts may still be considered equivalent.

Whether or not the structure or function of Geometrix is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art. A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

To better understand means-plus-function claim limitations, let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The function is "securing the legs to the tabletop." To determine the structure that performs this function, we look to the description in the patent. The patent in our example discloses glue to secure the legs to the tabletop. So, "glue" is the structure that performs the function of "securing the legs to the tabletop."

Let's assume that the accused device uses nails instead of glue to perform the function of "securing the legs to the tabletop." The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, and so on.

To give another example more specific to the issues in this case, let's assume that a claim requires, "means for determining the location of a phone." Here, the claimed function is "determining the location of a phone." Let's also assume that the patent specification describes a computer programmed to perform a process consisting of two

steps to determine the location of the phone. So, the overall structure for performing the function of the claim is the computer that is programmed to execute this process.

In order for a system to meet this limitation, the system must include a structure that is the same, or equivalent to, the computer that is programmed to execute that process. To continue with our example, let's assume that the first of the two steps of the process described in the patent specification is that the computer receives information from the phone. The second step of the process is that the computer uses the phone information to calculate a latitude and longitude. To determine whether the accused system infringes, it must, then, include the same or equivalent of a computer that is programmed to perform this process.

## TruePosition's Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 6 (1984); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir.1999); *WMS Gaming Inc v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed.Cir.1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir.1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

**14.6    INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (ANDREW'S PROPOSED INSTRUCTION)**

As I told you, a means-plus-function claim limitation recites a means for performing a particular function rather than reciting a specific structure or device. A means-plus-function limitation may be present in an accused system literally or under the doctrine of equivalents.

To prove that an accused system includes a structure that is literally covered by a means-plus-function limitation, TruePosition must show by a preponderance of the evidence: first, that Geometrix contains a structure that performs the identical function recited in the means-plus-function limitation. Second, that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

TruePosition may also show that Geometrix infringes the means-plus-function limitations under the doctrine of equivalents. Under the doctrine of equivalents, TruePosition must show by the preponderance of the evidence: first, that Geometrix contains a structure that performs a function that is either identical or equivalent to the function recited in the claim limitation. Second, that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

Whether or not the structure or function of Geometrix is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art. A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

To better understand means-plus-function claim limitations, let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The function is "securing the legs to the tabletop." To determine the structure that performs this function, we look to the description in the patent. The patent in our example discloses glue to secure the legs to the tabletop. So, "glue" is the structure that performs the function of "securing the legs to the tabletop."

Let's assume that the accused device uses nails instead of glue to perform the function of "securing the legs to the tabletop." The fact that nails and glue are different does not automatically mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent whether the inventor distinguished glue from nails in the patent or prosecution history, and so on.

Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 6 (1984); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir.1999); *WMS Gaming Inc , 1347-50 (Fed.Cir.1999); , 1318-21 (Fed. Cir. 1999); , 1307-1310 (Fed. Cir.1998); McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

- 56 -

### 14.7    DETERMINATION OF INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

You should evaluate infringement for each asserted claim of the 144 patent separately.  If you find that TruePosition has proved by a preponderance of the evidence that each limitation of a system claim – claims 1 or 22 of the 144 patent – is present, either literally or under the doctrine of equivalents, in Geometrix then you must find that the Andrew infringes that claim.  Likewise, for the method claim – claim 31 of the 144 patent – if you find that TruePosition has proved by a preponderance of the evidence that each step of the claim, or its equivalent, is present in a method that is performed by Geometrix, you must find infringement of that claim.

Furthermore, if you find that Andrew supplied or exported from the United States all or a substantial portion of the components of a claim of the 144 Patent and, also, that Andrew encouraged or induced the combination of those components outside of the United States in a manner that would infringe the 144 Patent had the combination occurred within the United States, you must find infringement of that claim.

Finally, if you find that 1) Andrew supplied a component of a claim of the 144 Patent from the United States to a place outside of the United States; 2) Andrew is aware that the substantial use of the component is in the system or method covered by a claim of the patent; and 3) Andrew intended for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States, you must find infringement of that claim.

If you find that an independent claim has been infringed, you must separately determine whether the dependent claim has been infringed.  In the case of dependant

claims, you must find that Andrew's system or method contains each limitation of the

dependant claim and each of the limitations of the independent claim to which it refers.


**TruePosition's Authority**

      Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar
Association, Third Bench and Bar Conference, in "Forms" at
http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271; *Microsoft Corp. v. AT&T
Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209
(Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366
(Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001);
*Jeneric/Pentron, Inc. v Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Wahpeton
Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

### 14.7    DETERMINATION OF INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)

You should evaluate infringement for each asserted claim of the 144 patent separately.  If you find that TruePosition has proved by a preponderance of the evidence that each limitation of the system claims – claims 1 or 22 of the 144 patent – is present, either literally or under the doctrine of equivalents, in Geometrix then you must find that Andrew infringes that claim.  Likewise, for the method claim – claim 31 of the 144 patent – if you find that TruePosition has proved by a preponderance of the evidence that each step of the claim, or its equivalent, is present in a method that is performed by Geometrix, you must find infringement of that claim.

Furthermore, if you find that TruePosition has proved by a preponderance of the evidence that Andrew has indirectly infringed a '144 patent claim either by inducing infringement or by contributing to the infringement of the '144 patent, then you must find infringement of that claim.

If you find that an independent claim has been infringed, you must separately determine whether the dependent claim has been infringed.  In the case of dependant claims, you must find that Andrew's system or method contains each limitation of the dependent claim and each of the limitations of the independent claim to which it refers. If you find that the independent claims are not infringed, then you must also find that the dependent claims are not infringed.


<u>Authority</u>

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271; *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209

(Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001); *Jeneric/Pentron, Inc. v Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

Authority

Federal Circuit Bar Association Model Patent Jury Instructions - 8.7 - Determination of Infringement.

### 15.    WILLFUL INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

If you find on the basis of the evidence and the law as I have explained it, that Andrew directly or indirectly infringed at least one claim of the 144 patent, you must then decide whether or not that infringement was willful.  The fact that you may have determined that Andrew infringed the 144 patent does not mean that the infringement was willful.  Willfulness requires you to determine Andrew's state of mind.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which TruePosition is entitled.  A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages.  It is my job to decide whether or not to award increased damages to TruePosition.

To establish willful infringement, TruePosition must prove two things by clear and convincing evidence.  First, TruePosition must prove that Andrew acted in reckless disregard of the 144 patent.  Second, TruePosition must prove that Andrew proceeded with the activities that are accused of infringement without a good faith belief that the 144 patent was either invalid or not infringed, or both.

In determining whether on not Andrew acted in good faith, you should consider all of the circumstances that would indicate the state of mind of the infringer.  Examples of such circumstances include:

1)    Whether or not Andrew, when it learned of TruePosition's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or that it was not infringed before Andrew started or continued any possible infringing activity;

2)    Whether or not Andrew reasonably believed that it had a substantial

defense to infringement and reasonably believed that the defense would be

successful if litigated;

3)    Whether or not Andrew made a good faith effort to avoid infringing the

patent, for example, whether or not Andrew took remedial action upon

learning of the patent by ceasing infringing activity or attempting to

design around the patent;

4)    Whether or not Andrew tried to cover up its infringement;

5)    Whether or not pressure to be competitive in the market influenced

Andrew's infringing conduct; and finally,

6)    Whether or not Andrew obtained and followed the advice of a competent

lawyer.

The absence of a lawyer's opinion does not require you to find willfulness, but

may be considered as one factor in your determination.

In deciding whether or not Andrew willfully infringed the 144 patent, you need

not find that all these factors are present.  You must consider any and all evidence that

indicates Andrew's state of mind to determine whether TruePosition has proved, by clear

and convincing evidence, that the infringement was willful.

## TruePosition's Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar
Association, Third Bench and Bar Conference, in "Forms" at
http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model
Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, Case
No. 06-M830 (Fed. Cir. Aug. 20, 2007); *Applied Medical Resources Corp. v. United
States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006); *Golden Blount, Inc. v.*

*Robert H. Peterson Co.*, 438 F.3d 1354, 1370 (Fed. Cir. 2006); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006); *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Golight, Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327, 1339 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001); *Ajinomoto Co. Inc. v. Archer Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000); *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1351 (Fed. Cir. 2000); *SRI International, Inc. v. Advanced Technology Laboratories, Inc.* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939, 942 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473,1483 (Fed. Cir. 1990); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075, 1084 (Fed. Cir. 1987); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987); *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); *IMX, Inc. v. Lendingtree, LLC*, 469 F Supp. 2d 203, 218 (D. Del. 2007).

15.    **WILLFUL INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)** [1]

If you find on the basis of the evidence and the law as I have explained it, that Andrew directly or indirectly infringed at least one claim of the 144 patent, you must then decide whether or not that infringement was willful. The fact that you may have determined that Andrew infringed the 144 patent does not mean that the infringement was willful. Willfulness requires you to determine whether Andrew's actions before filing suit were objectively reckless with regard to the 144 Patent.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which TruePosition is entitled, if you find infringement. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages for infringing acts committed before the filing of a lawsuit. It is my job to decide whether or not to award increased damages to TruePosition should you find infringement and award damages.

The burden of proving that the infringement was willful is the higher clear and convincing evidence burden, and the only actions that are relevant are those that were taken before this suit was filed on October 25, 2005.

To establish willful infringement, TruePosition must prove three things by clear and convincing evidence. First, TruePosition must prove that Andrew was aware of the 144 patent. Second, TruePosition must prove that Andrew's actions before this suit was filed on October 25, 2005 constituted infringement of a valid patent, and that Andrew took those actions despite an objectively high likelihood that they constituted infringement of a valid patent. Andrew's subjective state of mind is not relevant to this

---

[1] Pursuant to Andrew's Evidentiary Issue No. 11, Andrew seeks to exclude all evidence related to willfulness. Andrew proposes this instruction for use if the Court denies Andrew's Evidentiary Issue No. 11.

objective inquiry.  Finally, TruePosition must prove that Andrew knew or should have

known that its actions taken before October 25, 2005 created an objectively high risk of

infringement.  If you find that TruePosition has not proved any of these three elements,

then you must find that any infringement of the 144 patent was not willful.

.

Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar
Association, Third Bench and Bar Conference, in "Forms" at
http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model
Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, Misc.
No. 830, --- F.3d ----, 2007 WL 2358677, at *5 (Fed. Cir. Aug. 20, 2007);  *Applied
Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir.
2006); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1370 (Fed. Cir.
2006); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006);
*Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378
(Fed. Cir. 2005); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Golight,
Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327, 1339 (Fed. Cir. 2004); *Crystal
Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336,
1352 (Fed. Cir. 2001); *Ajinomoto Co. Inc. v. Archer Daniels-Midland Co.*, 228 F.3d
1338, 1351-52 (Fed. Cir. 2000); *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d
1343, 1351 (Fed. Cir. 2000); *SRI International, Inc. v. Advanced Technology
Laboratories, Inc.* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Read Corp. v. Portec, Inc.*, 970
F.2d 816, 826 (Fed. Cir. 1992); *Acoustical Design, Inc. v. Control Electronics Co., Inc.*,
932 F.2d 939, 942 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473,1483 (Fed.
Cir. 1990); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 829
F.2d 1075, 1084 (Fed. Cir. 1987); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836
F.2d 1320, 1328 (Fed. Cir. 1987); *Underwater Devices, Inc. v. Morrison-Knudsen Co.,
Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); *IMX, Inc. v. Lendingtree, LLC*, 469 F Supp.
2d 203, 218 (D. Del. 2007).

Authority

Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR; Federal
Circuit Bar Association Model Patent Jury Instructions - 9 - Willful Infringement.

**ANDREW'S POSITION**

**16.    Validity In General (Andrew's Proposed Instruction)**

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new and useful. A patent cannot take away from people their right to use what was known when the invention was made. The terms "new" and "useful" have special meanings under the patent laws. I will explain these terms to you as we discuss Andrew Corporation's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Andrew Corporation has challenged the validity of the '144 patent claims. Andrew Corporation must prove that a patent claim is invalid by the highly probably standard.

I will now explain to you Andrew's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each patent claim separately.

**Andrew's Authorities**

Federal Circuit Bar Association Model Patent Jury Instructions - 10.1 - Validity In General, citing *Morton Int'l v. Cardinal Chem. Co.*, 5 F.3d 1464, 1471-2 (Fed. Cir. 1993); *Avia Group Int'l., Inc. v. L.A. Gear Cal.*, 853 F.2d 1557, 1562 (Fed. Cir. 1988); *DMI, Inc. v. Deere & Co.,* 802 F.2d. 421, 427 (Fed. Cir. 1986); *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534 (Fed. Cir. 1983).

### 16.     Validity In General (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction because invalidity is no longer an issue in this case. *See* D.I. 257 at 16-17. Any references to invalidity will confuse and mislead the jury.

### 16.1    The Prior Art (Andrew's Proposed Instruction)

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new in light of what came before. That which came before is referred to as the "prior art."

Andrew Corporation is relying on one item of prior art.  Andrew Corporation and TruePosition agree that the following item is prior art, and there is no dispute that this item came before the invention claimed in the '144 patent.

The Japanese Laid-Open Patent Application, Publication No. H30239091, by Mitsunori Kono. I will refer to this as "the Kono reference."

[BECAUSE TRUEPOSITION HAS ADMITTED THAT KONO IS PRIOR ART TO THE '144 PATENT (SEE TRUEPOSITION'S RESPONSES TO ANDREW'S REQUESTS FOR ADMISSION NOS. 72-73), ANDREW HAS NOT PROPOSED JURY INSTRUCTIONS ADDRESSING KONO'S STATUS AS PRIOR ART.]

**Andrew's Authorities**

Federal Circuit Bar Association Model Patent Jury Instructions - 10.6 - The Prior Art

### 16.1   The Prior Art (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction because invalidity is no longer an issue in this case. *See* D.I. 257 at 16-17.  Any references to prior art will confuse and mislead the jury.

**16.2    Anticipation/Lack of Novelty (Andrew's Proposed Instruction)**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was "anticipated" by the prior art. An invention that is "anticipated" by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the highly probable standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or present in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

In this case, Andrew Corporation contends that claims 1, 2, 22, 31 and 32 of the '144 patent are invalid because they are anticipated by the Kono reference. If you find that Andrew Corporation has proved that it is highly probable that claims 1, 2, 22, 31 and 32 are anticipated, then you must find that the claims are invalid.

**Andrew's Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions - 10.8 - Anticipation/Lack of Novelty citing *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1367-70 (Fed. Cir. 2000); *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346

(Fed. Cir. 1999); *Abbot Labs v. Geneva Pharms., Inc.* 182 F.3d 1315, 1318 (Fed. Cir. 1999); *Finnegan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1364 (Fed. Cir. 1999); *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1349 (Fed. Cir. 1998); *W. L. Gore & Assocs., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1548 (Fed. Cir. 1983).

### 16.2    Anticipation/Lack of Novelty (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction because invalidity is no longer an issue in this case.  *See* D.I. 257 at 16-17.  Any references to anticipation will confuse and mislead the jury.

### 17.     Fraud (Andrew's Proposed Instruction)

Andrew's first counterclaim is that TruePosition committed fraud.

Fraud is a misrepresentation of a material fact, made knowingly or with reckless disregard for the truth, with the intent to mislead another, which that person or company relied upon with the result that it was damaged. I will explain to you in a moment what each of these elements means.

### Andrew's Authorities:

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

17.     **Fraud (TruePosition's Proposed Instruction)**

TruePosition objects to each and every one of Andrew's proposed instructions regarding common law fraud as a defense to patent infringement because TruePosition is aware of no legal precedent for common law fraud as a defense to patent infringement.

TruePosition further objects to Andrew's proposed instruction because it fails to instruct the jury that Andrew must prove an essential element of its claim – that TruePosition intended to mislead Andrew Corporation, not "another." *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("intent to induce" action or inaction of party allegedly defrauded is a required element).

TruePosition proposes the following changes to Andrew's proposed instruction:

**Fraud (TruePosition's Proposed Instruction)**

Andrew's first counterclaim is that it contends that TruePosition committed fraud.

Fraud is a misrepresentation of a fact important to Andrew, made knowingly or with reckless disregard for the truth, with the intent to induce Andrew to act on the false representation, or to decline to act, which Andrew justifiably relied upon with the result that it was damaged. I will explain to you in a moment what each of these elements means.

**Authority**

Adapted from Del. P.J.I. § 16.1 (2000); *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003);*Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.1    Fraud - Duty To Declare (Andrew's Proposed Instruction)

In this case, Andrew bases its fraud claim on TruePosition's failure to declare its '144 patent as a patent believed to be considered essential to an ETSI standard.  So the first thing that Andrew must prove by a preponderance of the evidence is that TruePosition had a legal duty to declare the '144 patent to ETSI.

If you find that Andrew has proven that TruePosition had a duty to declare its '144 patent to ETSI and that TruePosition did not declare the '144 patent to ETSI, then you should go on to consider whether Andrew has satisfied its burden of proof in establishing the remaining elements of fraud.

### Andrew's Authorities:

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931); *see also* DTX 148, ETSI Directives, December 2004, at 115.

### 17.1    Fraud - Duty To Declare (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction as failing to state a theory of fraud upon which relief can be granted because Andrew bases its fraud theory on TruePosition's failure to declare its "belief" that the 144 Patent is essential to an ETSI standard. *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1104 (Fed. Cir. 2003) ("The [IPR policy], though vague, does not create a duty premised on subjective beliefs. [The policy's] disclosure duty erects an objective standard. It does not depend on a member's subjective belief that its patents do or do not read on the proposed standard.").

TruePosition further objects to this jury instruction because it suggest to the jury to find in Andrew Corporation's favor on an element of Andrew Corporation's counterclaim without requiring Andrew Corporation to prove that element of its claim.

In order to prove fraud, Andrew Corporation must show that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard, and that TruePosition had a legal duty to do so, since Andrew Corporation bases its fraud claim on TruePosition's alleged "failure to declare its '144 patent as a patent believed to be considered essential to an ETSI standard." *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003) (defendant must prove by clear and convincing evidence the existence of an "omission in the face of a duty to disclose"). Andrew Corporation's instruction improperly omits to tell the jury that the jury must find in TruePosition's favor if Andrew Corporation fails to prove that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard, or that TruePosition had a legal duty to do so.

Accordingly, TruePosition proposes the following alternate jury instruction:

### Fraud - Duty To Declare (TruePosition's Proposed Instruction)

In this case, Andrew contends that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard. So, Andrew must prove by a preponderance of the evidence that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard and, if TruePosition did not do so, that TruePosition had a legal duty to declare its 144 patent as a patent believed to be considered essential to an ETSI standard.

If you find that Andrew has proven that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard and that TruePosition had a legal duty to do so, then you should go on to consider whether Andrew has satisfied its burden of proof in establishing the remaining elements of fraud.

### Authority

Adapted from Del. P.J.I. § 16.3 (2000); *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*,

748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.2    Fraud - Five Elements (Andrew's Proposed Instruction)

Once you have determined that TruePosition had a duty to disclose the '144 patent, there are five additional things that Andrew must prove by the preponderance of the evidence:

1.  TruePosition made a misrepresentation or omission of a material fact;

2.  TruePosition made that misrepresentation or omission knowingly or with reckless disregard for the truth;

3.  TruePosition made the misrepresentation or omission with the intent to mislead;

4.  Andrew reasonably relied on the misrepresentation or omission; and

5.  Andrew was damaged as a result of relying on the misrepresentation or omission.


**Andrew's Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.2    Fraud - Five Elements (TruePosition's Proposed Instruction)

TruePosition objects to this instruction in its entirety as unnecessary and duplicative in light of Andrew's proposed instruction titled "Fraud."

### 17.3    Fraud - Misrepresentation Or Omission (Andrew's Proposed Instruction)

In this case Andrew contends that TruePosition omitted a material fact by failing to declare its '144 patent as a patent believed to be considered essential to an ETSI standard.


**Andrew's Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931); *see also* DTX 148, ETSI Directives, December 2004, at 115.

### 17.3    Fraud - Misrepresentation Or Omission (TruePosition's Proposed Instruction)

TruePosition objects to this instruction in its entirety as unnecessary and duplicative in light of Andrew's proposed instruction titled "Fraud – Duty to Disclose."

TruePosition also objects to this jury instruction because it suggests to the jury to find in Andrew Corporation's favor on an element of Andrew Corporation's counterclaim without requiring Andrew Corporation to prove that element of its claim.

In order to prove fraud, Andrew Corporation must show that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard, and that TruePosition had a legal duty to do so, since Andrew Corporation bases its fraud claim on TruePosition's alleged "failure to declare its '144 patent as a patent believed to be considered essential to an ETSI standard."  *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003) (defendant must prove by clear and convincing evidence the existence of an "omission in the face of a duty to disclose").  Andrew Corporation's instruction improperly omits to tell the jury that the jury must find in TruePosition's favor if Andrew Corporation fails to prove that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard, or that TruePosition had a legal duty to do so.

### 17.4    Fraud - Misrepresentation Or Omission Made Knowingly Or With Reckless Disregard For The Truth (Andrew's Proposed Instruction)

To satisfy this element, Andrew must prove that TruePosition knew or should have known the '144 patent was required to be disclosed to ETSI under TruePosition's interpretation of the patent, but that TruePosition knowingly failed to declare the patent to ETSI. Or, Andrew must prove that TruePosition's alleged failure to declare the patent to ETSI was done with a reckless disregard for the truth. "Reckless disregard for the truth," means less than a knowing lie, but more than negligently forgetting to tell.


**Andrew's Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

**17.4    Fraud - Misrepresentation Or Omission Made Knowingly Or With Reckless Disregard For The Truth (TruePosition's Proposed Instruction)**

TruePosition objects to Andrew's proposed instruction as failing to fully set forth Andrew's allegation of fraud.  In order to prove fraud, Andrew Corporation must show that TruePosition did not declare its 144 patent as a patent believed to be considered essential to an ETSI standard, and that TruePosition had a legal duty to do so, since Andrew Corporation bases its fraud claim on TruePosition's alleged "failure to declare its '144 patent as a patent believed to be considered essential to an ETSI standard."  *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003) (defendant must prove by clear and convincing evidence the existence of an "omission in the face of a duty to disclose").

TruePosition proposes the following changes to Andrew's proposed instruction:

**Fraud - Misrepresentation Or Omission Made Knowingly Or With Reckless Disregard For The Truth (TruePosition's Proposed Instruction)**

To satisfy this element, Andrew Corporation must prove that TruePosition knew or should have known the '144 patent was required to be disclosed to ETSI under TruePosition's interpretation of the patent, but that TruePosition knowingly failed to declare its 144 patent as a patent believed to be considered essential to an ETSI standard. Or, Andrew must prove that TruePosition's alleged failure to declare its 144 patent as a patent believed to be considered essential to an ETSI standard was done with a reckless disregard for the truth. "Reckless disregard for the truth," means less than a knowing lie, but more than negligently forgetting to tell.

**Authority**

Adapted from Del. P.J.I. Civ. § 16.1; *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-60 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.5    Fraud - Intent To Mislead (Andrew's Proposed Instruction)

To satisfy this element, Andrew must prove that TruePosition intended to mislead Andrew by not declaring the '144 patent to ETSI.

**Andrew's Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.5    Fraud - Intent To Mislead (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction because it fails to accurately describe the basis for Andrew's fraud allegation as set forth in Andrew's proposed instruction entitled "Fraud – Duty to Declare."

TruePosition proposes the following changes to Andrew's proposed instruction:

**Fraud - Intent To Mislead (TruePosition's Proposed Instruction)**

To satisfy this element, Andrew must prove that TruePosition intended to mislead Andrew by not declaring its '144 patent as a patent believed to be considered essential to an ETSI standard.

### 17.6    Fraud - Andrew's Reliance (Andrew's Proposed Instruction)

Andrew must prove that it did, in fact, rely on TruePosition's omission or misrepresentation, and that Andrew's reliance was reasonable.  Andrew's reliance may be a belief in the misrepresentation or omission that either causes Andrew to take actions it would otherwise not have taken, or causes Andrew to not take an action it would have otherwise taken.


**Andrew's Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.6    Fraud - Andrew's Reliance (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's instruction because it neglects to instruct the jury to find for TruePosition in the event that the jury finds that Andrew was aware of the allegedly concealed facts.  *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 100 (Del. 1992) ("An essential elements of [fraud], is that the alleged victim not be aware of the true facts which are misrepresented.").

TruePosition proposes the following changes to Andrew's proposed instruction:

### Fraud - Andrew's Reliance (TruePosition's Proposed Instruction)

Andrew must prove that it did, in fact, rely on TruePosition's omission or misrepresentation, and that Andrew's reliance was reasonable.  Andrew's reliance may be a belief in the misrepresentation or omission that either causes Andrew to take actions it would otherwise not have taken, or causes Andrew to not take an action it would have otherwise taken.

In order for Andrew to have justifiably relied upon an omission or misrepresentation by TruePosition, Andrew must not have been aware of the true facts surrounding the omission or misrepresentation that Andrew claims it relied upon.

### Authority

Adapted from Del. P.J.I. Civ. § 16.1; *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-60 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 100 (Del. 1992) ("An essential elements of [fraud], is that the alleged victim not be aware of the true facts which are misrepresented."); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.7    Fraud – Nondisclosure of Facts Already Known to Andrew Corporation (TruePosition's Proposed Instruction)

If Andrew was aware of the TruePosition's alleged belief that its 144 patent was essential to an ETSI standard, even if TruePosition did not declare its 144 patent as essential to an ESTI standard, or if Andrew did not rely on TruePosition's alleged concealment, then there is no fraud.

**TruePosition's Authorities:**  Adapted from Del. P.J.I. Civ. § 16.4 (2000); *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 100 (Del. 1992) ("An essential elements of [fraud], is that the alleged victim not be aware of the true facts which are misrepresented.").

### 17.8    Fraud – Damages (Agreed Upon Instruction)

Andrew must prove that it was damaged in some way as a result of its reliance. These damages can include but are not limited to economic harm.

**Authorities:**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 17.9    Fraud – Damages (Andrew's Proposed Instruction)

If you find that Andrew is entitled to a verdict against TruePosition, you may award damages to Andrew in an amount of $1.00.

### 17.9    Fraud – Damages (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed instruction on nominal damages in its entirety. The instruction is confusing, misleading and prejudicial to TruePosition. Andrew's nominal damages instruction is a tool that Andrew hopes will determine the rights of the parties.

Proposing nominal damages to the jury would be error because it uses the Court as a vehicle to mislead the jury into believing that they are deciding the question of nominal damages, if they find in Andrew's favor, even though they are not deciding that issue. Nominal damages are awarded as a matter of law once a liability determination has been made. *Stidham v. Wachtel*, 41 Del. 327, 329 (Del. Sup. Ct. 1941) (in libel action, "verdict must be for the plaintiff for at least nominal damages"); *Phillips v. Brittingham*, 25 Del. 173, 176 (Del. Sup. Ct. 1910) (in trespass action, "plaintiff is entitled to a verdict for nominal damages"); *USH Ventures v. Global Telesystems Group, Inc.*, 796 A.2d 7, 23 (Del. Sup. Ct. 2000) ("Nominal damages are not given as an equivalent for the wrong, but rather merely in recognition of a technical injury and by way of declaring the rights of the plaintiff."); *Robinson v. Cattaraugus County*, 147 F.3d 153, 162 (2d Cir. 1998) ("entitled to an award of at least nominal damages as a matter of law"). In this case, if the jury answers the fraud question in the affirmative, the Court can automatically award nominal damages.

Andrew's proposal is also improper because it recites a specific dollar amount. *See Myers v. Gregory*, 2003 U.S. Dist. LEXIS 25770, *7 (D. Del. Apr. 9, 2003) (reference to specific dollar amount for nominal damages stricken from jury instructions).

Andrew's nominal damages request is also excessive. *Edix Media Group, Inc. v. Mahani*, 2006 Del. Ch. LEXIS 207, *40 (Del. Ch. Dec. 12, 2006) ("I award plaintiff nominal damages in an amount in accordance with our common law tradition, six cents.").

### 17.10   Fraud - Exemplary Damages (Andrew's Proposed Instruction)

Although you are only required to find that TruePosition has committed fraud by a preponderance of the evidence, if Andrew proves that TruePosition has committed fraud by clear and convincing evidence then Andrew may recover exemplary damages for the sake of example and by way of punishing TruePosition.

**Andrew's Authorities:**

Cal. Civ. Code § 3294; *Topanga Corp. v. Gentile*, 58 Cal. Rptr. 713, 719-720 (Cal. Ct. App. 1967); *Roberts v. Redlands Centennial Bank*, 2002 WL 1529614, *12 and n.3 (Cal. Ct. App. July 15, 2002); *Sole Energy Co. v. Petrominerals Corp.*, 26 Cal. Rptr. 3d 798, 818 (Cal. Ct. App. 2005); Restatement (Second) of Torts § 908, comment c.

### 17.10   Fraud - Exemplary Damages (TruePosition's Proposed Instruction)

TruePosition objects to any instruction on punitive damages in its entirety.  For the first time in its proposed verdict form, Andrew has raised a claim for punitive damages against TruePosition.  Andrew never mentioned punitive damages in its pleadings, in any discovery response, during the parties' motion practice or in its proposed jury instructions (until the jury instructions it provided to TruePosition today, Friday, August 24, 2007).  Andrew should not be allowed to assert a claim for punitive damages in this case that it has not plead.  *See Marro v. Gopez*, 1996 Del .Super. LEXIS 269, *16 (Del. Super. Ct. May 31, 1996) (denying motion to amend complaint because the "belated claim for punitive damages smacks more of a last-minute, pre-trial maneuver than a good faith effort to prevent future misconduct"); *Stidham v. Wachtel*, 41 Del. 327, 329 (Del. Sup. Ct. 1941) ("punitive damages can be given only where claimed in the pleading"); *Hewlett*, 844 F.2d at 114 (jury instructions must be confined to issues raised by pleadings).

Further, Andrew stated at the Markman Hearing that it was not seeking any monetary damages aside from nominal damages in connection with its fraud claim:

> We are not pursuing monetary damages of a certain number.  We're pursuing nominal damages.  This case is not about – from our point of view, the counterclaims are not about how much money they owe us. They're about the fact that their conduct was unfair and that they ought not to be able to pursue us for patent infringement claims. . . . **We are not going to ask the jury for money.  We are not going to ask the Court for money.** . . . [W]hat we'll be seeking is equitable from your Honor in the way of an injunction.

Apr. 10, 2007 Hearing Transcript at 98 (emphasis added).  Andrew should not be allowed at this late stage to change its tactics and ask the jury to award punitive damages.

**17.11   Fraud - Exemplary Damages (Andrew's Proposed Instruction)**

If you find that Andrew suffered actual injury, harm, or damage caused by TruePosition's fraud, you should then consider whether you should award exemplary damages against Andrew for the sake of example and by way of punishment. You should in your discretion award exemplary damages, if, but only if, you find by clear and convincing evidence that TruePosition committed fraud.

Fraud means an intentional misrepresentation, deceit, or concealment of a material fact known to TruePosition with the intention on the part of TruePosition of thereby depriving Andrew of property or legal rights or otherwise causing injury.

The law provides no fixed standards as to the amount of such exemplary damages, but leaves the amount to the jury's sound discretion, exercised without passion or prejudice.

In arriving at any award of exemplary damages, consider the following factors:

1. The reprehensibility of the conduct of the defendant.

2. The amount of punitive damages which will have a deterrent effect on the defendant in the light of the defendant's financial condition.

If you find that Andrew is entitled to an award of punitive damages against TruePosition, you must state the amount of punitive damages separately in your verdict.

**Andrew's Authorities:**

BAJI § 14.71

### 17.11   Fraud - Exemplary Damages (TruePosition's Proposed Instruction)

As stated above, TruePosition objects to any instruction on punitive damages in its entirety.  Andrew never mentioned punitive damages in its pleadings, in any discovery response, during the parties' motion practice or in its proposed jury instructions (until the jury instructions it provided to TruePosition today, Friday, August 24, 2007).  Andrew should not be allowed to assert a claim for punitive damages in this case that it has not plead.  *See Marro v. Gopez*, 1996 Del .Super. LEXIS 269, *16 (Del. Super. Ct. May 31, 1996) (denying motion to amend complaint because the "belated claim for punitive damages smacks more of a last-minute, pre-trial maneuver than a good faith effort to prevent future misconduct"); *Stidham v. Wachtel*, 41 Del. 327, 329 (Del. Sup. Ct. 1941) ("punitive damages can be given only where claimed in the pleading"); *Hewlett*, 844 F.2d at 114 (jury instructions must be confined to issues raised by pleadings).

If, however, Andrew is allowed to send the issue of punitive damages to the jury, then TruePosition must be allowed to assert its own punitive damages claim relating to the facts underlying TruePosition's willful infringement and unclean hands claims.

In the event that Andrew's punitive damages claim is allowed to go to the jury, the jury must be instructed in the following way:

### Fraud – Exemplary Damages (TruePosition's Proposed Instruction)

If you decide to award compensatory damages to [*plaintiff's name*], you must determine whether [*defendant's name*] is also liable to [*plaintiff's name*] for punitive damages.

Punitive damages are different from compensatory damages. Compensatory damages are awarded to compensate the plaintiff for the injury suffered. Punitive damages, on the other hand, are awarded for the purpose of punishing the person doing the wrongful act and to discourage such persons and others from similar wrongful in the future.

You may award punitive damages to punish [*defendant's name*] for [*his/her*] outrageous conduct and to deter [*him/her*], and others like [*him/her*], from engaging in similar conduct in the future if you find by a preponderance of the evidence that [*defendant's name*] acted [*intentionally/recklessly*].  Punitive damages cannot be awarded for mere inadvertence, mistake, errors of judgment and the like, which constitute ordinary negligence.

Intentional conduct refers to conscious awareness.  Reckless conduct refers to conscious indifference.  Each requires that the defendant foresee that [*his/her*] conduct threatens a particular harm to another.  Reckless conduct is a conscious indifference that amounts to a "I don't care" attitude.  Reckless conduct occurs when a

person, with no intent to cause harm, performs an act so unreasonable and dangerous that [*he/she*] knows or should know that there is an eminent likelihood of harm that can result.

The law provides no fixed standards for the amount of punitive damages but leaves the amount to your sound discretion, exercised without passion or prejudice. In determining any award of punitive damages, you must consider the following: the reprehensibility or outrageousness of [*defendant's name*]'s conduct and the amount of punitive damages that will deter [*defendant's name*] and others like [*him/her*] from similar conduct in the future. You may consider [*defendant's name*]'s financial condition for this purpose only. [*Defendant's name*]'s financial condition must not be considered in assessing compensatory damages. Any award of punitive damages must bear a reasonable relation to [*plaintiff's name*]'s compensatory or nominal damages. If you find that [*plaintiff's name*] is entitled to an award of punitive damages, you must state the amount of punitive damages separately on the verdict form

The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order.

[TruePosition's name should be inserted as the defendant and Andrew's name should be inserted as the plaintiff for Andrew's punitive damages claim. Andrew's name should be inserted as the defendant and TruePosition's name should be inserted as the plaintiff for TruePosition's punitive damages claim.]

**Authority:**

Del. P.J.I. Civ. §§ 22.27-22.28 (2000).

### 18.     Equitable Estoppel (Andrew's Proposed Instruction)

Andrew's second counterclaim is for equitable estoppel.

The word "estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. In this case, Andrew contends TruePosition should be estopped from asserting its '144 patent against Andrew because of TruePosition's actions.

To prove that TruePosition is estopped from asserting its patent against Andrew, Andrew must prove by a preponderance of the evidence, the following three things:

1.  TruePosition, through misleading words, conduct, or silence, led Andrew to reasonably infer that TruePosition did not intend to enforce its patent against Andrew;

2.  Andrew reasonably relied on TruePosition's conduct; and

3.  Due to Andrew's reliance, Andrew will be materially harmed if TruePosition is allowed to proceed with its infringement claim.


### Andrew's Authorities:

Adapted from *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F.Supp.2d 305, 314-315 (D. Del. 2005); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).

18.        **Equitable Estoppel (TruePosition's Proposed Instruction)**

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court. *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). TruePosition does not consent to allow the jury to decide this issue.

TruePosition also notes that although Andrew has pled equitable estoppel both as an affirmative defense and as an independent counterclaim, equitable estoppel in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1027 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 398 F. Supp. 2d 305, 309 (D. Del. 2005).

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition proposes the above change to Andrew's proposed instruction to more accurately reflect the law:

**Equitable Estoppel (TruePosition's Proposed Instruction)**

Andrew has also asserted the defense of equitable estoppel.

The word "estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. In this case, Andrew contends TruePosition should be estopped from asserting its '144 patent against Andrew because of TruePosition's actions.

To prove that TruePosition is estopped from asserting its patent against Andrew, Andrew must prove by a preponderance of the evidence, the following three things:

1.  TruePosition, through misleading words, conduct, or silence, led Andrew to reasonably infer that TruePosition did not intend to enforce its patent against Andrew;

2.  Andrew reasonably relied on TruePosition's conduct; and

Due to Andrew's reliance, Andrew will be materially harmed if TruePosition is allowed to proceed with its infringement claim.

**Authority**

Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F.Supp.2d 305, 314-315 (D. Del. 2005).

### 18.1    Equitable Estoppel - Misleading Acts (Andrew's Proposed Instruction)

The first element of equitable estoppel focuses on the statements or conduct of TruePosition. Andrew must prove that TruePosition communicated something in a misleading way. That communication does not need to be oral, it can be conduct or statements, or silence. For example, if TruePosition had a duty to speak but chose to remain silent, that silence can be a misleading communication. Usually, the "something" that is communicated is that the patentee does not or will not object to the allegedly infringing activity.

**Andrew's Authorities:**

Adapted from *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F.Supp.2d 305, 314-315 (D. Del. 2005); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).

### 18.1    Equitable Estoppel - Misleading Acts (TruePosition's Proposed Instruction)

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court. *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition has no changes to Andrew's proposed instruction.

**18.2     Equitable Estoppel – Reliance (Andrew's Proposed Instruction)**

To demonstrate the second element, reliance, Andrew must show that it reasonably relied on TruePosition's conduct in connection with taking some action. For example, to show reliance, Andrew could demonstrate that TruePosition lulled Andrew into a sense of security in going ahead with its plans.


**Andrew's Authorities:**

Adapted from *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F.Supp.2d 305, 314-315 (D. Del. 2005); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).

**18.2    Equitable Estoppel – Reliance (TruePosition's Proposed Instruction)**

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court.  *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)).  TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition has no changes to Andrew's proposed instruction.

### 18.3     Equitable Estoppel - Material Harm (Andrew's Proposed Instruction)

Finally, to demonstrate the third element, Andrew must show that it would be materially harmed if TruePosition were now permitted to proceed with its claim of patent infringement. One way Andrew can show harm is by showing it suffered economic injuries, but it can also show harm in other ways.

**Andrew's Authorities:**

Adapted from *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1041 (Fed. Cir.  1992); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F.Supp.2d 305, 314-315 (D. Del. 2005); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001).

### 18.3    Equitable Estoppel - Material Harm (Andrew's Proposed Instruction)

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court. *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition has no changes to Andrew's proposed instruction.

### 18.4    Equitable Estoppel -- Ultimate Determination (Andrew's Proposed Instruction)

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

### 18.4    Equitable Estoppel -- Ultimate Determination (TruePosition's Proposed Instruction)

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court.  *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)).  TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition has proposes the following additional final instruction:

### Equitable Estoppel -- Ultimate Determination (TruePosition's Proposed Instruction)

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make serious determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**18.5    Equitable Estoppel — Abuse of Standards Setting Bodies (Andrew's Proposed Instruction)**

Equitable estoppel can also arise through the operation of a standards setting body such as ETSI. If ETSI's rules required TruePosition to declare the '144 patent, then TruePosition's failure to declare the patent to ETSI can mean TruePosition should be estopped from asserting the '144 patent against Andrew's products made according to the ETSI standard.

Andrew contends that based on the way TruePosition interprets the '144 patent, TruePosition should have declared the patent to ETSI during the UTDOA standards-setting process.

Thus, TruePosition can be estopped from asserting the '144 patent against Andrew if Andrew proves the following four things by a preponderance of the evidence:

1.  While TruePosition was a member of ETSI, the ETSI IPR policy required TruePosition to declare essential patents and pending patents relating to subject matter being considered for standardization by ETSI.

2.  At the same time, TruePosition had a patent that, under its interpretation, related to the subject matter ETSI was considering for standardization.

3.  TruePosition remained silent while ETSI considered that subject matter.

4.  ETSI subsequently incorporated that subject matter into standards for UTDOA.

Accordingly, if you find that Andrew proved each of these facts by a preponderance of the evidence, then you should find that Andrew has demonstrated equitable estoppel.

**Andrew's Authorities:**

Adapted from *Potter Instrument Co., Inc. v. Storage Tech. Corp.*, 207 U.S.P.Q. 763 (E.D. Va. 1980), aff'd 641 F.2d 190 (4th Cir. 1981), cert. denied 454 U.S. 832 (1981); *Stambler v. Diebold, Inc.*, 11 U.S.P.Q.2d 1709, 1714-1715 (E.D.N.Y. 1988), aff'd 878 F.2d 1445 (Fed. Cir. 1989); *Rambus, Inc. v. Infineon Tech. AG.*, 326 F.Supp.2d 721, 733-739 (E.D. Va. 2004).

### 18.5    Equitable Estoppel — Abuse of Standards Setting Bodies (TruePosition's Proposed Instruction)

TruePosition objects to Andrew's proposed jury instruction "Equitable Estoppel – Abuse of Standards Setting Bodies" in its entirety as an attempt to amend the pleadings without leave more than fifteen months after the deadline set by the Court. TruePosition would be prejudiced if this alleged cause of action is allowed. TruePosition did not have the opportunity to take discovery concerning two counts of equitable estoppel. Andrew Corporation only plead one count of equitable estoppel.

TruePosition further objects to Andrew's proposed jury instruction "Equitable Estoppel – Abuse of Standards Setting Bodies" in its entirety as completely lacking legal support. There is no such cause of action. The cases that Andrew cites just state that the normal elements of equitable estoppel may be applied in the standards context.

Thus, for example, as the cases cited by Andrew indicate, Andrew's proposed jury instructions are a misstatement of applicable law as they completely ignore the requisite "reliance" element. *See Rambus, Inc. v. Infineon Techs. AG*, 326 F. Supp. 2d 721, 733 (E.D. Va. 2004) ("An equitable estoppel case has three important elements. [1] The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. [2] The other relies on that communication. [3] And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."); *Stambler v. Diebold, Inc.*, 1988 U.S. Dist. LEXIS 10132, *18 (E.D.N.Y. Sept. 2, 1988) ("Additionally, the defendant must show that it actually relied on the misleading conduct to its detriment."); *Potter Instrument Co. v. Storage Tech. Corp.*, 1980 U.S. Dist. LEXIS 14348, *18 (E.D. Va. Mar. 25, 1980) ("The one thus misled has relied upon the action of the inducing party to his prejudice."). *See also A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992) (en banc) ("Reliance . . . is essential to equitable estoppel.").

Even if Andrew Corporation had described some cause of action, and even if it had plead that cause of action, this hypothetical claim would then be tried to the Court, not the jury. As this claim can be no more than a normal equitable estoppel claim, it is an issue that should be decided by the Court. *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)). TruePosition does not consent to allow the jury to decide this issue.

TruePosition further objects to this instruction because, assuming Andrew's hypothetical cause of action did exist, Andrew's instructions suggest that the jury should find in Andrew Corporation's favor on an element of Andrew Corporation's hypothetical claim without requiring proof – TruePosition's alleged non-disclosure of essential and related patents. Andrew appears to base its hypothetical claim on TruePosition's alleged failure to disclose "essential patents and pending patents relating to subject matter being considered for standardization by ETSI."

- 108 -

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition proposes the following changes to Andrew's proposed instruction:

**Equitable Estoppel — Abuse of Standards Setting Bodies (TruePosition's Proposed Instruction)**

In this case, Andrew contends that TruePosition did not disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI. So, the first thing that Andrew must prove is that TruePosition owns essential patents and pending patents relating to subject matter being considered for standardization by ETSI.

If Andrew proves that TruePosition owns essential patents and pending patents relating to subject matter being considered for standardization by ETSI, then you must consider whether TruePosition disclosed these essential patents and pending patents relating to subject matter being considered for standardization to ETSI.

If you find that TruePosition disclosed its essential patents or pending patents relating to subject matter being considered for standardization by ETSI, then you must find in TruePosition's favor.

If you find that Andrew Corporation has shown that TruePosition did not disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI, then the next question you must consider is whether TruePosition had a legal duty to disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI.

If you find that Andrew Corporation has not proven that TruePosition had a legal duty to disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI, then there is no equitable estoppel, and again, you must find in TruePosition's favor.

If you find that TruePosition had a duty disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI, you should go on to consider whether Andrew Corporation has satisfied its burden of proof in establishing the remaining elements of equitable estoppel. Andrew must prove the remaining elements of equitable estoppel by a preponderance of the evidence:

1.    TruePosition's failure to disclose to ETSI essential patents and pending patents relating to subject matter being considered for standardization by ETSI, led Andrew to reasonably infer that TruePosition did not intend to enforce its patent against Andrew;
2.    Andrew reasonably relied on TruePosition's conduct; and
3.    Due to Andrew's reliance, Andrew will be materially harmed if TruePosition is allowed to proceed with its infringement claim.

Accordingly, if you find that each of these facts are more likely true than not true, then you should find that Andrew has demonstrated equitable estoppel.

- 109 -

**TruePosition's Authorities:**

Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)(*en banc*); *Gasser Chair Co. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770 (Fed. Cir. 1995); *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Universal Avionics Systems Corp.*, 398 F. Supp. 2d 305, 317 (D. Del. 2005).

**18.6    Equitable Estoppel -- Ultimate Determination (Andrew's Proposed Instruction)**

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

### 18.6    Equitable Estoppel -- Ultimate Determination (TruePosition's Proposed Instruction)

TruePosition objects to this jury instruction because equitable estoppel is an issue that should be decided by the Court.  *Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)).  TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send this issue to the jury in an advisory capacity, TruePosition has proposes the following additional final instruction:

### Equitable Estoppel -- Ultimate Determination (TruePosition's Proposed Instruction)

It is important to remember, however, that the ultimate determination of whether an equitable estoppel should apply in this case is a question of fairness given all the facts and circumstances. While you may not find that equitable estoppel applies if the evidence does not establish each of the three elements noted above -- misleading communication, reliance on the communication, and significant harm -- you may find that even though all of the elements have been proved, an equitable estoppel should not apply, in fairness, given all the facts and circumstances in this case.

Although the question of whether equitable estoppel applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make serious determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

19.     **Implied License (Andrew's Proposed Instruction)**

Andrew's third counterclaim is for implied license.

As I have explained to you, normally a patent owner has a right to prevent others from making, using, or selling a patented invention. However, the patentee may agree to let another do one or more of these acts. This is called a license and a person allowed to practice the patent is called a licensee.

Andrew does not claim that TruePosition made a formal grant of a license to Andrew to practice the 144 patent. Rather, Andrew claims that TruePosition impliedly licensed or agreed to allow Andrew to practice the claimed invention. An implied license means that TruePosition implied to Andrew through its actions or conduct that Andrew had a right to use the '144 patent.

In order to prove that Andrew had received an implied license from TruePosition, Andrew must show the following four things by a preponderance of the evidence:

1.    A relationship existed between Andrew and TruePosition;

2.   Within that relationship, TruePosition granted to Andrew a right to use its '144 patent;

3.   TruePosition received valuable consideration for that grant; and

4.   TruePosition denied that Andrew had an implied license.

As I just explained, TruePosition did not have to make a formal grant of a license, but its actions or conduct may lead Andrew to believe it had a license. Any of TruePosition's language or conduct that Andrew properly relied upon to infer its right to use the '144 patent can constitute a license.

In this case, Andrew contends that TruePosition's conduct in connection with its participation in the standardization of UTDOA at ETSI reasonably led Andrew to infer that TruePosition consented to Andrew's use of the '144 patent.

In considering whether TruePosition has granted an implied license under this patent, you should consider whether TruePosition's conduct at ETSI indicated to Andrew that TruePosition was granting permission to use its patent, and whether Andrew reasonably relied on TruePosition's conduct. In that regard, you should consider the

- 113 -

entire course of TruePosition's conduct and whether there was reasonable reliance on that conduct to infer that an implied license had been granted.


**Andrew's Authorities:**

Adapted from *De Forest Radio Telephone & Telegraph Co. v. U.S.*, 273 U.S. 236, 241 (1927); *Potter Instrument Co., Inc. v. Storage Tech. Corp.*, 207 U.S.P.Q. 763 (E.D. Va. 1980), aff'd 641 F.2d 190 (4th Cir. 1981), cert. denied 454 U.S. 832 (1981); *Stambler v. Diebold, Inc.*,  11 U.S.P.Q.2d 1709 (E.D.N.Y. 1988), aff'd 878 F.2d 1445 (Fed. Cir. 1989); *Wang Laboratories, Inc. v. Mitsubishi Elec. America, Inc.*, 103 F.3d 1571, 1576 (Fed. Cir. 1997); *Winbond Elec. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1374 (Fed. Cir. 2001); *Tenneco Auto. Operating Co. v. Visteon Corp.,* 375 F. Supp. 2d 375, 383 (D. Del. 2005).

19.    **Implied License (TruePosition's Proposed Instruction)**

TruePosition objects to this jury instruction because implied license should not be decided by the jury.  Implied license is an issue that should be decided by the Court. *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999) ("Whether an implied license exists is a question of law that we review *de novo*."). *Compare Wang Labs., Inc. v. Mitsubishi Electrics America, Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) (sending issue to jury by agreement of parties).  TruePosition does not consent to allow the jury to decide this issue.

TruePosition also notes that although Andrew has pled implied license both as an affirmative defense and as an independent counterclaim, implied license in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances.  *See Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1374 (Fed. Cir. 1999) ("[T]he argument of implied license is a *defense* to a patent infringement allegation. . . Augustine's application of that argument in this case would turn the law of implied license from a defense to an offense.  We are not willing to construe the law in such a manner today.").

Should the Court send the issue of implied license to the jury in an advisory capacity, TruePosition proposes the following additional final instruction:

**Implied License (TruePosition's Proposed Instruction)**

Andrew's next defense is implied license.

As I have explained to you, normally a patent owner has a right to prevent others from making, using, or selling a patented invention. However, the patentee may agree to let another do one or more of these acts.  This is called a license and a person allowed to practice the patent is called a licensee.

Andrew does not claim that TruePosition made a formal grant of a license to Andrew to practice the 144 patent.  Rather, Andrew claims that TruePosition impliedly licensed or agreed to allow Andrew to practice the claimed invention.  An implied license means that TruePosition implied to Andrew through its actions or conduct that Andrew had a right to use the '144 patent.

In order to prove that Andrew had received an implied license from TruePosition, Andrew must show the following four things by a preponderance of the evidence:

1.    A relationship existed between Andrew and TruePosition;

2.    Within that relationship, TruePosition granted to Andrew a right to use its '144 patent;

3.    TruePosition received valuable consideration for that grant; and

4.   TruePosition denied that Andrew had an implied license.

As I just explained, TruePosition did not have to make a formal grant of a license, but its actions or conduct may lead Andrew to believe it had a license. Any of TruePosition's language or conduct that Andrew properly relied upon to infer its right to use the '144 patent can constitute a license.

In this case, Andrew contends that TruePosition's conduct in connection with its participation in the standardization of UTDOA at ETSI reasonably led Andrew to infer that TruePosition consented to Andrew's use of the '144 patent.

In considering whether TruePosition has granted an implied license under this patent, you should consider whether TruePosition's conduct at ETSI indicated to Andrew that TruePosition was granting permission to use its patent, and whether Andrew reasonably relied on TruePosition's conduct. In that regard, you should consider the entire course of TruePosition's conduct and whether there was reasonable reliance on that conduct to infer that an implied license had been granted.

Although the question of whether implied license applies in this case is one that I will decide, I will ask for your findings so that I can consider them in making that decision.  You should make serious determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**20.    Promissory Estoppel (Andrew's Proposed Instruction)**

Andrew's fourth counterclaim is for promissory estoppel.

I explained to you earlier that "estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. Promissory estoppel would arise if TruePosition made a promise to Andrew, Andrew reasonably relied on this promise, and TruePosition expected the promise to induce certain action or inaction by Andrew.

To prove promissory estoppel, Andrew must establish the following four things by clear and convincing evidence:

1.   TruePosition made a promise;

2.   TruePosition intended to induce Andrew's action or inaction based on the promise;

3.   Andrew reasonably relied on the promise; and

4.   Andrew was injured by its reliance.

If you find that Andrew proves all four elements by clear and convincing evidence, you must find that TruePosition is estopped from asserting its '144 patent against Andrew. I will now give you more explanation as to what kind of conduct can give rise to a promise.

**Andrew's Authorities:**

Adapted from *Christiana Marine Service Corp. v. Texaco Fuel and Marine Mktg. Inc.*, C.A. No. 98C-02-217WCC, 2004 WL 42611, *3-4 (Del. Supr. Jan. 8, 2004); *State v. Simpson*, C.A. No. 899, 1990 WL 143837, *2-3 (Del. Ch. Sept. 24, 1990); *Ramone v. Lang*, C.A. No. 1592-N, 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006); *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000); *Fini v. Remington Arms Co., Inc.*, C.A. No. 97-12-SLR, 1998 WL 299358, *9-10 (D.Del. May 27, 1998); *Keating v. Board of Educ.*, C.A. No. 12589, 1993 WL 460527, *4 (Del. Ch. Nov. 3, 1993) (quoting *Lawrence v. Board of Educ.*, C.A. No. 12572, 1993 WL 40051, *2 (Del. Ch. Feb. 8, 1993)); *Brandner v. Delaware State Hous. Auth.*, No. C.A. 1132-K, 1993 WL 548831, *3 (Del. Ch. Dec. 9, 1993).

**20.      Promissory Estoppel (TruePosition's Proposed Instruction)**

TruePosition objects to this jury instruction because promissory estoppel is an issue that should be ultimately decided by the Court.  Under the doctrine of promissory estoppel, Andrew must demonstrate by clear and convincing evidence that:  1) a promise was made by TruePosition; 2) it was the reasonable expectation of TruePosition to induce action or forbearance by Andrew; 3) Andrew reasonably relied on the promise and took action to its detriment; and 4) such promise is binding because injustice can be avoided only by enforcement of the promise.  *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

Whether a promise was made is a question of fact to be determined by the jury. *Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing Inc.*, 2004 Del. Super. LEXIS 3 at *10 (Del. Super. Ct. Jan. 8, 2004).  Intent to induce reliance and whether Andrew's reliance was reasonable are also questions of fact for the jury.  *Fini v. Remington Arms Co.*, 1998 U.S. Dist. LEXIS 8261 at *33 (D. Del. May 27, 1998).  "The avoidance of injustice element is, however, a legal concept and not a question of fact to be submitted to the jury."  *Chrysler*, 822 A.2d at 1034.

TruePosition also notes that although Andrew has pled promissory estoppel both as an affirmative defense and as an independent counterclaim, promissory estoppel in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances.

Should the Court send the issue of implied license to the jury in an advisory capacity, TruePosition proposes the following additional final instruction:

**Promissory Estoppel (TruePosition's Proposed Instruction)**

Andrew's next defense is promissory estoppel.

I explained to you earlier that "estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. Promissory estoppel would arise if TruePosition made a promise to Andrew, Andrew reasonably relied on this promise, and TruePosition expected the promise to induce certain action or inaction by Andrew.

To prove promissory estoppel, Andrew must establish the following four things by clear and convincing evidence:

1.   TruePosition made a promise;

2.   TruePosition intended to induce Andrew's action or inaction based on the promise;

3.   Andrew reasonably relied on the promise; and

- 118 -

4.   Andrew was injured by its reliance.

       If you find that Andrew proves all four elements by clear and convincing evidence, you must find that TruePosition is estopped from asserting its '144 patent against Andrew. I will now give you more explanation as to what kind of conduct can give rise to a promise.

       Although the question of whether promissory estoppel applies in this case is one that I will ultimately decide, I will ask for your findings so that I can consider them in making that decision.  You should make serious determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

### 20.1     Promissory Estoppel - The Promise (Andrew's Proposed Instruction)

A promise is a declaration by which one party agrees to perform or refrain from doing a specified act. TruePosition's promise can be oral or it can be made in writing. Further, the sum of TruePosition's conduct can give rise to the promise. TruePosition's representations must just be reasonably definite and certain so that the intentions of the parties can be ascertained. Distinguishing a promise from a non-promise must be done through a reasonable interpretation of both parties' conduct in light of the surrounding circumstances. Mere expressions of opinion, expectation, or assumption are not promises.

### Andrew's Authorities:

Adapted from *Christiana Marine Service Corp. v. Texaco Fuel and Marine Mktg. Inc.*, *C.A. No. 98C-02-217WCC*, 2004 WL 42611, *3-4 (Del. Supr. Jan. 8, 2004); *State v. Simpson*, *C.A. No. 899*, 1990 WL 143837, *2-3 (Del. Ch. Sept. 24, 1990); *Ramone v. Lang*, *C.A. No. 1592-N*, 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006); *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000); *Fini v. Remington Arms Co., Inc.*, *C.A. No. 97-12-SLR*, 1998 WL 299358, *9-10 (D.Del. May 27, 1998); *Keating v. Board of Educ., C.A. No. 12589*, 1993 WL 460527, *4 (Del. Ch. Nov. 3, 1993) (quoting *Lawrence v. Board of Educ., C.A. No. 12572*, 1993 WL 40051, *2 (Del. Ch. Feb. 8, 1993)); *Brandner v. Delaware State Hous. Auth., No. C.A. 1132-K*, 1993 WL 548831, *3 (Del. Ch. Dec. 9, 1993).

### 20.1    Promissory Estoppel - The Promise (TruePosition's Proposed Instruction)

TruePosition notes its objection that promissory estoppel is an issue that should be ultimately decided by the Court.  Otherwise, TruePosition has no additional objection to this proposed instruction.

### 21.    Unclean Hands (Andrew's Proposed Instruction)

Andrew's final counterclaim is for unclean hands.

Andrew contends TruePosition cannot enforce its '144 patent against Andrew because of TruePosition's "unclean hands." TruePosition may be barred from enforcing the patent against Andrew if TruePosition acted inequitably, unfairly, or deceitfully towards Andrew in a way that has immediate and necessary relation to the relief that TruePosition seeks in this lawsuit. This is referred to as "unclean hands," and it is a defense that Andrew contends precludes any recovery by TruePosition in this lawsuit.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, TruePosition acted in such an unconscionable way towards Andrew in the matters relating to the controversy between TruePosition and Andrew that, in fairness, TruePosition should be denied the relief it seeks in this lawsuit.

In order to prove unclean hands, Andrew must prove the following three things by clear and convincing evidence:

1.  TruePosition's conduct was inequitable or in bad faith; and

2.  TruePosition's conduct is directly related to the subject matter of its claims.

3.  Andrew has clean hands, or in other words, Andrew's conduct was in good faith.

If you find that Andrew has proven that TruePosition has come into court with "unclean hands," and that its "unclean hands" are related to the case at hand, you may deny TruePosition relief on its claims.


### Andrew's Authorities:

Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1313 (9th Cir. 1997) (quoting *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987)); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1571 (Fed. Cir. 1997); *Samsung Elec. Co., Ltd. v. Rambus, Inc.*, 440 F. Supp. 2d 512, 515 (E.D. Va. 2006); *Honeywell Int'l, Inc. v. Univ. Avionics Sys. Corp.*, 398 F. Supp.2d 305, 310-311 (D. Del. 2005); *Alcatel USA, Inc. v. DGI Tech., Inc.*, 166 F.3d 773, 794-797, (5th Cir. 1999).

**21.   TruePosition's Alleged Unclean Hands (TruePosition's Proposed Instruction)**

TruePosition objects to Andrew's proposed jury instruction "Unclean Hands" in its entirety as an attempt to amend the pleadings without leave more than fifteen months after the deadline set by the Court. Andrew has not asserted a counterclaim of unclean hands. *See* Andrew Corporation's Answer and Counterclaim to Second Amended Complaint. Andrew has asserted unclean hands as a defense. *See id.* at 10 (Sixth Affirmative Defense).

Unclean hands is an issue that should be decided by the Court. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310-11 (D. Del. 2005) ("The clean hands maxim gives broad discretion to the court's equity power . . . The court is not bound by any formula, restraint, or limitation which restricts the free and just exercise of its equitable discretion.") TruePosition does not consent to allow the jury to decide this issue.

Should the Court decide to send the issue of unclean hands to the jury in an advisory capacity, TruePosition proposes the following additional instruction:

**TruePosition's Alleged Unclean Hands (TruePosition's Proposed Instruction)**

Andrew's final defense is for unclean hands.

Andrew contends TruePosition cannot enforce its '144 patent against Andrew because of TruePosition's "unclean hands." TruePosition may be barred from enforcing the patent against Andrew if TruePosition acted inequitably, unfairly, or deceitfully towards Andrew in a way that has immediate and necessary relation to the relief that TruePosition seeks in this lawsuit. This is referred to as "unclean hands," and it is a defense that Andrew contends precludes any recovery by TruePosition in this lawsuit.

There is no set formula for determining whether unclean hands applies in this lawsuit. Rather, you must consider and weigh all the facts and circumstances in view of the principles noted above to determine whether you believe that, on balance, TruePosition acted in such an unconscionable way towards Andrew in the matters relating to the controversy between TruePosition and Andrew that, in fairness, TruePosition should be denied the relief it seeks in this lawsuit.

In order to prove unclean hands, Andrew must prove the following three things by clear and convincing evidence:

1.  TruePosition's conduct was inequitable or in bad faith; and

2.  TruePosition's conduct is directly related to the subject matter of its claims.

3.  Andrew has clean hands, or in other words, Andrew's conduct was in good faith.

If you find that Andrew has proven that TruePosition has come into court with "unclean hands," and that its "unclean hands" are related to the case at hand, you may deny TruePosition relief on its claims.

Although the question of whether TruePosition's claims are barred by unclean hands is one that I will decide, I will ask for your findings so that I can consider them in making that decision. You should make determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

### 22.    Andrew's Alleged Unclean Hands (TruePosition's Proposed Instruction)

TruePosition does not believe that Andrew's defenses of equitable estoppel, implied license and unclean hands should be decided by the jury.  However, should the Court decide to send these issues to the jury in an advisory capacity, TruePosition requests that the jury also be instructed concerning TruePosition's unclean hands defense to Andrew's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands.

### ANDREW'S ALLEGED UNCLEAN HANDS (TruePosition's Proposed Instruction)

TruePosition has raised the defense of unclean hands to Andrew Corporation's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands.  TruePosition contends that Andrew cannot assert any of the equitable defenses it has raised in response to TruePosition's claim of infringement because Andrew Corporation itself has unclean hands.  [TruePosition proposes that the remainder of this instruction correspond to the final preliminary instruction for Andrew Corporation's unclean hands defense, with the word Andrew replaced by the word TruePosition and the word TruePosition replaced by the word Andrew.]

### 23.     DAMAGES (TRUEPOSITION'S PROPOSED INSTRUCTION)

I have now instructed you as to the law governing what we call liability:  whether or not Andrew is liable to TruePosition for patent infringement.  We turn now to damages.  If, after considering all of the evidence and the law as I have stated it, you find that at least one claim of the 144 patent is infringed by Andrew, then you must determine what damages Andrew must pay to TruePosition to compensate for that infringement.  If, on the other hand, you find that there has been no infringement of any  claim of the 144 patent, then TruePosition is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that TruePosition is or is not entitled to recover damages.  I am expressing no opinion one way or the other.  These instructions are only to guide you in case you find that a claim has been infringed.

### TruePosition's Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

## 23.    DAMAGES (ANDREW'S PROPOSED INSTRUCTION)

I have now instructed you as to the law governing TruePosition's claims of patent infringement and Andrew's claims of invalidity, fraud, equitable estoppel, implied license, promissory estoppel, and unclean hands.  We turn now to damages.  If, after considering all of the evidence and the law as I have stated it, you find that at least one valid claim of the 144 patent is infringed by Andrew, that TruePosition's claims are not barred by equitable estoppel, that Andrew was not licensed to proceed with its activities, that TruePosition's claims are not barred by promissory estoppel, and that TruePosition's claims are not barred by unclean hands, then you must determine what damages, if any, Andrew must pay to TruePosition to compensate for that infringement.  If, on the other hand, you find that there has been no infringement of any valid claim of the 144 patent, that the 144 patent is not valid, that TruePosition's claims are barred by equitable estoppel, that Andrew was licensed to proceed with its activities, that TruePosition's claims are barred by promissory estoppel, or that TruePosition's claims are barred by unclean hands, then TruePosition is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that TruePosition is or is not entitled to recover damages.  I am expressing no opinion one way or the other.  These instructions are only to guide you in case you find that a valid claim has been infringed.

Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

- 127 -

<u>Authority</u>

Federal Circuit Bar Association Model Patent Jury Instructions - 12 - Damages.

### 23.1    COMPENSATORY DAMAGES IN GENERAL (TRUEPOSITION'S PROPOSED INSTRUCTION)

The patent laws provide that in the case of infringement of a patent claim, the owner of a patent shall be awarded damages adequate to compensate for the infringement.  In other words, damages are compensation for losses suffered by TruePosition as a result of the infringement.  The goal of the patent laws is to place the patentee in the economic position it would have been in had the defendant not infringed the patent.  The ultimate question, therefore, is "If Andrew had not infringed, what would TruePosition have made?"

**TruePosition's Authority**

35 U.S.C. § 284; Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm; *Poly-America, LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310-11 (Fed. Cir. 2004); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1008-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

**23.1    COMPENSATORY DAMAGES IN GENERAL (ANDREW'S PROPOSED INSTRUCTION)**

If you find that any asserted claim of the 144 patent is valid, enforceable, and infringed, then the patent owner is entitled to damages adequate to compensate for the infringement.  These damages may not be less than what a reasonable royalty would be for the use made of the invention.  In other words, damages are compensation for losses suffered by the patent owner as a result of the infringement.  In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement.  You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate TruePosition, to put TruePosition into the position it would have been in if there had been no infringement.  You may not add anything to the amount to punish or to set an example.

Authority

35 U.S.C. § 284; Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm; *Poly-America, LP v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310-11 (Fed. Cir. 2004); *Grain Processing Corp. v. American Maize-Prod. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1008-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544-45 (Fed. Cir. 1995) (*en banc*).

Authority

Federal Circuit Bar Association Model Patent Jury Instructions - 12.1 - Compensatory Patent Damages In General.

### 23.2  DAMAGES — BURDEN OF PROOF (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition has the burden of proving damages by the same "preponderance of the evidence" standard I discussed earlier.  TruePosition is entitled to all damages that it has proved with "reasonable certainty."  Reasonable certainty does not require TruePosition to prove its damages with absolute or mathematical certainty.  Mere difficulty in ascertaining damages is not fatal to TruePosition.  However, TruePosition is not entitled to speculative damages.  That is, you should not award damages for losses which, although possible, are wholly remote or left to conjecture or guess.  You may base your evaluation of "reasonable certainty" on opinion evidence.  If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against Andrew because "fundamental principles of justice" require you to assign the risk of any uncertainty regarding damages to the alleged infringer.

Authority

    *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 970-71 (Fed. Cir. 2000); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

### 23.2    DAMAGES  —  BURDEN OF PROOF (ANDREW'S PROPOSED INSTRUCTION)

TruePosition has the burden of proving damages by the same "preponderance of the evidence" standard I discussed earlier.  TruePosition is entitled to damages that it has proved with "reasonable certainty."  Reasonable certainty does not require TruePosition to prove its damages with absolute or mathematical certainty.  Mere difficulty in ascertaining damages is not fatal to TruePosition.  However, TruePosition is not entitled to speculative damages.  That is, you should not award damages for losses which, although possible, are wholly remote or left to conjecture or guess.  If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against Andrew.

Authority

   *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 970-71 (Fed. Cir. 2000); *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983).

Authority

   Federal Circuit Bar Association Model Patent Jury Instructions (2007) - 6.1 - Damages - Burden Of Proof

### 23.3    DAMAGES – LOST PROFITS (TRUEPOSITION'S PROPOSED INSTRUCTION)

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages. This is the method that TruePosition uses to calculate the damages it claims.

Simply stated, lost profit damages are the profits TruePosition lost because of Andrew's infringement. They are not the profits Andrew actually made.

TruePosition claims that it lost profits because Andrew's infringement took away two specific sales, to STC in Saudi Arabia and Q-Tel in Qatar, that TruePosition would have made if Andrew had not sold its infringing product instead.

#### TruePosition's Authority

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.,* 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) *(en banc)*; *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214, 1217-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

**23.3     DAMAGES – LOST PROFITS (ANDREW'S PROPOSED INSTRUCTION)**

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages.  This is the method that TruePosition uses to calculate the damages it claims.

TruePosition says that it lost profits because Andrew's alleged infringement took away sales that TruePosition would have made.  This is called lost profits due to lost sales.

TruePosition has the burden to show by a preponderance of the evidence that it would have made its claimed profits had Andrew not infringed.

Remember, if you find TruePosition did not prove infringement of a valid and enforceable patent claim, there can be no damages of any kind.

<u>Authority</u>

*Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Co*., 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.,* 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) *(en banc)*; *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214, 1217-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp*., 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

<u>Authority</u>

Federal Circuit Bar Association Model Patent Jury Instructions - 12.3 - Lost Profits, Types and Burden of Proof.

### 23.4    LOST PROFITS FROM LOST SALES – "BUT FOR" TEST
### (TRUEPOSITION'S PROPOSED INSTRUCTION)

To prove that it lost sales, TruePosition must prove that it is more probable than not that it would have made the sales to STC and Q-Tel if Andrew had not made them by selling an infringing product. This test is often called the "but for" test: that is, TruePosition must show that "but for" Andrew's infringement, it would have made the sales and earned the profits that it claims it lost. To apply the "but for" test, you must imagine the marketplace as it would have existed if the infringement had not occurred and consider what would have happened. In other words, you should determine what STC and Q-Tel would have done if Andrew's infringement had not occurred.

### <u>TruePosition's Authority</u>

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1376-77 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) *(en banc)*; *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214, 1217-18 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

### 23.4    LOST PROFITS FROM LOST SALES – "BUT FOR" TEST (ANDREW'S PROPOSED INSTRUCTION)

To prove that it lost sales, TruePosition must prove that it is more probable than not that it would have made additional sales in the absence of the alleged infringement. This test is often called the "but for" test:  that is, TruePosition must show that "but for" the alleged infringement, it would have made the sales and earned the profits that it claims it lost.


Authority

Micro Chem., Inc. v. Lextron, Inc., 318 F.3d 1119, 1122 (Fed. Cir. 2003); Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1376-77 (Fed. Cir. 2003); Grain Processing Corp. v. American Maize-Prods. Comp., 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc); BIC Leisure Products, Inc. v. Windsurfing Int'l., 1 F.3d 1214, 1217-18 (Fed. Cir. 1993); State Indus., Inc. v. Mor-Flo Indus., Inc., 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152, 1157-58 (6th Cir. 1978).

Authority

Federal Circuit Bar Association Model Patent Jury Instructions - 12.3.1 - Lost Sales; Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference - 12.3.1 - Lost Sales (in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm).

### 23.5   DAMAGES – LOST PROFITS FACTORS (TRUEPOSITION'S PROPOSED INSTRUCTION)

To recover damages for lost sales, a patentee, such as TruePosition, must generally show:

1.     that there was demand for the patented product;

2.     that there are no acceptable non-infringing substitutes;

3.     that the patentee had the manufacturing and marketing capability to meet the demand;

4.     the amount of profit that it would have made.


**TruePosition's Authority**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

## 23.6   LOST PROFITS – TWO-SUPPLIER MARKET (TRUEPOSITION'S PROPOSED INSTRUCTION)

However, in situations where there are only two suppliers in the market, the first two of those factors collapse.  In such circumstances, to prove lost profits under the "two-supplier market" test, a patentee must show only:

1)      that the relevant market contains only two suppliers;

2)      that it had the manufacturing and marketing capability to make the sales that were diverted to the infringer; and

3)      the amount of profit it would have made on those sales.

Here, TruePosition claims that the market for sales of UTDOA systems to STC and Q-Tel is a two-supplier market because TruePosition and Andrew are the only suppliers of U-TDOA systems and were the only bidders for those sales, and that you should therefore apply the two-supplier market test to TruePosition's damage claims.


**TruePosition's Authority**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

## 23.7    MANUFACTURING AND MARKETING CAPABILITY
## (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition is only entitled to lost profits for sales it actually could have made. Therefore, in deciding whether TruePosition lost sales, you should consider whether or not TruePosition has proved that it had the manufacturing and marketing capability to make the sales to STC and Q-Tel. TruePosition must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for Andrew's infringement, and that it had the capability to market and sell the additional products.

Andrew does not dispute that TruePosition had the marketing and manufacturing capability to make the sales to STC and Q-Tel.

### TruePosition's Authority

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

### 23.8    LOST PROFITS – DEMAND (TRUEPOSITION'S PROPOSED INSTRUCTION)

In the event you decide not to apply the two-supplier market test, demand for the patented product can be proven by showing significant sales of either the plaintiff's patented product or the defendant's.  Here, Andrew does not dispute demand.

### 23.9    LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES (TRUEPOSITION'S PROPOSED INSTRUCTION)

Andrew claims that TruePosition cannot prove it would have made the sales to STC and Q-Tel because it contends there were available non-infringing substitutes. To be an non-infringing substitute, a product must be both (1) available in the market and (2) acceptable to the market. In determining whether TruePosition lost sales due to Andrew's infringement, you must consider whether or not, if Andrew were not selling Geometrix, some or all of the people who bought from Andrew would have bought a different, non-infringing product from Andrew or from somebody else, rather than buy from TruePosition.

TruePosition does not need to negate every possibility that STC and Q-Tel might have bought another product or no product at all. The mere existence of a competing device does not make that product an acceptable substitute. To be an acceptable substitute, the product must have the advantages of the patented invention that were important to customers. In addition, to be an acceptable non-infringing substitute, a proposed substitute must have been acceptable to the actual purchasers of the infringing product – here, STC and Q-Tel. However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes.

The non-infringing substitute must also have been "available" at the time of infringement. To make this determination, you should consider whether or not all of the necessary equipment, know-how, and experience existed to make the non-infringing substitute at the time of the infringement; whether or not it would have been necessary to design or invent around the patent, and whether it would have been costly to make the non-infringing substitute. For any non-infringing substitute that was not actually on the

market at the time of Andrew's sales to STC and Q-Tel, Andrew has the burden to show

that the substitute would have been available and acceptable to STC and Q-Tel.

## TruePosition's Authority

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-24 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1350-55 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*).

### 23.9     LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES (ANDREW'S PROPOSED INSTRUCTION)

In determining whether TruePosition lost sales due to infringement, you must consider whether or not, if Andrew's accused Geometrix system were not available, some or all of the people who bought from Andrew would have bought a different, non-infringing product from Andrew or someone else, rather than buy from TruePosition.

In deciding whether or not people who bought from Andrew would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

**Authorities:**

Federal Circuit Bar Association Model Patent Jury Instructions - 12.3.3 - Absence Of Acceptable Non-Infringing Substitutes citing *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000);  *Grain Processing Corp. v. American-Maize Prod.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991)); *Kaufman Co. v. Lantech, Inc.* 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989).

### 23.10   AMOUNT OF LOST PROFITS (TRUEPOSITION'S PROPOSED INSTRUCTION)

If TruePosition has proved that it lost profits due to infringement by Andrew, then you are to determine the amount of profits that TruePosition lost.  As I have already instructed you, TruePosition must prove the amount of its lost profits to a reasonable probability, but absolute certainty is not required.  You may consider the testimony of the experts in reaching your conclusion.

**TruePosition's Authority**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

### 23.10    AMOUNT OF LOST PROFITS (ANDREW'S PROPOSED INSTRUCTION)

If TruePosition has proved that it lost profits due to infringement by Andrew, then you are to determine the amount of profits that TruePosition lost.  As I have already instructed you, TruePosition must prove the amount of its lost profits to a reasonable probability, but absolute certainty is not required.  The amount of lost profits damages, however, should not include amounts that are merely speculation.


<u>Authority</u>

*Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc*., 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77 (Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

Authority

Federal Circuit Bar Association Model Patent Jury Instructions - 12.3.5 - Amount of Lost Profits.

## DELIBERATION AND VERDICT

### 1.     INTRODUCTION (AGREED UPON INSTRUCTION)

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-3, or 5-2, or whatever your vote happens to be.  That should stay secret until you are finished.

## 2.    UNANIMOUS VERDICT (TRUEPOSITION'S PROPOSED INSTRUCTION)

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about TruePosition's claims of infringement and Andrew's claims of fraud and promissory estoppel.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

Authority

Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

TruePosition objects to Andrew's proposed instruction because invalidity is no longer an issue in this case. *See* D.I. 257 at 16-17. TruePosition further objects to Andrew's proposed instruction because Andrew's equitable defenses – equitable estoppel, implied license, unclean hands, and the ultimate determination of promissory estoppel – are issues that should be decided by the Court and not the jury. *See Hemstreet v. Computer Entry Systems Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992)); *Augustine Medical, Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999) ("Whether an implied license exists is a question of law that we review *de novo*."). *Compare Wang Labs., Inc. v. Mitsubishi Electrics America, Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) (sending issue to jury by agreement of parties); *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1034 (Del. 2003) ("The avoidance of injustice element [of promissory estoppel] is, however, a legal concept and not a question of fact to be submitted to the jury."); *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 310-11 (D. Del. 2005) ("The clean hands maxim gives broad discretion to the court's equity power . . . The court is not bound by any formula, restraint, or limitation which restricts the free and just exercise of its equitable discretion."). TruePosition does not consent to allow the jury to decide these issues.

Finally, should the Court decide to send these issues to the jury in an advisory capacity, TruePosition requests that the jury also be instructed concerning TruePosition's unclean hands defense to Andrew's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands.

## 2.    UNANIMOUS VERDICT (ANDREW'S PROPOSED INSTRUCTION)

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  The verdict form asks you a series of questions about TruePosition's claims of infringement and Andrew's claims of invalidity as well as Andrew's claims of fraud, equitable estoppel, implied license, promissory estoppel, and unclean hands.  Unless you are directed otherwise in the verdict form, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

<u>Authority</u>

Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

### 3.     DUTY TO DELIBERATE (AGREED UPON INSTRUCTION)

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m.  If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume your deliberations tomorrow morning.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations tomorrow, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room.

So if you do go home this evening, keep that instruction in mind.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back tomorrow morning at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

**4.     COURT HAS NO OPINION (AGREED UPON INSTRUCTION)**

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.

Date: August 24, 2007

_/s/ James D. Heisman_____
**CONNOLLY BOVE LODGE & HUTZ LLP**
James D. Heisman, Esq. (No. 2746)
The Nemours Building
1007 North Orange St.
PO Box 2207
Wilmington, Delaware 19899
(302) 658-9141

**WOODCOCK WASHBURN LLP**
Paul B. Milcetic (pro hac vice)
Dale M. Heist., Esq. (pro hac vice)
Kathleen A. Milsark (pro hac vice)
Daniel J. Goettle (pro hac vice)
Amanda M. Kessel (pro hac vice)
Cira Center, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
(215) 568-3100

*Attorneys for TruePosition, Inc.*

___/s/ Andrew A. Lundgren_____
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Josy W. Ingersoll (No. 1088)
Karen L. Pascale (No. 2903)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600

**KIRKLAND & ELLIS, LLP**
John D. Desmarais
Citigroup Center
153 East 53rd Street
New York, New York 10022
(212) 446-4800

**KIRKLAND & ELLIS, LLP**
Michael A. Parks
Rachel P. Waldron
Shira J. Kapplin
200 East Randolph Drive
Chicago, IL 60601
(312) 861-2000

*Attorneys for Andrew Corporation*