**EXHIBIT 2**

**TruePosition, Inc. v. Andrew Corporation, No. 05-747-SLR**
**TruePosition's Statement of Issues of Fact and Law that Remain to Be Litigated**

**Issues on Which TruePosition Has the Burden of Proof**

    **1.**    **Whether Andrew directly infringes the 144 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a).**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." 35 U.S.C. § 271(a). TruePosition alleges that Andrew's Geometrix directly infringes claims 1, 22 and 31 of the 144 patent, directed to cellular telephone location systems and methods of determining the location of cellular telephones.[1]

Proof of infringement requires two steps, claim construction and claim application. *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Claim construction is purely a legal issue. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 847 (Fed. Cir. 2006). Application of the claims to the accused product to determine infringement, however, is a question of fact reserved for the jury. *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326 (Fed. Cir. 2006) ("The second step, application of the claim to the accused product to determine infringement, is a question of fact"). As a matter of law, "a party may not avoid infringement of a patent claim using an open transitional phrase, such as

---

[1] Andrew now asserts that an additional fact issue is the applicability of 28 USC § 1498. Andrew is wrong. 28 USC § 1498 cannot be at issue because Andrew has never asserted section 1498 as a defense. Therefore, Andrew is precluded from raising this issue on the eve of trial. *See Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1381 (Fed. Cir. 2002) ("[28 USC Section 1498] provides an affirmative defense for 'applicable government contractors'") (quoting *Crater Corp. v. Lucent Techs. Inc.*, 255 F.3d 1361, 1364 (Fed. Cir. 2001)); *see also* Fed.R.Civ.P. 12(b); D.I. 48; *Hewlett v. Davis*, 844 F.2d 109, 114 (3rd Cir 1988) (stating that it is the duty of the court to confine instructions and issues to issues raised by pleadings).

comprising, by adding additional elements." *Free Motion Fitness, Inc. v. Nautilus Group, Inc.*, 423 F.3d 1343, 1353 (Fed. Cir. 2005).

A patentee is entitled to show infringement in one of two ways. Literal infringement is shown where every element of a properly construed patent claim is found in the accused device or method. *Riles v. Shell Exploration & Prod. Co.*, 298 F.3d 1302, 1308 (Fed. Cir. 2002). But even where literal infringement cannot be shown, infringement may nevertheless be found under the doctrine of equivalents. Proof of infringement under the doctrine of equivalents requires a showing that the differences between the claimed invention and the accused device or method are insubstantial. *Riles*, 298 F.3d at 1309 ("A claim element is equivalently present in an accused device if only insubstantial differences distinguish the missing claim element from the corresponding aspects of the accused device") (citing *Sage Prods., Inc. v. Devon Indus.*, 126 F.3d 1420, 1423 (Fed. Cir. 1997). One way to demonstrate that the differences between the claim and accused product are insubstantial is to show that the accused product "performs substantially the same function as the claimed limitation in substantially the same way to achieve substantially the same result." *Riles*, 298 F.3d at 1309 (citations omitted); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40-41 (1997).

**2.    Whether Andrew infringes the 144 patent, either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(f) by supplying component(s) of Geometrix from the United States to Saudi Arabia.**

TruePosition also alleges that Andrew infringes claims 1, 22 and 31 of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia. In addition to infringement under 35 U.S.C. § 271(a), there are two types of indirect infringement that may

occur when components of a system or method are supplied from the United States to a foreign country.

> Under 35 U.S.C. § 271(f)(1):
>
>> Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.
>
> Under 35 U.S.C. § 271(f)(2):
>
>> Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

Thus, under § 271(f)(1), TruePosition must show by a preponderance of the evidence that:

(1) Andrew supplies components from the United States to a place outside the United States; and

(2) The components meet all or a substantial portion of the requirements of at least one claim of the 144 Patent; and

(3) Andrew urges, encourages, purposefully causes or actually induces someone outside of the United States to combine or implement the components; and

(4) Such combination or implementation would constitute direct infringement of the claim if they had been carried out within the United States.

*See Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 1746, 1752 (2007); *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1338-39 (Fed. Cir. 2005).

> Under § 271(f)(2), TruePosition must show by a preponderance of the evidence that:
>
> (1) Andrew supplied at least one component of at least one claim of the 144 Patent from the United States to a place outside of the United States; and
>
> (2) Andrew is aware that the substantial use of the component is in the system or method covered by the claim of the patent; and
>
> (3) Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.

*See Microsoft Corp.*, 127 S. Ct. at 1752; *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366, 1378-79 (Fed. Cir. 2005); *Eolas Techs.*, 399 F.3d at 1338-39.

Neither § 271(f)(1) or § 271(f)(2) require that TruePosition prove acts of direct infringement in Saudi Arabia.[2] *See Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001) ("At no point does the statutory language require or suggest that the infringer must actually combine or assemble the components. A party can intend that a shipped component will ultimately be included in an assembled product even if the combination never occurs.").

Section 271(f) is also not limited to "machines" or "physical structures." *See Eolas Techs.*, 399 F.3d at 1339. "Rather every form of invention eligible for patenting falls within the protection of section 271(f). By the same token, the statute did not limit section 271(f) to

---

[2] Andrew cites two cases to the contrary – *Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042 (Fed. Cir. 2000) and *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368 (Fed. Cir. 2005). However, neither case deals with infringement under § 271(f). *See Arthur A. Collins*, 216 F.3d at 1048-49; *Fuji Photo*, 394 F.3d at 1377.

'machine' components or 'structural or physical' components. Rather every component of every form of invention deserves the protection of section 271(f)." *Id.*

**3.    If Andrew is found to infringe, whether Andrew's infringement of the 144 patent was willful.**

To establish that a defendant willfully infringed a patent, the patentee must prove by clear and convincing evidence in view of the totality of the circumstances that (1) the defendant acted in reckless disregard of patent and (2) the defendant lacked reasonable basis for believing that it had a right to act as it did. *IMX, Inc. v. Lendingtree, LLC*, 469 F. Supp. 2d 203, 218 (D. Del. 2007) (*citing nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1319 (Fed. Cir. 2006)). *See also In re Seagate Tech., LLC*, Case No. 06-M830 (Fed. Cir. Aug. 20, 2007).

An infringer is reckless if the infringer acts "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known," or in other words if the "infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *In re Seagate*, slip op. at 12. *See also Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1369-70 (Fed. Cir. 2006) (citing defendant's "cavalier attitude" and failure to "respond substantively to [plaintiff's] notice letters" as evidence of willfulness); *Golight, Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327, 1339 (Fed. Cir. 2004) (finding infringer guilty of willful infringement because he failed to take any action after cease and desist letter and continued to sell the infringing product); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075, 1084 (Fed. Cir. 1987), *cert. denied*, 484 U.S. 1063 (1988) (Denial of a license put infringer under "a high degree of caution to avoid the possibility of infringement").

Whether a defendant acted willfully is determined by consideration of the "totality of the circumstances." *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342-43 (Fed. Cir. 2004) (en banc); *IMX, Inc.*, 469 F. Supp. 2d at 218. The factors used in this analysis as applied to this case include:

1) Whether or not Andrew, when it learned of TruePosition's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or that it was not infringed before Andrew started or continued any possible infringing activity;

2) Whether or not Andrew reasonably believed that it had a substantial defense to infringement and reasonably believed that the defense would be successful if litigated;

3) Whether or not Andrew made a good faith effort to avoid infringing the patent, for example, whether or not Andrew took remedial action upon learning of the patent by ceasing infringing activity or attempting to design around the patent;

4) Whether or not Andrew tried to cover up its infringement;

5) Whether or not pressure to be competitive in the market influenced Andrew's infringing conduct; and

6) Whether or not Andrew obtained and followed the advice of a competent lawyer.

*See Applied Med. Res. Corp. v. U. S. Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006); *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GmbH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826-29 (Fed. Cir. 1992); *Underwater Devices, Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983); *IMX, Inc.*, 469 F. Supp. 2d at 218-19.

**4. Whether TruePosition is entitled to lost profits on lost sales due to Andrew's alleged infringement.**

35 U.S.C. § 284 states in pertinent part:

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.

"The measurement of patent damages is a question of fact." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1345 (Fed. Cir. 2001).

The patent statute "imposes no limitation on the types of harm resulting from infringement that the statute will redress. The section's broad language awards damages for any injury as long as it resulted from the infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 947 (Fed. Cir. 1995). "The phrase 'damages *adequate to compensate*' means full compensation for any damages [the patent owner] suffered as a result of the infringement." *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 654 (1983)) (emphasis added). A damage award shall be "in no event less than a reasonable royalty," which sets the floor below which a damage award may not fall. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995) (citing 35 U.S.C. § 284). "[T]he Supreme Court has interpreted [35 U.S.C. § 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement." *Id.* at 1545 (emphasis added).

TruePosition must prove the amount of damages by a preponderance of the evidence. *See SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991). TruePosition, however, need not prove its damages with absolute certainty. *See W.R. Grace &*

*Co.-Conn. v. Intercat, Inc.*, 60 F. Supp. 2d 316, 321 (D. Del. 1999).  "Any doubt about the correctness of the amount [of damages] is resolved against the infringer." *State Indus. v. Mor-Flo Indus.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989).  "[F]undamental principles of justice require us to throw the risk of any uncertainty upon the wrongdoer instead of upon the injured party." *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984).

"To recover lost profits damages . . . the patent owner must show that it would have received the additional profits 'but for' the infringement.  The patent owner bears the burden to present evidence sufficient to show a reasonable probability that it would have made the asserted profits absent infringement." *King Instruments*, 65 F.3d at 952.  TruePosition has lost profits because Andrew's infringement took away two specific sales, to STC in Saudi Arabia and Q-Tel in Qatar, that TruePosition would have made if Andrew had not sold its infringing product instead.  To prove that it lost sales, TruePosition must show that it is more probable than not that it would have made the sales to STC and Q-Tel if Andrew had not made them by selling an infringing product.

"[T]he statutory measure of 'damages' is 'the difference between [the patent owner's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred.'" *Grain Processing*, 185 F.3d at 1350 (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 507 (1964) (plurality opinion)).  To prove lost profits, a patentee must reconstruct the market to show "likely outcomes with infringement factored out of the economic picture." *Grain Processing*, 185 F.3d at 1350.

To recover lost profits based on lost sales, TruePosition has the initial burden to show a reasonable probability that, but for Andrew's infringement, it would have made Andrew's sales. *See Crystal Semiconductor*, 246 F.3d at 1353-54; *State Indus.*, 883 F.2d at 1577.  The patent

owner is not required, however, to negate all possibilities that a purchaser might have bought a different product or might have foregone the purchase altogether. *State Indus.*, 883 F.2d at 1577. Once the patent owner has met its initial burden, "[t]he burden then shifts to the infringer to show that the ['but for' claim] is unreasonable for some or all of the lost sales." *Rite-Hite*, 56 F.3d at 1545. The patentee need not use the patented invention as a prerequisite to recovery of lost profits. *King Instruments*, 65 F.3d at 947.

One recognized method for proving lost sales – often called the *Panduit* test – is for the patent owner to prove 1) that there was demand for the patented product; 2) that there are no acceptable non infringing substitutes; 3) that the patentee had the manufacturing and marketing capability to meet the demand; and 4) the amount of profit that it would have made. *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000). "The substantial number of sales . . . of infringing products containing the patented features itself is compelling evidence of demand for the patented product." *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984).

However, in situations where there are only two suppliers in the market, as here, the first two of those factors collapse. In such circumstances, to prove lost profits under the "two-supplier market" test, a patentee must show only: 1) that the relevant market contains only two suppliers; 2) that it had the manufacturing and marketing capability to make the sales that were diverted to the infringer; and 3) the amount of profit it would have made on those sales. *See Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124-25 (Fed. Cir. 2003); *State Indus.*, 883 F.2d at 1578.

To be a non-infringing substitute, a product must be both (1) available in the market and (2) acceptable to the market. *Grain Processing*, 185 F.3d at 1353. "While there may be competing devices available in the marketplace, the 'mere existence of a competing device does not make that device an acceptable substitute.'" *Kalman v. Berlyn Corp.*, 914 F.2d 1473, 1484 (Fed. Cir. 1990) (citation omitted). "It is clear that '[a] product lacking the advantages of [the] patented [device] can hardly be termed a substitute 'acceptable' to the customer who wants those advantages.'" *Id.* (citing *Panduit*, 575 F.2d at 1162) (internal citations omitted); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997). Further, products that are accused of infringement and the subject matter of ongoing patent infringement litigation are not "acceptable noninfringing substitutes" for purposes of calculating lost profits. *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222-23 (Fed. Cir. 1995).

A plaintiff's lost profits are calculated by computing its lost sales and deducting from that figure the amount of variable costs that it would have incurred in making those sales. *Paper Converting*, 745 F.2d at 22.

**5.     If TruePosition is awarded damages, whether such damages should be enhanced.**

In the event that liability is found, the Court may increase damages to up to three times the actual damages assessed. 35 U.S.C. § 284. An act of willful infringement is sufficient to provide the culpability required for enhancement of damages under 35 U.S.C. § 284. *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996).

**6.    Whether this case is exceptional and TruePosition should recover its attorneys fees.**

In exceptional cases, the Court may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. Willful infringement is a sufficient basis for finding a case exceptional. *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 831 (Fed. Cir. 1992).

**7.    Whether Andrew should be permanently enjoined from making, using, offering to sell, selling, and supplying Geometrix.**

The patent statute provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

To merit an award of a permanent injunction, TruePosition must show: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, 126 S. Ct. 1837, 1839 (2006).

**Issues on Which Andrew Has the Burden of Proof**

**8.    Whether the asserted claims of the 144 patent are invalid as anticipated by the Kono reference.**

The claims of the patent are presumed valid. 35 U.S.C. § 282; *see also SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 885 (Fed. Cir. 1988). Accordingly,

Andrew has the burden of proving invalidity by clear and convincing evidence. *See Abbott Labs. v. Baxter Pharm. Prods.*, 471 F.3d 1362, 1364 (Fed. Cir. 2006). To prove anticipation of an asserted claim, Andrew must show, by clear and convincing evidence, that the 144 patent claims were "described in a printed publication" that was published more than one year before the filing date of the patent, 35 U.S.C. § 102(b), and that a single such reference contains every element of the claims. *See, e.g., Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377 (Fed. Cir. 2003); *In re Bond,* 910 F.2d 831, 832 (Fed. Cir. 1990).

The first step in an invalidity analysis based on anticipation in view of a prior art reference is to determine the meaning and scope of the pertinent claims. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Each claim must be viewed as a whole, and it is improper to ignore any element of the claim. *See Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 25-26 (Fed. Cir. 2000) ("The undeniably broad statement recited in claim 2…simply cannot read the qualifier 'help' out of the definition of 'help access window.' Rather, the claim must be viewed as a whole.").

After determining the meaning and scope of the claims, each claim element must be compared to the reference to determine whether the reference anticipates the claim. *See Amazon.com*, 239 F.3d at 1351. For means-plus -function claim elements, this comparison requires that the structure in the patent specification corresponding to the functional language be compared to the same or equivalent structure in the prior art. *RCA Corp. v. Applied Digital Data Sys., Inc.*, 730 F.2d 1440, 1444 (Fed. Cir. 1984) ("'absent structure [in a prior art reference] which is capable of performing the functional limitation of the "means," [the prior art reference] does not meet the claim'") (*quoting In re Mott,* 557 F.2d 266, 269 (C.C.P.A. 1977)).

The prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently. "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999). Any missing element *must* be "necessarily" inherent or present in the prior art reference. *See SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331, 1343 (Fed. Cir. 2005).

**9. Whether TruePosition is barred from any recovery due to fraud, equitable estoppel, promissory estoppel, implied license, unfair competition under Cal. Bus. & Prof. Code § 17200 et seq. or unclean hands.**

**Fraud**

In order to prove fraud, Andrew must show by clear and convincing evidence the following five elements:[3]

1) that TruePosition made a false representation; and

2) that TruePosition knew or believed the representation was false (or acted with a reckless disregard of the truth of the representation); and

3) TruePosition intended to induce Andrew into acting or refraining from acting based on the representation; and

4) Andrew acted or refrained from acting in justifiable reliance on TruePosition's representation; and

5) Andrew suffered damage as a result of its reliance.[4]

---

[3] TruePosition is aware of no legal precedent for common law fraud as a defense to patent infringement.

*See, e.g.*, *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 35 Del. 236, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

Mere silence or inaction is not grounds for fraud unless there is an affirmative duty to speak or act. *Stephenson,* 462 A.2d at 1074. Put differently, "silence or withholding of information does not constitute fraud in the absence of a duty to disclose that information." *Rambus, Inc. v. Infineon Techs. AG,* 318 F.3d 1081, 1096 (Fed. Cir. 2003) (applying analogous Virginia law); *see also Stephenson*, 462 A.2d at 1074.

If Andrew was aware of the true facts of the transaction or should have been aware of the true facts of the transaction, even if they were concealed by TruePosition, or if Andrew did not rely on the concealment of these facts there can be no fraud. *See Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 100 (Del. 1992) ("An essential element of [fraud], is that the alleged victim not be aware of the true facts which are misrepresented.").

**Equitable Estoppel**

The Federal Circuit has enumerated the elements necessary to bar a patentee's suit by reason of equitable estoppel. Andrew must show that (1) TruePosition, through misleading conduct, led Andrew to reasonably infer that TruePosition did not intend to enforce the 144

---

[4] TruePosition also notes that Delaware law should apply to Andrew's fraud claim. Under Delaware choice of law rules, a tort claim is decided according to the law of the state with the "most significant relationship" to the parties and the alleged conduct, evaluated using the general principles set forth in the *Restatement (Second) of Conflict of Laws*. *Travelers Indem. Co. v. Lake,* 594 A.2d 38, 46-47 (Del. 1991). Here, both parties are Delaware corporations. The alleged conduct involved non-events: TruePosition's alleged failure to disclose the 144 patent to ETSI (a French entity). A foreign non-event cannot create any single "significant relationship" to the parties or the alleged conduct. California law has no apparent nexus to this claim.

patent against it; (2) Andrew relied on that misleading conduct; and (3) due to its reliance, Andrew will be materially prejudiced if TruePosition is allowed to proceed with its infringement claim.[5]  *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1028 (Fed. Cir. 1992).

A communication may be made through written or spoken words, conduct, silence or a combination of words, conduct and silence.  However, mere silence or inaction is not a ground for equitable estoppel unless there is an affirmative duty to speak or act.  *A.C. Auckerman,* 960 F.2d at 1042; *Meyers v. Asics Corp.,* 974 F.2d 1304, 1308 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.,* 398 F. Supp. 2d 305, 317 (D. Del. 2005).

"The trial court must, even where the three elements of equitable estoppel are established, take into consideration any other evidence and facts respecting the equities of the parties in exercising its discretion and deciding whether to allow the defense of equitable estoppel to bar the suit."  *Tenneco Auto. Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383 (D. Del. 2005) (citing *A.C. Auckerman*, 960 F.2d at 1042).

Equitable estoppel is an issue that should be decided by the court.  *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1292 (Fed. Cir. 1992) (equitable estoppel is an "equitable defense committed to the sound discretion of the trial court") (citing *A.C. Aukerman*, 960 F.2d at 1028).  TruePosition does not consent to allow the jury to decide this issue.

TruePosition also notes that although Andrew has pled equitable estoppel both as an affirmative defense and as an independent counterclaim, equitable estoppel in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in

---

[5] TruePosition notes that Andrew suggests that there is a separate and distinct claim for equitable estoppel based on abuse of the standardization process.  *See* Andrew's Statement of Issues of Law to be Tried at 15.  Such a claim completely lacks any legal support.  There is no such separate cause of action.  The cases that Andrew cites just state that the normal elements of equitable estoppel may be applied in the standards context.

the particular circumstances.  *See A.C. Aukerman*, 960 F.2d at 1027; *Honeywell Int'l*, 398 F. Supp. 2d at 309.

### Promissory Estoppel

Under the doctrine of promissory estoppel, Andrew must demonstrate by clear and convincing evidence that:  1) a promise was made by TruePosition; 2) it was the reasonable expectation of TruePosition to induce action or forbearance by Andrew; 3) Andrew reasonably relied on the promise and took action to its detriment; and 4) such promise is binding because injustice can be avoided only by enforcement of the promise.  *Phillips v. Daimlerchrysler Corp.*, 2003 U.S. Dist. LEXIS 23941, at *28 (D. Del. Mar. 27, 2003), *aff'd,* 112 Fed. Appx. 867 (3d Cir. 2004); *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

The promise must be definite and certain.  *Phillips*, 2003 U.S. Dist. LEXIS 23941 at *28.  "'[I]mplied' statements cannot form the basis of promissory estoppel because of their inherent uncertainty."  *In re U.S. West, Inc. Sec. Lit.*, 201 F. Supp. 2d 302, 309 n.1 (D. Del. 2002).

Promissory estoppel is an issue that should be ultimately decided by the court.  Whether a promise was made is a question of fact to be determined by the jury.  *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg. Inc.*, No. 98C-02-217, 2004 Del. Super. LEXIS 3, at *10 (Del. Super. Ct. Jan. 8, 2004).  Intent to induce reliance and whether Andrew's reliance was reasonable are also questions of fact for the jury.  *Fini v. Remington Arms Co.*, No. 97-12-SLR 1998 U.S. Dist. LEXIS 8261, at *33 (D. Del. May 27, 1998).  "The avoidance of injustice element is, however, a legal concept and not a question of fact to be submitted to the jury." *Chrysler*, 822 A.2d at 1034.

TruePosition also notes that although Andrew has pled promissory estoppel both as an affirmative defense and as an independent counterclaim, promissory estoppel in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances.

### **Implied License**

An implied license is a patentee's waiver of its statutory right to sue for patent infringement. *See Tenneco*, 375 F. Supp. 2d at 383-84 (citing *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997)). The Federal Circuit has recognized implied licenses through: (1) equitable estoppel; (2) legal estoppel; (3) acquiescence; and (4) conduct. *Tenneco*, 375 F. Supp. 2d at 384. These are not different types of implied licenses, but different categories of conduct that can lead to a conclusion of implied license. *Id.*

Andrew is attempting to show implied license through conduct or acquiescence. To do so, Andrew must show that (1) a relationship existed between Andrew and TruePosition; (2) within that relationship, TruePosition granted Andrew a right to use the 144 patent; (3) TruePosition received valuable consideration for the license; (4) TruePosition's statements and conduct created the impression that it consented to Andrew's use of the 144 patent; and (5) TruePosition denied that Andrew had an implied license. *Id*. at 383.

Implied license is an issue that should be decided by the court. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999) ("Whether an implied license exists is a question of law that we review *de novo*."). *Compare Wang Labs.*, 103 F.3d at 1578 (sending issue to jury by agreement of parties). TruePosition does not consent to allow the jury to decide this issue.

TruePosition also notes that although Andrew has pled implied license both as an affirmative defense and as an independent counterclaim, implied license in the patent context is really a defense to infringement that may serve to prevent enforcement of the patent at issue in the particular circumstances. *See Augustine Med.*, 194 F.3d at 1374 ("[T]he argument of implied license is a *defense* to a patent infringement allegation. . . Augustine's application of that argument in this case would turn the law of implied license from a defense to an offense. We are not willing to construe the law in such a manner today.").

### **Unfair Competition Under Cal. Bus. & Prof. Code § 17200 et seq.**

The California Code prohibits "any unlawful, unfair or fraudulent business act or practice." CAL. BUS. PROF. CODE § 17200 (2006). California's unfair competition law "does not apply to actions occurring outside of California that injure non-residents." *Standfacts Credit Servs., Inc. v. Experian Info. Solutions, Inc.*, 405 F. Supp. 2d 1141, 1148 (C.D. Cal. 2005); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999).

The California Supreme Court has explained that, in cases between competitors, "unfair" means "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal. 4th 163, 187, 83 Cal. Rptr. 2d 548, 973 P.2d 527 (1999); *see Chip-Mender, Inc. v. The Sherwin-Williams Co.*, No. 05-3465, 2006 U.S. Dist. LEXIS 2176, at *28 (N.D. Cal. Jan. 3, 2006). "Fraudulent" business practice means likely to deceive the relevant public – in this case, competitors. *In re HP Inkjet Printer Lit.*, No. 05-3580, 2006 U.S. Dist.

LEXIS 12848, at *10 (N.D. Cal. Mar. 7, 2006) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995).

### **TruePosition's Alleged Unclean Hands**

Under the doctrine of unclean hands, the owner of a patent may be barred from enforcing the patent against an infringer where the owner of the patent acts or acted inequitably, unfairly, or deceitfully towards the infringer or the Court in a way that has immediate and necessary relation to the relief that the patent holder seeks in a lawsuit. *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U.S. 240, 244-45 (1933); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 311 (D. Del. 2005). For unclean hands to apply, the patent owner must have "conducted [itself] as to shock the moral sensibilities of the judge" or as "offensive to the dictates of natural justice." *Honeywell Int'l*, 398 F. Supp. 2d at 310 (citing *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1375 (Fed. Cir. 2001).

The court may also consider the cleanliness of the hands of the petitioning party. *See Precision Instruments Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) ("he who comes into equity must come with clean hands"); *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 794 (5th Cir. 1999) ("It is old hat that a court called upon to do equity should always consider whether the petitioning party has acted . . . with unclean hands.").

Unclean hands is an issue that should be decided by the court. *See Keystone Driller*, 290 U.S. at 245; *Honeywell Int'l*, 398 F. Supp. 2d at 310-11 ("The clean hands maxim gives broad discretion to the court's equity power . . . The court is not bound by any formula, restraint, or

- 19 -

limitation which restricts the free and just exercise of its equitable discretion.").[6] TruePosition does not consent to allow the jury to decide this issue.

**Issue on Which TruePosition Has the Burden of Proof**

  **Andrew's Alleged Unclean Hands**

TruePosition has raised the defense of unclean hands to Andrew Corporation's claims of fraud, equitable estoppel, implied license, promissory estoppel and unclean hands. TruePosition contends that Andrew cannot assert any of the equitable defenses it has raised in response to TruePosition's claim of infringement because Andrew Corporation itself has unclean hands. As set forth above, under the doctrine of unclean hands, a defendant who acts inequitably, unfairly, or deceitfully towards the plaintiff or the Court in a way that has immediate and necessary relation to the relief that the defendant seeks in a lawsuit may be precluded from such relief. *Keystone Driller*, 290 U.S. at 244-45; *Honeywell*, 398 F. Supp. 2d at 311.

---

[6] TruePosition notes that in its proposed jury instructions, Andrew presents "Unclean Hands" as a counterclaim. However, Andrew has only asserted unclean hands as a defense. *See* Andrew Corporation's Answer and Counterclaim to Second Amended Complaint at 10 (Sixth Affirmative Defense).

- 20 -