TruePosition, Inc. v. Andrew Corporation, No. 05-747-SLR
Andrew Corporation's Statement of Issues of Fact That Remain to be Litigated
August 1, 2007

Andrew expects that it will present the following issues of fact at trial. If the Court determines that any issue identified below is more properly considered an issue of law, it should be so considered. Andrew reserves the right to revise this list as necessary in light of the Court's decisions on the pending motions and pretrial evidentiary issues, TruePosition's Statement of Issues of Fact That Remain to be Litigated, and evidence presented at trial.

I.  ANDREW'S ALLEGED INFRINGEMENT.

    A.  ALLEGED INFRINGEMENT UNDER 35 U.S.C. 271(A) RELATING TO COMMUNICATIONS WITH STC.

        1. Whether Andrew infringed claim 1 or 2 of the '144 patent under 35 U.S.C. 271(a) through its dealings with STC.

        2. Whether an offer to sell to STC was made from the United States.

        3. Whether Andrew's accused Geometrix® product meets every limitation of claim 1 or 2.

    B.  ALLEGED INFRINGEMENT UNDER 35 U.S.C. 271(A) RELATING TO COMMUNICATIONS WITH Q-TEL.[1]

        1. Whether Andrew infringed claim 1 or 2 of the '144 patent under 35 U.S.C. 271(a) through its dealings with Q-Tel.

        2. Whether an offer to sell to Q-Tel was made from the United States.

        3. Whether Andrew's accused Geometrix® product meets every limitation of claim 1 or 2.

    C.  ALLEGED INFRINGEMENT UNDER 35 U.S.C. 271(A) RELATING TO AN ASHBURN, VA DEMONSTRATION.[2]

---

[1] Andrew has raised an evidentiary issue regarding the Q-Tel matter. *See* Andrew Evidentiary Issue No. 4.

1. Whether an actionable demonstration of Andrew's Geometrix® product occurred in the United States, and if so, whether TruePosition can raise the matter in this litigation due to 28 U.S.C. § 1498.

2. Whether any actionable, domestic demonstration of Andrew's Geometrix® product that can be raised in this litigation met every limitation of claim 31 of the '144 patent.

D. **ALLEGED INFRINGEMENT UNDER 35 U.S.C. 271(F) RELATING TO SUPPLY OF EQUIPMENT TO STC.**

1. Whether STC's cellular system, of which Andrew's Geometrix® product is only a part, infringes any asserted claim.

2. Whether Andrew's accused Geometrix® product (or use thereof) infringes any asserted claim.

3. Whether Andrew had a specific intent to induce infringement by STC.

4. Whether the components allegedly supplied to STC by Andrew are especially made or especially adapted for use in the invention and are not a staple article or commodity of commerce suitable for substantial noninfringing use.

II. **VALIDITY OF THE '144 PATENT.**

1. The teachings of the Kono reference.

2. Whether the asserted claims can be read on Andrew's accused Geometrix® product without also reading them on Kono.

3. Whether the Kono reference anticipates each asserted claim of the '144 patent.

4. The level of skill in the art for the subject matter claimed in the '144 patent.

---

[2] Andrew has raised an evidentiary issue regarding the Ashburn, Virginia demonstration. *See* Andrew Evidentiary Issue No. 9.

5. Whether there is structure in the '144 patent specification corresponding and clearly linked to the function of the "database means" limitation of claim 22.

### III. WILLFUL INFRINGEMENT.

1. To the extent that Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition has shown by clear and convincing evidence that Andrew's infringement was willful.

### IV. DAMAGES/INJUNCTION FOR PATENT INFRINGEMENT.

1. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition promised to license the '144 patent on reasonable and nondiscriminatory terms.

2. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition's only remedy is a reasonable and nondiscriminatory royalty.

3. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether a noninfringing substitute exists.

4. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition is entitled to a lost profits award.

5. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, and TruePosition is entitled to a lost profits award, the amount of lost profits TruePosition would have made but for Andrew's infringement.

6. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition has suffered an irreparable injury.

7. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether remedies available by law, such as monetary damages, are adequate to compensate TruePosition.

8. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether, considering the balance of hardships between Andrew and TruePosition, a permanent injunction is warranted.

9. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether the public interest would be disserved by permanently enjoining Andrew.

10. If Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether the presence of an infringing product in the market would likely cause TruePostion to lose market share, profits, and goodwill.

V. ANDREW'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES.

A. GENERAL.

1. Whether it is possible on technical grounds -- taking into account normal technical practice and the state of the art generally available at the time of UTDOA standardization -- to provide idle-mode location services in a GSM network without infringing the '144 patent, under TruePosition's interpretation of the patent.

2. Whether TruePosition violated the ETSI IPR policy by failing to disclose the '144 patent to the standards body.

B. FRAUD.

1. Whether TruePostion had a duty to disclose the '144 patent to ETSI.

4

2. Whether TruePosition's failure to disclose the '144 patent to ETSI was a misrepresentation or omission of a material fact.

3. Whether TruePosition failed to disclose the '144 patent to ETSI knowingly or with reckless disregard for the truth.

4. Whether TruePosition failed to disclose the '144 patent to ETSI with an intent to mislead Andrew.

5. Whether Andrew relied on TruePosition's failure to disclose the '144 patent to ETSI.

6. Whether Andrew was damaged as a result of its reliance on TruePosition's failure to disclose the '144 patent to ETSI.

C. **UNFAIR COMPETITION.**

1. Whether, due to TruePosition's conduct, location technology manufacturers such as Andrew were likely to be deceived into thinking that TruePosition would not assert the '144 patent against standardized UTDOA technology.

2. Whether TruePosition's conduct violates the policy or spirit of attempted monopolization, and threatens or harms competition.

D. **EQUITABLE ESTOPPEL.**

1. Whether TruePosition misleadingly communicated by its words, conduct or silence that it would not assert the '144 patent against Andrew or other entities practicing the GSM UTDOA standard.

2. Whether Andrew reasonably inferred that TruePosition would not assert the '144 patent against Andrew or other entities practicing the GSM UTDOA standard.

3. Whether Andrew relied on TruePosition's conduct and silence and therefore participated with TruePosition in the UTDOA standardization process.

4. Whether Andrew would be materially harmed if TruePosition is allowed to assert the '144 patent against Andrew.

E. **EQUITABLE ESTOPPEL: ABUSE OF STANDARDS-SETTING BODIES.**

1. Whether, while TruePosition was a member of ETSI, the ETSI IPR policy required TruePosition to disclose essential patents and pending patents relating to subject matter being considered for standardization by ETSI.

2. Whether, at the same time, TruePosition had a patent that, under its interpretation, related to the subject matter ETSI was considering for standardization.

3. Whether TruePosition remained silent while ETSI considered that subject matter.

4. Whether ETSI subsequently incorporated that subject matter into standards for UTDOA.

F. **IMPLIED LICENSE.**

1. Whether a relationship existed between Andrew and TruePosition.

2. Whether within that relationship, TruePosition granted Andrew a right to use the '144 patent.

3. Whether TruePosition received valuable consideration for that grant.

4. Whether TruePosition's overall statements and conduct created the impression that TruePosition consented to Andrew using the '144 patent.

5. Whether TruePosition denied that Andrew had an implied license.

G. **PROMISSORY ESTOPPEL.**

1. Whether TruePosition made a promise to license the '144 patent on reasonable and nondiscriminatory terms.

2. Whether TruePosition intended to induce action or inaction on Andrew's part.

3. Whether Andrew reasonably relied on TruePosition's promise.

4. Whether Andrew was injured by relying on TruePosition's promise.

H. **UNCLEAN HANDS.**

1. Whether TruePosition's conduct was inequitable or in bad faith.

2. Whether TruePosition's conduct is directly related to the subject matter of its claims against Andrew.

I. **ANDREW'S DAMAGES.**

1. Whether, as a result of TruePosition's conduct, Andrew has suffered harm.