TruePosition, Inc. v. Andrew Corporation, No. 05-747-SLR
Andrew Corporation's Statement of Issues of Law to be Tried
August 1, 2007

If the Court determines that any issue identified herein is more properly considered an issue of fact, it should be so considered. Andrew reserves the right to revise this Statement as necessary in light of the Court's decisions on the outcome of pending motions, TruePosition's Statement of Issues of Law That Remain to be Tried, and evidence presented at trial.

I.  TRUEPOSITION'S BURDEN OF PROOF.

   A.  ANDREW'S ALLEGED INFRINGEMENT.

      *1. 35 U.S.C. 271(a) Issues.*

         1. Whether TruePosition can show by a preponderance of the evidence that Andrew made an offer to sell its accused Geometrix® product to STC from the United States.

         2. Whether TruePosition can show by a preponderance of the evidence that Andrew's accused Geometrix® product meets every limitation of claim 1 or 2 of the '144 patent.

         3. Whether TruePosition can show by a preponderance of the evidence that Andrew made an offer to sell its accused Geometrix® product to Q-Tel[1] from the United States.

         4. Whether TruePosition can show by a preponderance of the evidence that Andrew's accused Geometrix® product meets every limitation of claim 1 or 2 of the '144 patent.

---

[1] Andrew has raised an evidentiary issue regarding the Q-Tel matter. *See* Andrew Evidentiary Issue No. 4.

5. Whether TruePosition can show by a preponderance of the evidence that an actionable demonstration of the Geometrix® product occurred in Ashburn, Virginia.[2]

6. Whether TruePosition can show by a preponderance of the evidence that any actionable demonstration of the Geometrix® product met every limitation of claim 31 of the '144 patent.

**2.  *35 U.S.C. 271(f)(1) and 271(f)(2) Issues.***

1. Whether TruePosition can show by a preponderance of the evidence that STC's cellular system, of which Andrew's Geometrix® product is only a part, infringes any asserted claim of the '144 patent.

2. Whether TruePosition can show by a preponderance of the evidence that Andrew has actively induced STC to infringe claims 1, 2, 22, 31, and 32 of the '144 patent by providing Geometrix®components to STC when the claims are properly construed. 35 U.S.C. 271(f)(1).

3. Whether TruePosition can show by a preponderance of the evidence that Andrew has actually supplied components to STC that are "especially made or especially adapted for use in the invention and are not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. 271(f) (1)(2).

---

[2] Andrew has raised an evidentiary issue regarding the Ashburn, Virginia demonstration.  *See* Andrew Evidentiary Issue No. 9.

### 3. *Caselaw and Statutory Law Regarding Direct Infringement.*

"To establish literal infringement, all of the elements of the claim, as correctly construed, must be present in the accused system." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1353 (Fed. Cir. 2001). The absence of a single limitation is fatal to the patentee's case; "[i]f even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998). This proposition is of course equally true for alleged offers for sale under Section 271(a). *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246 (Fed. Cir. 2000) (discussing offers for sale; "in order to infringe under § 271(a), the accused device must include all of the limitations contained within the patent claim, not just any one limitation.").

In addition, to infringe literally, the accused products must meet all of the limitations of the claim as-is. "[An accused product] does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim….The question is not what [an accused product] might have been made to do, but what it was intended to do and did do." *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1555 (Fed. Cir. 1995) (internal quotations omitted).

"For infringement by equivalency, all of the elements of the claimed invention or an equivalent thereof must be present in the accused system." Generalized evidence is insufficient — there must be "particularized testimony and linking argument on a limitation-by-limitation basis." *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1363 (Fed. Cir. 2005) (affirming summary judgment of noninfringement under the doctrine of equivalents).

"The doctrine of prosecution history estoppel acts as a legal limitation on the doctrine of equivalents. Prosecution history estoppel limits the range of equivalents available to a patentee by preventing recapture of subject matter surrendered during prosecution of the patent. The

burden is on the patentee to establish that the reason for the amendment was unrelated to patentability. If the patentee fails to meet this burden, the court must presume that the patentee had a substantial reason related to patentability for including the limiting element added by amendment. If there is a substantial reason related to patentability prosecution history estoppel would bar the application of the doctrine of equivalents as to that element." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, No. 05-1492, 2007 WL 1932269, *6 (Fed. Cir. July 5, 2007) (quotations and citations omitted).

"[T]he Supreme Court held that the patentee may prove that the amendment did not surrender the particular equivalent by demonstrating that one of three exceptions is met." *Id.* To rebut the presumption of surrender, a patentee must demonstrate that the alleged equivalent was unforeseeable at the time it amended its claims, that the equivalent is tangential to the purpose of the amendment, or that there was some other reason suggesting that the patentee could not reasonably be expected to have described the equivalent. *See Terlep v. Brinkmann Corp.*, 418 F.3d 1379, 1385 (Fed. Cir. 2005); *see also Festo Corp.*, 2007 WL 1932269 at *5-7. The Federal Circuit has recently clarified that "an alternative is foreseeable if it is disclosed in the pertinent prior art in the field of the invention. In other words, an alternative is foreseeable if it is known in the field of the invention as reflected in the claim scope before amendment." *Festo Corp.*, 2007 WL 1932269 at *7 (noting that there was no "occasion [] to determine in what other circumstances an equivalent might be foreseeable").

Lastly, if an independent claim is not infringed, it follows as matter of law that any claims depending from that claim are also not infringed. *Wolverine World Wide Inc. v. Nike, Inc.*, 38 F.3d 1192, 1199 (Fed Cir. 1994).

### 4. Caselaw and Statutory Law Regarding Infringement Under § 271(f).

In order to show indirect infringement, a patentee must prove direct infringement of the claim by a third party. *See Arthur A. Collins, Inc. v. Northern Telecom Ltd.*, 216 F.3d 1042, 1048-49 (Fed. Cir. 2000) (evidence of direct infringement is essential prerequisite). If a patentee fails to establish any third party acts of direct infringement, its allegations of contributory infringement and inducement fail as well. *Id.*

Section 271(f)(1) prohibits supplying from the United States a "substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States." 35 U.S.C. 271(f)(1). Notably, "[a] finding of inducement requires both an underlying instance of direct infringement and a requisite showing of intent." *Fuji Photo Film Co., Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005). Moreover, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006) (*en banc* as to this holding). Indeed, "[t]he mere knowledge of possible infringement by others does not amount to inducement; specific intent and action to induce infringement must be proven." *Id.* at 1305 (internal quotations and citations omitted). Therefore, "'knowledge of the acts alleged to constitute infringement' is not enough." *Id.* (internal quotations and citations omitted).

Section 271(f)(2) prohibits supply of components that are "especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use." 35 U.S.C. 271(f)(2). "'Suppl[ying] or caus[ing] to be supplied' in § 271(f)(2) clearly refers to physical supply of components, not simply to the supply of instructions or corporate oversight.'" *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1340-

5

1341 (Fed. Cir. 2005) (internal quotations omitted). Furthermore, an essential element of contributory infringement is proof that the accused infringer sold the component "knowing the same to be especially made or especially adapted for use in an infringement of such patent." *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1447 (Fed. Cir. 1990).

The "statutory theories of indirect patent infringement, as developed through case law, 'deny the patentee any right to control the distribution of unpatented articles unless they are unsuited for any commercial non-infringing use' because the 'sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a[n indirect] infringer. Such a rule would block the wheels of commerce.'" *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004) (discussing and quoting *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 440-442 (1984)).

    B.    **WILLFUL INFRINGEMENT.**

        *1. Issue.*

- To the extent that Andrew is found to infringe a valid and enforceable claim of the '144 patent, whether TruePosition can show by clear and convincing evidence that Andrew's infringement was willful. 35 U.S.C. 284.

        *2. Caselaw and Statutory Law Regarding Willful Infringement.*

"To establish willful infringement, a plaintiff must prove by clear and convincing evidence that the defendant acted without a reasonable belief that its action avoided infringement." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001). "There is no evidentiary presumption that every infringement is willful. Willful infringement is not established by the simple fact of infringement, even where the accused has knowledge of the patents. The patentee must present threshold evidence of culpable behavior before the burden of production shifts to the accused to put on evidence that it

acted with due care." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006) (quotations and citations omitted).

No adverse inference should be drawn from a defendant's lack of an exculpatory opinion of counsel. *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345-1346 (Fed. Cir. 2004) ("When the defendant had not obtained legal advice, is it appropriate to draw an adverse inference with respect to willful infringement? The answer, again, is 'no.'"; "the failure to obtain an exculpatory opinion of counsel shall no longer provide an adverse inference or evidentiary presumption that such an opinion would have been unfavorable.").

### C. REMEDIES FOR PATENT INFRINGEMENT.

#### *1. Issues.*

1. Whether TruePosition can show by a preponderance of the evidence that it is entitled to lost profit damages. 35 U.S.C. 284.

2. Whether TruePosition is entitled to injunctive relief. 35 U.S.C. 283.

#### *2. Caselaw and Statutory Law Regarding Remedies.*

**Damages.** "Under *Panduit*, a patentee must show that but for the infringing acts, the patent owner would have made the sales and would have made a certain level of profit. Four elements must be proved: (i) a demand for the patented product; (ii) the absence of an acceptable, non-infringing substitute for the patented product; (iii) the patent owner's manufacturing and marketing capability to exploit the demand for the patented product; and (iv) the amount of profit the patent owner would have expected to make if the patent owner had made the infringer's sales." *SmithKline Diagnostics, Inc. v. Helena Laboratories Corp.*, 926 F.2d 1161, 1165 (Fed. Cir. 1991) (quotations and citations omitted). "Accordingly, a patentee is not entitled to lost profits if the patentee fails to establish any of the above requirements." *Id.* Like the other elements, "the amount of a prevailing party's damages is a finding of fact on which the

plaintiff bears the burden of proof by a preponderance of the evidence." *Id.* at 1164 (quotations and citations omitted).

"[T]o prove that there are no acceptable noninfringing substitutes, the patent owner must show either that (1) the purchasers in the marketplace generally were willing to buy the patented product for its advantages, or (2) the specific purchasers of the infringing product purchased on that basis." *Advanced Med. Optics, Inc. v. Alcon, Inc.*, 361 F.Supp.2d 404, 419 (D. Del. 2005) (quoting *Standard Havens Prods., Inc. v. Gencor Indus.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991).

**Injunctive Relief.** "*eBay Inc. v. MercExchange, L.L.C.*, requires courts to consider the standard four part test for permanent injunctions in patent cases and reverses [the Federal Circuit's] traditional rule that 'courts will issue permanent injunctions against patent infringement absent exceptional circumstances.'" *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1342 (Fed. Cir. 2006) (quoting *MercExchange, L.L.C. v. eBay Inc.*, 401 F.3d 1323, 1339 (Fed. Cir. 2005)). Four factors are analyzed by Courts when deciding the issue of a permanent injunction after *Ebay*:

> (1) whether TruePosition has suffered an irreparable injury;
>
> (2) whether remedies available by law, such as monetary damages, are inadequate to compensate for that injury;
>
> (3) the balance of hardships; and
>
> (4) whether the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 126 S.Ct. 1837, 1839 (2006); *see also Praxair, Inc. v. ATMI, Inc.*, 479 F.Supp.2d 440, 442 (D. Del. 2007) (C. J. Robinson) ("Permanent injunctions in patent cases must be based on a case-by-case assessment of the traditional equitable factors governing injunctions.") (denying permanent injunction); *see also MercExchange, L.L.C. v. eBay, Inc.*, C.A. No. 2:01cv736, 2007 WL 2172587, *8-25 (E.D. Va., July 27, 2007) (denying

8

permanent injunction on remand despite jury verdict of willful infringement where MercExchange had not established irreparable harm, damages at law were an adequate remedy, the balance of hardships favored neither party, and the public interest weighed "slightly against" entry of an injunction) (citing and discussing *Praxair*). "When a charge of contributory infringement is predicated entirely on the sale of an article of commerce that is used by the purchaser [allegedly] to infringe a patent, the public interest in access to that article of commerce is necessarily implicated." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 440-441 (1983). Furthermore, the effect of an injunction on the defendant's customers should be considered. *See Praxair, Inc.*, 479 F.Supp.2d at 443 ("ATMI has presented evidence that an injunction would force its customers…to incur significant costs by shutting down operations…").

## II. ANDREW'S BURDEN OF PROOF.

### A. INVALIDITY OF THE '144 PATENT.

#### 1. Issues.

1. Whether Andrew can show by clear and convincing evidence that the asserted claims of the '144 patent are anticipated by the Kono reference. 35 U.S.C. 102.

2. Whether Andrew can show by clear and convincing evidence that claim 22 is invalid for failure to comply with the definiteness requirement of 35 U.S.C. 112 because there is no structure in the 144 patent specification corresponding and clearly linked to the function of the "database means" limitation of claim 22. 35 U.S.C. 112.

### 2. Caselaw and Statutory Law Regarding Invalidity.

**Anticipation.** Section 102(b) of the Patent Act states that a person shall be entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States." 35 U.S.C. 102(b). However, "a prior art reference may anticipate without disclosing a feature of the claimed invention if that missing characteristic is necessarily present, or inherent, in the single anticipating reference." *SmithKline*, 403 F.3d at 1343. "[A]nticipation does not require actual performance of suggestions in a disclosure. Rather, anticipation only requires that those suggestions be enabling to one of skill in the art." *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378-1381 (Fed. Cir. 2001). In addition, "[w]here, as here, the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results." *MEHL/Biophile Int'l Corp. v. Milgraum*, 192 F.3d 1362, 1366 (Fed. Cir. 1999).

**Indefiniteness.** Under §112(6), a patent claim limitation "may be expressed as a means or step for performing a specified function," and "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. 112(6). Section 112(6) "operates to *cut back* on the type of *means* which could literally satisfy the claim language." *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1580 (Fed. Cir. 1989) (emphases in original).

*Specification must include all structure.* The specification must include all structure that actually performs the recited function. *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1119 (Fed. Cir. 2002). The "corresponding structure" in the specification is the structure clearly linked to the function recited in the claim: "[t]his duty to link or associate structure to function is the *quid pro quo* for the convenience of employing §112, ¶ 6." *Default*

10

*Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc. (d/b/a The Home Depot),* 412 F.3d 1291, 1298 (Fed. Cir. 2005). A structure disclosed in the specification qualifies as "corresponding" structure only if the specification or prosecution history clearly links or associates that structure to the function recited in the claim. *B. Braun Med. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997). When a means-plus-function claim element contains a computer-implemented function, the corresponding structure is the specific algorithm disclosed in the specification that performs the claimed function. *Tehrani v. Hamilton Med., Inc.*, 331 F.3d 1355, 1362 (Fed. Cir. 2003).

<u>*No disclosed structure renders the claim invalid.*</u>  When no such specific structure is disclosed, the claim must be held invalid for indefiniteness. *See Cardiac Pacemakers*, 296 F.3d at 1114 (if "no embodiment discloses corresponding structure, the claim is invalid for failure to satisfy the definiteness requirement of §112, ¶ 2"); *see also Gobeli Research, Ltd. v. Apple Computer Inc.*, 384 F. Supp. 2d 1016, 1023 (E.D. Tex. 2005) ("Failure to provide the algorithm in the specification is fatal to Claim 7 of the Gobeli patent.") (citation omitted).

<u>*Testimony cannot fix absence of structure in specification.*</u>  "Fulfillment of the §112, ¶ 6 tradeoff cannot be satisfied when there is a total omission of structure." *Default Proof Credit Card Sys.*, 412 F.3d at 1298 (citation omitted). "[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification." *Id.* at 1302; *see also Touchcom, Inc. v. Dresser, Inc.*, 427 F. Supp. 2d 730, 736 (E.D. Tex. 2005) ("It is the patentee's burden to clearly link and associate corresponding structure with the claimed function. That one of skill in the art could create structure sufficient to perform a function is not the inquiry.").

**B. FRAUD.**

*1. Issue.*

1. Whether Andrew can show by a preponderance of the evidence that TruePosition is liable for fraud.

*2. Caselaw and Statutory Law Regarding Fraud.*

The elements of fraud are: (i) misrepresentation (false representation, concealment, or nondisclosure); (ii) knowledge of falsity (or 'scienter'); (iii) intent to defraud, i.e., to induce reliance; (iv) justifiable reliance; and (v) resulting damage. *See Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996) (holding that plaintiff stated cause of action for fraudulent inducement).[3]

To support its fraud claim, Andrew need only demonstrate some damage resulting from its reliance on TruePosition's misrepresentations; Andrew does not have to quantify any actual damages to sustain its fraud claim. "The fact of damages is distinct from the issue of actual damages. Fact of damages pertains to the existence of injury, as a predicate to liability; actual damages involve the quantum of injury, and relates to the appropriate measure of individual relief." *Wit Capital Group, Inc. v. Benning*, 897 A.2d 172, 179 (Del. 2006).

---

[3] California is the state with the "most significant relationship" to TruePosition's tortious actions. Therefore, application of California fraud law is appropriate. *See Travelers Indem. Co. v. Lake*, 594 A.2d 38, 46-47 (Del. 1991) (Delaware applies most significant relationship test for both contract and tort cases).

However, the elements of fraud are virtually identical in Delaware and California, so Andrew prevails under either state's law. *See, e.g., Czarnik v. Illumina, Inc.*, 437 F.Supp.2d 252, 259-260 (D. Del. 2006) ("Under Delaware law, the elements of a common law fraud are: 1) a false representation, usually one of fact, made by the defendant; 2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; 3) an intent to induce the plaintiff to act or refrain from acting; 4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and 5) damage to the plaintiff as a result of such reliance."); *In re IBP, Inc. Shareholders Litigation*, 789 A.2d 14, 54 (Del. Ch. 2001) ("Under New York law, the plaintiff must prove fraud by clear and convincing evidence. Under Delaware law, by contrast, the standard is a preponderance.").

C.  **UNFAIR COMPETITION.**

   *1. Issue.*

   1. Whether Andrew can show by a preponderance of the evidence that TruePosition is liable for unfair competition under Cal. Bus. and Prof. Code § 17200 et seq.

   *2. Caselaw and Statutory Law Regarding Unfair Competition under Cal. Bus. and Prof. Code § 17200 et seq.*

The scope of an unfair competition claim under Cal. Bus. and Prof. Code § 17200 *et seq.* "is quite broad" and covers "anything that can properly be called a business practice." *Rambus Inc. v. Infineon Techs., AG*, 326 F. Supp. 2d 721, 727 (E.D. Va. 2004) (applying California unfair competition statute). The Supreme Court of California has explained:

> [T]he unfair competition law's scope is broad....it defines unfair competition to include any unlawful, unfair or fraudulent business act or practice. Its coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law. It governs anti-competitive business practices as well as injuries to consumers, and has as a major purpose the preservation of fair business competition.
> ***
> The statutory language referring to any unlawful, unfair or fraudulent practice makes clear that a practice may be deemed unfair even if not specifically proscribed by some other law. Because Bus. & Prof. Code, § 17200, is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices that are unlawful, or unfair, or fraudulent.

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-540 (quotations and citations omitted) (Cal. 1999). Thus, a party can allege several varieties of unfair competition, including "fraudulent", which requires the relevant public be deceived, and "unfair", which 'means conduct violates the policy or spirit of one of an antitrust law, or otherwise significantly threatens or harms competition. *See id.*

13

"Where the alleged violation of Section 17200 is based on the allegation that a business act or practice is fraudulent, the focal issue is whether the alleged act or practice was likely to cause members of the consuming public to be deceived." *Rambus*, 326 F. Supp. 2d at 727-728 (citing *South Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301, 317 (Cal. Ct. App. 1999)).

Actions can constitute unfair competition if they violate the spirit of the antitrust laws. *see Cel-Tech Commc'ns*, 973 P.2d at 544 ("the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition").

### D. EQUITABLE ESTOPPEL.

#### *1. Issue.*

1. Whether Andrew can show by a preponderance of the evidence that TruePosition is equitably estopped from asserting the '144 patent against Andrew.

#### *2. Caselaw and Statutory Law Regarding Equitable Estoppel.*

The elements of equitable estoppel are: (i) the actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence; (ii) the other relies on that communication: (iii) and the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct. *Rambus, Inc.*, 326 F. Supp. 2d at 733 (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020 (Fed. Cir. 1992)). The application of equitable estoppel "involve[s] factual questions for a jury, *e.g.*, intent to induce reliance, the reasonableness of reliance." *Fini v. Remington Arms Co.*, No. C.A. 97-12-SLR, 1998 WL 299358, *10 (D. Del. May 27, 1998) (C. J.

Robinson). Whether "the infringer [] had a relationship or communication with the [patentee] which lulls the infringer into a sense of security in going ahead with [the infringing activity]" is highly relevant to an equitable estoppel inquiry. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1043 (Fed. Cir. 1992); *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 398 F. Supp. 2d 305, 317 (D. Del. 2005)).

In addition, estoppel is recognized when the standardization process has been abused. *See Stambler v. Diebold, Inc.*, No. 85 CV 3014, 1988 WL 95479 (E.D.N.Y. Sept. 2, 1988) ("plaintiff's silence was intentionally misleading" where it was "well known to plaintiff and throughout the industry that the same provisions the plaintiff [wa]s relying on for infringement were being contemplated as national and international standards," where plaintiff sat on a "standards committee after concluding that the proposed [] standards infringed his patent," and where plaintiff did not notify the standards committee of its patent); *Potter Instrument Co., Inc. v. Storage Tech. Corp.*, 207 U.S.P.Q. 763, 769, 1980 WL 30330 (E.D. Va. May 25, 1980) ("Equity will rarely, if ever, permit one to waive by acquiescence its alleged patent rights, for a long period of time and attempt to assert them after they have been adopted as the industry standard."); *see also Rambus, Inc.*, 326 F.Supp.2d at 733-739.

E.    **IMPLIED LICENSE.**

   *1. Issue.*

      1. Whether Andrew can show by a preponderance of the evidence that Andrew has an implied license to the '144 patent by virtue of TruePosition's conduct or acquiescence.

      2. Whether TruePosition is estopped from asserting the '144 patent against Andrew due to the implied license.

### 2. *Caselaw and Statutory Law Regarding Implied License.*

"An implied license signifies a patentee's waiver of the statutory right to exclude others from making, using, selling, offering to sell, or importing the patented invention." *Tenneco Automotive Operating Co. v. Visteon Corp.*, 375 F. Supp. 2d 375, 383-384 (D. Del. 2005) (C.J. Robinson) (quoting *Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1580 (Fed. Cir. 1997). Whether an implied license exists is a question of law reviewed *de novo*. *Wang Labs., Inc.*, 103 F.3d at 1581.

"Courts generally have first looked for facts which give rise to an estoppel in the process of concluding that there is an implied license." *Id.* at 1580. "The Federal Circuit has recognized implied licenses through: (1) equitable estoppel; (2) legal estoppel; (3) acquiescence; and (4) conduct." *Tenneco Automotive Operating Co.*, 375 F. Supp. 2d at 384 (citing *Wang Labs., Inc.*, 103 F.3d at 1580). "These labels describe not different kinds of licenses, but rather different categories of conduct, which lead to the same conclusion: an implied license." *Id.* (citing *Wang Labs., Inc.*, 103 F.3d at 1580).

However, "[n]either [the Federal Circuit] nor the Supreme Court [] has required a formal finding of equitable estoppel as a prerequisite to a legal conclusion of implied license" because "[t]o do so would remove all distinction between the doctrines." *Wang Labs., Inc.*, 103 F.3d at 1581. "Rather the estoppel doctrines serve as guidelines." *Id.* Moreover, "[n]o formal granting of a license is necessary in order to give it effect. Any language used by the owner of the patent, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the patent in making or using it, or selling it, upon which the other acts, constitutes a license and a defense to an action for a tort." *Id.* at 1580.

"A defendant establishes a defense of implied license through conduct by showing that: (1) a relationship existed between plaintiff and defendant; (2) within that relationship, plaintiff

granted defendant a right to use plaintiff's patents; (3) plaintiff received valuable consideration for the grant of right; (4) plaintiff's statements and conduct created the impression that plaintiff consented to defendant's use of plaintiff's patents; (5) plaintiff denied that defendant had an implied license." *Tenneco Automotive Operating Co.*, 375 F. Supp. 2d at 384 (citing *Wang Labs., Inc.*, 103 F.3d at 1579).

An implied license gives rise to estoppel. *See Glass Equip. Dev.t, Inc. v. Besten, Inc.*, 174 F.3d 1337, 1341 (Fed. Cir. 1999) ("Besten correctly asserts that if Simonton did have an implied license under the '582 patent to assemble spacer frames by the methods claimed therein, GED would be estopped from maintaining a suit against Simonton for infringement and Besten could not be liable for inducing Simonton to infringe.") (citing *DeForest Radio Tel. & Tel. Co. v. United States,* 273 U.S. 236, 241 (1927) (holding existence of license, even if implied, to be complete defense to action for infringement)).

### F.    PROMISSORY ESTOPPEL.

#### 1. Issue.

1. Whether Andrew can show by clear and convincing evidence that TruePosition is promissorily estopped from trying to enjoin Andrew from providing standardized UTDOA geolocation services.

#### 2. Caselaw and Statutory Law Regarding Promissory Estoppel.

The elements of promissory estoppel are: (i) a promise; (ii) with intent; (iii) to induce action or forbearance based on the promise; (iv) reasonable reliance; and (v) injury. *Phillips v. Phillips v. DaimlerChrysler Corp.*, No. Civ.A. 01-247-JJF, 2003 WL 22939481, *9 (D. Del. Mar. 27, 2003), *aff'd*, 112 Fed. Appx. 867 (3d Cir. 2004); *Brooks v. Fiore*, No. 00-803 GMS, 2001 WL 1218448, *5 (D. Del. Oct. 11, 2001), aff'd, 53 Fed. Appx. 662 (3d Cir. 2002).

Distinguishing a promise from a non-promise must be done through a reasonable interpretation of the parties' expressions in light of the surrounding circumstances. *Christiana Marine Serv. Corp. v. Texaco Fuel & Marine Mktg*, No. Civ.A. 98C-02-217WCC, 2004 WL 42611, *3 (Del. Super. Ct. Jan. 8, 2004). Whether a promise was made is a question of fact to be determined by the jury. *Id.* at *3. To constitute a promise, a statement must not be amorphous. *See Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000) (reversing dismissal of a promissory estoppel employment claim, finding that the promises were not "too 'amorphous'" to support a claim). Even an oral promise can be sufficient to create a promissory estoppel. *See id.* Lastly, an entire course of action can give rise to a promise. *See Ramone v. Lang,* No. Civ.A. 1592-N, 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006) (the sum of representations can constitute a promise).