# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**TruePosition, Inc.,**                          )
                                                 )
    **Plaintiff/**                           )
    **Counterclaim-Defendant,**              )
                                                 )    **Civil Action No. 05-747-SLR**
        **v.**                     )
                                                 )
**Andrew Corporation,**                          )
                                                 )
    **Defendant/**                           )
    **Counterclaim-Plaintiff.**              )
_____)

## PROPOSED FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

## FINAL INSTRUCTIONS

1.      Introduction (Agreed Upon Instruction) ..................................................... 1

2.      Jurors' Duties (Agreed Upon Instruction) ................................................... 2

3.      Burdens of Proof (TruePosition's Proposed Instruction) .............................. 3

3.      Burdens of Proof (Andrew's Proposed Instruction) .................................... 5

4.      Evidence Defined (Agreed Upon Instruction) ............................................. 7

5.      Consideration of Evidence (Agreed Upon Instruction) ................................ 9

6.      Direct and Circumstantial Evidence (Agreed Upon Instruction) ................. 10

7.      Credibility of Witnesses (Agreed Upon Instruction)................................... 11

8.      Number of Witnesses (Agreed Upon Instruction) ...................................... 13

9.      Expert Witnesses (Agreed Upon Instruction) ............................................ 14

10.     Deposition Testimony (Agreed Upon Instruction) ...................................... 15

11.     The Parties and Their Contentions (Agreed Upon Instruction) .................. 16

        11.1 The Parties (Agreed Upon Instruction) ............................................ 17

        11.2 The Parties' Contentions (Agreed Upon Instruction) ....................... 18

12.     The Patent Laws (Agreed Upon Instruction) ............................................. 19

13.     The Claims of the Patents In Suit (Agreed Upon Instruction) .................... 20

        13.1 Construction of the Claims (Agreed Upon Instruction) .................... 21

        13.2    Means-Plus-Function    Claim    Limitations    (TruePosition's    Proposed
                Instruction) ................................................................................. 22

        13.2 Means-Plus-Function Claim Limitations (Andrew's Proposed Instruction)...... 24

        13.3 "Comprising" Claims (Agreed Upon Instruction)............................. 25

        13.4 Limitations of the Claims at Issue (Agreed Upon Instruction) ......... 26

ii

14.   Patent Infringement Generally (TruePosition's Proposed Instruction) ...................... 29

14.   Patent Infringement Generally (Andrew's Proposed Instruction) ............................. 31

      14.1  Direct Infringement (TruePosition's Proposed Instruction) .............................. 33

      14.1  Direct Infringement (Andrew's Proposed Instruction) ..................................... 34

      14.2  Infringement Every Claim Limitation Must Be Present Either Literally
            or Under the Doctrine of Equivalents (Agreed Upon Instruction) ................ 35

      14.3  Infringement Through the Supply of Components From the United
            States to a Foreign Country  (Under 35 U.S.C. § 271(f))
            (TruePosition's Proposed Instruction) .......................................................... 37

      14.3  Infringement Through the Supply of Components From the United
            States to a Foreign Country  (Under 35 U.S.C. § 271(f))  (Andrew's
            Proposed Instruction) .................................................................................. 38

      14.4  Inducing Infringement Under 35 U.S.C. § 271(f)(1) (Agreed Upon
            Instruction) .................................................................................................. 39

      14.5  Contributory Infringement Under 35 U.S.C. § 271(f)(2) (TruePosition's
            Proposed Instruction) .................................................................................. 40

      14.5  Contributory Infringement Under 35 U.S.C. § 271(f)(2) (Andrew's
            Proposed Instruction) .................................................................................. 41

      14.6  Infringement – Mean-Plus-Function Claim Limitations (TruePosition's
            Proposed Instruction) .................................................................................. 43

      14.6  Infringement – Mean-Plus-Function Claim Limitations (Andrew's
            Proposed Instruction) .................................................................................. 47

      14.7  Determination of Infringement(TruePosition's Proposed Instruction) ............. 49

      14.7  Determination of Infringement(Andrew's Proposed Instruction) ..................... 51

15.   Willful Infringement (TruePosition's Proposed Instruction) ..................................... 52

15.   Willful Infringement (Andrew's Proposed Instruction) ............................................ 54

16.   Fraud (Andrew's Proposed Instruction) .................................................................. 57

16.   Fraud (TruePosition's Proposed Instruction) ........................................................... 58

16.1  Fraud – Misrepresentation or Omission (Andrew's Proposed Instruction) ....... 59

16.1  Fraud – Misrepresentation or Omission (TruePosition's Proposed
      Instruction) .................................................................................... 60

16.2  Fraud – Misrepresentation or Omission  Made Knowingly Or With
      Reckless Disregard for the Truth (Andrew's Proposed Instruction) ............. 62

16.2  Fraud – Misrepresentation or Omission  Made Knowingly Or With
      Reckless Disregard for the Truth (TruePosition's Proposed Instruction) ....... 63

16.3  Fraud – Intent to Mislead (Andrew's Proposed Instruction) ........................... 64

16.3  Fraud – Intent to Mislead (TruePosition's Proposed Instruction) .................... 65

16.4   Fraud – Andrew's Reliance (Andrew's Proposed Instruction) ....................... 66

16.4   Fraud – Andrew's Reliance (TruePosition's Proposed Instruction) ............... 67

16.5  Fraud – Damages (Agreed Upon Instruction) .................................................. 68

17.  Promissory Estoppel (Andrew's Proposed Instruction) ............................................ 69

17.  Promissory Estoppel (TruePositions's Proposed Instruction) ................................... 71

17.1  Promissory Estoppel- The Promise (Andrew's Proposed Instruction) ............. 73

17.1  Promissory Estoppel- The Promise (TruePosition's  Proposed
      Instruction) .................................................................................... 74

18.  Use or Manufacture For The United States (Andrew's Proposed Instruction) ............ 75

18.  Use or Manufacture For The United States (TruePosition's Proposed
Instruction) ............................................................................................................. 76

19.  Damages (TruePosition's Proposed Instruction) ...................................................... 77

19.  Damages (Andrew's Proposed Instruction) ............................................................. 78

19.1  Compensatory Damages in  General (Agreed Upon Instruction) .................... 79

19.2  Damages–Burden of Proof (Agreed Upon Instruction) .................................. 80

19.3  Damages–Lost Profits (TruePosition's Proposed Instruction) ......................... 81

19.3  Damages–Lost Profits (Andrews's Proposed Instruction) ............................... 82

19.4  Lost Profits From Lost Sales – "But For" Test (TruePosition's Proposed Instruction) ...................................................................... 83

19.4  Lost Profits From Lost Sales – "But For" Test (Andrew's Proposed Instruction ...................................................................... 84

19.5  Damages–Lost Profits Factors (Agreed Upon Instruction)............................. 85

19.6  Lost Profits – Two-Supplier Market  (TruePosition's Proposed Instruction) ...................................................................... 86

19.6  Lost Profits – Two-Supplier Market (Andrew's Proposed Instruction) ........... 87

19.7  Manufacturing and Marketing Capability (TruePosition's Proposed Instruction) ...................................................................... 88

19.7  Manufacturing and Marketing Capability (Andrew's Proposed Instruction) ...................................................................... 89

19.8  Lost Profits – Demand (TruePosition's Proposed Instruction) ........................ 90

19.8  Lost Profits – Demand (Andrew's Proposed Instruction) ............................... 91

19.9  Lost Profits – Acceptable Non-Infringing Substitutes (TruePosition's Proposed Instruction) ...................................................................... 92

19.9  Lost Profits – Acceptable Non-Infringing Substitutes (Andrew's Proposed Instruction) ...................................................................... 94

19.10  Amount of Lost Profits (Agreed Upon Instruction) ....................................... 95

20.  Deliberation and Verdict ......................................................................... 96

20.1  Introduction (Agreed Upon Instruction) ......................................................... 96

20.2  Unanimous Verdict (Agreed Upon Instruction) .............................................. 97

20.3  Duty to Deliberate (Agreed Upon Instruction) ............................................... 98

20.4  Court Has No Opinion (Agreed Upon Instruction) ....................................... 100

## FINAL INSTRUCTIONS

### 1.    INTRODUCTION (AGREED UPON INSTRUCTION)

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case.  I will start by explaining your duties and the general rules that apply in every civil case.  Then I will explain some rules that you must use in evaluating particular testimony and evidence.  Then I will explain the positions of the parties and the law you will apply in this case.  Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return.  Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

## 2.     JURORS' DUTIES (AGREED UPON INSTRUCTION)

You have two main duties as jurors.  The first one is to decide what the facts are from the evidence that you saw and heard here in court.  Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

### 3.    BURDENS OF PROOF (TRUEPOSITION'S PROPOSED INSTRUCTION)

This is a civil case in which TruePosition is alleging that Andrew is infringing

TruePosition's patent, and in which Andrew is asserting that it does not infringe.

TruePosition has the burden of proving patent infringement by what is called a

preponderance of the evidence.  That means that TruePosition has to produce evidence

which, when considered in light of all of the facts, leads you to believe that what

TruePosition asserts is more likely true than not.  To put it differently, if you were to put

the evidence of TruePosition and Andrew on opposite sides of a scale, the evidence

supporting TruePosition's claims would have to make the scales tip somewhat on

TruePosition's side for your verdict to be for TruePosition.

If TruePosition fails to meet its burden for a particular patent claim, your verdict

must be for Andrew on that patent claim.

TruePosition is also alleging that Andrew's infringement was willful.

TruePosition has the burden of proving willful infringement by clear and convincing

evidence.  Clear and convincing evidence is evidence that produces an abiding conviction

that the truth of a factual contention is highly probable.  Proof by clear and convincing

evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

If TruePosition fails to meet its burden for its willfulness claim, then your verdict

must be for Andrew on that claim.

In this case, Andrew is contending that TruePosition committed fraud.  Andrew

has the burden of proving fraud by a preponderance of the evidence.  Andrew also

contends that TruePosition made certain promises to Andrew that now should prevent

TruePosition from asserting its 144 patent against Andrew.  Andrew has the burden of

proving this claim, promissory estoppel, by the clear and convincing evidence standard.

If Andrew fails to meet its burden for its fraud or promissory estoppel claims, your verdict must be for TruePosition on that claim.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and you should, therefore, put it out of your mind.


**TruePosition's Authority**

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR.

### 3.    BURDENS OF PROOF (ANDREW'S PROPOSED INSTRUCTION)

This is a civil case in which TruePosition is alleging that Andrew is infringing

TruePosition's patent, and in which Andrew is asserting that it does not infringe.

TruePosition has the burden of proving patent infringement by what is called a

preponderance of the evidence.  That means that TruePosition has to produce evidence

which, when considered in light of all of the facts, leads you to believe that what

TruePosition asserts is more likely true than not.  To put it differently, if you were to put

the evidence of TruePosition and Andrew on opposite sides of a scale, the evidence

supporting TruePosition's claims would have to make the scales tip somewhat on

TruePosition's side for your verdict to be for TruePosition.

TruePosition is also alleging that Andrew's infringement was willful.

TruePosition has the burden of proving willful infringement by clear and convincing

evidence.  Clear and convincing evidence is evidence that produces an abiding conviction

that the truth of a factual contention is highly probable.  Proof by clear and convincing

evidence, therefore, is a higher burden than proof by a preponderance of the evidence.

If TruePosition fails to meet its burden for a particular claim, your verdict must be

for Andrew on that claim.

In this case, Andrew is contending that TruePosition committed fraud.  Andrew

has the burden of proving fraud by a preponderance of the evidence.  Andrew also

contends that TruePosition made certain promises to Andrew that now should prevent

TruePosition from asserting its 144 patent against Andrew.  Andrew has the burden of

proving this claim, promissory estoppel, by the clear and convincing evidence standard.

If Andrew fails to meet its burden for a particular claim, your verdict must be for

TruePosition on that claim.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.  That requirement is the highest burden of proof.  It does not apply to civil cases and you should, therefore, put it out of your mind.

**4.    EVIDENCE DEFINED (AGREED UPON INSTRUCTION)**

You must make your decision based only on the evidence that you saw and heard here in the courtroom.  Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.  The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, any facts that the parties agreed to by stipulation, and any facts that I have judicially noticed.

Nothing else is evidence.  The lawyers' statements and arguments are not evidence.  Their questions and objections are not evidence.  My legal rulings are not evidence.  None of my comments or questions are evidence.  The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses.  Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked or I may have struck things from the record.  I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.  I may have ordered you to disregard things that you saw or heard.  You must completely ignore all of these things.  Do not even think about them.  Do not speculate about what a witness might have said or what an exhibit might have shown.  These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

5.      **CONSIDERATION OF EVIDENCE (AGREED UPON INSTRUCTION)**

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 6.     DIRECT AND CIRCUMSTANTIAL EVIDENCE (AGREED UPON INSTRUCTION)

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact. If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

### 7.    CREDIBILITY OF WITNESSES (AGREED UPON INSTRUCTION)

You, the jurors, are the sole judges of the credibility, or the believability, of the witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every matter of evidence which tends to show whether he or she is worthy of belief. Consider each witness's intelligence, motive, and state of mind, as well as his or her demeanor while on the stand. Consider the witness's ability to observe the matters as to which he or she has testified and whether he or she impresses you as having an accurate recollection of these matters. Consider also any relation each witness may bear to each side of the case, the manner in which each witness might be affected by the verdict, the interest any witness may have in the verdict, and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you to discredit such testimony. Two or more persons witnessing an incident or transaction may see or hear it differently. Likewise, in determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something or failed to say or do something that was different, or inconsistent, from the testimony that he or she gave during the trial. It is the province of the jury to determine whether a false statement or a prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider

- 11 -

whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### 8.    NUMBER OF WITNESSES (AGREED UPON INSTRUCTION)

One more point about the witnesses. Sometimes jurors wonder if the number of witnesses who testified makes any difference. Do not make any decisions based only on the number of witnesses who testified. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves. Concentrate on that, not the numbers.

## 9.     EXPERT WITNESSES (AGREED UPON INSTRUCTION)

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field is permitted to state his or her opinion on those technical or financial matters – that person is called an expert witness.  However, you are not required to accept that opinion.  As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.  If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

### 10.    DEPOSITION TESTIMONY (AGREED UPON INSTRUCTION)

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape.  This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.  Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 11.    THE PARTIES AND THEIR CONTENTIONS (AGREED UPON INSTRUCTION)

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

### 11.1    THE PARTIES (AGREED UPON INSTRUCTION)

The plaintiff in this case is TruePosition, Inc.  The defendant is Andrew Corporation.

I will refer to the plaintiff as "TruePosition."  I will refer to the defendant as "Andrew."

**11.2    THE PARTIES' CONTENTIONS (AGREED UPON INSTRUCTION)**

TruePosition contends that Andrew is directly infringing its 144 patent by making, using, selling, and offering for sale Geometrix. TruePosition also contends that Andrew is infringing its 144 patent by supplying components of Geometrix from the United States to a foreign country. TruePosition contends that it is entitled to damages caused by Andrew's alleged infringement. TruePosition also contends that Andrew's infringement of the 144 patent is knowing and willful.

Andrew contends that TruePosition committed fraud against Andrew. Andrew also contends that TruePosition is barred from asserting the 144 patent against Andrew due to promises TruePosition made.

First I will explain the asserted claims of the 144 patent and the meaning of certain claim terms in dispute.

## 12.    THE PATENT LAWS (AGREED UPON INSTRUCTION)

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

### 13.    THE CLAIMS OF THE PATENTS IN SUIT (AGREED UPON INSTRUCTION)

As you heard at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.  The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.  Claims may describe products or methods or for making or using a product.

Claims are usually divided into parts, called "limitations."  For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.  The tabletop, legs and glue are each a separate limitation of the claim.

**13.1     CONSTRUCTION OF THE CLAIMS (AGREED UPON INSTRUCTION)**

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

**13.2    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (TRUEPOSITION'S PROPOSED INSTRUCTION)**

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function. For example, let's again take the table example, with a patent that describes a table in which the legs are glued to the tabletop. One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop." This second type of claim limitation is called a "means-plus-function" limitation. It describes a means for performing the function of securing the legs to the tabletop – that is, a way to do it – rather than reciting the glue itself.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures. The individual components, if any, of an overall structure described in the patent specification that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure described in the patent specification corresponding to the claimed function. This is why structures with different parts or numbers of parts may still be considered equivalent for purposes of determining whether Andrew infringes.

In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

**TruePosition's Authority**

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 6; *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-32 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000) ("the individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function"); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc  v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. 1999); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

### 13.2    MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (ANDREW'S PROPOSED INSTRUCTION)

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.  For example, let's again take the table example, with a patent that describes a table in which the legs are glued to the tabletop.  One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop. Another way to claim the table is to recite the tabletop and the legs, but, rather than recite the glue, recite a "means for securing the legs to the tabletop."  This second type of claim limitation is called a "means-plus-function" limitation.  It describes a means for performing the function of securing the legs to the tabletop – that is, a way to do it – rather than reciting the glue itself.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.

In our example, the claim covers a table using glue to secure the legs to the tabletop, as described in the patent, and any equivalent structure that performs the function of securing the legs to the tabletop.

<u>**Andrew's Authority**</u>
Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 6; *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429-32 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir. 1999); *WMS Gaming Inc v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed. Cir. , 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir. 1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

### 13.3    "COMPRISING" CLAIMS (AGREED UPON INSTRUCTION)

The beginning, or preamble, portion of a claim often uses the word "comprising." In the patent context, "comprising" means "including" or "containing." A product claim that uses the word "comprising" or "comprises" is not limited to products that have only the elements recited in the claim, but can also cover products that have more elements than what is included in the claims. Likewise, a method claim that uses the term "comprising" or "comprises" can cover methods that include more steps than what is listed in the claim.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

### 13.4    LIMITATIONS OF THE CLAIMS AT ISSUE (AGREED UPON INSTRUCTION)

To decide the question of infringement, you must first understand what the claims of the patent cover.  It is my duty under the law to define what the patent claims mean.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term.  I instruct you that the following claim terms have the following definitions:

**Prescribed set of reverse control channels**:  A predetermined range of frequencies that transmit control information in only one direction, from a cellular telephone to a cell site.

**Periodic** and **periodically**:  Discontinuously

**Timing signal**:  Signal that conveys timing information

**Time stamp bits representing the time at which said cellular telephone signals were received**:  Binary units representing the time when cellular telephone signals were received at the cell site.

**Means for processing said frames of data from said cell site systems to generate a table identifying cellular telephone signals and the differences in times of arrival of said cellular telephone signals among said cell site systems**:  The function of the disclosed structure is to analyze the cellular telephone signals in order to generate a table that identifies the differences in times of arrival of said signals.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-56 (ending with the acronym "TDOA"); Fig. 7 at the first four blocks and table; col. 17, ll. 26-68 (minus any reference to "frequency difference data" or

"frequency difference results"); and Figs. 8A-8B (minus any reference to "frequency differences"); or equivalents of such a computer processor.

**Means for determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals**:  The function of the disclosed structure is to determine, on the basis of time of arrival differences, the location of the cellular telephones whose signals are received.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, l. 58 (beginning with the word "This") through col. 13, l. 62 (ending with the letter "C"); Fig. 7 at the fifth and sixth blocks; col. 18, ll. 1-34 (ending with "0.0001," but minus any reference to "frequencies"); and Fig. 8C through top four elements of Fig. 8D (minus any reference to "frequencies"); or equivalents of such a computer processor.

**Locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions**:  The function of the disclosed structure is to determine, without a specific request to do so, the locations of cellular telephones by receiving and analyzing the signals that the cellular telephones broadcast periodically over the reverse control channel.  The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-62 (ending with the letter "C"); Fig. 7 at the first six blocks and table; col. 17, l. 26 – col. 18, l. 34 (ending with "0.0001," but minus any reference to "frequency difference data," "frequency difference results," or "frequencies"); and Figs 8A through the top four elements of Fig.

8D (minus any reference to "frequency difference" or "frequencies"); or equivalents of such a computer processor.

**Database means for storing location data identifying the cellular telephone and their respective location, and for providing means to said database to subscribers at remote locations**:  The function of the disclosed structure is to store data that identifies each cellular telephone and its respective location, and for providing access to said data to subscribers at remote locations.  The means of the proposed structure is the combination of the "database 20" and: (a) the "first terminal 22 coupled via a modem . . . and telephone line to the database 20" (col. 9, ll. 25-27; Fig. 2 at blocks 20, 22); or (b) the "second terminal 24 in radio communication with the database 20" (col. 9, ll. 27-29; Fig. 2 at blocks 20, 24); or (c) the "third, handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communications with the database" (col. 9, ll. 29-31; Fig. 2 at blocks 20, 26); or equivalents of any such combination.

<u>Authority</u>

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR; Memorandum Order, D.I. 257.

## INFRINGEMENT

### 14.    PATENT INFRINGEMENT – GENERALLY (TRUEPOSITION'S PROPOSED INSTRUCTION)

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells, offers to sell or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."  In this case, TruePosition alleges that Andrew's Geometrix directly infringes claims 1, 22 and 31 of the 144 patent, directed to cellular telephone location systems and methods of determining the location of cellular telephones.

In addition to direct infringement, there are two types of indirect infringement that may occur when components of a system or method are supplied from the United States to a foreign country – inducing infringement and contributory infringement.  TruePosition also accuses Andrew of inducing or contributing to the infringement of claims 1, 22 and 31 of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

TruePosition must prove infringement and inducement or contributory infringement by a preponderance of the evidence.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to the accused systems and methods, and determine whether or not there is infringement.  You should not compare the accused systems and methods with any specific example in the patent or with TruePosition's product or method.  The only

correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

## TruePosition's Authority

Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. §§ 271-281; *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

**14    PATENT INFRINGEMENT – GENERALLY (ANDREW'S PROPOSED INSTRUCTION)**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.  If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.  This type of infringement is called "direct infringement."  In this case, TruePosition alleges that Andrew's Geometrix directly infringes claims 1, 22 and 31 of the 144 patent.

In addition to direct infringement, there are two types of indirect infringement that may occur when components of a system or method are supplied from the United States to a foreign country – inducing infringement and contributory infringement. TruePosition also accuses Andrew of inducing or contributing to the infringement of claims 1, 22 and 31 of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

TruePosition must prove infringement and inducement or contributory infringement by a preponderance of the evidence.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare each of the patent claims, as I have defined them, to the accused systems and methods, and determine whether or not there is infringement.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

**Andrew's Authority**

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm - 8.1 - Patent Infringement Generally - Direct Infringement (citing 35 U.S.C. §§ 271-281 (1984 & Supp. 2000); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993); *Atlantic Thermoplastics Co. v. Faytex Corp.*, 974 F.2d 1299, 1300 (Fed. Cir. 1992); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed. Cir. 1985).

### 14.1    DIRECT INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

As I have just explained, you must decide whether or not TruePosition has proved by a preponderance of the evidence that Andrew has made, used, sold, or offered for sale a product or method covered by any of the claims at issue in this case.  If Andrew infringes one claim, then Andrew infringes the 144 patent.  Whether or not Andrew knew it was infringing does not matter.  Andrew is a direct infringer of the 144 patent even if, in good faith, it believes that Geometrix does not infringe the 144 patent.  Andrew's knowledge or intent to infringe is not relevant.

### TruePosition's Authority

Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR;  Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

### 14.1   DIRECT INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)

TruePosition alleges that Andrew's Geometrix system directly infringes claims 1, 22, and 31 of the 144 patent.  You must decide whether or not TruePosition has proved by the preponderance of the evidence that Andrew has sold in the United States or offered for sale from the United States a product or method covered by any of the claims at issue in this case.

**<u>Andrew's Authority</u>**
Adapted from Charge to the Jury, *IMX, Inc. v. Lendingtree, LLC*, C.A. No. 03-1067-SLR; Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at <u>http://www.ded.uscourts.gov/MPTmain.htm</u>; 35 U.S.C. § 271(a); *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 36 (1997); *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1330 (Fed. Cir. 2001); *Intel Corp. v. United States Int'l Trade Comm'n*, 946 F.2d 821, 832 (Fed. Cir. 1991).

**14.2    INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT,
EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS
(AGREED UPON INSTRUCTION)**

In order to infringe a patent claim, a system or method must include every

limitation of the claim.  If Geometrix omits even a single limitation recited in a claim,

then you must find that Andrew has not directly infringed that claim.  If the combination

consisting of Geometrix and Saudi Telecom's cellular network omits even a single

limitation recited in a claim, then you must find that Andrew has not indirectly infringed

that claim.  You must consider each claim of each patent separately.

A claim limitation may be present in an accused system or method in one of two

ways, either literally or under what is known as the doctrine of equivalents.  A claim

limitation is literally present if it exists in the accused system or method exactly as it is

described in the claim language, either as I have explained that language to you or, if I

did not explain it, as you understand its ordinary meaning.

Proof of infringement under the doctrine of equivalents requires a showing that

the differences between the claimed invention and the accused system or method are

insubstantial.  One way to determine this is to look at whether or not the accused system

or method performs substantially the same function as the  claim limitation in

substantially the same way to obtain substantially the same result as the claimed

limitation.  Another way is to consider whether or not people of ordinary skill in the field

of the invention believe that the structure or method of the accused system and the

structure or method recited in the patent claim limitation are interchangeable.  A person

of ordinary skill is a person with average education and training in the field.

Equivalence is determined at the time of the activities accused of infringement,

and not by what was known at the time the patent application was filed or when the

patent issued.  Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims.  Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be equivalent for doctrine of equivalents purposes.

**14.3    INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES TO A FOREIGN COUNTRY (UNDER 35 U.S.C. §271(f)) (TRUEPOSITION'S PROPOSED INSTRUCTION)**

As I have told you, in addition to direct infringement, there are two types of indirect infringement that may occur when the components of a product or method are shipped outside of the United States -- inducing infringement and contributory infringement.  In this case, TruePosition contends that Andrew has induced or contributed to the infringement of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.  As I told you before, keep in mind that components are not limited to parts of a patented system, but may also be parts that perform steps in a patented method.

**TruePosition's Authority**

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

**14.3    INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES TO A FOREIGN COUNTRY (UNDER 35 U.S.C. §271(f)) (ANDREW'S PROPOSED INSTRUCTION)**

As I have told you, in addition to direct infringement, there are two types of indirect infringement that may occur when the components of a product or method are shipped outside of the United States -- inducing infringement and contributory infringement.  In this case, TruePosition contends that Andrew has induced or contributed to the infringement of the 144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

**Andrew's Authority**

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.4    INDUCING PATENT INFRINGEMENT UNDER 35 U.S.C. §271(f)(1) (AGREED UPON INSTRUCTION)

A person induces patent infringement if he or she urges, encourages or purposefully causes someone to infringe a patent.  Inducing infringement cannot occur unintentionally.

In order to prove Andrew induced infringement of the 144 patent, TruePosition must prove five things by the preponderance of the evidence:

(1) Andrew knew about the 144 patent; and

(2) Andrew shipped components of Geometrix to Saudi Arabia; and

(3) The components of Geometrix that Andrew shipped to Saudi Arabia constitute all or a substantial portion of the claimed invention; and

(4) That Andrew knew or should have known that those components would be assembled into a product that would infringe; and

(5) That Andrew specifically intended for the infringement to occur.

If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew induced patent infringement.  However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not induce patent infringement.


Authority

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

**14.5    CONTRIBUTORY INFRINGEMENT UNDER 35 U.S.C. §271(f)(2) (TRUPOSITION'S PROPOSED INSTRUCTION)**

Contributory infringement can occur when a supplier provides a component for use in a patented system or method.  In order to establish that Andrew is liable for contributory infringement of a claim, TruePosition must show, by a preponderance of evidence, that:

(1)    Andrew supplied at least one component of at least one claim of the 144 Patent from the United States to a place outside of the United States; and

(2)    Andrew is aware that the substantial use of the component is in the system or method covered by the claim of the patent; and

(3)    Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.

**TruePosition's Authority**

35 U.S.C. § 271(f); *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Eolas Tech. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1339 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.5    CONTRIBUTORY INFRINGEMENT UNDER 35 U.S.C. §271(f)(2) (ANDREW'S PROPOSED INSTRUCTION)

Contributory infringement can occur when a supplier provides a component for use in a patented system or method where that component is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use.  TruePosition asserts that Andrew's selling or supplying of Geometrix components to Saudi Arabia is a contributory infringement of the asserted claims.  In order to establish that Andrew has contributorily infringed the asserted claims, TruePosition must prove five things by the preponderance of the evidence:

(1)     Andrew knew of the 144 patent; and

(2)     Andrew supplied at least one component of at least one claim of the 144 Patent from the United States to a place outside of the United States; and

(3)     Andrew knew that the component was especially made for a use that would infringe the 144 patent; and

(4)     The component was not a staple or commodity article; and

(5)     Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.

If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew contributed to patent infringement.  However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not contribute to patent infringement.

**Andrew's Authority**

*Asyst Techs., Inc. v. Empak, Inc.*, 2007 WL 622269, Case No. 98020451-JF (N.D. Cal. Jan. 29, 2007) (Joint Proposed Post-Trial Jury Instructions) citing 35 U.S.C. § 271(f)(2); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964) (to satisfy the knowledge requirement, a patentee must prove "that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing."); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F. 3d 1246, 1250 n.2 (Fed. Cir. 2000) (offers to sell do not constitute acts of infringement under 271 (f)); *Trell v. Marlee Elecs. Corp.*, 912 F.2d 1443, 1448 (Fed. Cir. 1990) (the accused infringer must have knowledge of the patent); *Preemption Devices, Inc. v. Minn. Mining & Mfg. Co.*, 803 F.2d 1170, 1174 (Fed. Cir. 1986).

### 14.6    INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (TRUEPOSITION'S PROPOSED INSTRUCTION)

As I told you, a means-plus-function claim limitation recites a means for performing a particular function rather than reciting a specific structure or device.  A means-plus-function limitation may be present in an accused system literally or under the doctrine of equivalents.

To prove that an accused system includes a structure that is literally covered by a means-plus-function limitation, TruePosition must show, first, that Geometrix contains a structure that performs the identical function recited in the means-plus-function limitation.  Second, TruePosition must show that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

TruePosition may also show that Geometrix infringes the means-plus-function limitations under the doctrine of equivalents.  Under the doctrine of equivalents, TruePosition must show that Geometrix contains a structure that performs a function that is either identical or equivalent to the function recited in the claim limitation.  TruePosition must also show that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

The individual components, if any, of an overall structure described in the patent specification that corresponds to the claimed function are not claim limitations.  Rather, the claim limitation is the overall structure described in the patent specification corresponding to the claimed function.  This is why structures with different parts or

numbers of parts may still be considered equivalent for purposes of determining whether Andrew infringes.

Whether or not the structure or function of Geometrix is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art. A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

To better understand means-plus-function claim limitations, let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The function is "securing the legs to the tabletop." To determine the structure that performs this function, we look to the description in the patent. The patent in our example discloses glue to secure the legs to the tabletop. So, "glue" is the structure that performs the function of "securing the legs to the tabletop."

Let's assume that the accused device uses nails instead of glue to perform the function of "securing the legs to the tabletop." The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, and so on. If the glue is not considered important or those skilled in the art considered nails and glue to be interchangeable or if the patent or

prosecution history referred to nails and glue as interchangeable, then glue and nails are equivalent.

To give another example more specific to the issues in this case, let's assume that a claim requires, "means for determining the location of a phone." Here, the claimed function is "determining the location of a phone." Let's also assume that the patent specification describes a computer programmed to perform a process consisting of two steps to determine the location of the phone. So, the overall structure for performing the function of the claim is the computer that is programmed to execute this process.

In order for a system to meet this limitation, the system must include a structure that is the same, or equivalent to, the computer that is programmed to execute that process. To continue with our example, let's assume that the first of the two steps of the process described in the patent specification is that the computer receives information from the phone. The second step of the process is that the computer uses the phone information to calculate a latitude and longitude. To determine whether the accused system infringes, it must, then, include the same or equivalent structure as a computer that is programmed to perform this process.

### TruePosition's Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 112 ¶ 6 (1984); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000) ("the individual components, if any, of an overall structure that corresponds to the claimed function are not claim limitations. Rather, the claim limitation is the overall structure corresponding to the claimed function"); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir.1999); *WMS Gaming Inc v. Int'l Game Tech.*, 184 F.3d 1339, 1347-50 (Fed.Cir.1999); *Al-Site*

*Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-21 (Fed. Cir. 1999); *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1307-1310 (Fed. Cir.1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

## 14.6    INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS (ANDREW'S PROPOSED INSTRUCTION)

As I told you, a means-plus-function claim limitation recites a means for performing a particular function rather than reciting a specific structure or device.  A means-plus-function limitation may be present in an accused system literally or under the doctrine of equivalents.

To prove that an accused system includes a structure that is literally covered by a means-plus-function limitation, TruePosition must show by a preponderance of the evidence: first, that Geometrix contains a structure that performs the identical function recited in the means-plus-function limitation.  Second, that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

TruePosition may also show that Geometrix infringes the means-plus-function limitations under the doctrine of equivalents.  Under the doctrine of equivalents, TruePosition must show by the preponderance of the evidence: first, that Geometrix contains a structure that performs a function that is either identical or equivalent to the function recited in the claim limitation.  Second, that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

Whether or not the structure or function of Geometrix is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art.  A structure or function is equivalent if such an ordinary skilled person would consider the differences between the accused structure or function and the structure or function in the patent to be insubstantial.

To better understand means-plus-function claim limitations, let's go back to our example of the claim reciting three limitations -- first, a tabletop, second, legs and third, a means for securing the legs to the tabletop. The third limitation is the means-plus-function portion of the claim. The function is "securing the legs to the tabletop." To determine the structure that performs this function, we look to the description in the patent. The patent in our example discloses glue to secure the legs to the tabletop. So, "glue" is the structure that performs the function of "securing the legs to the tabletop."

Let's assume that the accused device uses nails instead of glue to perform the function of "securing the legs to the tabletop." The fact that nails and glue are different does not automatically mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, whether the inventor distinguished glue from nails in the patent or prosecution history, and so on.

**Andrew's Authority**
Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association - 8.6 Infringement - Means Plus Function Limitations; 35 U.S.C. § 112  6 (1984); *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248-50, 1253-54 (Fed. Cir. 2005); *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1435-37 (Fed. Cir. 2000); *Caterpillar Inc. v. Deere & Co.*, 224 F.3d 1374, 1380 (Fed. Cir. 2000); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1266-68 (Fed. Cir.1999); *WMS Gaming Inc.*, 1347-50 (Fed.Cir.1999); 1318-21 (Fed. Cir. 1999); 1307-1310 (Fed. Cir.1998); *McKesson Information Solutions LLC v. Trizetto Group, Inc.*, 426 F. Supp. 2d 197, 200-02 (D. Del. 2006).

### 14.7    DETERMINATION OF INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

You should evaluate infringement for each asserted claim of the 144 patent separately.  If you find that TruePosition has proved by a preponderance of the evidence that each limitation of a system claim – claims 1 or 22 of the 144 patent – is present, either literally or under the doctrine of equivalents, in Geometrix then you must find that the Andrew infringes that claim.  Likewise, for the method claim – claim 31 of the 144 patent – if you find that TruePosition has proved by a preponderance of the evidence that each step of the claim, or its equivalent, is present in a method that is performed by Geometrix, you must find infringement of that claim.

Furthermore, if you find that Andrew supplied or exported from the United States all or a substantial portion of the components of a claim of the 144 Patent and, also, that Andrew encouraged or induced the combination of those components outside of the United States in a manner that would infringe the 144 Patent had the combination occurred within the United States, you must find infringement of that claim.

Finally, if you find that 1) Andrew supplied a component of a claim of the 144 Patent from the United States to a place outside of the United States; 2) Andrew is aware that the substantial use of the component is in the system or method covered by a claim of the patent; and 3) Andrew intended for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States, you must find infringement of that claim.

### TruePosition's Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at

http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271; *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

### 14.7    DETERMINATION OF INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)

You should evaluate infringement for each asserted claim of the 144 patent separately.  If you find that TruePosition has proved by a preponderance of the evidence that each limitation of the system claims – claims 1 or 22 of the 144 patent – is present, either literally or under the doctrine of equivalents, in Geometrix then you must find that Andrew infringes that claim.  Likewise, for the method claim – claim 31 of the 144 patent – if you find that TruePosition has proved by a preponderance of the evidence that each step of the claim, or its equivalent, is present in a method that is performed by Geometrix, you must find infringement of that claim.

Furthermore, if you find that TruePosition has proved by a preponderance of the evidence that Andrew has indirectly infringed a '144 patent claim either by inducing infringement or by contributing to the infringement of the '144 patent, then you must find infringement of that claim.

<u>**Andrew's Authority**</u>
Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at
http://www.ded.uscourts.gov/MPTmain.htm; 35 U.S.C. § 271; *Microsoft Corp. v. AT&T Corp.*, 127 S. Ct. 176 (2007); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209 (Fed. Cir. 2006); *Union Carbide Chems. & Plastics Corp. v. Shell Oil Co.*, 425 F.3d 1366 (Fed. Cir. 2005); *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001); *Jeneric/Pentron, Inc. v Dillon Co.*, 205 F.3d 1377, 1383 (Fed. Cir. 2000); *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1552-53 n.9 (Fed. Cir. 1989).

## 15.    WILLFUL INFRINGEMENT (TRUEPOSITION'S PROPOSED INSTRUCTION)

If you find on the basis of the evidence and the law as I have explained it, that Andrew directly or indirectly infringed at least one claim of the 144 patent, you must then decide whether or not that infringement was willful. The fact that you may have determined that Andrew infringed the 144 patent does not mean that the infringement was willful.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which TruePosition is entitled. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages. It is my job to decide whether or not to award increased damages to TruePosition.

To establish willful infringement, TruePosition must prove two things by clear and convincing evidence. First, TruePosition must prove that Andrew acted despite an objectively high likelihood that its actions constituted infringement of the 144 Patent. Andrew's state of mind is not relevant to this element. Second, TruePosition must prove that this objectively high risk of infringement was either known or so obvious that it should have been known to Andrew. Andrew's state of mind is relevant to this element.

## **TruePosition's Authority**

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *In re Seagate Tech., LLC*, Case No. 06-M830 (Fed. Cir. Aug. 20, 2007); *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1370 (Fed. Cir. 2006); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006); *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Golight, Inc. v. Walmart Stores,*

*Inc.*, 355 F.3d 1327, 1339 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001); *Ajinomoto Co. Inc. v. Archer Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000); *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1351 (Fed. Cir. 2000); *SRI International, Inc. v. Advanced Technology Laboratories, Inc.* 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Pall v. Micron*, 66 F.3d 1211, 1221-22 (Fed. Cir. 1995) ("The filing of a lawsuit does not stop the clock insofar as culpability may arise from continuing disregard of the legal rights of the patentee."); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939, 942 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473,1483 (Fed. Cir. 1990); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075, 1084 (Fed. Cir. 1987); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987); *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); *IMX, Inc. v. Lendingtree, LLC*, 469 F Supp. 2d 203, 218 (D. Del. 2007).

**15.     WILLFUL INFRINGEMENT (ANDREW'S PROPOSED INSTRUCTION)**

If you find on the basis of the evidence and the law as I have explained it, that Andrew directly or indirectly infringed at least one claim of the 144 patent, you must then decide whether or not that infringement was willful. The fact that you may have determined that Andrew infringed the 144 patent does not mean that the infringement was willful. Willfulness requires you to determine whether Andrew's actions before filing suit were objectively reckless with regard to the 144 Patent.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which TruePosition is entitled, if you find infringement. A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages for infringing acts committed before the filing of a lawsuit. It is my job to decide whether or not to award increased damages to TruePosition should you find infringement and award damages.

The burden of proving that the infringement was willful is the higher clear and convincing evidence burden, and the only actions that are relevant are those that were taken before this suit was filed on October 25, 2005.

To establish willful infringement, TruePosition must prove three things by clear and convincing evidence. First, TruePosition must prove that Andrew was aware of the 144 patent. Second, TruePosition must prove that Andrew's actions before this suit was filed on October 25, 2005 constituted infringement of a valid patent, and that Andrew took those actions despite an objectively high likelihood that they constituted infringement of a valid patent. Andrew's subjective state of mind is not relevant to this objective inquiry. Finally, TruePosition must prove that Andrew knew or should have known that its actions taken before October 25, 2005 created an objectively high risk of

infringement. If you find that TruePosition has not proved any of these three elements, then you must find that any infringement of the 144 patent was not willful.

**Authority**

*In re Seagate Tech., LLC*, Misc. No. 830, --- F.3d ----, 2007 WL 2358677, at *5 (Fed. Cir. Aug. 20, 2007); Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" at http://www.ded.uscourts.gov/MPTmain.htm; Federal Circuit Bar Association Model Patent Jury Instructions (2007 edition); 35 U.S.C. § 284; *Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1370 (Fed. Cir. 2006); *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1225 (Fed. Cir. 2006); *Imonex Services, Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1378 (Fed. Cir. 2005); *Knorr-Bremse v. Dana Corp.*, 383 F.3d 1337 (Fed. Cir. 2004); *Golight, Inc. v. Walmart Stores, Inc.*, 355 F.3d 1327, 1339 (Fed. Cir. 2004); *Crystal Semiconductor Corp. v. TriTech Microelectronics International, Inc.*, 246 F.3d 1336, 1352 (Fed. Cir. 2001); *Ajinomoto Co. Inc. v. Archer Daniels-Midland Co.*, 228 F.3d 1338, 1351-52 (Fed. Cir. 2000); *Embrex, Inc. v. Service Engineering Corp.*, 216 F.3d 1343, 1351 (Fed. Cir. 2000); *SRI International, Inc. v. Advanced Technology Laboratories, Inc.*,127 F.3d 1462, 1465 (Fed. Cir. 1997); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992); *Acoustical Design, Inc. v. Control Electronics Co., Inc.*, 932 F.2d 939, 942 (Fed. Cir. 1991); *Kalman v. Berlyn Corp.*, 914 F.2d 1473,1483 (Fed. Cir. 1990); *Spindelfabrik Suessen-Schurr v. Schubert & Salzer Maschinenfabrik AG*, 829 F.2d 1075, 1084 (Fed. Cir. 1987); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1328 (Fed. Cir. 1987); *Underwater Devices, Inc. v. Morrison-Knudsen Co., Inc.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983); *IMX, Inc. v. Lendingtree, LLC*, 469 F Supp. 2d 203, 218 (D. Del. 2007).

**ANDREW'S POSITION**

Now I will explain to you about Andrew's fraud and promissory estoppel claims.

## 16.    FRAUD (ANDREW'S PROPOSED INSTRUCTION)

Andrew contends that TruePosition committed fraud by failing to declare its 144 patent as a patent essential to an ETSI standard. In order to prove fraud, Andrew must prove by a preponderance of the evidence that:

1)    TruePosition made a misrepresentation or omission of a material fact;

2)    TruePosition made that misrepresentation or omission knowingly or with reckless disregard for the truth;

3)    TruePosition made the misrepresentation or omission with the intent to mislead;

4)    Andrew reasonably relied on the misrepresentation or omission; and

5)    Andrew was damaged as a result of relying on the misrepresentation or omission.

**Authority**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

## 16.    FRAUD (TRUEPOSITION'S PROPOSED INSTRUCTION)

Andrew contends that TruePosition committed fraud by failing to declare its 144 patent as a patent essential to an ETSI standard.  In order to prove fraud, Andrew must prove by a preponderance of the evidence that:

1)    TruePosition made a misrepresentation or omission of a material fact;

2)    TruePosition made that misrepresentation or omission knowingly or with reckless disregard for the truth;

3)    TruePosition made the misrepresentation or omission with the intent to mislead Andrew;

4)    Andrew reasonably relied on the misrepresentation or omission; and

5)    Andrew was damaged as a result of relying on the misrepresentation or omission.

### TruePosition's Authority

Adapted from Del. P.J.I. § 16.1 (2000); *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003);*Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

TruePosition objects to Andrew's proposed instruction because it fails to instruct the jury that Andrew must prove an essential element of its claim – that TruePosition intended to mislead Andrew Corporation, not "another."  *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983) ("intent to induce" action or inaction of party allegedly defrauded is a required element).

### 16.1    FRAUD - MISREPRESENTATION OR OMISSION (ANDREW'S PROPOSED INSTRUCTION)

In this case, Andrew contends that TruePosition omitted a material fact by failing to declare its 144 patent as a patent essential to an ETSI standard.  To satisfy this element, Andrew must prove by a preponderance of the evidence that, first, TruePosition did not declare its 144 patent as a patent essential to an ETSI standard and, if TruePosition did not do so, that TruePosition had a duty to declare its 144 patent as a patent essential to an ETSI standard.

If you find that Andrew has proven that TruePosition did not declare the 144 patent to ETSI despite a duty to do so, then you should go on to consider whether Andrew has satisfied its burden of proof in establishing the remaining elements of fraud.

**Andrew's Authority**
Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931); see also DTX 148, ETSI Directives, December 2004, at 115.

### 16.1    FRAUD - MISREPRESENTATION OR OMISSION (TRUEPOSITION'S PROPOSED INSTRUCTION)

In this case, Andrew contends that TruePosition omitted a material fact by failing to declare its 144 patent as a patent essential to an ETSI standard. To satisfy this element, Andrew must prove by a preponderance of the evidence, first, that TruePosition had a duty to declare its 144 patent as a patent essential to an ETSI standard. In order to prove that TruePosition had such a duty, Andrew must prove by a preponderance of the evidence that the 144 patent was in fact essential to an identified ETSI standard.

If you find that Andrew has proven that TruePosition had a legal duty to declare the 144 patent as essential to an ETSI standard because the 144 patent is, in fact, essential to an ETSI standard, then you should go on to consider whether Andrew has satisfied its burden of proof in establishing the remaining elements of fraud. If you find that Andrew has not proven that TruePosition had a legal duty to declare the 144 patent as essential to an ETSI standard because the 144 patent is not essential to an ETSI standard, then you may omit consideration of the remaining elements of fraud.


**Authority**

Adapted from Del. P.J.I. § 16.3 (2000); *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

TruePosition objects to this jury instruction because it suggest to the jury to find in Andrew Corporation's favor on an element of Andrew Corporation's counterclaim without requiring Andrew Corporation to prove that element of its claim.

In order to prove fraud, Andrew Corporation must show that TruePosition had a legal duty to declare its 144 patent as essential to an ETSI standard because Andrew Corporation bases its fraud claim on TruePosition's alleged "failure to declare its '144

patent as a patent essential to an ETSI standard." *See Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003) (defendant must prove by clear and convincing evidence the existence of an "omission in the face of a duty to disclose").  In order to prove that TruePosition had a legal duty to declare its 144 patent as essential to an ETSI standard, Andrew must prove that the 144 patent is, in fact, essential to an ETSI standard.

**16.2    FRAUD - MISREPRESENTATION OR OMISSION MADE KNOWINGLY OR WITH RECKLESS DISREGARD FOR THE TRUTH (ANDREW'S PROPOSED INSTRUCTION)**

To satisfy this element, Andrew must prove that TruePosition knew or should have known the 144 patent was required to be disclosed to ETSI under TruePosition's interpretation of the patent, but that TruePosition knowingly failed to declare the patent to ETSI.  Or, Andrew must prove that TruePosition's alleged failure to declare the patent to ETSI was done with a reckless disregard for the truth.  "Reckless disregard for the truth," means less than a knowing lie, but more than negligently forgetting to tell.

<u>**Authority**</u>
Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

## 16.2    FRAUD - MISREPRESENTATION OR OMISSION MADE KNOWINGLY OR WITH RECKLESS DISREGARD FOR THE TRUTH (TRUEPOSITION'S PROPOSED INSTRUCTION)

To satisfy this element, Andrew must prove that TruePosition knew or should have known the 144 patent was required to be disclosed to ETSI as essential to an ETSI standard, but that TruePosition knowingly failed to declare the patent as essential to an ETSI standard.  Or, Andrew must prove that TruePosition's alleged failure to declare the patent to ETSI as essential to an ETSI standard was done with a reckless disregard for the truth. "Reckless disregard for the truth," means less than a knowing lie, but more than negligently forgetting to tell.

**Authority**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

TruePosition objects to Andrew's proposed instruction because Andrew bases its fraud theory on TruePosition's failure to declare its belief that the 144 Patent is essential to an ETSI standard, *i.e.* that "TruePosition knew or should have known the 144 patent was required to be disclosed to ETSI under TruePosition's interpretation of the patent." *See Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1104 (Fed. Cir. 2003) ("The [IPR policy], though vague, does not create a duty premised on subjective beliefs.  [The policy's] disclosure duty erects an objective standard.  It does not depend on a member's subjective belief that its patents do or do not read on the proposed standard.").

### 16.3   FRAUD - INTENT TO MISLEAD (ANDREW'S INSTRUCTION)

To satisfy this element, Andrew must prove that TruePosition intended to mislead

Andrew by not declaring the 144 patent to ETSI.

**Authority**
Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

**16.3    FRAUD - INTENT TO MISLEAD (TRUEPOSITION'S INSTRUCTION)**

To satisfy this element, Andrew must prove that TruePosition intended to mislead

Andrew by not declaring the 144 patent to ETSI as a patent essential to an ETSI standard.

**Authority**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 16.4    FRAUD - ANDREW'S RELIANCE (ANDREW'S PROPOSED INSTRUCTION)

Andrew must prove that it did, in fact, rely on TruePosition's omission or misrepresentation, and that Andrew's reliance was reasonable.  Andrew's reliance may be a belief in the misrepresentation or omission that either causes Andrew to take actions it would otherwise not have taken, or causes Andrew to not take an action it would have otherwise taken.

**Andrew's Authority**:
Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

### 16.4    FRAUD - ANDREW'S RELIANCE (TRUEPOSITION'S PROPOSED INSTRUCTION)

Andrew must prove that it did, in fact, rely on TruePosition's omission or misrepresentation, and that Andrew's reliance was reasonable.  Andrew's reliance may be a belief in the misrepresentation or omission that either causes Andrew to take actions it would otherwise not have taken, or causes Andrew to not take an action it would have otherwise taken.

In order for Andrew to have justifiably relied upon an omission or misrepresentation by TruePosition, Andrew must not have been aware of the true facts surrounding the omission or misrepresentation that Andrew claims it relied upon.

**Authority**
Adapted from Del. P.J.I. Civ. § 16.1; *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-60 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 100 (Del. 1992) ("An essential elements of [fraud], is that the alleged victim not be aware of the true facts which are misrepresented."); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

## 16.5    FRAUD - DAMAGES (AGREED UPON INSTRUCTION)

Andrew must prove that it was damaged in some way as a result of its reliance.

These damages can include but are not limited to economic harm.

**Authority**

Adapted from *Lazar v. Superior Ct.*, 909 P.2d 981, 985 (Cal. 1996); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1096 (Fed. Cir. 2003); *Czarnik v. Illumina, Inc.*, 437 F. Supp. 2d 252, 259-160 (D. Del. 2006); *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000); *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1074 (Del. 1983), (citing *Nye Odorless Incinerator Corp. v. Felton*, 162 A. 504, 510-11 (Del. Super. Ct. 1931).

17.    **PROMISSORY ESTOPPEL (ANDREW'S PROPOSED INSTRUCTION)**

Andrew also counters for promissory estoppel.

"Estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair. Promissory estoppel would arise if TruePosition made a promise, Andrew reasonably relied on this promise, and TruePosition expected the promise to induce certain action or inaction by Andrew.

To prove promissory estoppel, Andrew must establish the following four things by clear and convincing evidence:

1)    TruePosition made a promise;

2)    TruePosition intended to induce Andrew's action or inaction based on the promise;

3)    Andrew reasonably relied on the promise; and

4)    Andrew was injured by its reliance.

If you find that Andrew proves all four elements by clear and convincing evidence, you must find that TruePosition is estopped from asserting its '144 patent against Andrew. I will now give you more explanation as to what kind of conduct can give rise to a promise.

**Authority**
Adapted from *Christiana Marine Service Corp. v. Texaco Fuel and Marine Mktg. Inc.*, C.A. No. 98C-02-217WCC, 2004 WL 42611, *3-4 (Del. Supr. Jan. 8, 2004); *State v. Simpson*, C.A. No. 899, 1990 WL 143837, *2-3 (Del. Ch. Sept. 24, 1990); *Ramone v. Lang*, C.A. No. 1592-N, 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006); *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000); *Fini v. Remington Arms Co., Inc.*, C.A. No. 97-12-SLR, 1998 WL 299358, *9-10 (D. Del. May 27, 1998); *Keating v. Board of Educ.*, C.A. No. 12589, 1993 WL 460527, *4 (Del. Ch. Nov. 3, 1993) (quoting *Lawrence v. Board of Educ.*, C.A. No. 12572, 1993 WL 40051, *2 (Del. Ch. Feb. 8, 1993)); *Brandner v.*

*Delaware State Hous. Auth.*, No. C.A. 1132-K, 1993 WL 548831, *3 (Del. Ch. Dec. 9, 1993).

### 17.    PROMISSORY ESTOPPEL (TRUEPOSITION'S PROPOSED INSTRUCTION)

Andrew's next defense is promissory estoppel.

"Estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position where doing so would be unfair.  Promissory estoppel would arise if TruePosition made a promise to Andrew, Andrew reasonably relied on this promise, and TruePosition expected the promise to induce certain action or inaction by Andrew.

To prove promissory estoppel, Andrew must establish the following four things by clear and convincing evidence:

1.    TruePosition made a promise;

2.    TruePosition intended to induce Andrew's action or inaction based on the promise;

3.    Andrew reasonably relied on the promise; and

4.    Andrew was injured by its reliance.

Although the question of whether promissory estoppel applies in this case is one that I will ultimately decide, I will ask for your findings so that I can consider them in making that decision.  You should make serious determinations on this issue as you would for any other issue in this case because I will consider them seriously in making my determination.

**Authority**

Chrysler Corp. v. Chaplake Holdings, Ltd., 822 A.2d 1024, 1032 (Del. 2003); Phillips v. Diamlerchrysler Corp., 2003 U.S. Dist. LEXIS 23941 (D. Del. Mar. 27,

2003); *In re U.S. West, Inc. Securities Litigation*, 201 F. Supp. 2d 302 (D. Del. 2002); *Fini v. Remington Arms Co.*, 1998 U.S. Dist. LEXIS 8261 (D. Del. May 27, 1998).

TruePosition objects to this jury instruction because promissory estoppel is an issue that should be ultimately decided by the Court. Under the doctrine of promissory estoppel, Andrew must demonstrate by clear and convincing evidence that: 1) a promise was made by TruePosition; 2) it was the reasonable expectation of TruePosition to induce action or forbearance by Andrew; 3) Andrew reasonably relied on the promise and took action to its detriment; and 4) such promise is binding because injustice can be avoided only by enforcement of the promise. *Chrysler Corp. v. Chaplake Holdings, Ltd.*, 822 A.2d 1024, 1032 (Del. 2003).

Whether a promise was made is a question of fact to be determined by the jury. *Christiana Marine Service Corp. v. Texaco Fuel & Marine Marketing Inc.*, 2004 Del. Super. LEXIS 3 at *10 (Del. Super. Ct. Jan. 8, 2004). Intent to induce reliance and whether Andrew's reliance was reasonable are also questions of fact for the jury. *Fini v. Remington Arms Co.*, 1998 U.S. Dist. LEXIS 8261 at *33 (D. Del. May 27, 1998). "The avoidance of injustice element is, however, a legal concept and not a question of fact to be submitted to the jury." *Chrysler*, 822 A.2d at 1034.

### 17.1    PROMISSORY ESTOPPEL - THE PROMISE (ANDREW'S PROPOSED INSTRUCTION)

A promise is a declaration by which one party agrees to perform or refrain from doing a specified act. TruePosition's promise can be oral or it can be made in writing. Further, the sum of TruePosition's conduct can give rise to the promise. TruePosition's representations must be reasonably definite and certain so that the intentions of the parties can be ascertained. Distinguishing a promise from a non-promise must be done through a reasonable interpretation of both parties' conduct in light of the surrounding circumstances. Mere expressions of opinion, expectation, or assumption are not promises.

**Authority**

Adapted from *Christiana Marine Service Corp. v. Texaco Fuel and Marine Mktg. Inc.*, C.A. No. 98C-02-217WCC, 2004 WL 42611, *3-4 (Del. Supr. Jan. 8, 2004); *State v. Simpson*, C.A. No. 899, 1990 WL 143837, *2-3 (Del. Ch. Sept. 24, 1990); *Ramone v. Lang*, C.A. No. 1592-N, 2006 WL 905347, *15 (Del. Ch. Apr. 3, 2006); *Lord v. Souder*, 748 A.2d 393, 399 (Del. 2000); *Fini v. Remington Arms Co., Inc.*, C.A. No. 97-12-SLR, 1998 WL 299358, *9-10 (D. Del. May 27, 1998); *Keating v. Board of Educ.*, C.A. No. 12589, 1993 WL 460527, *4 (Del. Ch. Nov. 3, 1993) (quoting *Lawrence v. Board of Educ.*, C.A. No. 12572, 1993 WL 40051, *2 (Del. Ch. Feb. 8, 1993)); *Brandner v. Delaware State Hous. Auth.*, No. C.A. 1132-K, 1993 WL 548831, *3 (Del. Ch. Dec. 9, 1993).

### 17.1    PROMISSORY ESTOPPEL - THE PROMISE (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition notes its objection that promissory estoppel is an issue that should be ultimately decided by the Court.  Otherwise, TruePosition has no additional objection to this proposed instruction.

### 18.     USE OR MANUFACTURE FOR THE UNITED STATES (ANDREW'S PROPOSED INSTRUCTION)

If Andrew's alleged demonstration, use or manufacture of the invention covered by the 144 patent was by or for the United States, then TruePosition's proper remedy is by an action against the United States, not against Andrew.  Andrew has the burden of proving this defense by a preponderance of the evidence.

If you find that Andrew's demonstration, use or manufacture of Geometrix was for the United States Government and with the authorization or consent of the Government, then that shall be construed as by or for the United States, and you should find that Andrew does not infringe.


**Andrew's Authority**
28 U.S.C. § 1498.

### 18.    USE OR MANUFACTURE FOR THE UNITED STATES (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition objects to the inclusion of this instruction because Andrew failed to plead a defense under 28 U.S.C. § 1498, because as a matter of law Andrew cannot establish a defense under 28 U.S.C. § 1498 (*see* TruePosition's Motion to Preclude Andrew From Asserting a Government Contractor Defense Pursuant to 28 U.S.C. § 1498 and From Presenting Any Such Evidence to the Jury) and because application of the government contracting defense, even if allowed, is an issue of law for the Court to decide.

### 19.     DAMAGES (TRUEPOSITION'S PROPOSED INSTRUCTION)

I have now instructed you on the law governing TruePosition's claims of patent infringement and Andrew's claims of fraud and promissory estoppel. We turn now to damages. If, after considering all of the evidence and the law as I have stated it, you find that at least one claim of the 144 patent is infringed by Andrew, then you must determine what damages Andrew must pay to TruePosition to compensate for that infringement. If, on the other hand, you find that there has been no infringement of any claim of the 144 patent, then TruePosition is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that TruePosition is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that a claim has been infringed.

**TruePosition's Authority**

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

## 19.    DAMAGES (ANDREW'S PROPOSED INSTRUCTION)

I have now instructed you as to the law governing TruePosition's claims of patent infringement and Andrew's claims of fraud and promissory estoppel. We turn now to damages. If, after considering all of the evidence and the law as I have stated it, you find that at least one claim of the 144 patent is infringed by Andrew and that TruePosition's claims are not barred by promissory estoppel, then you must determine what damages, if any, Andrew must pay to TruePosition to compensate for that infringement. If, on the other hand, you find that there has been no infringement of any valid claim of the 144 patent or that TruePosition's claims are barred by promissory estoppel, then TruePosition is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that TruePosition is or is not entitled to recover damages. I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that a valid claim has been infringed.

### Authority

Adapted from Draft Model Patent Jury Instructions, Federal Circuit Bar Association, Third Bench and Bar Conference, in "Forms" directory at http://www.ded.uscourts.gov/MPTmain.htm.

### 19.1    COMPENSATORY DAMAGES IN GENERAL (AGREED UPON INSTRUCTION)

The patent laws provide that in the case of infringement of a patent claim, the owner of a patent shall be awarded damages adequate to compensate for the infringement. These damages may not be less than what a reasonable royalty would be for the use made of the invention. In other words, damages are compensation for losses suffered by the patent owner as a result of the infringement. In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement. You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate TruePosition, to put TruePosition into the position it would have been in if there had been no infringement. You may not add anything to the amount to punish or to set an example.

## 19.2   DAMAGES — BURDEN OF PROOF (AGREED UPON INSTRUCTION)

TruePosition has the burden of proving damages by the same "preponderance of the evidence" standard I discussed earlier. TruePosition is entitled to damages that it has proved with "reasonable certainty." Reasonable certainty does not require TruePosition to prove its damages with absolute or mathematical certainty. Mere difficulty in ascertaining damages is not fatal to TruePosition. However, TruePosition is not entitled to speculative damages. That is, you should not award damages for losses which, although possible, are wholly remote or left to conjecture or guess. If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against Andrew.

## 19.3    DAMAGES – LOST PROFITS (TRUEPOSITION'S PROPOSED INSTRUCTION)

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages.  This is the method that TruePosition uses to calculate the damages it claims.

Simply stated, lost profit damages are the profits TruePosition would have earned had it not been for Andrew's infringement.  They are not the profits Andrew actually made.

TruePosition claims that it lost profits because Andrew's infringement took away one specific sale, to STC in Saudi Arabia, that TruePosition would have made if Andrew had not sold its infringing product instead.

## TruePosition's Authority

*Micro Chem., Inc. v. Lextron, Inc*., 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Co*., 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Fonar Corp. v. Gen. Elec. Co.,* 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley, Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) *(en banc)*; *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214, 1217-19 (Fed. Cir. 1993); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp*., 926 F.2d 1161, 1164 (Fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1156 (6th Cir. 1978).

**19.3    DAMAGES – LOST PROFITS (ANDREW'S PROPOSED INSTRUCTION)**

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages.  This is the method that TruePosition uses to calculate the damages it claims.

TruePosition says that it lost profits because Andrew's alleged infringement took away sales that TruePosition would have made.  This is called lost profits due to lost sales.

TruePosition has the burden to show by a preponderance of the evidence that it would have made its claimed profits had Andrew not infringed.

Remember, if you find TruePosition did not prove infringement of a valid and enforceable patent claim, there can be no damages of any kind.

**Authority**
Federal Circuit Bar Association Model Patent Jury Instructions (2007) - 12.3 - Lost Profits, Types and Burden of Proof.

### 19.4    LOST PROFITS FROM LOST SALES – "BUT FOR" TEST (TRUEPOSITION'S PROPOSED INSTRUCTION)

To prove that it lost sales, TruePosition must prove that it is more probable than not that it would have made the sale to STC if Andrew had not made it by selling an infringing product. This test is often called the "but for" test: that is, TruePosition must show that "but for" Andrew's infringement, it would have made the sales and earned the profits that it claims it lost. To apply the "but for" test, you must imagine the marketplace as it would have existed if the infringement had not occurred and consider what would have happened. In other words, you should determine what STC would have done if Andrew's infringement had not occurred.

### TruePosition's Authority

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1376-77 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) *(en banc)*; *BIC Leisure Products, Inc. v. Windsurfing Int'l.*, 1 F.3d 1214, 1217-18 (Fed. Cir. 1993); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

### 19.4    LOST PROFITS FROM LOST SALES – "BUT FOR" TEST (ANDREW'S PROPOSED INSTRUCTION)

Lost sales are those sales TruePosition lost because of Andrew's alleged infringement.

To prove that it lost sales, TruePosition must prove by a preponderance of the evidence that it would have made the sales to STC sales if Andrew had not made the sales you find to be an infringement.

TruePosition may receive damages for lost sales only on those products or processes that compete with Andrew's Geometrix products that you find to infringe, and that are functionally part of the competing product. TruePosition may not receive lost profit damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

**Authority**
Federal Circuit Bar Association Model Patent Jury Instructions (2007) - 12.3.1 - Lost Sales; *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Tec Air, Inc. v. Denso Mfg. Mich., Inc.*, 192 F.3d 1353, 1362 (Fed. Cir. 1999); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1550 (Fed. Cir. 1995) (en banc); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

## 19.5    DAMAGES – LOST PROFITS FACTORS (AGREED UPON INSTRUCTION)

To recover damages for lost sales, a patentee, such as TruePosition, must generally show:

1.      that there was demand for the patented product;

2.      that there are no acceptable non-infringing substitutes;

3.      that the patentee had the manufacturing and marketing capability to meet the demand;

4.      the amount of profit that it would have made.

**TruePosition's Authority**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157-58 (6th Cir. 1978).

### 19.6    LOST PROFITS – TWO-SUPPLIER MARKET (TRUEPOSITION'S PROPOSED INSTRUCTION)

However, in situations where there are only two suppliers in the market, the first two of those factors collapse.  In such circumstances, to prove lost profits under the "two-supplier market" test, a patentee must show only:

1)      that the relevant market contains only two suppliers;

2)      that it had the manufacturing and marketing capability to make the sales that were diverted to the infringer; and

3)      the amount of profit it would have made on those sales.

Here, TruePosition claims that the market for sales of UTDOA systems to STC is a two-supplier market because TruePosition and Andrew are the only suppliers of U-TDOA systems and were the only bidders for this sale, and that you should therefore apply the two-supplier market test to TruePosition's damage claim.


**TruePosition's Authority**

*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578 (Fed. Cir. 1989).

### 19.6    LOST PROFITS – TWO-SUPPLIER MARKET (ANDREW'S PROPOSED INSTRUCTION

In situations where there are only two suppliers in the market, the first two of those four factors collapse.  In such circumstances, to prove lost profits under the "two-supplier market" test, a patentee must show:

1)    that the relevant market contains only two suppliers;

2)    that it had the manufacturing and marketing capability to make the sales that were diverted to the infringer; and

3)    the amount of profit it would have made on those sales.

Even if you find that this was a two-supplier market, Andrew can rebut the presumption that TruePosition actually lost profits by showing that there were non-infringing substitutes.  This situation can arise where Andrew had alternatives - one allegedly infringing and others non-infringing.

**Authority**
*Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003); *Grain Processing Corp. v. American Maize-Prods. Comp.*, 185 F.3d 1341, 1349-50 (Fed. Cir. 1999).

### 19.7    MANUFACTURING AND MARKETING CAPABILITY (TRUEPOSITION'S PROPOSED INSTRUCTION)

TruePosition is only entitled to lost profits for sales it actually could have made. Therefore, in deciding whether TruePosition lost sales, you should consider whether or not TruePosition has proved that it had the manufacturing and marketing capability to make the sale to STC.  TruePosition must prove that it was more probable than not that it could have made, or could have had someone else make for it, the additional products it says it could have sold but for Andrew's infringement, and that it had the capability to market and sell the additional products.

Andrew does not dispute that TruePosition had the marketing and manufacturing capability to make the sale to STC.

**TruePosition's Authority**

*Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Gargoyles, Inc. v. United States,* 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Minco, Inc. v. Combustion Eng'g, Inc*., 95 F.3d 1109, 1119 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co*., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (*en banc*).

### 19.7   MANUFACTURING AND MARKETING CAPABILITY (ANDREW'S PROPOSED INSTRUCTION)

Because Andrew is not contesting marketing capability, Andrew does not believe

such an instruction is necessary.

### 19.8    LOST PROFITS – DEMAND (TRUEPOSITION'S PROPOSED INSTRUCTION)

In the event you decide not to apply the two-supplier market test, demand for the patented product can be proven by showing significant sales of either the plaintiff's patented product or the defendant's.  Here, Andrew does not dispute demand.

**19.8    LOST PROFITS – DEMAND (ANDREW'S PROPOSED INSTRUCTION)**

Because Andrew is not contesting marketing capability, Andrew does not believe

such an instruction is necessary.

### 19.9    LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES (TRUEPOSITION'S PROPOSED INSTRUCTION)

Andrew claims that TruePosition cannot prove it would have made the sale to STC because it contends there were available non-infringing substitutes.  To be an non-infringing substitute, a product must be both (1) available in the market and (2) acceptable to the market.  In determining whether TruePosition lost sales due to Andrew's infringement, you must consider whether or not, if Andrew were not selling Geometrix, some or all of the people who bought from Andrew would have bought a different, non-infringing product from Andrew or from somebody else, rather than buy from TruePosition.

TruePosition does not need to negate every possibility that STC might have bought another product or no product at all.  The mere existence of a competing device does not make that product an acceptable substitute.  To be an acceptable substitute, the product must have the advantages of the patented invention that were important to customers.  In addition, to be an acceptable non-infringing substitute, a proposed substitute must have been acceptable to the actual purchasers of the infringing product – here, STC.  However, the uniqueness of a patented product suggests that there might be no acceptable non-infringing substitutes.

The non-infringing substitute must also have been "available" at the time of infringement.  To make this determination, you should consider whether or not all of the necessary equipment, know-how, and experience existed to make the non-infringing substitute at the time of the infringement; whether or not it would have been necessary to design or invent around the patent, and whether it would have been costly to make the non-infringing substitute.  For any non-infringing substitute that was not actually on the

market at the time of Andrew's sale to STC, Andrew has the burden to show that the

substitute would have been available and acceptable to STC.


**TruePosition's Authority**

     *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1122-24 (Fed. Cir. 2003); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d 1341, 1350-55 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (*en banc*).

### 19.9    LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES (ANDREW'S PROPOSED INSTRUCTION)

In determining whether TruePosition lost sales due to infringement, you must consider whether or not, if Andrew's accused Geometrix system were not available, some or all of the people who bought from Andrew would have bought a different, non-infringing product from Andrew or someone else, rather than buy from TruePosition.

In deciding whether or not people who bought from Andrew would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a non-infringing product.

**Andrew's Authority**
Federal Circuit Bar Association Model Patent Jury Instructions (2007) - 12.3.3 - Absence Of Acceptable Non-Infringing Substitutes; citing *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1356 (Fed. Cir. 2001); *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958, 971 (Fed. Cir. 2000); *Grain Processing Corp. v. American-Maize Prod.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1578-79 (Fed. Cir. 1997); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 96 F.3d 1409, 1417-18 (Fed. Cir. 1996); *Zygo Corp. v. Wyko Corp.*, 79 F.3d 1563, 1571 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1548 (Fed. Cir. 1995) (en banc); *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 932 F.2d 1453 (Fed. Cir. 1991)); *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1142 (Fed. Cir. 1991); *SmithKline Diagnostics, Inc. v. Helena Labs., Corp.*, 926 F.2d 1161, 1164 (fed. Cir. 1991); *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1576-77 (Fed. Cir. 1989).

### 19.10   AMOUNT OF LOST PROFITS (AGREED UPON INSTRUCTION)

If TruePosition has proved that it lost profits due to infringement by Andrew, then

you are to determine the amount of profits that TruePosition lost.  As I have already

instructed you, TruePosition must prove the amount of its lost profits to a reasonable

probability, but absolute certainty is not required.  The amount of lost profits damages,

however, should not include amounts that are merely speculation.


**Authority**

Federal Circuit Bar Association Model Patent Jury Instructions (2007) - 12.3.5 - Amount
Of Lost Profits; citing *Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, 222 F.3d 958,
971 (Fed. Cir. 2000); *Grain Processing Corp. v. American Maize-Prods. Co.*, 185 F.3d
1341, 1349-50 (Fed. Cir. 1999); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1574-77
(Fed. Cir. 1997); *Oiness v. Walgreen Co.*, 88 F.3d 1025, 1029-32 (Fed. Cir. 1996).

## 20.    DELIBERATION AND VERDICT

## 20.1.   INTRODUCTION (AGREED UPON INSTRUCTION)

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.  I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.  Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.  Do not ever write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-3, or 5-2, or whatever your vote happens to be.  That should stay secret until you are finished.

### 20.2.  UNANIMOUS VERDICT (AGREED UPON INSTRUCTION)

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about TruePosition's claims of infringement and Andrew's claims of fraud and promissory estoppel.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

### 20.3.   DUTY TO DELIBERATE (AGREED UPON INSTRUCTION)

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.  Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.  But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that – your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.  Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m.  If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and

resume your deliberations tomorrow morning.  You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations tomorrow, you are not to talk about the case among yourselves or with anyone else during the evening recess.  You may talk about the case only while you are in the jury room.

So if you do go home this evening, keep that instruction in mind.  Unless I hear from you that you have a different schedule in mind, I will expect you all to come back tomorrow morning at 9:30.  You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone.  So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

### 20.4.   COURT HAS NO OPINION (AGREED UPON INSTRUCTION)

Let me finish up by repeating something that I said to you earlier.  Nothing that I have said or done during this trial was meant to influence your decision in any way.  You must decide the case yourselves based on the evidence presented.