## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TruePosition, Inc.,** | ) |
| | ) |
| **Plaintiff/** | ) |
| **Counterclaim-Defendant,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **Andrew Corporation,** | ) |
| | ) |
| **Defendant/** | ) |
| **Counterclaim-Plaintiff.** | ) |
| | ) |

**Civ. No. 05-747-SLR**

## FINAL JURY INSTRUCTIONS

Dated:   September 14, 2007

## TABLE OF CONTENTS
## FINAL INSTRUCTIONS

1.    Introduction...........................................................................................................................1

2.    Jurors' Duties .......................................................................................................................2

3.    Burdens of Proof...................................................................................................................3

4.    Evidence Defined..................................................................................................................5

5.    Consideration of Evidence....................................................................................................6

6.    Direct and Circumstantial Evidence .....................................................................................7

7.    Credibility of Witnesses........................................................................................................8

8.    Number of Witnesses...........................................................................................................10

9.    Expert Witnesses.................................................................................................................11

10.   Deposition Testimony..........................................................................................................12

11.   The Parties and Their Contentions......................................................................................13

      11.1    The Parties .............................................................................................................14

      11.2    The Parties' Contentions ........................................................................................15

12.   The Patent Laws..................................................................................................................16

13.   The Claims of the Patents In Suit .......................................................................................17

      13.1    Construction of the Claims .....................................................................................18

      13.2    Means-Plus-Function Claim Limitations.................................................................19

      13.3    "Comprising" Claims ..............................................................................................20

      13.4    Limitations of the Claims at Issue ..........................................................................21

14.   Patent Infringement Generally............................................................................................24

      14.1    Direct Infringement.................................................................................................26

14.2   Infringement -- Every Claim Limitation Must Be Present ........................................................................................................................27

14.3   Infringement Through the Supply of Components From the United States to a Foreign Country (Under 35 U.S.C. § 271(f)) ........................................................................................................................28

14.4   Inducing Infringement Under 35 U.S.C. § 271(f)(1) ........................................................................................................................29

14.5   Contributory Infringement Under 35 U.S.C. § 271(f)(2) ........................................................................................................................30

14.6   Infringement – Mean-Plus-Function Claim Limitations ........................................................................................................................31

14.7   Determination of Infringement ............................................................................................33

15.   Willful Infringement ........................................................................................................34

16.   Fraud .........................................................................................................................36

16.1   Fraud – Misrepresentation or Omission.................................................................37

16.2   Fraud – Misrepresentation or Omission Made Knowingly Or With Reckless Disregard for the Truth ........................................................................................................................38

16.3   Fraud – Intent to Mislead .....................................................................................39

16.4   Fraud – Andrew's Reliance....................................................................................40

16.5   Fraud – Damages .................................................................................................41

17.   Promissory Estoppel .......................................................................................................42

17.1   Promissory Estoppel- The Promise.......................................................................43

18.   Use For The United States ...............................................................................................44

19.   Damages......................................................................................................................45

19.1   Compensatory Damages in General......................................................................46

19.2   Damages–Burden of Proof....................................................................................47

19.3    Damages–Lost Profits ............................................................................................. 48

19.4    Lost Profits From Lost Sales – "But For" Test
.............................................................................................................................. 49

19.5    Damages–Lost Profits Factors ............................................................................... 50

19.6    Lost Profits – Two-Supplier Market ...................................................................... 51

19.7    Lost Profits – Acceptable Noninfringing Substitutes
.............................................................................................................................. 52

19.8    Amount of Lost Profits ........................................................................................... 53

20.    Deliberation and Verdict .................................................................................................... 54

20.1    Introduction .............................................................................................................. 54

20.2    Unanimous Verdict .................................................................................................. 55

20.3    Duty to Deliberate ................................................................................................... 56

20.4    Court Has No Opinion ............................................................................................ 58

## FINAL INSTRUCTIONS

### 1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding this case. I will start by explaining your duties and the general rules that apply in every civil case. I will explain some rules that you must use in evaluating particular testimony and evidence. I will explain the positions of the parties and the law you will apply in this case. Last, I will explain the rules that you must follow during your deliberations in the jury room, and the possible verdicts that you may return. Please listen very carefully to everything I say.

You will have a written copy of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the interrogatories, or questions, that you must answer to decide this case.

1

## 2. JURORS' DUTIES

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on each of the issues presented. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

2

### 3. BURDENS OF PROOF

This is a civil case in which TruePosition is alleging that Andrew is infringing

TruePosition's patent, U.S. Patent No. 5,327,144 ("the '144 patent"), and in which Andrew

is asserting that it does not infringe.   TruePosition has the burden of proving patent

infringement by what is called a preponderance of the evidence.   That means that

TruePosition has to produce evidence which, when considered in light of all of the facts,

leads you to believe that what TruePosition asserts is more likely true than not.   To put it

differently, if you were to put the evidence of TruePosition and Andrew on opposite sides

of a scale, the evidence supporting TruePosition's claims would have to make the scales

tip somewhat on TruePosition's side for your verdict to be for TruePosition.

If TruePosition fails to meet its burden for a particular patent claim, your verdict

must be for Andrew on that patent claim.

TruePosition is also alleging that Andrew's infringement was willful.   TruePosition

has the burden of proving willful infringement by clear and convincing evidence.   Clear

and convincing evidence is evidence that produces an abiding conviction that the truth of

a factual contention is highly probable.   Proof by clear and convincing evidence,

therefore, is a higher burden than proof by a preponderance of the evidence.

If TruePosition fails to meet its burden for its willfulness claim, then your verdict

must be for Andrew on that claim.

In this case, Andrew is contending that TruePosition committed fraud.   Andrew

has the burden of proving fraud by a preponderance of the evidence.   Andrew also

contends that TruePosition made certain promises to Andrew that now should prevent

3

TruePosition from asserting its '144 patent against Andrew.    Andrew has the burden of proving this claim, promissory estoppel, by the clear and convincing evidence standard.

If Andrew fails to meet its burden for its fraud or promissory estoppel claims, your verdict must be for TruePosition on that claim.

You may have heard of the "beyond a reasonable doubt" burden of proof from criminal cases.    That requirement is the highest burden of proof.    It does not apply to civil cases and, therefore, you should put it out of your mind.

## 4. EVIDENCE DEFINED

You must make your decision based only on the evidence that you saw and heard here in the courtroom.   Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.   The evidence in this case includes only what the witnesses said while they were testifying under oath (including deposition testimony that has been played or read to you), the exhibits that I allowed into evidence, and any facts that the parties agreed to by stipulation.

Nothing else is evidence.   The lawyers' statements and arguments are not evidence.   Their questions and objections are not evidence.   My legal rulings are not evidence.   None of my comments or questions are evidence.   The notes taken by any juror are not evidence.

Certain charts and graphics have been used to illustrate testimony from witnesses. Unless I have specifically admitted them into evidence, these charts and graphics are not themselves evidence even if they refer to or identify evidence.

During the trial I may not have let you hear the answers to some of the questions that the lawyers asked.   I also may have ruled that you could not see some of the exhibits that the lawyers wanted you to see.   You must completely ignore all of these things.   Do not even think about them.   Do not speculate about what a witness might have said or what an exhibit might have shown.   These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

Make your decision based only on the evidence, as I have defined it here, and nothing else.

5

## 5.    CONSIDERATION OF EVIDENCE

You should use your common sense in weighing the evidence.    Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves.    If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

## 6. DIRECT AND CIRCUMSTANTIAL EVIDENCE

Some of you may have heard the terms "direct evidence" and "circumstantial evidence."

Direct evidence is evidence like the testimony of any eyewitness which, if you believe it, directly proves a fact.    If a witness testified that he or she saw it raining outside, and you believed him or her, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.    If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.    The law makes no distinction between the weights that you should give to either one, nor does it say that one is any better evidence than the other.    You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

7

## 7.  CREDIBILITY OF WITNESSES

You, the jurors, are the sole judges of the credibility, or the believability, of the

witnesses you have seen during the trial and the weight their testimony deserves.

You should carefully scrutinize all the testimony each witness has given and every

matter of evidence that tends to show whether he or she is worthy of belief.   Consider

each witness's intelligence, motive, and state of mind, as well as his or her demeanor

while on the stand.   Consider the witness's ability to observe the matters as to which he

or she has testified and whether he or she impresses you as having an accurate

recollection of these matters.   Consider also any relation each witness may bear to each

side of the case, the manner in which each witness might be affected by the verdict, the

interest any witness may have in the verdict, and the extent to which, if at all, each witness

is either supported or contradicted by other evidence in the case.

Discrepancies in the testimony of different witnesses may, or may not, cause you

to discredit such testimony.   Two or more persons witnessing an incident or transaction

may see or hear it differently.   Likewise, in determining the weight to give to the

testimony of a witness, you should ask yourself whether there was evidence tending to

prove that the witness testified falsely about some important fact, or whether there was

evidence that at some other time the witness said or did something, or failed to say or do

something, that was different, or inconsistent, from the testimony that he or she gave

during the trial.   It is the province of the jury to determine whether a false statement or a

prior inconsistent statement discredits the witness's testimony.

You should remember that a simple mistake by a witness does not mean that the

witness was not telling the truth.   People may tend to forget some things or remember

8

other things inaccurately.   If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

## 8.  NUMBER OF WITNESSES

One more point about the witnesses.   Sometimes jurors wonder if the number of witnesses who testified makes any difference.   Do not make any decisions based only on the number of witnesses who testified.   What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.   Concentrate on that, not the numbers.

10

## 9. EXPERT WITNESSES

When knowledge of technical or financial subject matter might be helpful to the jury, a person who has special training or experience in that technical or financial field is permitted to state his or her opinion on those technical or financial matters – that person is called an expert witness.   However, you are not required to accept that opinion.   As with any other witness, it is up to you to judge the credentials and credibility of the expert witness and decide whether to rely upon his or her testimony.

You should consider each expert opinion received in evidence in this case, and give it such weight as you think it deserves.   If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that the opinion is outweighed by other evidence, you may disregard the opinion in whole or in part.

11

## 10.  DEPOSITION TESTIMONY

During the trial, certain testimony was presented to you through depositions that were read into evidence or played on videotape.   This testimony is entitled to the same consideration you would give it had the witness personally appeared in court.   Like the testimony of a live witness, the statements made in a deposition are made under oath and are considered evidence that may be used to prove particular facts.

## 11.  THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

## 11.1.  THE PARTIES

The plaintiff in this case is TruePosition, Inc.   The defendant is Andrew Corporation.

I will refer to the plaintiff as "TruePosition."   I will refer to the defendant as "Andrew."

## 11.2.  THE PARTIES' CONTENTIONS

TruePosition contends that Andrew is directly infringing its '144 patent by using (in the United States) and offering for sale (from within the United States) Geometrix. TruePosition also contends that Andrew is infringing its '144 patent by supplying components of Geometrix from the United States to a foreign country.   TruePosition contends that it is entitled to damages caused by Andrew's alleged infringement. TruePosition also contends that Andrew's infringement of the '144 patent is knowing and willful.

Andrew contends that TruePosition committed fraud against Andrew.   Andrew also contends that TruePosition is barred from asserting the '144 patent against Andrew due to promises TruePosition made.

First I will explain the asserted claims of the '144 patent and the meaning of certain claim terms in dispute.

15

## 12. THE PATENT LAWS

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

16

## 13.  THE CLAIMS OF THE PATENTS IN SUIT

As you heard at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent.   The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing.   Claims may describe products or methods or for making or using a product.

Claims are usually divided into parts, called "limitations."   For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop.   The tabletop, legs and glue are each a separate limitation of the claim.

17

## 13.1.  CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.

It is my job as a judge to determine what the patent claims mean and to instruct you about that meaning.   You must accept the meanings I give you and use them when you decide whether or not the patent is infringed.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

I will be giving you a list of the claims of the patents at issue in this case as part of the verdict form when I conclude my instructions.

18

## 13.2.  MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

Some patent claim limitations may describe a "means" for performing a function, rather than describing the structure that performs the function.   For example, let's again take the table example, with a patent that describes a table in which the legs are glued to the tabletop.   One way to claim the table is to recite the tabletop, four legs and glue between the legs and the tabletop.   Another way to claim the table is to recite the tabletop and the legs but, rather than recite the glue, recite a "means for securing the legs to the tabletop."   This second type of claim limitation is called a "means-plus-function" limitation.   It describes a means for performing the function of securing the legs to the tabletop – that is, a way to do it – rather than reciting the glue itself.

When a claim limitation is in means-plus-function form, it covers the structures described in the patent specification for performing the function stated in the claim, and also any structure that is equivalent to the described structures.   The fact that the accused structure performs the claimed function using components different from those used by the structure described in the patent specification does not matter, so long as the overall structures are equivalent.

19

### 13.3. "COMPRISING" CLAIMS

The beginning, or preamble, portion of a claim often uses the word "comprising." In the patent context, "comprising" means "including" or "containing." A product claim that uses the word "comprising" or "comprises" is not limited to products that have only the limitations recited in the claim, but can also cover products that have more limitations than what is included in the claims. Likewise, a method claim that uses the term "comprising" or "comprises" can cover methods that include more steps than what is listed in the claim.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

20

## 13.4. LIMITATIONS OF THE CLAIMS AT ISSUE

To decide the question of infringement, you must first understand what the claims of the patent cover. It is my duty under the law to define what the patent claims mean.

You must ignore any different interpretation given to these terms by the witnesses or attorneys.

If I have not provided a specific definition for a given term, you are to use the ordinary meaning of that term. I instruct you that the following claim limitations have the following definitions:

**Prescribed set of reverse control channels**: A predetermined range of frequencies that transmit control information in only one direction, from a cellular telephone to a cell site.

**Periodic** and **periodically**: Discontinuously

**Timing signal**: Signal that conveys timing information

**Time stamp bits representing the time at which said cellular telephone signals were received**: Binary units representing the time when cellular telephone signals were received at the cell site.

**Means for processing said frames of data from said cell site systems to generate a table identifying cellular telephone signals and the differences in times of arrival of said cellular telephone signals among said cell site systems**: The function of the disclosed structure is to analyze the cellular telephone signals in order to generate a table that identifies the differences in times of arrival of said signals. The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-56 (ending with the acronym "TDOA"); Fig. 7 at the first four

21

blocks and table; col. 17, ll. 26-68 (minus any reference to "frequency difference data" or "frequency difference results"); and Figs. 8A-8B (minus any reference to "frequency differences"); or equivalents of such a computer processor.

**Means for determining, on the basis of said times of arrival differences, the locations of the cellular telephones responsible for said cellular telephone signals**: The function of the disclosed structure is to determine, on the basis of time of arrival differences, the location of the cellular telephones whose signals are received.   The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, l. 58 (beginning with the word "This") through col. 13, l. 62 (ending with the letter "C"); Fig. 7 at the fifth and sixth blocks; col. 18, ll. 1-34 (ending with "0.0001," but minus any reference to "frequencies"); and Fig. 8C through top four elements of Fig. 8D (minus any reference to "frequencies"); or equivalents of such a computer processor.

**Locating means for automatically determining the locations of said cellular telephones by receiving and processing signals emitted during said periodic reverse control channel transmissions**:   The function of the disclosed structure is to determine, without a specific request to do so, the locations of cellular telephones by receiving and analyzing the signals that the cellular telephones broadcast periodically over the reverse control channel.   The means of the disclosed structure is a computer processor programmed to perform the algorithm disclosed at col. 13, ll. 33-62 (ending with the letter "C"); Fig. 7 at the first six blocks and table; col. 17, l. 26 – col. 18, l. 34 (ending with "0.0001," but minus any reference to "frequency difference data," "frequency difference results," or "frequencies"); and Figs 8A through the top four elements of Fig. 8D

(minus any reference to "frequency difference" or "frequencies"); or equivalents of such a computer processor.

**Database means for storing location data identifying the cellular telephone and their respective location, and for providing means to said database to subscribers at remote locations**: The function of the disclosed structure is to store data that identifies each cellular telephone and its respective location, and for providing access to said data to subscribers at remote locations. The means of the proposed structure is the combination of the "database 20" and: (a) the "first terminal 22 coupled via a modem . . . and telephone line to the database 20" (col. 9, ll. 25-27; Fig. 2 at blocks 20, 22); or (b) the "second terminal 24 in radio communication with the database 20" (col. 9, ll. 27-29; Fig. 2 at blocks 20, 24); or (c) the "third, handheld terminal 26, which is carried by a user who also has a cellular telephone 10b, in radio communications with the database" (col. 9, ll. 29-31; Fig. 2 at blocks 20, 26); or equivalents of any such combination.

.

23

### INFRINGEMENT

### 14.  PATENT INFRINGEMENT – GENERALLY

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent.   If any person makes, uses, sells (within the United States), offers to sell (from within the United States), or imports what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.   This type of infringement is called "direct infringement."   In this case, TruePosition alleges that Andrew's Geometrix directly infringes claims 1 and 31 of the '144 patent, directed to cellular telephone location systems and methods of determining the location of cellular telephones.

In addition to direct infringement, there are two types of indirect infringement that may occur when components of a system or method are supplied from the United States to a foreign country – inducing infringement and contributory infringement.   TruePosition also accuses Andrew of inducing or contributing to the infringement of claims 1, 22 and 31 of the '144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

TruePosition must prove infringement and inducement or contributory infringement by a preponderance of the evidence.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.   You must compare the language of each of the patent claims, as I have explained its meaning to you, to Geometrix, and determine whether or not there is infringement.

You must consider each claim individually and must reach your decision as to

24

each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

Evidence that Geometrix was developed through independent research or is covered by an Andrew patent is not relevant to the question of infringement. If such a product falls within the scope of the asserted claims, it nevertheless infringes.

25

## 14.1.  DIRECT INFRINGEMENT

As I have just explained, you must decide whether or not TruePosition has proved, by a preponderance of the evidence, that Andrew has made, used, sold (within the United States), or offered for sale (from within the United States) a product or method covered by any of the claims at issue in this case.   If Andrew infringes one claim, then Andrew infringes the '144 patent even if, in good faith, it believed that Geometrix did not infringe the '144 patent.   Andrew's knowledge or intent to infringe is not relevant.

## 14.2.  INFRINGEMENT -- EVERY CLAIM LIMITATION MUST BE PRESENT

In order to infringe a patent claim, a system or method must include every limitation of the claim.   If Geometrix omits even a single limitation recited in a claim, then you must find that Andrew has not directly infringed that claim.   If the combination consisting of Geometrix and Saudi Telecom's cellular network omits even a single limitation recited in a claim, then you must find that Andrew has not indirectly infringed that claim.   You must consider each claim of the '144 patent separately.

A claim limitation is literally present if it exists in the accused system or method exactly as it is described in the claim language, either as I have explained that language to you or, if I did not explain it, as you understand its ordinary meaning.

27

## 14.3. INFRINGEMENT THROUGH THE SUPPLY OF COMPONENTS FROM THE UNITED STATES TO A FOREIGN COUNTRY (UNDER 35 U.S.C. §271(f))

As I have told you, in addition to direct infringement, there are two types of indirect infringement that may occur when the components of a product or method are shipped outside of the United States -- inducing infringement and contributory infringement.    In this case, TruePosition contends that Andrew has induced or contributed to the infringement of the '144 patent by supplying components of Geometrix from the United States to Saudi Arabia.

28

## 14.4.  INDUCING PATENT INFRINGEMENT UNDER 35 U.S.C. §271(f)(1)

A person induces patent infringement if he or she urges, encourages or purposefully causes someone to infringe a patent. Inducing infringement cannot occur unintentionally.

In order to prove Andrew induced infringement of the '144 patent, TruePosition must prove five things by the preponderance of the evidence:

(1)  Andrew knew about the '144 patent; and

(2)  Andrew shipped components of Geometrix to Saudi Arabia; and

(3)  The components of Geometrix that Andrew shipped to Saudi Arabia constitute all or a substantial portion of the claimed invention; and

(4)  Andrew knew or should have known that those components would be assembled into a product that would infringe; and

(5)  Andrew specifically intended for the infringement to occur.

If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew induced patent infringement. However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not induce patent infringement.

29

### 14.5.  CONTRIBUTORY INFRINGEMENT UNDER 35 U.S.C. §271(f)(2)

Contributory infringement can occur when a supplier provides a component for use in a patented system or method.   TruePosition asserts that the supplying of Geometrix components to Saudi Arabia by Andrew is a contributory infringement of the asserted claims.   In order to establish that Andrew has contributorily infringed the asserted claims, TruePosition must prove five things by the preponderance of the evidence:

(1)  Andrew knew of the '144 patent;

(2)  Andrew supplied at least one component of at least one claim of the '144 patent from the United States to a place outside of the United States;

(3)  Andrew knew that the component was especially made for a use that would infringe the '144 patent;

(4)  The component was not a staple article or commodity of commerce suitable for substantial noninfringing use; and

(5)  Andrew intends for someone outside of the United States to combine or implement the component in a way that would infringe the patent if such combination or implementation occurred in the United States.

If you are persuaded that TruePosition has proven each of these five things, then you should find that Andrew contributed to patent infringement.   However, if you find that TruePosition has failed to prove any one of these five things, then you should find that Andrew did not contribute to patent infringement.

30

### 14.6.  INFRINGEMENT -- MEANS-PLUS-FUNCTION CLAIM LIMITATIONS

As I told you, a means-plus-function claim limitation recites a means for performing a particular function rather than reciting a specific structure or device.

To prove that an accused system includes a structure that is literally covered by a means-plus-function limitation, TruePosition must show:   First, that Geometrix contains a structure that performs the identical function recited in the means-plus-function limitation; and second, that the structure in Geometrix that performs that function must be either the same as or equivalent to the corresponding structure disclosed in the patent specification.

Whether or not the structure of Geometrix is equivalent to the structure disclosed in the patent and the function recited in the claims is decided from the perspective of a person of ordinary skill in the art.   A structure is equivalent if such an ordinary skilled person would consider the differences between the accused structure and the structure in the patent to be insubstantial.

To better understand means-plus-function claim limitations, let's go back to our example of the claim reciting three limitations – first, a tabletop, second, legs and third, a means for securing the legs to the tabletop.   The third limitation is the means-plus-function portion of the claim.   The function is "securing the legs to the tabletop."   To determine the structure that performs this function, we look to the description in the patent.   The patent in our example discloses glue to secure the legs to the tabletop.   So, "glue" is the structure that performs the function of "securing the legs to the tabletop."

31

Let's assume that the accused device uses nails instead of glue to perform the function of "securing the legs to the tabletop." The fact that nails and glue are different does not mean that, under the patent laws, they may not be equivalent. Whether or not they are equivalent depends on such things as the importance of the glue to the invention claimed in the patent, whether those skilled in the art of table-making would consider the glue and nails to be interchangeable, whether in the patent or prosecution history the two are referred to as equivalent, and so on. If the glue is not considered important or those skilled in the art consider nails and glue to be interchangeable or if the patent or prosecution history refer to nails and glue as interchangeable, then glue and nails are equivalent.

32

## 14.7. DETERMINATION OF INFRINGEMENT

You should evaluate infringement for each asserted claim of the '144 patent separately. If you find that TruePosition has proved, by a preponderance of the evidence, that each limitation of the system claims – claims 1 or 22 of the '144 patent – is present in Geometrix, then you must find that Andrew infringes that claim. Likewise, for the method claim – claim 31 of the '144 patent – if you find that TruePosition has proved, by a preponderance of the evidence, that each step of the claim is present in a method that is performed by Geometrix, you must find infringement of that claim.

Furthermore, if you find that TruePosition has proved, by a preponderance of the evidence, that Andrew has indirectly infringed a '144 patent claim, either by inducing infringement or by contributing to the infringement of the '144 patent, then you must find infringement of that claim.

33

## 15.  WILLFUL INFRINGEMENT

If you find, on the basis of the evidence and the law as I have explained it, that Andrew directly or indirectly infringed at least one claim of the '144 patent, you must then decide whether or not that infringement was willful.   The fact that you may have determined that Andrew infringed the '144 patent does not mean that the infringement was willful.   Willfulness requires you to determine whether Andrew's actions before suit was filed were objectively reckless with regard to the '144 patent.

The issue of willful infringement is relevant, not to your decision of whether or not there is infringement, but rather to the amount of damages to which TruePosition may be entitled, if you find infringement.   A finding of willful infringement may, in certain circumstances, entitle the patent owner to increased damages for infringing acts.   It is my job to decide whether or not to award increased damages to TruePosition should you find willful infringement.

To establish willful infringement, TruePosition must prove three things by clear and convincing evidence.   First, TruePosition must prove that Andrew was aware of the '144 patent.   Second, TruePosition must prove that Andrew's actions before this suit was filed on October 25, 2005 constituted infringement of the '144 patent, and that Andrew took those actions despite an objectively high likelihood that they constituted infringement of the '144 patent.   Andrew's subjective state of mind is not relevant to this objective inquiry.   Finally, TruePosition must prove that Andrew knew or should have known that its actions taken before October 25, 2005 created an objectively high risk of infringement. Andrew's state of mind is relevant to this inquiry.   If you find that TruePosition has not

34

proved any of these three elements, then you must find that any infringement of the '144 patent was not willful.

## 16.  FRAUD

Andrew contends that TruePosition committed fraud by failing to declare its '144 patent as a patent essential to an ETSI standard. In order to prove fraud, Andrew must prove by a preponderance of the evidence that:

(1)  TruePosition made a misrepresentation or omission of a material fact;

(2)  TruePosition made that misrepresentation or omission knowingly or with reckless disregard for the truth;

(3)  TruePosition made the misrepresentation or omission with the intent to mislead Andrew;

(4)  Andrew reasonably relied on the misrepresentation or omission; and

(5)  Andrew was damaged as a result of relying on the misrepresentation or omission.

## 16.1.  FRAUD -- MISREPRESENTATION OR OMISSION

In this case, Andrew contends that TruePosition omitted a material fact by failing to declare its '144 patent as a patent essential to an ETSI standard.   To satisfy this element, Andrew must prove, by a preponderance of the evidence, that TruePosition had a duty to declare its '144 patent as a patent essential to an ETSI standard.   In order to prove that TruePosition had such a duty, Andrew must prove that the '144 patent was in fact essential to an identified ETSI standard.

If you find that Andrew has proven that TruePosition had a legal duty to declare the '144 patent as essential to an ETSI standard, then you should go on to consider whether Andrew has satisfied its burden of proof in establishing the remaining elements of fraud. If you find that Andrew has not proven that TruePosition had a legal duty to declare the '144 patent as essential to an ETSI standard, then you should not consider the remaining elements of fraud.

37

## 16.2.  FRAUD -- MISREPRESENTATION OR OMISSION MADE KNOWINGLY OR WITH RECKLESS DISREGARD FOR THE TRUTH

To satisfy this element, Andrew must prove that TruePosition knew or should have known that the '144 patent was required to be disclosed to ETSI under TruePosition's interpretation of the patent, but that TruePosition knowingly failed to declare the '144 patent to ETSI.   Or, Andrew must prove that TruePosition's alleged failure to declare the '144 patent to ETSI was done with a reckless disregard for the truth. "Reckless disregard for the truth" means less than a knowing lie, but more than negligently forgetting to tell.

## 16.3.  FRAUD -- INTENT TO MISLEAD

To satisfy this element, Andrew must prove that TruePosition intended to mislead

Andrew by not declaring the '144 patent to ETSI as a patent essential to an ETSI

standard.

## 16.4.  FRAUD -- ANDREW'S RELIANCE

Andrew must prove that it did, in fact, rely on TruePosition's omission or misrepresentation, and that Andrew's reliance was reasonable.   Andrew's reliance may be a belief in the misrepresentation or omission that either causes Andrew to take actions it would otherwise not have taken, or causes Andrew to not take an action it would have otherwise taken.

40

## 16.5.  FRAUD -- DAMAGES

Andrew must prove that it was damaged in some way as a result of its reliance.

These damages can include, but are not limited to, economic harm.

## 17. PROMISSORY ESTOPPEL

Andrew's next defense is promissory estoppel.

"Estoppel" means barring or preventing someone from taking a position that is inconsistent with an earlier position, where doing so would be unfair.   Promissory estoppel would arise if TruePosition made a promise to Andrew, Andrew reasonably relied on this promise, and TruePosition expected the promise to induce certain action or inaction by Andrew.

To prove promissory estoppel, Andrew must establish the following four things by clear and convincing evidence:

(1)  TruePosition made a promise;

(2)  TruePosition intended to induce Andrew's action or inaction based on the promise;

(3)  Andrew reasonably relied on the promise; and

(4)  Andrew was injured by its reliance.

Although the question of whether promissory estoppel applies in this case is one that I will ultimately decide, I will ask for your findings of fact so that I can consider them in making that decision.

42

## 17.1.  PROMISSORY ESTOPPEL -- THE PROMISE

A promise is a declaration by which one party agrees to perform or refrain from performing a specified act.    TruePosition's promise can be oral or it can be made in writing. Further, the sum of TruePosition's conduct can give rise to the promise. TruePosition's representations must be reasonably definite and certain so that the intentions of the parties can be ascertained.    Distinguishing a promise from a non-promise must be done through a reasonable interpretation of both parties' conduct in light of the surrounding circumstances.    Mere expressions of opinion, expectation, or assumption are not promises.

## 18.  USE FOR THE UNITED STATES

Andrew contends that the Ashburn demonstration is not an act of infringement because it was organized for an agency of the United States and with the authorization and consent of the United States.   Andrew has the burden of proving this fact by a preponderance of the evidence.

44

## 19.  DAMAGES

I have now instructed you on the law governing TruePosition's claims of patent infringement and Andrew's claims of fraud and promissory estoppel.   We turn now to damages.   If, after considering all of the evidence and the law as I have stated it, you find that at least one claim of the '144 patent is infringed by Andrew, then you must determine what damages Andrew must pay to TruePosition to compensate for that infringement.   If, on the other hand, you find that there has been no infringement of any claim of the '144 patent, then TruePosition is not entitled to any damages and you should not make any findings about damages.

The fact that I am instructing you about damages does not mean that TruePosition is or is not entitled to recover damages.   I am expressing no opinion one way or the other. These instructions are only to guide you in case you find that a claim has been infringed.

45

## 19.1.  COMPENSATORY DAMAGES IN GENERAL

The patent laws provide that, in the case of infringement of a patent claim, the owner of a patent shall be awarded damages adequate to compensate for the infringement.  These damages may not be less than what a reasonable royalty would be for the use made of the invention.  In other words, damages are compensation for losses suffered by the patent owner as a result of the infringement.  In determining damages, you must decide how much financial harm the patent owner has suffered by reason of the infringement.  You must decide the amount of money that the patent owner would have made had the infringer not infringed.

Damages are only to compensate TruePosition, to put TruePosition into the position it would have been if there had been no infringement.  You may not add anything to the amount to punish or to set an example.

46

## 19.2.  DAMAGES — BURDEN OF PROOF

TruePosition has the burden of proving damages by the same "preponderance of the evidence" standard I discussed earlier.    TruePosition is entitled to damages that it has proved with "reasonable certainty."    Reasonable certainty does not require TruePosition to prove its damages with absolute or mathematical certainty.    Mere difficulty in ascertaining damages is not fatal to TruePosition.    However, TruePosition is not entitled to speculative damages.    That is, you should not award damages for losses which, although possible, are wholly remote or left to conjecture or guess.    If you have any doubts about the reasonable certainty of damages, these doubts should be resolved against Andrew.

47

## 19.3.  DAMAGES – LOST PROFITS

One of the methods permitted by law for computing damages in patent cases is called "lost profits" damages.   This is the method that TruePosition uses to calculate the damages it claims.

Simply stated, lost profit damages are the profits TruePosition would have earned had it not been for Andrew's infringement.   They are not the profits Andrew actually made.

TruePosition claims that it lost profits because Andrew's infringement took away one specific sale, to STC in Saudi Arabia, that TruePosition would have made if Andrew had not sold its infringing product instead.

48

### 19.4.  LOST PROFITS FROM LOST SALES – "BUT FOR" TEST

To prove that it lost sales, TruePosition must prove that it is more probable than not that it would have made the sale to STC if Andrew had not made it by selling an infringing product.  This test is often called the "but for" test:  that is, TruePosition must show that "but for" Andrew's infringement, it would have made the sales and earned the profits that it claims it lost.  To apply the "but for" test, you must imagine the marketplace as it would have existed if the infringement had not occurred and consider what would have happened.  In other words, you should determine what STC would have done if Andrew's infringement had not occurred.

49

## 19.5.  DAMAGES -- LOST PROFITS FACTORS

To recover damages for lost sales, a patentee, such as TruePosition, must generally show:

(1)  That there was demand for the patented product;

(2)  That there are no acceptable noninfringing substitutes;

(3)  That the patentee had the manufacturing and marketing capability to meet the demand;

(4)  The amount of profit that it would have made.

In this case, Andrew does not contest that there was demand for the patented product, or that TruePosition had the manufacturing and marketing capability to meet the demand.

50

## 19.6.  LOST PROFITS – TWO-SUPPLIER MARKET

In situations where there are only two suppliers in the market, the first two of those

factors collapse.   In such circumstances, to prove lost profits under the "two-supplier

market" test, a patentee must show:

(1)   That the relevant market contains only two suppliers;

(2)   That it had the manufacturing and marketing capability to make the sales that

were diverted to the infringer; and

(3)   The amount of profit it would have made on those sales.

In this case, Andrew does not contest TruePosition's manufacturing and marketing

capability to make the sales that were diverted to Andrew.

51

## 19.7.  LOST PROFITS – ACCEPTABLE NONINFRINGING SUBSTITUTES

Andrew claims that TruePosition cannot prove it would have made the sale to STC because it contends there were available noninfringing substitutes.    To be an noninfringing substitute, a product must be both (1) available in the market, and (2) acceptable to the market.    In determining whether TruePosition lost sales due to Andrew's infringement, you must consider whether or not, if Andrew were not selling Geometrix, some or all of the people who bought from Andrew would have bought a different, noninfringing product from Andrew or from somebody else, rather than buy the patented product from TruePosition.

## 19.8.  AMOUNT OF LOST PROFITS

If TruePosition has proved that it lost profits due to infringement by Andrew, then you are to determine the amount of profits that TruePosition lost.   As I have already instructed you, TruePosition must prove the amount of its lost profits to a reasonable probability, but absolute certainty is not required.   The amount of lost profits damages, however, should not include amounts that are merely speculation.

## 20.  DELIBERATION AND VERDICT

### 20.1.  INTRODUCTION

Let me finish up by explaining some things about your deliberations in the jury room, and your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.   If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.   The officer will give them to me, and I will respond as soon as I can.   I will have to talk to the lawyers about what you have asked, so it may take me some time to get back to you.   Any questions or messages normally should be sent to me through your foreperson, who by custom of this Court is the juror seated in the first seat, first row.

One more thing about messages.   Do not ever write down or tell anyone how you stand on your votes.   For example, do not write down or tell anyone that you are split 4-4, or 5-3, or whatever your vote happens to be.   That should stay secret until you are finished.

## 20.2.  UNANIMOUS VERDICT

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without violence to your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A form of verdict has been prepared for you.  The verdict form asks you a series of questions about TruePosition's claims of infringement and Andrew's claims of fraud and promissory estoppel.  Unless you are directed otherwise in the form of the verdict, you must answer all of the questions posed, and you all must agree on each answer.  When you have reached a unanimous agreement as to your verdict, you will return your verdict to the courtroom deputy.

It is proper to add the caution that nothing said in these instructions and nothing in the form of verdict is meant to suggest or convey in any way or manner what verdict I think you should find.  What the verdict shall be is the sole and exclusive duty and responsibility of the jury.

55

## 20.3.  DUTY TO DELIBERATE

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.   In fact, it is your duty to talk with each other about the evidence and to make every reasonable effort you can to reach a unanimous agreement.   Talk with each other, listen carefully and respectfully to each other's views and keep an open mind as you listen to what your fellow jurors have to say.

Try your best to work out your differences.   Do not hesitate to change your mind if you are convinced that other jurors are right and your original position was wrong.   But do not ever change your mind just because other jurors see things differently, or just to get the case over with.   In the end, your vote must be exactly that – your own vote.   It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

If any member of the jury took notes, let me remind you that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.   Whether you took notes or not, each of you must form and express your own opinion as to the facts of the case.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.   So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

We generally end our business day at 4:30 p.m.   If we do not hear from you by 4:30, I will be sending you a note to see whether you are close enough to a verdict to want to deliberate after 4:30 or whether you are going to recess for the evening and resume

56

your deliberations on the next business day.   You will need to respond in writing to that question.

I am going to remind you now, if you go home this evening and resume your deliberations on the next business day, you are not to talk about the case among yourselves or with anyone else during the evening recess.   You may talk about the case only while you are in the jury room and everyone on the jury is present.

So if you do go home this evening, keep that instruction in mind.   Unless I hear from you that you have a different schedule in mind, I will expect you all to come back the next business day at 9:30.   You are not to start deliberating until you are all present in the jury room and participating together.

Because the lawyers have to make themselves available to respond to questions or receive the verdict, I generally give them between 1:00 and 2:00 to step away from the phone.   So whenever you are deliberating over the lunch hour, let me remind you, if you ask a question between 1:00 and 2:00, you probably will not get an answer right away because we are all going to be stepping away from our phones at that time.

57

## 20.4.  COURT HAS NO OPINION

Let me finish up by repeating something that I said to you earlier.   Nothing that I have said or done during this trial was meant to influence your decision in any way.   You must decide the case yourselves based on the evidence presented.