# Exhibit A

Rhys  Robinson    November 15, 2006

Page 1

RHYS W. ROBINSON

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

- - -

TRUEPOSITION, INC.,      :   CIVIL ACTION

    Plaintiff/           :

Counterclaim Defendant,:

                        :

                        :

     VS.                  :

                        :

                        :

ANDREW CORPORATION,      :

     Defendant/           :

Counterclaim Plaintiff.:  NO. 05-747-SLR

- - -

VIDEOTAPED DEPOSITION OF RHYS W. ROBINSON

NOVEMBER 15, 2006

- - -

cba1cbfe-3eaf-4609-96ea-8c60cd1962bf

Rhys  Robinson   November 15, 2006

cba1cbfe-3eaf-4609-96ea-8c60cd1962bf

Rhys   Robinson   November 15, 2006

cba1cbfe-3eaf-4609-96ea-8c60cd1962bf

Rhys   Robinson    November 15, 2006

cba1cbfe-3eaf-4609-96ea-8c60cd1962bf

Rhys   Robinson   November 15, 2006

Rhys   Robinson    November 15, 2006

# Exhibit B

1

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE DISTRICT OF DELAWARE

- - -

TRUEPOSITION, INC.,                    :           CIVIL ACTION
                                       :
          Plaintiff                    :
                                       :
          vs.                          :
                                       :
ANDREW CORPORATION,                    :
                                       :
          Defendant                    :           NO. 05-747 (SLR)

- - -

                              Wilmington, Delaware
                              Wednesday, August 29, 2007
                              4:35 o'clock, p.m.
                              *** Pretrial Conference

- - -

BEFORE:  HONORABLE SUE L. ROBINSON, U.S.D.C.J.

- - -

APPEARANCES:

          CONNOLLY, BOVE, LODGE & HUTZ LLP
          BY:  JAMES D. HEISMAN, ESQ. and
               KRISTEN CRAMER, ESQ.

               -and-

          WOODCOCK WASHBURN LLP
          BY:  PAUL B. MILCETIC, ESQ.,
               KATHLEEN MILSARK, ESQ.,
               AMANDA KESSEL, ESQ. and
               DANIEL J. GOETTLE, ESQ.
               (Philadelphia, Pennsylvania)

               Counsel for Plaintiff


                              Valerie J. Gunning,
                              Official Court Reporter

1   get to everyone's evidentiary issues, which are found at

2   Tabs 3 and 6 of the joint pretrial order, are there other

3   general questions or issues that we need to address?

4           MR. AROVAS:  Your Honor, there is one.  And we

5   have discussed this already with the other side, so really

6   it's just a matter of putting it on the record.

7           There is, in one of the evidentiary issues, a

8   question about whether a particular witness could be called

9   life or by deposition.  In connection with speaking to that

10  witness about his availability, this is a former TruePosition

11  employee, he brought to our attention that he actually had a

12  computer full of e-mails about his standard participation on

13  behalf of TruePosition.

14          We raised that today with TruePosition's counsel,

15  to let them know that we had been informed of the presence of

16  these documents, which appear, based on his description, to

17  be highly relevant to the standards misconduct claims.  This

18  witness was the TruePosition representative to the ETSI

19  standards body and one of the individuals who has testified

20  that he was notifying company management that they should

21  have been disclosed in patents to the standards body.

22          In any event, the discovery issue, we have raised

23  this with the other side and have come to an agreement that

24  we will try to arrange with this witness to have those

25  documents produced as soon as possible, hopefully tonight,

8

1    maybe tomorrow.

2              THE COURT:  We're running real short on time.

3              Is this Robinson?

4              MR. AROVAS:  Reese Robinson.

5              THE COURT:  Reese Robinson.

6              MR. AROVAS:  So we are hopeful that, at the

7    latest, by tomorrow, those documents will be produced,

8    and if there are any follow-up issues in depositions or

9    anything like that, counsel has agreed to meet and confer

10   on that.

11             MR. DESMARAIS:  Your Honor, let me clarify one

12   thing.  These were e-mails that they should have produced to

13   us, not that we should have produced to them.

14             THE COURT:  Well, I assume, since he was a

15   TruePosition employee --

16             MR. DESMARAIS:  Right.

17             THE COURT:  -- I gathered that.

18             MR. DESMARAIS:  Right.

19             MR. AROVAS:  In connection with his depositions,

20   there was an agreement that TruePosition counsel would

21   collect and produce his documents as a former employee, and

22   it's just through scheduling the trial testimony that this

23   issue came up.

24             In any event, so as I understand it, and

25   TruePosition can jump in and comment if they need to, but we

9

1   have an agreement that we will make arrangements for those to

2   be produced immediately.

3               After those are produced, the parties are going

4   to meet and confer concerning whether any additional

5   depositions are necessary in light of the additional

6   production.  And we will meet and confer and, hopefully,

7   there will be no issues, and we'll be able to resolve all of

8   those prior to trial.

9               THE COURT:  All right.

10               MR. MILCETIC:  Your Honor, can I jump in?

11               THE COURT:  Yes.

12               MR. MILCETIC:  Yes.  This is the first that we've

13   heard of this today, so I can't say we've really agreed to

14   anything.  I have not seen any documents.  I have not heard

15   about any documents until a few minutes before this pretrial

16   conference.

17               And my -- my comment on it is that if they want

18   something in this case, if there's something that was

19   supposedly withheld or that we didn't give them, they can

20   have it.  They can have anything they want relating to the

21   standards issues in this case.

22               With respect to Reese Robinson, we subpoenaed

23   him, and as I understand it, from what my people tell me,

24   we subpoenaed him and we collected documents, and as far as I

25   know, all of the documents were turned over to the other

10

1    side.

2              I also think they subpoenaed him already

3    in this case.  I think there were two subpoenas.  And

4    pursuant to those subpoenas, he produced documents.  They

5    are in the record in this case, and I do not know anything

6    about this.

7              So I can't say I agree to anything other than

8    if there are documents, we're very unlikely to have any

9    objections, and we're very unlikely to have any objections

10   that they come in the record or that they can take

11   depositions, whatever depositions they want, in the little

12   amount of time that's left between now and trial.

13             MR. AROVAS:  So I think the first thing that

14   needs to happen, they need to be produced.  So we have agreed

15   we're going to make arrangements for those to be produced

16   immediately, and I guess we can take the issue of whether we

17   need additional depositions up after everybody goes through

18   the documents.

19             But this was a case where, I mean, according

20   to the witness, he informed counsel for TruePosition that

21   he had the documents, they were never collected, and there

22   was an explicit agreement at the time that -- that his

23   documents were going to be collected by their counsel.

24   In any event, I don't think we need to get into all of

25   that right now.

# Exhibit C

| | |
|---|---|
| **From:** | Robinson, Rhys <rrobinson@trueposition,> |
| **Sent:** | Wednesday, August 25, 2004 11:41 AM |
| **To:** | Beckley, Fred <fbeckley@trueposition, inc..com> |
| **Cc:** | Sheehan, Joe <jsheehan@trueposition, inc..com>; Anderson, Rob <randerson@trueposition, inc..com>; Shaw, Norman <nshaw@trueposition, inc..com> |
| **Subject:** | ETSI IPR declaration |

Fred,

Please discuss this RAN work related IPR question with Joe/Rob and let me know how/whether you to proceed.

**My recommendation:**
IPR declaration is a normal activity that the vendors do all the time, so I advise that we don't read too much into the "timing" of our declaration pre work item approval. However, if there is any, the potential impact from not declaring this to ETSI increases as we approach RAN approval of our work item request, which we expect will be granted in a few weeks. If we wait until after the work item is approved to declare this IPR, we risk being categorized as playing "The IPR shell-game".

Thanks,

Rhys

**Rhys William Robinson**
Industry Relations Manager
TruePosition, Incorporated
Office: +1 610 680 2119
Mobile: +1 610 202 9879
Fax: +1 610 680 1199
RRobinson@TruePosition.com
http://www.trueposition.com/

*Confidentiality Notice*
*This e-mail (including any attachments) is intended only for the recipients named above. It may contain confidential or privileged information and should not be read, copied or otherwise used by any other person. If you are not a named recipient, please notify the sender of that fact and delete the e-mail from your system.*

RR0040749
CONFIDENTIAL INFORMATION

| | |
|---|---|
| **From:** | Robinson, Rhys <rrobinson@trueposition,> |
| **Sent:** | Monday, June 14, 2004 3:26 PM |
| **To:** | Beckley, Fred <fbeckley@trueposition, inc..com> |
| **Cc:** | Shaw, Norman <nshaw@trueposition, inc..com> |
| **Subject:** | FW: IP declaration |

Fred,

Below is the most recent email about this IP declaration.  If you are in the office this afternoon, let me know when you have free time so I can come over.

Would like to declare these this week, but want your OK first.

Please let me know.

Thanks,

Rhys

**Rhys William Robinson**
Industry Relations Manager
TruePosition, Incorporated
Office: +1 610 680 2119
Mobile: +1 610 202 9879
Fax: +1 610 680 1199
RRobinson@TruePosition.com
http://www.trueposition.com/

-----Original Message-----
**From:**  Robinson, Rhys
**Sent:**  Tuesday, June 08, 2004 3:06 PM
**To:**   Beckley, Fred
**Cc:**   Shaw, Norman; Anderson, Rob; Ward, Matthew
**Subject:**   RE: IP declaration

Fred,
In an effort to avoid "meeting paralysis" (i.e., I've stopped by twice so far today, but could not find you, Norm or Rob in their offices), especially since (1) you already asked that we declare 6,047,192, and (2) it's not a "timing" issue per se, the lingering question becomes, **against which "Project"** do we declare these UMTS patents that Matt provided to me?

The obvious choices are either "3GPP", "UMTS", GPRS" or "UMTS/CDMA".  My opinion and what later this week I will declare these patents against unless I hear a strong opinion otherwise is as follows:

```
------------------------------------------------------------------------------
[Project = UMTS/CDMA]
CDMA/UTMS                           - 6,047,192 - Robust Efficient Localization
System (4/4/2000)
\-----------------------------------------------------------------------------
[For these three, Project = GPRS" and "Project = UMTS"]
AoA Location                 - 4,728,959 - Direction Finding Localization (3/1/1988)
Control/Access Channel Location - 5,327,144 - Cellular Telephone Location System
(7/5/1994)
Multiple Pass Location        - 6,503,428 - Multiple Pass Location Processing
(08/05/2003)"
```

Please let me know if you believe otherwise.

Thanks,

''''Rhys


**Rhys William Robinson**
Industry Relations Manager
TruePosition, Incorporated
Office: +1 610 680 2119
Mobile: +1 610 202 9879
Fax: +1 610 680 1199
RRobinson@TruePosition.com
http://www.trueposition.com/

*Confidentiality Notice*
*This e-mail (including any attachments) is intended only for the recipients named above. It may contain confidential or privileged information and should not be read, copied or otherwise used by any other person. If you are not a named recipient, please notify the sender of that fact and delete the e-mail from your system.*


-----Original Message-----
**From:** Beckley, Fred
**Sent:** Friday, June 04, 2004 4:43 PM
**To:** Robinson, Rhys
**Cc:** Shaw, Norman; Anderson, Rob
**Subject:** RE: IP declaration

Let's the four of us discuss this issue next week.  Thanks.


-----Original Message-----
**From:** Robinson, Rhys
**Sent:** Friday, June 04, 2004 4:25 PM
**To:** Beckley, Fred
**Cc:** Shaw, Norman; Anderson, Rob
**Subject:** FW: IP declaration

Fred,

Here's a brief status regarding research into how/where to file with ETSI this IPR.
Now that our proposed work item was "downgraded" to a study item, we will need to declare the "Robust Efficient Localization System" against this project as well as against a "UMTS/CDMA "project" that was established by ETSI to be a general, catch-all repository for UMTS/CDMA related patents.

Thanks,

Rhys

**Rhys William Robinson**
Industry Relations Manager
TruePosition, Incorporated
Office: +1 610 680 2119
Mobile: +1 610 202 9879
Fax: +1 610 680 1199
RRobinson@TruePosition.com
http://www.trueposition.com/

*Confidentiality Notice*
*This e-mail (including any attachments) is intended only for the recipients named above. It may contain confidential or privileged information and should not be read, copied or otherwise used by any other person. If you are not a named recipient, please notify the sender of that fact and delete the e-mail from your system.*

-----Original Message-----
**From:**  Robinson, Rhys
**Sent:**  Friday, June 04, 2004 3:30 PM
**To:**  Beckley, Fred
**Subject:**  FW: IP declaration

Fred,

Could you please ask Matt to assist me making this declaration with the 3GPP?  Given that he made our earlier IPR declarations with them, all I'm asking for is his files related to this.  Since the morning that Rob announced that we need to declare this patent, I have made several attempts to get this information, but ... maybe I was not "going through the right channels"?

Thanks,

Rhys

**Rhys William Robinson**
Industry Relations Manager
TruePosition, Incorporated
Office: +1 610 680 2119
Mobile: +1 610 202 9879
Fax: +1 610 680 1199
RRobinson@TruePosition.com
http://www.trueposition.com/

*Confidentiality Notice*
*This e-mail (including any attachments) is intended only for the recipients named above. It may contain confidential or privileged information and should not be read, copied or otherwise used by any other person. If you are not a named recipient, please notify the sender of that fact and delete the e-mail from your system.*

-----Original Message-----
**From:**  Anderson, Rob
**Sent:**  Wednesday, May 26, 2004 9:42 AM
**To:**  Gross, Bob
**Cc:**  Robinson, Rhys; Beckley, Fred; Sheehan, Joe; Shaw, Norman
**Subject:**  IP declaration

Bob,

US Patent 6,047,192 "Robust Efficient Localization System," is a blocking patent for UTDOA location of in CDMA system (UMTS), and should be declared.

Rob

RR0043394
CONFIDENTIAL INFORMATION

RR0043395
CONFIDENTIAL INFORMATION

RR0043496
CONFIDENTIAL INFORMATION

RR0043497
CONFIDENTIAL INFORMATION

RR0026485
CONFIDENTIAL INFORMATION

**RR0026486**
**CONFIDENTIAL INFORMATION**

RR0026487
CONFIDENTIAL INFORMATION

# Exhibit D

DB01:1356783.1

**Marcus, David L. (Woodcock Washburn)**

EXHIBIT NO.
1-5-2007
MARIA N. DAMIANI

From:           James Heisman [JHeisman@cblh.com]
Sent:           Tuesday, December 05, 2006 11:17 AM
To:             jingersoll@ycst.com
Cc:             rpernicwaldron@kirkland.com; rnparks@kirkland.com; Marcus, David L. (Woodcock
                Washburn); Heist, Dale M. (Woodcock Washburn); Milcetic, Paul B. (Woodcock Washburn)

Hi Josy:

Following up on our conversation of a few minutes ago, in addition to the terms set forth in my email of 12/4/06 concerning the resolution of the Robinson dispute, the following terms shall also apply to the resumption of Robinson's deposition:

1. TPI shall produce to Andrew all non-privileged documents produced by Robinson pursuant to TPI's subpoena.

A. To the extent that privileged documents relate to "standards", then TPI shall produce those documents to Andrew subject to the parties agreement that such production shall not constitute a subject matter or other waiver of any applicable privilege. In other words, the waiver of privilege as a result of the production shall be limited solely to the produced documents themselves.

B. To the extent Robinson produces TPI privileged information on subjects other than "standards", TPI shall log such documents subject to Andrew's ability to challenge the privilege designations at the appropriate time and place.

I trust this captures the substance of our discussion and puts the Robinson issues to rest.

Regards,
James D. Heisman
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899
Tel: 302.888.6216
Fax: 302.252-4209
Email: jdh@cblhlaw.com
NOTICE: The information contained in this message may be an attorney-client privileged communication and/or contain confidential information intended only for the use of the persons named above and others expressly authorized to receive it. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is prohibited and you are asked to notify us immediately by return e-mail and to delete this message without copying it.

1

**Marcus, David L. (Woodcock Washburn)**

| | |
|---|---|
| From: | James Heisman [JHeisman@cblh.com] |
| Sent: | Monday, December 04, 2006 3:54 PM |
| To: | jingersoll@ycst.com |
| Cc: | rpernicwaldron@kirkland.com; mparks@kirkland.com; Milcetic, Paul B. (Woodcock Washburn); Marcus, David L. (Woodcock Washburn); Heist, Dale M. (Woodcock Washburn) |
| Subject: | TruePosition v Andrew - Agreement on Rhys Robinson |

Michael, Josy and Rachel -

This is to confirm the agreement reached with respect to Rhys Robinson.
In reliance on the terms set forth below, TruePosition has agreed to withdraw its emergency request.

1. Andrew will not object to TruePosition subpoenaing Mr. Robinson for testimony and documents;

2. The testimony resulting from the subpoena will be a continuation of the prior deposition and constitute a single transcript;

3. TruePosition will be able to examine Mr. Robinson for 3.5 to 4 hours, and Andrew will be permitted to cross-examine Mr. Robinson on that testimony;

4. No firms representing parties in this case, including Kirkland & Ellis and Woodcock Washburn, will represent Mr. Robinson in connection with the subpoena or the testimony pursuant to the subpoena;

5. TruePosition will produce the documents referenced in David Marcus's Nov. 16, 2006 letter to Ms. Waldron, to the extent they still exist in TruePosition's files;

6. TruePosition will produce any documents relating to standards issues that it should obtain from Mr. Robinson pursuant to the subpoena; and

7. With respect to 5 and 6, Andrew agrees that the production of these documents, and any testimony regarding the documents and the subject matter therein, will not result in a subject matter waiver of any applicable privileges and will be strictly limited to the contents of the documents themselves.

Regards.
James D. Heisman
CONNOLLY BOVE LODGE & HUTZ LLP
1007 N. Orange Street
P. O. Box 2207
Wilmington, DE 19899
Tel: 302.888.6216
Fax: 302.252-4209
Email: jdh@cblhlaw.com
NOTICE: The information contained in this message may be an attorney-client privileged communication and/or contain confidential information intended only for the use of the persons named above and others expressly authorized to receive it. If you are not the intended recipient, you are hereby notified that any dissemination, distribution, use or copying of this message is prohibited and you are asked to notify us immediately by return e-mail and to delete this message without copying it.

1

# Exhibit E



"Goettle, Daniel J.
(Woodcock Washburn)"
<dgoettle@woodcock.com>

09/02/2007 04:05 PM

To    "Jason Choy" <JChoy@kirkland.com>

cc

Subject   RE: 2007-08-31 Choy letter to Milcetic re deposition
scheduling

Jason:

Our email server went down this morning and has just been restored.

Based on our review of the documents Andrew Corporation produced to us in reviewable form at
5:00 pm yesterday, TruePosition will not make any witness available for further deposition.

Regards,
Dan

      **Daniel J. Goettle**
      Registered Patent Attorney
      **Woodcock Washburn LLP**
      Cira Centre, 12th Floor
      2929 Arch Street
      Philadelphia, PA 19104-2891
      215.564.8974
      Fax: 215.568.3439
      Mobile: 267.266.3521
      Email: dgoettle@woodcock.com
      www.woodcock.com

**This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.**
----------------------------------------------------------------------------------------
**IRS CIRCULAR 230 DISCLOSURE:**
**Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.**

**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Saturday, September 01, 2007 1:11 PM
**To:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** RE: 2007-08-31 Choy letter to Milcetic re deposition scheduling

Dan,

We have contacted a vendor and are having the documents OCR'd.  We will forward the OCR set to the Doubletree when the processing is complete.

Presumably you have access to a vendor who can OCR documents.  If you have ordered an OCR set of the documents please let us know and we will cancel the request to our vendor.

Jason

"Goettle, Daniel J. (Woodcock Washburn)" <dgoettle@woodcock.com>

To "Jason Choy" <JChoy@kirkland.com>

09/01/2007 10:44 AM

cc

Subject RE: 2007-08-31 Choy letter to Milcetic re deposition scheduling

Jason:

Yes, please do send us the OCR.

Regards,
Dan

**Daniel J. Goettle**
Registered Patent Attorney
**Woodcock Washburn LLP**
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.564.8974
Fax: 215.568.3439
Mobile: 267.266.3521
Email: dgoettle@woodcock.com
www.woodcock.com

**This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all**

copies of the original message and any attachments.

-----------------------------------------------------------------------------------------

IRS CIRCULAR 230 DISCLOSURE:
Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.


**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Saturday, September 01, 2007 2:35 AM
**To:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** RE: 2007-08-31 Choy letter to Milcetic re deposition scheduling


Dan,

The problem we are trying to solve was created over six months ago when TruePosition failed to collect and produce highly relevant documents that it knew existed from one of its former employees. Upon discovering this issue less than a week before the start of trial, we have taken it upon ourselves to collect, screen, process, and produce the documents you received tonight as quickly as possible, under extreme time pressure, and in the midst of trial preparation. In light of TruePosition's unapologetic disregard of its discovery obligations, your complaints about the formatting of the documents Andrew worked hard to deliver sound like a desperate attempt to muddy a very clear record.

Similarly, TruePosition is in no position to complain about the fact that Andrew chose to err on the side of being over-inclusive in its screening of these documents as a remedy for TruePosition's woefully under-inclusive approach to discovery. If your brief spot check revealed the document quoted below, a slightly more diligent review would have revealed that the production you received tonight contains large ranges of documents that are directly relevant to TruePosition's conduct before standards-making bodies, an issue that is central to this case. *See, e.g.*, RR 0024927-25149.

Having failed to collect, review, screen, process, and produce these documents itself, if TruePosition cannot now contact a vendor to have the documents OCR'd, and insists that Andrew contact a vendor to perform the same procedure, please let us know.

In the meantime, we will take TruePosition's refusal to offer dates for the deposition of its witnesses as an indication that your witnesses will not testify regarding the topics covered by the documents that Andrew produced tonight during your case-in-chief. Please be advised that Andrew objects to any testimony by TruePosition witnesses on these topics before we are allowed to take further depositions, and will raise this issue with the Court at an appropriate time.

Best regards,
Jason


"Goettle, Daniel J. (Woodcock Washburn)" <dgoettle@woodcock.com>

08/31/2007 10:14 PM

To "Jason Choy" <JChoy@kirkland.com>
cc
Subje RE: 2007-08-31 Choy letter to Milcetic re deposition

ct scheduling

Jason:

I received and spot-checked the documents on the DVD you just delivered.  As you know, you provided no optical character recognition (OCR) per the parties agreement and long-standing practice; this despite that the DVD contains over 44,000 pages scanned in TIFF format -- an amount equivalent to about 15 boxes of paper.  My spot-checking revealed documents such as RR0038730, in which Mr. Robinson is requesting to take a morning off from work because "landscaping people are delivering a few trees in the morning."  Certainly, my brief checking resulted in no documents responsive to TruePosition's subpoena.

So, if Andrew is serious about taking depositions at this point, Andrew would do well to identify the documents that it thinks warrant this inconvenience.  And, of course, please also provide the OCR of the documents on the DVD.

Regards,
Dan

**Daniel J. Goettle**
Registered Patent Attorney
**Woodcock Washburn LLP**
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.564.8974
Fax: 215.568.3439
Mobile: 267.266.3521
Email: dgoettle@woodcock.com
**www.woodcock.com**

**This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.**

-----------------------------------------------------------------------------------------

**IRS CIRCULAR 230 DISCLOSURE:**
**Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other**

person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.

**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Friday, August 31, 2007 8:28 PM
**To:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** RE: 2007-08-31 Choy letter to Milcetic re deposition scheduling

Dan,

The documents are on their way to you at the Doubletree.  The courier should be at your hotel within the next ten minutes.

Since you have sent no word regarding scheduling the depositions of your witnesses before the start of trial, we trust that your witnesses will not testify regarding topics covered by the unproduced emails during your case-in-chief.   If you choose to wait until after the start of trial to make your witnesses available for deposition and they attempt to testify regarding any of the subjects covered by the unproduced emails before we are able to depose them, we will object and raise the issue with the Court.  By the same token, if you agree that your witnesses will not testify regarding the topics covered by the unproduced emails during your case-in-chief, we are willing to discuss taking their depositions after Monday.

I am available to meet and confer if you would like to discuss this issue.

Best regards,
Jason

"Goettle, Daniel J. (Woodcock Washburn)" <dgoettle@woodcock.com>

08/31/2007 05:02 PM

To "Jason Choy" <JChoy@kirkland.com>
cc
Subje RE: 2007-08-31 Choy letter to Milcetic re deposition
ct  scheduling

Jason:

I assume you are referring to the documents we have yet to see  -- documents that apparently Mr. Robinson withheld when responding to our subpoena.  When we receive those documents, we will be in a position to move this matter along.  Until then, I'm not sure there's value in further

conversation.

If you would like to aid expedition on our end, please send me an email when the documents arrive at the Doubletree Hotel so I can promptly retrieve them.

Regards,
Dan

**Daniel J. Goettle**
Registered Patent Attorney
**Woodcock Washburn LLP**
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.564.8974
Fax: 215.568.3439
Mobile: 267.266.3521
Email: dgoettle@woodcock.com
**www.woodcock.com**

**This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.**

------------------------------------------------------------------

**IRS CIRCULAR 230 DISCLOSURE:**
**Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.**

**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Friday, August 31, 2007 3:37 PM
**To:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** Re: 2007-08-31 Choy letter to Milcetic re deposition scheduling

Dan,

I will have the documents delivered to your attention at the Doubletree.

TruePosition has been aware that Andrew intended to take further depositions since the pre-trial conference on Wednesday, and the timing of our request is directly related to the lateness of the production of relevant documents that TruePosition had an obligation to produce. In light of the fact that you have said that your witnesses are unavailable on Sunday, and the fact that trial starts on Tuesday, we are working to make arrangements for court reporters and videographers to be available on Monday.

Please feel free to contact me at this email address or 215-990-9236 if you want to meet and confer about the details of scheduling and logistics.

Best regards,
Jason

----- Forwarded by Jason Choy/New York/Kirkland-Ellis on 08/31/2007 02:55 PM -----

"Goettle, Daniel J. (Woodcock Washburn)" <dgoettle@woodcock.com>

08/31/2007 02:53 PM

To "Jason Choy" <JChoy@kirkland.com>

cc

Subje RE: 2007-08-31 Choy letter to Milcetic re deposition
ct scheduling

Jason:

Again, deposition scheduling is premature. We will make every effort to have our witnesses available for deposition if warranted by the documents, but please keep in mind that you notified us of your desire to depose these witnesses on the Friday of a holiday weekend. That may pose some obstacles that we will all need to work around.

Instead of sending to Philadelphia, please deliver the documents to:

The Doubletree Hotel
700 King Street
Wilmington, DE
Attention: Dan Goettle of Woodcock Washburn (Law Center)

Please confirm by return email that the documents will be delivered to this address instead of to Philadelphia.

Regards,
Dan

**Daniel J. Goettle**
Registered Patent Attorney

**Woodcock Washburn LLP**
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.564.8974
Fax: 215.568.3439
Mobile: 267.266.3521
Email: dgoettle@woodcock.com
**www.woodcock.com**

This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.
--------------------------------------------------------------------------------

**IRS CIRCULAR 230 DISCLOSURE:**
Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.

--------------------------------------------------------------------------------

**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Friday, August 31, 2007 2:14 PM
**To:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** RE: 2007-08-31 Choy letter to Milcetic re deposition scheduling

Dan,

The documents are with a vendor and should be delivered to the address you sent me yesterday later tonight.  In light of the short time before the start of trial and the holiday weekend, we need to schedule these depositions as soon as possible.  If your witnesses are not available on Sunday, then we will plan to take the depositions on Monday at the Sheraton Suites Wilmington, starting at 9am.  As per my letter earlier today, we are willing to take the three depositions in parallel, and the depositions will only require part of the day.

Best,
Jason

"Goettle, Daniel J. (Woodcock Washburn)" <dgoettle@woodcock.com>

08/31/2007 01:16 PM

To "Jason Choy" <JChoy@kirkland.com>

cc

Subje RE: 2007-08-31 Choy letter to Milcetic re deposition
ct scheduling

Jason:

As we said at the pretrial conference, we will consider making witnesses available for depositions subject to our review of these documents. Because we have not received the documents, deposition scheduling discussions are premature. In any event, none of the witnesses you request are available on Sunday.

Regards,
Dan

**Daniel J. Goettle**
Registered Patent Attorney
**Woodcock Washburn LLP**
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891
215.564.8974
Fax: 215.568.3439
Mobile: 267.266.3521
Email: dgoettle@woodcock.com
www.woodcock.com

**This email message and any attachments are for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message and any attachments.**

--------------------------------------------------------------------------------
**IRS CIRCULAR 230 DISCLOSURE:**
**Pursuant to Treasury Regulations, any tax advice contained in this communication(including any attachments) is not intended or written to be used, and cannot be used or relied upon by you or any other person, for the purpose of: (i) avoiding penalties under the Internal Revenue Code; or (ii) promoting, marketing, or recommending to another party any tax advice addressed herein.**

**From:** Jason Choy [mailto:JChoy@kirkland.com]
**Sent:** Friday, August 31, 2007 10:30 AM

**To:** Milcetic, Paul B. (Woodcock Washburn)
**Cc:** Goettle, Daniel J. (Woodcock Washburn)
**Subject:** 2007-08-31 Choy letter to Milcetic re deposition scheduling

Dear Mr. Milcetic,

Please see the attached letter.

Best regards,

Jason Choy
Associate, IP Litigation
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022
(o): 212-446-4969
(f): 212-446-4900

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************

*********************************************************
The information contained in this communication
is confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************

*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for

the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************


*************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*************************************************************

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

Jason Choy
To Call Writer Directly:                212 446-4800                              Facsimile:
212 446-4969                                                                      212 446-4900
jchoy@kirkland.com                    www.kirkland.com

August 31, 2007

**BY E-MAIL ONLY**

Paul B. Milcetic, Esq.
Woodcock Washburn LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104-2891

Re:    *TruePosition, Inc. v. Andrew Corporation,*
       Civil Action No.  05-747-SLR

Mr. Milcetic:

As per the parties' agreement at the pre-trial conference, Andrew will take part-day depositions of Robert Anderson, Frederic Beckley, and Joseph Sheehan starting at 9am on Sunday, September 2, 2007 at the Sheraton Suites Wilmington, 422 Delaware Avenue Wilmington, Delaware 19801, or at such other time and place as may be agreed to by counsel. Andrew proposes to take the three depositions in parallel.

The deposition will be taken before a Notary Public or other person authorized to administer oaths by the laws of the United States, and will be recorded by stenographic and/or videographic means.

You are invited to attend.

Best regards.

Sincerely,

Jason Choy

# Exhibit F

DB01:1356783.1



**Slip Copy**

Slip Copy, 2007 WL 700874 (D.N.J.)

**(Cite as: Slip Copy)**

Page 1

Kinney v. Trustees of Princeton University
D.N.J.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. New Jersey.
Robert KINNEY, Plaintiff,
v.
TRUSTEES OF PRINCETON UNIVERSITY, et al.,
Defendants.
**Civil Action No. 04-5252 (MLC).**

March 1, 2007.

Holly C. Fusco, Yardley, PA, for Plaintiff.
Thomas J. Barton, Patricia A. Cullen, Drinker, Biddle
& Reath, LLP, Princeton, NJ, for Defendants.

**MEMORANDUM OPINION**
HUGHES, U.S.M.J.
**\*1** This matter is before the Court upon the Motion of
Plaintiff Robert J. Kinney (" Plaintiff" ) for Sanctions
pursuant to Federal Rules of Civil Procedure 26 and
37. Defendant Trustees of Princeton University (the "
University" ) opposes the Motion. The University
produced seventy four pages of relevant documents
four days before the final pretrial conference. These
documents had been requested by Plaintiff two years
prior while discovery was ongoing. The Court
reviewed the written submissions of the parties and
conducted oral argument on February 26, 2007. For
the reasons that follow, Plaintiff's Motion for
Sanctions is granted in part and denied in part.

**I. BACKGROUND AND PROCEDURAL
HISTORY**

*A. Factual Background and Procedural History*

On June 3, 2003, Plaintiff, a nine year Princeton
University employee, filed an internal hostile work
environment sexual harassment complaint against his
supervisor, Gary Ufer, pursuant to Princeton
University's Sexual Harassment Policy. (Pl.'s Br. at
4). In accordance with its policy, the University
conducted an internal investigation of Plaintiff's
complaint, and the matter was heard by the
University's sexual harassment panel in August 2003.

(University's Opp. Br. at 5; Pl.'s Br. at 4).

The Princeton University Sexual Harassment Panel
Subcommittee concluded that Mr. Ufer's conduct
violated the University's Policy on Sexual
Harassment by creating a hostile and intimidating
work environment. (Pl.'s Br. at 4). The committee
recommended the following remedial actions: (1) Mr.
Ufer's pay raise was reduced by half; (2) Mr. Ufer
was relieved of supervisory authority over the Payroll
department for at least six months; (3) Mr. Ufer was
required to review the University's policy with Fred
Clarke, Director of Labor Relations; and (4) a
consultant was to be retained to examine
management practices and employee roles in the
Payroll Department. (University's Opp. Br. at 5).
Plaintiff was notified of the committee's findings and
recommendations by memorandum dated September
5, 2003. (*See* Pl.'s Ex. A).

As a result of the committee's findings, John (" Jack"
) Yuncza was appointed Acting Payroll Manager.
(University's Opp. Br. at 5). Mr. Yuncza met with
each Payroll department employee at the initiation of
his assignment and communicated with them
regularly. *Id.* Mr. Yuncza was Acting Payroll
Manager at the end of September, when Plaintiff
began his disability leave, and remained in this
position for several months. *Id.* at 6.

On October 27, 2004, Plaintiff filed a complaint
against the University alleging that the University
failed to implement the recommendations of the
subcommittee by failing to (1) remove Mr. Ufer from
his supervisory duties involving the Payroll
Department, (2) require Mr. Ufer to be
psychologically evaluated, and (3) counsel Mr. Ufer
on the University's Policies on Sexual Harassment.
(Pl.'s Br. at 4-5). As a result of Mr. Ufer's continued
involvement in the Payroll Department as Payroll
Manager, Plaintiff alleged that he was unable to
return to his place of work. *Id.* at 4. Plaintiff was
ultimately terminated for " abandoning his job." *Id.*
at 5.

**\*2** Defendants Princeton University, Matthew Kent

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                          Page 2
Slip Copy, 2007 WL 700874 (D.N.J.)
**(Cite as: Slip Copy)**

and Maureen Nash filed an Answer on December 20, 2004. (University's Opp. Br. at 6). The University contended that Jack Yuncza supervised the payroll department after Mr. Ufer was removed from that duty and that the workplace violence task force team was unrelated to the harassment issue. (Pl.'s Br, at 5). The University further contended that Mr. Ufer posed no threat to Plaintiff. *Id.*

**B. Motion for Sanctions**

On February 14, 2005, Plaintiff requested documents from the University regarding Plaintiff's claims and allegations, including Plaintiff's claim that the University failed to implement the remedial measures pertaining to Mr. Ufer. *Id.* On February 15, 2005, Defendants Princeton, Mr. Kent, and Ms. Nash served their Initial Disclosures pursuant to Federal Rule of Civil Procedure 26(a). (University's Opp. Br. at 6). Defendants included Mr. Yuncza as a person likely to have discovery information and described his knowledge as follows: " Mr. Yuncza is employed in the Treasurer's Office, and has knowledge pertaining to the supervision and operation of the Payroll Department after August 2003." *Id.* at 7.

Since discovery began, over 12 depositions have been taken and over thirteen hundred documents have been produced by the University. (Pl.'s Br. at 5). During this time, the University produced only one document authored by Mr. Yuncza which showed his direct interaction with the Payroll Department or its members. *Id.* Further, the University did not produce any notes, agendas, or hand written notes regarding the task force investigation of Mr. Ufer. *Id.* Fact discovery ended on December 19, 2005. *Id.*

While preparing the pretrial order, University counsel learned that Mr. Yuncza had a small desk file of documents that related to his role as Acting Payroll Manager. (University's Opp. Br. at 7). University counsel received these documents on January 12, 2007. *Id.* at 8. On January 15, 2007, in preparation for the Final Pretrial Conference, the parties met to confer regarding the pretrial memorandum. (Pl.'s Br. at 6). At this meeting, University counsel handed Plaintiff's counsel the documents received from Mr. Yuncza which she did not immediately review. *Id.* On January 17, 2007, Plaintiff received and reviewed the University's proposed exhibit list, which included over twenty documents, including handwritten notes, proposed evaluations, e-mail correspondence and workplace violence task force team notes regarding

Plaintiff, that were dated between August and September 2003. *Id.* These documents had been requested by Plaintiff two years ago while discovery was on-going. *Id.*

Plaintiff filed the present motion for sanctions on January 20, 2007. (*See* Dkt. no. 04-5252, entry no. 62). Plaintiff alleges that the documents at issue were crucial to the present action. (Pl .'s Br. at 7). Plaintiff further alleges that the University's failure to produce these relevant documents was not harmless because it impacted Plaintiff's decision to depose certain witnesses. *Id.* Plaintiff contends that the University's untimely production is deceptive and unfair under the Rules. *Id.* Plaintiff further contends that the prejudice caused to Plaintiff by the University's conduct cannot be cured. *Id.* at 8. Therefore, Plaintiff moves for an Order (1) striking Defendant's Affirmative Defenses, (2) excluding the testimony of Jack Yuncza and all documents produced on January 15, 2007, and (3) granting monetary sanctions for the time spent in preparing this Motion. *Id.* at 7.

*3 The University filed opposition to Plaintiff's motion for sanctions on February 6, 2007. (*See* Dkt. no. 04-5252, entry no. 64). The University concedes that its production of the documents was untimely, but argues that Plaintiff was not prejudiced because many of the documents were authored or received by Plaintiff himself. (University's Opp. Br. at 4, 10). The University further argues that Mr. Yuncza's relevance to the case cannot be a surprise to Plaintiff. *Id.* at 4. The University also argues that exclusion of evidence is too drastic a sanction in this case. *Id.* at 10.

**II. DISCUSSION**

In his motion for sanctions, Plaintiff alleges that the documents at issue were key to the present action. (Pl.'s Br. at 7). Plaintiff further alleges that the University's failure to produce these relevant documents was not harmless under Federal Rule of Civil Procedure 26 because it impacted Plaintiff's trial strategy and decision to depose certain witnesses. *Id.* Plaintiff contends that the University's failure to produce these documents when they were requested two years ago during discovery was deceptive and unfair under the Rules. *Id.* Plaintiff further contends that the prejudice caused to Plaintiff by the University's conduct cannot be cured at this late stage. *Id.* at 8. As a result, Plaintiff moves for an Order (1) striking Defendant's Affirmative Defenses, (2) excluding the testimony of Jack Yuncza and all

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 3

Slip Copy, 2007 WL 700874 (D.N.J.)

**(Cite as: Slip Copy)**

documents produced on January 15, 2007, and (3) granting monetary sanctions for the time spent in preparing this Motion. *Id.* at 7.

In opposition, the University concedes that its production of the documents was untimely and that it " failed to supplement its discovery responses within the discovery period as required by Rule 26," but argues that Plaintiff was not prejudiced because many of the documents were authored or received by Plaintiff. (University's Opp. Br. at 4, 10). The University further argues that Mr. Yuncza was identified as a witness two years ago and has been repeatedly identified in the deposition testimony of various witnesses. *Id.* at 4. The University also contends that barring its affirmative defenses would go " well beyond any connection with the documents recently produced." *Id.* The University argues that exclusion of evidence is too drastic a sanction especially because (1) the information is crucial to the University's defense, (2) no trial date has been set, (3) expert discovery is still to be conducted, and (4) there is no showing of bad faith on the part of the University or its counsel. *Id.* at 10. The University further argues that fees are not appropriate in this case because Plaintiff made no good faith attempt to resolve these issues prior to filing a motion for sanctions as required by Local Rule 37.1. *Id.* at 18.

### A. *Federal Rule of Civil Procedure 26*

Federal Rule of Civil Procedure 26 governs initial disclosures and provides in relevant part:
*4 [A] party must, without awaiting a discovery request, provide to other parties: (A) the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment; identifying the subjects of the information; (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses ...

Fed.R.Civ.P. 26(a)(1)(A) and (B). Rule 26(e) further imposes a continuous duty on all parties " to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made

known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1).

In the present matter, the University admits that the production of Mr. Yuncza's desk file was untimely. (University's Opp. Br. at 4). As part of its initial disclosures under Rule 26, the University provided Mr. Yuncza's name and described him as being employed in the Treasurer's Office and having knowledge " pertaining to the supervision and operation of the Payroll Department after August 2003." (University's Opp. Br. at 7). On February 14, 2005, Plaintiff requested documents from the University regarding Plaintiff's claims and allegations, including Plaintiff's claim that the University failed to implement the remedial measures pertaining to Mr. Ufer. The University's counsel conceded at oral argument that the documents at issue, as they pertained to Mr. Yuncza, were relevant and discoverable documents. However, the University did not produce these documents to Plaintiff's counsel until January 15, 2007, after discovery had ended on December 19, 2005 and two years after Plaintiff had requested the documents. Therefore, the Court finds that the University violated Rule 26 by failing to produce these crucial documents before the end of discovery.

### B. *Sanctions*

Under Federal Rule of Civil Procedure 37, if a party fails to make a Rule 26(a) or 26(e) disclosure, any other party may move for sanctions. Rule 37(c)(1) provides:
(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C) and may include informing the jury of the failure to make the disclosure.

*5 Fed.R.Civ.P. 37(c)(1). Rule 37 provides for additional sanctions as follows:(A) An order that the matters regarding which the order was made or any

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                        Page 4

Slip Copy, 2007 WL 700874 (D.N.J.)

**(Cite as: Slip Copy)**

other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

Fed.R.Civ.P. 37(b)(2)(A), (B), and (C).

### 1. Substantial Justification

" Substantial justification" requires " justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance." *Fitz, Inc. v. Ralph Wilson Plastics, Co.,* 174 F.R.D. 587, 591 (D.N.J.1997) (citing *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995) (citing *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)).

In the present case, the University has not met its burden of showing substantial justification for its violation of Rule 26. The University offered no substantial justification for its failure to produce the documents at oral argument, but instead stated that it simply did not receive these relevant documents pertaining to a key issue in the case from Mr. Yuncza until days before the final pretrial conference at which time it produced them to Plaintiff's counsel. Unlike *Fitz,* there is no dispute here as to what constitutes compliance with Rule 26. Both parties agree that the University had a duty to produce the documents at issue and failed to do so until the eve of the final pretrial conference. Therefore, the Court finds that the University failed to meet its burden of showing substantial justification under Rule 37. However, the Court finds no evidence of bad faith or willfulness on the part of the University in its violation of Rule 26.

### 2. Harm to Plaintiff

In determining whether the failure to disclose was harmless under Rule 37(c)(1), the Third Circuit

identified four factors as being helpful: (1) prejudice or surprise to the party against whom evidence is offered; (2) ability to cure the prejudice; (3) likelihood of disruption to trial; and (4) bad faith or willfulness of the non-compliant party. *In re Mercedes-Benz Anti-Trust Litig.,* 225 F.R.D. 498, 506 (D.N.J.2005) (citing *Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153, 156 (3d Cir.1995) (citing *Bronk v. Ineichen,* 54 F.3d 425, 432 (7th Cir.1995)). The Third Circuit has also considered the importance of the evidence to the party offering it. *Astrazeneca AB v. Mutual Pharm. Co., Inc.,* 278 F.Supp.2d 491, 504 (E.D.Pa.2003) (citing *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894, 904 (3d Cir.1977)). The Court must then weigh the factors to determine the appropriate sanction. *See Thomas & Betts Corp. v. Richards Mfg. Co.,* No. 01-4677, 2006 U.S. Dist. LEXIS 29660, at * 12 (D.N.J. May 15, 2006); *In re Mercedes-Benz Anti-Trust Litig.,* 225 F.R.D. at 508 (D.N.J.2005).

#### a. Prejudice and Cure

*6 Prejudice may include the " burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy" and need not be irremediable. *Ware v. Rodale Press, Inc.,* 322 F .3d 218, 222 (3d Cir.2003). In *In re Mercedes-Benz,* the Court refused to speculate on how plaintiffs would have used the additional information disclosed in an affidavit or what other information plaintiffs might have found had they deposed the witness. Instead the Court held that the fact " [t]hat plaintiffs would have questioned a representative from MBUSA on this issue had MBUSA disclosed the names of persons with such relevant information amounts to prejudice to plaintiffs in the eyes of this Court." *In re Mercedes-Benz,* 225 F.R.D. at 506. The Court noted that " harmlessness should not be defined by whether the aggrieved party has the ability to spend more money and resources to scramble through an unanticipated deposition," but " [t]hat is not to say, however, that any prejudice to plaintiffs could not be cured by allowing them to depose [the witness] and file a supplemental brief." *Id.* at 507.

In the present matter, Plaintiff's counsel stated at oral argument that she developed her trial strategy, including which witnesses she would depose, based on the documents produced by Defendants during discovery and her client's limited resources. She contended that had the documents at issue been produced when requested, she would have deposed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 5

Slip Copy, 2007 WL 700874 (D.N.J.)

**(Cite as: Slip Copy)**

Mr. Yuncza. Further, both parties' counsel agreed at oral argument that the untimely documents are relevant to a crucial issue in this case, whether Mr. Yuncza assumed Mr. Ufer's role as Payroll Manager. Therefore, the Court finds that at this late stage, with discovery having closed and the final pretrial conference having been conducted, Plaintiff is prejudiced by the University's untimely production of these relevant documents. However, the Court also finds that Plaintiff's prejudice can be cured, at least in part, by allowing Plaintiff to depose Mr. Yuncza regarding the documents and by requiring the University to bear the costs of the deposition. The Court notes that Plaintiff does not seek to depose Fred Clarke, the second witness relevant to the documents produced by the University.

**b. Likelihood of Disruption**

Although discovery closed on December 19, 2005 and the final pretrial order was entered on January 31, 2007, no trial date has been set in this matter. Therefore, the University's failure to produce the documents is likely to create minimal, if any, disruption of trial.

**c. Bad Faith or Willfulness**

With regard to whether the University's untimely production of relevant documents was in bad faith or willful, Plaintiff's counsel suggested at oral argument that Mr. Yuncza knowingly withheld the information until this late date. However, the University's counsel denied that failure to produce the documents during discovery was the result of bad faith or willfulness. Instead, the University's counsel stated that she received a call on Friday, January 12, 2007 regarding these documents and produced them to Plaintiff's counsel on Monday, January 15, 2007. Although the University had an obligation to produce these documents two years earlier, the Court finds no evidence of bad faith or willfulness on the part of University or its counsel.

**d. Importance of Evidence**

*7 The final factor considered by the Third Circuit is the importance of the evidence to the party offering it. There is no dispute in this case that the information produced by the University on January 15, 2007 is crucial to the instant case. The documents are relevant to whether Mr. Yuncza replaced Mr. Ufer as

Payroll Manager as part of the University's remedial measures. This is a key issue in the case, critical to both Plaintiff's assertions and the University's defenses, as noted by both parties' counsel at oral argument. Therefore, the Court finds that the evidence is crucial to the present matter.

**3. Weighing the Factors**

Although the Court has discretion to impose sanctions under Rule 37, the exclusion of critical evidence is an " extreme" sanction not ordinarily imposed absent a showing of " willful deception" or " flagrant disregard" for a court order. *Meyers,* 559 F.2d at 905 (quoting *Dudley v. South Jersey Metal, Inc.,* 555 F.2d 96, 99 (3d Cir.1977). Instead of excluding evidence, Rule 37 permits the Court to impose other appropriate sanctions for violations of Rule 26. *See Fitz,* 174 F.R.D. at 591 (requiring the plaintiffs to reimburse the defendants for attorneys' fees and costs incurred in deposing nine declarants and in preparing a supplemental brief in order to level the playing field).

Considering all of the factors, the Court concludes that the University's failure to produce the documents during discovery was not harmless. The factors identified by the Third Circuit support that Plaintiff is prejudiced by this discovery violation. However, based on the remaining factors, the Court concludes that exclusion of documents at trial and striking of the University's affirmative defenses are extreme sanctions not supported by the circumstances of this case. Therefore, the Court will deny Plaintiff's motion as it relates to exclusion of documents and striking of affirmative defenses.

However, the ability to cure the violation, the unlikelihood of disruption to trial, the absence of bad faith or willfulness on the part of the University, and the importance of the information to both parties, leads this Court to conclude that a sanction other than exclusion is appropriate. Therefore, the Court will fashion its own remedy narrowly tailored to the University's violation of Rule 26 and the subsequent prejudice to Plaintiff. Accordingly, the Court finds that the most appropriate sanction for the University's violation of Rule 26 is to re-open the deposition of Mr. Yuncza. The Court notes that although the University did not violate any specific court order regarding discovery, its untimely production of relevant documents caused prejudice to Plaintiff. Therefore, the Court finds that the University shall

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                              Page 6

Slip Copy, 2007 WL 700874 (D.N.J.)

**(Cite as: Slip Copy)**

bear the expense of the reasonable attorneys' fees and costs associated with the deposition of Mr. Yuncza.

The University contends that attorneys' fees for this motion are not an appropriate sanction because Plaintiff failed to adequately confer with University counsel regarding production of the documents prior to filing a motion for sanctions. At oral argument the University's counsel argued that Plaintiff's counsel sent two email communications and waited only a couple of hours for a response prior to filing the present motion. Local Civil Rule 37.1 requires counsel to " confer to resolve any discovery dispute" before addressing the issue with the Court. L.Civ.R. 37.1. Therefore, the Court finds that attorneys' fees for the present motion are not an appropriate sanction because Plaintiff made no meaningful effort to meet and confer regarding this issue prior to filing a motion for sanctions.

### III. CONCLUSION

**\*8** For the reasons expressed here, the Court finds that Plaintiff's Motion for Sanctions is granted in part and denied in part. The University admittedly violated Rule 26 by producing crucial documents days before the final pretrial conference and long after discovery had closed which caused prejudice to Plaintiff. Pursuant to Rule 37 and the factors identified by the Third Circuit, the Court finds that the prejudice to Plaintiff can be cured, the likelihood of disruption of trial is minimal, there is no evidence of bad faith or willfulness on the part of the University, and the evidence is crucial to both parties.

Therefore, the Plaintiff's motion for exclusion of the documents at trial is denied. Further, Plaintiff's motion to strike the University's affirmative defenses is also denied because both of these sanctions are too extreme based on the circumstances of the case. However, the Court finds that it is appropriate to allow Plaintiff to depose Mr. Yuncza and require the University to pay the reasonable attorneys' fees and costs of the deposition. Following the deposition, Plaintiff's counsel shall confer with the University's counsel to discuss the resolution of attorneys' fees. If the parties are unsuccessful in reaching a resolution, Plaintiff shall file a petition for attorneys' fees with the Court. The University will have 10 days after the filing of Plaintiff's petition to submit objections to the reasonableness of the fees. The Court will not require the University to pay the attorneys' fees associated with the present motion because of Plaintiff's

counsel's failure to adequately meet and confer as required by Local Civil Rule 37.1 prior to filing this motion.

An appropriate Order accompanies this Memorandum Opinion

D.N.J.,2007.

Kinney v. Trustees of Princeton University

Slip Copy, 2007 WL 700874 (D.N.J.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew A. Lundgren, Esquire, hereby certify that on September 25, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

James D. Heisman, Esquire
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
Email: jheisman@cblh.com

I further certify that on September 25, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL**

Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
Woodcock Washburn LLP
Circa Centre, 12th Floor
2929 Arch Street
Philadelphia, PA  19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Andrew A. Lundgren
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant Andrew Corporation*