IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TruePosition, Inc.,                          )
                                             )
        Plaintiff/                           )
        Counterclaim-Defendant,              )
                                             )     Civil Action No. 05-747-SLR
        v.                                   )
                                             )
Andrew Corporation,                          )
                                             )
        Defendant/                           )
        Counterclaim-Plaintiff.              )
_____)

## MEMORANDUM IN SUPPORT OF TRUEPOSITION'S MOTION FOR PERMANENT INJUNCTIVE RELIEF

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist, Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Cira Centre, 12th Floor, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................ 1

II.   NATURE AND STAGE OF THE PROCEEDINGS ....................................... 1

III.  SUMMARY OF ARGUMENT ..................................................................... 2

IV.   STATEMENT OF FACTS ........................................................................... 3

      A.    The 144 Patent ............................................................................... 3

      B.    Competition Between the Parties.................................................... 4

      C.    The Prior Litigation........................................................................ 5

      D.    The STC Contract and This Lawsuit .............................................. 5

V.    ANDREW SHOULD BE PERMANENTLY ENJOINED FROM SELLING ITS
      INFRINGING CONTROL CHANNEL GEOMETRIX PRODUCT ................. 8

      A.    Governing Legal Standard .............................................................. 8

      B.    TruePosition Has Suffered Irreparable Injury................................. 9

      C.    TruePosition Has No Adequate Remedy at Law ............................ 12

      D.    The Balance of Hardships Favors a Permanent Injunction............. 15

      E.    The Public Interest Supports a Permanent Injunction..................... 17

      F.    Scope of the Injunction ................................................................. 18

VI.   CONCLUSION........................................................................................... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*3M Innovative Props. Co. v. Avery Dennison Corp.,*
   No. 01-1781 (JRT/FLN), 2006 U.S. Dist. LEXIS 70263
   (D. Minn. Sept. 25, 2006) ..........................................................................................15

*800 Adept, Inc. v. Murex Sec., Ltd.,*
   No. 6:02-cv-1354-Orl-28DAB, 2007 U.S. Dist. LEXIS 27051
   (M.D. Fla. April 12, 2007) .................................................................... 8, 10, 11, 14, 15

*Black & Decker Inc. v. Robert Bosch Tool Corp.,*
   No. 04-C 7955, 2006 U.S. Dist. LEXIS 86990
   (N.D. Ill. Nov. 29, 2006)................................................................. 8, 10, 11, 13, 15, 17

*Brooktrout, Inc. v. Eicon Networks Corp.,*
   No. 2:03-CV-59, 2007 U.S. Dist. LEXIS 43107
   (E.D. Tex. June 14, 2007) .................................................................................8, 10, 13

*CSIRO v. Buffalo Tech. Inc.,*
   492 F. Supp. 2d 600
   (E.D. Tex. 2007) ..................................................................................................16, 17

*eBay Inc. v. MercExchange, L.L.C.,*
   126 S. Ct. 1837 (2006)......................................................................................2, 7, 18

*Innogenetics, N.V. v. Abbott Laboratories,*
   No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193
   (W.D. Wisc. Jan. 3, 2007)..............................................................................11, 14, 16

*Litecubes, L.L.C. v. Northern Light Prods., Inc.,*
   No. 4:04CV00485 ERW, 2006 U.S. Dist. LEXIS 60575
   (E.D. Mo. Aug. 25, 2006) .................................................................................8, 13, 16

*MGM Well Services, Inc. v. Mega Lift System, L.L.C.,*
   No. H-05-1634, 2007 U.S. Dist. LEXIS 30536
   (S.D. Tex. 2007)...........................................................................................8, 12, 13, 16

*MPT, Inc. v. Marathon Labels, Inc.,*
   No. 1:04-cv-2357, 2007 U.S. Dist. LEXIS 3992
   (S.D. Ohio Jan. 19, 2007) .........................................................................8, 14, 15, 17

*Muniauction, Inc. v. Thomson Corp.,*
   No. 01-1003, 2007 U.S. Dist. LEXIS 55433
   (W.D. Pa. July 31, 2007)........................................................................8, 10, 11, 13, 14

*Novozymes v. Genencor International, Inc.*,
    474 F. Supp. 2d 592
    (D. Del. 2007) ...........................................................................8, 10, 17

*O2 Micro Int'l, Inc. v. Beyond Innovation Tech. Co.*,
    No. 2:04-CV-32 (TJW), 2007 U.S. Dist. LEXIS 25948
    (E.D. Tex. March 21, 2007)....................................... 8, 10, 13, 15

*Sanofi-Synthelabo v. Apotex Inc.*,
    492 F. Supp. 2d 353
    (S.D. N.Y. 2007) .....................................................................14

*Smith & Nephew, Inc. v. Synthes (U.S.A.)*,
    466 F. Supp. 2d 978
    (W.D. Tenn. 2006) ......................................... 8, 10, 13, 16

*TiVo Inc. v. Echostar Committee Corp.*,
    No. 2:04-CV-1-DF, 446 F. Supp. 2d 664
    (E.D. Tex. 2006) ................................... 8, 10, 11, 15, 16

*Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*,
    No. H-03-2910, 2006 U.S. Dist. LEXIS 93408
    (S.D. Tex. Dec. 27, 2006) ...........................................8, 11, 14

*Visto Corp. v. Seven Networks, Inc.*,
    No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453
    (E.D. Tex. Dec. 19, 2006) ...........................................8, 10, 13

*Wald v. Mudhopper Oilfield Services*,
    No. CIV-04-1693-C, 2006 U.S. Dist. LEXIS 51669
    (W.D. Okla. July 27, 2006)...........................................8, 10, 11

## STATUTES

35 U.S.C. § 283........................................................................7

35 U.S.C. § 284........................................................................1

35 U.S.C. § 285........................................................................1

## I.    INTRODUCTION

TruePosition moves to permanently enjoin Andrew from further infringing the 144 patent. This motion should be granted. The essence of the patent grant is the right to exclude others. This right is particularly important when a direct competitor in a two-supplier market, here the defendant Andrew Corporation, willfully infringes patented technology and has a history of repeated infringement.

TruePosition cannot be expected to effectively stop Andrew's continuing infringement through a series of further lawsuits seeking monetary damages. This is TruePosition's second patent infringement lawsuit against Andrew Corporation. Andrew has already shown that substantial monetary payments are not enough to deter its deliberate and unauthorized use of TruePosition's intellectual property. Without an injunction, TruePosition and the Court will be forced to address Andrew's infringement again.

TruePosition's proposed injunctive relief is also narrowly targeted to prevent further harm to TruePosition that cannot be adequately compensated monetarily. The jury's verdict only compensated TruePosition for the loss of the Saudi Telecom Co. ("STC") contract, awarding damages based on the parties' original December 2004 bids for a kingdom-wide rollout to STC's cellular network. TruePosition's proposed order would enjoin only Andrew's sales beyond the scope of the parties' original December 2004 bids to STC.[1]

## II.    NATURE AND STAGE OF THE PROCEEDINGS

A jury trial was held September 4 through September 14, 2007. On September 14, 2007, the jury returned a verdict in favor of TruePosition in all respects. The jury determined that

---

[1]    TruePosition is concurrently filing a motion seeking enhanced damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285 as a result of Andrew's willful infringement.

Andrew has willfully infringed each of the asserted claims of TruePosition's U.S. Patent 5,327,144 ("the 144 patent"), rejected all of Andrew's litigation-inspired defenses, and awarded lost profit damages of $45.3 million (D.I. 292-93). Judgment was entered on September 18, 2007, in accordance with the jury's verdict (D.I. 308).

## III.    SUMMARY OF ARGUMENT

This case is a prototypical example of the type of case in which a permanent injunction is not only warranted, but required. Moreover, the evidence reflects some atypical factors that make an injunction even more necessary. TruePosition and Andrew are direct competitors in a two-supplier market, and a sale by Andrew is a sale lost by TruePosition. Further, this is TruePosition's second patent infringement litigation against Andrew Corporation. The settlement agreement that resolved the prior law suit included provisions that specified what Andrew could and could not do to avoid being sued for infringing the 144 patent. After agreeing to those provisions, Andrew ignored them and willfully infringed the 144 patent. Under such circumstances, an injunction should be granted.

All of the equitable factors set out in *eBay Inc. v. MercExchange, L.L.C.,* 126 S. Ct. 1837, 1839 (2006), are satisfied: 1) TruePosition has been irreparably harmed by Andrew's infringing sales, by, among other things, lost market share, price erosion, and harm to its reputation; 2) that harm is not compensable in money damages, in part because it is continuing in nature; 3) the balance of hardships favors an injunction; and 4) the public interest favors an injunction.

## IV.    STATEMENT OF FACTS

### A.    The 144 Patent

The 144 patent (PTX 1), which issued in 1994, is directed to determining the location of cell phones using the control channel signals that the phones send when they are turned on. A technique called time difference of arrival (TDOA) is applied to these control channel signals to determine the location of the phones.

The 144 patent is a fundamental, pioneering patent in the area of cell phone location technology. It has been cited in over 240 patents filed by numerous prominent companies in the cellular industry (Trial Tr. at 376-80, 475).[2] TruePosition developed its products around the 144 patent, first offered products using the patented technology in 1995, and continues to offer such products today (Trial Tr. at 145, 386). The technology claimed in the 144 patent is applicable to any type of cellular network (Trial Tr. at 382-83, 385-86). TruePosition has never licensed the 144 patent (Trial Tr. at 303).

Andrew Corporation has known about the 144 patent for years. TruePosition first notified Andrew about the 144 patent, and others, in December, 2000 (Trial Tr. at 149-51, 311-12, PTX 7). In its letter, TruePosition advised that the 144 patent is directed to locating phones by applying the TDOA technique to reverse control channel signals, and invited a licensing discussion (PTX 7). Andrew did not inquire about a license (Trial Tr. at 167, 499). TruePosition again invited a licensing discussion about its patents, including the 144 patent, in November 2002, and again, the invitation was not pursued (Trial Tr. at 502-04; PTX 8). Andrew has never inquired about a license to the 144 patent (Trial Tr. at 167, 499).

---

[2] The trial transcripts are docketed as DI 298-307.

### B.    Competition Between the Parties

Andrew and TruePosition have been competitors in the area of cell phone location technology for over a decade (Trial Tr. at 146-48, 367-69). TruePosition's business is directed solely to developing and marketing products that determine cell phone location (Trial Tr. at 140, 358). Andrew, on the other hand, is significantly larger than TruePosition (Trial Tr. at 149) and has a number of businesses unrelated to determining cell phone location (Trial Tr. at 358, 1850-52). Even the Network Solutions Group within Andrew Corporation – the business unit responsible for the Geometrix product -- has products unrelated to locating cell phones (Trial Tr. at 1852).[3]

The evidence is uncontradicted that TruePosition and Andrew are the only suppliers worldwide of products that use TDOA to locate cell phones (Trial Tr. at 161, 389-94, 482, 1149-50, 1922-23; PTX 186). It is also undisputed that TruePosition is capable of meeting all market demand for such products (Trial Tr. at 1162-64, 1172-73).

Overseas markets in general, and the market for security applications in particular (using control channel signals), are seen by both Andrew and TruePosition as their principal growth opportunity, representing a hugely important, largely-untapped source of revenue for both parties (Trial Tr. at 155-60, 210-11, 520-22, 1186-88). That is because the U.S. geolocation market, which focused on finding phones used on E-911 calls (using voice channel signals), has become saturated as carriers have completed their installation of E-911 equipment (Trial Tr. at 153, 1853-54).

---

[3]    The Network Solutions Group also develops cell phone location products that do not implicate the 144 patent. Indeed, in a press release dated September 14, 2007, announcing the jury's verdict in this case, Andrew indicated that "other Andrew Geometrix customer installations, including E-911 systems and Mobile Location Center offerings, that use different geolocation technologies also are not impacted."
http://www.andrew.com/pressroom/pressreleases/English/5230.aspx.

### C.    The Prior Litigation

In 2001, TruePosition sued Andrew for infringement of several cell phone location patents. The 144 patent was not included in the suit because Andrew was not using a control channel product at that time (Trial Tr. at 151). During the course of this earlier infringement litigation, Andrew's attorneys carefully analyzed the 144 patent, using it in connection with an invalidity motion as prior art to one of the patents involved in that lawsuit (Trial Tr. at 500-01).

As part of the February, 2004, settlement agreement ending this earlier lawsuit, TruePosition granted Andrew a license under its geolocation patent portfolio, but specifically excluded the 144 patent from the license (Trial Tr. at 153; PTX 15R at ¶ 6). Additionally, TruePosition promised not to sue Andrew under the 144 patent so long as Andrew continued to sell products for domestic E-911 purposes, but not other purposes (PTX 15R at ¶ 8). Further, TruePosition also promised not to sue Andrew under *any* patent, so long as Andrew continued selling its *existing* Geometrix system, which used TDOA and signals transmitted by the phone's "voice or traffic channel (but not the control channel or access channel signals)," and that used any of a number of specified air interfaces, including "GSM (800 and 1900 MHz Bands)" (PTX 15R at ¶ 9(a)). In essence, the agreement permitted Andrew to continue to sell its existing Geometrix product for locating cell phones for any application using voice or traffic channel signals, and even to sell control channel products, but only for domestic E-911 purposes.

### D.    The STC Contract and This Lawsuit

Less than ten months after this settlement, in December, 2004, Andrew Corporation responded to a request for proposals issued by STC (Trial Tr. at 700; PTX 139; PTX 141-76). As part of its response, Andrew offered to supply STC with equipment for determining the location of cellular telephones that infringed TruePosition's 144 patent.

Meanwhile, TruePosition had already installed and successfully demonstrated a trial system using its patented technology in STC's network (Trial Tr. at 155-56, 206, 516-17). TruePosition also submitted a bid in December, 2004, in response to STC's request for proposals (Trial Tr. at 157). TruePosition and Andrew were the only bidders for the TDOA portion of the STC contract (Trial Tr. at 161).

Both Andrew and TruePosition considered the STC contract particularly important. The STC opportunity was the first potential contract for the market that both parties considered their principal growth opportunity – the first U-TDOA installation outside the United States and the first for a security application (Trial Tr. at 520-21). Both considered the STC contract to be a "flagship" opportunity, in that whoever won the STC contract would be in a superior position to win contracts elsewhere in the Middle East (Trial Tr. at 158-60, 210-11, 520-22, 1186-88). Both parties' projections reflect the expectation of significant follow-on sales (Trial Tr. at 210-11, 1186-87, 1931).

During 2005, TruePosition was assured on numerous occasions that its product was technically superior and that the contract would be awarded to TruePosition (Trial Tr. at 160, 517). But then, "like a light switch, things changed" and TruePosition was shocked to learn that Andrew would likely win the contract (Trial Tr. at 161).[4]

Once again, on September 30, 2005, TruePosition wrote Andrew to advise about its patent, specifically warning that the system contemplated by Andrew's response to STC's request for proposals might infringe the 144 patent (Trial Tr. at 162-63, 518; PTX 17). This

---

[4]    Andrew's abrupt success may have been due to the fact that, in its effort to win this flagship opportunity, it went to extraordinary lengths, paying unusually high sales commission expenses to a Saudi company to help it get the contract (Trial Tr. at 1245-46).

time, TruePosition also stated that it would not license the 144 patent, at least with respect to the STC contract (PTX 17).

Two weeks later, on October 13, 2005, TruePosition provided additional detail on Andrew's suspected infringement of the 144 patent (Trial Tr. at 164-65, 518-19; PTX 18). Andrew was not persuaded, and TruePosition was forced to file this infringement suit (D.I. 1). Andrew responded with its unfounded "fraud" excuse, apparently in an effort to "get some mileage" with STC to win the STC contract (Trial Tr. at 1872-74).

Andrew and TruePosition each continued their efforts to win the STC contract, as well as other opportunities in the Middle East. Eventually, in February 2006, STC awarded the contract to Andrew (Trial Tr. at 722), which continues to ship products under the contract (Trial Tr. at 1175, 1184-88).

The loss of the contract caused TruePosition substantial harm, not only because of the lost revenue,[5] but also because Andrew now has the advantage in sales to other carriers interested in acquiring systems for security applications. As Mr. Sheehan testified, TruePosition has been hurt in its ability to win that additional business, because Andrew is now able to use STC as a reference (Trial Tr. at 211). Indeed, as Ms. Mulhern explained, there is evidence that Andrew is succeeding in obtaining some of the business that both parties anticipated would follow the STC contract (Trial Tr. at 1187-88).

---

[5]    As Mr. Beckley testified, the lost revenue affected TruePosition's valuation and also contributed to a personnel cutback (Trial Tr. at 520-21).

## V.  ANDREW SHOULD BE PERMANENTLY ENJOINED FROM SELLING ITS INFRINGING CONTROL CHANNEL GEOMETRIX PRODUCT

### A.  Governing Legal Standard

The patent statute provides that courts "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.  In *eBay Inc. v. MercExchange, L.L.C.,* 126 S. Ct. 1837 (2006), the Supreme Court explained that the "principles of equity" that govern injunctions in patent cases are the same factors that have traditionally been applied in other contexts:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

126 S. Ct. at 1839.

This case is a textbook example of the type of case in which injunctions are necessary and appropriate.  The record even reflects some unusual factors that heighten the need for an injunction.  In the year since *eBay*, courts have overwhelmingly entered permanent injunctions where, as here, the plaintiff and defendant are engaged in vigorous head-to-head competition and the plaintiff would lose market share if the defendant were to continue to make infringing sales. *See, e.g., Muniauction, Inc. v. Thomson Corp.,* No. 01-1003, 2007 U.S. Dist. LEXIS 55433 at *5 (W.D. Pa. July 31, 2007) ("Plaintiff and defendants are direct competitors in a two-supplier market.  If plaintiff cannot prevent its only competitor's continued infringement of its patent, the patent is of little value.").[6]  Moreover, a finding of willful infringement tips the balance of

---

[6]    Each of the following cases enters a permanent injunction where the plaintiff and defendant are competitors: *Brooktrout, Inc. v. Eicon Networks Corp.,* No. 2:03-CV-59, 2007 U.S. Dist. LEXIS 43107 (E.D. Tex. June 14, 2007); *MGM Well Servs., Inc. v. Mega Lift Sys., L.L.C.,* No. H-05-1634, 2007 U.S. Dist. LEXIS 30536 (S.D. Tex. 2007); *800 Adept, Inc. v.*

equities even further toward an injunction. *Id.* In this case, the balance of equities clearly supports entry of a permanent injunction barring Andrew from continuing to sell its infringing control channel Geometrix product.[7]

### B.     TruePosition Has Suffered Irreparable Injury

Andrew's infringing sale to STC was a significant blow to TruePosition's business. The sale to STC, which TruePosition lost to Andrew's infringing product, was viewed by both parties as a flagship sale (Trial Tr. at 158-60, 210-11, 520-22, 1186-88). Until that time, the U-TDOA market revolved around E-911 service in the United States – a market that was rapidly maturing. The STC sale was the first sale of a control channel U-TDOA system for security purposes, and it was the first sale of a U-TDOA system outside the United States (Trial Tr. at 520-21). Both parties understood that additional sales would likely flow from the sale to STC, and both parties' projections reflect the expectation of significant follow-on sales as a result of the STC deployment (Trial Tr. at 158-60, 210-11, 520-22, 1186-88, 1931). Winning the STC business gave Andrew a real "leg up" in the marketplace, permitting it to enjoy a reputation as the first

---

*Murex Sec., Ltd.,* No. 6:02-cv-1354-Orl-28DAB, 2007 U.S. Dist. LEXIS 27051 (M.D. Fla. April 12, 2007); *O2 Micro Int'l, Inc. v. Beyond Innovation Tech. Co.,* No. 2:04-CV-32 (TJW), 2007 U.S. Dist. LEXIS 25948 (E.D. Tex. March 21, 2007); *Novozymes v. Genencor Int'l, Inc.,* 474 F. Supp. 2d 592, 612-13 (D. Del. 2007); *MPT, Inc. v. Marathon Labels, Inc.,* No. 1:04-cv-2357, 2007 U.S. Dist. LEXIS 3992 (S.D. Ohio Jan. 19, 2007); *Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.,* No. H-03-2910, 2006 U.S. Dist. LEXIS 93408 (S.D. Tex. Dec. 27, 2006); *Visto Corp. v. Seven Networks, Inc.,* No. 2:03-CV-333-TJW, 2006 U.S. Dist. LEXIS 91453 (E.D. Tex. Dec. 19, 2006); *Black & Decker Inc. v. Robert Bosch Tool Corp.,* No. 04-C 7955, 2006 U.S. Dist. LEXIS 86990 (N.D. Ill. Nov. 29, 2006); *Smith & Nephew, Inc. v. Synthes (U.S.A.),* 466 F. Supp. 2d 978 (W.D. Tenn. 2006); *Litecubes, L.L.C. v. Northern Light Prods., Inc.,* No. 4:04CV00485 ERW, 2006 U.S. Dist. LEXIS 60575 (E.D. Mo. Aug. 25, 2006); *TiVo Inc. v. Echostar Comm. Corp.,* No. 2:04-CV-1-DF, 446 F. Supp. 2d 664 (E.D. Tex. 2006); *Wald v. Mudhopper Oilfield Servs.,* No. CIV-04-1693-C, 2006 U.S. Dist. LEXIS 51669 (W.D. Okla. July 27, 2006).

[7]     In balancing the equities, the Court may also consider the additional arguments raised in TruePosition's Motion for Enhanced Damages and Attorneys' Fees, filed today.

(and only) seller of U-TDOA technology outside the U.S. – a reputation that rightfully should belong to TruePosition.[8] Without an injunction, TruePosition will inevitably continue to lose market share to Andrew's infringing sales. Indeed, as Ms. Mulhern testified, there is some evidence that that is already happening (Trial Tr. at 1187-88).[9]

The record is unambiguous – and uncontradicted -- that Andrew and TruePosition are the only suppliers in a two-supplier market. Andrew and TruePosition are the only suppliers of U-TDOA technology generally, and are the only suppliers of the specific control channel U-TDOA technology covered by the 144 patent (Trial Tr. at 161, 389-94, 1149-50, 1162-64, 1172-73; PTX 186).

In such circumstances, irreparable harm is readily found. Courts uniformly weigh the fact of direct head-to-head competition heavily in determining irreparable harm. For example, in *Muniauction,* where the plaintiff and defendant were the only suppliers in a two-supplier market, the court focused on the fact that a sale by the infringer was necessarily a sale lost to the plaintiff, resulting in a permanent irreparable loss of market share as a result of the defendant's infringing sales. 2007 U.S. Dist. LEXIS 55433 at *5. As Judge Jordan put it, "A competitor has a right, granted by Congress, not to assist its rivals with the use of proprietary technology." *Novozymes,* 474 F. Supp. 2d at 612-13.[10]

---

[8]    The evidence established that TruePosition was fully capable of making Andrew's sales. It had conducted a successful trial at STC, was seen by STC as technically superior, and had the marketing and manufacturing capacity to make the sale (Trial Tr. at 155-56, 160, 206, 516-17, 1162-64, 1172-73).

[9]    Anecdotal evidence by TruePosition sales personnel post-trial indicates that Andrew continues to bid on control channel products around the world. In the event an injunction hearing is required, TruePosition will present evidence to that effect.

[10]    *See also, e.g., Brooktrout,* 2007 U.S. Dist. LEXIS 43107 at *3 ("[I]ntellectual property is quite valuable when it is asserted against a competitor in the plaintiff's market."); *Visto,* 2006

"Loss of market share is a key consideration in determining whether a plaintiff has suffered irreparable harm." *Black & Decker,* 2006 U.S. Dist. LEXIS 86990 at \*12.[11]  In *TiVo,* 446 F. Supp. 2d 664, for example, the court noted that the availability of the defendant's infringing products led to lost market share for the plaintiff.  Of particular significance to the court's analysis was the fact that, as in this case, the market was a developing one, the market share was lost at a critical time in the market's development, and the plaintiff would not have a similar opportunity to capture that market as the market matured. *Id.* at 669-70.  Thus the impact of the defendants' infringement was shaping the market to the plaintiff's disadvantage, resulting in long-term customer loss – a harm that was irreparable. *Id.* at 670.  Similarly, in *Transocean,* 2006 U.S. Dist. LEXIS 93408, the court emphasized that the plaintiff and defendant were competing for the same customers and the same contracts, the customer base was small, and the market was developing; the lost market share therefore constituted irreparable harm.

Another frequently cited factor weighing in favor of a finding of irreparable harm is harm to reputation, particularly a reputation for innovation.  Infringing sales can cause irreparable harm to a company's reputation as an innovator or market leader. *See Muniauction,* 2007 U.S. Dist. LEXIS 55433 at \*6 ("Recognition as the industry innovator is a tangible benefit afforded by a patent.  Defendants have taken that benefit away from plaintiff.  Such a harm is not compensable in damages, and is irreparable."); *800 Adept,* 2007 U.S. Dist. LEXIS 27051, at \*24 ("[W]here a company pioneers an invention in the marketplace, irreparable harm flows from a

---

U.S. Dist. LEXIS 91453 at \*12 ("Intellectual property enjoys its highest value when it is asserted against a direct competitor in the plaintiff's market."); *see also* cases cited in n.5, all of which find irreparable harm when the plaintiff and defendant are competitors.

[11]    *See also Brooktrout,* 2007 U.S. Dist. LEXIS 43107 at \*3-4; *Smith & Nephew,* 466 F. Supp. 2d 978 at \*8-9; *800 Adept,* 2007 U.S. Dist. LEXIS 27051 at \*24-25; *Wald,* 2006 U.S. Dist. LEXIS 51669 at \*16; *O2 Micro,* 2007 U.S. Dist. LEXIS 25948 at \*7-8; *Visto,* 2006 U.S. Dist. LEXIS 91453 at \*12-13.

competitor's attempts to usurp the pioneering company's market position and goodwill.");

*Innogenetics, N.V. v. Abbott Labs,* No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193, *72 (W.D.

Wisc. Jan. 3, 2007) ("[Plaintiff's] reputation for innovation and being a market leader are

affected when defendant cuts into its market share."); *see also Black & Decker,* 2006 U.S. Dist.

LEXIS 86990 at *11-12 (irreparable harm to brand recognition and good will)*; Wald,* 2006 U.S.

Dist. LEXIS 51669, at *16 (reputation for innovation irreparably harmed). Here, TruePosition

has long viewed the 144 patent as fundamental and pioneering, and indeed, the industry agrees

(Trial Tr. at 376-80, 382-83).

All of these factors are present in the record in this case. By its infringing sale of the first

system for security applications (and the first system outside the U.S. (Trial Tr. at 520-21),

Andrew is poised to shape the market to TruePosition's disadvantage, see TiVo, 446 F. Supp. 2d

at 670, and to continue to make sales that otherwise would go to TruePosition. Andrew's

"flagship" sale to STC has clearly affected TruePosition's reputation as the market innovator,

with a resulting loss of goodwill and future market opportunity. TruePosition had conducted a

successful trial and was poised to make the sale when Andrew swooped in, using TruePosition's

technology and paying large commissions for access to influential contacts, and took the job

away (Trial Tr. at 155-56, 206, 516-17, 1245-46). TruePosition has also suffered harm to its

reputation as a result of Andrew's unsupportable fraud claim against it. TruePosition has

suffered irreparable harm to its market share and reputation as a result of Andrew's infringing

sales (Trial Tr. at 1187-88).

### C.    TruePosition Has No Adequate Remedy at Law

TruePosition needs the Court to order an injunction because, as a practical matter, it

cannot be expected to stop Andrew's continued shipment of infringing control channel products

-12-

around the world through third, fourth, and fifth lawsuits for monetary damages against Andrew Corporation.

In this case, the threat of continued infringement in the future is very real. This is the second infringement suit between the parties (PTX 15R). Although Andrew tried to imply to the jury that its defenses and counterclaims in the prior case were significant (Trial Tr. at 525-26), in fact, Andrew paid a significant sum to settle it. Nevertheless, within a year, and despite the clear provisions of the Settlement Agreement regarding the 144 patent, Andrew was undeterred from undertaking its infringing activities, infringement the jury has already found was purposeful. There is no reason to believe Andrew will stop voluntarily now. *See MGM Well*, 2007 U.S. Dist. LEXIS 30536, at *46-47 (no reason to believe defendant would refrain from marketing infringing products where there had been a prior lawsuit). Willful infringement is evidence that continued infringement is likely, and therefore a willfulness verdict also supports an injunction. *See, e.g., O2 Micron*, 2007 U.S. Dist. LEXIS 25948 at *8 (willfulness finding supports finding that injunction is proper remedy to prevent future infringement); *Muniauction,* 2007 U.S. Dist. LEXIS 55433 at *6 (willfulness finding supports "conclusion that plaintiff has suffered irreparable injury to its patent rights, for which there is no adequate remedy at law"). An injunction is the only way to prevent Andrew's continued infringement and avoid serial lawsuits.

Such threat of continued infringement, along with the inability to calculate future loss, is a critical factor in the analysis of the adequacy of legal remedies. Courts reason that where such a threat exists, damages are inadequate, and an injunction is necessary to prevent future infringement. *See, e.g., Brooktrout*, 2007 U.S. Dist. LEXIS 43107 at *5 (threat of continued infringement exists and "inability to calculate the plaintiff's future loss with reasonable precision makes legal remedies inadequate"); *Litecubes*, 2006 U.S. Dist. LEXIS 60575 at *31 (damages

inadequate because defendants likely to continue to sell and plaintiffs would have to file another lawsuit to enforce their rights); *MGM Well*, 2007 U.S. Dist. LEXIS 30536 at *47-48 (monetary damages inadequate to compensate for continued loss of exclusive rights, and future damages not readily calculated); *Visto,* 2006 U.S. Dist. LEXIS 91453 at *13 (threat of continued infringement exists and legal remedies inadequate because of inability to calculate future losses).

Furthermore, cases involving competitors, like TruePosition and Andrew, typically present market effects that are not fully compensable in money damages for the same reasons that courts find irreparable harm in such cases. This is because "it is impossible to determine the portions of the market the patent owner would have secured but for the infringer or how much damage was done to the patent owner's brand recognition or good will due to the infringement.'" *Black & Decker,* 2006 U.S. Dist. LEXIS 86990 at *12 (quoting *z4 Tech., Inc. v. Microsoft Corp.,* 434 F. Supp. 2d 437, 441 (E.D. Tex. 2006)); *see Smith & Nephew,* 466 F. Supp. 2d. at *10-11 ("by competing in the market for the patented invention with the infringing products and by damaging Smith & Nephew's goodwill and brand name recognition . . . Synthes has violated Plaintiff's exclusionary right in a manner that cannot be compensated adequately through pecuniary damages.");[12] *see also MPT,* 2007 U.S. Dist. LEXIS 3992, at *49 (monetary damages inadequate to compensate for injury because royalties will not stop market erosion). In addition to lost market share and damage to reputation, price erosion is another market effect of infringing sales that is not easily compensated by money damages. *See, e.g., Sanofi-Synthelabo v. Apotex*

---

[12]    *See also 800 Adept,* 2007 U.S. Dist. LEXIS 27051, at *27 (quoting *Reebok Int'l, Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1557 (Fed. Cir. 1994)) ("Because the principal value of a patent is its statutory right, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole . . . In other words, injunctive relief operates to protect the interests of a patentee against future infringement, the market effects of which may not be fully compensable in the form of monetary damages.").

*Inc.,* 492 F. Supp. 2d 353, 397 (S.D. N.Y. 2007) (irreparable price erosion and loss of goodwill both support inadequacy of damage remedy); *MPT,* 2007 U.S. Dist. LEXIS 3992, at *49 (referring to "a drop in prices" that would result).[13]

In this case, as has already been discussed, TruePosition's loss of its right to exclusivity, its lost market share resulting from Andrew's sale to STC, its lost opportunities with other carriers, and the damage to its reputation are incalculable. In addition to lost market share for the initial installation of equipment, TruePosition will continue to lose revenue from its lost ability to sell spares and ongoing maintenance. Damages will not stop the market erosion. Moreover, as Ms. Mulhern testified, the competition from Andrew created a depressing effect on prices (Trial Tr. at 1188). STC was able to play the two competitors off against one other, resulting in substantial price competition. Andrew's continued presence in the market for control channel U-TDOA products would inevitably continue to have that effect with other customers, but again, in unmeasurable ways (Trial Tr. at 1187-88).

### D.    The Balance of Hardships Favors a Permanent Injunction

The balance of hardships also supports an injunction in this case. Andrew is a $2 billion per year company with a wide variety of products (Trial Tr. at 149). It will not be driven out of business by an injunction barring sale of its control channel Geometrix product. The control channel product is a small piece even of its Geometrix business, as is evidenced by the

---

[13]    The fact that TruePosition was earlier willing to consider licensing the 144 patent – although not for the amounts paid in settlement of the first litigation – does not suggest that a monetary award would be adequate now. *See, e.g., Muniauction,* 2007 U.S. Dist. LEXIS at *7 (rejecting argument that licensing activity negates irreparable harm); *Innogenetics,* 2007 U.S. Dist. LEXIS 193, at *72-73 (finding money damages alone insufficient to remedy injury in part because it would be unfair to require post-trial license for amount that would have been negotiated before "long, expensive and arduous trial"); *Transocean,* 2006 U.S. Dist. LEXIS 93408, at *18-19 (damages inadequate in part because a compulsory post-trial license would not "contain any of the commercial business terms typically used by a patent holder to control its technology or limit encroachment on its market share").

statements in its recent press release. *See supra* at note 3.[14]  TruePosition, on the other hand, is a

much smaller company, with only one product – a product around which it has built its entire

business (Trial Tr. at 140, 358, 386).  In such circumstances, where the infringer has other

businesses and the patentholder would continue to lose market share to the infringer in the

absence of an injunction, the balance of hardships favors an injunction. *See, e.g., 800 Adept,*

2007 U.S. Dist. LEXIS 27051, at *27-28; *MPT,* 2007 U.S. Dist. LEXIS 3992, at *50; *TiVo,* 446

F. Supp. 2d 664, 670; *Black & Decker*, 2006 U.S. Dist. LEXIS 86990 at *13.

   Furthermore, the fact that Andrew will be unable to sell its infringing product, and might

lose business as a result, is irrelevant to the balance of hardships analysis.  "One who elects to

build a business on a product found to infringe cannot be heard to complain if an injunction

against continuing infringement destroys the business so elected"  *3M Innovative Props. Co. v.*

*Avery Dennison Corp.,* No. 01-1781 (JRT/FLN), 2006 U.S. Dist. LEXIS 70263, at *5-6, (D.

Minn. Sept. 25, 2006), *quoting Windsurfing Int'l v. AMF, Inc.,* 782 F.2d 995, 1003 (Fed.  Cir.

1986).  Therefore, any harm resulting from not being able to sell its infringing product "is

imposed by law, not by any peculiar circumstances of this case."  *MGM Well,* 2007 U.S. Dist.

LEXIS 30536, at *48.  Harm that infringers generally suffer when subject to an injunction

against sale of their infringing products does not outweigh the harm to a plaintiff who is unable

to enjoy the rewards of its inventive process. *Innogenetics,* 2007 U.S. Dist. LEXIS 193, at *73-

74; *CSIRO v. Buffalo Tech. Inc.,* 492 F. Supp. 2d 600, 606 (E.D. Tex. 2007).

   TruePosition is the innovator here.  Andrew is the infringer.  TruePosition went to the

time and expense of obtaining patent protection, while Andrew simply sought to piggyback on

---

[14]  That an infringer publicly announced that an injunction would have insignificant impact
weighed in favor of an injunction in *O2 Micro,* 2007 U.S. Dist. LEXIS 25948, at *9.

TruePosition's invention and usurp its customers. The only harm that will accrue to Andrew is its inability to sell a product that it has been found to have sold in willful violation of TruePosition's patent rights. The balance of hardships clearly favors an injunction. *See Litecubes,* 2006 U.S. Dist. LEXIS 60575, at *32 (granting injunction where plaintiff "went through the time and expense of developing the patented device and obtaining legal protections for his invention," while Defendant "seeks to poach customers . . . in violation of Plaintiffs' rights").

### E.    The Public Interest Supports a Permanent Injunction

The final factor in the injunction analysis also weighs in favor of an injunction. There is a strong public interest in protecting patent rights, and injunctions serve that interest. *See, e.g., Smith & Nephew,* 466 F. Supp. 2d 978 at *14 ("permanent injunction will further consumer access to more competition, and thus, presumably better, products"); *TiVo,* 446 F. Supp. 2d at 670; *CSIRO*, 492 F. Supp. 2d at 607 ("In order to enforce a patentee's fundamental property right, courts have consistently allowed injunctive relief to patent owners whose patents have been infringed."); *Black & Decker*, 2006 U.S. Dist. LEXIS 86990 at *14 (because the jury found the defendants willfully infringed, "public interest will not be disserved by a permanent injunction"); *MPT,* 2007 U.S. Dist LEXIS 3992, at *50-51. Therefore, where the grant of an injunction would not harm the public, an injunction is appropriate. *See, e.g., Novozymes,* 474 F. Supp. 2d at 613 (granting permanent injunction even though the product had "growing importance" to the public because there were other competitive products); *CSIRO,* 492 F. Supp. 2d at 607.

Here, the public will not be harmed, for the product that Andrew will be enjoined from selling is available elsewhere – from TruePosition. The evidence at trial established that TruePosition has the capacity and ability, and indeed that its product is superior. Therefore, in

the absence of any harm to the public, an injunction is proper to serve the public interest in protecting patent rights.

### F.    Scope of the Injunction

Because the jury awarded damages to the extent of the parties' initial bids for a kingdom-wide rollout to STC, TruePosition does not seek an injunction as to that sale. However, Andrew should be enjoined from making, using, selling, offering for sale, or supplying the components of any Geometrix system having the capability to perform Time Difference of Arrival using cell phone signals sent over a control channel, including but not limited to a standalone dedicated control channel, to any customer other than Saudi Telecom Company. Furthermore, Andrew should also be enjoined from making, using, selling, offering for sale, or supplying the components of any Geometrix system for any STC system expansion beyond the total amount of equipment contemplated by Andrew's December 2004 bid (PTX 320 and PTX 141-176). The damage award contemplated only lost profits flowing form that original bid, not any expansion of it.[15]

## VI.    CONCLUSION

The fundamental nature of an injunction analysis is equity – what is a fair result? The jury has found that Andrew willfully infringed TruePosition's right to exclude Andrew from selling the technology claimed in the 144 patent. The *eBay* factors all suggest that a just conclusion is to enjoin Andrew from continuing its willful infringement. TruePosition has been irreparably harmed by Andrew's willfully infringing sales, and its harm cannot be fully

---

[15]    As Ms. Mulhern explained at trial, because of the "apples and oranges" nature of the parties' respective products, Andrew's December 2004 kingdom-wide bid was for 4300 sites, while TruePosition's was for 2888 (Trial Tr. at 1170-71, 1238).

compensated by a damage award or a series of future patent infringement lawsuits. The balance

of hardships favors an injunction, as does the public interest. TruePosition respectfully requests

that the Court enter a permanent injunction in the form attached hereto.[16]

Respectfully submitted,

DATED:  October 1, 2007          By:      /s/ James D. Heisman
                                          CONNOLLY BOVE LODGE & HUTZ LLP
                                          James D. Heisman, Esq. (#2746)
                                          1007 N. Orange Street
                                          P.O. Box 2207
                                          Wilmington, DE 19899
                                          Telephone: (302) 658-9141
                                          Facsimile: (302) 658-5614

                                          WOODCOCK WASHBURN LLP
                                          Paul B. Milcetic, Esq. (pro hac vice)
                                          Dale M. Heist., Esq. (pro hac vice)
                                          Kathleen A. Milsark, Esq. (pro hac vice)
                                          Daniel J. Goettle, Esq. (pro hac vice)
                                          Amanda M. Kessel, Esq. (pro hac vice)
                                          Cira Centre, 12th Floor
                                          2929 Arch Street
                                          Philadelphia, PA 19104
                                          Telephone: (215) 568-3100
                                          Facsimile: (215) 568-3439

---

[16]     TruePosition believes that the existing trial record supports entry of the injunction sought in this motion. In the event the Court should determine that additional evidence would be helpful, however, as the Court suggested at the close of the trial (Trial Tr. at 2157), TruePosition requests the opportunity to present such evidence.

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 1st day of October, 2007, I caused a true and correct copy of the foregoing MEMORANDUM IN SUPPORT OF TRUEPOSITION'S MOTION FOR PERMANENT INJUNCTIVE RELIEF to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

*/s/ James D. Heisman* .
James D. Heisman, Esq. (#2746)

567720

-20-