## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **TRUEPOSITION, INC.,** | |
| **Plaintiff and** **Counterclaim-Defendant,** | |
| **v.** | Civil Action No. 05-00747-SLR |
| **ANDREW CORPORATION,** | REDACTED – PUBLIC VERSION |
| **Defendant and** **Counterclaim Plaintiff.** | |

## ANDREW CORPORATION'S ANSWERING BRIEF
## IN OPPOSITION TO TRUEPOSITION'S MOTION FOR ENHANCED DAMAGES

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600

OF COUNSEL:

John M. Desmarais, P.C.
Gregory S. Arovas, P.C.
Avinash S. Lele
Todd M. Friedman
Jason Choy
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
Regan A. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: November 15, 2007

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................... 1

II.   NATURE AND STAGE OF THE PROCEEDINGS. ................................... 2

III.  SUMMARY OF ARGUMENT.................................................................. 3

IV.   COUNTERSTATEMENT OF FACTS. ...................................................... 3

      A.   STANDARDIZATION OF UTDOA FOR GSM: 2000-NOVEMBER 2004...................... 3

      B.   ANDREW'S STC BID: DECEMBER 2004. ................................................. 5

      C.   THIS LAWSUIT: OCTOBER 2005 ......................................................... 6

V.    ARGUMENT. ........................................................................................ 6

      A.   ENHANCED DAMAGES ARE THE EXCEPTION, NOT THE RULE. ............... 6

      B.   DAMAGES SHOULD NOT BE ENHANCED IN THIS CASE. ........................ 7

           1.   TruePosition Did Not Move For a Preliminary Injunction As
                Required Under *Seagate*. .......................................................... 7

           2.   There Is Nothing Egregious About Andrew's Conduct To Warrant
                Enhanced Damages................................................................... 9

                a.   *Read Factor No. 1: Andrew Did Not Copy.*................................. 10

                b.   *Read Factor No. 2: Andrew Analyzed the '144 Patent and
                     Formed a Good-Faith Belief That It Was Not Infringed.*............. 11

                c.   *Read Factor No. 3: Andrew Behaved Properly During
                     Litigation.*................................................................. 12

                d.   *Read Factor No. 4: Andrew's Size and Financial Condition
                     Does Not Support An Enhanced Damages Award.*...................... 13

                e.   *Read Factor No. 5: A Reasonable Jury Could — and
                     Should — Have Found For Andrew on All Counts,
                     Including Willfulness.*................................................... 15

                f.   *Read Factor No. 6: The Duration of the Alleged
                     Misconduct Was Very Short, Encompassing Only One
                     Deal.* ........................................................................ 20

                g.   *Read Factor No. 7: Because TruePosition Got the Accused
                     Technology Standardized, Andrew Could Not Take
                     Remedial Measures, But Did Take Proactive Measures.*............. 20

h.    *Read Factor No. 8: There Is No Evidence That Andrew Attempted to Harm TruePosition — Rather, Andrew Partnered With TruePosition and Suffered Harm as a Result.* ........................................................................... 21

i.    *Read Factor No. 9: Andrew Did Not Attempt to Conceal Its Alleged Misconduct.* .................................................................. 23

**VI.    THERE IS NO BASIS TO AWARD ATTORNEYS' FEES.** .................................. 24

**VII.    CONCLUSION.** ........................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**

*American Safety Table Co. v. Schreiber*,
415 F.2d 373 (2d Cir.1969) ........................................................................ 21

*Applied Medical Resources Corp. v. United States Surgical Corp.*,
435 F.3d 1356 (Fed. Cir. 2006) ................................................................. 22

*Bott v. Four Star Corp.*
229 USPQ 241 (E.D. Mich. 1985) ............................................................. 14

*Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*,
913 F.Supp. 1256 (N. D. Iowa 1996) ........................................................ 21

*Cohesive Techs., Inc. v. Waters Corp.*,
C.A. Nos. 98-12308, 99-11528, 01-12307, 2007 WL 2746805 (D. Mass., Aug. 31,
2007) ......................................................................................................... 11

*Collegenet, Inc. v. Applyyourself, Inc.*,
CV. 02-484, 02-1359, 2004 WL 2050489 (D. Or., Jan. 20, 2004) ................. 20

*Cybor Corp. v. FAS Techs., Inc.*
138 F.3d 1448 (Fed. Cir. 1998) ................................................. 6, 13, 19, 24

*Digeo, Inc. v. Audible, Inc.*,
CA 07-1133, 2007 WL 3196676 (Fed. Cir., Nov. 1, 2007) ........................... 24

*Electro Scientific Indus., Inc. v. General Scanning Inc.*,
247 F.3d 1341 (Fed. Cir. 2001) ............................................. 6, 7, 16, 19, 24

*Forest Labs., Inc. v. Abbott Labs.*,
339 F.3d 1324 (Fed. Cir. 2003) ................................................................. 24

*Golight, Inc. v. Wal-Mart Stores, Inc.*
216 F.Supp.2d 1175 (D. Colo. 2002) ................................................... 20, 23

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) ................................................... 3, 7, 8, 11

*Itron, Inc. v. Benghiat*,
C.A. 99-501, 2003 WL 21402608 (D. Minn., June 16, 2003) ........... 11, 13, 21, 22

*Juicy Whip Inc. v. Orange Bang Inc.*,
382 F.3d 1367 (Fed. Cir. 2004) ............................................................ 6, 24, 25

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp*.
    383 F.3d 1337 (Fed. Cir. 2004) ................................................................. 21

*Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.,*
    561 F.Supp. 512 (E.D. La. 1982) ............................................................. 14

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967, 975 (Fed. Cir. 1995) ............................................................ 9

*Modine Mfg. Co. v. Allen Group, Inc*.,
    917 F.2d 538 (Fed. Cir. 1990) ............................................................. 6, 24

*nCube Corp. v. SeaChange Int'l., Inc.*
    313 F.Supp.2d 361 (D. Del. 2004)............................................................ 22

*NTP Inc. v. Research in Motion, Ltd.*,
    270 F.Supp.2d 751, 759 (E.D.Va. 2003)................................................... 20

*Odetics, Inc. v. Storage Tech. Corp*.,
    185 F.3d 1259 (Fed. Cir. 1999) ....................................................... passim

*Read Corp. v. Portec, Inc.*
    970 F.2d 816 (Fed. Cir. 1992) ......................................................... passim

*Riles v. Shell Exploration and Prod. Co*.,
    298 F.3d 1302 (Fed. Cir. 2002) ...................................................6, 13, 16

*Special Devices, Inc. v. OEA, Inc.*,
    269 F.3d 1340 (Fed. Cir. 2001) .............................................................. 24

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
    127 F.3d 1462 (Fed. Cir. 1997) ............................................................... 7

*TGIP, Inc. v. AT & T Corp*.;
    C.A. 06-105, 2007 WL 3194125 (E.D. Tex., Oct. 29, 2007)......................... 11

*Transclean Corp. v. Bridgewood Services, Inc*.,
    290 F.3d 1364 (Fed. Cir. 2002) ...................................................6, 24, 25

*Tristrata Tech., Inc. v. ICN Pharms., Inc.*
    314 F.Supp.2d 356 (D. Del. 2004)..................................................... passim

## Statutes

35 U.S.C. § 285 ..................................................................................... 25

## I.    INTRODUCTION.

TruePosition seeks to treble a $45.3 million damage award that is based on Andrew practicing standardized technology. Andrew and TruePosition jointly proposed the technology to the ETSI standards body, and the technology is now part of the GSM standard.[1] The standardized option at issue is UTDOA location using an SDCCH. TruePosition admitted at trial that "it is…TruePosition's position, that the '144 [patent] is essential to that option in the standard." JA289:7-11; see also JA1; JA416:11-25.[2]

As Andrew explained in its opening post-trial briefs, no reasonable jury could have found literal infringement or ruled against Andrew's counterclaims, on the record in this case. D.I. 327 at 13-40, 48-65. But more fundamentally, regardless of the jury's view, this is not one of those rare cases where enhanced damages are appropriate. Enhanced damages are limited to those rare cases where the defendant's conduct is egregious. There is nothing in the record to suggest Andrew acted egregiously. Before this dispute, Andrew had no knowledge TruePosition interpreted the '144 patent to cover UTDOA location in a GSM system. Andrew had no reason to know, because TruePosition was required to declare any essential patents to ETSI, TruePosition had promised to license all its relevant patents on reasonable, non-discriminatory terms, and TruePosition never mentioned to ETSI or Andrew that it believed the '144 patent would cover a GSM UTDOA implementation. All of this is undisputed in the record.

---

[1]    ETSI is the European Telecommunications Standards Institute, a standards body based in France. JA257:10-12. ETSI oversees a number of telecommunications standards. JA265:20-JA266:3. ETSI is the standards body TruePosition convinced to standardize UTDOA.

[2]    All cross-references to Andrew's Appendix to its Brief in Support of its Renewed Motion for Judgments as a Matter of Law are listed as "JA###." All cross-references to Andrew's Appendix to its Brief in Support of its Remaining Equitable Defenses are listed as "EA###."

In contrast, TruePosition did act egregiously. It worked hard to eradicate the perception that UTDOA is not proprietary, solicited Andrew's help with standardization, and worked closely with Andrew on standardization for a year and a half. But despite all this, TruePosition never told Andrew that it planned to assert the '144 patent against the standardized UTDOA SDCCH option. All of this is undisputed in the record.

Enhanced damages also are not warranted given that Andrew mounted a strong non-infringement defense to TruePosition's claims. TruePosition dropped two of its five asserted claims shortly before trial. D.I. 265. During trial, TruePosition stipulated to no infringement under the doctrine of equivalents. JA784:20-25; JA844:6-11. And Andrew's opening JMOL brief demonstrates that there is no literal infringement of any asserted claim as a matter of law.

There is nothing in the record to warrant the extreme relief TruePosition requests here. TruePosition's motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS.

TruePosition filed this action against Andrew on October 25, 2005, alleging infringement of U.S. Patent No. 5,327,144. D.I. 1. Andrew filed counterclaims and affirmative defenses, including for non-infringement, fraud, promissory estoppel, equitable estoppel and implied license. D.I. 13; D.I. 38. On September 14, 2007, a jury returned a verdict for TruePosition and awarded TruePosition $45.3 million in "lost profits" damages. D.I. 292. Andrew has moved for judgment as a matter of law or, alternatively, a new trial. D.I. 327. The parties currently are briefing Andrew's JMOL motions. The jury did not decide Andrew's claims of equitable estoppel, unclean hands and implied license; those remain to be decided by the Court. JA237:11-238:16.

This brief responds to TruePosition's motion for enhanced damages. D.I. 314, 315.

2

## III.   SUMMARY OF ARGUMENT.

The Court should not award enhanced damages because TruePosition did not move for a preliminary injunction as required under *Seagate*, and the *Read v. Portec* factors favor Andrew:

(i)    Andrew did not copy;

(ii)   Andrew analyzed the '144 patent and formed a good-faith belief that it was not infringed, and had a good-faith belief that it could practice the standard;

(iii)  Andrew behaved properly during litigation;

(iv)   Andrew's size and financial condition does not support an enhanced damages award;

(v)    A reasonable jury could — and should — have found for Andrew on all counts, including willfulness;

(vi)   the duration of the alleged misconduct was very short, encompassing only one deal;

(vii)  because TruePosition got the accused technology standardized, Andrew could not take remedial measures, but did take proactive measures;

(viii) there is no evidence that Andrew attempted to harm TruePosition — rather, Andrew joined forces with TruePosition and suffered harm as a result; and

(ix)   Andrew did not attempt to conceal its alleged "misconduct" — rather, Andrew openly worked to standardize UTDOA for the public.

Furthermore, for similar reasons, this is not an exceptional case, and there is no basis to award attorneys' fees.

## IV.   COUNTERSTATEMENT OF FACTS.[3]

### A.   STANDARDIZATION OF UTDOA FOR GSM: 2000-NOVEMBER 2004.

TruePosition began to lobby for UTDOA standardization in approximately 2000. From the time it began the standardization process, TruePosition always interpreted the '144 patent to

---

[3]   The relevant facts are discussed in detail in Andrew's "Opening Brief in Support of Its Renewed Motion for Judgments as a Matter of Law or Alternatively, a New Trial" (D.I. 327) and Andrew's "Post-Trial Opening Brief in Support of Its Remaining Equitable Defenses" (D.I. 325).  They are briefly summarized here.

cover the technology it was trying to standardize.    JA289:7-11; JA335:21-24; JA277:23-278:1;

JA286:9-17; JA269:18-21.    Indeed, TruePosition admitted at trial that "it is…TruePosition's

position, that the '144 is essential to that option in the standard."    JA289:7-11; see also JA1;

JA416:11-25.    There is no exclusion in the ETSI patent policy regarding the declaration of

patents essential to options.    *See* JA215 (ETSI IPR Policy defining "STANDARD" as "any

standard adopted by ETSI including options therein").

TruePosition President Joe Sheehan testified at trial he was "aware" of "the ETSI IPR or

patent disclosure rules" when "TruePosition made an affirmative decision not to declare the '144

patent to ETSI after considering whether to do that." JA288:8-20.    And TruePosition's own

standards manager even urged TruePosition's executives to declare patents, including the '144

patent, as essential.  *See*  DTX 1065 (JA94-96); DTX 1066 (JA97-99); DTX 1069 (JA100).

Despite all this, TruePosition never declared to ETSI its belief that the '144 patent was

essential to practice the technology it was trying to standardize, and never declared the '144

patent as essential to the standard.    JA451:18-452:3.    Indeed, TruePosition kept silent about its

beliefs regarding the '144 patent to make it appear as though the proposed UTDOA standard was

a multi-vendor technology that would be available to everyone, as required by the ETSI IPR

policy.    TruePosition did this to eliminate industry concern that the proposed UTDOA standard

was a "proprietary technology" that would be inappropriate for public standardization.  JA91-93;

JA2-3; JA4-6.    Similarly, early in the standardization process, TruePosition promised to license

any of its relevant intellectual property, including the '144 patent, on reasonable, non-

discriminatory terms.    JA223 at 3.3.5; JA405:17-24.

To further the ruse that UTDOA was a multi-vendor technology, TruePosition worked

closely with Andrew for approximately a year and half to get UTDOA standardized for GSM.

4

*See* JA332:1-333:10; JA453:21-454:2; JA409:21-410:22; JA884:14-888:21.   UTDOA in fact was standardized as a result of the proposals Andrew and TruePosition jointly submitted.

It was only after: (a) working with Andrew for approximately a year and half; (b) embedding the technology into the standard; and (c) securing the investment of the industry in this technical approach rather than the numerous alternatives, did TruePosition go public with its contention that the '144 patent blocked anyone but TruePosition from practicing the full ETSI standard.

**B.    ANDREW'S STC BID: DECEMBER 2004.**

On December 11, 2004, approximately one month after UTDOA became part of the GSM standard, Andrew's agent in Saudi Arabia (Al Misehal) submitted its bid to STC.  S*ee* JA9-10 (stating UTDOA standardized in November 2004); JA180-198 (cover page to offer); JA199 (stating tender brought to STC by Saudi agent Al-Misehal).

Andrew does not dispute it was aware of the '144 patent's existence when it bid on the STC deal, but due to TruePosition's deception, Andrew had no notice of TruePosition's belief that the '144 patent covered use of an SDCCH nor of TruePosition's intent to exclude others from practicing the standardized technology.  TruePosition's communications to Andrew about the '144 patent were intended to keep Andrew and the ETSI community in the dark about TruePosition's real intentions.  *See* PTX 7 (JA135-137); 8 (JA138-140); 17 (JA158-162); 18 (JA163-169); 15R (JA141-157); *see also* D.I. 327 at 58-65, 325 at 31-36.  Indeed, TruePosition's general counsel admitted at trial that he was not aware of anyone from TruePosition telling anyone from Andrew that TruePosition believed the '144 patent covered UTDOA using an SDCCH channel, even at the time of the parties' January 2004 Settlement Agreement that specifically referenced the '144 patent.  JA445:4-8.

5

Andrew demonstrated standardized SDCCH UTDOA location technology for the United States government (not STC) in August 2005 in Ashburn, VA.  JA943:5-17.

### C.    THIS LAWSUIT: OCTOBER 2005

TruePosition filed suit against Andrew on October 25, 2005.  At that time, Andrew had not yet shipped any equipment or software to STC.  B23-33; B49:23-B50:17.  But TruePosition did not move for a preliminary injunction or seek any other expedited relief.

At the time of the trial, Andrew had deployed equipment for two STC phases, and had been awarded a third, for which no equipment had shipped.  The remaining two phases are not guaranteed to Andrew.  JA946:18-947:11; JA947:22-25.  TruePosition admitted at trial that it continues to bid for them. JA341:21-342:20.

At trial, TruePosition sought — and received — $45.3 million in "lost profits" damages for the entire STC rollout.  TruePosition sought no damages for the Ashburn demonstration.

## V.    ARGUMENT.

### A.    ENHANCED DAMAGES ARE THE EXCEPTION, NOT THE RULE.

Enhanced damages are by far the exception, not the rule.  Indeed, even where infringement is found to be willful, the Federal Circuit has repeatedly emphasized that "[a] finding of willfulness does not mandate enhanced damages." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1461 (Fed. Cir. 1998) (*en banc*) (affirming denial of enhanced damage despite jury verdict of willfulness); s*ee also Modine Mfg. Co. v. Allen Group, Inc.,* 917 F.2d 538, 543 (Fed. Cir. 1990) (stating and holding same); *Juicy Whip Inc. v. Orange Bang Inc.,* 382 F.3d 1367, 1373 (Fed. Cir. 2004) (stating and holding same); *Transclean Corp. v. Bridgewood Services, Inc.,* 290 F.3d 1364, 1378 (Fed. Cir. 2002) (stating and holding same); *Riles v. Shell Exploration and Prod. Co.,* 298 F.3d 1302, 1314 (Fed. Cir. 2002) (stating and holding same); *Electro Scientific Indus., Inc. v. General Scanning Inc.,* 247 F.3d 1341, 1353-1354 (Fed. Cir.

2001) (stating and holding same); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1274 (Fed. Cir. 1999) (stating and holding same).

Because enhanced damages are punitive in nature, they are limited to situations where the infringement is willful and the defendant's conduct is "particularly egregious." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1464 (Fed. Cir. 1997) ("The statute…recognizes the tortious nature of patent infringement and the public interest in a stable patent right, for enhanced damages are not compensatory but punitive."); *see also Tristrata Tech., Inc. v. ICN Pharms., Inc.,* 314 F.Supp.2d 356 (D. Del. 2004) (awarding no enhanced damages despite willfulness finding). Indeed, "[c]ourts should not automatically enhance damages following a finding of willful infringement because punitive damage penalties deter innovation. Accordingly, punitive damage awards should only be given 'in cases where conduct is so obnoxious as clearly to call for them.'" *Id.* (internal citation omitted). The court should consider the totality of the circumstances. *Odetics, Inc.*, 185 F.3d at 1274 ("the decision to grant or deny enhanced damages remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances").

### B.    DAMAGES SHOULD NOT BE ENHANCED IN THIS CASE.

Damages should not be enhanced in this case, both because TruePosition did not move for a preliminary injunction as required under *Seagate*, and because there is nothing egregious about Andrew's conduct.

### 1.    TruePosition Did Not Move For a Preliminary Injunction As Required Under *Seagate*.

In its *en banc* decision in *Seagate*, the Federal Circuit clarified the law on enhancement of damages. *See In re Seagate Tech., LLC,* 497 F.3d 1360, 1374 (Fed. Cir. 2007) (*en banc*). The

Federal Circuit made clear that if a patentee does not move for a preliminary injunction, it cannot be awarded enhanced damages based on the accused infringer's post-filing conduct:

> [W]hen an accused infringer's post-filing conduct is reckless, a patentee can move for a preliminary injunction, which generally provides an adequate remedy for combating post-filing willful infringement. ***A patentee who does not attempt to stop an accused infringer's activities in this manner should not be allowed to accrue enhanced damages based solely on the infringer's post-filing conduct.***

*Id.* (emphasis added) (internal citation omitted).

TruePosition did not move for a preliminary injunction or any other expedited relief in this case, even though at the time TruePosition filed this suit in October 2005, Andrew had not yet shipped any equipment or software to STC.[4]    All of Andrew's shipments to STC occurred post-filing.  B23-33.  Because TruePosition did not move for a preliminary injunction, it cannot receive enhanced damages based on Andrew's shipments to STC.  *Id.*  TruePosition's claim for enhancement is limited to Andrew's pre-filing acts.

TruePosition alleges two pre-filing acts of infringement.  First, Andrew demonstrated its Geometrix system for the U.S. government in Ashburn, Virginia, using an SDCCH channel. JA945:3-13; JA988:17-21.  TruePosition does not seek any damages for this demonstration. JA688:15-20.  Second, Andrew's bid was submitted to STC, offering a product practicing the standardized GSM UTDOA technology Andrew and TruePosition jointly proposed to ETSI. JA988:17-21.  It is this single act of submitting a bid for which TruePosition requests that the jury's $45.3 million damage award be tripled to $135.9 million.  No other allegedly infringing

---

4    Andrew did not authorize any equipment to be shipped to Saudi Arabia until November 2005.  B23-33; *see also* JA207-JA209.

acts occurred pre-filing.  TruePosition does not cite a single case where damages were enhanced based solely on an offer for sale.

### 2.    There Is Nothing Egregious About Andrew's Conduct To Warrant Enhanced Damages.

The Federal Circuit has emphasized that the "paramount determination" for a court to make in deciding whether to enhance damages is "the egregiousness of the defendant's conduct based on all the facts and circumstances.  The court must consider factors that render defendant's conduct more culpable, as well as factors that are mitigating or ameliorating."  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) (*abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975 (Fed. Cir. 1995)).  The Federal Circuit has set forth a non-exhaustive list of factors to balance in deciding whether damages should be enhanced:

(i)     whether the defendant deliberately copied the ideas or design of another;

(ii)    whether the defendant investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed

(iii)   the defendant's behavior as a party to the litigation;

(iv)    the defendant's size and financial condition;

(v)     the closeness of the case;

(vi)    the duration of defendant's misconduct;

(vii)   remedial action by the defendant;

(viii)  the defendant's motivation for harm; and

(ix)    whether the defendant attempted to conceal its misconduct.

*Read*, 970 F.2d at 827.

Here, the *Read* factors show this is a textbook case for no enhancement.  For example, Andrew did not copy, Andrew had a good-faith belief that it could practice the standard and that the '144 patent did not apply to the standard, Andrew's defenses were strong and meritorious,

and Andrew *partnered* with TruePosition to standardize UTDOA in a public standard for the public for the public good. Andrew's actions are the opposite of egregious.

In addition, because the *Read* factors are equitable in nature (*e.g.*, factors 1, 2, 5, 7, 8, and 9), Andrew respectfully requests that when deciding TruePosition's Motion for Enhanced Damages, the Court also consider Andrew's remaining equitable claims, as more fully explained in D.I. 325.

### a.    *Read Factor No. 1: Andrew Did Not Copy.*

The first *Read* factor is whether Andrew deliberately copied the '144 patent. *Read*, 970 F.2d at 827. TruePosition has made no allegations of copying, and the trial record is devoid of any suggestion of copying. The record is undisputed that Andrew did its own research and development, and developed its Geometrix product over many years, spending over $25 million in development costs. JA938:2-25; JA933:21-934:6 (Andrew does own research and development and has many patents related to geolocation); s*ee also* JA691:21-692:1 (TruePosition and Andrew have different product offerings). The evidence of record also demonstrates that Andrew's products use a different architecture and different algorithms than the system disclosed and claimed in the '144 patent   JA840:18-841:19; JA828:20-829:7; JA808:13-809:4; D.I. 327 at 13-40. Furthermore, the use of the SDCCH that formed the backbone of TruePosition's infringement claims is not disclosed in the '144 patent but rather is required by the ETSI standard that Andrew and TruePosition jointly proposed and developed. JA224-227; JA43-44.

Andrew's lack of copying weighs against enhancing damages. *See Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the defendant had not copied the invention); *Tristrata Tech., Inc.*, 314 F.Supp.2d at 360-61

(awarding no enhanced damages despite willfulness finding where, *inter alia*, there was no clear evidence of copying); *Itron, Inc. v. Benghiat*, C.A. 99-501, 2003 WL 21402608, *8-12 (D. Minn., June 16, 2003) (denying award of enhanced damages despite willfulness finding where, *inter alia*, there was no evidence of copying; noting that a copying finding "may not rest upon a finding that Itron copied the elements of the patent claim" but rather that "for example, [defendant] copied the commercial embodiment of a patent). *Cf. Cohesive Techs., Inc. v. Waters Corp.*, C.A. Nos. 98-12308, 99-11528, 01-12307, 2007 WL 2746805, *17-19 (D. Mass., Aug. 31, 2007) (applying *Seagate*; finding no willfulness and noting that "Waters did not copy the column it obtained from Cohesive through Glaxo-Wellcome.").

### b. Read Factor No. 2: Andrew Analyzed the '144 Patent and Formed a Good-Faith Belief That It Was Not Infringed.

The second *Read* factor is whether Andrew investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed. *Read*, 970 F.2d at 827. To the extent this factor remains applicable after *Seagate*, it too favors Andrew. [5]

TruePosition admits Andrew "extensively reviewed" and analyzed the '144 patent well before this suit was filed. *See, e.g.*, TruePosition Br. at 3 (citing Trial Tr. at 500:22-501:8). Andrew had a good faith basis to believe it would not infringe the '144 patent by offering standardized GSM technology. B53:1-11; JA941:20-942:20. Andrew also "mounted a good faith and substantial challenge to the existence of infringement." *Odetics, Inc.*, 185 F.3d at 1274

---

[5]  In S*eagate*, the Federal Circuit specifically eliminated the previous focus on the subjective intent of the alleged infringer, and "abandon[ed]" the duty of due care standard. *Seagate*, 497 F.3d at 1371. To prove willfulness under Seagate, there must be clear and convincing evidence: (1) "of an objectively high likelihood that [Andrew's] actions constituted infringement of a valid patent"; and (2) "that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to [Andrew]." *Id.* Andrew's subjective intent cannot form the basis of an enhanced damages award. *Id.; TGIP, Inc. v. AT & T Corp.*, C.A. 06-105, 2007 WL 3194125, *13 (E.D. Tex., Oct. 29, 2007) (finding no willful infringement).

(quotation omitted).    Indeed, Andrew presented many strong noninfringement arguments, including that: (1) an SDCCH does not literally meet the Court's construction of "a prescribed set of reverse control channels"; (2) Andrew's Geometrix product does not contain the required "means for processing," "means for determining," or "locating means" limitations; (3) Andrew's Geometrix product does not have a database accessible to subscribers; (4) Andrew's Geometrix product does not process sampled baseband signals into frames of digital data; and (5) Andrew's Geometrix product does not have "time stamp bits representing the time…frames were produced at each cell site."  *See generally* D.I. 327 at pp. 13-40.[6]

In sum, *Read* factor no. 2 favors Andrew.  *See Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the defendant "mounted a good faith and substantial challenge to the existence of infringement").

## c.    *Read Factor No. 3: Andrew Behaved Properly During Litigation.*

The third Read factor is whether Andrew behaved properly as a party to the litigation. *Read*, 970 F.2d at 827.  Andrew's litigation conduct was proper.  Andrew did not engage in any discovery misconduct, nor did Andrew engage in any misconduct at trial.  TruePosition does not suggest otherwise.

Andrew did not present any frivolous defenses either, and TruePosition is wrong to imply that Andrew's standards counterclaims form a basis for an enhanced damages award. TruePosition Br. at 4-6.  Indeed, the Court denied TruePosition's motion for summary judgment on Andrew's standards counterclaims, even noting that TruePosition was not "being completely honest" during the UTDOA standardization process.  D.I. 258, B36:10.  Furthermore, ETSI's

---

6    The reasonableness of Andrew's belief is further highlighted by the fact that this case presented many thorny and hard-fought claim construction issues.

recent letter to TruePosition reminding TruePosition of its licensing obligations with respect to the '144 patent illustrates that Andrew's defenses are meritorious.  *See* EA231-232*; see also* B15-B16; B18-B20.

Everything about Andrew's litigation behavior weighs against enhancing damages.  *See Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the defendant engaged in no misconduct during litigation); *Cybor Corp.*, 138 F.3d at 1460-1461 (affirming denial of enhanced damages despite jury verdict of willfulness where, *inter alia*, nothing in the record supported plaintiff's argument that defendant had litigated in an inappropriate fashion, and the district court had found the contrary to be true); *Riles*, 298 F.3d at 1314 (affirming denial of enhanced damages despite jury verdict of willfulness where, *inter alia*, "the trial court weighed Shell's litigation behavior and found no reason for an award of enhanced damages."); *Tristrata Tech., Inc.,* 314 F.Supp.2d at 360-61 (awarding no enhanced damages despite willfulness finding where, *inter alia*, defendant's "conduct during litigation [] does not weigh in favor of enhancing damages" because its "pretrial motions, for the most part, were not frivolous"); *Itron, Inc.*, 2003 WL 21402608 at \*10 (no enhanced damages despite willfulness finding where, *inter alia*, there "was no evidence that [defendant's] tactics before, during, or after trial manifest bad faith or inequitable conduct").

### d.    Read Factor No. 4: Andrew's Size and Financial Condition Does Not Support An Enhanced Damages Award.

The fourth *Read* factor examines Andrew's size and financial condition.  *Read*, 970 F.2d at 827.  TruePosition argues that Andrew is a large, diversified corporation that can withstand a large award and that this affirmatively "supports enhanced damages."  TruePosition Br. at 8.

Damages should not be enhanced just because a defendant is a large company.  *Itron, Inc.*, 2003 WL 21402608 at \*10 ("simply because the judge in that case minimized damages to

account for defendant's small size does not mean that this Court must maximize damages here to account for Itron's large size. Enhanced damages are designed to punish based upon culpability. ***They are not an automatic sliding scale based on ability to pay.***") (internal citation omitted, emphasis added).

Moreover, even with large corporations, enhanced damages should not be awarded if they would severely affect the defendant's financial condition. *See Read*, 970 F.2d at 827 (enhanced damages should not be awarded if it would severely affect the defendant's financial condition or unduly prejudice the defendant's non-infringing business) (citing *Bott v. Four Star Corp.*, 229 USPQ 241, 254 (E.D. Mich. 1985) ("[a] threefold increase in damages would severely affect [defendant's] financial condition."); *Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc.*, 561 F.Supp. 512, 533 (E.D. La. 1982) (exemplary damages "should not unduly prejudice the defendants' non-infringing business.") (*aff'd,* 761 F.2d 649 (Fed. Cir. 1985)).

Here, TruePosition seeks a treble award amounting to $135.9 million for a product that has a single customer and a single deployment.    JA688:15-20.    As explained in the accompanying Declaration of Gary Brown, Group Finance Director of Andrew's Network Solutions Group, TruePosition's requested award is:



B13 at ¶¶ 2-4.

In short, TruePosition's requested award is astronomical, and *Read* factor no. 4 also favors Andrew.[7]

e.   ***Read Factor No. 5: A Reasonable Jury Could — and Should — Have Found For Andrew on All Counts, Including Willfulness.***

The fifth *Read* factor is whether the case was close.  *Read*, 970 F.2d at 827.   This case should be considered very close in light of all of Andrew's substantial defenses and counterclaims; indeed, as discussed in Andrew's motions for judgment as a matter of law, a reasonable jury could — and should — have found for Andrew on all counts.

(1)   Andrew's Defenses and Counterclaims Were Substantial and Meritorious.

As explained in Andrew's Renewed Motions for Judgment as a Matter of Law (D.I. 327) and Andrew's Brief in Support of Its Remaining Equitable Defenses (D.I. 325), the undisputed evidence of record supported Andrew's defenses and counterclaims that: (a) Andrew does not infringe the '144 patent (*see* D.I. 327 at pp. 13-40); (b) there was no willful infringement (*see* D.I. 327 at pp. 40-48)[8]; (c) TruePosition was promissorily estopped from asserting the '144 patent against Andrew (*see* D.I. 327 at pp. 48-58); (d) TruePosition committed fraud (*see* D.I. 327 pp. 58-65); (e) TruePosition should be equitably estopped from asserting the '144 patent against

---

[7]  Furthermore, contrary to TruePosition's claims, Andrew is dwarfed by TruePostion because TruePosition is owned by Liberty Media, a $9 billion conglomerate with interests in, inter alia, the Atlanta Braves, Hallmark Entertainment Investments, McNeil/Lehrer Productions, Motorola, Sprint Nextel, Starz Media, Time Warner, Viacom, Expedia, and QVC.  B4-9, B11.  Moreover, TruePosition actually has emphasized this relationship in its press releases regarding the verdict.  *See* B21-B22 ("TruePosition Wins Patent Infringement Litigation Against Andrew Corporation"; TruePosition is a subsidiary of Liberty Media Corporation).  This is of course in marked contrast to what TruePosition argued to the jury.  B42:1-8; JA293:23-294:19.

[8]  Notably, TruePosition relies heavily on PTXs 7, 8, 17, 18, and 15R to support its argument that enhanced damages are warranted.  However, as Andrew has shown in DI 327 at pp. 40-48, none of those documents support a willfulness finding because, *inter alia*, PTX 7, 8, and 15R have nothing to do with the STC deal and give no notice of TruePosition's interpretation of the '144 patent, and PTX 17 and 18 were sent too late to put Andrew on notice of anything for any of its pre-suit activities.  And as discussed above at p. 7-8, Andrew's post-suit activities cannot be the basis for enhanced damages because TruePosition did not move for a preliminary injunction.

Andrew (D.I. 325 at pp 28-39); (f) TruePosition is barred from asserting the '144 patent under the doctrine of implied license (D.I. 325 at pp 39-48); and (g) TruePosition has unclean hands (D.I. 325 at pp. 48-50). ETSI's post-suit letter to TruePosition further confirms Andrew's defenses were sound. EA231-EA232.

Even though the jury returned a verdict for TruePosition, the substantial evidence presented shows that the case was, at a minimum, at least close. This weighs against enhancing damages. *See, e.g, Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the district court concluded the case was close); *Riles*, 298 F.3d at 1314 (affirming denial of enhanced damage despite jury verdict of willfulness where, *inter alia*, "the district court found that the issues of infringement, damages, and willfulness were close questions" and "noted that the case was hard-fought, and that the jury could have found for Shell on the infringement and willfulness issues and could have awarded substantially less damages"); *Electro Scientific Indus., Inc.*, 247 F.3d at 1353 (affirming denial of enhanced damage despite jury verdict of willfulness where the district court found that the "case on willfulness [was] a close one"); *Tristrata Tech., Inc.,* 314 F.Supp.2d at 360-61 (awarding no enhanced damages despite willfulness finding where, *inter alia*, the "result of this litigation was largely dependent on a strongly contested claim construction" and defendant's "position and suggested construction cannot be deemed frivolous or in bad faith").

        (2)    TruePosition's Arguments Regarding the Evidence and the Merits of Andrew Case Are Unsupported and Unjustifiable.

TruePosition makes three arguments to attempt to show that the case was not close, but each of its arguments lacks support in the record.

First, TruePosition argues "the evidence at trial indicated that Andrew cooked up the fraud counterclaim" (TruePosition Br. at 5), that Andrew "made no serious attempt during

16

discovery to meet its burden of establishing a critical element of the fraud claim — proof of an omission in the face of a duty to disclose" (TruePosition Br. at 5), and that "Andrew's fraud claim was concocted at the last minute" (TruePosition Br. at 6). TruePosition ignores the veritable mountain of evidence Andrew presented in support of its fraud claim. *See, e.g.*:

(i)     JA210-216 (ETSI IPR Policy); *see especially* JA215-216 at 15.11-15.12 (Options are considered essential under the IPR Policy);

(ii)    JA289:7-11, JA335:21-24, JA277:23-278:1 (TruePosition admits that its position is that the '144 is essential to that option in the standard);

(iii)   JA288:8-20 (TruePosition President was "aware" of "the ETSI IPR or patent disclosure rules" when "TruePosition made an affirmative decision not to declare the '144 patent to ETSI after considering whether to do that");

(iv)    JA94-96, JA97-99, JA100 (TruePosition's own standards manager, Rhys Robinson, urged TruePosition to declare it patents as essential and not to play the IPR "shell-game");

(v)     JA226 at 4.2 (TruePosition solicited Andrew's support to standardize UTDOA for Location Services in GSM/GPRS; those efforts were ultimately successful in changing a host of technical specifications);

(vi)    JA451:18-452:3 (it is uncontested that TruePosition "did not declare [the '144 patent] as essential to the standard");

(vii)   JA444:9-445:8 (no one at TruePosition told "Andrew that TruePosition believed the '144 patent covered UTDOA in GSM using the SDCCH channel.");

(viii)  JA7, JA52-55; JA70 (TruePosition blatantly lied and told Andrew and others that there was no blocking IPR);

(ix)    JA91-93; JA2; JA4-5; JA52-54 (Standardization would be impossible unless UTDOA was perceived as "multi-vendor" and it was necessary to eradicate the "perception/concern" that UTDOA was "proprietary" to TruePosition).

In addition, ETSI's post-suit letter to TruePosition further confirms that Andrew's standards-related defenses were sound. *See* EA231-EA232. In its letter, ETSI asked

17

TruePosition to disclose any essential IPR, and reminded TruePosition that Clause 6.1 of the

ETSI IPR Policy requires licensing, including for options:

> Under the ETSI IPR Policy, I am obliged to bring this matter to your attention to ascertain whether you are of the opinion that you hold essential, or potentially essential, IPRs related to the abovementioned Technical Specifications or options therein.
>
> If this were the case, **we would ask you to disclose any essential IPR and indicate if you are prepared to grant licenses** for this/these IPR(s), in accordance with the terms and conditions set out in Clause 6.1 of the ETSI IPR Policy.

EA231-232[9] (emphasis added); *see also* B18-B20; B15-B17.

Second, TruePosition asserts that Andrew "presented absolutely no evidence at trial to

rebut" TruePosition's infringement allegations.  TruePosition Br. at 4.  Here again, TruePosition

ignores the record:

    (i)    JA946:11-12; JA199; JA182; JA204 (Andrew's offer to sell to STC occurred in Saudi Arabia, not the United States); JA943:2-945:13; JA952:20-954:18 (The August 2005 Ashburn demonstration was for the United States government, not STC);

    (ii)    JA743:1-744:5; JA746:16-23; JA748:3-749:9; JA752:6-20; JA746:24-747:14; JA743:18-744:3; JA767:7-22 (The SDCCH that Andrew uses is part of GSM, a cellular system with a fundamentally different architecture that does not have "reverse control channels");

    (iii)    JA29; JA30-32; JA33-36; JA37-42 (The PTO rejected claims directed to "control channels" generally, and TruePosition amended its claims to a "reverse control channel);

    (iv)    JA749:10-752:14; JA847:12-848:11; JA778:10-779:4 (The SDCCH channel "hops," and does not use one of a predetermined range of frequencies);

---

9    Moreover, TruePosition seems to base its "cooked up" argument on a single document that its counsel merely read from, did not actually cross the witness on, and which was not admitted into evidence. *See* TruePosition Br. 5; Tr. at 1872-1873.  TruePosition's "cooked up" arguments should be ignored.

(v)    JA662:7-663:7; JA782:14-24; JA57 at 1.5; JA576:6-11; JA766:16-767:13
(The SDCCH is a bi-directional channel, and if there is any "reverse
control channel" in the GSM system, it is the RACH channel);

(vi)    JA64-65;  JA579:14-21;  JA667:19-668:4;  JA669:25-670:5  (Andrew's
Geometrix product does not "automatically" locate phones); and

(vii)    JA131;  JA676:10-18;  JA680:8-16;  JA679:1-21;  JA678:16-23;  jA121;
JA129 (Geometrix does not offer a database remotely accessible to
"subscribers").

*See also* D.I. 327 at pp. 13-40.

Third, TruePosition summarily states that because the jury found for TruePosition on all

counts, Andrew's claims and defenses were "litigation inspired" (TruePosition Br. at 5) and the

case "was not even close." TruePosition Br. at 6. In doing so, TruePosition purports to be able

to read the jury's mind, and ignores the fact that there could be many reasons why the jury

reached its verdict. Moreover, TruePosition's argument is bootstrapping — if the jury had not

found for TruePosition, enhanced damages would not even be an issue. *Read* factor no. 5

requires the Court to consider the evidence that was presented. *See, e.g, Odetics, Inc.*, 185 F.3d

at 1274; *Riles*, 298 F.3d at 1314; *Electro Scientific Indus., Inc.*, 247 F.3d at 1353; *Tristrata*

*Tech., Inc.,* 314 F.Supp.2d at 360-61. That evidence confirms Andrew's claims were sound.

Notably, TruePosition does not — because it cannot — offer any legal citation for its

argument. In fact, the Federal Circuit has rejected TruePosition's argument. *See Cybor Corp.,*

138 F.3d at 1461 (affirming denial of enhanced damages despite jury verdict of willfulness and

noting that jury verdict of willful infringement of all twenty asserted claims did "not mean that

the case was not close, particularly in light of [defendant's] justifiable albeit unsuccessful

arguments").

*Read* factor no. 5 weighs in favor of Andrew.

       **f.**     **_Read Factor No. 6: The Duration of the Alleged Misconduct_**
             **_Was Very Short, Encompassing Only One Deal._**

The sixth *Read* factor is whether Andrew's alleged infringement was of a short or long duration. *Read*, 970 F.2d at 827. Here, the duration of the alleged infringement was short, encompassing only one contract for one customer. Thus, *Read* factor no. 6 weighs in favor of Andrew. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 216 F.Supp.2d 1175, 1186 (D. Colo. 2002) (declining to award damages where sixth factor favored retail store that stocked "essentially a one-time purchase" delivered to the retailer via two shipments of the infringing product)*; see also Collegenet, Inc. v. Applyyourself, Inc.*, CV. 02-484, 02-1359, 2004 WL 2050489, *15 (D. Or., Jan. 20, 2004) (finding duration favored defendant when period of infringement was limited to nine months). Clearly the limited duration of the STC bid is "not so egregious to constitute an enhancing factor." *NTP Inc. v. Research in Motion, Ltd.*, 270 F.Supp.2d 751, 759 (E.D. Va. 2003) (concluding a two to three year infringing period was a neutral factor).

       **g.**     **_Read Factor No. 7: Because TruePosition Got the Accused_**
             **_Technology Standardized, Andrew Could Not Take Remedial_**
             **_Measures, But Did Take Proactive Measures._**

The seventh Read factor is whether Andrew took remedial action. *Read*, 970 F.2d at 827. TruePosition argues that Andrew made no attempt to design around the patent. TruePosition Br. at 7. However, TruePosition's admission that the '144 is essential to practicing idle-mode SDCCH location vitiates its argument that Andrew should have designed-around. *See* A289:7-11; *see also* JA335:21-24; JA277:23-278:1; JA1; JA416-11-25. Indeed, the evidence is uncontroverted that the market requires standardized technology. JA940:14-941:1. Furthermore, by actively participating in the standardization process, and thoroughly investigating IPR issues, Andrew went beyond remedial measures — it took **_proactive_** measures. *Read* factor no. 7 is thus either neutral or weighs in Andrew's favor.

### h.     *Read Factor No. 8: There Is No Evidence That Andrew Attempted to Harm TruePosition — Rather, Andrew Partnered With TruePosition and Suffered Harm as a Result.*

The eighth *Read* factor is whether there is evidence that Andrew was motivated to harm TruePosition.  *Read*, 970 F.2d at 827.   More specifically, this factor concerns whether there was "infringement **designed to injure** a competitor."  *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1349 (Fed. Cir. 2004) (emphasis added).  *See also Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the defendant had evinced no motivation to harm the plaintiff); *Tristrata Tech., Inc.*, 314 F.Supp.2d at 362 (awarding no enhanced damages despite willfulness finding where, *inter alia*, the Court found "no proof of [defendant's] motivation for harm").

Here, TruePosition offers no proof that Andrew had any motivation to harm TruePosition.  Rather TruePosition argues Andrew's desire to sell more product translates into a motivation to harm.  TruePosition Br. at 7.  But courts **distinguish** pressure to sell product from motivation to harm the other party.  *See Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc.*, 913 F.Supp. 1256, 1286 n. 19, 1290 (N. D. Iowa 1996) ("Even where defendants' infringing acts are willful and with knowledge of the plaintiff's rights, plaintiff is not necessarily entitled to enhanced damages where defendant's motivation is not to do harm, but rather is a result of prevailing economic pressure in the form of customer dissatisfaction;" "in light of the lack of evidence indicating Buske's motivation was to harm Century Wrecker, the court does not find that this factor weighs in favor of an award of enhanced damages").  And courts have held that economic pressure actually **mitigates** the defendant's culpability.  *See American Safety Table Co. v. Schreiber*, 415 F.2d 373, 379 (2d Cir.1969) (holding that the pressures of the marketplace mitigated the infringer's culpability); *Itron, Inc.*, 2003 WL 21402608 at *12 (denying award of

enhanced damages despite willfulness finding where, *inter alia*, defendant's infringement was a response to economic pressure; specifically finding factor weighed against increased damages).[10]

The evidence of record demonstrates that Andrew did not act to harm TruePosition, but rather **joined forces** with TruePosition, and aided TruePosition in its efforts to standardize UTDOA for GSM.    JA941:17-942:20;  JA877:15-25;  JA453:24-454:2;  JA412:21-413:10; JA332:1-333:10;  JA409:18-410:22;  JA884-888.   Indeed, the evidence shows that everything Andrew did was in support of finding a solution from which everyone, including TruePosition, would benefit.    *See* EA 104-105 (Study Group Ground Rules: "We all work with the understanding that what we do here is create a solution that we all benefit from."); *see also* EA447:21-EA448:3 (Study Group participants agreed to live by a set of Ground Rules to ensure "openness," "information sharing," and "no hidden agendas and no stalling tactics," which otherwise "often happens in a competitive environment.").

It was only after UTDOA was standardized that Andrew learned TruePosition had been using Andrew to further its ruse that UTDOA was "multi-vendor" and that TruePosition's intent had always been to preclude Andrew from selling standardized technology.   Indeed, the Court denied TruePosition's motion for summary judgment on Andrew's standards counterclaims, and noted that TruePosition was not "being completely honest" during the UTDOA standardization

---

10   The cases TruePosition relies upon are easily distinguishable.  *Applied Medical* concerns whether infringement is willful, and does not consider the *Read* factors.  *See Applied Medical Resources Corp. v. United States Surgical Corp.*, 435 F.3d 1356, 1365 (Fed. Cir. 2006).  Furthermore, *Applied Medical* does not even suggest that "competitive" pressures are sufficient to find willful infringement -- rather, the defendant in that case ignored opinions of counsel, "did not properly oversee… the development of [product]," and "management placed intense time pressure on their engineers to create a new product." *Id.    nCube* is equally unpersuasive. The *nCube* court concerned the video-on-demand market, and considered trial testimony "predict[ing] consolidation of that market within the next few years."  *nCube Corp. v. SeaChange Int'l., Inc.* 313 F.Supp.2d 361, 390 (D. Del. 2004).  Here, the opposite is true -- TruePosition enlisted Andrew's partnership on U-TDOA standardization, to further the assumption that it would be a "multi-vendor" system.  *See* JA91-93; JA2-3; JA4-6.

22

process.  D.I. 258, B36:10.  Thus, this factor weighs in Andrew's favor both because there is no evidence that Andrew was motivated to harm TruePosition, and for the independent reason that is Andrew who has suffered harm at TruePosition's hands.

> ### i.    *Read Factor No. 9: Andrew Did Not Attempt to Conceal Its Alleged Misconduct.*

The ninth *Read* factor is whether Andrew attempted to conceal its "misconduct."  *Read*, 970 F.2d at 827.  Here, there is absolutely no evidence that Andrew attempted to "conceal misconduct."  Indeed, the facts show the exact opposite.  Andrew actively partnered with TruePosition, and publicly participated in the standardization process, the purpose of which was to develop a public, world-wide standard.  There was nothing even close to concealment on Andrew's part, which weighs against increasing damages.  *See Odetics, Inc.*, 185 F.3d at 1274 (affirming award of no enhanced damages despite willfulness finding where, *inter alia*, the defendant had not attempted to conceal its infringement); *Tristrata Tech., Inc.,* 314 F.Supp.2d at 361-62 (awarding no enhanced damages despite willfulness finding where, *inter alia*, the Court found no proof that defendant attempted to conceal its infringing activities); *Golight, Inc.*, 216 F.Supp.2d at 1187 (awarding no enhanced damages despite willfulness finding where, *inter alia*, "Wal-Mart's record keeping was sloppy at best, but there is insufficient evidence of bad faith to make a finding of concealment that would support an enhanced damage award.").

Furthermore, it is TruePosition who engaged in a prolonged course of conduct of deceit.  Thus, *Read* factor no. 9 weighs in Andrew's favor both because Andrew did not attempt to conceal its "misconduct," and for the independent reason that it was TruePosition who engaged in concealment.

## VI.    THERE IS NO BASIS TO AWARD ATTORNEYS' FEES.

"The determination of whether a case is exceptional and, thus, eligible for and warranting an award of attorney fees under § 285 is a two-step process in which the district court must (1) determine whether there is clear and convincing evidence that a case is exceptional, a factual determination reviewed for clear error, and (2) if so, then determine in its discretion whether an award of attorney fees is justified." *Digeo, Inc. v. Audible, Inc.*, CA 07-1133, 2007 WL 3196676, *2 (Fed. Cir., Nov. 1, 2007) (*citing Cybor Corp.*, 138 F.3d at 1460). The two steps are interrelated, as "the amount of the attorney fees depends on the extent to which the case is exceptional. In other words, the exceptionality determination highly influences the award setting." *Special Devices, Inc. v. OEA, Inc.*, 269 F.3d 1340, 1344 (Fed. Cir. 2001).

The Federal Circuit has explained that exceptional cases may involve "inequitable conduct before the [Patent Office]; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1328-30 (Fed. Cir. 2003) (citation omitted). However, "a finding of willful infringement does not require a finding that a case is exceptional." *Cybor* at 1461. And "[e]ven after a finding that a case is exceptional, the district court may decline to award attorney fees." *Id.* at 1460. *See also Cybor Corp.*, 138 F.3d at 1461 (affirming denial of attorneys fees despite jury verdict of willfulness); *Modine Mfg. C*o., 917 F.2d at 543 (same); *Juicy Whip Inc.*, 382 F.3d at 1373 (same); *Transclean Corp.*, 290 F.3d at 1370 (same); *Electro Scientific Indus., Inc.*, 247 F.3d at 1353 (same); *Odetics, Inc.*, 185 F.3d at 1274 (same). It is TruePosition's burden to prove by clear and convincing evidence that this case is exceptional. *See Digeo*, 2007 WL 3196676 at *4 ("Instead, the burden is on Audible to prove by clear and convincing evidence that the case is

exceptional by showing that Digeo brought a frivolous lawsuit because it knew or should have known that it lacked legal title to the '823 patent.").

Courts generally consider the *Read* factors when deciding exceptionality. *See e.g., Juicy Whip Inc.*, 382 F.3d at 1373 (affirming denial of attorneys fees despite jury verdict of willfulness; noting that "the district court presented a thorough and complete analysis of the *Read v. Portec* factors" and "properly considered the various factors relating to attorney fees, including 'the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other factors whereby fee shifting may serve as an instrument of justice'") (citation omitted); *Transclean Corp.*, 290 F.3d at 1370 (affirming denial of attorneys fees despite jury verdict of willfulness; stating that district court's "careful analysis of the *Read* factors regarding enhancement of damages suffices as grounds for affirming the court's implicit conclusion that the infringement case was not exceptional within the meaning of 35 U.S.C. § 285.").

As discussed above at pp. 9-23, the *Read* factors favor a finding that this case is not exceptional because, *inter alia*: Andrew did not copy, Andrew analyzed the '144 patent and formed a good-faith belief that it was not infringed, Andrew behaved properly during litigation, a reasonable jury should have found for Andrew on all counts (including willfulness), the duration of the accused conduct was short, there is no evidence that Andrew attempted to harm TruePosition (and was in fact harmed itself), Andrew did not attempt to conceal its alleged "misconduct" (and TruePosition engaged in concealment). In sum, TruePosition has not come close to proving exceptionality by clear and convincing evidence.

***

## VII.    CONCLUSION.

For all of the above reasons, Andrew respectfully requests that the Court deny TruePosition's Motion for Enhanced Damages.

Respectfully submitted,

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

/s/ *Andrew A. Lundgren*
Josy W. Ingersoll (No. 1088)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*alundgren@ycst.com*

*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:

John M. Desmarais, P.C.
Gregory S. Arovas, P.C.
Avinash S. Lele
Todd M. Friedman
Jason Choy
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800


Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
Regan A. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: November 15, 2007

<u>**CERTIFICATE OF SERVICE**</u>

I, Andrew A. Lundgren, Esquire, hereby certify that on November 26, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on November 26, 2007, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL**

> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
> Woodcock Washburn LLP
> Circa Centre, 12th Floor
> 2929 Arch Street
> Philadelphia, PA  19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Andrew A. Lundgren*
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant Andrew Corporation*