# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TruePosition, Inc., | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | **Civil Action No. 05-00747 (SLR)** |
| v. | ) | |
| | ) | |
| Andrew Corporation, | ) | |
| | ) | |
| Defendant/ | ) | |
| Counterclaim-Plaintiff. | ) | |
| | ) | |

## TRUEPOSITION'S REPLY BRIEF IN SUPPORT
## OF ITS MOTION FOR PERMANENT INJUNCTIVE RELIEF

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
jheisman@cblh.com

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist, Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Cira Centre, 12th Floor, 2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

Attorneys for Plaintiff, TruePosition, Inc.

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   A PERMANENT INJUNCTION IS APPROPRIATE ...................................................... 2

    A.    Andrew's Misdirection Should Be Disregarded .................................................... 2

        1.    TruePosition Is Seeking to Enjoin Andrew's Infringement,
            Not "the Practice of Standardized Technology" ......................................... 2

        2.    TruePosition's Injunction Request Has Nothing to Do With
            the ETSI Rules ......................................................................................... 5

    B.    TruePosition Has Demonstrated Irreparable Harm................................................. 8

    C.    TruePosition Has Demonstrated that Damages Are Not an
        Adequate Remedy ............................................................................................ 12

    D.    TruePosition Has Demonstrated that the Balance of Hardships
        Favors TruePosition ......................................................................................... 13

    E.    TruePosition Has Demonstrated that the Public Interest Favors an
        Injunction ....................................................................................................... 15

III.  CONCLUSION........................................................................................................... 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Beacon Theatres, Inc. v. Westover,*
   359 U.S. 500 (1959)............................................................................................4

*Broadcom Corp. v. Qualcomm Inc.,*
   501 F.3d 297 (3d Cir. 2007)..............................................................................3

*CSIRO v. Buffalo Tech. Inc.,*
   492 F. Supp. 2d 600 (E.D. Tex. 2007)...........................................................11

*eBay, Inc. v. MercExchange, LLC,*
   126 S. Ct. 1837 (2006).........................................................................10, 11, 12

*IMX, Inc. v. Lending Tree LLC,*
   469 F. Supp. 2d 203 (D. Del. 2007).................................................................10

*Innogenetics, N.V. v. Abbott Laboratories,*
   No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193 (W.D. Wis. Jan. 3,
   2007) .........................................................................................................10, 13

*MercExchange, LLC v. eBay, Inc.,*
   467 F. Supp. 2d 608 (E.D. Va. 2006) ............................................................6, 7

*Paice LLC v. Toyota Motor Corp.,*
   No. 2:04-CV-211-DF, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006).........................10

*Poly-America, L.P. v. GSE Lining Tech., Inc.,*
   383 F.3d 1303 (Fed. Cir. 2004)........................................................................14

*Praxair, Inc. v. ATMI, Inc.,*
   479 F. Supp. 2d 440 (D. Del. 2007).................................................................11

*Rambus Inc. v. Infineon Techs AG,*
   318 F.3d 1081 (Fed. Cir. 2003)..........................................................................6

*Shatterproof Glass Corp. v. Libby-Owens Ford Co.,*
   758 F.2d 613 (Fed. Cir. 1985)..........................................................................12

*T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.,*
   821 F.2d 646 (Fed. Cir. 1987)..........................................................................10

*Therma-Tru Corp. v. Peachtree Doors Inc.,*
   44 F.3d 988 (Fed. Cir. 1995).......................................................................4, 15

*Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*,
    No. H-03-2910, 2006 U.S. Dist. LEXIS 93408 (S.D. Tex. Dec. 27,
    2006) ........................................................................................................................10

## I.    INTRODUCTION

Andrew invites the Court to disregard the jury's rejection of Andrew's standards-based counterclaims and to decide the injunction within a "standards" framework that is, in fact, irrelevant to the injunction question.  Andrew reargues, over and over again, the merits of its standards-based defenses.  But the jury has already assessed the relative credibility of the parties' respective witnesses, reviewed the exhibits, and flatly rejected Andrew's litigation-inspired excuses for its willful infringement.  The starting point for the determination of permanent injunction raised by this motion is the jury's judgment of willful infringement against Andrew already in place, and the sole question on this motion is whether Andrew should be permanently enjoined from continuing that infringement.  Displaying its disdain for the jury system, Andrew is improperly asking the Court to second-guess the jury and accept Andrew's version of the facts – a version the jury clearly did not believe -- instead of addressing the merits of TruePosition's injunction request in the appropriate framework.  Andrew's rejected defenses have no bearing on the permanent injunction analysis.  Its attempt to re-frame the issue should be rejected.[1]

Andrew's brief suggests that Andrew fully intends to continue its infringing conduct.  Although it repeatedly rejected TruePosition's prior offers to enter into a license on reasonable, negotiated terms, what it is now really seeking is a compulsory license on its own unreasonable, unilateral terms.  The law does not endorse Andrew's

---

[1]    By not responding in this reply to the majority of Andrew's irrelevant standards-based arguments, TruePosition does not mean to suggest that there is any merit to any of them. TruePosition has fully addressed Andrew's repetitive but unfounded accusations in its concurrently-filed brief in opposition to Andrew's Motion for Judgments as a Matter of Law, or Alternatively, a New Trial and its brief in opposition to Andrew's Brief in Support of its Remaining Equitable Defenses.  Because they are irrelevant to the injunction question, those arguments will not be repeated here.

"heads I win, tails you lose" notion that an infringer can blithely refuse a license,

willfully infringe instead, and then, after lengthy and costly litigation which it loses,

require the patentee to license on the infringer's terms.  For the reasons fully outlined in

TruePosition's opening brief and as follows, an order permanently enjoining Andrew

from continuing its infringement should be entered.

## II.    A PERMANENT INJUNCTION IS APPROPRIATE

### A.    Andrew's Misdirection Should Be Disregarded

#### 1.    TruePosition Is Seeking to Enjoin Andrew's Infringement, Not "the Practice of Standardized Technology"

Throughout its brief, Andrew refers to its infringing control-channel Geometrix

product as "standardized technology," and, having thus neatly placed the rabbit in the hat,

argues that standardized technology should not be enjoined.  But Andrew's fundamental

premise – necessary to all its arguments – is fallacious.

At trial, Andrew attempted to equate both the 144 patent and its Geometrix

product with some "standard."  But the jury rejected Andrew's story.  The evidence

showed that the standards at issue allow network operators to be assured that different

pieces of equipment from different vendors will interoperate and communicate properly.

The standard nowhere specifies anything about how a particular cell phone location

methodology operates:  it simply specifies how a given methodology must be "plugged

into" a GSM network.  (*See, e.g.,* Tr. at 180:24-181:3; 192:3-195:7; 330:21-333:23).[2]

The 144 patent, on the other hand, specifies detail regarding a method of cell phone

location when the user is not talking, and Andrew's infringing product uses the teachings

of that patent, which are *not found in any standard.*  (Tr. at 195:1-7; 331:11-20).

---

[2]    The trial transcript is docketed at D.I. 298-307.

Moreover, the evidence established that there are multiple ways to locate cell phones within a standards-compliant GSM network without infringing the 144 patent, including Andrew's own voice channel product, which Andrew remains free to sell. (*See, e.g.,* Tr. 181:4-16, 183:18-184:17; 352:17-353:1; 353:17-354:1; PTX 15R). The 144 patent is not required for practicing the standard.[3]

TruePosition is seeking to enjoin *Andrew* from continued willful infringement of TruePosition's control channel technology. The proposed injunction order, which does not mention any standard, would not prevent Andrew from selling its existing standards-compliant voice channel product. Nor would it prevent any new player from entering the market and seeking a license. The notion that TruePosition is seeking to enjoin "standardized technology" is specious.

Andrew's characterization of TruePosition's conduct as a "patent hold-up" is an equally fallacious variation on this same argument. "Patent hold-ups" occur when a participant in a standards body purposefully conceals from the others a patent that is required to be used to implement a proposed standard, and then, after a standard has been adopted, springs it to extract large royalties or otherwise maintain a monopoly over the technology at issue – "holding up" the other participants who have become locked in to the standard. *See, e.g., Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 310 (3d Cir. 2007). Here, the jury (1) understood that the 144 patent was not essential in order to practice the standard, (2) understood that Andrew is not "locked" into infringing the patent in order to comply with the standard because Andrew had sold a standards-

---

[3]    Picture, for example, a garden hose. Suppose a standard covers the coupling that attaches the hose to the faucet and states that one can use any color hose. Further suppose that TruePosition holds a patent on green hoses. Andrew can make yellow hoses, or red hoses, or brown hoses, and still sell standards-compliant hoses. It just cannot make green hoses.

compliant UTDOA system using the voice channel for years, (3) understood that the only party that could possibly care about any UTDOA patent is Andrew, the only other participant in the market, and (4) recognized that Andrew was abundantly familiar with the 144 patent. The jury thus already rejected Andrew's suggestion that it was somehow "blindsided." (Br. at 6).[4]

Further, Andrew complains, as it did at trial, that TruePosition never told anyone of its "interpretation" of its patent. (Br. at 8). But there is no requirement, either in law or in the ETSI rules, that it do so. Moreover, Andrew is sophisticated enough to have read and understood the patent after having been repeatedly put on notice of it and analyzing it in connection with its invalidity position in the prior litigation. Furthermore, the Settlement Agreement between the parties clearly provided that if Andrew used "TDOA" on the "control channel," including the control channel in "GSM," *i.e.,* the SDCCH, it was open to suit for patent infringement. (PTX 15R at ¶ 9). In addition, in rejecting Andrew's standards-based excuses, the jury found that TruePosition had not concealed an essential patent within the meaning of the pertinent ETSI IPR policy. The Court is not free to make factfindings that conflict with those of the jury. *See, e.g., Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510-11 (1959) (judge's determination of equitable claims cannot deprive litigant of right to jury trial on factual questions); *Therma-Tru Corp. v. Peachtree Doors Inc.,* 44 F.3d 988, 994-95 (Fed. Cir. 1995) (court is bound by jury's determination of fact issues common to legal and equitable claims). Andrew's "interpretation" complaint should be disregarded.

---

[4]    Andrew's Answering Br. in Opp. to TruePosition's Mot. For Permanent Injunctive Relief is docketed at D.I. 335.

### 2.    TruePosition's Injunction Request Has Nothing to Do With the ETSI Rules

In a related concept, also sprinkled throughout its brief, Andrew argues that TruePosition's injunction request is "against the ETSI rules." That concept is irrelevant nonsense. The ETSI rules say nothing whatever about the appropriate remedy when a party is adjudicated a willful infringer, and certainly not about a remedy when that party had notice of a patent and a license was offered before infringement. At most, even if Andrew's "the-patent-equals-the-standard-equals-the-product" syllogism were accepted, all that would be required would be for the parties to enter into a good faith negotiation for a license on reasonable terms. Indeed, the ETSI policy specifies that holders of intellectual property should be "adequately and fairly rewarded" for the use of their property. (PTX 363 at ¶ 3.2). But instead of seeking a license in good faith, Andrew made a calculated business decision to ignore all of TruePosition's suggestions to license and willfully chose instead to infringe. It did nothing to see that TruePosition was "adequately and fairly rewarded." Andrew should not be allowed to claim the benefit of "rules" it itself ignored.[5]

Andrew attempts to introduce newly-created post-trial hearsay evidence – a letter to TruePosition, A231-32,[6] and declarations by two former ETSI officials, B15-20,[7] one of whom was already excluded from appearing at trial – offering opinions regarding

---

[5]    Andrew not only had an obligation to negotiate for a license on fair and reasonable terms that would see that TruePosition was "adequately and fairly rewarded," but was also itself required to declare the 144 patent as "essential" if it really believed it to be true. (PTX 363 at ¶ 4.1). Andrew did not do so, presumably because, as its counsel candidly admitted in closing argument, it knew the 144 patent was **not** essential. (Tr. at 2071:13-14).

[6]    A231-32 is part of the Appendix of Exhibits to Andrew's Post-Trial Br. In Support of Its Remaining Equitable Defenses. (D.I. 330).

[7]    B15-20 is part of the Appendix of Exhibits to Andrew's Answering Br. In Opp. to TruePosition's Mot. For Enhanced Damages and Mot. For Permanent Injunctive Relief. (D.I. 336, 338).

interpretation of the ETSI IPR policy. (Br. at 4-6). But that interpretation is the *same* interpretation already offered by Andrew's Mr. Magnusson at trial. (Tr. at 1773:6-23; 1776:8-1777:19). The jury carefully reviewed the ETSI IPR policy, assessed the credibility of the witnesses on both sides in light of that policy and counsel's arguments, and rejected Andrew's proffered interpretation. The Court should not now consider additional, newly-created evidence – especially evidence that on its face has been manufactured by Andrew[8] – to revisit an issue the jury has already decided. *See MercExchange, LLC v. eBay, Inc.,* 467 F. Supp. 2d 608, 613 (E.D. Va. 2006) (refusing to permit parties to "backfill the record by presenting evidence" at the injunction stage "that was previously available yet not advanced"). In any event, for reasons that are fully explained in TruePosition's Opposition to Andrew's Post-Trial Brief in Support of its Remaining Equitable Defenses at 25-29, TruePosition's interpretation is the only one that is fully supported by the plain language of the policy, common sense, and the Federal Circuit's decision in *Rambus Inc. v. Infineon Techs AG,* 318 F.3d 1081 (Fed. Cir. 2003).[9]

---

[8]    The letter to TruePosition from ETSI was commissioned by Andrew's Mr. Magnusson. (*See* D.I. 330 at A231). And the declarations were obviously submitted at Andrew's request.

[9]    Andrew has known the interpretation of the ETSI policy would be an issue since it pleaded its standards-based defenses in the first place. It certainly knew it at the time of the summary judgment proceedings. It had plenty of opportunity to bring an ETSI witness to trial, but made a strategic decision not to do so until, on the eve of trial, long after discovery was completed and the pretrial order had been submitted, it for the first time sought to call one of its two new declarants. But neither declarant was identified during discovery as a person having relevant knowledge or listed in initial disclosures, the pretrial order, or the voir dire list. Neither declarant submitted an expert report setting forth the bases for his opinions. The Court, having fully considered Andrew's arguments seeking to call its surprise witness, quite properly excluded his testimony. Now, Andrew is trying again to circumvent the rules and put forth as though it were "new" evidence that it should have gathered and properly disclosed years ago. Thus Andrew's "new" evidence should be disregarded for the additional reason that it is simply too late in the process to be injecting new heretofore unidentified and undeposed witnesses into the case.

In the event the Court should be inclined to consider Andrew's new hearsay evidence, however, it must afford TruePosition a full opportunity for discovery and response. *See*

If the Court is inclined to consider Andrew's new hearsay evidence, however, it should also consider the ETSI Directives. This document, unlike Andrew's newly-manufactured "evidence," was in existence at the time of trial, can be found on ETSI's website, had been a deposition exhibit, and was listed as Exhibit PTX 373 in the pretrial order. The ETSI Directives, C1-C123,[10] include (beginning at page C47) a piece entitled "ETSI Guidelines on Intellectual Property Rights." In explaining what ETSI considers an "essential" patent, the Guidelines state, after quoting the definition of "essential":

> In simpler terms, an "essential IPR" is an IPR which has been included within a standard and where it would be impossible to implement the standard without making use of this IPR. The only way to avoid the violation of this IPR in respect of the implementation of the standard is therefore to request a license from the owner.

(C51 at ¶ 1.5). ETSI thus makes clear that only patents that block a party from performing *any* implementation of the standard at all are "essential" within the meaning of the policy. The 144 patent does not fall within that definition. Even if ETSI's rules were changed going forward to reflect the opinions reflected in Andrew's post-trial evidence, it is still clear that TruePosition could not have intended, based on the plain meaning of the ETSI rules and guidelines in effect at the time, to conceal an essential patent, and Andrew, with full knowledge of that patent, could not have been misled. The jury so found.[11]

---

*MercExchange, LLC*, 467 F. Supp. 2d at 617-18. Who are these people? Why are they coming forward now, instead of at the time of trial? Have they any authority to speak on behalf of ETSI, or are they offering their individual opinions? What is their interest? Who wrote their declarations? Are they being paid by Andrew?

[10]     C1-123 is part of the concurrently filed Appendix C to TruePosition's Reply Brief in Support of Its Mot. For Permanent Injunctive Relief.

[11]     The ETSI Guidelines also make clear that compulsory licensing is not required or even contemplated:

But even if Andrew's additional and irrelevant evidence were considered, it does not help to defeat TruePosition's injunction request. It is undisputed that Andrew knew about the 144 patent, knew what it covered, and had the opportunity to license. It chose to ignore its obligation under the ETSI rules to negotiate fair and reasonable terms, and instead chose to infringe. Andrew has cited no case – and we have found none – where standards claims such as Andrew's were rejected by the jury, but those same claims are reconsidered at the injunction stage, with new factfinding. Nor has Andrew cited any case – and we have found none – to support the proposition that a party, such as Andrew, after refusing a license and being adjudicated a willful infringer, can compel a patentee to license its patent on the basis of defenses the jury has rejected.

In short, Andrew's attempts to reargue its defenses cannot support what in essence is a request for a compulsory license on Andrew's terms.

## B.    TruePosition Has Demonstrated Irreparable Harm

Andrew argues in two places that TruePosition cannot demonstrate irreparable harm because it knew UTDOA was "supposed to be" multi-vendor and "not . . . proprietary." (Br. at 19, 23). But UTDOA *is* multi-vendor, and will continue to be, whether or not there is an injunction. It is undisputed that Andrew is free to sell its voice channel UTDOA product, as it has been doing for years. (PTX 15R). Despite Andrew's repeated attempts to confuse the issue, "UTDOA" does not equal either "the patented technology" or "Andrew's infringing product." And the whole argument has nothing to

---

Members are fully entitled to hold and benefit from any IPRs which the may own, including the right to refuse the granting of licenses.

(C48 at ¶ 1.1). Further, disputes are to be resolved not by ETSI, but by the national courts of the appropriate jurisdiction of the parties. (C59 at ¶ 4.2).

do with the question of whether TruePosition has demonstrated that it has been irreparably harmed by Andrew's infringing sale of an infringing control channel UTDOA product to STC.

Andrew also argues that TruePosition cannot show irreparable harm because it promised to license the 144 patent. First, of course, the jury soundly rejected the argument that TruePosition made a promise to Andrew. (D.I. 293). Andrew's argument fails on that ground alone. Moreover, the evidence is uncontradicted that the statement in the feasibility study to which Andrew points was made at a time when Andrew was not an ETSI member and that, in any event, TruePosition was required to remove the statement from later drafts. (Tr. at 226:22-227:7; 228:11-22; 308:3-309:16; 1655:12-20; 1817:12-1818:13; DTX 154).

Setting aside the particular "promise" Andrew cites, however, it is true that at one time TruePosition might have been willing to negotiate a license with Andrew. But Andrew ignored TruePosition's overtures and chose instead to infringe. Andrew's argument amounts to a claim that Andrew should have a "get out of jail free" card. On its theory – the same theory it elsewhere proffers to limit damages to a royalty – a party could always ignore a patentee's request that it take a license, willfully infringe instead, and when caught, after lengthy and costly litigation, force the patentholder to grant the same license the infringer had already spurned. Andrew's position is not supported by the law. It is not supported by any ETSI rules. And it does not promote sound public policy.

The mere fact that a patentholder has offered to license does not preclude a finding of irreparable harm. If it did, there would never be injunctions where a patentee

offered to settle an impending dispute with a license but the infringer refuses. Indeed, the

Supreme Court, in *eBay*, expressly rejected the lower court's finding that a patentee's

willingness to license could suffice to establish a lack of irreparable harm, noting that

"traditional equitable principles do not permit such broad classifications." *eBay Inc. v.*

*MercExchange, LLC*, 126 S. Ct. 1837, 1840 (2006); s*ee also Innogenetics, N.V. v. Abbott*

*Labs*, No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193, *72-73 (W.D. Wis. Jan. 3, 2007)

(willingness to license does not defeat injunction); *Transocean Offshore Deepwater*

*Drilling, Inc. v. Globalsantafe Corp.,* No. H-03-2910, 2006 U.S. Dist LEXIS 93408, *17-

18 (S.D. Tex. Dec. 27, 2006) (same).[12]

Next, Andrew argues that the fact that TruePosition did not move for preliminary

injunction should preclude entry of a permanent injunction. But that is not the law, has

never been the law, and Andrew cites no law. Andrew's argument is baseless.[13]

Finally, Andrew attempts to address the arguments raised in TruePosition's

opening brief. However, Andrew entirely ignores the dozen-plus post-*eBay* cases

TruePosition cited that grant permanent injunctions when the infringer is a direct

---

[12]    Andrew's cases are not to the contrary. This Court in *IMX, Inc. v. Lending Tree LLC*,
469 F. Supp. 2d 203, 225 (D. Del. 2007), simply noted that willingness to license was one factor
to be weighed in balancing the equities. Ultimately, the record was insufficiently developed to
permit a decision. *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648
(Fed. Cir. 1987), a twenty-year-old case, arose on a motion for *preliminary,* not permanent,
injunction, and rejected the plaintiff's contention that it was entitled to a presumption of
irreparable harm – a presumption that is not argued here, in a post-*eBay* world. And *Paice LLC v.
Toyota Motor Corp.*, No. 2:04-CV-211-DF, 2006 WL 2385139 (E.D. Tex. Aug. 16, 2006), *aff'd
in part, vacated in part, and remanded,* 2007 WL 3024994 (Fed. Cir. Oct. 18, 2007), involved a
plaintiff that was not a manufacturer, did not compete with the defendant, and whose business
model was to license the technology at issue, as well as a patent that covered only a small part of
the overall product sought to be enjoined – all facts which are totally other than the facts of this
case.

[13]    As Andrew knows full well, parties routinely forego preliminary injunction motions for
numerous reasons, including matters of litigation strategy, expense, and avoidance of delay.

competitor of the patent holder, arguing instead that an injunction is not "automatic." Of course not – that is what *eBay* confirmed. But court after court, applying *eBay*, has found irreparable harm in circumstances comparable to those found here, for reasons fully explained in TruePosition's opening brief, D.I. 317 at 9-12.[14]

The plain truth, as was discussed in detail in TruePosition's opening brief, D.I. 317 at 6-7, 9-12, is that the record amply supports a finding of irreparable harm. It was undisputed that this is a two-supplier market. Therefore, any control channel sale that Andrew obtains is necessarily a sale lost to TruePosition. The evidence reflects that the loss of the STC contract was a devastating blow to TruePosition, in part because both parties recognized that follow-on sales to others would flow from this key first sale of a control channel system for security purposes. (Tr. 158:22-159:7; 160:4-11; 210:13-211:7; 520:18-521:17; 1187:10-1188:20, 1931). TruePosition thus lost not just the single sale for which the jury has awarded compensation, but also its rightful position as the leader in security applications, with continued market and price erosion inevitable. The record reflects that Andrew has large numbers of outstanding bids, as well as business plans projecting future sales. (*See, e.g.,* PTX 313). And Ms. Mulhern testified that there is some evidence that Andrew may have already received some control channel business

---

[14]    Although it appears to have looked high and low, Andrew was able to find only a single case that denied an injunction to a direct competitor. In *Praxair, Inc. v. ATMI, Inc.,* 479 F. Supp. 2d 440 (D. Del. 2007), this Court denied the plaintiff's motion for an injunction on the ground that the plaintiff had failed to provide any proof of the specific market share, revenue, and customers it had lost to the defendant's infringement. *Id.* at 443-44. In addition, the product at issue was a tiny proportion of the plaintiff's business. Here, TruePosition proved that Andrew and TruePosition operate in a two-supplier market, such that any sale by Andrew is a sale lost to TruePosition, and the patented technology is TruePosition's principal product. The other case Andrew cites at page 22, *CSIRO v. Buffalo Tech. Inc.,* 492 F. Supp. 2d 600 (E.D. Tex. 2007) **granted** a permanent injunction, even though the plaintiff was a licensor and not a competitor. *Id.* at 603-04, 607-08.

in Qatar. (Tr. at 1187:15-1188:9). Finally, Andrew's brief throughout suggests that it intends to continue to infringe. In such circumstances, courts after *eBay* routinely grant permanent injunctions. (*See* cases cited in TruePosition's Br., D.I. 317 at 8-12). This Court should follow suit.

### C.    TruePosition Has Demonstrated that Damages Are Not an Adequate Remedy

Without an injunction, TruePosition is powerless to avoid continued loss of sales and market share as a result of Andrew's continued infringement. Damages will not stop the market erosion, particularly now that Andrew has gained traction in this nascent market by its sale to STC. Nor will damages have any effect on price erosion or loss of reputation as an innovator – a reputation Andrew has taken along with the STC sale.

Andrew repeats the same inapposite "multi-vendor" argument it made with respect to irreparable harm, now arguing that it shows that damages would be an adequate remedy. It also makes the same argument regarding TruePosition's alleged "promise" to license. Both arguments fail for the reasons already discussed. (*See* Section II.B *supra*).

Andrew claims that the law does not support a finding that TruePosition has no adequate remedy at law, citing several cases that impose compulsory licenses instead. (Br. at 25). Unlike this case, though, Andrew's cases do not involve manufacturer/competitors.[15] In the case of competitors, courts routinely find damages to be an inadequate remedy. (*See* TruePosition's Br., D.I. 317 at 12-15).

---

[15]    The only exception is *Shatterproof Glass Corp. v. Libby-Owens Ford Co.,* 758 F.2d 613 (Fed. Cir. 1985), but the court in that case merely upheld a jury's calculation of a reasonable royalty rate and did not address the question of an injunction. *Id.* at 618.

Andrew appears to acknowledge, at page 26 of its brief, that it will boldly continue to infringe, and suggests that a license arrangement going forward, such as that entered into in settlement of the prior litigation, would adequately compensate TruePosition. But that precise argument was analyzed and rejected in *Innogenetics, N.V. v. Abbott Labs*, No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193 (W.D. Wisc. 2007). In that case, the jury had awarded a lump sum representing the reasonable royalty to which the parties to a hypothetical negotiation would have agreed. At the injunction stage, the defendant argued that the plaintiff's earlier willingness to license, coupled with a damage award compensating it in the amount of a lump sum royalty, precluded a finding that damages were inadequate. The court disagreed:

> After a long, expensive and arduous trial, plaintiff has now won an award equal to what defendant would have paid had it agreed with plaintiff to take a license . . . . It would denigrate the value of plaintiff's patent rights to allow defendant to continue to sell plaintiff's invention as its own in exchange for the same fee it would have paid without a lawsuit. Plaintiff has shown that money damages alone would not remedy its injury.

*Id.* at *73. The same is true here. Andrew should not be permitted to infringe with impunity and then get the benefit of the license it previously refused. The Court should deny Andrew's request for a "get out of jail free" card.

### D.    TruePosition Has Demonstrated that the Balance of Hardships Favors TruePosition

Andrew's arrogant hyperbole truly shines when it discusses the balance of hardships. The biggest problem with Andrew's hyperbole, though, is that it made all these false accusations (and arguments based on them) at trial, including a wrongful accusation that TruePosition committed fraud, **and the jury rejected them because they are not true.** The question of injunctive relief is being considered only because Andrew's liability has been finally established, in turn meaning that the picture Andrew

again tries to paint has already been finally rejected. The question now is whether
Andrew, with the jury already having recognized its purported excuses for its willful
infringement for the smokescreen they are, should be enjoined from continuing that
infringement.

Andrew argues that it would be unfair to drive it out of the market. (Br. at 29).
But Andrew would not be driven out of the market. Until its sale to STC, Andrew
profitably sold a voice channel Geometrix product to cell phone carriers in the U.S. and
elsewhere. Nothing will prevent it from continuing to do so.[16] Indeed, that is what the
Settlement Agreement in the prior litigation ensured.

Andrew also argues that because TruePosition is a subsidiary of a larger
corporation, the relative sizes of the parties is irrelevant. But TruePosition's parent is not
in this suit, and corporate formalities have legal significance. *Poly-America, L.P. v. GSE
Lining Tech., Inc.,* 383 F.3d 1303, 1311-12 (Fed. Cir. 2004). In any event, regardless of
the effect on TruePosition's corporate parent, the Geometrix business is a very small
portion of Andrew's business, such that Andrew will not be materially harmed if the
control channel portion of that business is enjoined.

The rest of Andrew's "balance of hardships" discussion simply repeats the same
tired arguments that the jury rejected. Andrew should not be permitted to continue to
usurp TruePosition's invention and take its customers in violation of TruePosition's
patent rights.

---

[16]     Andrew keeps tripping over itself with inconsistent arguments. In its JMOL brief it
argued that it had a noninfringing alternative – a position TruePosition disputes. (D.I. 327 at 66-
68). If that were true, it certainly would not be driven out of the market by an injunction against
its infringing product.

**E.     TruePosition Has Demonstrated that the Public Interest
Favors an Injunction**

As with the rest of its brief, in its "public interest" section, Andrew assumes the

very facts the jury rejected.  There is no patent hold-up here – the jury has already found

that TruePosition's patent was not essential to any standard, and that Andrew was fully

aware of the patent.  For reasons discussed in others of these post-trial briefs, that verdict

was well-founded.  This Court cannot disregard the jury verdict and re-find different facts

at this stage of the proceedings.  *Therma-Tru Corp.,* 44 F.3d at 994-95.

Moreover, to deny an injunction and instead in effect grant a compulsory license

to a willful infringer such as Andrew, who has long known that it had no right to use

TruePosition's 144 patent and chose to infringe with its eyes wide open, would not be

sound public policy.  For the reasons set forth in TruePosition's opening brief, D.I. 317 at

17-18, the public interest in protecting patent rights favors an injunction.

**III.     CONCLUSION**

Andrew never gives up.  It asks the Court to find, on this injunction motion, that

the jury was wrong in its underlying verdict that rejected all the same arguments it makes

now.  But the jury carefully considered all of the evidence and clearly recognized that

Andrew's whole "standards" argument was concocted after the fact to cover up its willful

infringement tracks.  Andrew candidly admits that it does not accept that verdict and

implies throughout its brief that it intends to continue to infringe.  What it wants is to

force TruePosition to give it a license on its own unilateral terms.  But that would simply

be unfair.  It is certainly not supported by any legal principle.  Nor is it sound public

policy to grant a compulsory license to a willful infringer that has rejected repeated

attempts to negotiate a license.  For all of the reasons set forth above and in

TruePosition's opening brief, Andrew's "heads I win, tails you lose" proposition should be rejected, and its continued willful infringement should be enjoined.

Respectfully submitted,

DATED: November 30, 2007          By:          /s/ James D. Heisman
                                               CONNOLLY BOVE LODGE & HUTZ LLP
                                               James D. Heisman, Esq. (#2746)
                                               1007 N. Orange Street
                                               P.O. Box 2207
                                               Wilmington, DE 19899
                                               Telephone: (302) 658-9141
                                               Facsimile: (302) 658-5614
                                               jheisman@cblh.com

                                               WOODCOCK WASHBURN LLP
                                               Paul B. Milcetic, Esq. (pro hac vice)
                                               Dale M. Heist, Esq. (pro hac vice)
                                               Kathleen A. Milsark, Esq. (pro hac vice)
                                               Daniel J. Goettle, Esq. (pro hac vice)
                                               Amanda M. Kessel, Esq. (pro hac vice)
                                               Cira Centre, 12th Floor
                                               2929 Arch Street
                                               Philadelphia, PA 19104
                                               Telephone: (215) 568-3100
                                               Facsimile: (215) 568-3439

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 30th day of November, 2007, I caused a true and correct copy of the foregoing **TRUEPOSITION'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PERMANENT INJUNCTION RELIEF** to be served upon the following individuals in the manner indicated below:

***Via hand-delivery***
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

***Via e-mail***
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

***Via e-mail***
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

　　　　　　 */s/ James D. Heisman*　　　　　.
　　　　　　　James D. Heisman, Esq. (#2746)

578860

- 17 -