## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

TruePosition, Inc.,          )
                               )
      Plaintiff/           )
      Counterclaim-Defendant,  )
                               )     Civil Action No. 05-00747(SLR)
      v.                   )
                               )
Andrew Corporation,       )
                               )
      Defendant/         )
      Counterclaim-Plaintiff.  )
                               )

### TRUEPOSITION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE ANDREW'S POST-TRIAL EVIDENCE AND ALL ARGUMENTS BASED ON SUCH EVIDENCE IN ANDREW'S POST-TRIAL BRIEFS IN SUPPORT OF ANDREW'S REMAINING EQUITABLE DEFENSES

CONNOLLY BOVE LODGE & HUTZ LLP
James D. Heisman, Esq. (#2746)
1007 N. Orange Street
P.O. Box 2207
Wilmington, DE 19899
Telephone: (302) 658-9141
Facsimile: (302) 658-5614
jheisman@cblh.com

WOODCOCK WASHBURN LLP
Paul B. Milcetic, Esq. (pro hac vice)
Dale M. Heist, Esq. (pro hac vice)
Kathleen A. Milsark, Esq. (pro hac vice)
Daniel J. Goettle, Esq. (pro hac vice)
Amanda M. Kessel, Esq. (pro hac vice)
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 568-3100
Facsimile: (215) 568-3439

**TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS AND NATURE AND STAGE OF THE
        PROCEEDINGS ....................................................................................................... 2

III.    ARGUMENT ............................................................................................................... 7

        A.      Andrew's New Evidence Is Incurably Late and Its Introduction Would
                Severely Prejudice TruePosition.......................................................... 8

        B.      Andrew's New Evidence Is Irrelevant in Any Event........................................... 11

IV.     CONCLUSION............................................................................................................ 12

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bridgestone Sports Co. Ltd. v. Acushnet Co.,*
  2007 U.S. Dist. LEXIS 11370 (D. Del. Feb. 15, 2007) ..............................................10

*Daniel v. Pearce, et al.,*
  2000 U.S. App. LEXIS 8484 (4th Cir. Apr. 28, 2000) ..................................................9

*Hopkins v. Texas Mast Climbers, LLC,*
  2005 U.S. Dist. LEXIS 38721 (S.D. Tex. Dec. 14, 2005) .............................................9

*Kothmann Enterprises, Inc. v. Trinity Industrial, Inc.,*
  455 F. Supp. 2d 608 (S.D. Tex. 2006) ..........................................................................9

*In re MacDonald,*
  222 B.R. 69 (Bankr. E.D. Pa. 1998) ...........................................................................10

*Mars, Inc. v. Coin Acceptors, Inc.,*
  2004 U.S. Dist. LEXIS 30119 (D.N.J. Aug. 12, 2004)..................................................8

*MercExchange, LLC v. eBay, Inc.,*
  467 F. Supp. 2d 608 (E.D. Va. 2006) ...................................................................11, 12

*Merisant Co. v. McNeil Nutritionals, LLC,*
  242 F.R.D. 315 (E.D. Pa. 2007)..................................................................................10

*Nicholas v. Tucker,*
  2002 U.S. Dist. LEXIS 18908 (S.D.N.Y. Oct. 8, 2002) ..............................................10

*Praxair, Inc. v. ATMI, Inc.,*
  445 F. Supp. 2d 460 (D. Del. 2006)............................................................................11

*Taylor v. REO Motors, Inc.,*
  275 F.2d 699 (10th Cir. 1960) .....................................................................................9

*Tristrata Tech., Inc. v. ICN Pharms., Inc.,*
  314 F. Supp. 2d 356 (D. Del. 2004)...........................................................................8, 9

*TruePosition, Inc. v. Andrew Corp.,*
  507 F. Supp. 2d 447 (D. Del. 2007)..............................................................................3

## FEDERAL STATUTES

28 U.S.C. § 1498 ............................................................................................................................5

I.    **INTRODUCTION AND SUMMARY OF ARGUMENT**

Andrew's reply brief in support of its "remaining equitable defenses" (D.I. 351) is a shameless post-trial ambush. Based on the record created at trial, the jury flatly rejected Andrew's standards-based excuses and found that Andrew was a willful infringer. Now, in a last-ditch attempt to rescue its case, and disregarding the relevant procedural rules, this Court's guidelines, and fundamental principles of due process, Andrew seeks for the first time to introduce newly-created post-trial hearsay relating to Andrew's interpretation of the ETSI IPR policy.

Andrew had plenty of opportunity to develop and pursue this evidence before trial, having itself placed interpretation of the ETSI IPR policy squarely at issue in its answer to the complaint at the outset of the case. TruePosition even raised in its summary judgment motion the very interpretation Andrew now seeks to dispute, but Andrew submitted none of this new evidence in response. Instead, Andrew made a strategic decision to circumvent the discovery process. The only conceivable reason why a two billion dollar a year company, represented by a 1300+-lawyer law firm, would wait until three months after trial to orchestrate, gather, and proffer evidence that it could have and should have gathered and presented during discovery is because it knows its evidence would be unpersuasive if exposed to proper discovery and cross-examination. Andrew's tactics, if permitted, would force TruePosition into the fundamentally unfair position of having no opportunity to test and rebut untimely evidence that was never subjected to the adversarial process.

The Court should not condone Andrew's ambush. Accordingly, TruePosition moves to strike Andrew's new evidence and all portions of its briefs that rely upon it.

## II.    STATEMENT OF FACTS AND NATURE AND STAGE OF THE PROCEEDINGS

In its reply brief in support of its equitable defenses, Andrew seeks to introduce the following new evidence, all of it created after the conclusion of the trial and all of it hearsay, to support its interpretation of the ETSI IPR policy:  1) a declaration of Oskar Magnusson (who testified at trial) ("Magnusson Decl.");[1]  2) a letter dated October 19, 2007, from Dr. Walter Weigel, Director General of ETSI, to TruePosition (Ex. A. to Magnusson Decl.);[2]  3) a document that purports to show draft decisions from an ETSI General Assembly meeting held November 27-28, 2007, in Nice (Ex. B. to Magnusson Decl.);  and 4) a Declaration of Dieter Kaiser, former chairman of the ETSI board ("Kaiser Decl.").[3]  Portions of Andrew's reply brief rely heavily on this new evidence.

Andrew's late evidence all relates to interpretation of the ETSI IPR Policy.  The relevance of that policy is no surprise to Andrew.  Andrew itself placed the meaning of the policy squarely at issue at the very start of this litigation, in December 2005, when it first pled its standards-based defenses and counterclaims.  (D.I. 13 at ¶ 15 ("ETSI's IPR Policy imposes an obligation on any member who submits a technical proposal for a standard to inform ETSI of its ownership of any IPR which might be an essential IPR if that proposal is adopted.")).  However,

---

[1]    Declaration of Oskar Magnusson in Support of Andrew Corporation's Post-Trial Reply Brief in Support of Its Remaining Equitable Defenses. (D.I. 352).

[2]    The Weigel letter was also submitted with Andrew's opening brief (D.I. 325, D.I. 330 at A231-32). That time, however, Andrew included a cover letter to Mr. Magnusson that revealed that Andrew had commissioned the letter. (D.I. 330 at A231-32). Andrew now tries to obscure the fact that it is orchestrating the creation of its own evidence by omitting the cover letter to Mr. Magnusson and resubmitting another copy of the letter in support of its reply brief.

[3]    The same Kaiser declaration was also submitted in Andrew's opposition to TruePosition's injunction motion. (D.I. 335; D.I. 336 at B18-20).  A second copy is submitted with Andrew's latest appendix, D.I. 353 at X17-19.

as outlined below, Andrew neither identified nor pursued any discovery related to the ETSI IPR
Policy during the discovery period.

Fact discovery ended on November 17, 2006. (D.I. 94). During fact discovery, Andrew
never mentioned Dr. Weigel, Mr. Kaiser, or any other potential ETSI witness in any
interrogatory answer or any initial disclosure. Neither they, nor any other ETSI witnesses, were
identified during discovery, and therefore TruePosition did not depose them.

Expert discovery for technical experts ended on January 17, 2007, and for damages
experts on January 24, 2007. (D.I. 94). Andrew did not identify Dr. Weigel, Mr. Kaiser, or any
other ETSI witness as an expert with respect to interpretation of the ETSI IPR policy. Neither
they, nor any other ETSI witness, submitted any expert report relating to interpretation of the
ETSI IPR policy.

In its Motion for Summary Judgment on Andrew's Counterclaims II-VI and Affirmative
Defenses III-V, TruePosition flagged the importance of the ETSI IPR Policy. (D.I. 138 at 10-11,
16-20). TruePosition asserted that the Court should determine the meaning of the policy in
accordance with the Federal Circuit's *Rambus* decision as a matter of law. (*Id.* at 16-17).
Andrew disagreed and asserted that "what the ETSI policy requires" is an issue of fact for the
jury. (D.I. 160 at 18). Andrew did not offer a declaration from Dr. Weigel, Mr. Kaiser, or any
other ETSI witness, or even from Mr. Magnusson, on the meaning of the ETSI IPR Policy in
response to TruePosition's motion for summary judgment.

The Court agreed with Andrew and submitted the issue as a fact question to the jury.
*TruePosition, Inc. v. Andrew Corp.*, 507 F. Supp. 2d 447, 464 (D. Del. 2007). Now, however,
after the jury rejected Andrew's interpretation of the policy, Andrew is making a 180-degree-

3

turn, seeking to have the Court overturn the jury's factfinding, and seeking to use new evidence of its own creation to do it.

At no time after summary judgment did Andrew ever supplement its discovery responses or expert reports to identify Mr. Kaiser, Dr. Weigel, or any other ETSI witness, or even Mr. Magnusson, as a person with knowledge of the ETSI IPR Policy. Andrew never mentioned Mr. Kaiser or Dr. Weigel, or any other ETSI witness, in the pre-trial order submissions.

At the pre-trial conference, the Court indicated that resolution of certain of Andrew's equitable defenses was for the Court, not the jury, and asked the parties whether they anticipated needing additional time to present evidence to the Court on those issues. (D.I. 272 at 12:18-13:5). Andrew's counsel responded that "[i]t's not going to be an issue" because "it's all going to be the same evidence" as that presented to the jury. (*Id.* at 13:6-14 ("there's a fraud claim going to the jury, and the fraud claim requires all the same proof as equitable estoppel")).[4]

At trial, Andrew finally attempted to offer a witness to testify regarding the meaning of the ETSI IPR Policy – a Dr. Rosenbrock. (Tr. at 534-43; 665-66). Like Mr. Kaiser and Dr. Weigel, Dr. Rosenbrock was never identified in any discovery response or preliminary disclosure, and he was not listed in the pretrial order.[5] Andrew never explained why it had not identified Dr. Rosenbrock during discovery, but argued instead that Dr. Rosenbrock's name appeared on some ETSI documents that had been produced, absurdly suggesting that that should

---

[4]    Even assuming, as Andrew argues in its reply brief, that "Andrew expressly reserved the right to introduce further evidence on its equitable defenses 'in very minor instances' following the jury trial," Andrew cannot "reserve the right" to introduce untimely evidence through witnesses and documents not disclosed during the discovery period or identified in the pretrial order. (D.I. 351 at 5 n.2).

[5]    The day before the pretrial conference, Andrew did serve what it styled as a revised witness list, which included Dr. Rosenbrock's name, but it never moved to amend the pretrial order, which, of course, would have required that it show "manifest injustice." (D.I. 255 at 6 & Ex. 10). Nor did it include Dr. Rosenbrock on the list of witnesses to be read to the jury panel on voir dire. (D.I. 280). Accordingly, TruePosition had no reason to believe that Dr. Rosenbrock would actually be called.

have put TruePosition on notice that he might have relevant knowledge or might be a witness.[6] (Tr. at 540:14-21). The Court properly excluded his testimony as untimely and therefore prejudicial. (Tr. at 665:23-666:14).[7]

After the close of evidence at trial, the Court instructed the jury on Andrew's fraud defense. In accordance with the Federal Circuit's *Rambus* decision, the Court instructed the jury that TruePosition had a duty to disclose the 144 patent under ETSI's IPR Policy only if the 144 patent was, in fact, essential to the relevant standard. (Tr. at 2134:16-2136:1). These instructions set forth an objective standard governing TruePosition's duty to disclose. Andrew did not object.

On September 14, 2007, the jury returned a verdict of willful infringement, awarded TruePosition $45,300,000 in compensatory damages, and rejected Andrew's defenses of fraud and promissory estoppel. (D.I. 293). Every finding the jury made was in favor of TruePosition. On September 18, 2007, the Court entered judgment in favor of TruePosition. (D.I. 308).

After judgment was entered, Andrew sought leave to brief its equitable defenses of equitable estoppel and implied license. TruePosition opposed Andrew's request as an untimely

---

[6]    Rosenbrock's name appears on approximately 11 of 36,000 documents produced by Andrew during discovery, and only because he was an ETSI official at the time the documents were created. (Tr. at 541:6-13).

[7]    This attempt to add a never-before-identified witness during trial was not Andrew's first try at sandbagging TruePosition. To the contrary, its conduct throughout the litigation has been characterized by a pattern of litigation by surprise. For example, for the first time on summary judgment, it raised an indefiniteness defense, a defense which had never before been disclosed. (D.I. 146). The Court considered this new defense over TruePosition's objection, and ultimately rejected it on the merits. (D.I. 258 at 13-16; D.I. 259). Similarly, Andrew's pre-trial order submission raised another defense for the first time – the argument that it was not liable for the Ashburn demonstration under 28 U.S.C. § 1498 because the demonstration was pursuant to a government contract. (D.I. 255; D.I. 276, Ex. 4 at 2). The Court allowed Andrew to submit this defense to the jury over TruePosition's objection, and the jury ultimately rejected it on the merits. (D.I. 272 at 61-69; Tr. at 13-26, 2138; D.I. 293). And, as the Court may recall, Andrew's claim construction positions changed what seemed like hourly during the *Markman* process, and indeed are still evolving in Andrew's post-trial briefing.

attempt to overturn the Court's judgment beyond the 10-day jurisdictional limit for doing so. In an email to the parties, the Court allowed Andrew to brief these two equitable issues "based on the factual record created at trial." (*See* B1).[8]

Two weeks later, ignoring the plain words of this Court's directive, Andrew filed its opening brief, relying heavily on a letter from Dr. Weigel that Andrew contends calls into question the interpretation of the ETSI IPR Policy that the jury adopted at trial. (D.I. 325 at 3, 12, 36 and 49; A231-A232). That letter is not part of the "factual record created at trial." Instead, it was created *after* the trial was held, and, as is clear from the cover letter to Mr. Magnusson, was sent to TruePosition at Andrew's request. In other words, after Andrew lost at trial, it went about the business of manufacturing new evidence to induce the Court to overrule the jury. Dr. Weigel had never, through the entire course of the litigation, been identified in any pleadings or discovery response as a potential witness, either fact or expert. TruePosition has, of course, never had the opportunity to cross-examine Dr. Weigel or ask him a single question as to the circumstances under which this document was generated.

TruePosition's opposition to Andrew's brief included an argument that its untimely litigation-inspired letter should be disregarded. (D.I. 340 at 29 n.14). Now, Andrew is attempting to offer still more hearsay evidence outside the trial record in its reply brief – the Magnusson Declaration and its exhibits A and B and the Kaiser Declaration – all of which supposedly call into question the interpretation of ETSI's IPR Policy that was accepted by the jury based on the trial record. Exhibit A to the Magnusson Declaration is the same Weigel letter already offered, but now divorced from the cover letter to Mr. Magnusson that reveals that the letter was created at Andrew's behest. Exhibit B is a list of draft decisions by the ETSI General

---

[8]    B1 is contained in Appendix B to TruePosition's Opp. to Andrew's Post-Trial Br. in Support of Its Remaining Equitable Defenses, docketed at D.I. 341.

Assembly that does not reveal that the resolution Andrew touts was a resolution introduced and sponsored, post-trial, *by Andrew* in its ongoing effort to manufacture new post-trial evidence to induce the Court to overrule the jury. Andrew offers this new, unexamined post-trial hearsay not merely to support its claim that a patent that covers any option must be declared, but also to show that, contrary to the Court's instruction to the jury – an instruction to which Andrew did not object – the disclosure duty under the ETSI IPR Policy is subjective rather than objective. (Tr. at 2134:16-2136:1; D.I. 351 at 7-9).

TruePosition now moves to strike this post-trial evidence as untimely, prejudicial, and contrary to fundamental rights of due process. TruePosition has had no opportunity to ask Dr. Weigel or Mr. Kaiser or Mr. Magnusson a single question about any of this new evidence. Just as significantly, TruePosition has not had the opportunity to gather its own contradictory evidence. Andrew's attempt to ambush TruePosition post-trial with brand new evidence is fundamentally unfair and should be rejected.

## III.    ARGUMENT

Enough is enough. Trial has been over for three months. Andrew should not be permitted to wait until after all proper evidence has been submitted and considered at trial to orchestrate new evidence to buttress a position it lost, particularly on an issue that has been in the case from the inception and on which Andrew bears the burden of proof. Such a post-trial process implicates serious due process concerns because TruePosition is foreclosed from exploring the new evidence in discovery and developing its own responsive evidence to expose the bankruptcy of Andrew's position.

The Court's email permitting Andrew to brief these equitable issues expressly directed that briefing be based upon the existing trial record. (B1). TruePosition's opposition brief was based on the trial record, as directed by the Court. Andrew's briefs are not. Moreover, the

prejudice to TruePosition is even more severe here, where Andrew attaches further declarations

and documents in a *reply* brief, thus attempting to insulate them from any challenge.[9]  Andrew's

post-trial evidence, and its arguments based on that evidence, should be stricken.[10]

### A.    Andrew's New Evidence Is Incurably Late and Its Introduction Would Severely Prejudice TruePosition

The declarations and documents that Andrew seeks to introduce all share fatal qualities –

they were all created after the trial ended, they all could have been created or discovered earlier

in this litigation, they all relate to an issue that has been in the case from the outset and on which

Andrew bears the burden of proof, none of them have been subject to testing on discovery, and

none of them are in the trial record.  Andrew's attempted end-run around well-established

discovery and trial procedures prevents TruePosition from having any opportunity whatever to

explore the newly proffered evidence through discovery and cross examination.  This is precisely

the "ambush" that procedural rules and this Court's Trial Guidelines were designed to prevent.

The Court should reject Andrew's attempt to interject new evidence in its post-trial

briefing because to hold otherwise places True Position at a critical disadvantage and thwarts

established protections against hearsay.  *See Mars, Inc. v. Coin Acceptors, Inc.*, 2004 U.S. Dist.

LEXIS 30119, *6 (D.N.J. Aug. 12, 2004) ("the unfairness to [plaintiff] which would result from

the Court considering this new evidence is obvious; [plaintiff] has had no opportunity to cross-

examine the witnesses on the new evidence"); *Tristrata Tech., Inc. v. ICN Pharms., Inc.*, 314 F.

Supp. 2d 356, 358-59 (D. Del. 2004) (plaintiff "has had no opportunity to test the reliability of

---

[9]    Andrew also ignores the local rules by saving new evidence for its reply brief.  *See* D. Del. LR 7.1.3(c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

[10]    Probably not coincidentally, Andrew filed a request for an evidentiary hearing on its remaining equitable defenses within hours of being informed that TruePosition sought to meet and confer with respect to this motion to strike its untimely post-trial evidence. (D.I. 356).  No such hearing is warranted, however, for the reasons set forth herein.

the statements in the [untimely] Declaration through discovery or cross-examination"). If allowed, TruePosition will have no opportunity to test or counter this new evidence. It is thus no surprise that courts routinely refuse to consider new evidence offered in a party's post-trial briefing. *E.g.*, *Kothmann Enterprises, Inc. v. Trinity Indus., Inc.*, 455 F. Supp. 2d 608, 616 n.6 (S.D. Tex. 2006) ("the motion to strike is granted *insofar as the postrial brief refers to evidence that this court has not admitted*") (emphasis added); *Tristrata Tech.*, 314 F. Supp. 2d at 358-59 (granting motion to strike declaration submitted post-trial because of fairness and reliability concerns); *Daniel v. Pearce, et al.*, 2000 U.S. App. LEXIS 8484, *14 (4th Cir. Apr. 28, 2000) (affirming district court's refusal to consider post-trial affidavit in connection with request for new trial); *Hopkins v. Texas Mast Climbers, LLC*, 2005 U.S. Dist. LEXIS 38721, *2 n.1 (S.D. Tex. Dec. 14, 2005) ("defendants' post-trial briefing relies on evidence not admitted at trial . . . the court does not consider [that evidence] in reaching its decision"); *see also Taylor v. REO Motors, Inc.*, 275 F.2d 699, 703-04 (10th Cir. 1960) (affirming district court's exclusion of evidence relating to post-trial experiments performed by defendant's expert and noting that such evidence was obtainable prior to trial).

Significantly, Andrew already tried at trial to proffer virtually identical untimely evidence relating to its interpretation of the ETSI IPR Policy when it sought to offer testimony from Dr. Rosenbrock. But the Court has already ruled that the evidence was untimely and therefore prejudicial, that it could not be introduced at trial, and *that it could not be introduced at a post-trial hearing on equitable issues.* (Tr. at 665:23-666:14; 1401:7–1403:8). Andrew's new evidence is a blatant attempt to do again that which the Court already ruled it could not do. The same considerations should compel the same result here.

The only plausible reason why a $2 billion per year company represented by one of the country's largest law firms would present evidence for the first time post-trial – on an issue that it raised in its own pleadings more than two years ago – is to deliberately ambush its opponent. The bottom line is that Andrew failed to persuade the jury on an issue on which it bears the burden of proof, and it now seeks to add evidence to the record in an attempt to undo that failure. Andrew's ambush tactics should not be rewarded. *See Nicholas v. Tucker*, 2002 U.S. Dist. LEXIS 18908, *3 n.1 (S.D.N.Y. Oct. 8, 2002) ("The Court, however, does not consider the affidavit, as the trial record is closed."); *In re MacDonald*, 222 B.R. 69, 72 (Bankr. E.D. Pa. 1998) ("Of course, legally-trained counsel should be well aware of the impropriety of submitting 'evidence' not offered at trial as an exhibit to a brief.").

Analogously, Federal Rule of Civil Procedure 37(c) provides that a party is not permitted to use evidence at trial when a party "without substantial justification" fails to disclose the information as required by the various provisions of Rule 26, unless such failure is harmless. *Merisant Co. v. McNeil Nutritionals, LLC*, 242 F.R.D. 315, 326 (E.D. Pa. 2007). It is precisely to protect the discovery process that parties are not allowed to withhold the identities of witnesses and to introduce newly-created litigation-inspired documents at any late time they please. *See Bridgestone Sports Co. Ltd. v. Acushnet Co.*, 2007 U.S. Dist. LEXIS 11370, *15 (D. Del. Feb. 15, 2007) (Farnan, J.) (barring defendant from relying on late-disclosed references where plaintiff had no opportunity to conduct fact discovery and formulate response). If such conduct is improper pre-trial – and it is – that same conduct post-trial is even more outrageous and far from harmless.

Andrew's tactics also burden the court. As this Court previously observed, such "ambush" tactics place "into tension the primary responsibilities of the court, that is, making the

10

trial process fair (*i.e.*, having the rules apply equally to both parties) and providing as much relevant information as possible to the finder of fact, thus optimizing the search for truth." *Praxair, Inc. v. ATMI, Inc.*, 445 F. Supp. 2d 460, 468 (D. Del. 2006). In sum, the Court should not condone Andrew's post-trial ambush.

### B.  Andrew's New Evidence Is Irrelevant in Any Event

Before trial, Andrew argued that "what the ETSI policy requires" is an issue of fact for the jury (D.I. 160 at 18) and the Court instructed the jury accordingly. (Tr. at 2134:16-2136:1). The jury has already decided this issue in reaching its verdict on Andrew's fraud and promissory estoppel defenses. Additional evidence on this issue is irrelevant. Andrew cannot ask the Court to disregard what the jury has already decided based on evidence properly introduced at trial and instead consider statements made by individuals in France and Germany who have never stepped into the courtroom and were never asked a single question by TruePosition. *See MercExchange, LLC v. eBay, Inc.*, 467 F. Supp. 2d 608, 613 (E.D. Va. 2006) ("the court's decision to reopen the record does not permit the parties to recast the prior record in a manner inconsistent with the [court's] findings of fact").

Further, Andrew offers its post-trial evidence in part in an attempt to show that the ETSI IPR Policy is subjective rather than objective – that is, that TruePosition's subjective belief triggers its duty to declare. (D.I 351 at 7-9). But the Court already instructed the jury that any duty to disclose is objective:

> In order to prove that TruePosition had such a duty, Andrew must prove that the '144 patent was in fact essential to an identified ETSI standard.

(Tr. at 2135:14-17). Andrew did not object. Andrew should not be permitted to offer evidence to support an element of a claim based on an incorrect statement of the law. The Court cannot instruct the jury on one disclosure duty but then apply a different disclosure duty when deciding

the remaining equitable claims.[11]  Any evidence offered to prove that the duty to disclose is subjective is therefore irrelevant for this reason as well.

Even if Andrew's new evidence were relevant, however, any arguable relevance is plainly outweighed by the prejudice to TruePosition, as the Court already recognized when refusing to allow Mr. Rosenbrock's testimony.  TruePosition has not had an opportunity to depose the new witnesses or to gather its own evidence to contradict and explain the fallacies in Andrew's new evidence.  The prejudice to TruePosition is manifest.  *See MercExchange,* 467 F. Supp. 2d at 617 ("a court, no matter what its motivations, may not undertake the unilateral pursuit of extra-record evidence nor under any circumstances consider evidence advanced by one party concerning disputed material facts that the opposing party is not presented an opportunity to challenge").

## IV.    CONCLUSION

Discovery disclosure rules, established trial procedures and this Court's Trial Guidelines exist to create a fair and level playing field.  Andrew's latest attempt to ignore these established procedures would distort that level playing field and should not be tolerated.  TruePosition respectfully requests that its motion to strike Andrew's post-trial evidence and all arguments based on such evidence in Andrew's briefs be granted.

---

[11]    Remarkably, in its reply brief Andrew claims – directly contrary to the Court's instruction – that "Andrew did not have to 'prove that the 144 patent was, in fact, essential.'"  (D.I. 351 at 7 n.4).

Respectfully submitted,


DATED: December 21, 2007          By:          */s/ James D. Heisman*
                                              CONNOLLY BOVE LODGE & HUTZ LLP
                                              James D. Heisman, Esq. (#2746)
                                              1007 N. Orange Street
                                              P.O. Box 2207
                                              Wilmington, DE 19899
                                              Telephone: (302) 658-9141
                                              Facsimile: (302) 658-5614
                                              jheisman@cblh.com

                                              WOODCOCK WASHBURN LLP
                                              Paul B. Milcetic, Esq. (pro hac vice)
                                              Dale M. Heist, Esq. (pro hac vice)
                                              Kathleen A. Milsark, Esq. (pro hac vice)
                                              Daniel J. Goettle, Esq. (pro hac vice)
                                              Amanda M. Kessel, Esq. (pro hac vice)
                                              Cira Centre, 12th Floor
                                              2929 Arch Street
                                              Philadelphia, PA 19104
                                              Telephone: (215) 568-3100
                                              Facsimile: (215) 568-3439

## CERTIFICATE OF SERVICE

I, James D. Heisman, hereby certify that on this 21st day of December, 2007, I caused a true and correct copy of the foregoing TRUEPOSITION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE ANDREW'S POST-TRIAL EVIDENCE AND ALL ARGUMENTS BASED ON SUCH EVIDENCE IN ANDREW'S POST-TRIAL BRIEFS IN SUPPORT OF ITS REMAINING EQUITABLE DEFENSES to be served upon the following individuals in the manner indicated below:

*Via hand-delivery*
Josy W. Ingersoll, Esq.
Young Conaway Stargatt & Taylor, LLP
100 West Street, 17th Floor
Wilmington, DE 19801
jingersoll@ycst.com

*Via e-mail*
Patrick D. McPherson, Esq.
Duane Morris LLP
1667 K Street, N.W.
Washington, DC 20006-1608
PDMcPherson@duanemorris.com

*Via e-mail*
Rachel Pernic Waldron, Esq.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, IL 60601
rpernicwaldron@kirkland.com

    */s/ James D. Heisman*    .
    James D. Heisman, Esq. (#2746)

14