IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TRUEPOSITION, INC., | ) | |
| | ) | |
| Plaintiff and | ) | |
| Counterclaim-Defendant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-747-SLR |
| | ) | |
| ANDREW CORPORATION, | ) | |
| | ) | |
| Defendant and | ) | |
| Counterclaim-Plaintiff. | ) | |

**ANDREW CORPORATION'S ANSWERING BRIEF IN OPPOSITION
TO TRUEPOSITION'S MOTION TO STRIKE AND ANDREW CORPORATION'S
OPENING BRIEF IN SUPPORT OF ITS CONDITIONAL MOTION TO
<u>REOPEN THE RECORD ON EQUITABLE ISSUES BEING TRIED TO THE COURT</u>**

OF COUNSEL:
John M. Desmarais, P.C.
Gregory S. Arovas, P.C.
Avinash S. Lele
Todd M. Freidman
Jason Choy
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
Regan A. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: January 14, 2008

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Josy W. Ingersoll (No. 1088) [*jingersoll@ycst.com*]
John W. Shaw (No. 3362) [*jshaw@ycst.com*]
Andrew A. Lundgren (No. 4429) [*alundgren@ycst.com*]
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600

## **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ..................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS .........................................................4

III.    COUNTERSTATEMENT OF FACTS .............................................................................5

     A.    TruePosition's Misleading Testimony That ETSI Had Nothing To Say
         About TruePosition's Decision Not to Declare ........................................................5

     B.    The New Evidence of ETSI's Views, Once ETSI Was Informed of the
         Positions TruePosition Was Taking........................................................................8

     C.    Andrew's Prompt Submission Of The ETSI Evidence As It Became
         Available ...............................................................................................................11

     D.    TruePosition's Failure To Challenge The ETSI Evidence Despite ETSI's
         Invitations To Do So .............................................................................................11

IV.     ARGUMENT...................................................................................................................13

     A.    TruePosition Should Not Be Permitted To Shield From The True Facts
         The Misleading And Incomplete Record That It Created At Trial.........................13

          1.    The Record Is Not Closed On The Equitable Issues To Be Decided
              By The Court...........................................................................................14

          2.    Contrary To TruePosition's Assertions, The New Evidence Is
              Relevant And Was Brought To The Court's Attention Promptly..............16

          3.    Having Declined ETSI's Invitations To Challenge Or Even
              Comment On The Evidence, TruePosition Cannot Legitimately
              Argue Prejudice ......................................................................................20

           4.    Excluding The True Facts From The Incomplete And Misleading
              Record That TruePosition Created Would Be Prejudicial To
              Andrew...................................................................................................24

     B.    Even If The Record Were Closed, It Should Be Reopened So The Court Is
         Not Put In The Position Of Deciding Equitable Defenses On A Record
         That Is Misleading And Incomplete .....................................................................25

V.      CONCLUSION................................................................................................................28

i

## TABLE OF AUTHORITIES

**Cases**

*Blinzler v. Marriott Int'l., Inc.,*
    81 F.3d 1148 (1st Cir. 1996) ............................................................. 24, 26, 27

*Dudley v. South Jersey Metal, Inc.,*
    555 F.2d 96 (3d Cir. 1977) ................................................................................ 13

*Gibson v. Mayor and Council of the City of Wilmington,*
    355 F.3d 215 (3d Cir. 2004) .......................................................................... 25, 27

*Goodman v. Lukens Steel Co.,*
    777 F.2d 113 (3d Cir. 1985) ............................................................................... 13

*In re Paoli Railroad Yard PCB Litigation v. Southeastern Penn. Trans. Authority,*
    35 F.3d 717 (3d Cir. 1994) ................................................................................. 13

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977) ............................................................................... 13

*Rochez Bros., Inc. v. Rhoades,*
    527 F.2d 891 (3d Cir.1975) ................................................................................ 25

*Tracinda Corp. v. DaimlerChrysler AG,*
    362 F.Supp.2d 487 (D. Del. 2005) ...................................................................... 18

**Rules**

L.R. 7.1.3(c)(2) ............................................................................................................ 20

All **bold italics** emphasis is added, unless otherwise specified.

K&E 12355696.1

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

TruePosition's motion asks the Court to decide equitable defenses by disregarding evidence that directly refutes positions that TruePosition took at trial. For the following reasons, TruePosition's motion should be denied.

TruePosition asserted at trial that it had done nothing wrong by failing to declare to ETSI its '144 patent, which it says is essential to an option in a public standard. According to TruePosition, this must have been the case because no one from ETSI had ever complained that TruePosition had done anything wrong. Every time TruePosition asked a witness a question:

- "Has anyone from ETSI ever called to tell you that you did something wrong?"

- "Has anyone from ETSI told you that you had done anything to violate any rules?"

- "Have you gotten any sort of letter of reprimand from ETSI?"

- "Has the Director-General of ETSI ever written you a letter and said something TruePosition did here was wrong?"

- "Has anyone from the ETSI General Assembly ever taken action against TruePosition?"

- "Other than Andrew Corporation, has anybody anywhere ever suggested that TruePosition has done something wrong in this standards body?"

the answer to the question, without exception, was "no."

As it turned out, however, ETSI had no idea that TruePosition had decided not to declare a patent believed to be essential to an option in a standard. TruePosition had never said a word about it to ETSI. *That* is why ETSI had never complained to TruePosition. That is also why TruePosition's witnesses were able to testify truthfully — but misleadingly — that ETSI had never complained to TruePosition.

As soon as TruePosition's positions were brought to ETSI's attention, ETSI acted swiftly to set the record straight. A month after trial, the ETSI Director-General wrote to TruePosition

asking TruePosition to declare whether it is willing to license the '144 patent to the extent the patent is essential to an "option." Another month later, the ETSI General Assembly issued a reminder to all ETSI members that patents essential to options must be declared. Finally, the former Chairman of the ETSI Board provided a declaration that directly rebuts TruePosition's assertions at trial.

TruePosition now moves to strike all three items of evidence (as well as a declaration authenticating the evidence), to keep the Court from considering those items in deciding Andrew's equitable defenses and to keep the record limited to TruePosition's incomplete and misleading evidence. TruePosition asserts that it will be prejudiced because it has never had an opportunity to challenge the evidence. TruePosition also argues that the evidence is irrelevant and untimely, and in any event should not be considered because, in its view, the equitable record is closed. TruePosition is incorrect.

First, the record is not closed for the equitable issues that are to be decided by the Court. Precisely this issue was addressed at the pretrial conference. In response to a direct question from the Court concerning whether and how much evidence Andrew would need to present to the Court on equitable issues to be decided separately by the Court, Andrew noted that additional evidence might be needed "in very minor instances." TruePosition did not object. And consistent with Andrew's representation, the four items of evidence at issue are very minor indeed compared to the voluminous trial record that went to the jury. Moreover, TruePosition's assertion that the equitable record is closed is belied by its own post-trial submission of new evidence for its own equitable issues — namely, in support of its request for a permanent injunction.

2

Second, TruePosition takes the remarkable position that the evidence is irrelevant and untimely. Neither is the case. The evidence is relevant at least because TruePosition made it relevant, by asking witnesses repeatedly whether ETSI had any views concerning TruePosition's decision not to declare the '144 patent. TruePosition is not in a position to complain about the correction and completion of a misleading and incomplete record that TruePosition was responsible for creating. The evidence is timely because Andrew took it upon itself to take steps to inform ETSI about TruePosition's positions in the middle of trial, well before Andrew was faced with an adverse jury verdict, and also because Andrew provided the evidence of ETSI's views promptly upon becoming aware it was available. Nothing was saved for reply to "sandbag" or "ambush" TruePosition.

Third, TruePosition asserts that it will be prejudiced because it did not have an opportunity to challenge the ETSI evidence, which it claims is unreliable. But TruePosition does not tell the Court a key fact — that it has already declined repeated opportunities to challenge the very evidence it now seeks to strike. In the ETSI letter itself, ETSI invited TruePosition to contact ETSI with "any question or remark you may have." TruePosition never did. Likewise, with regard to the General Assembly decision, last month TruePosition dispatched its General Counsel to an ETSI meeting in France where that decision was specifically discussed. When the attendees were asked if they had any "comments, questions, objections" concerning the decision, TruePosition's General Counsel sat silent and said nothing. Instead, three days later, TruePosition asked this Court to strike the same evidence. Finally, the Kaiser declaration went into the equitable record as part of the briefing for TruePosition's request for a permanent injunction two months ago, without any motion to strike from TruePosition.

3

Given TruePosition's decision not to challenge the ETSI evidence despite having been given express opportunities to do so, TruePosition cannot now legitimately argue to this Court that the evidence is unreliable and prejudicial.  In contrast, there would be considerable prejudice to Andrew to having its equitable defenses decided on an incomplete and misleading record.

Should the Court accept TruePosition's assertion that the equitable record was somehow closed despite the explicit statements that were made at the pretrial conference, Andrew conditionally moves to reopen the record to admit the evidence at issue.  As demonstrated below, the Third Circuit's criteria for reopening the record are satisfied here.  This Court, here sitting in equity, should not be put in the position of deciding equitable defenses on a misleading record engineered by a litigant.

TruePosition's motion should be denied.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

TruePosition filed this action on October 25, 2005, alleging infringement of U.S. Patent No. 5,327,144.  D.I. 1.  Andrew asserted non-infringement, fraud, promissory estoppel, equitable estoppel, implied license, and unclean hands defenses and counterclaims.  D.I. 13; 48.  On September 14, 2007, the jury returned a verdict for TruePosition on literal infringement and fraud, made findings on promissory estoppel under a clear and convincing evidence standard, and awarded TruePosition $45.3 million in damages.  D.I. 292.  On October 1, TruePosition filed motions requesting a permanent injunction, enhanced damages, and attorneys fees.  D.I. 314, 316.  The motion for an injunction relied on new evidence that was not presented to the jury.

Three of Andrew's five equitable defenses — equitable estoppel, implied license, and unclean hands defenses — did not go to the jury and were to be decided separately by the Court.  D.I. 330 at 227:11-A228:16.  At the Pre-Trial Conference, in discussing presentation of evidence

4

on these defenses, Andrew stated – without objection by TruePosition – that additional evidence "in very minor instances" would be presented outside of the jury's presence. *Id.* at 228:9-12; *see also id.* at 227:18-228:5 (Court noting that it may not be possible to present all evidence on all defenses during the 22 hour presentation for the jury). Following trial, in addressing Andrew's motion for a briefing schedule on its remaining equitable defenses — and TruePosition's assertion that all five equitable issues had already been decided against Andrew based on the jury verdict — the Court stated: "It is the Judge's recollection that there were two equitable issues that were going to be presented post-trial based on the factual record created at trial." D.I. 341 at B1. Neither party had, in that motion, raised or briefed the scope of the record for the equitable issues.

On November 1, 2007, Andrew filed its opening brief in support of its equitable defenses, and it included evidentiary material that TruePosition now moves to strike. D.I. 325, 330. On November 30, TruePosition filed its answering brief in opposition without moving to strike any of the evidentiary materials that TruePosition seeks to strike here for purposes of Andrew's equitable defenses. D.I. 340. On December 17, Andrew filed its reply brief. D.I. 351.

On December 21, 2007, TruePosition filed its Motion to Strike and its Memorandum in Support. D.I. 357, 358.

## III.    COUNTERSTATEMENT OF FACTS

### A.    TruePosition's Misleading Testimony That ETSI Had Nothing To Say About TruePosition's Decision Not to Declare

TruePosition took the position at trial that the UTDOA/SDCCH option that TruePosition urged to be added to the location services standard cannot be practiced without infringing the '144 patent. That is, in TruePosition's view, the patent is essential to the SDCCH option:

K&E 12355696.1

- "Q: If you do U-TDOA on the control channel ... it is your position, TruePosition's position, that the '144 is essential to that option in the standard; is that right? A: Yes." D.I. 331 at 289:7-11.

- "[I]t's not possible to do U-TDOA using this SDCCH channel without using [the] '144 patent." *See* Tr. 297:3-7.

- "Q: In your view if you do U-TDOA using the SDCC[H], you can't do that without using your '144 patent? Yes or no? A: Yes." (D.I. 330 at 321:21-24).

Despite taking this position, TruePosition also asserted that it had done nothing wrong by failing to declare the '144 patent to ETSI. According to TruePosition, this had to be the case because no one from ETSI had ever said that TruePosition did anything wrong:

> Q.    Okay. *Has anyone from ETSI ever called* to tell you that you did something wrong?
>
> A.    No.
>
> Q.    *Has anyone from ETSI told you* that you had done anything to violate any rules?
>
> A.    No.
>
> Q.    *Have you gotten any sort of letter of reprimand from ETSI?*
>
> A.    No. No.

Tr. 168:22 - 169:5.[1]

TruePosition raised the same issue of ETSI's view of TruePosition's conduct over and over again. TruePosition did so with regard to the ETSI Director-General:

> Q.    Has the *Director-General of ETSI ever written you a letter* and said something TruePosition did here was wrong?
>
> A.    No.
>
> Q.    Ever called you?

---

[1]    TruePosition's President Sheehan also testified that 3GPP had never called to say that TruePosition had done anything wrong. Tr. 169:6-10.

> A.    No.

Tr. 186:11-16. TruePosition also did so with regard to the ETSI General Assembly:

> Q.    Okay. *Has anyone from the ETSI General Assembly ever called you* about anything that TruePosition did in a standards body?
>
> A.    No.
>
> *        *        *
>
> Q.    *Has anyone from the ETSI General Assembly ever taken action* against TruePosition?
>
> A.    No. Never.

Tr. 180:2-5; 188:21-23.

TruePosition left no doubt about the impression it sought to create in the record — that no one other than Andrew disagreed with TruePosition's view of whether a patent that is essential to an option must be declared:

> Q.    *Other than Andrew Corporation, has anybody anywhere ever suggested* that TruePosition has done something wrong in this standards body?
>
> A.    No.
>
> Q.    *Any Government committee* here in the United States?
>
> A.    No.
>
> *        *        *
>
> Q.    Has *anybody from ETSI* ever told you that TruePosition has done something wrong in the standards body?
>
> A.    No.
>
> Q.    Has *anyone from 3GPP* told you that you've done something wrong?
>
> A.    No.
>
> Q.    How about any of the members of those standards bodies?
>
> A.    *Only — only Andrew.*

7

Tr. 188:1-6; 395:17-25.[2]

### B.    The New Evidence of ETSI's Views, Once ETSI Was Informed of the Positions TruePosition Was Taking

As described above, TruePosition repeatedly asserted at trial that its conduct must have been acceptable to ETSI because ETSI never objected to it. Andrew responded by deciding to test TruePosition's assertions and see whether ETSI was even aware of the positions TruePosition was taking. Andrew began these efforts during trial, well before Andrew was faced with an adverse jury verdict. Tr. 1822:13-1823:6.

**ETSI Director-General's Letter to TruePosition.** As Andrew suspected, it turned out that ETSI had been completely unaware of TruePosition's position that it had no obligation to declare a patent believed to be essential to an option. A month after trial, on October 19, 2007, the Director General of ETSI wrote to TruePosition to make clear ETSI's view that a patent that is essential to an "option" is subject to the declaration and licensing policies of ETSI. Referring to "TruePosition's U.S. Patent No. 5,327,144" and the ETSI Technical Specifications that include UTDOA/SDCCH as an option, the Director General wrote:

> *[W]e have been informed that* particularly TruePosition's U.S. Patent No. 5,327,144 may be essential to the [above-listed] ETSI Technical Specifications or options therein.

> Under the ETSI IPR Policy, *I am obliged to bring this matter to your attention* to ascertain whether you are of the opinion that you hold *essential or potentially essential, IPRs related to* the abovementioned Technical Specifications or *options therein*.

> If this were the case, *we would ask you to disclose any essential IPR and indicate if you are prepared to grant licenses for this/these IPR(s)*, in accordance with the terms and conditions set out in Clause 6.1 of the ETSI IPR Policy.

---

[2]    TruePosition featured the same evidence in its opening statement. Tr. 107:14-16 ("you're not going to hear from anyone in this case from that standards body come in and say that we did anything wrong.").

8

D.I. 325 at 232. This letter makes clear ETSI's view that TruePosition was wrong not to declare the '144 patent because options in a standard are not exempt from the ETSI IPR Policy. A patent that is essential or even potentially essential to the option must be declared.

**ETSI General Assembly Decision.** In response to TruePosition's assertions at trial that the ETSI General Assembly did not have a problem with TruePosition's failure to declare the '144 patent (*see* § III.A above), Andrew decided to test those assertions at the next General Assembly meeting, which was held in Nice, France on November 27-28, 2007.

When Andrew prepared its agenda item for submission (namely, the issue of whether a patent believed to be essential to an option must be declared to ETSI), eight other companies decided to co-sponsor the agenda item and join Andrew in raising the issue before the General Assembly. These companies included industry titans like Ericsson, Vodafone, and even T-Mobile, a large TruePosition customer. Tr. 369:2-3; Magnusson Decl. Ex. 2 (B18-28).

The agenda item submitted by the nine companies was made available to all ETSI members, including TruePosition, well before the GA meeting. And the meeting itself was open to all ETSI members. Indeed, more than 140 representatives from more than 90 different companies and entities attended the meeting, including Research In Motion, Motorola, Nokia, Qualcomm, the European Commission, Intel, Microsoft, Texas Instruments, Samsung, T-Mobile, Philips, Vodafone, Alcatel-Lucent, Sony, British Telecom, NEC, IBM, Telecom Italia, DoCoMo, Siemens, France Telecom, Sun Microsystems, and Deutsche Telecom. Magnusson Decl. Ex. 2 (B18-28). Every one of these attendees was free to speak up at the meeting if any of them objected to any action that was being contemplated by the GA. No one objected.

The result was that General Assembly issued the following reminder to all ETSI members on December 5, 2007:

9

> ***ETSI members are reminded*** of their obligations ***to declare IPR*** under the ETSI IPR Policy, including its existing provisions ***relating to options***.

D.I. 352, Ex. B. at 2.

**Declaration of ETSI Official.** Also in response to TruePosition's assertions at trial that no one from ETSI had anything negative to say about TruePosition's position, Andrew contacted the former Chairman of the ETSI Board. When he was informed about the positions TruePosition took at trial, and TruePosition's assertions that ETSI had nothing to say about those positions, the Chairman provided a declaration to set the record straight:

- "No part of a public standard may be off-limits to some but accessible to others." X18 (DI 351) at ¶ 5.

- "Options in the Standard are not exempt from the IPR Policy. To the contrary, the IPR Policy explicitly defines essentiality with reference to whether a Standard can be practiced without infringing a patent, and defines a Standard as "including options therein" (see Sections 15.6 and 15.11). If a Standard including its options (not merely some of them, but any choice of them) can be practiced without infringing a patent, the patent is not essential to the Standard. If not, the patent is essential to the Standard." *Id.* at ¶ 8.

- In my experience, no company would agree to introduce into a Standard, and certainly would not promote and encourage the standardization of, an option that it would not be permitted to practice in the future." *Id.* at ¶ 9.

- "It is against the fundamental principles of standardization for an ETSI member to obtain a monopoly position on an option in the Standard. It is completely inappropriate for an ETSI member to seek an injunction that would prevent another company from using an option in a Standard." *Id.* at ¶ 10.

- "For alternative options for a feature, each alternative could be blocked with the argument that it is optional. This would leave the public unable to practice any of the options, and thus unable to practice the Standard." *Id.* at ¶ 11.[3]

---

3   TruePosition also moves to strike the Declaration of Oskar Magnusson, which is directed to authenticating and laying foundation for the October 19, 2007 ETSI Letter and the ETSI General Assembly Decision document.

## C.   Andrew's Prompt Submission Of The ETSI Evidence As It Became Available

Andrew brought the new ETSI evidence to the Court's attention promptly upon learning that it was available from ETSI.

**ETSI Director-General's Letter to TruePosition.**  Upon learning that ETSI had sent a letter to TruePosition relating to the positions TruePosition had taken at trial, Andrew requested a copy of the letter from ETSI and received it on October 23, 2007.  Magnusson Decl. ¶ 9 (B12-13).  Andrew brought the letter to the Court's attention on November 1, when Andrew filed its opening post-trial brief on equitable defenses, and again on November 15, when it filed its oppositions to TruePosition's motions for a permanent injunction and enhanced damages.  D.I. 330 at 232; D.I. 334, 335.

**ETSI General Assembly Decision.**  Andrew submitted the December 5, 2007 GA decision document to the Court on December 18, when it filed its post-trial reply brief on equitable issues.  D.I. 352 at Ex. 2.  The opening and opposition briefs had already been filed by the time ETSI had issued the GA decision document.

**Declaration of ETSI Official.**  Finally, Andrew brought the declaration of the former Chairman of the ETSI Board to the Court's attention on November 15, the day after it was executed, as part of its oppositions to TruePosition's motions for a permanent injunction and enhanced damages.  D.I. 334, 335, D.I. 336 at B18-20.

## D.   TruePosition's Failure To Challenge The ETSI Evidence Despite ETSI's Invitations To Do So

TruePosition asserts over and over again that it has not had the opportunity to challenge the ETSI evidence that it seeks to strike.  *E.g.*, Br. (D.I. 358) at 8-9.  In fact, TruePosition has had repeated opportunities to challenge the evidence — at ETSI's invitation, no less — but did not avail itself of any of them.

11

**ETSI Director-General's Letter to TruePosition.**  The ETSI Director-General's letter to TruePosition contains an explicit invitation to TruePosition to contact ETSI with any question or remark it might have:

> Please do not hesitate to contact me or our Legal Service (email: legal@etsi.org) for any question or remark you may have.

The ETSI Secretariat has confirmed that TruePosition has never done so.  Magnusson Decl. ¶ 10 (B13).

**ETSI General Assembly Decision.**  TruePosition also was asked if it had any objections to the GA decision, but said nothing in response.  Less than a month after the General Assembly decision was issued, the General Assembly referred the matter to an ETSI committee (the Intellectual Property Rights Committee, or "IPRC") for any further comment.  The IPRC met at ETSI headquarters in Sophia Antipolis, France on December 18-19, 2007.  Magnusson Decl. ¶ 5 (B11-12).  During the meeting, the IPRC Chairman introduced the agenda item for the GA decision quoted in § IV.B above.  Magnusson Decl. ¶¶ 7, 8 (B12); Ex. 4 (B32-34).

The Chairman then specifically asked if anyone in the room had any "comments, questions, objections" concerning the decision.  No one did — not even TruePosition, which had two representatives, including its General Counsel Fred Beckley, in attendance.  Neither TruePosition representative said a word.  Magnusson Decl. ¶¶ 5 (B11-12), 8 (B12).

**Declaration of ETSI Official.**  Finally, TruePosition was aware of the declaration of the former Chairman of the ETSI board as of November 15, when that declaration was submitted to the Court in connection with Andrew's oppositions to TruePosition's motions for permanent injunction and enhanced damages.  D.I. 342, 344, 336 at B18-20. But TruePosition did not seek to strike the declaration in its reply brief for either motion.  Indeed, TruePosition to this day has never sought to strike any of the ETSI evidence — including even the Director-General's letter

to TruePosition — in connection with the equitable remedies of injunction and enhanced damages that it seeks.

## IV.    ARGUMENT

### A.    TruePosition Should Not Be Permitted To Shield From The True Facts The Misleading And Incomplete Record That It Created At Trial

The Third Circuit has made clear that the exclusion of evidence is an "extreme sanction" that should not be imposed absent bad faith conduct by the proponent of the evidence:

> We have recently held that *the exclusion of critical evidence is an "extreme" sanction*, *Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96, at 99 (3d Cir. 1977), not normally to be imposed absent a showing of *willful deception* or *"flagrant disregard"* of a court order by the proponent of the evidence.

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977) (reversing exclusion of witnesses despite defendant's claim of "prejudice" and lack of "opportunity to depose" witnesses not listed in plaintiff's pretrial memorandum); *see also In re Paoli Railroad Yard PCB Litigation v. Southeastern Penn. Trans. Authority*, 35 F.3d 717, 791-92 (3d Cir. 1994) (reversing exclusion of late submitted evidence).

There was no willful deception or flagrant disregard of a Court order by Andrew. As explained below in § IV.A.1, although Andrew did not expect a large volume of new evidence to be needed for the equitable issues to be tried separately to the Court, Andrew did explain to the Court that there might be "very minor instances" in which additional evidence would be needed. Also as explained below, the new evidence is relevant, was promptly submitted to the Court upon becoming available to Andrew, and is not prejudicial to TruePosition. Accordingly, the "extreme sanction" of exclusion should not apply.

13

1.    **The Record Is Not Closed On The Equitable Issues To Be Decided By The Court**

TruePosition contends that the ETSI evidence should be stricken because the record has been closed on the equitable issues. *E.g.*, Br. (D.I. 358) at 9. That is not the case. The Court raised the issue at the pretrial conference, suggesting that "some limited period of time" might be needed "to present the equitable evidence to [the bench]." (D.I. 330 at 227:24-25). Andrew agreed, albeit stating its belief that there were likely to be only "very minor instances" in which additional evidence would go separately to the bench:

> I don't think there's going to be a need for additional things that would go separately to your Honor, except to a very minor — in *very minor instances* ....

(D.I. 330 at 228:9-12). TruePosition did not object. Thus, neither the Court nor the parties understood that the trial record would be closed on the equitable issues to be tried later to the Court once it was closed on the jury issues. To the contrary, trial proceeded on the basis of an explicit, common understanding that a small amount of additional evidence might be presented to the Court in a later equitable proceeding.

That is precisely what has happened. The trial record that went to the jury included 2150 pages of trial testimony and 159 admitted exhibits. The only additional evidence that Andrew has submitted for the equitable issues consists of the four items that are the subject of TruePosition's motion to strike. Those four items are "very minor" indeed, compared to the voluminous trial record that went to the jury.

Moreover, TruePosition is not in a position to object to Andrew's additional evidence on equitable issues that are before the Court where TruePosition itself has introduced additional new evidence into the record for its own equitable issues. Just as Andrew pled its three equitable defenses of equitable estoppel, implied license, and unclean hands, TruePosition pled that it is entitled to three equitable remedies — permanent injunction, enhanced damages, and attorneys

14

fees. D.I. 317 at 8; D.I. 315 at 2, 8. Just as Andrew has submitted post-trial briefs requesting the

Court to decide its equitable defenses, TruePosition has submitted post-trial briefs requesting the

Court to decide its equitable remedies. And just as Andrew has submitted a limited amount of

new evidence in support of its equitable defenses, TruePosition has done the same for its

equitable remedies.

Specifically, TruePosition's post-trial brief requesting a permanent injunction relies on

new evidence in the form of an Andrew press release that did not exist at the time of trial and

thus was not part of the jury record. D.I. 317 at 4, n. 3 (citing B1-B2). In arguing that the

balance of harms favors TruePosition, not Andrew, TruePosition asserts as its lead argument that

UTDOA/SDCCH is just a small part of Andrew's business. The evidence that TruePosition

offers for that point is not from the trial record that went to the jury. It is the Andrew press

release, which TruePosition found on the Internet:

> D.    The Balance of Hardships Favors a Permanent Injunction.
>
> The balance of hardships also supports an injunction in this case. Andrew is a $2 billion per year company with a wide variety of products (Trial Tr. at 149). It will not be driven out of business by an injunction barring sale of its control channel Geometrix product. The control channel product is a small piece even of its Geometrix business, *as is evidenced by the statements in its recent press release. See supra at note 3.*

D.I. 317 at 15-16 (bold omitted for argument heading; footnote omitted). "Note 3" is the

footnote in TruePosition's brief that cites the press release. *Id.* at 4 n.3.

In addition to relying on new evidence for its own equitable issues, TruePosition does not

object to the use of Andrew's additional items of evidence that are the subject of TruePosition's

motion to strike in deciding those issues (*see* § III.D above). It would be inequitable for the

Court to be able to consider new evidence in deciding TruePosition's equitable issues (the three

equitable remedies it seeks) but not consider new evidence (including some of the very same

15

evidence) in deciding Andrew's equitable issues (the three equitable defenses Andrew has raised).

Ultimately, TruePosition's argument boils down to its assertion that the record is closed because the Court's Case Manager sent the parties an email stating that "there were two equitable issues that were going to be presented post-trial based on the factual record created at trial." D.I. 341 at B1; Br. (D.I. 358) at 6. The issue that the Court's email was addressing was not whether the record for the equitable issues was open or closed — the parties did not mention the record being open or closed because no such dispute existed at that point. Indeed, the issue had been already been addressed and resolved at the pretrial conference. Rather, the Court's email was addressing TruePosition's contention that Andrew's remaining equitable defenses were precluded by the Court's entry of the jury verdict on other claims and defenses. The Court rejected TruePosition's contention, confirmed that it would receive briefs, and specified a briefing schedule and page limits. D.I. 324.

### 2. Contrary To TruePosition's Assertions, The New Evidence Is Relevant And Was Brought To The Court's Attention Promptly

**The Evidence Is Relevant.** TruePosition asserts that the additional ETSI evidence that is at issue here is "irrelevant" to "what the ETSI policy requires" because "[t]he jury has already decided that issue in reaching its verdict on Andrew's fraud and promissory estoppel defenses." Br. (D.I. 358) at 11. According to TruePosition, considering the additional ETSI evidence amounts to "disregard[ing] what the jury has already decided." *Id.*

TruePosition is incorrect. As a threshold matter, crediting the ETSI evidence and deciding in Andrew's favor on the equitable defenses that are now before the Court do not amount to disregarding any jury findings. As explained in detail in Andrew's reply brief on its equitable defenses (*see* D.I. 351 at 19-21), the defenses that went to the jury versus the Court

16

have different elements and, in the case of promissory estoppel, a different standard of proof. Moreover, the jury was not asked to make findings on the individual elements of fraud. All of this means that evidence that might not have been sufficient for the defenses the jury considered might go a long way to establishing — and certainly does not preclude — the defenses that are now before the Court.

The reason the ETSI evidence is relevant is because TruePosition made it relevant during trial. That is, TruePosition injected into the trial the issue of whether ETSI had ever criticized TruePosition's decision not to declare its '144 patent.

Moreover, TruePosition was confident about the answer its witnesses would give, because TruePosition had never told ETSI about the positions it was taking. As a result, the record that was created at trial was misleading and incomplete. The testimony of TruePosition's witnesses was worth nothing if TruePosition had not informed ETSI of the positions it had been taking in this lawsuit. And that is what turned out to be the case.

The only way to correct and complete the record was for someone to tell ETSI about TruePosition's assertions, and then see what, if anything, ETSI had to say. That is what Andrew did. As soon as ETSI learned of TruePosition's contentions at trial (*e.g.*, that a patent that is essential to only an option need not be declared to ETSI), ETSI reacted swiftly to set the record straight. The Director-General's letter to TruePosition and the General Assembly decision both directly refute TruePosition's contentions at trial. Both make clear that — contrary to what TruePosition's witnesses insinuated over and over again — ETSI does not condone TruePosition's failure to declare a patent asserted to be essential to an option.

The reason TruePosition wants the trial record to remain frozen is not because it believes that ETSI's views are suddenly irrelevant to the case. If that was what TruePosition really

17

believed, TruePosition would not have kept asking its witnesses whether ETSI had ever criticized TruePosition on its standards positions. The reason the evidence is suddenly no longer relevant to TruePosition is simple — TruePosition does not like ETSI's answers to the questions TruePosition kept asking at trial. That is, the questions were relevant and useful to TruePosition only so long as TruePosition did not have to worry about the answers.

Ultimately, if TruePosition did not want ETSI's views to be considered by the Court, TruePosition should not have injected the issue into the trial by asking both sides' witnesses about those views. But having opened the door and gone beyond the Pretrial Order by asking the questions, TruePosition must now live with the answers. This basic principle was applied by this District in *Tracinda Corp. v. DaimlerChrysler AG*, 362 F.Supp.2d 487 (D. Del. 2005), where the Court overruled an objection to evidence that was needed to complete a misleading record. As the Court explained:

> ***Tracinda's use of Brown's opinion was incomplete and misleading***, because it did not include Brown's reasons for her statement that the transaction did not involve a change of control. … ***Defendants used Brown's advice to complete the record and prevent it from being possibly misleading***. Because Tracinda ***opened the door*** to Brown's testimony and Defendants used it defensively to complete the record, the Court will overrule Tracinda's objection to the evidence related to Brown's advice.

*Id.* at 513.

Just as in *Tracinda*, it would be inequitable to permit TruePosition to open the door and insinuate whatever it wants about ETSI's views at trial, but then shut the door as soon as ETSI provides its actual views — just because TruePosition does not like what ETSI has to say. TruePosition's tactics are nothing more than sword and shield — using speculation about ETSI's views as a sword but then hiding behind a motion to strike to try to shield the record from ETSI's actual, expressed views. Tactics like these have no place in a Court of equity.

**The Evidence Is Not Untimely.**  In addition to challenging the relevance of the new ETSI evidence, TruePosition objects to it as untimely on the basis that it "relate[s] to an issue that has been in this case from the outset"; that it "could have been created or discovered earlier in this litigation"; and that some of it was submitted in a "*reply* brief." Br. (D.I. 358) at 8 (italics in original).

TruePosition notes that "interpretation of the ETSI IPR policy" has been at issue since the beginning of the case. Br. (D.I. 358) at 1.  And it was addressed in detail at trial by Andrew's standards representative. *See, e.g.*, Tr. 1773-87.  But that issue is different from the one that TruePosition raised for the first time at trial and that is the subject of the additional ETSI evidence — the issue of whether ETSI had anything to say about TruePosition's failure to declare the '144 patent.

Because TruePosition had never informed ETSI of its positions, ETSI naturally had nothing to say about TruePosition's positions *as of the time of trial*.  Thus no evidence was available to provide to the Court at the time.  But once ETSI was informed of the positions TruePosition was taking at trial — and Andrew took steps to do so during trial, even before the case went to the jury (Tr. 1823:1-6) — it did not take ETSI long to make its views known.  The Director-General sent its letter to TruePosition a month after the jury verdict, and the General Assembly issued its reminder about declaring options two months after the verdict.

Andrew also promptly brought ETSI's views to the Court's attention.  When Andrew learned that the Director-General had sent TruePosition a letter, Andrew requested a courtesy copy of the letter and submitted it a week later with its next Court filing (its opening brief on its equitable defenses, D.I. 325, D.I. 330 at 231-232).  Likewise, Andrew provided the declaration of the former Chairman of the ETSI Board within days of obtaining it, along with its next set of

Court filings (its oppositions to TruePosition's requests for an injunction, enhanced damages, and attorneys fees). And when Andrew learned that the ETSI General Assembly had issued a decision concerning declaring options in a standard, Andrew submitted a copy with its next Court filing (its reply brief on the equitable defenses, D.I. 351, D.I. 352 at Ex. 2).

In contrast, TruePosition never revealed to ETSI its litigation positions or its intention to have witnesses testify about ETSI's supposed views — either of which would have given ETSI, as of the time of trial, a basis to have an opportunity to form a view about TruePosition's standards conduct.

TruePosition's assertions of untimeliness thus are unavailing. The ETSI evidence was adduced immediately after TruePosition made an issue out of ETSI's views, and was brought to the Court's attention promptly as it became available from ETSI. Nor did Andrew save it for its reply brief. Br. (D.I. 358) at 8. The only items that were part of Andrew's reply submission were those that were not available any earlier (the GA decision document and the Magnusson declaration authenticating it). Andrew's submission of those items does not violate this Court's Local Rules because they were not "reserve[d] for reply" and could not "have been included in a full and fair opening brief." L.R. 7.1.3(c)(2) (cited at Br. (D.I. 358) at 8 n. 9). Everything else was provided as part of Andrew's earlier opening and opposition briefs on the parties' equitable remedies and defenses.

### 3.    Having Declined ETSI's Invitations To Challenge Or Even Comment On The Evidence, TruePosition Cannot Legitimately Argue Prejudice

TruePosition also urges the Court to exclude the new ETSI evidence on the grounds of prejudice because TruePosition would have "no opportunity to test and rebut" the evidence. Br.

20

(D.I. 358) at 1. In fact, TruePosition has had plenty of opportunity to test and rebut the evidence.
TruePosition simply has chosen to decline each and every one of those opportunities.[4]

With respect to the ETSI letter, TruePosition asserts that it has "never had the
opportunity" to ask the author of the letter, Director-General Weigel, "a single question." Br.
(D.I. 358) at 6. In fact, Dr. Weigel extended precisely that opportunity by urging TruePosition to
contact him or ETSI's legal services if TruePosition had any "question" or wanted to make any
"remark" with regard to the letter. If TruePosition had had any basis to question the ETSI letter,
there is no doubt that TruePosition would have done so immediately upon receiving the letter.
Instead, TruePosition decided to decline the Director-General's invitation and say nothing.

TruePosition did the same thing with regard to the General Assembly decision.
TruePosition asserts that it has not had "any opportunity whatever to explore the newly proffered

---

[4]    TruePosition also refers to an Andrew witness, Dr. Rosenbrock, who did not testify at the
trial. TruePosition asserts that, even though he appeared on Andrew's amended witness list
(which, along with TruePosition's amended witness list, was served within a deadline the
parties had agreed to), "TruePosition had no reason to believe that Dr. Rosenbrock would
actually be called." Br. (D.I. 358) at 4 n. 5.

That is not what happened, and Andrew will take this opportunity to set the record straight.
On August 28, Andrew specifically directed TruePosition's attention to the addition of
Rosenbrock on Andrew's Amended Witness and asked TruePosition to "please email me to
schedule a date" if "TruePosition would like to take the deposition of Mr. Rosenbrock." B3.
Later that day, TruePosition replied, asking "Where and when is Mr. Rosenbrock available
for deposition?" and "Would he be made available to testify during TruePosition's case in
chief?" B4. Andrew agreed to "inquire as to Mr. Rosenbrock's availability, etc. and get back
to you," (B6) and on August 31 reported to TruePosition that Dr. Rosenbrock was "available
for a deposition in Wilmington starting midweek the week of the 3rd, or possibly by
telephone or video this Sunday the 2nd. Please let us know what you prefer." B7.
TruePosition never responded to that email. Instead, TruePosition waited for five days, then
objected to Dr. Rosenbrock on the evening of September 5.

TruePosition thus did not object to Dr. Rosenbrock before trial. To the contrary,
TruePosition asked to take his deposition and lulled Andrew into believing that TruePosition
had no objection to Dr. Rosenbrock's testifying, and then sprung an objection on Andrew in
the middle of trial.

evidence." Br. (D.I. 358) at 8. But TruePosition does not tell the Court that ETSI held a meeting of the Intellectual Property Rights Committee in December 2007 to discuss and debate the decisions from the November GA meeting. Nor does TruePosition tell the Court that the particular decision relating to declaring patents on options was on the agenda that was distributed to everyone in advance of the IPRC meeting. Nor does TruePosition tell the Court that it attended the IPRC meeting, represented by none other than (a) its General Counsel Fred Beckley, who testified at trial about TruePosition's decision not to declare the '144 patent, and (b) its employee Matthew Ward, whose name appears on critical emails concerning whether to declare the '144 patent that were admitted as trial exhibits (*e.g.*, DTX 224). Magnusson Decl. ¶ 5 (B11-12).

Most importantly, TruePosition does not tell the Court that the IPRC Chairman asked if anyone in the room had any "comments, questions, objections" concerning the decision relating to declaring patents on options that TruePosition now asks this Court to strike. The Chairman's invitation was a golden opportunity for TruePosition to "explore" the GA decision. Br. (D.I. 358) at 8. But, in stark contrast to the extensive debate that took place for other GA decision items, this agenda item was met with no comments, questions, or objections from anyone — not even from TruePosition's representatives, who did not say a word. Magnusson Decl. ¶ 8 (B12).

Three days later, however, TruePosition filed its motion asking this Court to strike all evidence of the GA decision. D.I. 357, 358.

The story is similar for the Kaiser declaration. That declaration was submitted by Andrew two months ago in connection with its oppositions to the equitable remedies that TruePosition seeks. TruePosition has never sought to strike the declaration in that context, but now belatedly attempts to do so here.

It is easy for a litigant to cry prejudice. But TruePosition cannot legitimately establish prejudice when it has made no attempt — none whatsoever — to challenge the ETSI evidence when specifically invited to do so by ETSI. If TruePosition really suspected that the ETSI evidence had been "orchestrated" or "manufactured" for this lawsuit (Br. (D.I. 358) at 1, 6, 7), its General Counsel could have spoken up at the ETSI meeting and demanded to know the circumstances behind the General Assembly's decision. He could have asked Ericsson and T-Mobile and Vodafone whether Andrew had somehow strong-armed them into co-sponsoring the agenda item. He could have polled everyone in the room to see if there were any companies or even any representatives that objected to the GA's decision. He could have asked the Chairman if Andrew had orchestrated the whole thing.[5] He could have even simply said that TruePosition disagreed with the GA's decision, or that the issue needed further discussion and exploration. But he said nothing. There was nothing to challenge, and TruePosition knew it.[6]

The bottom line is that TruePosition has never challenged the additional ETSI evidence in terms of its content, accuracy, reliability, completeness, or anything else, despite having

---

[5] It is absurd to suggest that Andrew could have manufactured the ETSI evidence at issue. Br. (D.I. 358) at 6. Andrew is not in a position to tell 89 other members of the General Assembly (including the European Commission as well as industry titans like Ericsson, T-Mobile, Motorola, Nokia, Qualcomm, Intel, Microsoft, and all the other companies mentioned above in § III.B) what to do. *See* Magnusson Decl. Ex. 2 (B18-28); *see also* Tr. 107:7-10 (TruePosition's opening statement) ("...*that standards body is made up of a lot of different companies*: Ericsson, Nokia, people that make all kinds of things. People that make cell phones, people that make cell towers...").

[6] The same is true with the ETSI letter. If TruePosition really believed the letter was subject to challenge, TruePosition would have accepted the Director-General's invitation to question or provide remarks on the letter. But TruePosition knows there is nothing to challenge. For example, the premise of the letter — that the '144 may be essential to an option in an ETSI standard — cannot be challenged because that was TruePosition's position at trial.

received every opportunity and invitation to do so from ETSI.[7]  The only reason TruePosition

cries prejudice now, to this Court, is that the ETSI evidence is fatal to its case.[8]

### 4.  Excluding The True Facts From The Incomplete And Misleading Record That TruePosition Created Would Be Prejudicial To Andrew

TruePosition wants much more than a $45 million damages award.  It wants a permanent

injunction to prevent Andrew from practicing a public standard, so it can put Andrew out of the

SDCCH business and have that market all to itself.[9]

Any of Andrew's three equitable defenses avoid that result, and it would be prejudicial to

Andrew for the Court to decide those defenses based on the incomplete and misleading record

that TruePosition was responsible for creating.  It would amount to ignoring evidence that is

readily available, that speaks directly to the issues TruePosition injected into the trial, and that

TruePosition has never challenged with ETSI despite repeated opportunities — just because

TruePosition now tells this Court that the evidence might be unreliable after all.

That would be manifestly inappropriate.  There are six equitable issues in this case that

have never been considered by the fact-finder:  TruePosition's three equitable remedies and

Andrew's three equitable defenses.  Those issues should be decided on the merits and on the

---

[7]  The Court has previously rejected TruePosition's evidentiary objections to official ETSI documents.  Tr. 1410:12-18 ("Now, if anyone is telling me these are not authentic documents from this governing board, then I will listen to it seriously. If that is not a provable objection, then the question is:  If someone uses kind of these standard documents daily, *am I satisfied under the overall bottom line of the exception rule that they're reliable and I certainly am.*").

[8]  *Blinzler v. Marriott Int'l., Inc.*, 81 F.3d 1148, 1160 (1st Cir. 1996) (affirming grant of motion to reopen the record).("[T]he defendant insists that permitting the plaintiff to reopen worked substantial prejudice because the defendant hoped all along that the plaintiff would fail to prove causation. *This is disappointment rather than cognizable prejudice.*")

[9]  This is completely contrary to TruePosition's pre-standardization assurances that the industry would benefit from a multi-vendor market.  *See* D.I. 325 at *e.g.*, 6-10 and D.I. 351 at *e.g.*, 1-2, 10-14.

equities — not by excluding evidence that TruePosition merely says should be excluded as

unreliable without having ever having provided any specific reasons (to this Court or to ETSI)

for why it is unreliable.

> **B.    Even If The Record Were Closed, It Should Be Reopened So The Court Is Not Put In The Position Of Deciding Equitable Defenses On A Record That Is Misleading And Incomplete**

This Court, here sitting in equity, should not have to decide Andrew's equitable defenses

on a record that is misleading and incomplete.  Thus, if TruePosition is correct that the record is

closed even though the issue of additional evidence was explicitly addressed at the pretrial

conference (*see* §V.A.1 above), the record should be reopened and supplemented with the

additional evidence.  Thus, out of an abundance of caution and in the event the Court should find

that the record on the equitable defenses was closed despite what was said at the pretrial

conference (D.I. 330 at 227-28), Andrew conditionally moves to reopen the record to add the

ETSI evidence at issue here.

The Third Circuit has explained that a district court has "great flexibility" to supplement

a closed record, as long as there is no "injustice" as gauged by three factors:

> *Great flexibility is accorded the District Court* in its determination to supplement the record, though it must avoid perpetrating any type of injustice in so doing.  *In determining whether an "injustice" will occur, the district court must consider several factors, including* the burden that will be placed on the parties and their witnesses, the undue prejudice that may result from admitting or not admitting the new evidence, and considerations of judicial economy.

*Gibson v. Mayor and Council of the City of Wilmington*, 355 F.3d 215, 229 (3d Cir. 2004)

(affirming grant of motion to reopen the record) (citations omitted); *see also Rochez Bros., Inc.*

*v. Rhoades*, 527 F.2d 891, 894 n. 6 (3d Cir.1975) (remanding to allow further testimony to be

added to a closed record).[10] Here, all three factors weigh in favor of reopening the record, even

assuming TruePosition is correct that it is closed.

**Burden on the Parties and Witnesses.** This is not a situation where the new evidence

still needs to be identified or adduced. Nor is this a situation of extreme time pressure, where a

jury is waiting to receive the record before it can begin its deliberations.

Here, the additional ETSI evidence consists of only four documents, and the burden of

identifying and collecting that evidence has already been assumed and carried by Andrew. The

evidence is readily available. It has already been submitted to the Court. It went in without

objection in post-trial briefing on TruePosition's equitable remedies. And it should also go in for

Andrew's equitable defenses. TruePosition has not identified a single thing that is wrong with

the evidence, other than TruePosition's demonstrably incorrect assertions that it has never had

the opportunity to challenge it.

There is no burden on the witnesses either. Notwithstanding its hollow assertions that it

never got to "challenge" the ETSI evidence, TruePosition apparently has nothing that it wishes to

inquire of Director-General Weigel. If it did, it would have done so upon receiving Dr. Weigel's

letter and invitation to respond. Nor does TruePosition have anything to ask ETSI about

regarding the General Assembly decision. If it did, it would have spoken up when invited to at

---

[10]    This permissiveness is not unique to the Third Circuit. Other Circuits have made clear that a
District Court has "broad discretion" to reopen a closed record, with the "key criterion" being
fairness, with three specific factors to be considered:

> A trial court's decision to reopen is premised upon criteria that are flexible and fact-
> specific, but *fairness is the key criterion*. *The specific factors to be assessed include* the
> probative value of the evidence sought to be introduced, the proponent's explanation for
> failing to offer the evidence earlier, and the likelihood of undue prejudice.

*E.g., Blinzler,* 81 F.3d at 1160 (affirming grant of motion to reopen the record) (citations
omitted).

the ETSI meeting it attended last month.  The same applies to former Chairman Kaiser.  TruePosition allowed Kaiser's declaration into the record for its equitable remedies without seeking to strike it.

**Undue Prejudice From Admitting Or Not Admitting The Evidence.**  This factor weighs strongly in Andrew's favor for the reasons discussed above (*see* §§ IV.A.2-4).

**Judicial Economy.**  With no further evidence that needs to be adduced or submitted, considerations of judicial economy also weigh strongly in favor of Andrew.  Jury deliberations do not need to be delayed.  A trial does not have to be rescheduled.  And if any limited issues remain, they can be addressed at the evidentiary hearing that Andrew has requested should the Court grant Andrew's request.[11]  The ETSI evidence should be considered because TruePosition made it an issue.  *Gibson*, 355 F.3d at 230 (quoting the District Court in affirming grant of motion to reopen:  "'It seems to me this is a significant issue in the case, that you have made it one.'").

In short, the truth here will not come at the expense of judicial economy.  And achieving the truth is what the goal should be, especially where equitable issues are involved.  As a District Court in the First Circuit explained in reopening the record:

> "*I allow the plaintiff to reopen because I want the truth.*  I want the facts. I want to achieve a just result in this case...."

*Blinzler v. Marriott Int'l, Inc.*, 81 F.3d at 1160 n. 7.  The District Court's decision to reopen was affirmed.[12]

---

[11]  This can include giving TruePosition a limited opportunity to cross-examine witnesses, if desired by the Court.

[12]  The *Blinzler* Court also relied on the fact that the new evidence was not "cumulative" of what was already in the record, had "significant probative value on an essential element in the [movant's] case," and was not previously withheld "as a strategic manner."  All three are true here as well.  81 F.3d at 1160.

27

## V.    CONCLUSION

For the foregoing reasons, TruePosition's motion to strike should be denied.

Respectfully submitted,

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
302-571-6600
*alundgren@ycst.com*

*Attorneys for Defendant Andrew Corporation*

OF COUNSEL:

John M. Desmarais, P.C.
Gregory S. Arovas, P.C.
Avinash S. Lele
Todd M. Friedman
Jason Choy
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022
(212) 446-4800

Michael A. Parks
Rachel Pernic Waldron
Shira J. Kapplin
Regan A. Smith
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, Illinois 60601
(312) 861-2000

Dated: January 14, 2008

K&E 12355696.1

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on January 14, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

James D. Heisman, Esquire
Connolly, Bove, Lodge & Hutz
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899
(302) 658-9141
Email: jheisman@cblh.com

I further certify that on January 14, 2008, I caused a copy of the foregoing document to be served by e-mail and hand delivery on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL**

Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
Daniel J. Goettle, Esq. [dgoettle@woodcock.com]
Woodcock Washburn LLP
Circa Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19103

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
alundgren@ycst.com
*Attorneys for Defendant Andrew Corporation*