CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------------------x

**TRUEPOSITION, INC.,**

        **Plaintiff,**

                                 **C.A. No. 05-0747-SLR**

    **v.**                                    REDACTED - PUBLIC VERSION

**ANDREW CORPORATION,**

        **Defendant.**

---------------------------------------------------------------------x

**<u>SUPPLEMENTAL REBUTTAL EXPERT REPORT OF WAYNE A. HOEBERLEIN</u>**

**I.      INTRODUCTION**

      I, Wayne A. Hoeberlein, submit this Supplemental Rebuttal Expert Report on behalf of Defendant Andrew Corporation ("Andrew") in the above-captioned case pursuant to F.R.C.P. 26(a)(2)(B).  I have been retained by Andrew in this case as an expert in the areas of damages and financial analysis.  The following report contains the opinions I have formed with respect to the damages claimed by Plaintiff TruePosition, Inc. ("TPI") as set forth in the Supplemental Expert Report of Carla S. Mulhern dated March 4, 2009 (the "Supplemental Mulhern Report").  I have previously provided testimony in this matter in my Rebuttal Expert Report dated December 22, 2006, via deposition on January 18, 2007, and at trial on September 11, 2007.

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

My expert report is based on information currently known to me, and the opinions stated herein are subject to change based on additional information provided to me. I reserve the right to rely on additional information that becomes available to me and to amend my opinions accordingly.

## II.     QUALIFICATIONS

I have a Bachelor of Business Administration in Accounting degree from Hofstra University. I also received a J.D. from the Hofstra University School of Law in 1977. I am a Certified Public Accountant and a member of the American Institute of CPAs. I am a Managing Director with UHY FLVS, Inc., located in New York, New York. Prior to joining UHY Advisors in October 2007, I was a Managing Director at Aon Consulting, Inc. (February 2006 to October 2007), a Managing Director at Kroll, Inc. (July 1999 to January 2006), and a member of the litigation consulting firm, Hoeberlein Associates, LLC (April 1996 to June 1999). During the period 1977 to March 1996, I was with Arthur Andersen, LLP, including ten years as a partner in the firm's litigation consulting practice. Since 1982, I have worked exclusively in the area of litigation consulting, providing financial consulting, damages analysis, and expert testimony in connection with commercial litigations.

I am currently employed by UHY Advisors FLVS, Inc. UHY Advisors carries out financial, economic, and accounting research and consulting services for firms, companies, and government bodies on a variety of issues, including analyzing damages in connection with intellectual property disputes, which accounts for a substantial amount of my work. I have testified numerous times in federal court in matters relating to intellectual property. Regarding my background, I expect to testify generally in this matter about my qualifications as an accounting and damages expert, and more specifically about my qualifications as an expert in the valuation of intellectual property damages.

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

Additional information concerning my background, qualifications, and publications are described in my Curriculum Vitae, a copy of which is attached as Exhibit A.  My Curriculum Vitae also contains a list of other cases in which I have testified as an expert at trial or by deposition in the last four years.  All publications I have authored in the last ten years also are included in my Curriculum Vitae.  UHY Advisors is being compensated at a rate of $525 per hour for my work performed in connection with this matter.  UHY Advisors' fees are not dependent in any way on the substance of my opinions or testimony, nor are they dependent on the outcome of this case.

## III.    BASES OF OPINIONS

My opinions are based on my professional training and experience and my review and analysis of documents, deposition testimony, and information produced in the course of this litigation.  A list of material I have reviewed is attached as Exhibit B.

## IV.    SUMMARY OF OPINIONS

In my opinion, (1) based on events occurring before the trial in this matter that ended September 14, 2007, but for which TPI did not submit evidence at trial, TPI is not entitled to damages relating to equipment for the last 21 Phase 2 sites installed by Andrew at Saudi Telecom ("STC"); (2) based on events occurring after the trial ended, TPI is entitled to damages only for the 125 Phase 3 sites deployed at STC beginning January 21, 2008; (3) TPI is not entitled to any damages relating to the remaining 335 Phase 3 sites because it is my understanding that these sites do not infringe the '144 patent.  However, damages as calculated in the Supplemental Mulhern Report are overstated with respect to the elements of "Ongoing Operation and Maintenance" and "Spare Parts" for Phase 3.  In my opinion, the appropriate amount of lost profits relating to Phase 3 sites is $1,741,024 for the 125 sites that were installed and capable of performing geolocation using Geometrix version 2006.0.4 at STC.    The

3

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

remaining 335 Phase 3 sites are non-infringing, not yet deployed, and/or are "Nokia sites" that currently lack interoperability with STC's system to perform geolocation using the SDCCH channel.

## V.   BACKGROUND

TPI has submitted a report seeking damages based on equipment for an additional 21 sites that Andrew installed at STC in connection with its contract for Phase 2 of the STC project. The equipment relating to these sites was shipped from the United States after January 2007 and before August 2007.  It is my understanding that all of these sites utilized Andrew's Geometrix software version 2006.0.4 at the time of installation.[1]  Regarding Andrew's contract for Phase 3 of the STC project, I understand that of the 460 total Phase 3 sites, equipment for 125 sites was deployed at STC commencing on January 21, 2008.[2]  Of the remaining 335 Phase 3 sites, 59 sites have been deployed following the August 27, 2008 completion of the upgrade to Geometrix software version 2008.1.1, and 1 site is in the process of being installed and made operable.[3]  Of the 59 sites, 58 sites initially utilized Andrew's non-infringing Geometrix software version 2008.1.1, and 1 site initially utilized Andrew's non-infringing Geometrix software version 2008.1.2.  All 59 sites currently run Andrew's non-infringing Geometrix software version 2008.1.3.[4]  The remaining 275 sites are not currently operable because they comprise the

---

[1]   I understand that the infringement of the '144 patent by this version of Andrew's software was not addressed during the trial.

[2]   AND_EF0291098.  The equipment for the first 100 sites was shipped from the United States to Andrew's installer, Noviacom, in August 2007, but no Phase 3 equipment was deployed at STC until late January 2008. *See id.*, Andrew's 12/19/08 Resp. to Interrog. 10.  Under Andrew's contract with STC, title would not pass until a later point. *See* AND_EF0189637.

[3]   Beck Decl. at ¶¶ 9, 11-12;  AND_EF0341047 (7 non-Nokia sites warehoused before the upgrade); AND_EF0343184 (53 non-Nokia sites not operable before the upgrade)).

[4]   Beck Decl. at ¶¶ 12-13.

CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

"Nokia" portion of Phase 3, and/or because they are not yet deployed.[5]  I understand that all of these sites will initially be capable of being tasked to perform mobile phone locations using Andrew's non-infringing Geometrix software version 2008.1.3 or a later version.[6]

## VI.   OPINIONS AND DAMAGE CALCULATIONS

### A.   TPI Is Not Entitled To Damages Relating To Andrew's Deployment of Equipment For 21 Phase 2 Sites

TPI claims it is entitled to damages relating to the 21 additional Phase 2 sites in the amount of $403,218, including spare parts, operation and maintenance.[7]  It is my understanding that all of these sites utilized Andrew's Geometrix software version 2006.0.4 when deployed. The equipment relating to these sites was shipped from the United States after January 2007 and before August 2007.[8]  It also is apparent that at the time of the trial in this matter, TPI was aware that Andrew had shipped equipment relating to these 21 units from the United States.  Ms. Mulhern, TPI's damages expert, testified that for Phase 2, "[I]t looks like it's going to be about 404 sites.  It was 383 when I did my report, but it's in the neighborhood of an additional 400 sites, for a total of about a thousand <u>shipped</u> thus far."[9]  Even with this information at hand, however, Ms. Mulhern chose not to adjust her calculations at trial:

> Q:   And approximately 380 sites as part of what is referred to as phase two?
> A:   As of the time of my report, I thought that number -- the evidence showed that number was 383.  ***Recent evidence that Andrew provided suggested that number might be 404***, but in that ballpark, yes.

---

[5]   AND_EF0303006; AND_EF0139255, AND_EF139257; AND_EF0196073.  The equipment for 360 sites was shipped from the United States to Andrew's installer, Noviacom, in June 2008.  Andrew's 12/19/08 Resp. to Interrog. 10.

[6]   Beck Decl. at ¶ 13 (version 2008.1.3 upgrade); *see also* AND_EF0392141 (version 2008.1.2 upgrade).

[7]   Mulhern Suppl. Rep. at 6.

[8]   *See* Deposition of Gary Brown at pages 49, 129.

[9]   Tr. at 1184 (emphasis added).

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

Q:   *For purposes of your report and your calculations, you're focusing on 383 sites*; is that correct?

A:   *That's correct.*[10]

Therefore, given that Ms. Mulhern chose not to include these units in her damages calculations at trial, I understand that TPI is not entitled to damages related to these units.[11]

### B.   At Most, TPI Is Entitled to Lost Profits For 125 Phase 3 Units Installed With Version 2006.0.4 Software

Based on events occurring after the trial ended, TPI is entitled to lost profits damages for the 125 Phase 3 sites deployed at STC during the period January 21, 2008 to August 15, 2008. The Supplemental Mulhern Report includes as damages for Phase 3 a calculation for lost profits relating to both "Ongoing Operation and Maintenance" and "Spare Parts."[12]   However, these calculations employ the same methodology used in Ms. Mulhern's initial December 1, 2006 Expert Report.[13]   Based on the available information, the Supplemental Mulhern Report's inclusion of Phase 3 lost profits of $369,008 for spare parts and $2,768,104 for operation and maintenance is unsupported and speculative.[14]

---

[10]   Tr. 1194:1-9 (emphasis added).

[11]   *See* Andrew Corporation's Brief in Opposition to TruePosition's Motion for Accounting and for Entry of Final Injunction at Section IV(3)(b)(2).

[12]   *See* Supplemental Mulhern Report at Supplemental Exs. 6, 7, 9, 10.

[13]   Ms. Mulhern's calculations for both "Ongoing Operations and Maintenance" and "Spare Parts" are based on TPI's bid to STC for 2,888 LMUs (see Exhibit 6 to the December 1, 2006 Mulhern Report).

[14]   Additionally, it is my opinion that Ms. Mulhern wrongly assumes that "[the 460] sites should have been included in the trial." Mulhern Suppl. Rep. at 6.  No one—including Andrew—knew how many sites there would be until after trial. *Compare* Mulhern Suppl. Rep. at 6-7 *with* AND_EF0291098.  The equipment for the first 100 sites was shipped from the United States to Andrew's installer, Noviacom, in August 2007, but no Phase 3 equipment was deployed at STC until late January 2008. *See id.*, Andrew's 12/19/08 Resp. to Interrog. 10.  Under Andrew's contract with STC, title to the equipment would not pass until a later point, when STC preliminarily accepted the installations.  *See* AND_EF0189637.  Therefore, it is my opinion that any Phase 3 lost profits award should not be calculated based on the September 19, 2007 entry of judgment date.  In the event that the Court does calculate damages based on that date, it is my opinion that the Court should apply the discount rate of 12 percent utilized in the Mulhern Supplemental Report.

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

First, the Supplemental Mulhern Report does not offer support for the assumption that TPI would be able to contractually require STC to purchase annual operation and maintenance services at the rates Ms. Mulhern identifies. Nor does the Supplemental Mulhern Report provide any evidence suggesting that STC would accept such a requirement.

Second, Ms. Mulhern ignores the actual amounts earned by Andrew for operation and maintenance and for spare parts in connection with Andrew's contract for Phases 1 and 2 of the STC project. In this regard, Andrew actually invoiced STC $598,825 for spare parts, and $847,170 for operation and maintenance for Phases 1 and 2.[15] These actual figures for operation and maintenance and spare parts are important for estimating what might be incurred in connection with Phase 3, yet Ms. Mulhern failed to consider them.

Third, available information indicates that STC will not purchase any spare parts for Phase 3[16] and that the level of expenditure for ongoing operation and maintenance is significantly lower than Ms. Mulhern estimates. Specifically, STC has committed $30,000 to operations and maintenance for Phase 3.[17]

Thus, assuming Ms. Mulhern's calculated revenue per site ($21,222) and incremental profit percentage (64.5%), the lost profits for the 125 Phase 3 sites that were installed and capable of performing geolocation using Geometrix version 2006.0.4 at STC totals $1,741,024, including actual amounts committed for Phase 3 operation and maintenance. TPI's claim for

---

[15] AND_EF0389908 (Phase 2 orders); *Compare* Hoeberlein Trial Demon. at 27 and 30 ($0 spares and O&M for Phase 1, $600,103 for spares and $1,030,855 for O&M for Phase 2).

[16] AND_EF0146314; AND_EF0146315.

[17] AND_EF0144530, AND_EF0144538 (STC committed only to a support contract worth 112,500 SAR, which equals $30,000); *see also* AND_EF0146314; AND_EF0150633 (discussing STC maintenance contracts).

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

Phase 3 lost profits of $369,008 for spare parts and $2,768,104 for operation and maintenance alone therefore is speculative and unsupported.[18]

### C.   TPI Is Not Entitled To Damages Relating To Andrew's Deployment of Equipment For The 335 Remaining Phase 3 Sites

TPI is not entitled to any damages relating to the remaining 335 Phase 3 sites, because it is my understanding that these sites do not infringe the '144 patent. As discussed above, of the remaining 335 Phase 3 sites, equipment for 59 sites was installed after the 2008.1.1 upgrade.[19] Of the 59 sites, 58 sites initially utilized Andrew's Geometrix software version 2008.1.1, and 1 site initially utilized Andrew's Geometrix software version 2008.1.2. The 58 sites subsequently were upgraded to Geometrix software version 2008.1.2, and all 59 sites subsequently were upgraded to (and now run) Geometrix software version 2008.1.3. It is my understanding that none of these new versions of Andrew's software infringes the '144 patent. Therefore, no damages are recoverable relating to these 60 sites. In addition, the remaining 275 Phase 3 sites are not yet capable of performing geolocation upon request because they are "Nokia sites" that lack interoperability with STC's system and/or are not yet deployed. Therefore, no damages are recoverable. Furthermore, I understand that all of these sites will be deployed using Andrew's non-infringing Geometrix software version 2008.1.3 or later versions.[20]

## VII.   PREJUDGMENT INTEREST

If necessary, prejudgment interest will be calculated at the Court's request.

---

[18] Even if it were assumed that STC would commit to and pay for the per-site amount of operation and maintenance and spare parts that was invoiced for Phases 1 and 2 ($1,445,995 for 1,004 sites), Ms. Mulhern's calculations are unsupported. The Phase 1 and Phase 2 per-site revenue for operation and maintenance and spare parts equals $1,440. Applying the $1,440 per-site number to the 125 Phase 3 sites results in $180,000 in lost profits revenue for operation and maintenance and spare parts.

[19] AND_EF0341047 (7 non-Nokia sites warehoused before the upgrade); AND_EF0343184 (53 non-Nokia sites offline before the upgrade); *see also* Beck Decl. at ¶¶ 9, 11

[20] Beck Decl. at ¶ 13 (version 2008.1.3 upgrade); *see also* AND_EF0392141 (version 2008.1.2 upgrade).

CONFIDENTAL – SUBJECT TO PROTECTIVE ORDER
REDACTED - PUBLIC VERSION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**UHY Advisors FLVS, Inc.**

By: _____        Date:   March 18, 2009

    Wayne A. Hoeberlein                          Redacted Version filed: March 25, 2009

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew A. Lundgren, Esquire, hereby certify that on March 25, 2009, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> James D. Heisman, Esquire
> Connolly, Bove, Lodge & Hutz
> The Nemours Building
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE 19899
> (302) 658-9141
> Email: jheisman@cblh.com

I further certify that on March 25, 2009, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following in the manner indicated:

**BY ELECTRONIC MAIL**

> Paul B. Milcetic, Esq. [pmbilcet@woodcock.com]
> Amanda M. Kessel, Esq. [akessel@woodcock.com]
> Lynn B. Morreale, Esq. [morreale@woodcock.com]
> Woodcock Washburn LLP
> Circa Centre, 12th Floor
> 2929 Arch Street
> Philadelphia, PA  19103

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Andrew A. Lundgren*
> Andrew A. Lundgren (No. 4429)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware  19801
> (302) 571-6600
> *alundgren@ycst.com*
>
> *Attorneys for Defendant Andrew Corporation*

065217.1001